UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>        Petitioner,<br><br>v.<br><br>RICHARD ALEXANDER MURDAUGH, Sr., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, PALMETTO STATE BANK, and THE UNITED STATES OF AMERICA,<br><br>        Respondents. | *In re Grand Jury Subpoena 2022-0064*<br><br>Case No. 2:22-cv-1307-RMG<br><br>**AMENDED COMPLAINT** |

COMES NOW Nautilus Insurance Company ("Nautilus"), amending its pleading pursuant to Rule 15(a)(1) and (i) complaining of and seeking relief from all Defendants *except* the United States of America and (ii) requesting a declaration as to its rights and obligations with regard to a Grand Jury Subpoena issued by the United States of America. Nautilus' grounds are as follows.

## PARTIES AND JURISDICTION

1. Nautilus is an insurer organized under the laws of Arizona and with its principal place of business in Scottsdale, Arizona.

2. Richard Alexander Murdaugh, Sr. ("Murdaugh") is a citizen and resident of Colleton County, South Carolina and at all times relevant hereto was an attorney licensed to practice law in South Carolina.

3. Cory Fleming ("Fleming") is a citizen and resident of Beaufort County, South Carolina, and at all times relevant hereto was an attorney licensed to practice law in the State of South Carolina.

4. Moss & Kuhn, P.A., formerly known as Moss, Kuhn & Fleming, P.A. ("MKF") is a South Carolina professional association, with its principal place of business located

1

in Beaufort, South Carolina, and of which Fleming was a named shareholder at all times relevant hereto.

5. Chad Westendorf ("Westendorf") is a citizen and resident of Hampton County, South Carolina.

6. Palmetto State Bank ("Palmetto") is a South Carolina corporation and chartered banking institution, with its principal place of business in Hampton County, South Carolina, and of which Westendorf was a Vice President at all times relevant hereto.

7. The United States has subpoenaed records from Nautilus regarding coverage it issued to Murdaugh (Grand Jury Subpoena Number 2022-0064 ("the Subpoena")).

8. This Court has jurisdiction pursuant to pursuant to 28 U.S. Code § 1332, inasmuch as the plaintiff is a citizen of a different state than each of the defendants (other than the United States) is a citizen of, and the amount in controversy exceeds $75,000.

9. The Court has jurisdiction over the plaintiff's declaratory judgment claim under 28 U.S. Code § 1331 as that claim raises a question under this court's supervisory power to regulate the manner in which federal grand jury investigations are conducted, and the court has jurisdiction over the plaintiff's remaining claims under 28 U.S. Code § 1367.

## FACTUAL ALLEGATIONS

10. Nautilus issued umbrella policy PU386804 to Murdaugh ("the Policy"), providing $5,000,000 in umbrella coverage to Murdaugh subject to the policy terms. A copy of the Policy is attached as **Exhibit A**.

11. On February 2, 2018, Gloria Satterfield fell. She died on February 26, 2018.

12. Murdaugh made a claim for coverage under the Policy with regard to claims against him purportedly on behalf of the estate of Ms. Satterfield.

13. Nautilus provided defense counsel for Murdaugh, and ultimately paid in excess of $75,000 to resolve what it then believed to be claims by the Satterfields.

14. Beginning in July 2021 and continuing through the filing of this action, Nautilus became aware for the first time of facts regarding the Satterfield claims, allegations of insurance fraud, conspiracy to commit insurance fraud, and allegations of criminal conduct ("the Irregularities"). The Irregularities include:

    a. That it was Murdaugh who approached the Satterfield family after the death of Gloria Satterfield and suggested they sue him and collect from his insurance companies, including Nautilus.

    b. That Murdaugh arranged for Fleming, his longtime close friend, and MKF to represent the Satterfield family in bringing a claim against his insurance.

    c. That Murdaugh and Fleming arranged for Westendorf to serve as the personal representative of the estate of Gloria Satterfield in exchange for a fee, as they had previously done with other officers and directors at Palmetto, effectively removing the Satterfield family from the proceedings.

    d. That, unbeknownst to Nautilus, Murdaugh was not a bona fide insured seeking coverage, but rather was coordinating the handling of the claim with Fleming—including sending correspondence related to the case on Murdaugh's firm's letterhead and preparing and delivering disbursement sheets—such that Fleming and Murdaugh were effectively co-counsel.

    e. That Murdaugh pressured Nautilus to settle the claim, threatening a suit for bad faith against Nautilus if it refused to pay policy limits.

    f. That Murdaugh was abusive toward the Nautilus adjuster handling the claim and demanded Nautilus pay its full policy limits, threatening that if the case against him were filed and went to trial, he would admit liability and the judgment would be substantial.

    g. That the monies contributed by Nautilus (as a result of the foregoing) in settlement of the claims by the Satterfield family were deposited by Fleming into MKF's trust account, but were never received by the

3

       Satterfield family; instead, Fleming disbursed the funds (minus fees of over $600,000) to an account created by Murdaugh in the name of "Forge" and controlled by Murdaugh.

   h.  That no effort was made by Westendorf, Palmetto, Fleming, or MKF to ensure that the funds intended for the Satterfield family were received by the Satterfield family, violating their obligations regarding escrow funds and their disbursement.

15. Through the Irregularities and other actions, Murdaugh and others—including Fleming, MKF, Westendorf, and Palmetto (collectively, "the Co-conspirators")—coordinated efforts to improperly obtain insurance money and disburse insurance proceeds for their own personal gain and at the expense of Nautilus.

16. The Irregularities led to Murdaugh and Fleming being suspended from the practice of law and indicted.

17. The Irregularities shone a different light on some of the facts and circumstances surrounding the claim such that it is now apparent these facts and circumstances were misrepresentations or concealments of the truth, were deceitful, and were intended to mislead, obscure, and dissemble, including:

   a.  That, immediately following Gloria Satterfield's fall on February 2, 2018, Murdaugh rushed to the scene, arriving before EMS. On March 29, 2018, Murdaugh stated that Ms. Satterfield briefly regained consciousness during which time she stated that Murdaugh's dogs had caused her to fall. This statement was heard by no one else and is contradicted by Ms. Satterfield's later statement to hospital staff that she had no idea what made her fall.

   b.  That, on March 29, 2018, Murdaugh claimed Ms. Satterfield was at his property, not to perform work for Murdaugh and his family, but to collect a check for work performed for someone else, thus avoiding a worker's compensation defense.

      c. That Murdaugh stated to multiple third parties in Hampton County that he was liable for Gloria Satterfield's fall and ultimate death, an admission against interest that all but ensured that there could be no challenge to liability, and securing his ability to force Nautilus to contribute settlement funds that Murdaugh and the Co-conspirators stole.

18. Murdaugh filed a proposed confession of judgment on March 24, 2022 in case number 2019-CP-25-00111 in state court in South Carolina. **Exh. B**.

19. Prior thereto, Co-receivers were appointed by the state court in Hampton County to administer Murdaugh's assets and claims against Murdaugh. The order appointing the co-receivers purports to require that any party obtain leave of the state court of consent from the co-receivers prior to suing Murdaugh outside of that jurisdiction. **Exh. C**. Though disputing the validity of that requirement in the state court's order, Nautilus obtained the consent of counsel for the co-receivers prior to suing Murdaugh in this action.

## FOR A FIRST CAUSE OF ACTION
### (Fraud – Murdaugh)

20. The foregoing paragraphs are incorporated as if fully restated herein.

21. Nautilus believed the claim against its policy was brought at the behest of the Satterfield family. The scope of Murdaugh's depravity is without precedent in Western jurisprudence. He and his conspirators disguised that they were making the claim under Nautilus' policy for their own benefit.

22. In the events as aforesaid, Murdaugh knowingly made false numerous statements to Nautilus. To wit:

      a. On March 22, 2018, Murdaugh represented to the Nautilus's claims adjuster that he sought coverage under the Policy in order to protect himself from losses to the Satterfield estate in the Action and that he was liable to the Satterfield estate for policy limits. In fact, it was he himself who sought to obtain payment of the insurance funds in the Action, as he intended to and ultimately did divert the funds to himself and his co-conspirators, rather than use them to satisfy the estate's claims.

    b. On or about March 22, 2018, Murdaugh stated to an independent adjuster—with the intent that Nautilus would rely on his representation—that shortly after the purported fall, he heard Ms. Satterfield say that Murdaugh's dogs had caused her to fall. Ms. Satterfield made no such statement and later told hospital staff she did not know why she had fallen.

        i. Murdaugh repeated the statement on March 29, 2018 during an interview with Bryant McGowan, an insurance investigator, again with the intent that Nautilus would rely on the representation.

    c. On or about March 29, 2018, Murdaugh stated to Bryant McGowan that, on the day of the purported fall, Ms. Satterfield was at his property not to perform work for Murdaugh and his family, but to collect a check for work performed for someone else. In fact, she was there to perform work herself. Murdaugh intended that Nautilus would rely on this representation.

    d. On or about April 2, 2019, Murdaugh represented to counsel appointed by Nautilus for his defense that Nautilus should disburse funds for the settlement of the action to Westendorf and MFK, and that the funds so disbursed would be distributed to the Satterfield estate. In fact, he intended for the funds so disbursed to be distributed to himself and his co-conspirators, and the funds ultimately were so distributed.

23. Murdaugh made these false statements knowing they were false and intending that Nautilus would rely on them. Specifically, he sought to mislead Nautilus and force it to contribute to a "settlement" that was not real.

24. Nautilus relied on Murdaugh's false statements to its detriment and disbursed funds under the Policy for the "settlement" based upon the fraud and deceit, directly and proximately causing damage to Nautilus.

25. Nautilus is entitled to punitive damages.

26. Nautilus requests the Court adjudicate whether Murdaugh defrauded and deceived Nautilus by his actions. This claim is unique to Nautilus and has not and could not have been brought by any other person or entity.

### FOR A SECOND CAUSE OF ACTION
### (Conspiracy to Commit Fraud – All Defendants Except the United States)

26. The foregoing paragraphs are incorporated as if fully restated herein.

27. Murdaugh and the Co-conspirators agreed to a scheme to deceive Nautilus into paying insurance proceeds purportedly to the Satterfield estate by falsely representing to Nautilus the existence of an arm's-length lawsuit against Murdaugh by the Satterfield estate, covertly steering the lawsuit for the furtherance of their unlawful agreement, and covertly distributing the insurance proceeds amongst themselves.

28. As a direct and proximate result of the conspiracy and of Murdaugh's and the Co-conspirators' acts in furtherance thereof, Nautilus contributed to the "settlement," proximately causing damage to Nautilus.

29. Nautilus is entitled to punitive damages.

30. This claim is unique to Nautilus and has not and could not have been brought by any other person or entity.

### FOR A THIRD CAUSE OF ACTION
**(South Carolina Unfair Trade Practices Act – All Defendants Except the United States)**

31. The foregoing paragraphs are incorporated as if fully restated herein.

32. The conduct of Murdaugh and the Co-conspirators as aforesaid was immoral, unethical, oppressive, and/or offensive to public policy.

33. Nautilus suffered actual and ascertainable damages on account of Murdaugh's and Co-conspirators' unlawful trade practices in the form of its contribution to the Satterfield settlement.

34. Murdaugh's and Co-conspirators' unlawful trade practices adversely impact the public interest by bringing systems of justice and public institutions into disrepute and decreasing public confidence therein.

35. Murdaugh's and Co-conspirators unlawful actions were in violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10 *et seq.*

36. Nautilus is entitled to treble damages and attorneys' fees.

### FOR A FOURTH CAUSE OF ACTION
**(Declaratory Judgment)**

7

42. The foregoing paragraphs are incorporated as if fully restated herein.

43. The United States served a subpoena on Nautilus on February 8, 2022 for Nautilus' files relating to the Satterfield claims, including files over which Murdaugh has asserted claims of privilege (largely the files of the firm that defended Murdaugh in the Satterfield claims).

44. With regard to the subpoenaed materials, Nautilus provided the files in its possession to Murdaugh's counsel and asked they advise as to whether Murdaugh claimed privilege. Murdaugh asserted privilege.

45. Nautilus asked Murdaugh's counsel for a privilege log and no such log has been produced.

46. Nautilus has not produced materials sought by the Subpoena over which there has been a claim of attorney-client privilege by Murdaugh.

47. Nautilus contends the materials in question are not privileged.

48. Because Murdaugh's invocation of privilege has constrained Nautilus' ability to respond to the subpoena, there exists an actual and current controversy or uncertainty of legal relations between Nautilus and Murdaugh, and/or among Nautilus, Murdaugh, and the United States that requires resolution by this Court and a declaration of the rights and obligations of the parties arising out of the subpoena, coverage, and the claims.

49. Pursuant to 28 U.S.C. § 2201 and Rule 57, F.R.C.P., Nautilus requests a declaration from this Court that the materials in question are not privileged and that Nautilus is free to turn them over to the United States in accordance with the subpoena.

50. Further, Nautilus requests this Court declare the rights and obligations of Nautilus, Murdaugh, and the other Conspirators regarding the Irregularities, including that Murdaugh and the other Conspirators, through fraudulent and misleading statements and actions upon which Nautilus reasonably relied, caused Nautilus to contribute funds under the Policy to a sham settlement intended to enrich Murdaugh and his co-conspirators, and Nautilus' entitlement to recover those funds.

WHEREFORE, Nautilus requests this Court declare the rights and obligations of the parties arising out of the Irregularities regarding the coverage and the claim, as well as arising out of the service of the subpoena. Nautilus requests an award of treble damages, attorneys' fees, and punitive damages. Nautilus further requests relief that is just and proper based upon the facts as they shall be established during these proceedings.

**Respectfully submitted:**

This 11th day of May, 2022  
Charleston, South Carolina

*/s/ Jaan Rannik*
EPTING & RANNIK, LLC
Jaan G. Rannik (Fed I.D. No. 12621)
46A State Street
Charleston, SC 29401
P: (843) 377-1871
F: (843) 377-1310
jgr@epting-law.com

COUNSEL FOR NAUTILUS INSURANCE COMPANY