# EXHIBIT A

# NAUTILUS INSURANCE COMPANY

**Scottsdale, Arizona**

## PERSONAL UMBRELLA LIABILITY POLICY

### PART ONE - POLICY DECLARATIONS

This Declarations Page along with Part Two – Policy Provisions and any endorsements completes this policy.

| Policy Number: | PU386804 | | Agent Number: | 320900 | |
|---|---|---|---|---|---|

| Item 1: | Insured's Name: | R Alexander Murdaugh | Item 2: | Agent's Name: | SCU MOREHEAD CITY |
|---|---|---|---|---|---|
| | Mailing Address: | 515 Howy Street E | | Mailing Address: | 5039 Executive Drive |
| | | Hampton, SC 29924 | | | Morehead City, NC 28557 |

**Item 3:** Policy Period (Month/Day/Year):

From: 01/06/2018   To: 01/06/2019   At 12:01 A.M. Standard Time At Your Mailing Address Shown Above.

Term: 365 Days   Prior Policy: PU369403

**Item 4:** Insured's Occupation: Attorney   Spouse/Other Occupation:

**Item 5:** The Residence Premises Is Located At the Above Address Unless Otherwise Specified Below:

**IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS AND ENDORSEMENTS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE COVERAGE AS STATED IN THIS POLICY.**
This company has been approved by the director or his designee of the South Carolina Department of Insurance to write business in this State as an eligible surplus lines insurer, but is it not afforded guaranty fund protection.

| Item 6: | Limits of Liability | | |
|---|---|---|---|
| | (Defense Costs Are Provided Outside This Limit): | | |
| | Bodily Injury, Personal Injury, and Property Damage Liability Coverage: | $5,000,000 | Each Occurrence |
| | Uninsured/Underinsured Motorists Coverage: | $25,000 | Each Occurrence |
| | Identity Theft Coverage: | None | |

| Item 7: | Retained Limit (Self-Insured Retention) | |
|---|---|---|
| | Bodily Injury, Personal Injury, and Property Damage Liability Coverage: | NONE |
| | Uninsured/Underinsured Motorists Coverage: | SEE COVERAGE **B** IN POLICY PROVISION |

| Item 8: | Schedule of Underlying Insurance |
|---|---|

It is agreed by the insured that insurance policies providing the following coverage: (1) Are in force and will be maintained in force (whether collectible or not) for at least the minimum underlying limits of liability stated hereafter; (2) Insure all automobiles owned, or leased by or regularly furnished to the insured; (3) insure all premises owned, leased by, or leased to the insured; and (4) Insure all watercraft owned by the insured.

| TYPE OF COVERAGE | MINIMUM UNDERLYING LIMITS | | |
|---|---|---|---|
| Comprehensive Personal Liability or Homeowner's: | SEE ATTACHED SCHEDULE - PUM0005 | | |
| Automobile Liability: | SEE ATTACHED SCHEDULE - PUM0005 | | |
| Watercraft Liability: | SEE ATTACHED SCHEDULE - PUM0005 | | |

| Endorsements forming a part of this policy (designated by Endorsement Number) | | Premium: | $ | 2303.00 |
|---|---|---|---|---|
| Refer to Schedule Of Forms And Endorsements E003 | | Policy Fee (Fully Earned): | $ | 35.00 |
| | | Surplus Lines Tax | $ | 140.28 |
| | | Total Policy: | $ | 2478.28 |

| Date of Issue: 03/20/2018 | Countersigned By: X |
|---|---|
| SCOTTSDALE AZ 85260 | Licensed Resident Agent or Authorized Representative |

POLICY NUMBER:    PU386804
Named Insured:      R Alexander Murdaugh

## SCHEDULE OF FORMS AND ENDORSEMENTS

| PUM0001 | (10/13) | NIC Personal Umbrella Liability Dec |
| E003 | (01/16) | Schedule of Forms and Endorsements |
| PUM0003 | (06/14) | NIC Personal Umbrella Liability Policy |
| E906 | (10/15) | Service of Suit |
| E915 | (07/13) | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |
| PE0042 | (01/14) | NIC Privacy Notice |
| PUM0005 | (10/13) | Schedule of Underlying Insurance |
| PUM0006 | (10/13) | Schedule of Drivers |
| PUM0040SC | (10/13) | South Carolina Changes |

# Nautilus Insurance Company®

## An Arizona Corporation, a W. R. Berkley Company

# PERSONAL UMBRELLA LIABILITY POLICY

## PART TWO – POLICY PROVISIONS

**THIS POLICY JACKET ALONG WITH THE DECLARATIONS PAGE, COVERAGE FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE POLICY. PLEASE READ YOUR POLICY CAREFULLY.**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | DEFINITIONS | 2 |
| II. | INSURING AGREEMENT | 3 |
| | A. COVERAGES | 3 |
| | B. LIMITS OF LIABILITY | 3 |
| | C. DEFENSE AND SETTLEMENT | 4 |
| | D. SUPPLEMENTARY PAYMENTS | 4 |
| | E. POLICY PERIOD – TERRITORY | 4 |
| | F. PERSONS INSURED | 5 |
| III. | EXCLUSIONS | 5 |
| IV. | CONDITIONS | 9 |
| | A. PREMIUM | 9 |
| | B. INSURED DUTIES IN THE EVENT OF OCCURRENCE, CLAIM, OR SUIT | 9 |
| | C. MAINTENANCE OF UNDERLYING INSURANCE | 10 |
| | D. APPEALS | 10 |
| | E. ACTION AGAINST US | 10 |
| | F. PAYMENT OF A LOSS | 11 |
| | G. OTHER INSURANCE | 11 |
| | H. SUBROGATION | 11 |
| | I. CHANGES | 11 |
| | J. ASSIGNMENT | 11 |
| | K. LIBERALIZATION | 11 |
| | L. CANCELLATION | 11 |
| | M. NONRENEWAL | 12 |
| | N. BANKRUPTCY OR INSOLVENCY OF AN INSURED | 12 |
| | O. BANKRUPTCY OR INSOLVENCY OF AN UNDERLYING INSURER | 12 |
| | P. SEVERABILITY OF INSURANCE | 12 |
| | Q. REPRESENTATIONS/FRAUD | 12 |

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

Administrative Office:

7233 East Butherus Drive    Scottsdale, Arizona 85260    Telephone (480) 951-0905    Facsimile (480) 951-9730

We will provide the insurance described in this policy in consideration of the payment of the premium and in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy.

## I. DEFINITIONS:

    **A.** Throughout this policy, "you" and "your" refer to:

        **1.** The Named Insured shown in the Declarations; and

        **2.** The spouse if a resident of the same household. All references to spouse in this policy include an individual who is a party to a civil union or is in a domestic partnership recognized under state law, where applicable.

    **B.** "We", "us" and "our" refer to the Company providing this insurance.

    Other words and phrases are defined. They are in quotation marks when "used":

    **C.** "Automobile" means any land motor vehicle, trailer, or semi-trailer (including farm tractors, trailers, and implements) "used" to convey or transport persons or property other than in the conduct of the "business" of any "insured".

    **D.** "Bodily injury":

        **1.** Under Coverage **A,** "bodily injury" means bodily harm, shock, mental anguish, mental injury, humiliation, sickness or disease sustained by any person, which occurs during the "policy period", including death, required care, loss of services at any time resulting therefrom.

        **2.** Under Coverage **B**, "bodily injury" means "bodily injury" as defined in the Uninsured/Underinsured Motorists Insurance of the "underlying insurance", which is sustained during the "policy period".

    **E.** "Business" includes any activity performed for economic gain, including a trade, profession, or occupation; other than farming.

    **F.** "Insured" means any person or organization qualifying as an "insured" in Paragraph **F. Persons Insured** of **Section II – Insuring Agreement**. The insurance afforded applies separately to each "insured" against whom claim is made or suit is brought, except with respect to the limits of our liability.

    **G.** "Occurrence" means:

        **1.** An accident or accidental event, including continuous or repeated exposure to conditions, which results in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured";

        **2.** The commission of an offense set forth in the definition of "personal injury" below; or

        **3.** Any combination of **G.1.** or **G.2.** above in a single event or a series of related events.

    **H.** "Personal injury" means injury, other than "bodily injury" or "property damage", arising out of one or more of the following offenses, committed during the "policy period":

        **1.** False arrest, detention, or imprisonment;

        **2.** Malicious prosecution;

        **3.** Wrongful entry or eviction or other invasion of the right of privacy; or

        **4.** Oral or written publication of material which slanders or libels a person, organization or their goods, products, or services.

    **I.** "Policy period" means the period set forth in Item 3 of the Declarations, subject to the cancellation condition of this policy.

    **J.** "Property damage" means:

        **1.** Physical injury to or destruction of tangible property which occurs during the "policy period", including all resulting loss of "use" of such property; or

        **2.** Loss of "use" of tangible property which has not been physically injured or destroyed, provided such loss of "use" is caused by an "occurrence" during the "policy period".

K. "Recreational vehicle" means a land motor vehicle designed for use off public roads and not subject to any motor vehicle registration law.

L. "Relative" means any person related to you by blood, adoption, or marriage (other than your spouse) who is a resident of your household.

M. "Retained limit (self-insured retention)" means the amount of "ultimate net loss" set forth in Item 7 of the Declarations, which shall be paid by or on behalf of the "insured" before liability attaches to us.

N. "Ultimate net loss" means the sum actually paid or payable in cash as damages, as determined by:

1. A judgment against the "insured" in a suit on the merits; or

2. A settlement of a claim or suit with our prior written consent;

less all recoveries and salvages. But "ultimate net loss" does not include investigation, settlement, and legal expenses, including taxed court costs and premiums on bonds.

O. "Underlying insurance" means the insurance policies scheduled in Item 8 of the Declarations.

P. "Underlying limits" means the greater of:

1. The amounts set forth in Item 8 of the Declarations as the minimum "underlying limits"; or

2. The sum of the applicable limits of liability of all insurance available to the "insured" for injury or damage to which this policy applies (other than insurance purchased specifically to apply in excess of our limit of liability under this policy).

Q. "Use", "uses", "used", and "using" mean maintaining, entrustment to others, operating, loading, or unloading.

R. "Watercraft" means any craft, boat, vessel, or ship designed to transport persons or property on water.

## II. INSURING AGREEMENT:

### A. COVERAGES:

1. Coverage **A – Bodily Injury, Personal Injury And Property Damage Liability**

   We will pay on behalf of the "insured" the amount of "ultimate net loss", which the "insured" becomes legally obligated to pay:

   a. In excess of the "underlying limits", whether collectible or not, because of "bodily injury", "personal injury", or "property damage" to which this policy applies, caused by an "occurrence"; or

   b. In excess of the "retained limit (self-insured retention)", because of "bodily injury", "personal injury", or "property damage" to which this policy applies, caused by an "occurrence" which is not covered by, or which is not required to be covered by, the "underlying insurance".

2. Coverage **B – Excess Uninsured/Underinsured Motorists Insurance**

   We will pay those sums which you or your legal representative shall become legally entitled to recover as damages to which this policy applies because of "bodily injury" which is covered by the Uninsured/Underinsured Motorists Insurance of the Automobile Liability Policy scheduled in Item 8 of the Declarations, less applicable limits of liability of such Uninsured/Underinsured Motorists Insurance.

### B. LIMITS OF LIABILITY:

1. Our liability is limited as follows, regardless of the number of:

   a. "Insureds" under this policy;

   b. Persons or organizations that sustain injury or damages;

   c. Claims made or suits brought;

   d. Vehicles covered under this policy;

   e. Vehicles involved in an accident; or

   f. Coverages under this policy.

2. The Each Occurrence limit of liability set forth in Item 6 of the Declarations is our total liability for the sum of all "ultimate net loss" under Coverage **A** or Coverage **B** resulting from any one loss.

3. For the purpose of determining the limit of our liability, all "bodily injury", "personal injury", and "property damage" arising out of continuous or repeated exposure to substantially the same general conditions, shall be considered as arising out of one "occurrence".

## C. DEFENSE AND SETTLEMENT:

1. With respect to "occurrences" which are covered under Coverage **A** of this policy but which are not covered or required to be covered by the "underlying insurance", if no other insurer has an obligation to do so, we shall defend any suit against the "insured" seeking damages on account of "bodily injury", "personal injury", or "property damage", even if any of the allegations of the suit are groundless, false, or fraudulent. We shall have the right to make such investigation and settlement of any claims of suit as it deems expedient.

2. Except as specifically provided in this section, we shall have no duty or obligation to assume the responsibility for the investigation, settlement, or defense of any claim made or suit brought against the "insured" under Coverage **A**.

3. Except as specifically provided in this section, we shall have no duty or obligation to assume the responsibility for the investigation, settlement, or defense of any claim made by the "insured", or suit brought on behalf of the "insured" under Coverage **B**.

4. However, we shall have the right and shall be given the opportunity to investigate and to be associated in the control of any claim or suit which may, in our opinion, create liability on our part under the terms of this policy.

5. We shall not be obligated to pay any claim or judgment or to defend any suit after our applicable limit of liability has been exhausted by the payment of judgments or settlements.

## D. SUPPLEMENTARY PAYMENTS:

1. We will pay, in addition to the applicable limit of liability, all expenses incurred by us.

2. We will also pay reasonable expenses incurred by the "insured" at our request including lost wages up to $100 per day not to exceed a total of $5,000.

3. With respect to "occurrences" covered under Coverage **A**, we will pay, in addition to the applicable limit of liability:

    a. All costs taxed against the "insured" in any suit defended by us;

    b. That portion of any judgment thereon which accrues before or after entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed our limit of liability thereon; and

    c. Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the "insured" because of accident or traffic law violation arising out of the "use" of any vehicle to which this policy applies, but we shall have no obligation to apply for or furnish any such bonds.

    However, we shall have no obligation to pay Supplementary Payments which are payable under the "underlying insurance".

4. In addition, in any country where we may be prevented by law or otherwise from carrying out this agreement, we shall pay any expense incurred with our written consent in accordance with this agreement.

## E. POLICY PERIOD – TERRITORY:

1. This policy applies under Coverage **A** to "occurrences" happening during the "policy period" anywhere in the world.

2. This policy applies under Coverage **B** to "bodily injury" which is sustained during the "policy period" within the policy territory defined in the Uninsured/Underinsured Motorists Insurance of the Automobile Liability Policy scheduled in Item 8 of the Declarations.

**F. PERSONS INSURED:**

1. Each of the following is an "insured" under Coverage **A** to the extent set forth below:

   a. With respect to "automobiles" or "watercraft" to which this policy applies:

      (1) You while "using" any "automobile" or "watercraft";

      (2) Any "relative" "using" an "automobile" or "watercraft" owned by or furnished for your regular "use", or any "relative" if such "use" is with the owner's permission; or

      (3) Any of the following while "using" an "automobile" or "watercraft" owned by you or in your care:

         (a) Any person "using" the "automobile" or "watercraft" with your permission; or

         (b) Any person or organization legally responsible for the "use" of such "automobile" or "watercraft", but only if no other insurance of any kind is available to that person or organization for such liability.

      (4) None of the following is an "insured" under this subsection:

         (a) Any person or organization that is either employed or engaged in the "business" of selling, repairing, servicing, renting, towing, transporting, leasing, parking, storing "automobiles" or "watercraft";

         (b) The owner or lessee (including any agent or employee thereof) of an "automobile" or "watercraft" in your care, but this provision does not apply to you or any "relative";

   b. With respect to animals to which this policy applies to:

      (1) You;

      (2) Any "relative"; or

      (3) Any other person or organization (other than those providing professional animal care services) legally responsible for animals owned by you or any "relative", but only if no other insurance of any kind is available to that person or organization for such liability;

   c. Except as provided under **F.1.a.** and **F.1.b.** above:

      (1) You;

      (2) Any "relative"; or

      (3) Any person under the age of 21, other than a "relative", who is in your care or the care of a "relative".

2. Any person is an "insured" under Coverage **B** who qualifies under the **Persons Insured, Who Is Insured**, or equivalent provisions of the Uninsured/Underinsured Motorists Insurance of the Automobile Liability Policy scheduled in Item 8 of the Declarations.

## III. EXCLUSIONS:

A. The following is not covered under Coverage **A**:

   1. Any obligation for which the "insured" or any carrier as his insurer may be held liable under any workers compensation, unemployment compensation or disability benefits law, or under any similar law;

   2. "Bodily injury" or "property damage" which is expected or intended from the standpoint of the "insured". This exclusion will not apply if:

      a. You were acting in good faith to protect person or property;

      b. Your actions were not fraudulent, criminal, or malicious; and

      c. The "underlying insurance" provides coverage for the loss;

   3. "Property damage" to:

      a. Property owned by the "insured";

      b. Aircraft rented to, "used" by, or in the care, custody, or control of the "insured"; or

      c. Any property rented to, utilized or occupied by, or in the care, custody, or control of the "insured", to the extent that the "insured" has otherwise provided insurance therefore;

   4. "Bodily injury" or "property damage" arising out of the ownership or "use" of any aircraft;

5. "Bodily injury" or "property damage" occurring away from the premises owned by, rented to, or controlled by you and arising out of the ownership or "use" of any "watercraft" or "recreational vehicle" owned by the "insured". But this exclusion does not apply if minimum primary limits for such "watercraft" are specified in Item 8 of the Declarations and such coverage is in force on the date of the "occurrence" for which claim is made hereunder;

6. "Bodily injury", "property damage", or "personal injury" arising out of the rendering of or failure to render professional services by the "insured" or by any person for whose acts or omissions the "insured" is legally responsible;

7. "Bodily injury", "property damage", or "personal injury" arising out of:

   a. "Business" pursuits of the "insured"; or

   b. Property at or from which a "business" is conducted by the "insured" and the damage is as a result of the "business";

8. "Bodily injury" or "property damage" arising out of the ownership or "use" of any "automobile" or other motor vehicle in the conduct of the "insured's" "business", but this exclusion does not apply to a "private passenger automobile" registered to you and covered under an Automobile Liability Policy scheduled in Item 8 of the Declarations.

   As "used" in this exclusion, "private passenger automobile" means:

   a. A motor home; or

   b. Any other land motor vehicle designed for carrying not more than ten persons (including the driver) and "used" for the transportation of persons;

   But "private passenger automobile" does not include a motor truck or truck tractor (other than a non-commercial pick-up truck of less than one ton capacity);

9. "Bodily injury" or "property damage" arising out of the ownership or "use" of any "automobile" or other motor vehicle while being "used" as a public livery conveyance, or while carrying persons for a fee or other consideration, expressed or implied; except for a share-the expense car pool;

10. "Contamination" to any "environment" by "pollutants" that are introduced at any time, anywhere, in any way including any injury, damage, or "expense" arising out of such "contamination" including, but not limited to, cleaning up, remedying, or detoxifying such "contamination"; or any request, demand, or order issued or made pursuant to any environmental protection or environmental liability statute or regulation; or to payment for the investigation or defense of any loss, claim, or damage related to the foregoing.

    As "used" in this exclusion:

    a. "Contamination" means any unclean, unsafe, damaging, injurious, or unhealthful condition arising out of the presence of any "pollutant" or combination of "pollutants", whether permanent or transient, in any "environment";

    b. "Environment" includes, but is not limited to any person, any man-made object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air, or any other feature of the Earth or its atmosphere, whether or not altered, developed, or cultivated, and whether or not owned, controlled, or occupied by the "insured";

    c. "Expense" includes any "expense", fine, penalty, or assessment;

    d. "Pollutant" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

11. Any liability of the "insured" directly or indirectly occasioned by, happening through, or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

12. "Bodily injury", "property damage", or "personal injury" arising out of, resulting from, or caused or contributed to by:

   a. Any fungus, mildew or mold, or exposure to any fungus, mildew, or mold;

   b. The costs of abatement, mitigation, removal, or deposal of any fungus, mildew, or mold;

   c. Any supervision, instructions, recommendations, warnings, or advice given, or which should have been given, in connection with the above;

   d. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage, either in equity or in tort; or

   e. The duty to defend or pay sums which may be owed under the Supplementary Payments provisions of the policy;

13. Any liability to an employee or former employee arising out of a contract of employment with any "insured", including, but not limited to wrongful termination or discharge;

14. Any liability arising from the "insured's" activities as a director, officer, committee person, volunteer worker or other activities performed in any official capacity for any corporation, association, public authority, charitable institution or other legal entity regardless of whether such activities are performed with or without a fee or other consideration; but this exclusion does not apply to "bodily injury" or "property damage" arising out of activities performed by you, without fee, for not for profit organizations, provided such "bodily injury", "property damage", or "personal injury" is also covered under a policy scheduled in Item 8 of the Declaration;

15. Any claim made or suit brought against the "insured" because of "bodily injury" or "property damage" arising out of, contributed to, or resulting from, directly or indirectly, a disease which is transmitted by an "insured" through sexual contact;

16. "Personal injury", except to the extent that insurance therefore is provided by the "underlying insurance";

17. Any liability imposed on the "insured" or the "insured's" insurer under any uninsured motorists, underinsured motorists, or "automobile" no-fault or first party "bodily injury" or "property damage" law;

18. Any liability arising out of any "automobile" provided by the employer of any "insured", its replacement or substitute unless "underlying insurance" provides coverage for the loss; or

19. Any loss arising out of the ownership, maintenance, "use", loading, unloading, entrustment, or supervision of an "automobile", motorcycle, "recreational vehicle", or "watercraft" while practicing for or competing in a race, speed contest, or other competition by the "insured", whether organized or not.

20. "Bodily injury", "property damage", or "personal injury" arising out of:

   a. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any "insured"; or

   b. The negligent:
      (1) Employment;
      (2) Investigation;
      (3) Supervision;
      (4) Reporting to the property authorities, or failure to so report; or
      (5) Retention;

      of a person for whom any "insured" is or ever was legally responsible and whose conduct would be excluded by Paragraph 20.a. above.

B. This policy does not apply under Coverage B to:

   1. "Bodily injury" occurring at any time during which you do not maintain underlying uninsured/ underinsured motorist insurance; or

   2. Any "bodily injury" that is not covered or collectible for any reason under the uninsured/underinsured motorists insurance of the Automobile Liability Policy(ies) scheduled in Item 8 of the Declarations.

C. This insurance does not apply to any fines, penalties, punitive or exemplary damages of any kind.

**D.** This insurance does not apply under any liability coverage:

1. To "injury", sickness, disease, death or "destruction":

   **a.** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

   **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Expense Coverage, to expenses incurred with respect to "bodily injury", sickness, disease, or death resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3. Under any Liability Coverage, to "injury", sickness, disease, death or "destruction" resulting from the "hazardous properties" of "nuclear material", if:

   **a.** The "nuclear material" (1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

   **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, "used", processed, stored, transported, or disposed of by or on behalf of an "insured"; or

   **c.** The "injury", sickness, disease, death or "destruction" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or "use" of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **D.3.c.** applies only to "injury" to or "destruction" of property at such "nuclear facility".

4. As "used" in this exclusion:

   **a.** "Hazardous properties" includes radioactive, toxic, or explosive properties;

   **b.** "Nuclear material" means "source material", special "nuclear material" or by-product material;

   **c.** "Source material", special "nuclear material" and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   **d.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been "used" or exposed to radiation in a "nuclear reactor";

   **e.** "Waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraphs **(1)** or **(2)** thereof;

   **f.** "Nuclear facility" means:

      **(1)** Any "nuclear reactor";

      **(2)** Any equipment or device designed or "used" for (1) separating the isotopes of uranium of plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

      **(3)** Any equipment or device "used" for the processing, fabricating or alloying of special "nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      **(4)** Any structure, basin, excavation, premises or place prepared or "used" for the storage or disposal of "waste";

      and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises "used" for such operations;

**g.** "Nuclear reactor" means any apparatus designed or "used" to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**h.** With respect to "injury" to or "destruction" of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

## IV. CONDITIONS:

### A. PREMIUM:

The premium for this policy is as stated in the Declarations. You shall promptly notify us in the event there is a change in the coverage afforded by the "underlying insurance".

Notification is not required to us if you acquire or dispose of any premises, "automobiles", or "watercraft" during the "policy period". However, notification is required at time of renewal.

### B. INSURED DUTIES IN THE EVENT OF OCCURRENCE, CLAIM, OR SUIT:

In case of an "occurrence" or offense likely to involve the insurance under this policy, you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our authorized representative as soon as practicable. Such notice shall contain:

   **a.** The identity of the policy and Named Insured shown in the Declarations;

   **b.** Information as to the time, place and circumstances of the "occurrence" or offense; and

   **c.** The names and addresses of any claimants and witnesses.

2. If claim is made or suit is brought against an "insured" for injury or damage with respect to which insurance is afforded under this policy, the "insured" must:

   **a.** Notify us immediately;

   **b.** Cooperate with us in the investigation, settlement, or defense of any claim or suit;

   **c.** Promptly forward to us copies of every demand, notice, summons, or other process related to the "occurrence" or offense; and

   **d.** At our request,:

      **(1)** Assist in:

         **(a)** Making settlements;

         **(b)** The conduct of suits; and

         **(c)** Enforcing any right of contribution or indemnity against any person or organization who may be liable to the "insured" because of injury or damage with respect to which insurance is afforded under this policy;

      **(2)** Attend hearings and trials; and

      **(3)** Assist in securing and giving evidence and obtaining the attendance of witnesses.

3. The "insured" shall not, except at his own expense, voluntarily make any payment, assume any obligation, or incur any expense.

## C. MAINTENANCE OF UNDERLYING INSURANCE:

1. With respect to Coverage **A**:

   a. You must maintain the "underlying insurance" in full effect during the "policy period" for the coverages, and minimum "underlying limits" set forth in Item 8 of the Declarations. Such insurance shall not afford sub-limits of liability with respect to any coverage or driver; and

   b. If any "underlying insurance" is cancelled or nonrenewed, you must notify us at once.

   c. Your failure to comply with this agreement shall not invalidate this policy. However, if any portion of the "underlying insurance" terminates during the "policy period", is uncollectible for any reason, or has applicable limits of liability lower than the minimum required amounts set forth in Item 8 of the Declarations, this policy shall apply in the same manner it would have applied had the "underlying insurance" been in force, fully collectible, and with the minimum required limits of liability.

2. With respect to Coverage **B**:

   a. You must maintain uninsured/underinsured motorists insurance on your "underlying insurance" in full effect during the "policy period"; and

   b. If any "underlying insurance" terminates during the policy period or is uncollectible for any reason the Excess Uninsured/Underinsured Motorists Insurance (Coverage **B**) of this policy does not apply.

## D. APPEALS:

In the event the "insured" or any other interest elects not to appeal a judgment in excess of the "underlying limits", we may elect to do so and shall be liable, in addition to the applicable limit of liability hereunder, for the legal expenses at such appeal (including the taxable court costs and interest incidental thereto). However, in no event shall our total liability exceed the applicable limit of liability set forth in Item 6 of the Declarations, plus the expenses of such appeal.

## E. ACTION AGAINST US:

1. No legal action can be brought against us under Coverage **A** unless, as a condition precedent thereto:

   a. There has been full compliance with all of the terms of this policy;

   b. The "insured" has paid or shall have become legally obligated to pay the full amount of the "underlying limits";

   c. Any applicable "retained limit (self-insured retention)" has been paid by or on behalf of the "insured"; and

   d. The amount of the "insured's" obligation to pay "ultimate net loss" has been finally determined.

2. No legal action can be brought against us under Coverage **B** unless, as a condition precedent thereto:

   a. There has been full compliance with all of the terms of this policy;

   b. The Uninsured/Underinsured Motorists Insurance of the "underlying insurance" has been paid to the "insured" in the full amount of its limit of liability;

   c. The amount of the "insured's" damages have been finally determined either by judgment after actual trial or by written agreement of the "insured", the applicable "underlying insurer", and us.

   d. The "insured" has taken all appropriate legal action against anyone responsible for the "bodily injury".

3. No person or organization shall have any right under this policy to join us as a party to any action against the "insured", nor shall we be impeded by the "insured" or his legal representative.

**F. PAYMENT OF A LOSS:**

    **1.** Under Coverage **A**, we will pay on behalf of the "insured" the amount of "ultimate net loss" that is within our limit of liability and to which this policy applies.

    **2.** Under Coverage **B**, we will pay the "insured" the amount of damages that is within our limit of liability and to which this policy applies.

    Any claim against us by the "insured" under Coverage **A** or Coverage **B** of this policy shall be made within twelve months after the "insured" pays, becomes legally obligated to pay, or becomes legally entitled to collect an amount of "ultimate net loss" within our limit of liability under Coverage **A** or Coverage **B**.

**G. OTHER INSURANCE:**

    The insurance afforded by this policy shall be excess over any other insurance collectible by the "insured", irrespective of whether such other insurance is stated to be primary, contributing, excess, contingent, or otherwise; provided, however, this condition shall not apply to insurance purchased specifically to apply in excess of our limit of liability under this policy.

**H. SUBROGATION:**

    Because this policy provides excess insurance, the "insured's" right of recovery cannot always be exclusively subrogated to us. It is, therefore, agreed that in case of any payment hereunder, we will act in concert with all other interests concerned (including the "insured"), in the enforcement of any subrogation rights or in the recovery of amounts by any other means. The apportioning of any amounts so recovered shall follow the principle that any interest (including the "insured") that has paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them. We shall then be reimbursed out of any balance then remaining up to the amounts paid under this policy. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests concerned (including the "insured") in the ratio of their respective recoveries or, in the event of a totally unsuccessful attempt to recover, in the ratio of the respective amounts sought to be recovered. Lastly, any interest of this policy (including the "insured") is entitled to claim any residual remaining value in excess of the all amounts paid by us.

**I. CHANGES:**

    This policy contains all the agreements between you and us.  Its terms may not be changed or waived except by endorsement issued by us.  If a change requires a premium adjustment, we will adjust the premium as of the effective date of the change.

**J. ASSIGNMENT:**

    Assignment of interest under this policy shall not bind us until our consent is endorsed hereon. If, however, you die, such insurance as is afforded by this policy shall apply:

    **1.** To the your legal representative, as you, but only while acting within the scope of his duties as such; and

    **2.** With respect to your property, to the person having proper temporary custody thereof, as "insured", but only until the appointment and qualification of the legal representative.

**K. LIBERALIZATION:**

    If we make any changes in Personal Umbrella Liability policy provisions that extend or broaden the coverages without additional premium, such changes shall apply to this policy, provided the proper insurance regulatory agency approves and allows the changes during the "policy period".

**L. CANCELLATION:**

    **1.** This policy may be cancelled by you by mailing to us written notice stating when thereafter the cancellation shall be effective.

2. This policy may be cancelled by us by mailing a written notice to you at the address shown on the Declarations for the following reasons:

   a. Non-payment of premium in which a minimum of ten (10) days notice will be given.

   b. For any other reason:

      (1) When the policy has been in effect for less than ninety (90) days and is not a renewal, a minimum of twenty (20) days notice will be given; or

      (2) When the policy has been in effect at least ninety (90) days or is a renewal, a minimum of forty-five (45) days notice will be given.

3. Proof of mailing will be sufficient proof of notice.

4. If we cancel, the refund shall be computed pro rata.

5. If you cancel, the refund shall be computed in accordance with the customary short rate procedures (pro rata X 0.90).

6. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation.

7. Our check or the check of our representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to you.

## M. NONRENEWAL:

1. We may elect not to renew this policy.

2. We may do so by mailing a written notice to you at the address shown on the declarations page at least forty-five (45) days prior to the expiration date of this policy.

## N. BANKRUPTCY OR INSOLVENCY OF AN INSURED:

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall neither:

1. Relieve us of any of our obligations under this policy; nor

2. Operate to cause this policy to become primary in the event the "insured" is unable to satisfy the "retained limit (self-insured retention)" either because of insufficient "underlying insurance" or insufficient personal funds.

## O. BANKRUPTCY OR INSOLVENCY OF AN UNDERLYING INSURER:

In the event of bankruptcy or insolvency of any "underlying insurer", the insurance afforded by this policy shall not replace such "underlying insurance", but shall apply as if the "underlying insurance" was valid and collectible.

## P. SEVERABILITY OF INSURANCE:

This insurance applies separately to each "insured". However, this provision will not increase our limit of liability for any one "occurrence" or offense.

## Q. REPRESENTATIONS/FRAUD:

By acceptance of this policy, you agree:

1. The statements in the application, in the Declarations, and in any subsequent notice relating to "underlying insurance" are your agreements and representations;

2. This policy is issued and continued in reliance upon the truth of such statements; and

3. This policy embodies all agreements existing between you and us or any of our agents relating to this insurance.

4. We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any "occurrence" or offense for which coverage is sought under this policy.

## SERVICE OF SUIT

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, "suit" or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail  such process or a true copy thereof.

It is further agreed that service of process in such "suit" may be made upon Thomas Joyce, or his nominee, of the Company at 7233 East Butherus Drive, Scottsdale, Arizona 85260, and that in any "suit" instituted against any one of them upon this policy, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

E906 (10/15)

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC) ADVISORY NOTICE TO POLICYHOLDERS

## PLEASE READ THIS NOTICE CAREFULLY.

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorist organizations and narcotics traffickers as Specially Designated Nationals. This list can be located on the United States Treasury's web site: http://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# NAUTILUS INSURANCE COMPANY
# PRIVACY NOTICE

We are a member of the W. R. Berkley Corporation ("Berkley") group of companies. Each member of the Berkley group of companies ("Affiliates") understands your concern about privacy of information we collect. We are dedicated to protecting the confidentiality and security of your nonpublic personal information we collect in accordance with applicable laws and regulations. This notice describes our privacy policy and describes how we treat your nonpublic personal information ("Information").

### Why We Collect and How We Use Information

We collect and use Information for business purposes with respect to our insurance products and services and other business relations involving our customers. We gather this Information to evaluate your request for insurance, to evaluate insurance claims, to administer, maintain or review the insurance policy, and to process insurance transactions. We also accumulate certain information about you as may be required or permitted by law.

Your insurance agent or broker also collects this Information and may use it to help with your overall insurance program or to market additional products and services to you. We may also use Information to offer you other products or services that we or our Affiliates provide.

### How We Collect Information

Most Information collected by us is provided by you or your insurance agent or broker to us. We obtain Information from (i) applications or other forms submitted by you, your insurance agent or broker or your authorized representatives to us and our Affiliates, and (ii) your transactions with us or our Affiliates. We may also obtain Information from other sources such as (i) consumer reporting agencies, (ii) other institutions or information services providers, (iii) employers, or (iv) other insurers.

### Information We Disclose

We disclose any Information which we believe is necessary to conduct our business as permitted by applicable law or where required by applicable law. This disclosure may include (i) Information we receive from you on applications or other forms provided to us and our Affiliates, such as names, addresses, social security numbers, assets, employer information, salaries, etc. (ii) Information about your transactions with us and our Affiliates, such as policy coverages, premiums, payment history, etc., and (iii) Information we receive from a consumer reporting agency, such as credit worthiness and credit history.

### To Whom We Disclose Information

We may, as permitted or required by applicable law, disclose your Information to nonaffiliated third parties, such as (i) insurance agent or broker, (ii) independent claims adjusters, (iii) insurance support organizations, (iv) processing companies , (v) actuarial organizations, (vi) law firms, (vii) other insurance companies involved in an insurance transaction with you, (viii) law enforcement, regulatory, or governmental agencies, (ix) courts or parties therein pursuant to a subpoena or court order, (x) businesses with whom we have a marketing agreement, or (xi) our Affiliates.

We may share Information with our Affiliates so that they may offer products and services from the Berkley group of companies or to analyze our book of business and to consolidate necessary information. We do not disclose Information to other companies or organizations not affiliated with us for the purpose of using Information to sell their products or services. For example, we will not sell your name to unaffiliated mail order or direct marketing companies.

### How We Protect Information

We require our employees to protect the confidentiality of Information as required by applicable law. Access to Information by our employees is limited to administering, offering, servicing, processing or maintaining of our products and services. We also maintain physical, electronic and procedural safeguards designed to protect Information. When we share or provide Information to other persons or organizations, we contractually obligate them, if required by law, to treat Information as confidential and conform to our privacy policy and applicable laws and regulations.

### Correction and Access to Information

Upon our receipt of your written request to us, we will, generally, make available Information for your review. If you believe the Information we have about you is incorrect or inaccurate, you may request that we make any necessary corrections, additions or deletions. If we agree with you, we will correct our records if required by applicable law. If we do not agree, you may submit to us a short statement of dispute, which we will include in any future disclosure by us of such Information if required by applicable law.

If you have any questions about our Privacy Policy or the information contained in our files about you, please contact us at our web-site, www.nautilusinsgroup.com, via email at nic_regulatory@nautilus-ins.com, toll-free at 1-800-842-8972 or write to us at Nautilus Insurance Company, 7233 E. Butherus Drive, Scottsdale, AZ 85260.

PE0042 (01/14)

**Endorsement #:**   0

**This endorsement, effective:**  01/06/2018

**Forms a part of policy number:**   PU386804

**Issued to:**   R Alexander Murdaugh

**By:**   NAUTILUS INSURANCE COMPANY

**PERSONAL UMBRELLA**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF UNDERLYING INSURANCE

**Type Of Coverage** and **Minimum Underlying Limits** of Item 8 **Schedule Of Underlying Insurance** on the Declarations is amended to read as follows:

### A.   COMPREHENSIVE PERSONAL LIABILITY OR HOMEOWNERS:

| Location: | 515 Howy Street E, Hampton, SC 29924 | | | |
|---|---|---|---|---|
| Carrier: TBD | | Policy Number: | Limit: | 1,000,000 |

| Location: | 4157 Mozelle Rd, Islandton, SC 29929 | | | |
|---|---|---|---|---|
| Carrier: TBD | | Policy Number: | Limit: | 1,000,000 |

| Location: | 4147 Mozelle Rd, Islandton, SC 29929 | | | |
|---|---|---|---|---|
| Carrier: TBD | | Policy Number: | Limit: | 1,000,000 |

| Location: | 3606 Big Bay Dr, Edisto Island, SC 29438 | | | |
|---|---|---|---|---|
| Carrier: TBD | | Policy Number: | Limit: | 1,000,000 |

### B.   SCHEDULE OF RENTAL UNITS:

| Location: | | | Units: | |
|---|---|---|---|---|
| Carrier: | | Policy Number: | Limit: | |

### C.   SCHEDULE OF FARMS & VACANT LAND:

| Location: | 4157 Mozelle Rd, Islandton, SC 29929 | | Acres: | 1700 |
|---|---|---|---|---|
| Carrier: TBD | | Policy Number: | Limit: | 1,000,000 |

### D.   SCHEDULE OF AUTOMOBILE LIABILITY:

| Year: | 2012 | Make: | Land Rover | Model: | Range Rover | |
|---|---|---|---|---|---|---|
| Carrier: Travelers | | | Policy Number: | | Limit: | 500,000 |

| Year: | 2010 | Make: | Ford | Model: | F150 | |
|---|---|---|---|---|---|---|
| Carrier: Travelers | | | Policy Number: | | Limit: | 500,000 |

| Year: | 2008 | Make: | Ford | Model: | F250 | |
|---|---|---|---|---|---|---|
| Carrier: Travelers | | | Policy Number: | | Limit: | 500,000 |

**Endorsement #:**   0

**This endorsement, effective:**  01/06/2018

**Forms a part of policy number:**   PU386804

**Issued to:**   R Alexander Murdaugh

**By:**   NAUTILUS INSURANCE COMPANY

| Year: | 1999 | Make: | Ford | | Model: | F250 | |
|-------|------|-------|------|--|--------|------|--|
| Carrier: | Travelers | | Policy Number: | | | Limit: | 500,000 |

### E.   SCHEDULE OF WATERCRAFT:

| Description: | 2006 Sea Hunt | | | | Units: | 1 |
|--------------|---------------|--|--|--|--------|---|
| Carrier: | Travelers | Policy Number: | | | Limit: | 500,000 |

| Description: | 2007 Grady White Marlin | | | | Units: | 1 |
|--------------|-------------------------|--|--|--|--------|---|
| Carrier: | Travelers | Policy Number: | | | Limit: | 500,000 |

All other terms and conditions remain unchanged.

**Endorsement #:**  0

**This endorsement, effective:**  01/06/2018

**Forms a part of policy number:**  PU386804

**Issued to:**  R Alexander Murdaugh

**By:**  NAUTILUS INSURANCE COMPANY

**PERSONAL UMBRELLA**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF DRIVERS

| Name: | R Murdaugh | | |
|---|---|---|---|
| License #: | 008505908 | License State:  SC | Date of Birth:  05/27/1968 |

| Name: | Maggie Murdaugh | | |
|---|---|---|---|
| License #: | 004020971 | License State:  SC | Date of Birth:  09/15/1968 |

| Name: | Paul Murdaugh | | |
|---|---|---|---|
| License #: | 103573967 | License State:  SC | Date of Birth:  04/14/1999 |

| Name: | Richard Murdaugh | | |
|---|---|---|---|
| License #: | 102667183 | License State:  SC | Date of Birth:  04/11/1996 |

All other terms and conditions remain unchanged.

**Endorsement No.:** 0

**This endorsement, effective:** 01/06/2018

**Forms a part of policy number:** PU386804

**Issued to:** R Alexander Murdaugh

**By:** NAUTILUS INSURANCE COMPANY

**PERSONAL UMBRELLA**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SOUTH CAROLINA CHANGES

**A.** Condition **L. Cancellation** of **Section IV – Conditions** is replaced by the following:

   **1.** You may cancel this Policy at any time by returning it to us or mailing written notice to us stating when thereafter the cancellation shall be effective.

   **2.** We may cancel this Policy as stated below by letting you and, if any, your insurance agent know in writing of the date cancellation takes effect. This cancellation notice may be delivered or mailed to you and your agent at the mailing addresses shown in the Declarations or the last known addresses.

     Proof of mailing will be sufficient proof of notice.

     **a.** When you have not paid the premium, we may cancel at any time by letting you and your agent know at least 10 days before the date cancellation takes effect.

     **b.** For any other reason, we may cancel by letting you and your agent know at least 30 days before the date cancellation takes effect in all other cases.

   **3.** If we cancel this Policy, the premium for the period from the date of cancellation to the expiration date will be refunded pro- rata.

   **4.** If you cancel this Policy, the premium for the period from the date of cancellation to the expiration date will be refunded using the customary short rate procedures (pro rata X 0.90).

   **5.** If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it within a reasonable time after the date of cancellation takes effect.

**B.** Condition **M. Nonrenewal** of **Section IV – Conditions** is replaced by the following:

We may elect not to renew this policy. We may do so by giving the following written notification to you and your agent:

   **1.** If this Policy was written for a term of one year or less, we may elect not to renew this Policy by written notification at least:

     **a.** 60 days before the expiration date of the policy if such date is on or after November 1 and before June 1; or

     **b.** 90 days before the expiration date of the policy if such date is on or after June 1 and before November 1.

   **2.** If this policy was written for a term of more than one year or for an indefinite term, we may elect not to renew this policy by giving written notification at least:

     **a.** 60 days before the anniversary date of the policy if such date is on or after November 1 and before June 1; or

     **b.** 90 days before the anniversary date of the policy if such date is on or after June 1 and before November 1.

The nonrenewal notice, stating the precise reason for nonrenewal, may be delivered or mailed to you and your agent at the mailing addresses shown in the Declarations or the last known addresses.

Proof of mailing will be sufficient proof of notice.

All other terms and conditions remain unchanged.