UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | Case No.: 2:22-cv-1307-RMG |
| ) | |
| Petitioner, ) | **DEFENDANT PALMETTO** |
| vs. ) | **STATE BANK'S MOTION FOR** |
| ) | **PROTECTIVE ORDER AND** |
| RICHARD ALEXANDER MURDAUGH, SR., ) | **OBJECTIONS TO PLAINTIFF'S** |
| CORY FLEMING, MOSS & KUHN, P.A., CHAD ) | **DEPOSITION NOTICE** |
| WESTENDORF, PALMETTO STATE BANK, ) | **(Memorandum Incorporated)** |
| and THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondents. ) | |

Defendant Palmetto State Bank ("PSB") hereby moves for a protective order placing reasonable limits on the time period covered by, and striking or modifying certain topics listed in, a Second Amended Rule 30(b)(6) Deposition Notice, attached as Exhibit 1, that the Plaintiff, Nautilus Insurance Company, has served on PSB. This Motion is made in accordance with Rules 26 and 30 of the Federal Rules of Civil Procedure. As explained in detail below, this Motion is necessary and should be granted to enforce the limits on discovery under the federal rules and to protect PSB from discovery abuse and ambush.[1]

**BACKGROUND**

All the allegations in this case relate to a 2019 settlement of wrongful death and survival claims of the Estate of Gloria Satterfield. Mrs. Satterfield fell at property owned by Alex Murdaugh ("Murdaugh") on February 2, 2018, and died less than a month later, on February 26, 2018. See Am. Compl. ¶11 [ECF-8]. The Amended Complaint alleges that, following Mrs. Satterfield's death, Defendant Murdaugh made several false statements, beginning March 22, 2018, to Nautilus,

---

[1] The undersigned counsel affirms that prior to filing this Motion he conferred with opposing counsel and attempted in good faith to resolve the matter. See Letter to J. Rannik, dated June 15, 2023, attached as Exhibit 2, and Letter to T. Gressette and J. Clement, dated June 19, 2023, attached as Exhibit 3.

id. at ¶22, an insurance company who had issued a policy providing umbrella coverage to Murdaugh. Id. at ¶ 10. The Amended Complaint states that, by making the false statements to Nautilus, Murdaugh "sought to mislead Nautilus and force it to contribute to a 'settlement' that was not real." Id. at ¶23. According to the Amended Complaint, Nautilus relied upon Murdaugh's false statements and disbursed funds under the umbrella policy to settle the claims of Mrs. Satterfield's estate against Murdaugh. Id. at ¶24.

Nautilus disbursed the settlement funds from a Wells Fargo Bank, N.A. account; the Wells Fargo check was made payable to "Chad Westendorf as Personal Representative of the Estate of Gloria Satterfield & Moss Kuhn & Fleming PA as attorney." See Settlement Check, dated April 18, 2019, attached as Exhibit 4, at p. 1 (Nautilus_002565). The check was subsequently deposited into Defendant Moss, Kuhn & Fleming, P.A.'s IOLTA trust account at BB&T. See Ex. 4 at p. 2 (Nautilus_002566); see also Am. Compl. at ¶14(g) [ECF-8]. Next, according to the Amended Complaint, Defendant Cory Fleming "disbursed the funds (minus fees of over $600,000) to an account created by Murdaugh in the name of 'Forge' and controlled by Murdaugh." Am. Compl. at ¶14(g) [ECF-8]. Although not alleged in the Amended Complaint, it is widely known that the fictitiously named "Forge" account was maintained by Murdaugh at Bank of America.

The settlement funds diverted by Murdaugh to his "Forge" account never passed through any account at PSB, and PSB was not paid any of the $600,000 that the defendant law firm allegedly held back in fees. The Amended Complaint does not allege otherwise. With respect to PSB, the Amended Complaint alleges only that a PSB vice president, Defendant Chad Westendorf, served as personal representative of the Estate of Gloria Satterfield, id. at ¶6, [2] at the design of

---

[2] Mr. Westendorf service as Personal Representative of the Estate of Gloria Satterfield was done by him individually and not on behalf of PSB; PSB did not act on behalf of the estate or hold any property of the Estate. See PSB Answer ¶9 [ECF-49] Prior to being included in this lawsuit, PSB had no knowledge of, and certainly no relationship with, Nautilus. Id. at ¶37.

2

Defendant Murdaugh and Fleming. Id. at ¶14(c). The Amended Complaint does not allege that PSB received any fee or compensation related to the administration of the Estate of Gloria Satterfield, because PSB did not. PSB was not involved with, nor did it render any services to, the Estate of Gloria Satterfield.

In sum, the Amended Complaint alleges that Nautilus, a sophisticated insurance company, made a business decision in 2019 to make a payment under Murdaugh's umbrella policy to resolve claims asserted against their insured by Mrs. Satterfield's estate. Having since learned that Murdaugh later stole the settlement money from the Satterfield estate, Nautilus has now sued not only Murdaugh but a host of other parties, including PSB.

The primary claim in the Amended Complaint is against Murdaugh alone for fraud. See Am. Compl. at ¶¶20-26 [ECF-8]. Yet, desperate for other potential sources of recovery, Nautilus has dragged PSB into this case by asserting a vague "conspiracy to commit fraud" claim against it and the other defendants, id. at ¶¶ 26-30, as well as a claim for an alleged violation of the South Carolina Unfair Trade Practices Act that is equally lacking in substance. Id. at ¶¶ 31-36. Neither the conspiracy claim nor the alleged SCUTPA violation allege any specific action by PSB, which is only mentioned once in the substantive allegations of the Amended Complaint for purportedly "mak[ing] no effort . . . to ensure that the funds intended for the Satterfield family were received by the Satterfield family . . . ." Id. at ¶ 14(h). Again, the funds intended for the Satterfield family were never held in a PSB account.

To date, the parties have engaged in written discovery and voluminous document production. PSB has at its own expense reviewed thousands of account documents and, despite well-founded objections as to scope of discovery and burden (among others), produced thousands of pages of documents to Nautilus. PSB has been as cooperative as possible and repeatedly

worked to resolve discovery disputes with Nautilus. However, PSB must seek this Court's assistance with the latest overstep by Nautilus.

Nautilus recently served the Second Amended Rule 30(b)(6) Deposition Notice of PSB, attached as Exhibit 1. The topics listed in the Deposition Notice make clear that Nautilus has its sights set on discovery far beyond what the rules allow. As discussed in detail below, none of the 35 topics are properly limited in time and certain topics are not relevant to the claims and defenses of the parties in this action, violate the rule of proportionality, are overly broad and unduly burdensome, and fail to identify the matters of inquiry with enough particularity for PSB to present a witness competent to testify on its behalf. Accordingly, PSB seeks the Court's protection via the relief herein requested.

## APPLICABLE LAW

Rule 26 provides that a court, upon a showing of good cause, may issue a protective order to protect a party from "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26 also states that "the court must limit the frequency or extent of discovery" if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). The permitted scope of discovery is "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

4

To determine whether a party seeking a protective order has demonstrated good cause, the courts engage in a balancing test that weighs "the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." United Property & Casualty Ins. v. Couture, No. 2:19-cv-01856-DCN, 2021 WL 5141292, at *2 (D.S.C. Nov. 4, 2021) (internal quotation marks omitted). The court is vested with discretion as to whether to issue the protective order. Fonner v. Fairfax Cnty., 415 F.3d 325, 331 (4th Cir. 2005).

Rule 30(b)(6) allows a party to depose an organization. Fed. R. Civ. P. 30(b)(6). A deposition notice issued pursuant to Rule 30(b)(6) "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In turn, the rule requires the named organization to designate and proffer one or more persons to testify on its behalf "about information known or reasonably available to the organization." Id.

"An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task." Reed v. Bennett, 193 F.R.D. 689, 692 (D. Kan. 2000). "Where the [noticed party] cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." Id. Accordingly, "[f]or a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity." U.S. v. Taylor, 166 FR.D. 356, 360 (M.D.N.C. 1996). Courts have interpreted the "reasonable particularity" requirement of Rule 30(b)(6) to mean that "**the requesting party must** take care to **designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.**" McBride v. Medicalodges, Inc., 250 F.R.D. 581, 584 (D. Kan. 2008) (citing E.E.O.C. v. Thorman & Wright Corporation, 243 F.R.D. 421, 426 (D.Kan.2007)) (double emphasis added); see also Kalis v. Colgate-Palmolive Co., 241 F.3d 1049, 1057, n. 5 (7th Cir. 2000) (requiring

"painstaking specificity") (quoting Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000)). This Court recently explained the requirement that topics be noticed with reasonable particularity as follows:

> To [ ] satisfy the 'reasonable particularity' requirement, the topics must be reasonably 'tailored to the needs of the case.' Aikens v. Cianbro Corp., 2022 WL 171286, at *3 (D.S.C. Jan. 19, 2022). Each topic must not be so overly broad that [the deponent-party] couldn't prepare a witness to testify, in light of [a deponent-party's] responsibility to prepare a designee 'to fully and unevasively answer questions about the designated subject matter.' McKay v. Experis US Inc., 2021 WL 6200171, at *1 (E.D.N.C. Nov. 17, 2021). Each topic, taken in conjunction with any defined terms, must "provide[s] a reasonable description of information sought." Aikens, 2022 WL 171286, at *3.

In re Aqueous Film-Forming Foams Prod. Liab. Litig., No. 2:18-CV-3487-RMG, 2022 WL 678996, at *2 (D.S.C. Feb. 14, 2022) (J. Gergel).

### OBJECTIONS TO THE DEPOSITION NOTICE AND REQUESTED RELIEF

**1.     *The Time Period Covered by All Topics***

This case concerns a decision made by Nautilus in 2019 to settle certain claims that arose on or after February 2, 2018, the date that Mrs. Satterfield fell. However, the Second Amended Deposition Notice commands PSB to produce a witness informed, knowledgeable, and competent to give testimony on thirty-five (35) topics, including subparts, each of which covers events from 2011 to present – a period spanning more than 12.5 years.

PSB objects to all topics listed in the Deposition Notice on the grounds that they are not properly limited in time and, therefore, are overbroad, unduly burdensome, and seek discovery into matters that are not relevant to the claims or defenses of any party. Further, PSB objects on the grounds that the timeframe proposed for all topics violates the rule of proportionality, because the burden and expense of producing a witness informed, knowledgeable, and competent to give testimony on thirty-five topics covering matters spanning more than 12.5 years far outweighs Nautilus's mere hope that it may elicit some relevant testimony. Finally, PSB objects on the

6

grounds that the overexpansive timeframe violates the requirement of Rule 30(b)(6) that the Deposition Notice "must describe with reasonable particularity the matters for examination," and magnifies the undue burden posed by the other topics to PSB objects below.

**Relief Requested**: PSB respectfully requests that this Court limit the period covered by the topics from the date that Amended Complaint alleges Mrs. Satterfield fell, February 2, 2018, to present.

> 2.  *Topic No. 4: "How customer accounts and information is accessible and accessed by bank employees."*

As noted above, the funds stolen from the Satterfields at issue in this case did not pass through an account at PSB, and the Amended Complaint does not allege otherwise. The Amended Complaint also does not allege that any PSB employee accessed any customer accounts or information in connection with the Satterfield claims or Murdaugh's subsequent theft of the settlement funds. Accordingly, PSB objects the Deposition Notice on the grounds that Topic No. 4 seeks testimony that is not relevant to any party's claim or defense, presents an undue burden on PSB, and violates the rule of proportionality, because the burden and expense of producing a witness informed, knowledgeable, and competent to give testimony on how bank employees theoretically access accounts and information of unidentified customers outweighs the importance of the proposed discovery – which is none. PSB also objects on the grounds that Topic No. 4 lacks the reasonable particularity required by Rule 30(b)(6) because it does not identify any bank employee or customer.

**Relief Requested**: PSB respectfully requests that this Court strike Topic No. 4 from the Deposition Notice.

    3.    **Topic No. 6: "The Bank's policies, processes, and procedures for or relating to [ten categories]," of which we object to the following:**

    **(a) lending money and issuing loans, including limitations on lending, controls, authorization levels, collateral requirements, and account monitoring;**

    **(d) supervision, investigation, and/or auditing of the Bank by state and federal regulators and others;**

    **(f) establishing and/or handling of accounts related to deceased, incapacitated, or minor persons, including estate and conservator accounts;**

    **(g) issuing checks and/or money orders from the Bank; and**

As discussed above, the Amended Complaint concerns settlement money disbursed from Nautilus's account at Wells Fargo to the IOLTA account of Moss, Kuhn & Flemming, PA, at BB&T, and then stolen from the Satterfield family by Murdaugh, using his fictitiously named account at the Bank of America. PSB objects to subparts (a), (d), (f), and (g) of Topic No. 6 on relevancy grounds because the claims asserted in the Amended Complaint do not relate to PSB's lending practices, its supervision by state and federal regulators and "others"; its handling of accounts related to deceased, incapacitated, or minor persons; or the issuance of checks or money orders from PSB.[3] PSB further objects on the grounds that subparts (a), (d), (f), and (g) pose an undue burden on PSB and violate the rule of proportionality, because the burden and expense of producing a witness informed, knowledgeable, and competent to give testimony on PSB's responsive "policies, processes, and procedures" (over more than 12.5 years) outweighs the mere hope of Nautilus that it may elicit some relevant testimony.

PSB also objects on the grounds that these four subparts of Topic No. 6 lack the reasonable particularity required for PSB to provide a witness "informed, knowledgeable, and competent" to

---

[3] The claims and defenses in this case relate to only one "deceased, incapacitated, or minor person": Mrs. Satterfield. Neither she nor her estate had an account at PSB.

testify, even generally, to the "policies, procedures, and processes" of PSB lending money; being "supervised, investigated, and/or audited" by unidentified government entities and unnamed "others"; or establishing and handling of accounts "related" to deceased, incapacitated, or minor persons who have not been identified.[4]

PSB also objects to subpart (j) of Topic No. 6, which purports to cover the Bank's "policies, processes, and procedures for or relating to . . . Bank and/or employee relationships with clients" over the last 12.5 plus years. PSB objects to subpart (j) on the grounds that it lacks reasonable particularity required for the Bank to provide a witness "informed, knowledgeable, and competent" to testify to "policies, procedures, and processes for or relating to" relationships between PSB, unnamed employees, and unidentified clients (over a span of time exceeding 12.5 years).

**Relief Requested**: PSB respectfully requests that this Court strike subparts (a), (d), (f), and (g) of Topic No. 6 from the Deposition Notice. With respect to subpart (j) of Topic No. 6, PSB asks that it be narrowed to identify the employee(s) and client(s) in question. Alternatively, PSB requests that the Court strike subpart (j) of Topic No. 6.

  **4.**  **Topic No. 7: "The means, methods, and materials used to train the Bank's employees."**

PSB objects on the grounds that Topic No. 7 is seeks testimony that is not relevant to any party's claim or defense, is unduly burdensome, violates the rule of proportionality, and lacks the reasonable particularity required for the Bank to provide a witness "informed, knowledgeable, and competent" to testify to unspecified "means, methods, and materials" used to train unidentified Bank employees.

---

[4] Nautilus has agreed to withdraw subpart (h) of Topic No. 6. Nautilus has also agreed to sufficiently narrow Topic No. 15. These topics are, therefore, not addressed by this Motion as PSB's objections to them have been resolved.

In the course of conferring, Nautilus explained that it "seeks general information regarding the training of the bank's tellers, loan officers, committee members, and executives . . . ." Ex. 3 at p. 3. However, the training of the Bank's tellers, loan officers, members of unspecified committees, or executives other than arguably Defendant Westendorf, who individually, not on behalf of PSB, served as the personal representative of the Estate of Gloria Satterfield, is not relevant to the claims asserted by Nautilus. Moreover, the importance of discovery into such irrelevant matters is outweighed by the burden and expense of producing a witness competent to testify to on PSB's training of all bank tellers, loan officers, committee members, and executives. Finally, even narrowed in the way proposed by Nautilus, Topic No. 7 fails to identify any individual about whose training Nautilus seeks testimony and, therefore, lacks the reasonable particularity required for the PSB to be able to produce a witness informed, knowledgeable, and competent to testify on the topic.

**Relief Requested**: PSB respectfully requests that this Court require Topic No. 7 to be narrowed to training provided to Defendant Westendorf.

## **CONCLUSION**

Considering the foregoing, PSB respectfully requests that the Court grant its Motion and Order Nautilus to amend its Second Amended Deposition Notice as follows:

1. Amend the period of time covered by all topics to February 2, 2018, to present

2. Strike Topic No. 4

3. Strike subparts (a), (d), (f), and (g) of Topic No. 6

4. Strike subpart (j) of Topic No. 6 or, alternatively, identify the client in question and disclose, with reasonably particularity, the subject matter of the policies, procedures, and processes intended to be covered.

5. Amend Topic No. 7 to cover the training provided by PSB to Defendant Westendorf.

/s/ James W. Clement
**G. Trenholm Walker (Fed ID# 4487)**
Direct:  (843) 727-2208
Email:  Walker@WGLFIRM.com
**Thomas P. Gressette, Jr. (Fed ID# 7261)**
Direct:  (843) 727-2249
Email:  Gressette@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct:  (843) 727-2224
Email:  Clement@WGLFIRM.com
**WALKER GRESSETTE & LINTON, LLC**
Mail:    P.O. Drawer 22167, Charleston, SC 29413
Office:  66 Hasell Street, Charleston, SC 29401
Phone:  (843) 727-2200

***ATTORNEYS FOR PALMETTO STATE BANK***

June 23, 2023
Charleston, South Carolina

11