**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD ALEXANDER MURDAUGH, Sr., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, and PALMETTO STATE BANK,<br><br>    Defendants. | Case No. 2:22-cv-1307-RMG<br><br>**NAUTILUS INSURANCE COMPANY'S OPPOSITION TO PALMETTO STATE BANK'S MOTION FOR A PROTECTIVE ORDER** |

Nautilus Insurance Company ("Nautilus") responds in opposition to the Motion for a Protective Order [ECF No. 118] filed by Palmetto State Bank ("PSB") as follows.

PSB's motion seeks to limit the topics noticed for its 30(b)(6) deposition scheduled six days from now. These topics were served on all parties on May 19th. **Exh. A**. Nearly one month later, PSB objected to certain of the topics by letter of its counsel dated June 15 [ECF No. 118-2]; counsel for Nautilus and PSB conferred on Monday, June 19, and Nautilus responded with its own letter that evening. ECF No. 118-3. PSB's motion followed on Friday, June 23, one week before the deposition.

**I.     Legal Standards**

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992). "Parties to a civil litigation may obtain discovery regarding 'any nonprivileged matter that is relevant to any party's claim or defense' so long as the information is 'proportional to the needs to the case . . . .'" *Koppers Performance Chemicals, Inc. v. Travelers Indem. Co.*, --- F. Supp.3d ----, No. 2:20-CV-2017-RMG, 2022 WL 16570464, at *2

1

(D.S.C. Oct. 31, 2022) (quoting Fed. R. Civ. P. 26(b)(1)).

Furthermore, a matter is relevant if it relates to "any matter that bears on, or that reasonably *could lead* to another matter that *could bear* on, any issue that is *or may be* in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (emphases added); *see also Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) ("Relevance is not, on its own, a high bar.").

"Conversely, limitations on discovery are to be construed narrowly." *Hege v. Aegon USA, LLC*, No. 8:10-cv-1578, 2011 WL 1791883, at *3 (D.S.C. May 10, 2011) (citation omitted). While Federal "Rule [of Civil Procedure] 26 provides that the 'court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,'" because "Rule 26 'provides for broad discovery,'" the "'standard for issuance of a protective order is high.'" *In re Aqueous Film-Forming Foams Products Liab. Litig.*, No. 2:19-cv-1806-RMG, 2022 WL 678996, at *2 (D.S.C. Feb. 14, 2022) (citations omitted); *see also Gioioso v. Thoroughgood's Transp. LLC*, Civ. A. No. ADC-16-3841, 2017 WL 3726028, at *1 (D. Md. Aug. 28, 2017) (explaining that protective orders "should be sparingly used and cautiously granted.").

"A party moving for a protective order has the burden of making a particularized showing of why discovery should be denied, and conclusory or generalized statements in the motion fail to meet this burden." *Artis v. MurphyBrown LLC*, No. 7:14-cv-0237-BR, 2018 WL 3352639, at *2 (E.D.N.C. July 9, 2018). Ultimately, when asking the Court to prohibit or limit a plaintiff from deposing a witness, defendants face a heavy burden. *See, e.g.*, *Order That Discovery Not Be Had*, 8A Fed. Prac. & Proc. Civ. § 2037 (3d ed.) ("It is even more difficult to show grounds for ordering that discovery not be had when it is a deposition that is sought, and most requests of this kind are

denied.").

**II.     Response to PSB's Objections**

As an initial matter, Nautilus will be seeking leave to amend its complaint in this matter to assert additional causes of action and supplement its allegations as warranted by the complex facts learned and revealed during the course of discovery. Nautilus circulated a proposed Second Amended Complaint to the other Parties prior to the stay of this case containing additional causes of action and factual allegations; it is prepared to file the current draft if it must. However, this case has had an unusual trajectory, due in large part to the myriad related matters, both civil and criminal, proceeding on timelines independent from one another and with overlapping factual bases. As the landscape surrounding Murdaugh has evolved—and as it continues to evolve—Nautilus has endeavored to perform as much discovery as it reasonably can prior to seeking leave to amend, so that it may be efficient and seek leave only once.

Under the Court's Scheduling Order, leave to amend must be sought prior to July 28, 2023. ECF No. 112. Prior to that deadline, Nautilus seeks to discover information that is relevant and proportional to the development of this case, including facts and connections revealing other claims Nautilus may be entitled to pursue relating to a tangled scheme that harmed various parties.

**A.     General Objection to Time Period**

PSB contends that any matter preceding Gloria Satterfield's fall in February 2018 is outside of the scope of the pleadings in this matter and is not proportional to the needs of this case. This is not so. Nautilus has alleged a conspiracy and contends that the conspiracy is broader than—and predates—the fraud against Nautilus in connection with the death of Gloria Satterfield, a conspiracy that caused harm to numerous victims, of which Nautilus is one (albeit a substantial one, given the amounts involved).

Following the filing of the Amended Complaint, Russell Laffitte, the former CEO of PSB (who was also the superior to Defendant Westendorf, a bank vice president, and was himself a bank vice president before becoming CEO), has been convicted of conspiring with Murdaugh beginning no later than 2011 and defrauding parties related to Murdaugh and PSB over the course of the next ten years. Accordingly, Nautilus has appropriately noticed this as the relevant time period for its deposition topics and discovery requests.

Discovery covering this period is proportional to the needs of this case, a case in which compensatory damages in excess of $3.8 million are sought relating to, *inter alia*, a conspiracy that was (until recently) successfully concealed by its members. The discovery available from other parties to this action is, unfortunately, still limited. Mr. Murdaugh has produced no materials. Mr. Fleming has pled the Fifth Amendment. Mr. Westendorf represents that he has limited documentary evidence in his possession and has produced it.

In short, to discover the extent of this complex conspiracy which it contends the Defendants sought to conceal, Nautilus requests latitude in its discovery from PSB. The goal is not to create a burden for or ambush PSB's witness(es) or to ask exhaustive questions about transactions dating back to 2011, but rather to enable Nautilus to understand the bounds and multiple factors of the conspiracy in this complex matter and to discover information illuminating its scope and reach. Many PSB representatives cooperated with the government's prosecution of Mr. Lafitte involving these timelines during his criminal trial and testified regarding these very topics, including its intended 30(b)(6) deponent in this case; as a financial victim itself, Nautilus merely seeks to have its opportunity to examine PSB's knowledge and role so that it may fully pursue its redress in connection with this civil matter.

**B.     Objection to Topic 4 – Bank Employees' Access to Customer Account Information**

PSB objects that the way its employees access customer information (i) is not relevant to any claim or defense in this action and (ii) is not sufficiently particular as it does not identify which employees or which customers Nautilus seeks information about.

With regard to the former, Nautilus alleges PSB conspired with Murdaugh (and others), causing harm to Nautilus. To that end, PSB's relationship to and history of dealings with Murdaugh is relevant and discoverable. It is Murdaugh's accounts and information that Nautilus seeks to inquire about, including their accessibility to Mr. Laffitte and others at the bank. This is relevant to Nautilus' claim of conspiracy, as it may reveal other actors who knew of and helped to conceal wrongdoing.

As to the latter, Nautilus cannot know if PSB employees' access to customer information varies by customer. Nautilus intends, however, that its questioning in this regard will relate primarily to Murdaugh and how his account information was accessible by bank personnel.

**C.     Topic 6 – The Bank's Policies and Procedures**

PSB contends that its policies relating to the following subtopics—

    (a) lending money and issuing loans,

    (d) supervision or auditing of the bank by regulators,

    (f) handling of accounts of deceased, incapacitated, or minor persons, and

    (g) issuing checks or money orders

—are beyond the scope of any claim or defense in this suit. Again, not so. PSB is accused of conspiracy and engaging in unfair trade practices to Nautilus' detriment. Its relationship with Murdaugh is relevant to these claims, and the extent to which it deviated from its own policies in dealing with Murdaugh, if at all, is relevant.

By ways of example only, Nautilus will cite some reasons here. As Murdaugh had

numerous accounts with and loans from PSB, subtopic (a) is relevant. As Murdaugh was consistently in overdraft, which auditors and regulators consider a red flag for fraud and money laundering, subtopic (d) is relevant. As Defendant Westendorf, a PSB employee, was appointed as the personal representative for the Estate of Gloria Satterfield—who, contrary to PSB's assertion,[1] *did* have accounts at PSB—subtopic (f) is relevant. Further, that PSB employees served as conservators for minor and incompetent clients of Murdaugh provides further relevance to subtopic (f). And as Murdaugh is believed to have received money from illegal loans via PSB-issued checks and/or money orders, subtopic (g) is relevant.

1. *Subtopic (j)*

PSB also objects to subtopic (j), PSB's policies and procedures relating to client relationships, on the basis that it desires Nautilus to identify which PSB employees and customers are intended to be covered by the request. Nautilus cannot know whether PSB has specific policies that only pertain to specific employees or to specific clients. It seeks to understand what, if any, policies PSB has governing its employees' banking relationships with its clients.

D.     **Topic 7 – Means, Methods and Materials for Training PSB Employees**

PSB requests this topic be limited to the training provided by PSB to Defendant Westendorf. Nautilus does not seek to discover the details of how each individual employee of PSB was trained;[2] rather, it seeks to understand PSB's practices and methods in general with regard to training its employees. Whether PSB had sufficient and specific methods of training its employees is relevant under our Federal Rules, as it bears on Nautilus' claims and on claims that Nautilus may discover, such as negligence on the part of PSB.

---

[1] Mot. at 8, n.3.

[2] Although it is conceivable that Nautilus will inquire about the training of Chad Westendorf, as PSB anticipates, as well as Russell Laffitte.

### III.     Conclusion

For the reasons stated above, the scope of the topics for the 30(b)(6) deposition of PSB is appropriate and proportional to the needs of the case. Nautilus respectfully requests that PSB's Motion for a Protective Order be denied.

                                               **Respectfully submitted:**

This 25th day of June, 2023  
Charleston, South Carolina

*/s/ Jaan Rannik*  
Jaan G. Rannik (Fed. ID No. 12621)  
Clinton T. Magill (Fed. ID No. 12459)  
EPTING & RANNIK, LLC  
46A State Street  
Charleston, SC 29401  
P: (843) 377-1871  
F: (843) 377-1310  
jgr@epting-law.com  
ctm@epting-law.com  

*COUNSEL FOR NAUTILUS INSURANCE COMPANY*