# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | Case No.: 2:22-cv-1307-RMG |
| ) | |
| Petitioner, ) | **DEFENDANT PALMETTO** |
| ) | **STATE BANK'S REPLY TO** |
| vs. ) | **PLAINTIFF'S OPPOSITION TO** |
| ) | **THE MOTION FOR** |
| ) | **PROTECTIVE ORDER AND** |
| ) | **OBJECTIONS TO PLAINTIFF'S** |
| RICHARD ALEXANDER MURDAUGH, SR., ) | **DEPOSITION NOTICE** |
| CORY FLEMING, MOSS & KUHN, P.A., CHAD ) | |
| WESTENDORF, PALMETTO STATE BANK, ) | |
| and THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondents. ) | |

Defendant Palmetto State Bank ("PSB") hereby submits this Reply to Plaintiff Nautilus Insurance Company's Memorandum in Opposition, [ECF-119] to the Motion for Protective Order and Objections to Plaintiff's Deposition Notice, [ECF-118]. For the reasons discussed below and set forth fully in its Motion and incorporated Memorandum in Support, PSB respectfully requests that this Honorable Court grant its Motion for Protective Order, which is necessary to conform the topics of Nautilus's Second Amended Notice of 30(b)(6) Deposition of PSB to the limits of permissible discovery, as well as to protect PSB from discovery abuse and ambush.

## DISCUSSION

**1. Nautilus admits it seeks to impermissibly use discovery in this case to end-run the procedure and protections of the Federal Rules of Civil Procedure.**

In its memorandum, Nautilus relies on the Supreme Court of the United States' opinion in the case <u>Oppenheimer Fund, Inc. v. Saunders</u> for the proposition that "a matter is relevant if it relates to 'any matter that bears on, or that reasonably *could lead* to another matter *that could bear on*, any issue that is *or may be* in the case.'" Nautilus's Opp. to PSB's Mot. for Protective Order,

[ECF 119 at 2] (quoting Oppenheimer Fund, Inc. v. Saunders, 437 U.S. 340, 351 (1978) (emphasis added by Nautilus)). Through this lens, Nautilus confesses that it intends to file a second amended complaint in this case but, before doing so, "[it] has endeavored to perform **as much discovery as it reasonably can prior to seeking leave to amend** . . . . " Id. at 3 (double emphasis added). Nautilus attempts to justify its overreaching discovery tactics by feigning concern for efficiency, claiming it is somehow entitled to discovery of claims not pled so that it can attempt to "seek leave only once [more]." Id. at 3 (emphasis added). Accordingly, Nautilus does not so much as pretend that the deposition topics at issue seek information relevant to its current claims or that the topics are proportional to the needs of this case. Rather, Nautilus specifically discloses that it "seeks to discover information that is **relevant and proportional to the *development* of the case, including** facts and connections revealing ***other claims* Nautilus *may be* entitled to pursue** relating to a tangled scheme that harmed various parties." Id. (emphasis added)

Expanding discovery as part of a concerted attempt to gin up a new case is a novel way to be efficient. The short of it is that Nautilus wants to capitalize on the sensationalism of totally unrelated matters dating back many years before Mrs. Satterfield's death; those matters are not relevant to Nautilus, much less the claims it has asserted in this lawsuit, which alleges that Murdaugh defrauded Nautilus and, in so doing, all the defendants somehow combined for the purpose of injuring Nautilus. This case is not about those other events. Moreover, the Oppenheimer Fund opinion does not support the carte blanche approach to discovery taken by Nautilus, whose reliance on the opinion shows that Nautilus fails to recognize the boundaries of discovery.

In relying on the Supreme Court's Oppenheimer Fund opinion from 1978, Nautilus leaves out the most important part, bolded below, of the quote it cites:

> **The key phrase in this definition—"relevant to the subject matter involved in the pending action"**—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.

Oppenheimer Fund, 437 U.S. 340, 351, 98 S. Ct. at 2389 (1978). Rule 26(b)(1) no longer contains the phrase "relevant to the subject matter in the pending action," described as "key" by the Supreme Court.

It used to be, under the federal rules, that any matter, not privileged, was presumptively discoverable so long as it was "relevant to the subject matter involved in the pending action." See id. (citing Fed. R. Civ. Pro. 26(b)(1) (pre-2000 amendments). However, Rule 26(b)(1) was amended in 2000 to narrow the scope of discovery. Rule 26(b)(1), in its current form, provides that a nonprivileged matter is presumptively discoverable only if it is "<u>relevant to any party's claim or defense and proportional to the needs of the case</u> . . . ." Fed. R. Civ. Pro. 26(b)(1) (emphasis added). The Committee Note explains that, in narrowing the scope of information presumptively discoverable, "[t]he Committee intends that the parties and the court focus on the actual claims and defenses involved in the action." Advisory Committee Notes, 2000 Amendments to Rule 26, Subdivision (b)(1); see also Asher v. Baxter Int'l, Inc., No. 02 C 5608, 2007 WL 3223396, at *3 (N.D. Ill. Oct. 25, 2007) (explaining parties "'have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'") (quoting Advisory Committee Notes, 2000 Amendments to Rule 26, Subdivision (b)(1)).

PSB has objected to topics proposed in the Deposition Notice that were not intended to be relevant to the claims asserted in the Amended Complaint. This Court need only take Nautilus's word for it. Moreover, the burden and expense to PSB of preparing and presenting a witness "informed, knowledgeable, and competent" to testify on its behalf regarding those improper topics, and dozens of others, spanning more than 12.5 years, outweighs the importance of Nautilus's mere

3

hope to discover new claims, not resolve issues in the present litigation. Nautilus seeks to force PSB to devote time and resources engaging in discovery of theoretical claims that have not been subjected to any pleading standards.

To be clear, PSB is not trying to stop discovery into matter relevant to a claim or defense asserted by any party in the present case. Rather, in addition to asking for the limits of discovery to be enforced, PSB is requesting a fair opportunity to present a witness who is informed, knowledgeable, and competent to accurately answer, on its behalf, the questions that Nautilus intends to ask. PSB's desire for a fair and accurate record promotes the administration of justice, but it requires that Nautilus provide notice to PSB that is reasonably particular with respect to the matters for examination. Nautilus should not be allowed to hide the ball or ambush PSB's designee, which is why courts have held that Rule30(b)(6) requires a noticing party to be painstakingly specific when stating matters for examination. See PSB Mot. for Protective Order [ECF-118 at 5-6] (discussing the reasonable particularity requirement).

Ultimately, PSB's objections to the topics proposed in the Deposition Notice are based primarily on three grounds that are independent of each other and yet equally important: relevancy, proportionality, and reasonable particularity. The response of Nautilus to the objections is addressed below by topic. It does not resolve the need for the protective order sought by PSB.

2.     **General Objection to Temporal Scope of all 35 Topics Noticed.**

To justify its command that PSB produce a witness "informed, knowledgeable, and competent" to speak on its behalf to 35 topics covering matters that span over 12.5 years, Nautilus cites the November 2022 conviction of Russell Laffitte, who is not a defendant in this case, on six financial crime charges that did not relate to the claims of Mrs. Satterfield's estate or Murdaugh's use of a fictitiously named account at Bank of America to divert the funds intended for the

4

Satterfield estate. See [ECF-119 at 4].

Having presided over the trial of Russell Laffitte, this Court is aware of the charges against him, the evidence presented, and his conviction on six counts. Those counts concerned a conspiracy between Murdaugh and Laffitte (not PSB or Westendorf); Laffitte's use of money from an account for the Estate of Donna Badger, for whom Laffitte served as personal representative, including to repay a loan made from an account for Hannah Plyler, for whom Laffitte served as conservator; Laffitte's use of PSB's funds; and a loan and line of credit that Laffitte extended to Murdaugh. Absolutely none of the evidence at trial, or even the charges, had anything to do with the Satterfield claims or a conspiracy by PSB or Westendorf to harm anyone, much less Nautilus. The Laffitte conviction does not justify commanding PSB to produce a witness to testify to matters predating Mrs. Satterfield's fall by more than seven years.

**3.    Objections to Topic No. 4: How Customer Accounts and Information is Accessible and Accessed by Bank Employees**

Despite the overbroad and generalized phrasing of Topic No. 4, Nautilus states in its Memorandum in Opposition that, with respect to this topic, "[i]t is Murdaugh's accounts and information that Nautilus seeks to inquire about, including their accessibility to Mr. Laffitte and others at the bank." [ECF-119 at 5]. Its questions, according to Nautilus, "will relate primarily to Murdaugh and how his account information was accessible by bank personnel." [Id. at 5] (emphasis added). Nautilus does not, however, offer to limit Topic No. 4 to Murdaugh or his bank accounts.

In any event, Murdaugh's account at PSB is not relevant to Nautilus's claim that, in connection with its decision to settle the Satterfield claims, Murdaugh defrauded the insurance company and all the defendants combined for the purpose of injuring Nautilus. As previously explained, the funds were not stolen from a PSB account of Murdaugh or any other customer.

5

Rather, after Nautilus settled the Satterfield claims, the funds were drawn from Nautilus's account at Wells Fargo, deposited into the defendant law firm's IOLTA account at BB&T, and then transferred from BB&T to Murdaugh's fictitiously named account at Bank of America. Access to the accounts of PSB's customers, even Murdaugh, has nothing to do with this case.

### 4.   Objections to Topic No. 6: The Bank's Policies, Processes, and Procedures

PSB objected to subparts (a), (d), (f), (g), and (j) of Topic No. 6. [ECF-118 at 8-9]. These subparts seek testimony on "the Bank's policies, processes, and procedures for or relating to" the following:

> (a) lending money and issuing loans, including limitations on lending, controls, authorization levels, collateral requirements, and account monitoring;
>
> (d) supervision, investigation, and/or auditing of the Bank by state and federal regulators and others;
>
> (f) establishing and/or handling of accounts related to deceased, incapacitated, or minor persons, including estate and conservator accounts;
>
> (g) issuing checks and/or money orders from the Bank;
>
> (j) Bank and/or other employee relationships with clients[.]

In its Memorandum in Opposition, Nautilus does not offer to withdraw, narrow, or clarify any of the above five topics. Instead, Nautilus doubles down on its overreach.

Nautilus argues that subpart (a) is relevant because "Murdaugh had numerous accounts with and loans from PSB[.]" [Id. at 5-6]. The fact that Murdaugh had accounts at PSB and that PSB loaned him money has nothing to do with the claims in the present case, which, again, allege that Murdaugh defrauded the insurance company and all the defendants combined for the purpose of injuring Nautilus in connection with the decision of Nautilus to settle the Satterfield claims. Moreover, the topic stated in subpart (a) is more general and far broader than just Murdaugh's PSB bank accounts and loans. As noticed, subpart (a) is not limited to any customer and covers the

Bank's policies, processes, and procedures for or relating to "lending money and issuing loans, including limitations on lending, controls, authorization levels, collateral requirements, and account monitoring."

Regarding subpart (d), Nautilus contends that it is relevant because "Murdaugh was consistently in overdraft, which auditors and regulators consider a red flag for fraud and money laundering . . . ." [ECF-119 at 6]. As explained above, Murdaugh's PSB bank accounts have nothing to do with this case. This remains true regardless of whether any overdrafts prompted "red flags." Moreover, that Murdaugh overdrew an account does not make information covered by subpart (d) relevant or proportional. Subpart (d) seeks information on "policies, processes, and procedures" of PSB, over more than 12.5 years, for or relating to "supervision, investigation, and/or auditing of the Bank by state and federal regulators and others." This topic is also not noticed with the particularly reasonably required for PSB to present a witness prepared and competent to speak, on PSB's behalf, about supervision, investigation, and auditing of the bank by unidentified government entities and others over a period spanning more than 12.5 years.

As for subpart (f), Nautilus contends it is relevant because PSB's employee, Defendant Westendorf, served as the personal representative of the Estate of Gloria Satterfield. But Westendorf's service as the PR of Mrs. Satterfield's estate does not make relevant PSB's policies, processes, and procedures related to <u>establishing or handling of accounts</u> related to incapacitated, minor, or even deceased persons. The Estate of Gloria Satterfield did not have an account at PSB, and of course, the funds at issue did not end up in an account for it at any bank. Murdaugh diverted the funds to his account at Bank of America.

Regarding subpart (g), Nautilus contends that PSB's "policies, processes and procedures for or relating to issuing checks and/or money orders from the Bank" are relevant because

7

"Murdaugh is believed to have received money from illegal loans via PSB-issued checks and/or money orders . . . ." [ECF-119 at 6]. This topic is illustrative of Nautilus's overreach and abusive discovery tactics. Loans, illegal or otherwise, are not relevant to any of its claims.

Finally, regarding subpart (j), despite its overbroad and vague wording, Nautilus represents that by including the topic, "[i]t seeks to understand what, if any, policies PSB has governing employee's banking relationships with its clients." Even if the topic as noticed is considered narrowed in this manner to eliminate "processes and procedures," subpart (j) still seeks information not relevant to Nautilus's claims that, in connection with its decision to settle the Satterfield claims, Murdaugh defrauded Nautilus and all the defendants combined for the purpose of injuring it. Nautilus's response also does not address proportionality or PSB's concern regarding the lack of particularity with which this topic has been noticed. Accordingly, in addition to being narrowed to policies only, PSB reiterates its request that Nautilus be required to identify the employee(s) and client(s) about whose relationship it intends to inquire.

     **5.**     **Objections to Topic No. 7: The Means, Methods, and Materials Used to Train the Bank's Employees.**

Despite the overbroad wording of Topic No. 7, Nautilus represents in its Memorandum in Opposition that by including this topic, "it seeks to understand PSB's practices and methods in general with regard to training its employees," in the hope that it "may discover" new claims, "such as negligence on the part of PSB." [ECF 119 at 6]. Nautilus's response is emblematic of its discovery overreach in this case and underscores why, if for no other reasons, fairness should require that Nautilus be forced to heed the reasonable particularity requirement and allow PSB an opportunity to proffer a witness who is informed, knowledgeable, and competent to speak on its behalf about the matters that Nautilus intends to inquire. PSB asks the Court to narrow Topic No. 7 to the training that PSB provided to Defendant Westendorf.

**CONCLUSION**

Several of the topics included in the Second Amended Notice seek information not relevant to the claims asserted in this case. Nautilus's Memorandum in Opposition merely confirms that was not its intention. Nautilus's desire to conduct discovery relevant to "other" theoretical claims that it has not asserted flaunts the limits on discovery, violates the rule of proportionality, and circumvents the pleading standards. Nautilus's memorandum also fails to address PSB's valid concerns that certain topics to which it has objected are not stated with particularity sufficient for PSB to present a witness informed, knowledgeable, and competent to testify on its behalf about the areas of inquiry intended by Nautilus. Considering the foregoing, PSB respectfully requests that the Court grant its Motion and Order the relief requested therein.

Respectfully submitted,

/s/ *James W. Clement*
**G. Trenholm Walker (Fed ID# 4487)**
Direct: (843) 727-2208
Email: Walker@WGLFIRM.com
**Thomas P. Gressette, Jr. (Fed ID# 7261)**
Direct: (843) 727-2249
Email: Gressette@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct: (843) 727-2224
Email: Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
Mail: P.O. Drawer 22167, Charleston, SC 29413
Office: 66 Hasell Street, Charleston, SC 29401
Phone: (843) 727-2200

***ATTORNEYS FOR PALMETTO STATE BANK***

June 27, 2023
Charleston, South Carolina