# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | Case No.: 2:22-cv-1307-RMG |
| ) | |
| Petitioner, ) | **DEFENDANT PALMETTO** |
| vs. ) | **STATE BANK'S MOTION FOR** |
| ) | **PROTECTIVE ORDER** |
| RICHARD ALEXANDER MURDAUGH, SR., ) | **PURSUANT TO FEDERAL RULE** |
| CORY FLEMING, MOSS & KUHN, P.A., CHAD ) | **26 AND LOCAL RULE 30.04** |
| WESTENDORF, PALMETTO STATE BANK, ) | **(Memorandum Incorporated)** |
| and THE UNITED STATE OF AMERICA, ) | |
| ) | |
| ) | |
| Respondents. ) | |

Defendant Palmetto State Bank ("PSB" or "this Defendant") hereby moves pursuant to Rule 26 of the Federal Rules of Civil Procedure and Local Civil Rule 30.04 (D.S.C.) for a protective order:

1. Affirming counsel for PSB's objection and instruction that its 30(b)(6) deponent not answer a question posed by counsel for Nautilus Insurance Company ("Nautilus" or "the Plaintiff") during a deposition held on June 30, 2023 on grounds of privilege; and

2. Precluding Nautilus from reconvening the deposition to ask the question that PSB's counsel instructed the witness not to answer.

This Motion is timely filed in accordance with Local Civ. Rule 30.04 (D.S.C.) and the relief requested is justified and necessary to protect PSB pursuant to this Court's inherent authority to "forbid[ ] inquiry into certain matters" and to "limit[ ] the scope of disclosure or discovery to certain matters" through enforcement of the proper scope of discovery, which is limited to nonprivileged matter. Fed. R. Civ. P. 26(c)(1)(D); see also Fed. R. Civ. P. 26(b)(1).

**Background**

The Plaintiff's Amended Complaint alleges that in 2019, Nautilus, a sophisticated insurance company, made a business decision to pay an insurance claim made against Alex Murdaugh's $5,000,000 umbrella policy with Nautilus. See Am. Compl. ¶10 [ECF-8]. The payment was to settle a claim against Murdaugh related to the death of Gloria Satterfield, who suffered a fall while she was at Murdaugh's home on February 2, 2018. See Am. Compl. ¶11 [ECF-8].

Nautilus alleges that in 2021 it learned Murdaugh later stole the money Nautilus paid pursuant to Murdaugh's insurance policy with Nautilus. See Am. Compl. at ¶14 [ECF-8]. Nautilus has now sued not only Murdaugh but a host of other parties, including PSB. The primary claim in the Amended Complaint is against Murdaugh alone for fraud. See Am. Compl. at ¶¶20-26 [ECF-8]. Yet, presumably seeking other potential sources of recovery, Nautilus has dragged PSB into this case by asserting a vague "conspiracy to commit fraud" claim against it and the other defendants, id. at ¶¶ 26-30, as well as a claim for an alleged violation of the South Carolina Unfair Trade Practices Act that is equally lacking in substance. Id. at ¶¶ 31-36. Neither the conspiracy claim nor the alleged SCUTPA violation allege any specific action by PSB; in fact, PSB is only mentioned once in the substantive allegations of the Amended Complaint for purportedly "mak[ing] no effort . . . to ensure that the funds intended for the Satterfield family were received by the Satterfield family ... ." Id. at ¶ 14(h) [ECF-8]. However, the funds intended for the Satterfield family were never held in a PSB account.

Despite several stays in the case due to the pending criminal charges against Defendant Murdaugh, Nautilus and PSB have engaged in written discovery and document production. Several weeks ago Nautilus served its Second Amended Rule 30(b)(6) Deposition Notice of PSB.

Counsel met and conferred regarding the 35 topics and PSB's concerns regarding the topics as noticed. The parties were able to cooperatively approach resolution of their differing positions, but not all issues could be resolved. On June 23, 2023, PSB filed a motion documenting its objections and seeking a protective order. See Defendant Palmetto State Bank's Motion for Protective Order and Objection to Plaintiff's Deposition Notice [ECF-118]. The Motion seeks to limit the overly board timeframe proposed for examination as to all topics and the Motion raises specific objections to Topics 4, 6(a), (d), (f), (g), and 7). See id. On June 24, 2023, Nautilus filed its Opposition to the Motion and on June 27, 2023, PSB filed its Reply. See generally [ECF-119 and ECF-120].

On June 28, 2023, counsel for PSB and Nautilus conferred again regarding the parties' respective positions. Ultimately, PSB and Nautilus agreed to proceed with the deposition as to those topics without objection, pending resolution of the Motion for Protective Order. See Letter from Rannik to Hon. Gergel [ECF-121].

Pursuant to their agreement, on June 30, 2023, the parties convened for the 30(b)(6) deposition of Palmetto State Bank. Counsel for all named parties were in attendance. During the deposition Nautilus posed a question to which counsel for PSB objected and then instructed the witness not to answer.[1]

Following is an excerpt of the rough draft transcript containing the question and response.

> MR. RANNIK:
> […]
> Did the bank have discussions with counsel about
> its potential exposure to any parties relating to

---

[1] Prior to asking the question at issue, counsel for Nautilus marked as Deposition Exhibit 4 several redacted pages excerpted from a document captioned Office of Disciplinary Counsel Transcript of Record, On-the-Record Appearance of Russell Lucius Laffitte (June 23, 2022, and June 24, 2022). Included were pages numbered 2, 70-72, 102-105, 127-128, 197-198, 201-202, 225, 353-356, 358-371, and 368-371.

>
> anybody's service as a fiduciary in connection with Alex Murdaugh?
>
> MR. GRESSETTE:
> Objection, calls for attorney-client privileged information, calls for work product, it's outside the scope of the noticed topics, it also implicates information and deliberation during executive sessions of the bank's governing committees, furthermore it implicates trade secrets and business operation information which are protected, for those reasons I'm instructing the witness not to answer that question.

Rough Draft Transcript of 30(b)(6) Deposition of Palmetto State Bank, June 30, 2023, at pp. 64-65.[2] PSB now asks this Court to enter a protective order affirming its objections to and counsel for PSB's instruction that the witness not answer the question.

### Applicable Law and Analysis

The permitted scope of discovery in a civil action is specifically limited to ***nonprivileged*** matter. See Fed. R. Civ. P. 26(b)(1) (stating "parties may obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). When presented with a party's request for protection from discovery, the court is to consider "the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

"Rule 26(b)(2) then limits this broad scope of discovery, providing that 'the court must limit the frequency or extent of discovery [ ] if it determines that: the discovery sought is

---

[2] To provide the Court with additional context, pages 62 to 65 are included within the excerpt attached hereto as Exhibit 1.

unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" Butler v. King, No. CV 2:18-2522-RMG, 2019 WL 4440307, at *1 (D.S.C. Sept. 17, 2019) (quoting Fed. R. Civ. P. 26(b)(2)(C)). "Courts have broad discretion in [their] resolution of discovery problems arising in cases before them." Id. (quoting Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., 334 F.3d 390, 402 (4th Cir. 2003)).

Pursuant to Local Rule 30.04, when counsel directs a deponent not to answer a question on the ground that the answer is protected by a privilege, then counsel must within seven (7) days of the suspension or termination of the deposition move the court for a protective order under Fed. R. Civ. P. 26(c) or 30(d)(3). See Local Civ. Rule 30.04 (D.S.C.) (stating the term "privilege" "includes, but is not limited to, attorney-client privilege, work product protection, and trade secret protection").[3]

Upon a motion for protective order related to instruction not to answer a deposition question, timely made in accordance with Local Rule 30.04, this Court is empowered to affirm the instruction and to "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D).

Here, Nautilus improperly sought information protected by PSB's attorney-client privilege when it asked the following question: "Did the bank have discussions with counsel about its potential exposure to any parties relating to anybody's service as a fiduciary in connection with Alex Murdaugh?"[4]

---

[3] PSB does not allege the deposition was being conducted in bad faith, hence the relief sought is pursuant to Federal Rule 26, and not Rule 30.
[4] The deposition at issue began and concluded on June 30, 2023. This Motion, filed on July 7,

As this Court has explained, the attorney-client privilege applies: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." Peeples v. Herrnstein Auto Grp., LLC, No. CV 9:20-4463-RMG, 2022 WL 1198075, at *5 (D.S.C. Apr. 22, 2022) (citing State v. Doster, 276 S.C. 647, 651, 284 S.E.2d 218, 219–20 (1981).

"The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." State v. Owens, 309 S.C. 402, 407, 424 S.E.2d 473, 476 (1992)). The attorney-client privilege is a cardinal protection that is deeply embedded in the law, and the importance of the privilege cannot be overstated. It protects both communications to and communications from counsel and is based upon "a wise policy that considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to this professional advisor … ." Id. The essential principle particularly pertinent here is that the attorney-client privilege affords "**complete protection from disclosure**." Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir.1998)(double emphasis added). The privilege "protects 'not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" Hanson v. U.S. Agency for Int'l Dev., 372 F.3d 286, 291 (4th Cir. 2004) (quoting Upjohn, 449 U.S. at 390). Further, without the privacy of communication between attorney and client, and the "full and frank" exchange of information that flows therefrom, "a lawyer could be deprived of the information necessary to prepare and present his client's defense." In re Search Warrant Issued June 13, 2019, 942 F.3d

---

2023, within seven days of the deposition, is timely.

159, 174 (4th Cir. 2019), as amended (Oct. 31, 2019) (citing Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677 (1981).

There is no room for doubt that the information sought by the objectionable question posed by Nautilus is precisely and specifically attorney-client privileged communications. The improper question unabashedly and broadly asks, "Did the bank have discussions with counsel about its potential exposure … ?" The question posed sought information regarding the substance of communications between a client and its professional legal advisor acting in his capacity as such. The information sought is ***completely*** protected from disclosure.

Because the question seeks to invade the attorney-client relationship between PSB and its counsel, it also inherently seeks protected attorney work product. The work product doctrine was established in Hickman v. Taylor, 329 U.S. 495 (1947). "It is premised on the idea that '[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.'" In re Grand Jury Proc. #5, 401 F.3d 247, 250 (4th Cir. 2005) (quoting Hickman v. Taylor, 329 U.S. 495 at 510)). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Noble, 422 U.S. 225, 238 (1975). "[The work product] doctrine stands in contrast to the attorney-client privilege; rather than protecting confidential communications from the client, it provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980); see also Iowa Prots. & Advocacy Servs., Inc., 206 F.R.D. 630, 640 (S.D. Iowa 2002) (quoting Simon v. G.D. Searle & Co., 816 F.2d 397, 400 (8th Cir. 1987) ("The work-product doctrine was designed to prevent 'unwarranted inquiries into the files and mental impressions of an attorney,' and

recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'"). The blatant attempt by Nautilus to invade the protection of work product and to demand disclosure of PSB counsel's mental impressions is unjustified and unwarranted.

Because Nautilus made its inquiry into PSB's "discussions with counsel about its potential exposure" in conjunction with marking Deposition Exhibit 4, PSB anticipates that Nautilus intends to somehow rely upon that exhibit to attempt to argue the protections of attorney-client privilege and/or work product have been waived. That would be wholly incorrect; PSB has not waived any protections. To the extent statements on June 23, 2022, and/or June 24, 2022, purportedly made by Russell Laffitte and transcribed in Deposition Exhibit 4 may be relied upon, PSB unequivocally states that its ***former*** employee Laffitte had no authority to waive any privilege or protection; Laffitte had no such authority before his January 2022 termination and he certainly had no such authority months later in June of 2022, the dates of the purported statements included in Deposition Exhibit 4.

The law is squarely in support of PSB's position. "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors. The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348–49, 105 S. Ct. 1986, 1991, 85 L. Ed. 2d 372 (1985)(citing Dodge v. Ford Motor Co., 204 Mich. 459, 507, 170 N.W. 668, 684 (1919)). "Displaced managers may not assert the privilege over the wishes of current managers . . .." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349, 105 S. Ct. 1986, 1991, 85 L. Ed. 2d 372 (1985); see also United States v. Wells Fargo Bank, N.A.,

132 F. Supp. 3d 558, 561-62 (S.D.N.Y. 2015) (explaining that, even in a criminal case, a bank's attorney-client privilege does not yield to an employee's advice-of-counsel defense).

At the time of these statements in June 2022, Mr. Laffitte had no authority of any kind to do anything at all for PSB. He had long been terminated from his employment and removed from the PSB Board of Directors. See Exhibit 1, Rough Draft Transcript of 30(b)(6) Deposition of Palmetto State Bank, June 30, 2023, at pp. 64-65 (PSB witness testifying Russell Laffitte was terminated in 2021). Anything Laffitte did in June 2022 was not on behalf of PSB, as he had no authority to act for PSB. PSB has done nothing upon which Nautilus can plausibly rely to convince this Court that PSB has somehow waived attorney-client privilege or work product protection.

## Conclusion

The permitted scope of discovery in a civil action is specifically limited to ***nonprivileged*** matter. See Fed. R. Civ. P. 26(b)(1). PSB's counsel properly instructed the deponent regarding the question at issue herein then timely filed this Motion in accordance with Local Civ. Rule 30.04 (D.S.C.). The relief requested is justified and necessary to protect PSB pursuant to this court's inherent authority to "forbid[ ] inquiry into certain matters" and to "limit[ ] the scope of disclosure or discovery to certain matters" through enforcement of the proper scope of discovery, which is limited to ***nonprivileged*** matter. Fed. R. Civ. P. 26(c)(1)(D); see also Fed. R. Civ. P. 26(b)(1).

Accordingly, for the foregoing reasons, PSB respectfully requests this Court grant this Motion and issue a Protective Order:

1. Affirming counsel for PSB's objection and instruction that its 30(b)(6) deponent not answer a question posed by counsel for Nautilus during the deposition held on June 30, 2023 on grounds of privilege; and

2. Precluding Nautilus from reconvening the deposition to ask the question that PSB's counsel instructed the witness not to answer.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Thomas P. Gressette, Jr.*
**Thomas P. Gressette, Jr. (Fed ID# 7261)**
Direct: (843) 727-2249
Email: Gressette@WGLFIRM.com
**G. Trenholm Walker (Fed ID# 4487)**
Direct: (843) 727-2208
Email: Walker@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct: (843) 727-2224
Email: Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
Mail: P.O. Drawer 22167, Charleston, SC 29413
Office: 66 Hasell Street, Charleston, SC 29401
Phone: (843) 727-2200

***ATTORNEYS FOR PALMETTO STATE BANK***

</div>

July 7, 2023
Charleston, South Carolina