UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | Case No.: 2:22-cv-1307-RMG |
| Petitioner, | **DEFENDANT PALMETTO STATE BANK'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL [ECF-122]** |
| vs. | |
| RICHARD ALEXANDER MURDAUGH, SR., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, PALMETTO STATE BANK, and THE UNITED STATE OF AMERICA, | |
| Respondents. | |

Defendant Palmetto State Bank ("PSB") hereby submits this Memorandum in Opposition to the Motion to Compel Responses to Discovery, [ECF-122], filed by Plaintiff Nautilus Insurance Company. For the reason herein stated, the Motion should be denied.

## BACKGROUND

Nautilus's Motion to Compel concerns its Request for Production No. 3, served on October 17, 2022. The Request seeks the following documents: "Minutes of board meetings containing reference to Alex Murdaugh since January 1, 2015." [ECF-122-2 at 5]. PSB objected to the Request on the following grounds:

a. The Request is not properly limited in time, and is therefore overly broad and unduly burdensome, to the extent it seeks records that predate the fall of Ms. Satterfield on February 2, 2018.

b. The meeting minutes of this Defendant's board are not relevant to any party's claim or defense in the pending action, which pertains to allegations of insurance fraud in 2018 under a policy issued by Nautilus to Alex Murdaugh, nor reasonably calculated to lead to the discovery of admissible evidence.

    c. The Request[ ] seeks information protected from discovery by attorney client privilege and attorney work product protections.

    d. Palmetto State Bank is a private financial institution. As such, the minutes of its board meetings necessarily contain sensitive information that is confidential and protected from disclosure, including but not limited to trade secrets. See also South Carolina Trade Secrets Act, S.C. Code § 39-8-10.

    e. In addition to the protections afforded its privileged information and trade secrets, the Bank's confidential research, development, and other commercial information is likewise protected.

See [ECF-122-2 at 5-6]. Prior to objecting, undersigned counsel conferred with counsel for Nautilus and ultimately made certain agreements as to how PSB would respond. Counsels' agreement is summarized in the preamble to PSB's Response to Nautilus's Request for Production, which states in pertinent part:

> The Plaintiff has requested minutes of board meetings containing reference to Alex Murdaugh. The parties have agreed PSB may produce responsive nonprivileged documents in redacted form to preserve PSB's interest in protecting its business, its shareholders, and its customers.

[ECF 122-2 at 3].

On December 5, 2022, subject to and without waiving its objections, PSB produced all documents in its possession, custody, or control responsive to Request No. 3. The documents produced contain certain redactions, pursuant to the agreement between counsel. On the same date, December 5, 2022, PSB also voluntarily produced all executive committee meeting minutes containing reference to Alex Murdaugh since January 1, 2015.[1]

---

[1] PSB's executive committee also serves as the loan committee. The membership between the two committees is identical and separate meeting minutes are not maintained. The loan committee discusses large single loans or loan relationships over $1.5 million dollars that require review and/or action. Votes and actions are taken in the executive committee and memorialized in the minutes of the executive committee. PSB also has a standing Asset/Liability Committee (ALCO) that keeps minutes of its meetings but does not review or evaluate individual loans or credit requests, which this case does not involve in any event.

2

After reviewing the minutes and finding nothing to support its baseless conspiracy claim against PSB, Nautilus came back for more. In a letter dated May 9, 2023, attached as Exhibit 1, as well as a telephone call, Nautilus sought the following from PSB:

1. All board meeting minutes without limitation to Alex Murdaugh,

2. All executive meeting minutes without limitation to Alex Murdaugh,

3. All minutes of "the Loan Committee" without limitation to Alex Murdaugh, and

4. All minutes of "ALCO" without limitation to Alex Murdaugh.

See Letter to Rannik, dated May 16, 2023, attached as Exhibit 2, at 3-4 (summarizing the expanded Request No. 3 for minutes).

Nautilus further requested that all minutes be produced without redaction and asked to expand the date range originally stated in Request No. 3. See id. at 4. Nautilus also sought to expand Request No. 3 by an additional four years, back to January 1, 2011. See id.

PSB did not agree. In the letter to Nautilus dated May 16, 2023, it stated:

> PSB cannot agree to expand the Request from "minutes of board meetings containing reference to Alex Murdaugh since January 1, 2015" to include all minutes of board meetings, executive committee meetings, loan committee meetings, and "ALOC" (sic) meetings and PSB cannot agree to expand the Request's date range from January 1, 2015, to January 1, 2011, which is far beyond the events of this case which are alleged to have occurred in 2018 and after.

Id.

In the weeks that followed, counsel for Nautilus continued to seek permission to expand Request No. 3, without formally serving a supplemental discovery request. Via letter dated June 15, 2023, PSB provided the following response to the expanded Request No. 3:

> Request #3 of Nautilus Insurance Company's First Set of Requests for Production seeks "Minutes of board meetings containing reference to Alex Murdaugh since January 1, 2015." Subject to and without waiving its objections, in response to the original Request PSB produced redacted copies of all responsive board and executive committee minutes since January 1, 2015. These documents were produced on December 5, 2023, and are assigned Bates Numbered **PSB 208084** to

3

**PSB 208114.** It is PSB's position that this compromise is far in excess of what is required.

After PSB responded and through the course of our meeting and conferring about PSB's response, Nautilus' decided it wished to expand Request #3 to seek minutes of board meetings, executive committee, loan committee, and assets & liabilities committee without limitation to Alex Murdaugh since January 1, 2011. See Correspondence dated May 9, 2023, and Email dated June 6, 2023.

PSB objects to the expanded Request #3, as it did to the original Request. All the claims in this case relate to the settlement of wrongful death and survival claims asserted by the Estate of Gloria Satterfield, who was injured on February 2, 2018, and died on February 26, 2018. The attempt to remove the limitation to Alex Murdaugh and to demand expansion of discovery back to 2011 is unsupportable in this case. PSB objects to the expanded Request #3:

a. The Request is not properly limited in time, and is therefore overly broad and unduly burdensome, to the extent it seeks records that predate the fall of Ms. Satterfield on February 2, 2018;

b. The meeting minutes of this Defendant's board are not relevant to any party's claim or defense in the pending action, which pertains to allegations of insurance fraud in 2018 under a policy issued by Nautilus to Alex Murdaugh, nor reasonably calculated to lead to the discovery of admissible evidence;

c. The Requests seeks information protected from discovery by attorney-client privilege and attorney work product protections.

d. Palmetto State Bank is a private financial institution. As such, the minutes of its board meetings necessarily contain sensitive information that is confidential and protected from disclosure, including but not limited to trade secrets. See also South Carolina Trade Secrets Act, S.C. Code § 39-8-10.

e. In addition to the protections afforded its privileged information and trade secrets, the Bank's confidential research, development, and other commercial information is likewise protected.

See Letter to Rannik, June 15, 2023, attached as Exhibit 3. Having reached an impasse on this issue of minutes, Nautilus filed the instant Motion to Compel on July 5, 2023.

At the outset of its Motion to Compel, Nautilus describes its civil action as a conspiracy case. [ECF-122 at 1]. Specifically, the Amended Complaint asserts a "conspiracy to commit fraud"

4

claim alleging that all the defendants, including PSB, alleging that conspired to defraud Nautilus by convincing the insurance company to pay claims of the Estate of Gloria Satterfield arising from the injuries and death of Mrs. Satterfield following her alleged fall on February 2, 2018. See Am. Compl. at ¶¶11, 26-36 [ECF-8]. [2] The Amended Complaint contains no substantive allegation against PSB, other than its contention that "no effort was made by Westendorf, Palmetto, Fleming, or MKF to ensure that the funds intended for the Satterfield family were received by the Satterfield family, violating their obligations regarding escrow funds and their disbursement." Id. at ¶14(h).

Yet PSB never had any control over the settlement funds, which travelled from Nautilus's Wells Fargo account to MKF's IOLTA trust account at BB&T, before being diverted to Alex Murdaugh's fictitiously named account at Bank of America. See PSB's Mot. for Protective Order at 2 [ECF-118]. PSB also did not receive, and is not alleged to have received, any fee or compensation from the Satterfield settlement; Mr. Westendorf served as the personal representative in his individual capacity, not as a representative of PSB. See id. at 3. PSB was not involved.

Knowing this, Nautilus seeks to capitalize on the sensationalism of totally unrelated matters dating back many years before Mrs. Satterfield's death. Those matters do not involve Nautilus or the Satterfield settlement, much less relate to the conspiracy claim asserted in the present lawsuit. Nautilus's claim is that the Defendants combined for the purpose of injuring Nautilus, who was allegedly deceived into paying to settle the Satterfield claims. This case is not about events that happened six to eight years earlier involving the money of certain personal injury clients of Alex Murdaugh. See PSB's Reply to Plaintiff's Opp. to Mot. for Protective Order at 1-2 [ECF-120].

---

[2] For a detailed analysis of the claims in this case, please see PSB's Motion for Protective Order, [ECF-118 at 1-4].

5

## LAW AND ANALYSIS

In its Motion to Compel, Nautilus argues that its expanded discovery request, seeking minutes of all meetings of PSB's Board of Directors and various committees without limitation, is "appropriate" in light of the convictions of Russell Laffite. See [ECF-122 at 4]. It also cites Laffitte's conviction to justify the fact that it is demanding minutes of meetings that spanned a period of more than 12.5 years, dating as far back as the beginning of 2011, more than seven years before Mrs. Satterfield fell. See [ECF-122 at 6].

Nautilus repeats many of the same flawed arguments that it made when attempting to explain why it also demands testimony from a PSB representative on vague, distant matters that are not related to its claim. It again repeats a partial quote of the Supreme Court on relevancy from Oppenheimer Fund, Inc. v. Saunders, 437 U.S. 340, 351 (1978), a case decided decades before the 2000 amendments to Rule 26(b)(1) of the Federal Rules of Civil Procedure narrowed the scope of permissible discovery. See [ECF 120 at 1-3]. In its current form, Rule 26(b)(1) provides that a nonprivileged matter is presumptively discoverable only if it is "relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. Pro. 26(b)(1).

Nautilus discusses Laffitte's convictions in broad strokes. [ECF 122 at 6]. Count 1 of the Second Superseding Indictment charged that Laffitte conspired with Murdaugh to commit wire fraud and bank fraud. This Court has summarized the evidence of the conspiracy adduced at trial in support of Laffitte's conspiracy conviction as follows:

> [Laffitte] was appointed as conservator or personal representative for several of Murdaugh's personal injury clients where he received over $450,000 in fees. (GX 198 at 14). [Laffitte] extended loans to Murdaugh from Hannah Plyler's conservatorship account that were repaid with checks [Laffitte] negotiated from funds Murdaugh stole from clients. At trial, [Laffitte] testified that he negotiated each check and money order from the stolen client funds from Murdaugh's personal injury clients Arthur Badger, Hakeem Pinckney, and Natasha Thomas that passed through Palmetto State Bank. (Dkt. No. 222 at 24). In December 2011, [Laffitte]

6

negotiated settlement checks that belonged to Hakeem Pinckney and Natasha Thomas for $309,581.46 and $325,000. (Id. at 30-31). Upon receipt of the settlement disbursement checks, [Laffitte] negotiated and distributed the funds at Murdaugh's direction to Murdaugh's wife, Murdaugh's boat, [Laffitte's] father, Murdaugh's father, and to repay loans [Laffitte] extended to Murdaugh from Hannah Plyler and Malik Williams' conservatorship accounts. (Id. at 30-32).

In addition, in August and September 2012, [Laffitte] broke down $25,245.08 in settlement funds that belonged to Natasha Thomas into smaller amounts for Murdaugh's use. (Id. at 38-39). [Laffitte] admitted this was structuring. (Id.). In February 2013, [Laffitte] deposited $151,726.05 into Hannah Plyler's conservatorship account with money that belonged to Arthur Badger and/or the Estate of Donna Badger to pay off Murdaugh's unsecured loan that [Laffitte] extended from Hannah Plyler's conservatorship account. (Id. at 47).

United States v. Laffitte, Crim A. No. 9:22-cr-00658-RMG (D.S.C.) (ECF 267 at 31-34).

"From the evidence in the Laffitte criminal trial," contends Nautilus, "the pattern of conduct from transactions beginning in 2011 mirrors that in this case, in which events transpired from 2018 to 2020." [ECF-122 at 4, n. 4]. The contrary is true. The evidence distinctly showed that this case does not mirror the transactions that were the subject of the Laffitte criminal trial. In fact, the differences between the two matters are undeniable. They include:

- Other than Murdaugh, who stole the funds from Mrs. Satterfield's estate, none of the Defendants in this case was so much as alleged to have participated in the conspiracy charged in the criminal case against Laffitte.

- In addition to the conspiracy count, the jury convicted Laffite of three counts of misapplying PSB's funds upon finding that Laffitte intended to inflict financial injury to PSB or to defraud PSB in 2015 and 2021.

- Laffitte did not serve as the personal representative of the Estate of Gloria Satterfield.

- The criminal case against Laffitte did not involve the Satterfield matter in any way.

- This case does not concern loans made from an account at any bank, much less PSB. It concerns the decision of Nautilus, a sophisticated insurance company, to pay the Satterfield claims.

- This case does not concern any account at PSB. After Nautilus decided to settle suspect claims, Murdaugh stole settlement funds intended for the beneficiaries of Mrs. Satterfield's

7

estate by diverting them to his account at Bank of America from Defendant MKF's IOLTA account at BB&T.

Laffite's conviction for engaging in a conspiracy with Murdaugh, which did not involve the Satterfield matter, does not make the information that Nautilus seeks in expanded Request No. 3 relevant to the claim in this case that all Defendants, including PSB, conspired to "deceive" Nautilus into paying the claims of Mrs. Satterfield's estate. It also does not justify Nautilus's desire to peruse more than 12.5 years' worth of documents containing sensitive financial matters of PSB and its customers.[3]

Defendant Westendorf has not been charged with any crime. Nautilus has no proof that he knew Murdaugh intended to steal the Satterfield settlement funds or that anyone, other than Murdaugh, even knew about the account at Bank of America that Murdaugh used to do so. Murdaugh's overdraft history on a PSB account that he did not use in the theft is irrelevant to this case. It did not cause Nautilus to pay the Satterfield claims, and it does not make the minutes of PSB's board and committee meetings relevant to the claim or defense of any party in this case.

Nautilus's claim in this case is that the Defendants, including PSB, conspired to "deceive" Nautilus into paying the Satterfield claims. Am. Compl. at ¶ 27 [ECF-8]. To prove its conspiracy

---

[3] Russell Laffitte's convictions for conspiracy (Count 1), bank fraud (Count 2), and wire fraud (Count 3) were based on actions taken from 2011 to 2013. Laffitte's other convictions, for misapplication of bank funds (Counts 4-6), did not involve the misuse of funds of Murdaugh's personal injury clients. Rather, those convictions were based on Laffitte's misuse of PSB's funds in 2015 and 2021. Specifically, the last three Counts involved Laffitte extending $284,787.52 of PSB's funds to Murdaugh in 2015, (Count 6); loaning $750,000 of PSB's funds to Murdaugh in 2021 (Count 5); and distributing $680,000 of PSB's funds to PMPED in 2021, (Count 4). Accordingly, as it relates to the misuse or theft of Murdaugh's clients' funds, Laffitte's conduct underlying the convictions occurred no less than six years before Murdaugh stole the Satterfield settlement funds, in 2019, using his Bank of America account. Laffitte's convictions are not proof of any connection between his criminal conduct and this case. See United States v. Laffitte, Crim A. No. 9:22-cr-00658-RMG (D.S.C.) (ECF-267 at 31-42 and ECF-61 at ¶22 (alleging the conduct underlying Count 6 occurred on or about February 20, 2015).

claim, Nautilus must establish that the Defendants combined for the purpose of injuring Nautilus, not anyone else. Nautilus has absolutely no proof that PSB, or Defendant Westendorf for that matter, made any representation to Nautilus or combined with Murdaugh or any other person to "deceive" Nautilus (including its multiple adjusters, investigators, and lawyers) into paying the Satterfield claims. Evidence of a conspiracy between Laffitte and Murdaugh to defraud individuals, other than Nautilus, who were personal injury clients of the former lawyer is not proof that PSB, or any other party, conspired with Murdaugh for the purpose of injuring Nautilus. The value to Nautilus of the minutes it seeks is not evidentiary. This request is part of Nautilus's mission to conflate the issues and muddy the waters with matters involving Murdaugh that have nothing to do with this case.

Illustrating this last point, Nautilus complains in its Motion to Compel about redactions to the board and executive meeting minutes that PSB has produced. Nautilus proclaims,

> As to discussions [in minutes] regarding PSB's procedures, policies, and internal governance, they are highly relevant. The notion that the conspiracy between Laffitte and Murdaugh—in which over 3.8 million dollars were stolen—could go unnoticed for a decade is damning. PSB, like all banks, is required to have safeguards in place to prevent precisely the conduct at issue in this case. If it did not have adequate procedures and safeguards in place, it is subject to liability. If the bank *did* have adequate procedures safeguards (sic) and simply did not follow them, it is likewise subject to liability. Nautilus is entitled to discover which is true, and the meeting minutes are relevant to the question.

[ECF-122 at 7]. This argument is fantasy. Nautilus paid the 3.8 million dollars in 2019, not a decade ago. Moreover, Laffitte was not accused, charged, or convicted of conspiring with Murdaugh to steal any money paid by Nautilus. Additionally, as has been discussed *ad nauseum*, Murdaugh did not steal the money from a bank account at PSB. He diverted it from Defendant MKF's IOLTA account at BB&T to his secret account at Bank of America. No PSB procedure, policy, or internal governance could have prevented BB&T from disbursing the funds to Bank of America. PSB's

"safeguards" are irrelevant. Nautilus's argument to the contrary is nonsense and does not entitle it to obtain minutes of a financial institution's board and committee meetings spanning more than 12.5 years.

In any event, contrary to assertions by Nautilus, PSB has <u>not</u> redacted minutes for information regarding its policies and procedures. It has produced board and committee meeting minutes, including all board meeting minutes from 2015 to present, as originally requested by Nautilus. The minutes were redacted pursuant to agreements between counsel that allowed PSB to (a) redact information "reflecting bank governance unrelated to the subject matter of the suit," Email to Gressette, dated Oct. 4, 2022, attached as <u>Exhibit 4</u>, at 3, and (b) to produce the minutes "in redacted form to preserve PSB's interest in protecting its business, its shareholders and its customers." [ECF 122-2 at 3]. The information redacted from the minutes did not reference Murdaugh or relate in any way to this case.

## **CONCLUSION**

Considering the foregoing, PSB respectfully requests this Court deny Plaintiff's Motion to Compel and issue an Order sustaining PSB's objections to Nautilus's Request No. 3, as expanded, on the following grounds:

  a. to the extent it seeks information prior to January 1, 2018, the Request is not properly limited in time, and is therefore overly broad and unduly burdensome; and

  b. the meeting minutes of this Defendant's board, its executive and loan committee, and ALCO committee are not relevant to any party's claim or defense in the pending action.[4]

---

[4] Should the Court grant Plaintiff's Motion to Compel, in whole or in part, PSB would respectfully request an opportunity to produce the minutes pursuant to the Court's Confidentiality Order with redactions of any information that would reveal the identities or financial information of bank customers, other than Murdaugh; its attorney-client privileged information; trade secrets; or other confidential research, development, or commercial information of PSB.

Respectfully submitted,

*/s/ James W. Clement*
**G. Trenholm Walker** (Fed ID# 4487)
Direct:  (843) 727-2208
Email:  Walker@WGLFIRM.com
**Thomas P. Gressette, Jr.** (Fed ID# 7261)
Direct:  (843) 727-2249
Email:  Gressette@WGLFIRM.com
**James W. Clement** (Fed ID# 12720)
Direct:  (843) 727-2224
Email:  Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
Mail: P.O. Drawer 22167, Charleston, SC 29413
Office: 66 Hasell Street, Charleston, SC 29401
Phone: (843) 727-2200

***ATTORNEYS FOR PALMETTO STATE BANK***

July 12, 2023
Charleston, South Carolina

11