EXHIBIT C

```
 1                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
 2                    CHARLESTON DIVISION

 3
                 DEPOSITION OF CHAD WESTENDORF
 4

 5       NAUTILUS INSURANCE COMPANY,

 6                     Plaintiff,

 7         vs.            CASE NO. 2:22-cv-1307-RMG

 8       RICHARD ALEXANDER MURDAUGH, SR., CORY FLEMING,
         MOSS & KUHN, P.A., CHAD WESTENDORF, and
 9       PALMETTO STATE BANK,

10                     Defendants.

11       _____

12       DEPONENT:   CHAD WESTENDORF

13

14       DATE:        JUNE 30, 2023

15       TIME:        1:57 P.M.

16

17       LOCATION:    WALKER GRESSETTE FREEMAN & LINTON
                       CHARLESTON, SC
18

19       REPORTED BY: RUTH L. MOTT, RPR, CRR
                       CLARK BOLEN
                       P.O. BOX 73129
20                     CHARLESTON, SC 29422
                       843-762-6294
21                     WWW.CLARKBOLEN.COM

22

23

24

25
```

```
1       A P P E A R A N C E S

2

        ON BEHALF OF PLAINTIFF:
3
                EPTING & RANNIK
4               BY:  JAAN G. RANNIK
                BY:  CLINTON MAGILL
5               46A State Street
                Charleston, SC 29401
6               jgr@epting-law.com
                ctm@epting-law.com
7
        ON BEHALF OF CORY FLEMING (BY ZOOM):
8
                PENDARVIS LAW OFFICES
9               BY:  THOMAS A. PENDARVIS
                710 Boundary Street
10              Suite A-1
                Beaufort, SC 29902
11              thomas@pendarvislaw.com

12      ON BEHALF OF MOSS & KUHN, PA (BY ZOOM):

13              HOOD LAW FIRM, LLC
                BY:  ROBERT H. HOOD, JR.
14              172 Meeting Street
                Charleston, SC 29401
15              bobbyjr.hood@hoodlaw.com

16      ON BEHALF OF CHAD WESTENDORF:

17              WILLS MASSALON & ALLEN
                BY:  CHRISTY FORD ALLEN
18              97 Broad Street
                Charleston, SC 29401
19              callen@wmalawfirm.net

20      ON BEHALF OF PALMETTO STATE BANK:

21              WALKER GRESSETTE FREEMAN & LINTON
                BY:  THOMAS P. GRESSETTE, JR.
22              BY:  JAMES W. CLEMENT
                66 Hasell Street
23              Charleston, SC 29401
                gressette@wglfirm.com
24              clement@wglfirm.com

25      ALSO PRESENT:  JONATHAN RALEY
```

```
1                        I N D E X

2

3    WITNESS                                    PAGE

4    CHAD WESTENDORF

5       BY MR. RANNIK                             4
        CERTIFICATE OF REPORTER                  31
6       DEPONENT CORRECTION SHEET                32

7

8            CHAD WESTENDORF - EXHIBITS

9    EXHIBIT          DESCRIPTION            PAGE

10   EXHIBIT NO. 01   2/22/22 DEPOSITION AND    6
                      EXHIBITS
11
     EXHIBIT NO. 02   APPLICATION FOR SUCCESSOR 12
12                    PERSONAL REPRESENTATIVE

13   EXHIBIT NO. 03   1/18/19 BANK STATEMENT    18

14   EXHIBIT NO. 04   TRANSFER RECORD           19

15   EXHIBIT NO. 05   EXCEPTION SHEET           20

16   EXHIBIT NO. 06   ENVIRONMENTAL CHECKLIST   22

17   EXHIBIT NO. 07   DOCUMENTS RELATING TO     25
                      SETTLEMENT OF SATTERFIELD
18                    CASE

19

20

21                      - - -

22

23

24

25
```

```
 1        please.
 2              Q.  Of course.  Would it be wrong to tell a
 3        court that someone is under 18 years old and,
 4        therefore, they need a conservator account when
 5        you know that they're actually over the age of
 6        18?
 7                    MS. ALLEN:  Same objection.
 8              A.  Yes.
 9              Q.  Would it be wrong to represent to the
10        court that someone lives in Hampton County when,
11        in fact, you know they live in Columbia?
12                    MS. ALLEN:  Object to the form.
13              A.  Say that one more time.
14              Q.  Sure.  Would it be wrong to, on a
15        conservatorship or PR application, represent to
16        the court that the person or the estate is in
17        Hampton, South Carolina, when, in fact, you know
18        that they're in Columbus, South Carolina?
19              A.  Yes, sir, that would be wrong.
20                    MS. ALLEN:  Same objection.
21              Q.  Would it be wrong to do all of these
22        things that we've just talked about even if Alex
23        Murdaugh told you to do it?
24              A.  Yes.
25              Q.  Let's say that someone knew about all
```

1    the instances of wrongdoing.  Let's say they

2    happened and someone knew about it.  And let's

3    say that it had happened every single time Alex

4    Murdaugh had asked someone to serve as a PR.

5              In that situation, do you think it's

6    reasonable to expect that something -- more

7    wrongdoing would occur if you serve as a PR for

8    Alex Murdaugh in the future?

9                    MS. ALLEN:  Object to the form.

10                   MR. GRESSETTE:  Objection.

11        A.  You could assume that, yes.

12        Q.  Are you aware that Mr. Laffitte has been

13   convicted of much of the things that we just

14   described in federal court?

15        A.  Yes, sir.

16        Q.  And would you agree that Mr. Laffitte

17   should have known that serving as a PR for

18   Mr. Murdaugh would lead to more wrongdoing?

19                   MS. ALLEN:  Object to the form.

20        A.  I don't know.  I can't answer that.

21        Q.  If Mr. Laffitte's work as a conservator

22   or a PR for Mr. Murdaugh had involved wrongdoing

23   every time, you would expect by 2018 that

24   Mr. Laffitte would have understood that was the

25   gig, right?

1          A.  I would assume.

2          Q.  When you were asked to serve as PR for

3     the Estate of Gloria Satterfield, you ran that

4     request by Mr. -- by Russell Laffitte, correct?

5          A.  That is correct.

6          Q.  Did he tell you anything about any of

7     the wrongdoing associated with serving as a

8     fiduciary for Alex Murdaugh when you asked?

9                    MR. GRESSETTE:  Objection.

10         A.  No, sir.

11         Q.  Did he tell you that Murdaugh had

12    substantial overdrafts?

13         A.  No, sir.

14         Q.  Did Mr. Laffitte tell you that when he

15    was a vice president like you were, he had caused

16    PSB to issue illegal loans to Alex Murdaugh from

17    a conservatorship account?

18                    MS. ALLEN:  Objection to the form.

19                    MR. GRESSETTE:  Objection.

20         A.  He did not.

21         Q.  Did he tell you that funds had been

22    disbursed in prior conservatorships in violation

23    of the disbursement statements approved by the

24    court?

25         A.  He did not.

1              Q.  He should have informed you of these

2       things, though, right?

3                   MR. GRESSETTE:  Objection.

4              A.  I would hope so.

5              Q.  You would have liked to know?

6              A.  Yes, sir.

7              Q.  If you had known these things in 2018,

8       would you have agreed to serve as a PR for the

9       Estate of Gloria Satterfield?

10             A.  No, sir.

11             Q.  Would you have signed the application

12      for the appointment to be made a PR when Murdaugh

13      brought it to your office?

14             A.  If I knew those things, no, sir, I

15      wouldn't have.

16             Q.  Let me show you that or a document and

17      ask if you recognize it.

18                  (Exhibit No. 02 marked for

19      identification.)

20             Q.  Do you recognize this document?

21             A.  Yes, sir.

22             Q.  And what is this document?

23             A.  Application for successor personal

24      representative.

25             Q.  Now, can you please read for us --

1          there's an X through one of the boxes on the

2          first page at the bottom there.  It says:

3          "Priority for appointment of the successor

4          personal representative is, other, describe."

5                  Do you see where I'm talking about?

6          A.  Yes, sir.

7          Q.  What does that say?

8          A.  "Current personal representative desires

9     bank vice president to serve as personal

10    representative.  Sole other heir concurs."

11         Q.  Okay.  And then if I can get you to turn

12    to the next page.  At the top right, there's a

13    verification.

14                 Is that your signature?

15         A.  That is.

16         Q.  What is the address that's provided

17    there?

18         A.  601 First Street West -- First Street --

19    excuse me -- Hampton, South Carolina 29924.

20         Q.  And what's at that bank?

21         A.  The bank, Palmetto State Bank.

22         Q.  The telephone number, what telephone

23    number is that?

24         A.  (803) 943-2671.

25         Q.  And is that a bank phone number?

1         A.  Yes, sir.  That's the correction I made

2     on the deposition, if I may say that.

3         Q.  You may.

4         A.  I did not type that and that's what I

5     told -- that it was already there.

6         Q.  As part of serving as PR for the Estate

7     of Gloria Satterfield, you endorsed a check from

8     Nautilus, correct?

9         A.  Yes, sir.

10        Q.  I think you were at your office when you

11     did that?

12        A.  That's correct.

13        Q.  Did you receive a letter with that

14     check?

15        A.  Yes, sir.

16        Q.  And did that letter say these funds are

17     to be held in trust until an order approving the

18     settlement has been filed?

19        A.  Yes, sir.

20        Q.  If you had known of Alex Murdaugh's

21     wrongdoing in the past, would you have

22     endorsed -- well, let me ask you this.  I'm

23     sorry.  Did you do anything to ensure that an

24     order approving the settlement was filed before

25     the funds were distributed?

1          A.  No, sir.

2          Q.  Because you trusted Cory Fleming, right?

3          A.  That's correct.

4          Q.  If you had known about Alex Murdaugh's

5    prior wrongdoing and you were in this position,

6    you probably would have checked more things,

7    right?

8          A.  Correct.

9          Q.  So let me ask you a little bit about

10   your employment or your work now with PSB.

11              So Mr. Malinowski told us about it and

12   that you're now an independent contractor.  And

13   it sounded to me like you do sort of general

14   consulting work for the bank.

15         A.  Yes, sir.

16         Q.  Why the change from your prior role?

17         A.  I was unable to be bonded under the

18   bank's bond.

19         Q.  I see.  Okay.  Okay.

20              And that was as a result of the mess

21   with the Estate of Gloria Satterfield?

22         A.  I assume so, yes, sir.

23         Q.  And the bond that you were under, this

24   is the fidelity bond for the bank?

25         A.  I would assume so.  I don't know.

```
1              A.   Sure.

2              Q.   Did you ever submit a conflict of

3       interest report to the bank?

4              A.   I did not.

5              Q.   Okay.  I'm going to show you what we

6       marked in the previous exhibit as Bank Exhibit 3.

7                   Have you ever seen this document?

8              A.   No, sir.

9              Q.   Okay.  And if you flip to the last page,

10      did you ever fill this out and submit it to the

11      bank?

12             A.   No, sir.

13             Q.   Thank you.

14                  When you were approached about being PR,

15      I asked you if you had run that by Russell

16      Laffitte.

17                  Is there anybody else at the bank you

18      ran that past?

19             A.   When I went and spoke to Russell, I

20      asked him if I could serve as a PR in a case that

21      Alec was involved in.  I didn't know what the

22      case was at that time.  I asked him if he could

23      do it.  He said, Let me talk to my dad.  So both

24      him and Mr. Laffitte said I could do it.

25             Q.   Okay.  Did you ask anybody else?  Did
```

```
 1                    CERTIFICATE OF REPORTER
 2

 3              I, Ruth Mott, Registered
        Professional Reporter, Certified Realtime
 4      Reporter, and Notary Public for the State of
        South Carolina, do hereby certify that the
 5      witness in the foregoing deposition was by me
        duly sworn to testify to the truth, the whole
 6      truth and nothing but the truth in the
        within-entitled cause; that said deposition was
 7      taken at the time and location therein stated;
        that the testimony of the witness and all
 8      objections made at the time of the examination
        were recorded stenographically by me and were
 9      thereafter transcribed by computer-aided
        transcription, that the foregoing is a full,
10      complete and true record of the testimony of the
        witness and of all objections made at the time of
11      the examination; and that the witness was given
        an opportunity to read and correct said
12      deposition and to subscribe the same.
                        Should the signature of the witness
13      not be affixed to the deposition, the witness
        shall not have availed himself of the opportunity
14      to sign or the signature has been waived.
                        I further certify that I am neither
15      related to nor counsel for any party to the cause
        pending or interested in the events thereof.
16                      Witness my hand, I have hereunto
        affixed my official seal on July 12, 2023 at
17      Moncks Corner, Berkeley County, South Carolina.

18

19
                        Ruth Mott,
20                      Registered Professional Reporter
                        Certified Realtime Reporter
21                      and Notary Public
                        My Commission expires
22                      February 23, 2025

23

24

25
```