# EXHIBIT D

```
 1              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF SOUTH CAROLINA
 2                  CHARLESTON DIVISION

 3
                DEPOSITION OF JAN MALINOWSKI,
 4              30(b)(6) PALMETTO STATE BANK

 5

 6      NAUTILUS INSURANCE COMPANY,

 7                   Plaintiff,

 8        vs.                 CASE NO. 2:22-cv-1307-RMG

 9      RICHARD ALEXANDER MURDAUGH, SR., CORY FLEMING,
        MOSS & KUHN, P.A., CHAD WESTENDORF, and
10      PALMETTO STATE BANK,

11                   Defendants.
        _____
12

13
        DEPONENT:   JAN MALINOWSKI
14

15      DATE:       JUNE 30, 2023

16
        TIME:       10:35 A.M.
17

18      LOCATION:   WALKER GRESSETTE FREEMAN & LINTON
                    CHARLESTON, SC
19

20      REPORTED BY: RUTH MOTT, RPR, CRR
                     CLARK BOLEN
21                   P.O. BOX 12189
                     CHARLESTON, SC 29422
22                   843-762-6294
                     WWW.CLARKBOLEN.COM
23

24

25
```

```
1     A P P E A R A N C E S

2

      ON BEHALF OF PLAINTIFF:
3

          EPTING & RANNIK
4         BY:  JAAN G. RANNIK
          BY:  CLINTON MAGILL
5         46A State Street
          Charleston, SC 29401
6         jgr@epting-law.com
          ctm@epting-law.com
7

      ON BEHALF OF CORY FLEMING (BY ZOOM):
8

          PENDARVIS LAW OFFICES
9         BY:  THOMAS A. PENDARVIS
          710 Boundary Street
10        Suite A-1
          Beaufort, SC 29902
11        thomas@pendarvislaw.com

12    ON BEHALF OF MOSS & KUHN, PA (BY ZOOM):

13        HOOD LAW FIRM, LLC
          BY:  ROBERT H. HOOD, JR.
14        172 Meeting Street
          Charleston, SC 29401
15        bobbyjr.hood@hoodlaw.com

16    ON BEHALF OF CHAD WESTENDORF:

17        WILLS MASSALON & ALLEN
          BY:  CHRISTY FORD ALLEN
18        97 Broad Street
          Charleston, SC 29401
19        callen@wmalawfirm.net

20    ON BEHALF OF PALMETTO STATE BANK:

21        WALKER GRESSETTE FREEMAN & LINTON
          BY:  THOMAS P. GRESSETTE, JR.
22        BY:  JAMES W. CLEMENT
          66 Hasell Street
23        Charleston, SC 29401
          gressette@wglfirm.com
24        clement@wglfirm.com

25    ALSO PRESENT:  JONATHAN RALEY
```

```
 1                    I N D E X

 2

 3    WITNESS                               PAGE

 4    JAN MALINOWSKI

 5        BY MR. RANNIK                        4
          CERTIFICATE OF REPORTER             99
 6        DEPONENT CORRECTION SHEET          100

 7

 8               JAN MALINOWSKI - EXHIBITS

 9    EXHIBIT          DESCRIPTION           PAGE

10    EXHIBIT NO. 01   NOTICE OF DEPOSITION     6
      EXHIBIT NO. 02   PALMETTO STATE BANKSHARES,  15
11                     INC. RESOLUTIONS OF
                       DIRECTORS
12    EXHIBIT NO. 03   CONFLICT OF INTEREST/CODE  36
                       OF ETHICS POLICY
13    EXHIBIT NO. 04   PORTION OF TRANSCRIPT     66

14

15

16                         - - -

17

18

19

20

21

22

23

24

25
```

1    had with the bank, correct?

2         A.  He had used it to secure other loans,

3    correct.

4         Q.  And the $750,000 loan in 2021, that was

5    charged off by the bank, correct?

6         A.  Yes.

7         Q.  Is it accurate to say that at the end of

8    2021 Mr. Murdaugh's indebtedness to the bank was

9    more than $4 million?

10        A.  I believe that is correct.

11        Q.  I'd like to come back to some more

12   detailed questions about the service of bank

13   personnel as fiduciaries for, in this case, Alex

14   Murdaugh.

15             So again, I'm limited in this deposition

16   to speaking from 2018 afterwards.  Do you know

17   how Mr. Westendorf came to be the personal

18   representative for the Estate of Gloria

19   Satterfield?

20        A.  I believe he was requested by Alex

21   Murdaugh to serve as the PR.

22        Q.  And did he receive permission from

23   anybody to serve in that role, do you know?

24        A.  Yes, he did.

25        Q.  And from whom?

1         A.  Senior management of the bank in

2    Hampton.

3         Q.  And can you be more specific?

4         A.   I believe either Charles A. Laffitte,

5    Jr., chairman, or Russell L. Laffitte, the COO,

6    or both together.

7         Q.  Okay.  Did the bank have discussions

8    relating to Mr. Westendorf's service as PR for

9    the Estate of Gloria Satterfield at any time?

10                 MR. GRESSETTE:  Objection.  Scope.

11        A.  Specifically, at what time?

12        Q.  How about in 2018?

13        A.  To my knowledge, no.

14        Q.  How about in 2021?

15        A.  Yes.

16        Q.  And I don't want you to get into

17   communications with counsel.  Were there

18   conversations between the bank about his

19   service -- what were the conversations about his

20   service as PR in 2021?

21        A.  That he was named -- that he was named

22   as -- publicly as the PR to the Estate of Gloria

23   Satterfield.

24        Q.  And what was the significance of that to

25   the bank?

1          A.   I believe so.

2          Q.   Okay.  And then the president and all

3    directors report to the chairman and the CEO.

4               Directors, principal shareholders, and

5    executive officers must make annual disclosures

6    to the entire board of any actual and potential

7    conflicts of interest and any potential conflicts

8    of their related interests.

9               Bank takes that very seriously?

10         A.   Yes.

11         Q.   Further down you see consequences of

12   noncompliance.  As previously stated, failure to

13   comply with this policy may result in

14   disciplinary action, up to and including

15   termination of employment.

16              I believe an example of that you've

17   testified would have been Russell Laffitte's

18   termination?

19              MR. GRESSETTE:  Objection.

20         A.   Yes.

21         Q.   Have any other bank employees been

22   terminated in this manner, for violating this

23   policy?

24              MR. GRESSETTE:  Objection.

25         A.   To my knowledge, no.

1               MR. GRESSETTE:  Objection.

2          A.  I can't answer any more.

3          Q.  All right.  I'd like to turn now to

4     Nautilus and Nautilus's claims in this matter.

5     Nautilus has claimed, of course, that it is the

6     victim of a conspiracy that Alex Murdaugh

7     effected a scheme to defraud Nautilus and then to

8     conceal it.  Does the bank agree that

9     Mr. Murdaugh could not have effected this scheme

10    and kept it concealed if the Satterfield family

11    had learned about the settlement?

12              MR. GRESSETTE:  Objection.  Scope

13    and form.

14         A.  Can you repeat the question, please?

15         Q.  Sure.  Does the bank agree that

16    Mr. Murdaugh could not have successfully stolen

17    the money and defrauded Nautilus if the

18    Satterfield family had been aware of the

19    settlement that they didn't receive?

20              MR. GRESSETTE:  Objection.  Form

21    and scope.

22              MR. PENDARVIS:  Objection.

23         A.  Repeat the question one more time.

24         Q.  Does PSB agree that Mr. Murdaugh could

25    not have defrauded Nautilus and stolen the money

1   and kept it concealed if the Satterfield family

2   had been aware of the settlement?

3                  MR. GRESSETTE:  Objection.  Scope

4   and form.

5                  MR. PENDARVIS:  Objection.

6        A.   Yes.

7        Q.   And this scheme, it did hurt the bank

8   too, right?

9                  MR. GRESSETTE:  Objection.

10       Q.   I mean, it created some bad press?

11       A.   Correct.

12       Q.   It left the bank with some bad debt in

13  the form of money owed by Murdaugh that cost

14  shareholders money?

15       A.   Correct.

16       Q.   It exposed the bank to discussions of

17  liability with the Plylers and the Satterfields

18  and the Badgers?

19                 MR. GRESSETTE:  Objection.  To the

20  extent your answer relies on anything discussed

21  with attorneys, don't want to relay that.

22       A.   We have settlements in pending actions.

23       Q.   If Mr. Murdaugh's malfeasance was known

24  to the bank in November of 2018, could the bank

25  under its own code of ethics have authorized

1      Mr. Westendorf to serve as the PR in that case?

2                    MR. GRESSETTE:  Objection.  Scope

3      and form.

4           A.  Knowing of malfeasance, could the bank

5      have authorized him to be the PR?  Yes, they

6      could, but it would have been bad judgment.

7           Q.  They shouldn't have if they had known.

8                    MR. GRESSETTE:  Objection.  Scope

9      and form.

10          Q.  Do you agree?

11          A.  Repeat that again.

12          Q.  If the bank had known of Mr. Murdaugh's

13     malfeasance, they should not have authorized Chad

14     Westendorf to serve as the PR, correct?

15                   MR. GRESSETTE:  Objection.  Scope

16     and form.

17          A.  Correct.

18          Q.  If you knew what Russell Laffitte knew

19     about the bank's relationship with Mr. Murdaugh,

20     would Mr. Westendorf's appointment as a PR been

21     approved?

22                   MR. GRESSETTE:  Objection.  Scope

23     and form.

24          A.  Me personally or as the bank?

25          Q.  As the bank.

```
1
                    CERTIFICATE OF REPORTER
2

3                   I, Ruth Mott, Registered
        Professional Reporter, Certified Realtime
4       Reporter, and Notary Public for the State of
        South Carolina, do hereby certify that the
5       witness in the foregoing deposition was by me
        duly sworn to testify to the truth, the whole
6       truth and nothing but the truth in the
        within-entitled cause; that said deposition was
7       taken at the time and location therein stated;
        that the testimony of the witness and all
8       objections made at the time of the examination
        were recorded stenographically by me and were
9       thereafter transcribed by computer-aided
        transcription, that the foregoing is a full,
10      complete and true record of the testimony of the
        witness and of all objections made at the time of
11      the examination; and that the witness was given
        an opportunity to read and correct said
12      deposition and to subscribe the same.
                        Should the signature of the witness
13      not be affixed to the deposition, the witness
        shall not have availed himself of the opportunity
14      to sign or the signature has been waived.
                        I further certify that I am neither
15      related to nor counsel for any party to the cause
        pending or interested in the events thereof.
16                      Witness my hand, I have hereunto
        affixed my official seal on July 12, 2023 at
17      Moncks Corner, Berkeley County, South Carolina.

18

19
                        Ruth Mott,
20                      Registered Professional Reporter
                        Certified Realtime Reporter
21                      and Notary Public
                        My Commission expires
22                      February 23, 2025

23

24

25
```