# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | Case No.: 2:22-cv-1307-RMG |
| Petitioner, | **DEFENDANT PALMETTO STATE BANK'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |
| vs. | |
| RICHARD ALEXANDER MURDAUGH, SR., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, PALMETTO STATE BANK, and THE UNITED STATES OF AMERICA, | |
| Respondents. | |

The Defendant Palmetto State Bank ("PSB" or "this Defendant"), by and through the undersigned counsel, hereby moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. PSB further submits this incorporated Memorandum in Support of its Motion.[1] For the reasons explained herein, PBS respectfully requests that the Court grant summary judgment in its favor and issue an order dismissing PSB.

In the Amended Complaint, filed on May 11, 2022, Plaintiff Nautilus Insurance Company asserts two claims against PSB: conspiracy to commit fraud and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). (See Am. Compl., ECF Entry No. 8, at ¶¶ 26-30, 31-36). As to both claims, there is no genuine dispute of material fact and PSB is entitled to judgment as a matter of law because:

1. Nautilus cannot establish all the essential elements of civil conspiracy.

    a. There is no evidence that PSB combined or agreed with any of the co-defendants for the purpose of injuring Nautilus, and

    b. There is no evidence that PSB committed an unlawful act or lawful act by unlawful means in furtherance of the alleged conspiracy.

---

[1] A full and complete explanation of the grounds for this Motion, as set forth in Local Civ. Rule 7.05 (D.S.C.), is contained herein and a separate memorandum would serve no useful purpose.

    2. Nautilus cannot establish all the essential elements of a violation of SCUTPA.

        a. There is no evidence that PSB engaged in an unfair or deceptive act that proximately caused the damages claimed by Nautilus.

        b. There is no evidence that PSB conducted "trade or commerce" with Nautilus that proximately caused the damages claimed by Nautilus.

        c. There is no evidence that PSB engaged in a transaction with Nautilus at all.

Nautilus filed the Amended Complaint more than a year ago. At the time, Nautilus had no evidence to substantiate the conclusory allegations it asserted against PSB. Fourteen months later, Nautilus remains without evidence to support its claims, despite having "endeavored to perform as much discovery as it reasonably can . . . ." (ECF Entry No. 119 at 3).

To date, the parties have engaged in extensive written discovery and exchanged tens of thousands of documents. In addition, Nautilus has the depositions of defendant PSB (on matters from 2018 to present), defendant Chad Westendorf, and defendant Moss & Kuhn P.A..[2] Needless to say, there has been ample time for Nautilus to come forth with some material proof to substantiate its claims against PSB, but it has been unable to do so because none exists. Instead, Nautilus has been doggedly pursuing PSB about the loan practices of PSB that have nothing to do with this case, as well as the conduct of the bank in matters involving Russell Laffitte that are remote in time and circumstance and wholly unrelated to the present case.[3] Meanwhile, PSB has uncovered that Nautilus's own documents reveal there are no grounds upon which it can recover against PSB.

---

[2] Nautilus deposed Westendorf on June 30, 2023. In that deposition, Mr. Westendorf affirmed his previous deposition testimony in the state court Satterfield litigation, a copy of which was attached as Exhibit 1 to the transcript of the deposition taken in this case.

[3] The matters referenced are the subject of pending motions of PSB for a protective order, (ECF Entry No. 118), and of Nautilus to compel, (ECF Entry No. 112).

Nautilus may no longer rest on its allegations. As to each element of its two claims against PSB, Nautilus must present admissible evidence that puts a material fact in issue. Because it cannot do this, PSB respectfully submits that it is entitled to summary judgment.

## I.  BACKGROUND

The Court is undoubtedly familiar with Alex Murdaugh's admitted misappropriation in 2019 of around $3 million of settlement funds intended for the two sons of Murdaugh's former housekeeper, Gloria Satterfield. The facts of how Murdaugh accomplished his theft are no longer genuinely disputed. In his Answer to the Amended Complaint in this case, Murdaugh flatly admits that "he invented the critical facts giving rise to a purported liability covered by Nautilus's insurance policy, and he acted to assist the Satterfield estate succeed in a claim on those facts, which the representatives of the Satterfield estate believed were true." (Answer of Murdaugh, ECF 113, at ¶5(d)).

Shortly after answering the Amended Complaint in this case, Murdaugh filed a motion in a case pending against him in state court, brought by the Estate of Gloria Satterfield, making similar admissions in even more detail. See Murdaugh's Rule 60(b) Mot. for Relief from Judgment, filed May 16, 2023, attached as Exhibit 1. Murdaugh admits in the motion that he fabricated the story of a dog causing Gloria Satterfield to fall down the stairs of Moselle and that he defrauded insurance companies into paying a total of $4,305,000 to settle the claim of her estate against him.[4] Nautilus, the plaintiff in this case, is one of the two insurance companies. It issued an umbrella policy insuring Murdaugh that was in effect in 2018, when Ms. Satterfield apparently fell at his property and later died.

---

[4] Murdaugh's Rule 60(b) motion does not disavow the admitted fraud with the Satterfield monies; instead, it alleges that the confession will interfere with other Murdaugh victims having an opportunity to make claims for their losses if the confession is allowed to remain in priority over those other claims.

3

In the Amended Complaint in this case, Nautilus claims that "[b]eginning in July 2021 and continuing through the filing of this action, Nautilus became aware for the first time of facts regarding the Satterfield claims, allegations of insurance fraud, conspiracy to commit insurance fraud, and allegations of criminal conduct ('the Irregularities')." (Am. Compl., ECF Entry No. 8, at ¶ 14). Nautilus alleges Murdaugh arranged for his longtime close friend, attorney Cory Fleming, to represent Ms. Satterfield's estate in bringing a claim against his insurance companies. (Id. at ¶ 14(b)). Nautilus further claims that Murdaugh and Fleming then sought out PSB employee Chad Westendorf to serve as the successor personal representative of the estate of Gloria Satterfield. (Id. at ¶ 14(c)). Westendorf had never previously served as a personal representative.

It is undisputed, based on the discovery to date, that Nautilus did not enter the settlement naively, unadvisedly, or without significant question as to whether the facts supported the claim asserted. Nautilus had a team of professionals evaluate the claim before deciding to settle in late March 2019. Its team included an experienced adjuster, who was also an attorney, who thoroughly investigated the claim; private investigators; independent experts who assessed Ms. Satterfield's medical records; the law firm of Murphy & Grantland whom it engaged to investigate and defend the Estate of Satterfield's claim against Alex Murdaugh; and Nautilus's separate coverage counsel who reviewed and opined on the legitimacy of the claim.

Despite its allegations to the contrary, discovery to date has demonstrated that it is beyond genuine dispute that Nautilus was completely aware—***before*** it decided to pay its $3,800,000—that the facts did not support Alex Murdaugh's version of events and that the claim was possibly fraudulent.

Nautilus's claim file obtained in discovery shows that its adjuster entered the below note on March 22, 2018, just two days after Nautilus opened the file. The note recounts exactly what

4

Nautilus contends in this case had been hidden from it until July 2021: Nautilus suspected from the very beginning that Murdaugh was lying about his relation to Ms. Satterfield and the cause of her fall:

> Author: Amy Coryer-Miller
> Topic: Sensitive
> Related To: Claim
> Mar 22, 2018 3:52 PM
>
> Questionable
> The Lloyd's adjuster believes this claim is very questionable and "fishy." He said the law firm representing the Estate is the policyholder's former law firm. He said it is very rare that a partner of a law firm would represent a client adverse to a former partner. He also said that he pulled an obituary for Ms. Satterfield that indicated the policyholder is a relative of Ms. Satterfield. This is contrary to what the policyholder told him.
> The Lloyd's adjuster also questions whether Ms. Satterfield regained consciousness for a moment just long enough to tell the policyholder that one his
> dogs jumped on her and knocked her over. He also states that the policyholder is adamant about accepting liability and is seeking an acknowledgement
> that the case is worth policy limit

Nautilus Claim File, attached Exhibit 2, at NAUTILUS_002551. Nautilus's adjuster, Amy Coryer-Miller, agreed with the assessment of the stink, writing in the claim notes weeks later, "the Lloyd's adjuster and I believe this claim is very questionable."[5] Exhibit 2 at NAUTILUS_002525.

After conducting an exhaustive investigation that did not substantiate Alex Murdaugh's rendition of events leading to the fall of Ms. Satterfield, Nautilus agreed to mediate the claim voluntarily, before the estate had even filed a lawsuit. Nautilus made the decision to mediate knowing that the claims were "very questionable," even "fishy," and that there might not be coverage due to "the possibility that the decedent was working for Murdaugh on the date of the loss." Exhibit 2 at NAUTILUS_002410. Nautilus held a "[r]oundtable for discussion of settlement

---

[5] Lloyds issued the primary policy that had a $500,000 liability limit.

authority" in advance and sent its adjuster to the mediation armed with $2 million in settlement authority. Exhibit 2 at NAUTILUS_002410-11.

Heading into the mediation, one of its attorneys advised Nautilus, "." See Coverage Counsel's File, attached as Exhibit 3, at PHELPS-000366-67. Despite all the warning signs, Nautilus went forward with the voluntary mediation, which took place on March 22, 2019. Nautilus had Coryer-Miller, its seasoned adjuster who was also a lawyer, and Robert M. Kennedy, Jr., coverage counsel from the firm Phelps Dunbar, attend the mediation on its behalf. The defense attorney hired by Nautilus for Murdaugh was also present.

The parties did not reach a settlement at the mediation on March 22, 2019. However, at the conclusion of the mediation, the Estate's lawyer, Cory Fleming, left open his client's offer to settle with Nautilus for $3.8 million. Later that very day, Nautilus's coverage counsel advised the insurance company:



Exhibit 3 at PHELPS-000932. Coryer-Miller, the Nautilus adjuster, responded, "." Exhibit 3 at PHELPS-000932. Three days later, with all its doubts, Nautilus still made the business decision to settle the claim. Exhibit 2 at NAUTILUS_002402-03.

A state court later approved settlement including Nautilus's contribution of $3,800,000.

6

Nautilus made its settlement check payable to "Chad Westendorf as personal representative of the Estate of Gloria Satterfield & Moss Kuhn & Fleming PA as Attorney." <u>See</u> Nautilus Settlement Check, attached as <u>Exhibit 4</u>. Fleming had Westendorf endorse the settlement check and return it to him. Fleming then deposited the funds into his law firm's IOLTA account at BB&T. Murdaugh subsequently had Fleming issue a check from the IOLTA account at BB&T payable to "Forge." <u>See</u> MKF Check, attached as <u>Exhibit 5</u>. Murdaugh then deposited the check into his personal bank account at Bank of America, which he had opened under the "Forge" name to "launder and steal money through those accounts (sic)." <u>See</u> Tr. of Arraignment and Change of Plea Hr'g, May 25, 2023, attached as <u>Exhibit 6</u>, at 28:17-25. None of these transactions involved PSB or PSB accounts.

There is no evidence that Westendorf had any agreement with Murdaugh or Fleming to improperly obtain insurance proceeds or to disburse insurance proceeds for Murdaugh's personal gain. To the contrary, the record shows that Murdaugh and Fleming prepared the estate paperwork and drove the process to settlement and payment from Nautilus. Further, there is no evidence that Westendorf knew and Fleming's representation to the state court of case costs was misleading nor knew about the later improper disbursements from the escrow account of Fleming's law firm that are the subjects of Fleming's guilty plea.

It is undisputed that Westendorf did not sign any checks from the IOLTA account or direct any payments from it. Westendorf testified that he never saw any check to Forge. Dep. Tr. of C. Westendorf, dated Feb. 2, 2022, attached as <u>Exhibit 7</u>, at 61:17-18. There is also no proof that Westendorf knew of Murdaugh's "Forge" account at Bank of America, until it was disclosed to the world more than two years later, in late September 2021. And there is no proof that Westendorf reached any agreement or understanding with any other party to help commit fraud or steal money.

Nautilus, a sophisticated insurance company, made a calculated business decision to settle

the claim against its insured knowing not only that liability and damages were questionable but also that the claim could be fraudulent. No suit had been filed. Nautilus had the opportunity to litigate liability, causation, and damages. It purposely chose not to do so.

Murdaugh's subsequent theft of the money has nothing to do with the reason that Nautilus entered the settlement. Nautilus's decision to settle was the proximate cause of it paying $3.8 million. Had the money not been stolen, Nautilus would have still paid the $3.8 million. Nautilus is trying to claim it was duped, that it is a victim. Nothing is further from the truth. The victims of the theft were the two sons of Gloria Satterfield. Nautilus suspected Murdaugh concocted the liability facts and that a fraud was in the works; yet the insurance company still agreed to pay $3.8 million. There is no proof that Ms. Satterfield's sons or Westendorf had even the faintest inkling those liability facts were not true.

Now it is Nautilus that is doing the concocting. In the Amended Complaint, Nautilus claims that it did not learn of any of the suspicious circumstances until July 2021 or thereafter. (See Am. Compl., ECF Entry No. 8, at ¶ 14). Nautilus is pretending that it was "deceived" into paying a claim that its accomplished team of lawyers and other professionals described as fishy, highly questionable, and even fraudulent.

Jumping on the bandwagon of claims related to Alex Murdaugh's misdeeds, Nautilus asserts PSB made "no effort . . . to ensure that the funds intended for the Satterfield family were received by the Satterfield family. . . ." (Am. Compl., ECF Entry No. 8, at ¶ 14(h)). From this allegation we can see how far Nautilus's allegations are removed from the facts. It is undisputed that PSB had no knowledge of the payments that were made from the IOLTA account of Fleming's law firm. The Amended Complaint contains no other substantive allegations against PSB.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure is not a "disfavored procedural shortcut" but rather an "'integral part' of the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter." White v. Potocska, 589 F. Supp. 2d 631, 640 (E.D. Va. 2008) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)). The rule requires the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 is consistent with the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (citing Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir.1993)).

The party moving for summary judgment initially bears the burden of demonstrating that a genuine issue of material fact does not exist. Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Id. (quoting Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (internal quotation marks and citations omitted).

Once the moving party makes its "threshold demonstration" that no issue of material fact exists, the burden shifts to the non-moving party, who "may not rest on the allegations averred in his pleadings." Moore v. Elite Metal Performance, LLC, No. 9:16-CV-318-RMG, 2017 WL 5642349, at *1 (D.S.C. Jan. 24, 2017), aff'd, 728 F. App'x 191 (4th Cir. 2018), and aff'd, 728 F.

App'x 191 (4th Cir. 2018) (citing Celotex Corp.,477 U.S. at 324 (1986)). "Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue." Id. (citing Celotex Corp.,477 U.S. at 324 (1986)). This standard is not satisfied by conclusory or speculative allegations, or by the showing of "a 'mere scintilla of evidence' in support of the non-moving party's case." Id. (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal citations omitted)). Instead, using admissible evidence, the non-moving party "must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits." Sifford v. Drew, No. 8:11-CV-3019-RMG, 2013 WL 4021492, at *7 (D.S.C. Aug. 6, 2013) (J. Gergel) (citing Fed. R. Civ. P. 56(c)). While the evidence must be viewed in the light most favorable to the non-moving party, Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990),

> there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (internal quotation marks and citations omitted).

### III.    LAW AND ANALYSIS

#### A.    Civil Conspiracy

There is no genuine dispute of material fact as to Nautilus's claim that PSB conspired to defraud Nautilus. To prevail on a claim for civil conspiracy under South Carolina law, a plaintiff must prove four elements: "(1) a combination or agreement of two or more persons; (2) to commit an unlawful act or a lawful act by unlawful means; (3) together with the commission of an overt act in furtherance of the agreement; and (4) damages proximately resulting to the plaintiff." Jinks

v. Sea Pines Resort, LLC, No. 9:21-CV-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021) (citing Paradis v. Charleston Cty. Sch. Dist., 861 S.E.2d 774, 780 (S.C. 2021) (abolishing requirement to plead special damages). The plaintiff must also show that the defendant acted with a "specific intent" to harm the plaintiff. Jinks, 2021 WL 4711408, at *3; see also Paradis, 861 S.E.2d at 780 n.9 (explaining that because "civil conspiracy is an intentional tort, an intent to harm . . . [is] an inherent part of the analysis"). Prior to the Paradis decision, South Carolina courts generally described the specific intent element of civil conspiracy as requiring proof that the defendant combined or agreed with other persons "for the purpose of injuring the plaintiff." See, e.g., Mendelsohn v. Whitfield, 312 S.C. 17, 430 S.E.2d 254 (Ct. App. 1993), aff'd, 312 S.C. 226, 439 S.E.2d. 845 (1994) (evidence did not support reasonable inference that acts and omissions were designed "willfully to injure").

"[I]n order to establish a conspiracy, evidence, direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." Island Car Wash, Inc. v. Norris, 358 S.E.2d 150, 153 (Ct. App. 1987). The evidence must show that the Defendant possessed the requisite specific intent to harm the plaintiff, see Jinks, 2021 WL 4711408, at *3, which requires some evidence that the defendant "acted with malice" toward the plaintiff. See MST, LLC v. N. Am. Land Tr., No. 2:22-CV-00874-DCN, 2023 WL 3571500, at *11 (D.S.C. May 19, 2023) (quoting Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc., 992 F.2d 59, 63 (4th Cir. 1993) (internal quotation marks omitted)).

Nautilus has no competent proof to support its conclusory allegation in the Amended Complaint that PSB conspired with others to deceive Nautilus into paying insurance proceeds to the Satterfield estate by (a) falsely representing to Nautilus the existence of an arm's length lawsuit

11

by the Satterfield estate against Murdaugh, (b) covertly steering the lawsuit for the furtherance of their unlawful agreement, and (c) covertly distributing the insurance proceeds amongst themselves. (See Am. Compl., ECF Entry No. 8, at ¶ 27).[6]

There is nothing in the record to prove that PSB reached an agreement with any other party related to Ms. Satterfield's estate, much less an agreement for the purpose of defrauding Nautilus. Any allegation that PSB acted with malice toward Nautilus or did anything with the specific intent to injure the insurance company is utterly false and wholly unsupported by evidence. Further, there is no proof that PSB committed an overt act in furtherance of an agreement to defraud Nautilus or that PSB took any action to proximately cause the damages claimed by Nautilus. Nautilus's calculated decision to settle "seriously questionable" claims, despite suspecting, if not knowing, them to be fraudulent, was the proximate cause of its claimed damages.

Nautilus may no longer rest on the allegations averred in its pleading. Nautilus must put forth evidence showing the existence of a genuine factual dispute as to each essential element of its conspiracy claim. Nautilus cannot make that required evidentiary showing because it has no such proof. Accordingly, PSB is entitled to judgment as a matter of law on the conspiracy to defraud claim.

---

[6] A lawsuit was not filed at the time of settlement. In any event, there is no proof that PSB made any representations at all to Nautilus; steered the pre-suit claims of the Estate in any way; or participated in "covertly" distributing the insurance proceeds "among themselves." No IOLTA check was payable to PSB. While Fleming paid Westendorf a fee for serving as personal representative, the fee was neither unlawful nor disbursed covertly. It was court approved. Defendant Westendorf has since paid the fee back to the beneficiaries of Ms. Satterfield's estate.

B.  **South Carolina Unfair Trade Practices Act**

There is also no genuine dispute of material fact as to the second claim asserted against PSB, for purportedly violating the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code §§ 39-5-10, et seq. SCUTPA provides substantive rights that were not previously actionable under the common law by making certain conduct unlawful. See State ex rel. McLeod v. C & L Corp., Inc., 280 S.C. 519, 313 S.E.2d 334 (Ct. App. 1984). Specifically, it creates "a private right of action for persons damaged by acts or practices declared unlawful by § 39-5-20," Drs. Stever and Latham, P.A. v. Nat'l Medical Enterprises, Inc., 672 F. Supp. 1489, 1521 (D.S.C. 1987) aff'd, 846 F.2d 70 (4th Cir. 1988). The acts or practices declared unlawful are those "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." See S.C. Code §§ 39-5-20(a) (emphasis added). To establish a SCUTPA claim, a plaintiff must show the following elements: (1) a violation of the Act by the commission of an unfair or deceptive act in trade or commerce; (2) proximate cause; and (3) damages. Charleston Lumber Co., Inc. v. Miller Housing Corp., 318 S.C. 471, 458 S.E.2d 431 (Ct. App. 1995); rev'd on other grounds, 338 S.C. 171, 525 S.E.2d 869 (S.C. 2000); Schnellmann v. Roettger. 368 S.C. 17, 627 S.E.2d 742, 745-46 (Ct. App. 2006) aff'd, 373 S.C. 379, 645 S.E.2d 239 (2007).

SCUTPA defines the terms "trade" and "commerce" as follows:

> (b) "Trade" and "commerce" shall include **the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State**.

S.C. Code § 39-5-10; see also, e.g., Noack Enterprises. Inc. v. Country Corner Interiors of Hilton Head Island. Inc., 290 S.C. 475, 476-477, 351 S.E.2d 347, 348 (1986) (emphasis added).

As stated in the statute, for an action to be taken in the conduct of "trade" or "commerce," the defendant must be engaged in the advertising, offering for sale, sale or distribution of a service, property, or other thing of value. Consistent with the statutory definition, courts routinely hold that a claim for violating SCUTPA cannot be made against a party who did not advertise, offer for sale, sell, or distribute any services or property ***with respect to the transaction at issue***. Moore v. Williamsburg Regl. Hosp., 560 F.3d 66. 78 (4th Cir. 2009) (finding that the hospital's peer review of physician's privileges was "not taken 'in the conduct of any trade or commerce' as defined by' S.C. Code § 39-5-10(b) since it did not occur in the conduct of advertising, offering for sale, sale or distribution of any' services and any property . . . and any other . . . thing of value.'").

In this case, PSB and Nautilus were complete strangers. Nautilus was not PSB's customer, and the two parties did not interact. No transaction occurred between the parties, and PSB did not make any representations to Nautilus. Accordingly, Nautilus cannot show that PSB engaged in trade or commerce, by advertising, selling, offering to sell, or distributing goods or services, with Nautilus. Furthermore, since PSB did not engage in trade or commerce with the insurance company, nothing that PSB did can be considered unfair or deceptive as to Nautilus.

Moreover, it is beyond genuine dispute that PSB did not proximately cause the damage alleged by Nautilus. Nautilus's loss was the result of its informed decision to settle the Satterfield claims, for less than policy limits, to end the exposure to it and its insured. Nautilus made its decision based on its investigation and in reliance on the evaluation of its team of professionals. PSB played no role in Nautilus's decision.

Ultimately, the evidence does not support any of the three elements essential to Nautilus's SCUTPA claim. PSB is entitled to judgment as a matter of law, accordingly.

## IV.  CONCLUSION

Considering the foregoing, PSB respectfully requests that the Court grant its Motion for Summary Judgment and issue an Order dismissing PSB from this case.

        *s/ Thomas P. Gressette, Jr.*
        **G. Trenholm Walker (Fed ID# 4487)**
        Direct:  (843) 727-2208
        Email:  Walker@WGLFIRM.com
        **Thomas P. Gressette, Jr. (Fed ID# 7261)**
        Direct:  (843) 727-2249
        Email:  Gressette@WGLFIRM.com
        **James W. Clement (Fed ID# 12720)**
        Direct:  (843) 727-2224
        Email:  Clement@WGLFIRM.com

        **WALKER GRESSETTE & LINTON, LLC**
        <u>Mail</u>:    P.O. Drawer 22167, Charleston, SC 29413
        <u>Office</u>:  66 Hasell Street, Charleston, SC 29401
        <u>Phone</u>:  (843) 727-2200

        ***ATTORNEYS FOR PALMETTO STATE BANK***

July 21, 2023
Charleston, South Carolina