# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Nautilus Insurance Company, | C/A No.: 2:22-cv-1307-RMG |
| Plaintiff, | |
| v. | **MOTION TO COMPEL JOINDER OR TO DISMISS FOR FAILURE TO JOIN NECESSARY PARTIES** |
| Richard Alexander Murdaugh, Sr.; Cory Fleming, Moss & Kuhn, P.A.; Chad Westendorf; *and* Palmetto State Bank, | |
| Defendants. | |

Defendant Richard Alexander Murdaugh, Sr., pursuant to Rules 12(b)(7), 12(c), and 19(a) of the Federal Rules of Civil Procedure, hereby moves to dismiss the amended complaint (ECF No. 8) if Plaintiff fails to join necessary parties, namely, Tony Satterfield and Brian Harriott (collectively, the "Satterfield Parties"), within a deadline set by the Court.

## I.     Background

Defendant Richard Alex Murdaugh was a lawyer and formerly a partner at the law firm Peters, Murdaugh, Parker, Eltzroth, and Detrick, P.A. (PMPED).  Following the murder of his wife Maggie and son Paul on June 7, 2021, Mr. Murdaugh's opioid addiction spiraled out of control. Also, during that time, PMPED began to investigate missing fees from Mr. Murdaugh's cases.  On September 3, 2021, PMPED confronted Mr. Murdaugh about the missing fees.  Mr. Murdaugh admitted to misconduct and resigned from PMPED.  The following day, Mr. Murdaugh was shot in the head by Curtis Eddie Smith, his drug dealer, in a failed assisted suicide attempt.

Mr. Murdaugh thereafter began in-patient drug rehabilitation.  On September 15, 2021, warrants were issued in Hampton County for his arrest on charges of insurance fraud, conspiracy to commit insurance fraud, and making a false police report, all arising from his failed suicide attempt.  Also on September 15, 2021, the Satterfield Parties filed an action in the Hampton County

1

Court of Common Pleas action alleging Mr. Murdaugh stole proceeds from the settlement of claims arising from the death of Mr. Murdaugh's longtime housekeeper, Gloria Satterfield, at Mr. Murdaugh's Colleton County residence.

On February 2, 2018, Ms. Satterfield fainted and fell down the front steps at his residence in Colleton County. Mr. Murdaugh was not present when she fell, but he arrived on the scene before emergency medical services (EMS). Ms. Satterfield was hospitalized. While in the hospital, she suffered a stroke and died on February 26, 2018. She was survived by her sons Tony Satterfield and Brian Harriott. Mr. Murdaugh claimed Ms. Satterfield briefly regained consciousness before EMS arrived on February 2, 2018, and told him, but no one else, that Mr. Murdaugh's dogs caused her fall, thereby implicating over $5.5 million in insurance coverage—primary coverage of $505,000 under a Lloyd's of London policy, and umbrella coverage of $5,000,000 under a Nautilus Insurance Company policy. No dogs were mentioned or heard in the background in the 911 call, there were no dogs at the scene when first responders arrived, no witness ever said dogs were at the scene, and Ms. Satterfield never told anyone that the dogs tripped her—except, purportedly, once to Mr. Murdaugh when no one else was around. In fact, she later stated she did not know why she fell.

Mr. Murdaugh did not mention anything about dogs tripping Ms. Satterfield until well after her fall. As an experienced personal injury lawyer, Mr. Murdaugh knew if his dogs tripped her, South Carolina law would impose strict liability against him, for which he had $5.5 million in insurance coverage. Having invented the predicate for liability, Mr. Murdaugh persuaded Ms. Satterfield's sons to assert a claim against his insurance. During the prosecution of the claim, however, Mr. Murdaugh decided to steal the settlement proceeds.

There is not a scintilla of evidence that Mr. Murdaugh ever told any other defendant in this action (or anyone else) that he invented the story about dogs or that they otherwise knew he invented the story until after his arrest years later. There is no reason to believe he ever told them because doing so could not advance his fraudulent scheme in any way. It could only risk thwarting it. In fact, he invented the story about the dogs well before Chad Westendorf and Palmetto State Bank were ever involved with this claim.

Lloyd's of London issued a settlement check for $505,000, the full policy limits for the primary coverage, on December 4, 2018. On January 7, 2019, the net proceeds were disbursed, payable to "Forge," ostensibly meaning Forge Consulting, LLC, a legitimate company, which Mr. Murdaugh deposited in a personal account denoted as "doing business as" Forge. At a March 22, 2019, mediation, Nautilus agreed to pay $3,800,000 of the $5,000,000 limit (the "Claim Payment"). Mr. Westendorf signed a release of claims against Mr. Murdaugh as personal representative of the estate on April 11, 2019, acknowledging receipt of the $505,000 settlement payment from Lloyd's of London and the $3,800,000 from Nautilus. On May 15, 2019, the Nautilus net proceeds of $2,765,000 were disbursed to Mr. Murdaugh's fake Forge account.

On October 13, 2021—two-and-a-half years after Nautilus made the Claim Payment—Judge Clifton Newman issued arrest warrants for Mr. Murdaugh for obtaining property by false pretenses. The charges arose from law enforcement's investigation into Plaintiffs' allegations in this case that Mr. Murdaugh misappropriated settlement funds. The affidavit supporting warrant K-235570 concerning Mr. Murdaugh's theft of the Nautilus Claim Payment and sworn to by South Carolina Law Enforcement Division (SLED) special agent Phillip Turner states:

> On February 2, 2018, Gloria Ann Satterfield fell and hit her head at Richard Alexander Murdaugh's residence at 4147 Moselle Road in Islandton, SC. Ms. Satterfield later had a stroke, went into cardiac arrest, and died on February 26, 2018.

3

> Mr. Murdaugh coordinated with Ms. Satterfield's family to sue himself in order to seek an insurance settlement with the stated intent to give the proceeds to the Satterfield family to pay for funeral expenses and monetary compensation for Satterfield's children. Mr. Murdaugh recommended the Satterfield family hire Cory Fleming of the Moss, Kuhn, and Fleming law firm to represent them.
>
> Mr. Fleming brokered insurance settlements in the amount of approximately $4,305,000. A settlement agreement stipulated that $2,765,000 was designated for the Satterfield family. The Satterfield family were never notified of the settlements nor received any of the proceeds from them, and the settlement agreement was not properly filed in the court record.

The affidavit goes on to describe how Mr. Murdaugh stole the funds by having the settlement checks made payable to "Forge," which he then deposited in a personal account opened under his own name "doing business as" Forge. A second warrant concerns the $505,000 settlement Mr. Murdaugh stole from Lloyd's of London.

The next day, Mr. Murdaugh was arrested as he left a drug rehabilitation center in Florida. He has been incarcerated ever since. The warrants became public then or shortly after. The Satterfield Parties' lawsuit, filed on September 15, 2021, originally alleged only the $505,000 settlement with Lloyd's of London. It did not allege anything about dogs, instead stating that the details of the fall are unknown to Plaintiffs. Nor did it contain allegations regarding the Nautilus settlement.

In October 2021, the Satterfield Parties moved for the appointment of co-receivers under South Carolina Code Ann. § 15-65-10(1). That motion was simultaneously made in other civil actions against Mr. Murdaugh and was granted on November 4, 2021, by Judge Daniel D. Hall in the case *Renee S. Beach, et al. v. Gregory M. Parker, Inc., et al.*, Case No. 2019-CP-25-00111 (Hampton Cnty. Ct. Common Pleas). John T. Lay and Peter M. McCoy were subsequently appointed co-receivers and all assets held by Mr. Murdaugh have been placed under the co-receivers' authority.

4

On December 6, 2021, the Satterfield Parties amended their complaint to add allegations about the Nautilus settlement, Bank of America, and Curtis Eddie Smith as defendants, and further details about the scheme. Amended Complaint, *Satterfield v. Murdaugh*, Civ. No. 2021-CP-25-00298 (Hampton Cnty. Ct. Com. Pl.) (**Exhibit A**). Mr. Murdaugh's statement about dogs is mentioned in passing. *Id.* ¶¶ 13, 17. Two days after that, Mr. Murdaugh and the Satterfield Parties agreed to a $4.305 million confession of judgment with setoffs for amounts previously paid by other defendants, which at that time was already more than the amount of the confessed judgment. Thus, the confession would not actually require Mr. Murdaugh to pay anything. A day later, Palmetto State Bank settled with the Satterfield Parties. At a December 2021 bond hearing, counsel for the Satterfield Parties stated that $7.5 million had been recovered to date. In the following months, the Satterfield parties settled with Bank of America and Mr. Flemming and his law firm. The amounts are not publicly known but are in addition to the $7.5 million announced in December 2021.

Execution and entry of the confession of judgment was delayed at the request of the Satterfield Parties, and by the need for receivership approval to confess judgment. The co-receivers filed the proposed confession of judgment on March 24, 2022, which was executed on May 27, 2022. ECF No. 36-1. Mr. Murdaugh has since filed a motion to set the confessed judgment aside, arguing the confessed judgment is void for failure to comply with South Carolina law regarding confessed judgments and that it should be set aside under Rule 60(b)(3), SCRCP. ECF No. 131-1. That motion is currently pending.

Meanwhile, on April 22, 2022, Nautilus filed the present action seeking declaratory relief to adjudicate Mr. Murdaugh's privilege assertions regarding its claims file in the Satterfield matter, which had been subpoenaed by a federal grand jury. ECF No. 1. On May 11, 2022, Nautilus

amended the complaint to allege Mr. Murdaugh invented the story about dogs causing Ms. Satterfield's fall and asserting causes of action to recover the funds it paid. ECF No. 8 ¶¶ 22–24.

On July 14, 2022, Mr. Murdaugh was indicted for the murder of his wife Maggie and son Paul. The Court stayed the present action pending completion of Mr. Murdaugh's murder trial. Mr. Murdaugh was convicted and was sentenced on March 3, 2023, to two consecutive life sentences.

On May 1, 2023, Mr. Murdaugh answered the amended complaint. ECF No. 113. In his answer, Mr. Murdaugh admits that he invented the story about dogs knocking Ms. Satterfield down for the purpose of causing Lloyd's of London and Nautilus Insurance Company to pay to settle a false insurance claim. He further admits that he stole the settlement proceeds by persuading others to disburse funds as checks payable to "Forge," meaning Forge Consulting, which he then caused to be deposited in a personal account named "Forge," which he controlled. *Id.* ¶¶ 5, 8, 13–14. He denies that any other person was aware of his intent to steal all of the settlement proceeds or that anyone was aware he invented the story about dogs knocking Ms. Satterfield down the stairs at Moselle. *Id.* ¶ 6, 12, 13. He asserts an affirmative defense that Nautilus has failed to join the Satterfield Parties, who are necessary parties under Rule 19(a)(1) of the Federal Rules of Civil Procedure because they "claim[] an interest relating to the subject of this action." *Id.* ¶ 25.

**II.     Legal Standard**

A party is necessary if

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of an action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "A necessary party should be ordered into the action." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020). "When making that determination, the court must base its decision on the pleadings as they appear at the time of the proposed joinder." *Reg. v. Cameron & Barkley Co.*, 467 F. Supp. 2d 519, 530 (D.S.C. 2006). However, "the court may also consider materials outside the pleadings in making its determination." *Rogers v. Rowland*, No. CV 2:22-00279-RMG, 2022 WL 17960777, at *2 (D.S.C. Dec. 27, 2022). A Rule 12(b)(7) motion may be made at any time before or at trial. Fed. R. Civ. P. 12(h)(2).

### III.   Argument

The Satterfield parties are "necessary" to this action under Rule 19(a) of the Federal Rules of Civil Procedure because, as explained below, they "claim[] an interest relating to the subject of [this] action and . . . disposing of th[is] action in [their] absence may: . . . (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Because their joinder is feasible, the Court need not determine whether they are indispensable and instead should order Nautilus to join them in this action. *See McKiver*, 980 F.3d at 950.

The Satterfield Parties assert the Claim Payment was properly paid by Nautilus,[1] but Mr. Murdaugh intercepted the payment and stole it. If true, Mr. Murdaugh would owe the money to the Satterfield Parties, but Nautilus would have no damages. Other persons or entities who allegedly helped Mr. Murdaugh intercept and steal the money could also be liable if those allegations were proven. Nautilus claims Mr. Murdaugh invented the claim to steal the money from Nautilus by false pretenses, using the Satterfield Parties as unknowing "patsies" from whom

---

[1] Although the Satterfield Parties might claim to be agnostic as to the propriety of the Claim Payment, they can hardly take the position that Nautilus made a payment intended for their benefit only because it was fraudulently induced to do so, while simultaneously asserting a legal right to receive that payment.

7

Mr. Murdaugh could intercept any payment by Nautilus by taking advantage of their trust and vulnerability. If true, Mr. Murdaugh would owe the money to Nautilus. He likely also committed a tort against the Satterfield Parties, but their damages would be their harm resulting from Mr. Murdaugh taking advantage of them as part of his insurance fraud scheme, not the amount of money he was able to steal from Nautilus. The Satterfield Parties would have no valid claim to any portion of the proceeds of his insurance fraud and so could not complain that Mr. Murdaugh failed to deliver a portion of the proceeds of the fraud to them. Their claim against Mr. Murdaugh would be best stated as a complaint for intentional infliction of emotional distress, in South Carolina law called "outrage," an apt word for Mr. Murdaugh's conduct.

Nautilus claims the latter is true—and Mr. Murdaugh admits it is true. The Satterfield Parties, however, claim the former is true, and that Mr. Murdaugh stole that same $3.8 million from them that Nautilus seeks to recover in this action. They have a judgment against him for stealing that same $3.8 million (if Mr. Murdaugh's pending Rule 60(b) motion is successful, they will have a pending lawsuit claiming the same money). The Satterfield Parties' claimed interest in the subject of this action therefore exposes Mr. Murdaugh to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest the Satterfield Parties claim in the subject of this action. *Compare* Ex. A (*Satterfield* Amended Complaint) *with* ECF No. 8 (Amended Complaint in this action).

Of course, that risk cannot affect Mr. Murdaugh's quality of life. He is in prison and every asset he once had is in the custody of the receivers the Satterfield Parties requested be appointed. If Nautilus obtains a judgment against Mr. Murdaugh with no offsets for the third-party recoveries the Satterfield Parties have obtained, the only effect will be to reduce funds available to Mr. Murdaugh's many other victims. Banks and others paid restitution for the money Mr. Murdaugh

8

stole because they realized they might share some liability with Mr. Murdaugh for his thefts. They paid the restitution to the Satterfield Parties because they thought Mr. Murdaugh stole their money. Had they known the money was stolen from someone else, they presumably would have paid that someone else.

Thus, that "someone else"—Nautilus—potentially has equitable restitution claims to funds paid by banks and others as restitution for a theft from Nautilus. *See* Restatement (Third) of Restitution and Unjust Enrichment § 6 ("Payment by mistake gives the payor a claim in restitution against the recipient to the extent payment was not due."); § 47 ("If a third person makes a payment to the defendant in respect of an asset belonging to the claimant, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment."); § 48 ("If a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment."). The Restatement expresses the common-sense principle that if restitution for stolen money is given to the wrong party, the actual victim has a claim on that restitution even if the source of the restitution is a third-party paying on behalf of, or because of perceived joint liability with, the thief.

To prevail in the instant motion, however, Mr. Murdaugh need not prove claims for restitution on behalf of Nautilus. Restitution sounds in equity. Based on the adjuster communications contained in the claims file, it appears Nautilus never believed the claim about dogs was valid but nonetheless agreed to pay the Satterfield Parties. That weighs against an equitable claim for restitution from the Satterfield Parties. Further, if restitution is owed to Nautilus, the Satterfield Parties would have their own equitable claim of quantum meruit for the hard work of recovering money Nautilus says was stolen from it yet did nothing to recover. It may

be that in equity Nautilus should take nothing from the Satterfield Parties. Unlike Nautilus, the Satterfield Parties believed they had a valid wrongful death claim, and, unlike Nautilus, they successfully recovered the settlement proceeds that they believed were stolen from them.

But, again, it is not Mr. Murdaugh's burden to show the Satterfield Parties owe anything to Nautilus. Mr. Murdaugh's burden is only to show that the Satterfield Parties' claim that he stole the Claim Payment from them is inconsistent with Nautilus's claim that he stole the Claim Payment from Nautilus and creates a risk of double obligations to repay the Claim Payment. *See* Rule 19(a)(1)(B). Mr. Murdaugh respectfully submits that is self-evident from the pleadings. *Compare* Ex. A (*Satterfield* Amended Complaint) *with* ECF No. 8 (Nautilus's Amended Complaint). It simply cannot be the case that Mr. Murdaugh owes $3.8 million to Nautilus because he tricked Nautilus into disbursing it *and* that he owes the same $3.8 million to the Satterfield Parties because he stole it from them after Nautilus properly disbursed it.

Mr. Murdaugh's assets have been marshalled in receivership for the benefit of his victims and creditors. Claims against the receivership exceed the assets. Thus, having Mr. Murdaugh pay Nautilus is not an option—either the Satterfield Parties will pay Nautilus, Mr. Murdaugh's other victims and creditors will pay Nautilus, or no one will. Mr. Murdaugh does not know whether Nautilus has a superior claim to anything the Satterfield Parties have recovered from third parties. But he respectfully submits that if the Court determines Nautilus is entitled to restitution for the money stolen from it, equity requires that the restitution should come from the party that has already received a double recovery for this same theft, not from the victims of other, unrelated thefts by Mr. Murdaugh. Consequently, joinder of the Satterfield Parties is "needed for a just adjudication" of Nautilus's claims against Mr. Murdaugh. *See Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

**IV.    Conclusion**

For the foregoing reasons, the Court should dismiss this action if Plaintiff does not join the necessary parties within a deadline set by the Court, or, alternatively, dismiss this action with leave to refile a complaint joining the necessary parties within a deadline set by the Court.

Respectfully submitted,

s/Phillip D. Barber
Richard A. Harpootlian, Fed. ID No. 1730
Phillip D. Barber, Fed. ID No.12816
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29201
(803) 252-4848
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

James M. Griffin, Fed. ID No. 1053
Margaret N. Fox, Fed. ID No. 10576
GRIFFIN DAVIS, LLC
4408 Forest Dr., Suite 300 (29206)
P.O. Box 999 (29202)
Columbia, South Carolina
(803) 744-0800
jgriffin@griffindavislaw.com
mfox@griffindavislaw.com

ATTORNEYS FOR PLAINTIFF

July 28, 2023
Columbia, South Carolina.