```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF SOUTH CAROLINA
                    BEAUFORT DIVISION


UNITED STATES OF AMERICA,      )
                               )      May 25, 2023
                               )
        -versus-               )      Charleston, SC
                               )
CORY HOWERTON FLEMING,         )      9:23-394-1
                               )
        Defendant.             )


        TRANSCRIPT OF ARRAIGNMENT AND CHANGE OF PLEA

        BEFORE THE HONORABLE RICHARD M. GERGEL
        UNITED STATES DISTRICT JUDGE, presiding



A P P E A R A N C E S:

For the Government:    EMILY E. LIMEHOUSE, AUSA
                       KATHLEEN M. STOUGHTON, AUSA
                       WINSTON D. HOLLIDAY, AUSA
                       US Attorney's Office
                       151 Meeting Street, Suite 200
                       Charleston, SC 29401


For the Defendant:     DEBORAH B. BARBIER, ESQ.
                       Barbier Law Office
                       1811 Pickens Street
                       Columbia, SC 29201


Court Reporter:        KAREN E. MARTIN, RMR, CRR
                       PO Box 835
                       Charleston, SC 29402


     Proceedings reported by stenographic court reporter.
     Transcript produced with computer-aided transcription
                          software.
```

```
 1                    Thursday, May 25, 2023

 2          (WHEREUPON, court was called to order at 2:10 PM)

 3               THE COURT:  Good afternoon.  Please be seated.

 4               Ms. Limehouse, ready to call your next case?

 5               MS. LIMEHOUSE:  Yes, Your Honor.  May it please

 6     the Court?  We are here in the matter of the United States

 7     vs. Cory Howerton Fleming, Criminal Docket No. 9:23-394.

 8     We are here for purposes of a change of plea hearing to a

 9     plea to an Information.

10               THE COURT:  Very good.

11               Ms. Barbier, good afternoon.

12               MS. BARBIER:  Good afternoon, Your Honor.

13               THE COURT:  I want to confirm that your client

14     first wishes to waive indictment and to plead to an

15     Information, and that he wishes to plead guilty today

16     pursuant to a plea agreement; is that correct?

17               MS. BARBIER:  Yes, sir, Your Honor.  He has

18     signed the form waiving indictment and wishes to plead

19     guilty today.

20               THE COURT:  Okay.

21               Could we swear the defendant, please.

22               THE CLERK:  Please stand and raise your right

23     hand.

24          (WHEREUPON, the defendant was sworn.)

25               THE DEFENDANT:  I do.
```

```
 1              THE COURT:  Mr. Fleming, good afternoon, sir.
 2              THE DEFENDANT:  Good afternoon, sir.
 3              THE COURT:  While we're speaking, if you wish to
 4    take off your mask, you're able to do while you're
 5    speaking.  Okay?
 6              THE DEFENDANT:  Thank you.
 7              THE COURT:  Thank you.  First of all, let me
 8    confirm, sir, as you know, every American citizen is
 9    entitled when charged with a felony to have that presented
10    to a federal grand jury and an indictment returned.  That
11    can be waived under Rule 7 of the Federal Rules of
12    Criminal Procedure if you elect to do that.  I know I have
13    signed -- I have here a signed form waiving indictment.
14    But I want to confirm, first, sir, that you wish to waive
15    indictment?
16              THE DEFENDANT:  Yes, sir, I do.
17              THE COURT:  Okay.  I would next proceed to what
18    would normally be in a case an arraignment under Rule 10
19    and -- of the Federal Rules of Criminal Procedure.  And we
20    will go through and make sure you understand the charges
21    against you.  And first, let me ask have you had a chance
22    to review the proposed Information?
23              THE DEFENDANT:  Yes, sir, I have.
24              THE COURT:  You've had a chance to review that
25    with your attorney?
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Let me if I might provide you a

3     summary of the Information, the charge against you, to

4     satisfy myself that you understand what we will be later

5     proceeding to a guilty plea today, but certainly for

6     purposes of arraignment to make sure you understand the

7     charge against you, sir.

8          It alleges -- you understand that you -- that

9     the indictment -- the Information asserts that you have

10    committed wire fraud in violation of federal law.  Do you

11    understand that, sir?

12         THE DEFENDANT:  Yes, sir.

13         MS. LIMEHOUSE:  It's actually, Your Honor, just

14    to clarify a conspiracy to commit wire fraud.

15         THE COURT:  It's a conspiracy.

16         MS. LIMEHOUSE:  Yes, Your Honor.

17         THE COURT:  It's a conspiracy to commit wire

18    fraud and it sets forth the object of that conspiracy.

19    And it asserts that you submitted what was -- what is

20    described in the Information as a fake disbursement sheet

21    to a circuit court outlining fraudulent prosecution

22    expenses.  Do you feel like you understand that charge,

23    sir?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  It further alleges that you

1   submitted a second fake disbursement sheet to a circuit

2   court outlining inaccurate attorney fees and fraudulent

3   prosecution expenses.  Do you feel like you understand

4   that charge?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And as we will go through when we go

7   through the proposed plea agreement, the allegation here

8   is that you were part of a conspiracy with another person,

9   another person not indicted with you.  Do you understand

10  that, sir?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And that person is Richard Alexander

13  Murdaugh; is that correct?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And you understand the factual

16  summary set forth here that lays out and the scheme

17  detailing the allegations set forth in the Information?

18  You understand those?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And you -- having been informed of

21  those, do you intend to plead guilty or not guilty to the

22  Information?

23         THE DEFENDANT:  Guilty, sir.

24         THE COURT:  Okay.  Let me proceed now if I might

25  to the guilty plea itself.  Ms. Barbier, if you would

1    approach my courtroom deputy, she's going to hand you the

2    plea agreement.  And I want Mr. Fleming to confirm that is

3    his signature on the plea agreement.

4            MS. BARBIER:  Yes, sir.  Thank you.

5            THE DEFENDANT:  Yes, sir, it is.

6            THE COURT:  Very good.  If you could return it,

7    please, to me.

8            Mr. Fleming, before I can accept your plea of

9    guilty, it is necessary for me to make sure that you

10   understand your legal rights, you understand the

11   consequences of your guilty plea, and that there's a

12   factual basis to support your plea of guilty.  I'm going

13   to ask you a series of questions.  If I ask you a question

14   you do not understand, would you ask me to rephrase it?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  And if I ask you a question in which

17   you would like to consult with Ms. Barbier and you let me

18   know that, I will give you an opportunity to consult

19   privately with your attorney.  Okay?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Now, we just a moment ago took an

22   oath to tell me the truth, correct?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  That obligates you to answer my

25   questions honestly, does it not?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And you understand if you were not

3     to answer a question honestly, you could face further

4     prosecution for perjury or making a false statement.  Do

5     you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Mr. Fleming, how old are you, sir?

8          THE DEFENDANT:  Fifty-four.

9          THE COURT:  How far did you go in school?

10          THE DEFENDANT:  Graduated law school.

11          THE COURT:  Are you currently under the

12     influence of any drug, medication, or alcoholic beverage?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Have you ever been treated for

15     mental illness?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Have you ever been treated for

18     addiction to alcohol or narcotic drugs?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Ms. Barbier, do you have any doubt

21     as to the defendant's competence to plead?

22          MS. BARBIER:  I have no doubts of his

23     competence, Your Honor.  He has, you know, had bouts of

24     anxiety and depression.  I just wanted to make that clear.

25     But I have no doubts of his competency.

8

```
 1              THE COURT:  Well, let me come back to you,
 2    Mr. Fleming.  Is the fact that you've had instances of
 3    depression and anxiety, is that affecting your ability to
 4    understand the proceeding here today?
 5              THE DEFENDANT:  No, sir.
 6              THE COURT:  Would you assure me if for any
 7    reason you didn't understand something we were doing you
 8    would let me know that?
 9              THE DEFENDANT:  Yes, sir.
10              THE COURT:  Very good.
11              Ms. Limehouse, do you have any doubt as to the
12    defendant's competence to plead?
13              MS. LIMEHOUSE:  No doubts from the Government,
14    Your Honor.
15              THE COURT:  I do find that the defendant is
16    competent to plead to these charges.
17              Mr. Fleming, have you had an ample opportunity
18    to discuss this case with your attorney?
19              THE DEFENDANT:  Yes, sir.
20              THE COURT:  Are you satisfied with Mr. Barbier's
21    representation?
22              THE DEFENDANT:  Yes, sir.
23              THE COURT:  Has she done everything you've asked
24    her to do?
25              THE DEFENDANT:  She has, yes, sir.
```

1          THE COURT:  Is there anything else you would

2     want her to do before we proceed with your guilty plea

3     this afternoon?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Let's talk a little bit about your

6     legal rights.  It's not every day I have an attorney

7     before me, but I do from time to time have the unfortunate

8     responsibility of taking a guilty plea from an attorney.

9     But let me go through my standard questioning to you

10    because I think everyone should have basically the same

11    plea colloquy.  Do you understand that under the

12    constitution and laws of the United States, you have the

13    right to plead not guilty?  You understand that, sir, do

14    you not?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  And also do you understand that if

17    you request it, you have a right to a trial by jury?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  If you decided to plead not guilty

20    and request a jury trial, you would be afforded a number

21    of significant legal rights.  Let me highlight some of the

22    more important one.

23         You would have the right to assistance of

24    counsel at every stage of the criminal proceeding.  You

25    would be presumed innocent and the Government would have

1    to prove you guilty beyond a reasonable doubt.  You would

2    not have to prove that you were innocent.

3            The witnesses for the Government would have to

4    come to court and testify in your presence.  Ms. Barbier

5    could cross-examine those witnesses and offer other

6    witnesses on your behalf.

7            While you would have a right to testify if you

8    chose to do so, you would also have the constitutional

9    right to silence; that is, not to testify.  And if you

10   elected to do that, I would inform the jury that no

11   inference or suggestion of guilt could be drawn from the

12   fact that you had not testified.  You would also have the

13   right to issue subpoenas to compel the attendance of

14   witnesses and the production of documents in your defense.

15           Now, Mr. Fleming, do you understand these rights

16   as I have just outlined them to you, sir?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Do you understand that if you plead

19   guilty, you will have to give up your right to a jury

20   trial and the other rights I have just listed for you.

21   There will be no trial.  And I will enter a judgment of

22   guilty and sentence you on the basis of your guilty plea.

23   Do you understand that, sir?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Do you also understand that if you

```
1   plead guilty, you have the give up your right not to
2   incriminate yourself because I need ask you sufficient
3   questions to satisfy myself that there's a factual basis
4   for your guilty plea and you will have to acknowledge to
5   me your guilt.  Do you understand that, sir?
6            THE DEFENDANT:  Yes, sir.
7            THE COURT:  Do you understand you may be
8   required to make restitution to the victims of your acts
9   either by the payment of money or in personal services as
10  may be directed by this Court?
11           THE DEFENDANT:  Yes, sir.
12           THE COURT:  Do you understand that if you plead
13  guilty, I can order you to forfeit certain property to the
14  Government?
15           THE DEFENDANT:  Yes, sir.
16           THE COURT:  Do you understand that if you plead
17  guilty, I am obligated to impose a special assessment,
18  which in this case is $100?  Do you understand that, sir?
19           THE DEFENDANT:  Yes, sir.
20           THE COURT:  Do you understand that since the
21  offense you're pleading is a felony conviction, that if
22  your plea is accepted, you may be deprived of valuable
23  civil rights, such as the right to vote, hold public
24  office, serve on a jury, or possess a firearm of any type?
25  Do you understand that, sir?
```

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Now, as we discussed earlier, you

3    have -- you've had a chance to review the Information; is

4    that correct, sir?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Let me -- the count here is a

7    conspiracy count to commit wire fraud violating 18 United

8    States Code 371.  The Government to establish your guilt

9    would need to establish the following facts.  That you

10   agreed with one or more persons, to commit wire fraud, you

11   did it knowingly, and there was an overt act in

12   furtherance of the conspiracy which was committed in the

13   District of South Carolina during the period alleged in

14   the Information.  Do you feel like you understand the

15   elements the Government would have to establish to find

16   you guilty?  Do you understand those?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Based upon my colloquy and earlier

19   colloquy in the arraignment, I do find the defendant

20   comprehends and understands the nature of the charges

21   against him and generally what elements the Government

22   would have to prove if a trial were held.

23          The potential penalty for conspiracy under 18

24   USC 371 is a maximum term of imprisonment up to five

25   years, a fine up to $250,000, supervised release of up to

1    three years, and special assessment of $100.

2            Now, Mr. Fleming, if you plead guilty or if you

3    were to be convicted by a jury, it becomes my

4    responsibility to impose an appropriate sentence.  In

5    determining that sentence, I am required to consider the

6    statutory factors set out under federal statutory law and

7    the sentencing guidelines of the United States Sentencing

8    Commission.  Have you and Ms. Barbier have a chance to

9    review those federal statutes and sentencing guidelines

10   and how they may affect your sentence?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Do you understand that I will not be

13   sentencing you here today, there will be later a

14   sentencing hearing following the receipt of a Presentence

15   Report.  Do you understand that?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Do you understand the sentence

18   imposed by this Court may be different from any estimate

19   your attorney may have provided you?  Do you understand

20   that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  And do you understand if the

23   sentence is more severe than you expected, you will not

24   have a right to withdraw your guilty plea?  Do you

25   understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that under some

3    circumstances, you or the Government may have a right to

4    appeal a sentence I impose?  Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Now, when we go through the plea

7    agreement there's a partial appeal waiver.  And I'll

8    highlight that when we go through that with you to make

9    sure that you understand that.

10         Now, in federal court following any period of

11   incarceration, we have something called supervised

12   release.  In supervised release, a defendant is required

13   to maintain certain standards of behavior.  And if the

14   defendant does not do that, he could be sent back to

15   prison.  Do you understand that, sir?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Now, Mr. Fleming, are you pleading

18   guilty of your own free will because you are guilty?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Has anyone threatened you or forced

21   you in any way to plead guilty?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Has anyone promised you a specific

24   jail sentence?

25         THE DEFENDANT:  No, sir.

1        THE COURT:  I'm going to ask the Assistant

2   United States Attorney to summarize the plea agreement.  I

3   want you to listen carefully, Mr. Fleming, because I'm

4   going to come back to you and ask you is that consistent

5   with your understanding of the plea agreement.

6        Ms. Limehouse?

7        MS. LIMEHOUSE:  Thank you, Your Honor.

8        MS. BARBIER:  Your Honor, if I could, just going

9   back so the record is clear?  Mr. Fleming does have a

10  prescription medication that he's given the names of to

11  the probation office.  They have no effect whatsoever on

12  his ability to understand and answer your questions, but I

13  just wanted to make sure --

14        THE COURT:  I actually have a copy of that and I

15  have seen those medications.  I did not -- I would have

16  raised them if I thought they impaired him in any way.

17  And I will simply say for the record, Ms. Barbier, I've

18  observed him, he seems fully to understand what we're

19  doing.

20        MS. BARBIER:  I agree totally, Your Honor.

21        THE COURT:  Thank you.

22        Please, Ms. Limehouse.

23        MS. LIMEHOUSE:  Thank you, Your Honor.

24        Paragraph 1 of the plea agreement sets forth the

25  count of the Information that the defendant is agreeing to

1    plead guilty to; that is, Count 1, conspiracy to commit
2    wire fraud in violation of 18 USC 371.  Paragraph 1
3    further sets forth the elements that the Government would
4    have to prove to establish his guilt as well as the
5    penalties that he's facing by pleading guilty as Your
6    Honor has previously reviewed with him.
7            Paragraph 2 of the plea agreement outlines the
8    monetary penalties that he's facing by pleading guilty,
9    including a special assessment fee of $100, potential
10   restitution, and fines.
11           Paragraph 3 outlines that the defendant
12   understands that the Government's obligations under this
13   plea agreement are expressly contingent upon him abiding
14   by federal and state laws and complying with any bond
15   executed in this case.  And that if he fails to comply
16   with any of the provisions of this agreement, the
17   Government will have the right to void all of its
18   obligations under this agreement and the defendant will
19   not have the right to withdraw his guilty plea.
20           Paragraph 4 is a cooperation provision under
21   which the defendant agrees to be fully truthful and
22   forthright with federal, state, and local law enforcement
23   agencies by providing full, complete, and truthful
24   information about all criminal activities about which he
25   has knowledge.  The defendant must provide full, complete,

1    and truthful debriefings about these unlawful activities,

2    and must fully disclose and provide truthful information

3    to the Government, including any books, papers, or

4    documents, or other items of evidentiary value to this

5    investigation.

6           The cooperation provision further provides the

7    defendant must testify fully and truthfully before any

8    grand juries and at any trials or other proceedings if

9    called upon to do so by the Government subject to

10   prosecution for perjury for not testifying truthfully.

11          The paragraph further sets forth that the

12   defendant, if he fails to be fully truthful and forthright

13   at any stage of these proceedings, at the Government's

14   sole election his obligations -- our obligations under

15   this agreement will become null and void.

16          Further, it's expressly agreed that if the

17   obligations of the Government under this agreement become

18   null and void due to his lack of truthfulness, he

19   understands that he will not be permitted to withdraw his

20   guilty plea.  All additional charges known to the

21   Government may be filed against him.  The Government will

22   argue for a maximum sentence for the offense to which he

23   has pleaded guilty.  And the Government will use any and

24   all information and testimony that he has provided

25   pursuant to this agreement or at any prior proffer

1    agreements in his prosecution.

2          Paragraph 5 is a polygraph provision under which

3    the defendant agrees to submit to such polygraph

4    examinations as may be requested by the Government and

5    agrees that any such examinations shall be performed by a

6    polygraph examiners selected by the Government.  The

7    defendant further agrees that his refusal to take or

8    failure to pass any such polygraph examination to the

9    Government's satisfaction will result at the Government's

10   sole discretion in the obligations of the Government

11   becoming null and void.

12         Paragraph 6 outlines the Government agrees that

13   any self-incriminating information provided by the

14   defendant as a result of his cooperation required under

15   the terms of this agreement, although available to the

16   Court, will not be used against him in determining his

17   applicable guideline range for sentencing pursuant to the

18   sentencing guidelines.  This paragraph shall not be

19   applied to restrict any information that was known to the

20   Government prior to the date of this agreement concerning

21   the existence of prior convictions and sentences, in a

22   prosecution for perjury or giving a false statement, in

23   the event that he breaches any of the terms of this plea

24   agreement, or used to rebut any evidence or arguments

25   offered on his behalf at any stage of the criminal

1    prosecution.

2         Paragraph 7 outlines that if the defendant

3    cooperates pursuant to the provisions of this plea

4    agreement, and that that cooperation is deemed by the

5    Government as providing substantial assistance in the

6    investigation or prosecution of another person, the

7    Government agrees to move the Court for a downward

8    departure or reduction of his sentence pursuant to 5K1.1

9    and 18 USC 3553.  Any such motion by the Government is not

10   binding on the Court however.  And should the Court deny

11   the motion, the defendant will not have the right to

12   withdraw his guilty plea.

13        Paragraph 8 outlines that the parties agree that

14   the amount of monies received by the defendant and his

15   former law firm have been disgorged to the victims in this

16   case.

17        Paragraph 9 outlines that if the defendant

18   cooperates and otherwise complies with all of the

19   conditions of this agreement, the Government agrees to

20   recommend that the defendant serve any and all terms of

21   imprisonment imposed as a result of his conduct and plea

22   of guilty to the offense enumerated here, as well as any

23   related conduct and convictions for violations of state

24   law, absent any terms of probation and/or supervised

25   release concurrently in the Bureau of Prisons.  The

1    Government further agrees to recommend the defendant will

2    not serve any term of incarceration within the South

3    Carolina Department of Corrections.

4         The obligations of the United States in this

5    paragraph are, of course, contingent upon him providing

6    truthful cooperation and satisfactory compliance with all

7    the cooperation provisions in this plea agreement.  And

8    the defendant understands that his failure to

9    satisfactorily comply with all terms of this agreement or

10   to truthfully cooperate may result in a service of his

11   sentence at the South Carolina Department of Corrections.

12        I do want to say, Your Honor, this is just a

13   recommendation.

14        THE COURT:  I'm about to jump right into this,

15   Ms. Limehouse, because I want the defendant to fully

16   understand the limits of this.

17        There are several conditions here.  Number one,

18   this is a recommendation from the prosecution to the

19   Court, number one.  And Ms. Limehouse is probably one of

20   the world's experts that I don't always follow what she

21   recommends to me or her office recommends to me, though I

22   always try to give it the most serious consideration.

23   That's number one.

24        Two number, we've got multiple other parties

25   here that affect this.  One of them is the state

1    prosecutors and the state court.  I have no control over

2    them.   And depending on when the sentence might be imposed

3    in state court, a state judge could make anything I did

4    consecutive to that.

5           The Bureau of Prisons is another free actor here

6    sometimes about who has priority.  And believe me, the

7    issue of when there are parallel prosecutions is no easy

8    issue.  Ms. Limehouse has been through this with me before

9    in other cases where it is not clear always from the start

10   of exactly who has the first custody of a defendant who is

11   convicted both in state and federal court.

12          So, Mr. Fleming, I want to just make a couple of

13   things make sure you understand.   Number one, there is no

14   guarantee you would serve -- you would not serve a period

15   of incarceration in state court.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And do you understand that to the

18   extent that the circumstances lead to state imprisonment,

19   that you have no right to withdraw your guilty plea; it's

20   not conditioned on that and there's no guarantee of where

21   you will serve.  Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  The totality of the plea agreement

24   is that the US Attorney's Office will recommend that to

25   this Court and apparently to the state prosecutors.

1        Is that correct?

2        MS. LIMEHOUSE:  Yes, Your Honor.

3        THE COURT:  And that's if -- and you fully

4    appreciate that, sir, do you not?

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  Very good.

7        Ms. Limehouse, please continue.

8        MS. LIMEHOUSE:  Thank you, Your Honor.

9        Paragraph 10 outlines the defendant's

10    relationship with his attorney under which he represents

11    to the Court that he has met with his attorney on a

12    sufficient number of occasions and for a sufficient period

13    of time to discuss his case and receive advice.  That he's

14    been truthful with his attorney and related all

15    information of which he is aware pertaining to this case.

16    That he and his attorney have discussed the possible

17    defenses, if any, to the charges, including the existence

18    of any exculpatory or favorable evidence or witnesses,

19    discussed his right to a trial by jury, the right to the

20    assistance of counsel throughout the proceedings, the

21    right to call witnesses on his behalf and compel their

22    attendance at a trial, the right to confront and

23    cross-examine the Government's witnesses, his right to

24    testify on his own behalf or to remain silent with no

25    adverse inferences drawn therefrom; and that the

1    defendant, with the advice of counsel, has weighed the

2    relative benefits of a trial by jury or by the Court

3    versus a plea of guilty pursuant to this agreement and has

4    entered this agreement as a matter of his free and

5    voluntary choice and not as a result of any pressure or

6    intimidation.

7              Paragraph 11 is the limited waiver provision

8    that Your Honor previously referenced on the record under

9    which the defendant acknowledges the rights he has under

10   18 USC 3742 and 28 USC 2255. And that in exchange for the

11   concessions made by the Government in this plea agreement,

12   he waives the right to contest either his conviction or

13   sentence in any direct appeal or other post-conviction

14   action, and that includes in a 2255. This waiver is

15   limited, however, and does not apply to claims of

16   ineffective assistance of counsel, prosecutorial

17   misconduct, or future changes in the law that may affect

18   his sentence.

19             THE COURT: Let me, Mr. Fleming, highlight this

20   particular provision. Every defendant has a right to file

21   an appeal regarding his or her conviction or his or her

22   sentence, even one who pleads guilty. You're partially

23   waiving that right. You're preserving the right to appeal

24   for claims of ineffective assistance of counsel,

25   prosecutorial misconduct, or a change of law -- in the law

1    that affects the lawfulness of your sentence.  Other than

2    that, you're waiving your appeal rights.  Do you

3    understand that, sir?

4                    THE DEFENDANT:  Yes, sir.

5                    THE COURT:  Very good.

6                    Ms. Limehouse, please continue.

7                    MS. LIMEHOUSE:  Paragraph 12 outlines that the

8    defendant waives all rights, whether asserted directly or

9    by a representative, to request or receive from any

10   department or agency of the United States any records

11   pertaining to the investigation or prosecution of this

12   case.

13                   The parties agree that the plea -- excuse me,

14   the last Paragraph, Your Honor, Paragraph 13 is a merger

15   provision under which the parties agree that the plea

16   agreement contains the entire agreement between the

17   parties; that it supersedes all prior promises,

18   representations, and statements; and that it shall not be

19   binding on any party until he tenders his plea of guilty

20   in this court; that it may be modified only in writing

21   signed by all parties; and that any and all other

22   promises, representations, and statements, whether made

23   prior to, contemporaneous with, or after this agreement,

24   are null and void.

25                   THE COURT:  Okay.  Mr. Fleming, you've heard the

1    summary provided by the Assistant United States Attorney.

2    Is that consistent with your understanding of your plea

3    agreement?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Okay.  I'm now going to ask

6    Ms. Limehouse to summarize the evidence the Government

7    would offer if a trial were held in this case.  Now,

8    Mr. Fleming, this is important.  You need to listen

9    carefully because I'm going to come back and ask you do

10   you dispute any of those facts; and if you do, which

11   specific facts you dispute.  So listen carefully.

12           Ms. Limehouse.

13           MS. LIMEHOUSE:  Thank you, Your Honor.

14           On February 26th, 2018, Richard Alexander

15   Murdaugh's housekeeper, Gloria Satterfield, died following

16   what was reported as a slip and fall down the stairs of a

17   home owned by Murdaugh caused by his dogs.  Murdaugh

18   recommended Gloria Satterfield's sons hire the defendant,

19   Cory Fleming, to represent them and submit a claim against

20   Murdaugh to collect from his homeowner's insurance

21   policies.

22           From March of 2018, the defendant and Alex

23   Murdaugh knowingly and intentionally conspired and engaged

24   in a scheme to defraud the estate and to obtain money and

25   property from the estate by means of materially false and

1   fraudulent pretenses and representations, and by making

2   false and misleading statements, and omitting facts

3   necessary to make the statements truthful and not

4   misleading.

5           From its inception, the arrangement between the

6   defendant and his clients was not a traditional

7   attorney/client relationship.  Murdaugh, the defendant on

8   the insurance claim, directed Fleming's actions;

9   communicated directly with the estate; retained the

10  personal representative, who was an unwitting participant

11  in Murdaugh's scheme; and made decisions about the

12  resolution of the claim.

13          On December 4 of 2018, Murdaugh's primary

14  insurance carrier settled the claim for $505,000.  The

15  settlement check was drafted to the personal

16  representative and the defendant's law firm.  The personal

17  representative endorsed the $505,000 check to the

18  defendant's law firm giving the defendant control over the

19  funds.

20          On January 7th, 2019, as part of the scheme, the

21  defendant submitted a fraudulent disbursement sheet to the

22  circuit court outlining the disbursement of the settlement

23  funds.  The fraudulent disbursement sheet outlined $11,500

24  in prosecution expenses.  However, there were no

25  legitimate prosecution expenses.

1          In March of 2019, following a mediation,

2    Murdaugh's umbrella insurer agreed to settle the estate's

3    claim for $3.8 million.  On April 18th, 2019, the

4    insurance carrier drafted a $3.8 million check to the

5    personal representative of the estate and to the

6    defendant's law firm.  The personal representative

7    endorsed the check to the defendant's law firm giving the

8    defendant control over the funds.

9          On May 13th, 2019, as part of the scheme, the

10   defendant submitted a fraudulent disbursement sheet to the

11   circuit court attaching it to a petition for approval of

12   settlement.  The disbursement sheet did not reflect the

13   accurate distribution of the settlement funds.  The

14   disbursement sheet fraudulently outlined the disbursement

15   of $1,435,000 in attorneys' fees and $2,765,000 to the

16   estate.  However, the defendant collected approximately

17   $672,595.85 in attorneys' fees, less than half of the

18   attorneys' fees he reported to the circuit court.

19         The May 2019 disbursement sheet further outlined

20   $105,000 in prosecution expenses.  However, there were no

21   legitimate prosecution expenses.  The defendant and

22   Murdaugh intended to use these funds for their own

23   personal enrichment.

24         As part of the scheme, the defendant directed

25   the drafting of checks from his trust account from funds

belonging to the estate to his personal bank account.  The
defendant fraudulently claimed that the disbursements of
settlement funds from his trust account were to pay for
valid expenses related to the estate's claim against
Murdaugh.  In three separate transactions totaling
$26,200, the defendant fraudulently transferred settlement
funds belonging to the estate to his personal account
knowing that the funds belonged to the estate and that
there were no legitimate legal expenses.

As further part of the scheme, and at Murdaugh's
direction, the defendant fraudulently retained more than
$150,000 in prosecution expenses in his trust account for
the benefit and personal enrichment of the defendant and
Richard Alexander Murdaugh knowing that the funds belonged
to the estate and that there were no legitimate
prosecution expenses.

At Murdaugh's direction, the defendant issued
checks made payable to Forge totaling $3,483,431.95.  The
Forge account was later determined to be a personal bank
account controlled by Murdaugh with no affiliation to a
legitimate business.  Although the defendant did conspire
with Murdaugh to steal funds belonging to the Estate of
Gloria Satterfield, the defendant had no knowledge of the
fake Forge accounts or Alex Murdaugh's scheme to launder
and steal money through those accounts.

1        THE COURT:  Okay.  Mr. Fleming, you've heard the

2   summary provided by the Assistant United States Attorney.

3   Do you dispute any of those facts?

4        THE DEFENDANT:  No, sir.

5        THE COURT:  Are you telling me under oath that

6   the statements made by the Assistant United States

7   Attorney are accurate?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  Let me understand just a little bit.

10  There are two areas here, one of them is that you -- make

11  sure I understand this.  There was representation to the

12  circuit court at the time you were obtaining approval of

13  the settlement that attorneys' fees totaled $1.43 million;

14  is that correct?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  But in fact you intended only to

17  take 672,000; is that correct?

18       THE DEFENDANT:  Yes, sir.

19       THE COURT:  Where was the rest of the money to

20  go?

21       THE DEFENDANT:  Um, well, as the Information

22  says, a portion of it was going to be spent by

23  Mr. Murdaugh, approximately a hundred thousand dollars.

24  And then the rest of it, I was under the impression, were

25  going to the beneficiaries of the estate.

```
1              THE COURT:  Well, why would -- if the fees are
2    $670,000, then naturally it would go to the beneficiaries
3    of the estate, correct?
4              THE DEFENDANT:  I thought they did.
5              THE COURT:  But you understand what I'm saying
6    is that normally you wouldn't need to overstate your legal
7    fees because the net amount is what goes to the
8    beneficiaries, correct?
9              THE DEFENDANT:  Yes, sir.
10             THE COURT:  So let me understand this a little
11   bit better.  One day we're going to have a sentencing
12   hearing.  I need to understand this.  Where did you think
13   the 600-and-some-odd-thousand dollars was going to go if
14   not -- was Mr. Murdaugh to get some portion of it?
15             THE DEFENDANT:  A portion, yes, sir.
16             THE COURT:  How much?
17             THE DEFENDANT:  Around a hundred thousand
18   dollars roughly.
19             THE COURT:  Now, is that a normal thing that
20   defendants get, a hundred thousand dollars of the
21   plaintiff's attorneys' fees?
22             THE DEFENDANT:  No, sir.
23        (WHEREUPON, the defendant and attorney spoke
24        privately.)
25             THE COURT:  And what was the thinking behind the
```

1   expenses, overstatement of expenses?  Where was that money

2   to go?

3           THE DEFENDANT:  It was -- that was just sort of

4   a holding -- just a number that was a holding spot.

5           THE COURT:  For?

6           THE DEFENDANT:  Just because I didn't know what

7   exactly Mr. Murdaugh was wanting to do with regard to the

8   money.  And I didn't exactly know how we would reduce --

9   how we were going to reduce the fee to free up the money

10  so that he could have some.

11          THE COURT:  You knew he was stealing part of the

12  money?

13          THE DEFENDANT:  Part of it, yes, sir.

14          THE COURT:  Did you know how much?

15          THE DEFENDANT:  Well, he never actually did, he

16  never actually got into any of that money.  But anywhere

17  between a hundred to $200,000 was sort of the amount of

18  money that was sitting there available.

19          THE COURT:  For him?  And you thought he would

20  get?

21          THE DEFENDANT:  Potentially, yes, sir.

22          THE COURT:  And do you know why he didn't get

23  it?  How that didn't happen?

24          THE DEFENDANT:  I really don't.  The way he

25  described it was that he was going to get something out of

1    this, too, was the quote I remember.  And that he --

2        THE COURT:  And you knew that was wrong?

3        THE DEFENDANT:  Oh, absolutely, yes, sir.  I

4    did.

5        MS. BARBIER:  And Your Honor, if I may

6    interject?  I believe Mr. Murdaugh's intent from the

7    beginning was to steal all of the money.  And his

8    representations to Mr. Fleming was that he was going to

9    steal only a portion of the money.

10       THE COURT:  It's a little bit hard to be the

11   defendant and steal all the money.

12       MS. BARBIER:  Correct.

13       THE COURT:  Right?  I mean, that's a little hard

14   to do.

15       MS. BARBIER:  Correct.  Correct.  But the money

16   left in the trust at Mr. Murdaugh's direction, and the

17   second disbursement sheet says 191,000, was for the

18   purpose of Mr. Murdaugh and Mr. Fleming's benefit.  And it

19   was falsely represented as expenses and that was

20   inaccurate and false.

21       THE COURT:  And, Mr. Fleming, were you intending

22   to take some portion of that $190,000?

23       THE DEFENDANT:  Potentially, yes, sir, or

24   benefit from it.  And essentially the $26,000 mentioned in

25   the --

1       THE COURT:  The initial one?

2       THE DEFENDANT:  Yes, sir, I did take that.

3       THE COURT:  And you did -- in fact did not --

4    and did not actually incur expenses to support that?

5       THE DEFENDANT:  No, sir, no, not at all.

6       THE COURT:  So the summary provided by the

7    Assistant United States Attorney, you're telling me under

8    oath, is accurate; is that correct?

9       THE DEFENDANT:  Yes, sir.

10       THE COURT:  Very good.

11       It's the finding of the Court in the case of the

12    United States vs. Cory Howerton Fleming that the defendant

13    is fully competent and capable of entering an informed

14    plea, that the defendant is aware of the nature of the

15    charges and the consequences of the plea, and that a plea

16    of guilty is a knowing and voluntary plea supported by an

17    independent basis in fact containing each of the essential

18    elements of the offense.  The plea is therefore accepted

19    and the defendant is now adjudged guilty of the offense.

20       And Ms. Barbier, if you would approach

21    Ms. Perry, she will hand you the guilty plea for

22    Mr. Fleming's signature.

23       MS. BARBIER:  Thank you.

24    (WHEREUPON, the defendant signed the plea.)

25       THE COURT:  Mr. Fleming, we will gather again

34

1    after a Presentence Report is prepared.  My probation

2    office will work with you to provide me the fullest sort

3    of understanding presentencing.  The probation officer

4    works for me, doesn't work for the prosecutor.  I urge you

5    to cooperate so I can get a better understanding of sort

6    of the full picture here and the full person that I will

7    be sentencing.

8            My magistrate judge, Judge Cherry, will address

9    bond issues and my Marshals will escort you over there for

10    that.

11           Any further matters to come before the Court at

12    this point?

13           MS. LIMEHOUSE:  Nothing from the Government,

14    Your Honor.

15           THE COURT:  Ms. Barbier?

16           MS. BARBIER:  Nothing further, Your Honor.

17    Thank you for making time to do this today.

18           THE COURT:  Glad to do it.

19           This hearing is adjourned.

20       (WHEREUPON, court was adjourned at 2:47 PM)

21                         * * *

22    I certify that the foregoing is a correct transcript from

23    the record of proceedings in the above-entitled matter.

24     s/Karen E. Martin              5/26/2023

25    _____        _____
      Karen E. Martin, RMR, CRR         Date