UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | C/A No.: 2:22-cv-1307-RMG |
| Petitioner, | |
| v. | **DEFENDANT CHAD WESTENDORF'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| RICHARD ALEXANDER MURDAUGH, SR., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, and PALMETTO STATE BANK, | |
| Respondents. | |

Defendant Chad Westendorf submits this opposition to Plaintiff's Motion to File a Second Amended Complaint on the grounds that the amended complaint is prejudicial and futile as to the claims against Westendorf.

## A. LEGAL STANDARD

Under Rule 15(a), a party may amend a pleading once as a matter of course within "21 days after service of a responsive pleading," if such a response is required. Fed. R. Civ. P. 15(a)(1). But once this initial window has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although Rule 15(a)(2) encourages the court to give leave "when justice so requires," the court "may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "Motions to amend are committed to the discretion of the trial court." *Keller v. Prince George's County*, 923 F.2d 30, 33 (4th Cir. 1991).

"Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986). "If an amendment would fail to withstand a motion to dismiss, it is futile." *Woods v. Boeing Co.,* 841 F. Supp. 2d 925, 930 (D.S.C. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id*. at 678.

## B. ARGUMENT

The current First Amended Complaint includes two (2) causes of action against Westendorf – civil conspiracy and a claim under the South Carolina Unfair Trade Practices Act.[1] Westendorf filed a Motion for Summary Judgment on Nautilus' First Amended Complaint the evening of July 28, 2023. Nautilus filed this Motion for Leave to Amend within 2 hours of that summary judgment filing. "Parties desiring to amend a pleading after their opponent has moved for summary judgment must meet a higher bar than is required of those seeking amendment at an earlier stage, namely

---

[1] Plaintiff has taken the position in other pleadings that a claim for Declaratory Judgment is a free-standing cause of action. Declaratory judgment is not a cause of action; it is a remedy which permits a party to seek court declaration of an issue "before" there is litigation or to prevent litigation. *See Blankenship v. Consolidation Coal Co.,* 850 F.3d 630, 640 (4th Cir. 2017).

that 'the proposed amendment [is] supported by substantial and convincing evidence.'" *City of Revere v. Boston/Logan Airport Associates, LLC*, 443 F. Supp. 2d 121, 125 (D. Mass. 2006), citing *Adorno v. Crowley Towing & Transp. Co.,* 443 F.3d 122, 126 (1st Cir. 2006). Westendorf requests the court consider, and grant, his Motion for Summary Judgment prior to addressing this motion. And, the court should apply a more exacting review of this proposed second amended complaint (hereinafter "SAC"), including whether the new allegations are supported by substantial and convincing evidence.

This proposed third version of the complaint adds more facts, the vast majority of which were publicly known or available long prior to the filing of this Motion to Amend, a small sampling of new facts discovered in the depositions and expansive written discovery between the parties to this case over the last twelve (12) months, and a vast display of new causes of action. The new causes of action alleged against Westendorf (and other defendants) are based in tort: breach of fiduciary duty, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and conversion; based in contract: breach of contract and unjust enrichment; and based on the federal civil RICO statute. The pre-existing claims for civil conspiracy and unfair trade practices remain.

What has stayed the same, however, is the injury for which Nautilus seeks recompense. Nautilus alleges that it paid $3.8 Million to settle a liability claim brought by the Estate of Gloria Satterfield against its insured, Alex Murdaugh. The proposed complaint alleges that Nautilus paid the Satterfield claim because (1) Murdaugh lied to implicate his dogs as the cause of Ms. Satterfield's fall in order to trigger coverage, (2) Murdaugh lied about Ms. Satterfield being at his home to do something unrelated to her employment with their family, (3) Murdaugh admitted he was negligent and told Nautilus he would admit liability, (4) Murdaugh pressured Nautilus to pay the claim with threats of bad faith if the claim were not paid, and (5) Murdaugh made threatening

remarks to Nautilus' adjuster. SAC, paras. 18, 22-24. These allegations arise solely from the acts of Nautilus's insured. By suing the multiple non-Murdaugh defendants and by including a pile of facts related to the larger Murdaugh financial scandal, Nautilus seeks to confuse and distract the court in hopes of avoiding having to bring its claims against the only party Nautilus had an actual relationship with – Alex Murdaugh.

   A. <u>NEW CONTRACT AND TORT CLAIMS FAIL TO MEET STANDARD FOR MOTION TO DISMISS, AND ARE NOT ACCOMPANIED BY SUBSTANTIAL AND CONVINCING EVIDENCE.</u>

Nautilus and Murdaugh were parties to a contract of insurance. SAC, para. 10. That contract creates obligations by both parties. South Carolina has recognized only one quasi tort cause of action arising from an insurance contract – the first-party/insured versus insurer cause of action for bad faith in insurance claims handling. *See Nichols v. State Farm Ins. Co.*, 306 S.E.2d 616 (S.C 1983). Therefore, in South Carolina the insurance carrier owes its insured a tort duty to use reasonable care in the processing of claims pursuant to the policy or contract of insurance. *Id*.

To further refine this relationship, Nautilus admittedly hired defense counsel for Murdaugh, and then paid the $3.8 million on behalf of its insured. SAC, Para. 14. The obligation that Nautilus hire defense counsel for its insured and pay any covered claim arises from the same contract of insurance. *See Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha,* 236 S.E.2d 818, 820 (1977) (explaining nature of duty to provide defense under liability insurance). Murdaugh was named as the alleged liable person in the Satterfield claim. And, when the settlement agreement was finalized, including direct and substantial involvement of counsel Nautilus hired to represent Murdaugh, it was Murdaugh who benefitted from the release of the claim.

Notwithstanding the new myriad factual allegations around the larger Murdaugh financial scandal, Nautilus' proposed third complaint cannot withstand a motion to dismiss because it fails

to establish a causal link between Westendorf and the injury Nautilus decries. The proposed complaint is replete with allegations about prior victims of Alex Murdaugh's scams, having nothing to do with Westendorf in any way, and allegations of acts taken by Fleming and Murdaugh after Nautilus made the decision to pay the claim. These factual allegations are either unrelated to Westendorf in any way or an attempt to rely on the acts of others after Nautilus made the decision to pay the Satterfield claim. These alleged facts cannot serve as a direct or indirect cause of Nautilus' decision to pay $3.8 on Alex Murdaugh's behalf to settle the Satterfield claim. Therefore, granting leave for Plaintiff to amend would be futile.

In the event of fraud by the insured, an insurance company has a right to make a claim for fraudulent misrepresentation to void or rescind the insurance policy. Nautilus has alleged fraud against its insured, Alex Murdaugh, in both the First Amended Complaint, and the proposed Second Amended Complaint, SAC, paras. 20-26. This claim, when successful, results in the insured owing back any monies paid under the contract, and if provided for in the contract of insurance, the insured will be required to compensate the insurer its other resulting damages. In South Carolina, the insurer must show by clear and convincing evidence: (1) the statement by the insured was false; (2) the falsity was known to the insured; (3) the statement was material to the risk; (4) the statement was made with the intent to defraud the insurer; and (5) the insurer relied on the statement when issuing the policy. *Primerica Life Ins. Co. v. Ingram,* 616 S.E.2d 737, 739 (S.C. Ct. App. 2005) (citing *Strickland v. Prudential Ins. Co. of Am.*, 292 S.E.2d 301, 304 (S.C. 1982)). While most cases appear to arise in the context of misrepresentations on applications, there is no cognizable difference in theory when the misrepresentations are made as part of the claims process. The relief Nautilus seeks, reimbursement for the settlement monies it paid on behalf of its

insured, Murdaugh, to the Estate, can only be obtained via the direct claim against its insured Murdaugh.

At some level, likely recognizing the limitations of its ability to seek redress for its injury against those other than its insured, Nautilus carefully attempts to craft a factual basis for a new relationship to serve as the underpinning of its proposed tort and contract claims (Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Aiding and Abetting Fraud, Civil Conspiracy, Conversion, Breach of Contract, and Unjust Enrichment). In the proposed second amended complaint, Nautilus alleges that it conditioned release and distribution of the settlement monies paid on Murdaugh's behalf and delivered to counsel for Estate of Satterfield (and Westendorf, as the personal representative of the Estate) on a requirement that the order approving the settlement be "signed and filed" prior to release of the funds. It alleges that condition created a duty (contractual and tort according to its amended complaint) running from Fleming, his law firm, Westendorf, and Palmetto State Bank as his employer, to Nautilus to ensure that the Satterfield family received the settlement funds. SAC, paras. 15 (f), (g), (i), (k), 58-59, 66, 84, 89, and 91. Even with acceptance of the general allegation that Westendorf had some involvement in the signed Order never being filed as true, which is denied, Nautilus acknowledges that it hired counsel for Alex Murdaugh with regard to that settlement, SAC, paras. 14, 56. It simply cannot be disputed that through its own agent, Nautilus had direct access to information regarding the order approving the settlement, the court approval process, hearing to approve which took place in May 2019, and its filing status. Nautilus was not a stranger to the process for the order approving the settlement, it being signed and filed. This fact, that Nautilus had an agent in the attorney Nautilus hired to represent Alex Murdaugh, for purposes of defending the claim, negotiating the settlement, and managing the payment process, should, at the very least, estop Nautilus from claiming had it

known the order had not been filed, it would not have given its authorization to release the settlement funds for disbursement. Amendments adding causes of action based on this fictitious duty would be futile, and prejudice Westendorf.

B. AMENDED STATUTORY CAUSES OF ACTION ARE FUTILE AS TO WESTENDORF

Westendorf incorporates his arguments in the pending motion for summary judgment (ECF # 135) regarding Nautilus' failure to create an issue of fact (or even state a claim) under the South Carolina Unfair Trade Practices Act. The Second Amended Complaint adds no facts to place Westendorf's actions within the meaning of the act.

The "piece de resistance" of Nautilus' proposed Second Amended Complaint is the new cause of action under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(a)-(d) as to all defendants. (ECF Entry No. 134-1 at ¶¶ 102-116). This cause of action is pled as the culmination of the new tort and contract theories set forth therein, and includes a kitchen sink full of allegations spanning a ten-year period. If Nautilus' assertion of facts to support the tort and contract causes of action against Westendorf is not plausible, then the RICO cause of action falls to the same fate. Specifically, Nautilus fails to allege that Westendorf functioned with the other Defendants as a continuous unit, and fails to implicate Westendorf in the long list of alleged illegal activities making up the specific racketeering activity. SAC, paras. 107 (a) – (h), 110, or 110 (omit reference to Westendorf as actor). See *Whelan v. Winchester Prod. Co.,* 319 F.3d 225, 229 (5th Cir. 2003); *see also Rivera v. AT&T Corp.,* 141 F. Supp. 2d 719, 726 (S.D. Tex. 2001) (an association-in-fact enterprise must show that the various associates "function as a continuous unit.")

Nautilus' second amended complaint fails to put forth the necessary allegations to support a RICO claim against Westendorf.

### C. CONCLUSION

Mr. Westendorf respectfully requests this court deny Nautilus' Motion to Amend.

                                  s/Christy Ford Allen
                                  John A. Massalon (Federal ID #5227)
                                  Christy Ford Allen (Federal ID #7549)
                                  WILLS MASSALON & ALLEN LLC
                                  Post Office Box 859
                                  Charleston, South Carolina  29402
                                  (843) 727-1144
                                  jmassalon@wmalawfirm.net
                                  callen@wmalawfirm.net

                                  ATTORNEYS FOR CHAD WESTENDORF

CHARLESTON, SC

August 11, 2023