## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | Case No.: 2:22-cv-1307-RMG |
| | ) | |
| Petitioner, | ) | **DEFENDANT PALMETTO** |
| vs. | ) | **STATE BANK'S OPPOSITION** |
| | ) | **TO PLAINTIFF'S MOTION** |
| | ) | **TO AMEND ITS PLEADING** |
| RICHARD ALEXANDER MURDAUGH, SR., | ) | |
| CORY FLEMING, MOSS & KUHN, P.A., CHAD | ) | |
| WESTENDORF, PALMETTO STATE BANK, | ) | |
| and THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondents. | ) | |

The circumstances of this case present a rare instance where leave to amend, usually freely permitted pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, should be denied. As explained in more detail below, Nautilus Insurance Company ("Nautilus" or "the Plaintiff") cannot sustain the new claims asserted in the proposed Second Amended Complaint (ECF Entry No. 134-1). The Plaintiff's prosecution of these new claims would be futile and would also prejudice Palmetto State Bank ("PSB") by prolonging and greatly expanding the scope of this litigation with no factual or legal basis for doing so. Further, the Motion to Amend was filed after PSB moved for summary judgment on the First Amended Complaint which elevates the standard for granting the amendment. See, City of Revere v. Boston/Logan Airport Associates, LLC, 443 F. Supp. 2d 121, 125 (D. Mass. 2006) ("Parties desiring to amend a pleading after their opponent has moved for summary judgment must meet a higher bar than is required of those seeking amendment at an earlier stage, namely that 'the proposed amendment [is] supported by substantial and convincing evidence.") (internal quotation marks omitted). Nautilus does not come close to meeting this higher bar.

## **BACKGROUND**

Nautilus's proposed Second Amended Complaint is an unrestrained effort to capitalize on the well-publicized misconduct of Russell Laffitte, even though the actions that caused Plaintiff's alleged loss have nothing to do with that misconduct. Having presided over the criminal trial of Russell Laffitte, this Court is entirely knowledgeable of the offenses for which he was convicted. His convictions for conspiring with Alex Murdaugh involved conduct from 2011 through 2014 in which he assisted Murdaugh in his misappropriation of funds of clients of the law firm of Peters Murdaugh Parker Eltzroth & Detrick ("PMPED") through issuing cashier checks and crediting accounts within the bank. The settlements obtained for these clients of PMPED – Arthur Badger, Natarsha Thomas, and Hakeem Pinckney – were all legitimate. None were the result of fabricated facts, and none had any relation whatsoever to Nautilus.

In its proposed Second Amended Complaint, Nautilus alleges a sprawling hodgepodge of claims spanning everything from negligence to RICO, trying to capitalize on the unrelated misdeeds of Russell Laffitte and the bank's knowledge of the checkered credit history of Alex Murdaugh. But those events are entirely independent from anything having to do with Nautilus. Plain and simple, in March of 2019 Nautilus decided to pay $3,800,000 to resolve claims against its insured, Murdaugh, based on Murdaugh's story about Gloria Satterfield's fall at his family's house. Nautilus made the decision to pay the money even though Nautilus knew it was likely being duped.[1] Murdaugh then had Cory Fleming issue checks from his firm's escrow account at BB&T to "Forge," which Murdaugh in turn deposited in his account at Bank of America. These events

---

[1] Despite its allegations to the contrary, discovery to date has demonstrated that it is beyond genuine dispute that Nautilus was completely aware—***before*** it decided to pay its $3,800,000— that the facts did not support Alex Murdaugh's version of events and that the claim was possibly fraudulent. (See Mot. for Summ. J., ECF Entry No. 131 at 4-6).

are wholly unrelated to Russell Laffitte whose earlier misconduct is remote in time (five years or more prior to Nautilus's decision to pay the settlement), is entirely dissimilar in method (not involving a fraudulently induced settlement or use of "Forge" account at Bank of America), and involved entirely different people, with the exception of Murdaugh.

As made clear in PSB's Motion for Summary Judgment (ECF Entry No. 131), there is no evidence whatsoever that Chad Westendorf or PSB conspired with Murdaugh or Fleming to concoct the facts of Ms. Satterfield's fall for the purpose of injuring Nautilus, so that Murdaugh could ultimately misappropriate most of the settlement funds through his secret "Forge" account. The alleged connection to Russell Laffitte's misconduct is simply an attempt by Nautilus to gin up a case where there is none. Nautilus, a sophisticated multi-billion-dollar insurance company, is a victim only of its own bad decision to pay the $3.8 million to settle the claims of Ms. Satterfield's estate against Murdaugh.

## THE PLEADINGS

Nautilus initiated this case on April 22, 2022, with the filing of a Complaint that named two defendants – Murdaugh and the United States of America.  The Complaint asked for a declaration of "the rights and obligations of the parties arising out of" a grand jury subpoena, an umbrella insurance policy issued by Nautilus to Murdaugh ("the Policy"), and a claim under the Policy made by Murdaugh with regard to claims made against him by the estate of Gloria Satterfield ("the Claims").  (See Compl., ECF Entry No. 1).  On May 11, 2022, the Plaintiff filed its Amended Complaint naming four additional defendants and adding claims for fraud, conspiracy to commit fraud, and violations of the South Carolina Unfair Trade Practices Act ("SCUTPA"). (See Am. Compl., ECF Entry No. 8).

Last year, on December 20, 2022, counsel for the Plaintiff wrote to the parties to request

consent to amend its pleading and attached a draft "Second Amended Complaint." See Email from Rannik to Counsel, dated Dec. 20, 2022, attached as Exhibit 1.

More than seven months later, on July 21, 2023, PSB moved for summary judgment on the claims asserted against it in the Amended Complaint. (See Mot. for Summ. J., ECF Entry No. 131). Nautilus filed the instant Motion for Leave to Amend a week later. (See ECF Entry No. 134). PSB opposes the Motion to Amend and, as more fully set forth herein, asserts:

1. PSB has already filed a Motion for Summary Judgment as to all claims against it. The court should first consider and grant summary judgment then review the Motion to Amend in light of that ruling.

2. The proposed Second Amended Complaint is futile on its face, and it fails to state a claim under the applicable rules and accompanying standards.

3. The proposed Second Amended Complaint seeks to add causes of action based upon the same facts that Nautilus has been considering since at least December of 2022, when it circulated its first version of the Second Amended Complaint. There is no excuse for the delay.

4. Allowing this improper amendment would be highly prejudicial to PSB. The proposed Second Amended Complaint is nothing more than the Plaintiff's restatement of the same unrelated inflammatory allegations it has tried to use as a justification for expansive and burdensome discovery into the conduct of former bank employee Russell Laffitte that is remote in time and circumstance and wholly unrelated to the claim of the Satterfield estate that Nautilus decided to settle.[2] Allowing the Second Amended Complaint would drastically expand the breadth of this case and require extensive discovery of unrelated misdeeds of Russell Laffitte and ultimately several "trials" within this trial. Granting the amendment will significantly extend the time for resolution, dramatically increase the costs of the litigation, and impose an unnecessary burden on the Defendants and this Court to sift through the heap of new claims based on conduct that has nothing to do with Nautilus.

## **STANDARD OF REVIEW**

Leave to amend a complaint should be given only in the absence of "undue delay, bad faith

---

[2] The matters referenced are the subject of pending motions of PSB for a protective order, (ECF Entry No. 118), and of Nautilus to compel. (ECF Entry No. 112).

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Accordingly, a district court's denial of leave to amend is appropriate when "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith on the part of the moving party;' or (3) 'the amendment would have been futile.'" <u>Drager v. PLIVA USA, Inc.</u>, 741 F.3d 470, 474 (4th Cir. 2014) (quoting <u>Scott v. Family Dollar Stores, Inc.</u>, 733 F.3d 105, 121 (4th Cir. 2013).

While it is accurate to state that "leave to amend should be freely granted, it is not granted where the proposed amended complaint is futile on its face." <u>Hoffman v. Charter Commc'ns</u>, No. CV 9:18-1145-RMG, 2018 WL 2932731, at *2 (D.S.C. June 12, 2018) (citing <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 510 (4th Cir. 1986)). A proposed amendment to a pleading is futile if it "fails to state a claim under the applicable rules and accompanying standards...." <u>Katyle v. Penn Nat'l Gaming, Inc.</u>, 637 F.3d 462, 471 (4th Cir.2011) (citing <u>United States ex rel. Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir.2008)).

The trial court's "'grant or denial of an opportunity to amend [pursuant to Federal Rule of Civil Procedure 15(a)(2)] is within the discretion of the district court.'" <u>Scott v. Family Dollar Stores, Inc.</u>, 733 F.3d 105, 121 (4th Cir.2013) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Consequently, appellate courts defer to the district court and only reverse for such limited circumstances where there is an abuse of discretion. <u>Nourison Rug Corp. v. Parvizian</u>, 535 F.3d 295, 298 (4th Cir.2008).

## LAW AND ANALYSIS

### 1. The Court should consider PSB's Motion for Summary Judgment prior to addressing Plaintiff's Motion to Amend.

PSB has moved for summary judgment and, in doing so, invoked this Court's "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." See Mot. for Summ. J., ECF Entry No. 131 at 9) (quoting Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003) (citing Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir.1993)). When, as here, a plaintiff seeks to amend its complaint to raise new theories after a defendant has moved for summary judgment, the Court should "more carefully scrutinize [the plaintiff's] attempt to raise new theories of recovery by amendment . . . ." Parish v. Frazier, 195 F.3d 761, 764 (5th Cir. 1999).

Because the Motion for Summary Judgment was filed before the Motion to Amend and because evaluation of the Motion for Summary Judgment involves the critical question of whether PSB intended to harm Nautilus or engaged in any conduct that harmed Nautilus, it is appropriate and most efficient for the Court to consider the Motion for Summary Judgment before entertaining the Motion to Amend. If the Court grants PSB's motion, there will be no set of facts that would support the claims Nautilus seeks to assert in its proposed Second Amended Complaint. Further, Nautilus has not come forward with substantial and convincing evidence to support these new claims as required when a motion to amend is filed after a motion for summary judgment. See City of Revere v. Boston/Logan Airport Associates, LLC., 443 F. Supp. 2d 121, 125 (D. Mass. 2006).

### 2. Plaintiff's Motion for Leave to Amend should be denied because it will be futile.

PSB's Motion for Summary Judgment addresses the claims that Nautilus has asserted against PSB to date, namely civil conspiracy and an alleged violation of the South Carolina Unfair Trade Practices Act.[3] As explained in its Motion for Summary Judgment, PSB is entitled to judgment as a matter of law as to them. Should the Court agree, in whole or in part, Nautilus's attempt to revive claims previously asserted, via its proposed Second Amended Complaint, would be futile. For this reason alone, the Court should decide PSB's Motion for Summary Judgment before entertaining the Motion for Leave to Amend filed by Nautilus.

In total, Nautilus asserts the following eight new theories of liability against PSB in the proposed Second Amended Complaint:

A. Negligence, Count 3 (¶¶ 35-47);

B. Breach of Fiduciary Duty, Count 5 ((¶¶55-64);

C. Breach of Agreement, Count 6 (¶¶ 65-70);

D. Aiding and Abetting Fiduciary Duty, Count 7 (¶¶71-74);

E. Aiding and Abetting Fraud, Count 8 (¶¶75-80);

F. Money Had & Received/Unjust Enrichment, Count 9 (¶¶81-86);

G. Conversion, Count 10 (¶¶87-96); and

---

[3] In the final paragraphs of the current Amended Complaint (and the proposed Second Amended Complaint) Nautilus improperly "requests this Court declare the rights and obligations of the parties . . . ." (ECF Entry No. 8 at ¶50). If the Court grants PSB's Motion for Summary Judgment the matter will be concluded as to PSB. See Canipe v. Canipe, 918 F.2d 955 (4th Cir. 1990) (holding "there must be an independent basis for jurisdiction before declaratory relief may be sought under the Declaratory Judgment Act" (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950))). Likewise, as to the proposed Second Amended Complaint, in addition to the vague and confusing language used, there is no separate cause of action available to Nautilus for such a declaration.

H.   Violation of RICO, Count 11 (¶¶102-116).

For the ensuing reasons, it would be futile to allow Nautilus to assert any of these claims.

**A.   PSB did not owe a duty of care to Nautilus.**

Nautilus fails to state a negligence claim against PSB upon which relief can be granted. "An essential element in a cause of action based upon negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." Platt v. CSX Transp., Inc., 388 S.C. 441, 445, 697 S.E.2d 575, 577 (2010).  "In a negligence action, the court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff." Faile v. S.C. Dep't of Juvenile Justice, 350 S.C. 315, 334, 566 S.E.2d 536, 545 (2002). The South Carolina Supreme Court explained the concept of duty as follows:

> Duty is generally defined as "the obligation to conform to a particular standard of conduct toward another." Hubbard v. Taylor, 339 S.C. 582, 588, 529 S.E.2d 549, 552 (2000), quoting Shipes v. Piggly Wiggly St. Andrews, Inc., 269 S.C. 479, 483, 238 S.E.2d 167, 168 (1977); see Prosser and Keaton On the Law of Torts § 53 (5th ed.1984) ("... 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same-to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.").

> Duty arises from the relationship between the alleged tortfeasor and the injured party. South Carolina Ports Authority v. Booz-Allen & Hamilton, Inc., 289 S.C. 373, 346 S.E.2d 324 (1986). In order for negligence liability to attach, the parties must have a relationship recognized by law as the foundation of a duty of care. Ravan v. Greenville County, 315 S.C. 447, 434 S.E.2d 296 (Ct.App.1993). In the absence of a duty to prevent an injury, foreseeability of that injury is an insufficient basis on which to rest liability. South Carolina Ports Authority v. Booz-Allen & Hamilton, supra. The concept of duty in tort liability will not be extended beyond reasonable limits. Morris v. Mooney, 288 S.C. 447, 343 S.E.2d 442 (1986) (employer has no duty to employee's wife to investigate or prevent employee's adulterous relationship with co-employee).

Huggins v. Citibank, N.A., 355 S.C. 329, 333, 585 S.E.2d 275, 277 (2003).

In Huggins, a victim of identity theft brough a negligence claim against two banks for

issuing credit cards in the victim's name to the thief who stole his identity. Id. at 331. Despite being "greatly concerned about the rampant growth of identity theft and financial fraud in this country" and being "certain that some identity theft could be prevented if credit card issuers carefully scrutinized credit card applications," the South Carolina Supreme Court "declined to recognize a legal duty of care between credit card issuers and those individuals whose identities may be stolen." Id. at 334. As the court explained,

> The relationship, if any, between credit card issuers and potential victims of identity theft is far too attenuated to rise to the level of a duty between them. Even though it is foreseeable that injury may arise by the negligent issuance of a credit card, foreseeability alone does not give rise to a duty.

Id. Because credit card issuers have no duty to protect potential victims of credit card fraud, the court refused to recognize the plaintiff's claim, which was labelled as "negligent enablement." Id.

The connection between PSB and Nautilus is far more attenuated than that in Huggins. There was *no* relationship between the two. Nautilus was not a customer of the bank, nor did it have any dealings with the bank. PSB did not communicate with Nautilus or even know that Nautilus existed. There are no facts, not to mention "substantial and convincing" facts, that impose a duty of care on PSB with respect to Nautilus. Accordingly, Nautilus's negligence claim against PSB suffers from the same defect as the negligent enablement claim in Huggins. It too fails as a matter of law. It would be futile to allow Nautilus to assert a negligence claim against PSB since it did not owe a duty of care.

**B. PSB was not Nautilus's fiduciary.**

The proposed Second Amended Complaint fails to state a claim for breach of fiduciary duty against PSB. Simply put, PSB did not owe a fiduciary duty to Nautilus. "To establish a claim for breach of fiduciary duty, a plaintiff must prove that: '(1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting

from the wrongful conduct of the defendant.'" <u>Scott v. Catawba Valley Brewing Co.</u>, No. 2:18-CV-1539-RMG, 2018 WL 3966261, at *3 (D.S.C. Aug. 17, 2018) (quoting <u>RFT Mgmt. Co. v. Tinsley & Adams L.L.P.</u>, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012)). "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience is bound to act in good faith and with due regard to the interests of the one imposing the confidence." <u>Davis v. Greenwood Sch. Dist. 50</u>, 365 S.C. 629, 635, 620 S.E.2d 65, 68 (2005). Examples of fiduciary relationships include attorney-client, trustee-beneficiary, directors and majority shareholders of a corporation, business partners, joint venturers, and principals and agents. <u>See</u> 121 Am. Jur. Trials 129 (Originally published in 2011).

In this case, Nautilus and PSB had no relationship, much less a fiduciary relationship. Nautilus was not so much as a customer of PSB. It certainly did not impose a special confidence in PSB that thereby bound PSB to act in good faith and with due regard to the interest of Nautilus. PSB and Nautilus did not even communicate. In fact, there is no evidence that the two even knew each other existed. It would be futile to allow Nautilus to allege that PSB was its fiduciary. It clearly was not.

### C. PSB did not breach any contract with Nautilus.

In the proposed Second Amended Complaint, Nautilus falsely alleges that PSB deposited the settlement funds in escrow and, by doing so, "agreed to the condition accompanying the check for those funds that the funds would not be disbursed until after the order approving the settlement was signed and filed." (ECF Entry No. 134-1 at ¶ 66). Nautilus is referring to a transmittal letter that the defense attorney, who Nautilus retained to represent Murdaugh, sent to Cory Fleming, and Cory Fleming alone. The letter included the following <u>request</u> of Fleming: "Please hold these settlement funds in trust until the Petition and Order Approving Settlement have been signed and

filed at the Probate Court settlement hearing." (ECF Entry No. 142-18). This was a <u>request</u> by the defense attorney to Fleming, the plaintiff's attorney. Regardless of whether the letter imposed some type of obligation on Fleming, it certainly did not impose a contractual obligation on PSB, who was not Fleming's client. None of the elements of contract formation are present. <u>Miller v. Dillon</u>, 432 S.C. 197, 208, 851 S.E.2d 462, 468 (Ct. App. 2020) (explaining that the necessary elements of contract formation are an offer, acceptance, and valuable consideration). It would be futile to allow Nautilus to assert a breach of contract claim against PSB, which would be without factual or legal basis and frivolous.

**D.   PSB did not aid or abet the breach of any fiduciary duty.**

There is no basis whatsoever to claim that PSB aided and abetted anything Fleming did or did not do. PSB had nothing to do with Fleming, much less his firm's escrow account. PSB had no involvement in the disbursements, nor is there an allegation that PSB even knew about them.

The precedent in South Carolina is clear that a bank cannot be liable for aiding and abetting a breach of fiduciary duty without proof of the bank's actual knowledge of the breach of fiduciary duty and its knowing participation in that breach. <u>Future Group, II v. Nationsbank</u>, 324 S.C. 89, 99, 478 S.E.2d 45, 50 (1996), overruled on other grounds by <u>Paradis v. Charleston County Sch. Dist.</u>, 861 S.E.2d 774 (2021) ("There is no evidence in the record, however, that Bank had actual knowledge Agency's by-laws required shareholder approval. Although Agency's counsel, Drayton Hastie, knew it, there is no evidence he advised Bank."). "The gravamen of the claim [of aiding and abetting breach of fiduciary duty] is the defendant's knowing participation in the fiduciary's breach." <u>Gibson v. Ameris Bank</u>, 420 S.C. 536, 545, 804 S.E.2d 276, 281 (Ct. App. 2017).

Additionally, there is a considerable question whether there was a fiduciary duty that could be aided and abetted. There is no legal precedent that a plaintiff's lawyer, or law firm, is a fiduciary

of a defendant's insurance company. Needless to say, this far-fetched notion would completely undermine the unconditional professional duties of a plaintiff's lawyer to her client. A plaintiff's lawyer's negotiation of a settlement check provided to her before the conditions for its negotiation have been met could possibly implicate misconduct under the Rules of Professional Conduct but is definitely not a breach of fiduciary duty as to the defendant's liability insurance company.

There are no facts at all, much less "substantial and convincing evidence," to support a claim against PSB for aiding and abetting breach of fiduciary duty when there is no evidence of knowing participation and no fiduciary duty as a matter of law.

**E. South Carolina law does not recognize a cause of action for "aiding and abetting fraud."**

The proposed Second Amended Complaint includes a claim against PSB for "aiding and abetting fraud." (ECF Entry No. 134-2 at ¶¶75-80). This claim does not exist.

South Carolina courts do not recognize a cause of action for aiding and abetting a tort other than breach of fiduciary duty. See Gordon v. Busbee, No. 2003-CP-02-604, 2008 WL 8994336 (S.C.Com.Pl. May 23, 2008) (explaining that "[t]he closet (sic) a South Carolina appellate court has come to identifying the elements necessary to prove aiding and abetting a tort occurred in Future Group, II v. NationsBank, 324 S.C. 89, 478 S.E.2d 45 (1996), rehearing denied (1996)."). Future Group, II addressed aiding and abetting breach of a fiduciary duty. See Future Group, II, 478 S.E.2d at 50. The South Carolina Supreme Court has not expanded aiding and abetting liability to the tort of fraud, Bennett v. Carter, 421 S.C. 374, 380, 807 S.E.2d 197, 200 (2017). Because aiding and abetting fraud is not a cognizable claim under South Carolina law, it would be futile to allow Nautilus to amend its complaint once again to assert such a claim. See, e.g., Clearwater Tr. v. Bunting, 367 S.C. 340, 345, 626 S.E.2d 334, 336 (2006) (stating there is no implied private cause of action for aiding and abetting fraud under the South Carolina Securities

Act).

Assuming arguendo that a cause of action for aiding and abetting fraud exists under South Carolina law, Nautilus would have to allege and prove that PSB knowingly participated in the alleged fraud. See Future Group II, 478 S.E.2d at 50 (holding that the defendant could not be liable for aiding and abetting because there was no evidence that it "knowingly participated" in an alleged breach of fiduciary duty). The proposed Second Amended Complaint, however, is devoid of any factual allegations showing that PSB knowingly participated in defrauding Nautilus. Accordingly, even if South Carolina law recognized a claim for aiding and abetting fraud, it would be futile to allow Nautilus to amend its pleading to assert such a claim due to this deficiency.

### F. PSB does not hold money in its hands that belongs to Nautilus.

In the proposed Second Amended Complaint, Nautilus asserts a claim against PSB for "money had and received/unjust enrichment," alleging that "[s]ome portion of the funds paid by Nautilus remain in MKF's trust account under Fleming's control." (ECF Entry No. 134-1 at ¶83). MKF does not maintain its trust account at PSB. MKF maintains its trust account at BB&T, or at least it did when Nautilus paid the settlement funds. PSB does not possess or control the funds that Nautilus claims were converted. This is a fatal flaw. An action for money had and received requires that the defendant hold the money in question in his or her hands. See Duncan v. McCormick Cnty., 192 S.C. 216, 6 S.E.2d 265, 267 (1939) (stating the plaintiff must show the defendant holds money, which in equity and good conscience, belongs to him). It would be futile to allow Nautilus to assert a claim for money had and received or unjust enrichment against PSB, as a result. See Okatie River, L.L.C., 353 S.C. at 334–35, 577 S.E.2d at 472 (holding that the equitable principles of unjust enrichment and restitution do not provide a remedy unless the requirements of an action for money had and received are proven).

### G. PSB did not convert Nautilus's Money.

Like the claim for breach of a purported contract, discussed above, the Second Amended Complaint includes a conversion claim based on the transmittal letter from Murdaugh's attorney to Fleming that enclosed Nautilus's settlement check. (See ECF Entry No. 134-1 at ¶¶ 87-96). In the letter, which is not so much as alleged to have been sent to PSB or even Westendorf, because it was not, Murdaugh's attorney makes the following request of Fleming: "Please hold these settlement funds in trust until the Petition and Order Approving Settlement have been signed and filed at the Probate Court settlement hearing." (ECF Entry No. 142-18). "Because the funds were disbursed contrary to Nautilus' express instructions and were then misappropriated by Murdaugh (with the knowledge and assistance of Fleming and MKF and enabled by Westendorf, all to the benefit of all Defendants)," Nautilus contends in the proposed pleading that PSB is "directly and/or vicariously liable to Nautilus for conversion and must return the funds to Nautilus." (ECF 134-1 at ¶95).

Nautilus's conversion claim against PSB fails as a matter of law fails for multiple reasons. "Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the exclusion of the owner's rights.'" Bank of New York v. Sumter Cnty., 387 S.C. 147, 158, 691 S.E.2d 473, 479 (2010) (quoting Moore v. Weinberg, 383 S.C. 583, 589, 681 S.E.2d 875, 878 (2009)). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." Regions Bank v. Schmauch, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct.App.2003). "To sustain a cause of action for conversion, a plaintiff must prove (1) an interest by the plaintiff in the thing converted; (2) the defendant converted the property to his or her own use; and (3) the use was without the plaintiff's permission." In re Ducane Gas Grills, Inc., 320 B.R. 324, 339 (Bankr. D.S.C. 2004) (citing Crane v. Citicorp Nat'l Servs.,

Inc., 313 S.C. 70, 437 S.E.2d 50 (1993) (superseded by statute on other grounds); Owens v. Andrews Bank & Trust Co., 265 S.C. 490, 220 S.E.2d 116 (1975); and Ralph King Anderson, Jr., South Carolina Request to Charge—Civil § 3–2 (2002).

PSB never received the settlement check. PSB did not convert the settlement check to its own use. Murdaugh converted the settlement check. Additionally, Nautilus had no title or right to the possession of the personal property once it issued and delivered the settlement check. Oxford Fin. Cos. v. Burgess, 303 S.C. 534, 402 S.E.2d 480 (1991). Nautilus gave up title to and the right to the settlement funds when it voluntarily paid the Estate's claim. At that time, Nautilus's title to and right to possess the funds ended. No one, not even Murdaugh, needed Nautilus's permission to use the money. Murdaugh should have sought such permission from Ms. Satterfield's sons— not Nautilus—before he siphoned their money to his secret account at Bank of America. Ultimately, it would be futile to allow Nautilus to assert a claim for conversion of money that belonged to Ms. Satterfield's heirs.

### H. PSB did not violate RICO.

The proposed Second Amended Complaint also fails to adequately allege its purported claim for "Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(a)-(d)" as to all defendants. (ECF Entry No. 134-1 at ¶¶ 102-116). Quite simply, RICO does not apply to the facts of this case and therefore Nautilus cannot establish the necessary elements of such a claim.

Painting with the broadest brush conceivable, the proposed Second Amended Complaint incorporates every defendant in what Nautilus calls an "association of fact or enterprise." (Id. at ¶¶ 110-111). Nautilus alleges that every defendant named in the suit "either directly or through their employees, agents, officers, employees, or owners, knowingly and intentionally engaged in

an association in fact or an enterprise." (ECF Entry No. 134-1 at ¶ 106). Nautilus lays out a few alleged bad acts by Murdaugh, Fleming, and Laffitte seemingly tied to the settlement of the Satterfield claims. Nautilus proceeds to recite a litany of totally unrelated allegations that, in 2011 and 2012, Laffitte and Murdaugh mishandled two conservator accounts which have absolutely no connection to this case.[4] Nautilus then alleges all named defendants, including PSB were part of an "association in fact or enterprise." (ECF Entry 131-1 at ¶¶ 110-111). Nautilus seems to intend to allege an "association-in-fact" enterprise, but it fails to allege any association distinct from the racketeering activity claimed under RICO; this omission is fatal to the RICO claim. The Plaintiff clearly misunderstands the RICO requirement that defendants associate for purposes other than the alleged racketeering activity. See Rivera v. AT&T Corp., 141 F. Supp. 2d 719, 726 (S.D. Tex. 2001) (finding no RICO violation when Plaintiffs failed to allege "facts to suggest that Tele-Communications, Inc., AT&T Corp., or Time Warner, Inc. exist as an entity apart from their business of providing cable services").

In order to maintain a RICO action based on an association-in-fact enterprise, a plaintiff must plead facts supporting the existence of an ongoing organization with various associates functioning as a continuing unit.

The defendants simply did not function as a continuing unit. Accordingly, the Plaintiff cannot (and has failed to) allege any facts that show the Defendants compromised a continuing unit. Nautilus has not alleged facts (or even conclusory allegations) that the Defendants acted with "sufficient organization that its members function and operated in a coordinated manner in order

---

[4] Notably, the December 2022 proposed Second Amended Complaint named Russell Laffitte as a defendant in at least 5 causes of action, including the RICO count, but the July 2023 version does not include any claims against Mr. Laffitte. (See ECF Entry No. 134-1 and Email from Rannik to Counsel, December 20, 2022, with draft "Second Amended Complaint" attached hereto as Exhibit 1).

to carry out the alleged common purpose or purposes of the enterprise." <u>Bowen v. Adidas Am., Inc.</u>, No. CV 3:18-3118-JFA, 2020 WL 13076114, at \*7 (D.S.C. Oct. 23, 2020) (citing <u>Boyle v. United States</u>, 556 U.S. 938, 942 n.1 (emphasis omitted).  Examination of the proposed Second Amended Complaint reveals that the most Nautilus has mustered as to PSB is a wholly conclusory and legally insufficient assertion that PSB was part of an "association in fact or enterprise" and that PSB "knew through [its] employees/shareholders/officers the general status of the conspiracy."  (ECF Entry No. 131-1 ¶¶106 and 110).  Those allegations do not rise to the level necessary to establish an association-in-fact enterprise.  It is also necessary to note that allegations of an association-in-fact enterprise must show that the various associates "function as a continuous unit." <u>Whelan v. Winchester Prod. Co.</u>, 319 F.3d 225, 229 (5th Cir. 2003); <u>see</u> <u>also</u> <u>Rivera v. AT&T Corp.</u>, 141 F. Supp. 2d 719, 726 (S.D. Tex. 2001).  Nautilus has simply ignored its obligation to plead the required RICO elements and nuances, among them that the Defendants comprised a unit which operated continuously separate and apart from the alleged predicate acts of racketeering activity.

Even accepting the allegations as true, the proposed Second Amended Complaint further fails to sufficiently allege that PSB participated in the alleged fraud.   Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud shall be stated with particularity." <u>Williams v. McKinney</u>, No. 6:06-3465-HFF-WMC, 2008 WL 731124 at \*4 (D.S.C. Mar. 18, 2008). This heightened standard applies to RICO claims in which the alleged predicate acts involve mail or wire fraud. <u>Green Ventures Int'l v. Guttridge</u>, No. 2:10-CV-01709-MBS, 2010 WL 5019363 at \*4 (D.S.C. Dec. 1, 2010); <u>Superior Bank v. Tandem Nat. Mortgage</u>, 197 F.Supp. 2d 298, 326 (D. Md. 2000); <u>*see also*</u> <u>Cayman Exploration Corp. v. United Gas Pipe Line Co.</u>, 873 F.2d 1357, 1362 (10th Cir. 1989) (noting that every court to have considered

the issue has applied Rule 9(b) to predicate acts of fraud in RICO claims). These "heightened pleading standards," serve "to protect defendants from reputational harms and to provide defendants with fair notice of the accusations against them." Giannaris v. Cheng, 219 F.Supp. 2d 687, 694 (D. Md. 2002). The conclusory allegations of the proposed Second Amended Complaint fall far below the particularity standard required by Federal Rule 9(b).

The Court must also review the proposed Second Amended Complaint to determine whether a fraudulent scheme rises to the level of a RICO violation. The first question is whether a pattern exists. See Int'l Data Bank v. Zepkin, 812 F.2d 149, 154-55 (4th Cir. 1987)).This requires examining the scale, duration and number of victims of the scheme alleged, H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238, 109 S.Ct. 2893, 2900 (1989), as well as "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." Bradenburg v. Seidel, 859 F.2d 1179 (4th Cir. 1988), overruled on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996). The proposed Second Amended Complaint fails in this critical inquiry as Nautilus has failed to allege any specific, related predicate acts engaged in by PSB. Additionally, Nautilus has failed to establish continuity. And there is no support for a claim that PSB has acted with the kind of intent required to support a RICO claim.

Murdaugh's actions and Nautilus's voluntary decision to settle the Satterfield claims are, again, entirely independent from anything having to do with PSB. Nautilus made its decision to pay $3.8 million independent of any action of PSB or Westendorf. PSB did nothing to harm Nautilus. To the extent Nautilus asserts the criminal behavior of Russell Laffitte (which was not authorized by PSB) is relevant, the Court should see that assertion for what it really is – an attempt

to manufacture claims where there are none and to invoke RICO's treble damage provisions for leverage against PSB.

The Fourth Circuit Court of Appeals has repeatedly warned that RICO claims should be reserved for extraordinary circumstances where state law does not adequately address the alleged harm.  See GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 551 (4th Cir. 2001) ("RICO treatment is reserved for conduct 'whose scope and persistence pose a special threat to social well-being.'") (quoting Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)). The court has cautioned that it is necessary to "preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity."). Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000).

There is simply no support for a RICO claim against PSB.  Nautilus has not sufficiently pleaded the existence of an association-in-fact enterprise or the predicate acts of fraud involving PSB.  This Court should reject Nautilus's attempt to hold PSB in this case by alleging conduct of Russell Laffitte unrelated to, and temporarily distinct from, Murdaugh's theft of the Satterfield sons' money. Permitting amendment to add the RICO count would be futile and contrary to law.

### 3. The Plaintiff's significant delay in moving to amend is inexcusable.

Nautilus circulated a draft Second Amended Complaint in December 2022, but then waited until July 28, 2028, to file its Motion to Amend and proposed Second Amended Complaint. Nautilus contends that "[t]he new claims relate to the same transaction or occurrence as the existing claims and rely on much the same evidence."  (Mot. to Am. Compl., ECF Entry No. 134 at 3).  A reading of the redline version of the Second Amended Complaint shows this statement to be so far from accurate, it is almost laughable. (ECF Entry No. 134-2). Regardless, Nautilus waited seven months until July 28, 2023, to actually file for the amendment.

When a plaintiff seeks leave to amend its complaint and the new claims are not the result of newly discovered information or facts previously hidden by nonmovants then the request to amend is properly denied.  See Baylor Univ. Med. Ctr. v. Epoch Grp., L.C., 2005 WL 2124126, at *8 (N.D. Tex. 2005) (denying motion to amend because the proposed "amended claims [were] not the result of new information discovered in investigations, recent breach of agreements between the parties, or disclosure of facts previously hidden by nonmovants" and because the facts relied upon for the amended claims were relied upon by the movant to support a different theory in its original complaint).  When, as here, according to Plaintiff's own admission the facts included in the proposed Second Amended Complaint were known to the Plaintiff when the original complaint was filed, a trial court may properly deny leave to amend. See In Re Southmark Corp., 88 F.3d 311, 316 (5th Cir. 1995) (citing Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1098 (5th Cir. 1979), cert denied, 446 U.S. 939 (1980)).

Perplexingly, Nautilus asserts in its Motion that despite its seven month delay, the Defendants will not be prejudiced if amendment is permitted because the Defendants will have "until the end of November, 2023" for discovery on the Second Amended Complaint, which Nautilus boldly describes as "ample time to perform discovery and prepare their defenses to the new claims . . . ."  (Mot. to Am. Compl., ECF Entry No. 134 at 3). This glib statement is entirely disproved by the proposed Second Amended Complaint that adds eight new causes of action spanning 15 years of events that do not involve Nautilus in any way, form, or fashion.  (See ECF Entry No. 134-2).

Nautilus's assertion is also contrary to proper legal analysis.  When a court considers a motion for leave to add a new theory to the complaint, "[a]s a general rule, the risk of substantial prejudice increases with the passage of time." Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of

<u>Hartford</u>, 2007 WL 2592353, at *2 (N.D. Tex. Sept. 10, 2007). Because the passage of time increases the risk of harm, Nautilus cannot obtain the relief it seeks by relying on bare assertions that it will not prejudice defendants. <u>See</u> <u>Baylor Univ. Med. Ctr.</u>, 2005 WL 2124126, at *8 (N.D. Tex. Sept. 1, 2005) (merely stating that a proposed amendment will not cause undue prejudice is not sufficient to explain a failure to timely move for leave to amend).[5]

### 4. Plaintiff's Motion for Leave to Amend should be denied because it will prejudice PSB.

Prejudice to the nonmoving party is well established as sufficient justification for denying a plaintiff's attempt to amend its complaint. <u>See</u> <u>Adbul-Mumit v. Alexandria Hyundai, LLC</u>, 896 F.3d 278, 293 (4th Cir. 2018) (citing <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 510 (4th Cir. 1986). The Fourth Circuit Court of Appeals has also clearly stated that "the discretion of the district court to deny leave to amend increases at later stages of litigation." <u>Moore v. Equitrans, L.P.</u>, 27 F.4th 211, 218 (4th Cir. 2022) (internal quotation mark omitted). The reason for the increased discretion is to ensure the trial courts are vigilant in their prevention of prejudice to nonmoving parties. As the Court has explained, the "further [a] case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." <u>Id.</u> (citing <u>Laber v. Harvey</u>, 438 F.3d 404, 427 (4th Cir. 206).

The United States Court of Appeals for the Fifth Circuit likewise endorses the district courts' discretion in denying motions to amend when they risk prejudice to nonmoving parties. In

---

[5]     Late filing of the Motion is also contrary to Local Rule 7.03 which requires all motions be "promptly filed" and states "[a]ttorneys are expected to file motions immediately after the issues raised thereby are ripe for adjudication." The Motion likewise fails to meet Local Rule 7.04's requirement that a movant support its request for relief. Disregarding that obligation, the Motion to Amend generally cites a few select cases on amendment but without providing any compelling analysis. There are no affidavits or other materials filed in support of the Motion.

Parish v. Frazier, the Court affirmed the district court's finding that a "seven month delay between the filing of the original complaint and the motion for leave to amend could have been avoided by due diligence, as plaintiff could have raised the additional claims in her complaint or at least sought to amend at an earlier time." Parish. v. Frazier, 195 F.3d 761, 763–64 (5th Cir. 1999). Citing Gregory v. Mitchell, 634 F.2d 199, 203 (5th Cir.1981), the Court went on to explain that in such instances it is the plaintiff who "bears the burden of showing that delay was due to oversight, inadvertence or excusable neglect . . . ." Id. Because the defendant in Parish, like in this case, filed a motion for summary judgment, the Court affirmed the district court's determination that "Parish's attempt to broaden the issues would likely require additional discovery and another motion for summary judgment, which would unduly prejudice the defendants and raise concerns about seriatim presentation of facts and issues." Parish, 195 F.3d at 764.

The same reasoning applies in this case. Instead of promptly seeking to amend its complaint, Nautilus waited seven months (from December 2022 to July 2023) before seeking leave to amend its complaint. Then, after two defendants filed for summary judgment, Nautilus presented the Court with a motion to amend and proposed Second Amended Complaint. Permitting Nautilus to expand its case against PSB at this stage would subject PSB to the expense of moving to dismiss the claims and then further discovery in an expanding litigation that should have been initiated months ago. When, as here, allowing a plaintiff to amend its complaint will "delay the litigation or expand the allegations beyond the scope of the initial complaint," it is unfairly prejudicial. See Lover v. District of Columbia, 248 F.R.D. 319, 322 (D.D.C. 2008) (citing Parish v. Frazier, 195 F.3d 761, 763 (5th Cir. 1999)). The Plaintiff has been aware of the facts underlying its new claims yet chose not to pursue amendment. Whether the reason was strategic

or otherwise, PSB will be prejudiced by the Plaintiff's late move to add seven causes of action to the two substantive claims currently pending against PSB.

## CONCLUSION

For the foregoing reasons, PSB respectfully requests the Court deny Plaintiff's Motion for Leave to Amend.

*s/ James W. Clement.*
**G. Trenholm Walker (Fed ID# 4487)**
Direct: (843) 727-2208
Email: Walker@WGLFIRM.com
**Thomas P. Gressette, Jr. (Fed ID# 7261)**
Direct: (843) 727-2249
Email: Gressette@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct: (843) 727-2224
Email: Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
Mail: P.O. Drawer 22167, Charleston, SC 29413
Office: 66 Hasell Street, Charleston, SC 29401
Phone: (843) 727-2200

***ATTORNEYS FOR PALMETTO STATE BANK***

August 11, 2023
Charleston, South Carolina