**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Nautilus Insurance Company,<br><br>　　　　　Plaintiff,<br>v.<br><br>Richard Alexander Murdaugh, Sr.; Cory Fleming, Moss & Kuhn, P.A.; Chad Westendorf; *and* Palmetto State Bank,<br><br>　　　　　Defendants. | C/A No.: 2:22-cv-1307-RMG<br><br>**ANSWER TO SECOND AMENDED COMPLAINT** |

　　　　Defendant Richard Alexander Murdaugh, Sr., hereby answers Plaintiff Nautilus Insurance Company's Second Amended Complaint, filed on August 15, 2023 (ECF No. 154), as follows:

**FOR A FIRST DEFENSE**

　　　　1.　　Defendant admits the allegations of Paragraph 1.

　　　　2.　　Defendant denies that he is now a resident of Colleton County, South Carolina. Defendant otherwise admits the allegations of Paragraph 2.

　　　　3.　　Defendant does not know where Cory Fleming now resides and so denies the allegation that he resides in Beaufort County. Defendant otherwise admits the allegations of Paragraph 3.

　　　　4.　　Defendant admits the allegations of Paragraphs 4 to 7.

　　　　5.　　Defendant denies the allegations of Paragraph 8.

　　　　6.　　There is no Paragraph 9 in the Second Amended Complaint.

　　　　7.　　Defendant admits the allegations of Paragraphs 10 to 12.

　　　　8.　　Defendant admits the allegations of Paragraph 13 insofar as it alleges Westendorf was a Vice President and Palmetto State Bank and that he was appointed as a successor personal

representative for the estate of Ms. Satterfield at least in part because he was employed by Palmetto State Bank.  Defendant is without knowledge of the remaining allegations in Paragraph 13 and therefore denies them.

9. Regarding the allegations of Paragraph 14, Defendant admits Nautilus provided him defense counsel and ultimately paid $3,800,000 to resolve claims against him.  Defendant does not know what Nautilus "believed" and therefore denies those allegations.

10. Defendant denies the allegations of Paragraph 15.  Nautilus was aware of what it calls "the Irregularities" when—and before—it paid the claim at issue in this litigation on April 18, 2019.  Nothing happened in July 2021 that alerted, or could have alerted, Nautilus to any "Irregularities" of which it was not already aware.

11. Defendant admits the allegations of Paragraphs 15(a).

12. Regarding the allegations of Paragraph 15(b), Defendant arranged for Fleming to represent the Satterfield family to bring a claim against him but otherwise denies the allegations in Paragraph 15(b).

13. Regarding the allegations of Paragraph 15(c), Defendant admits he arranged for Westendorf to serve as a successor personal representative of the estate of Ms. Satterfield and that his purpose in doing so was to facilitate theft of the settlement funds.  Defendant otherwise denies the allegations of Paragraph 15(c), and he denies any allegation that any person other than himself had knowledge of his intent to steal the settlement funds.

14. Defendant is without knowledge of the truth of the allegations in Paragraph 15(d) and therefore denies them.

15. Regarding the allegations of Paragraph 15(e), Defendant admits that he communicated with Fleming about the claim before it was settled but denies that is why he was

not a "bona fide insured seeking coverage." He was not a "bona fide insured seeking coverage" because he invented the facts giving rise to the claim. Further, Defendant admits he was cooperative with counsel for the party suing him but denies that makes him co-counsel for the party suing him. Defendant was not, and could not be, counsel for the party suing him and therefore denies that allegation.

16. Defendant admits the allegations of Paragraph 15(f), except that Defendant denies any person other than Defendant had knowledge that Defendant intended to steal the principal disbursement payable to "Forge." Fleming believed only that Defendant was going to convert approximately $118,000 in attorney's fees to his personal use. Further, payment was conditioned on the funds being held in trust until an approval order was signed and filed. The funds were in fact held in MKF's trust account until a judge signed an order approving the settlement. Although that order was never filed, filings are a public record and Nautilus's own lawyer that day advised Nautilus that the order "approved" the settlement and Nautilus closed its file. To the extent Paragraph 15(f) alleges the money was disbursed in violation of Nautilus's instructions, Defendant the allegation because Nautilus agreed its conditions had been satisfied.

17. Regarding the allegations of Paragraph 15(g), Defendant admits Nautilus gave instructions to hold the funds in trust until a court approved the settlement. Defendant has no knowledge of correspondence between Fleming or MKF and Forge Consulting, LLC, and therefore denies allegations regarding such correspondence.

18. Regarding the allegations of Paragraph 15(h), Defendant admits settlement funds were paid from MKF's trust fund to a "Forge" d/b/a account controlled by Defendant. Defendant does not recall the details of the mailing address or what other paperwork may have accompanied the check and therefore denies allegations regarding such details.

19. Defendant lacks knowledge regarding the allegations of Paragraph 15(i) and therefore denies the same.

20. Defendant admits the allegations of Paragraph 15(j), except that he does not recall details of what other paperwork may have accompanied the check and therefore denies allegations regarding such details.

21. Defendant admits the allegations of Paragraph 15(k).

22. Defendant admits the allegations of Paragraph 15(l).

23. Regarding the allegations of Paragraph 15(m), Defendant admits he engaged in theft of money before he stole the Satterfield settlement. Defendant further admits Laffitte served as a personal representative or conservator in other matters unrelated to the Satterfield settlement, in which Defendant stole money. Defendant otherwise denies the allegations of Paragraph 15(m).

24. Defendant denies the allegations of Paragraph 15(n).

25. Defendant does not remember the details that would allow him to trace where the stolen Satterfield settlement money "made its way" and therefore denies the allegations of Paragraph 15(o).

26. Defendant admits he stole the Lloyd's of London settlement in the Satterfield matter but does not understand what Plaintiff means by "same pattern in the flow of settlement funds . . . making their way" and therefore otherwise denies the allegations of Paragraph 15(p).

27. Defendant denies the allegations of Paragraph 15(q).

28. Defendant admits Laffitte was indicted and convicted of financial crimes involving Defendant, but does not know what, precisely, Plaintiff means by "these schemes" and therefore otherwise denies the allegations of Paragraph 15(r).

29.     Defendant admits Fleming pleaded guilty to federal crimes arising from his actions regarding the Satterfield settlement.

30.     Defendant denies the allegations of Paragraph 16.

31.     Defendant admits the allegations of Paragraph 17.

32.     The allegations of Paragraph 18 are editorial comments requiring no response. To the extent a response is required, they are denied.

33.     Defendant admits the allegations of Paragraphs 18(a) and 18(b).

34.     Defendant denies the allegations of Paragraph 18(c). Defendant did admit liability to third parties in Hampton County but denies that somehow "ensured that there could be no challenge to liability." Nautilus could have challenged liability, but it chose not to do so.

35.     Defendant admits the allegations of Paragraph 18(d).

36.     Defendant admits the allegations of Paragraph 18(e) except that he does not know what Plaintiff means by "was abusive toward the Nautilus adjuster" and therefore denies that allegation.

37.     Responding to Paragraph 20, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

38.     Defendant denies the allegations of Paragraph 21. Defendant admits his actions were reprehensible in that he misused vulnerable persons who trusted him. However, it is hyperbole to claim that stealing money from an insurance company is "depravity [] without precedent in Western jurisprudence." Defendant further denies acting in concert with any conspirators for the purpose of causing Nautilus to pay a fraudulent claim. To the extent there was any "conspiracy" it was only an agreement by Fleming to give Defendant a portion of the attorney's fees from the settlement. Fleming had no knowledge that the claim itself was fraudulent.

39.     As to the allegations of Paragraph 22, Defendant admits he made false statements to Nautilus.

40.     Defendant admits the allegations of Paragraphs 22(a), except that he denies diverting funds to anyone other than himself.

41.     Defendant admits the allegations of Paragraph 22(b) and its subparagraph.

42.     Regarding the allegations of Paragraph 22(c), Defendant did state Ms. Satterfield was not on the property at the time of her fall to perform work for Defendant, and he did so to avoid a worker's compensation defense.  He does not recall however why she was there that day over five years ago, and therefore denies the allegations of Paragraph 22(c).

43.     Regarding the allegations of Paragraph 23, Defendant admits that he told counsel appointed by Nautilus for his defense to disburse settlement funds to the personal representative of the plaintiff estate and its lawyer, but otherwise denies the allegations of Paragraph 23. Defendant did not act in concert with any "co-conspirators" for the purpose of causing Nautilus to pay a fraudulent claim.  Persons other than Defendant, including Mr. Westendorf and Mr. Fleming, were unaware Defendant converted to his own use money believed to be disbursed to the Satterfield estate.

44.     Defendant admits the allegations of Paragraph 24.

45.     Paragraph 25 is a conclusion of law for which no answer is required.

46.     To the extent Paragraph 26 asserts allegations to which an answer is required, Defendant is without sufficient knowledge to answer them and therefore denies them.

47.     Responding to Paragraph 27, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

48.     Defendant denies the allegations of Paragraphs 28 to 31.

49. Paragraphs 32 and 33 are conclusions of law for which no answer is required.

50. To the extent Paragraph 34 asserts allegations to which an answer is required, Defendant is without sufficient knowledge to answer them and therefore denies them.

51. Paragraphs 35 to 47 are allegations directed at parties other than Defendant that can only be answered against the parties against whom the allegations are made.

52. Responding to Paragraph 48, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

53. As to the allegations of Paragraph 49, Defendant admits his conduct was "immoral, unethical, oppressive, and/or offensive to public policy." Defendant expresses no opinion regarding the conduct of other persons referred to as "Co-conspirators."

54. Defendant admits Nautilus suffered damages due to Defendant's wrongful conduct, but otherwise denies the allegations of Paragraph 50 to 52. Defendant was not engaged in "trade practices," lawful or unlawful, because lying about the cause of Ms. Satterfield's fall was not "the conduct of any trade or commerce" under South Carolina Code § 39-5-20. Defendant is unaware of any conduct constituting an unlawful trade practice by any persons referred to as "Co-conspirators" that caused harm to Nautilus.

55. The allegations of Paragraphs 53 and 54 are conclusions of law for which no answer is required.

56. Paragraphs 55 to 70 are allegations directed at parties other than Defendant that can only be answered against the parties against whom the allegations are made.

57. Responding to Paragraph 71, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

58. Defendant denies the allegations of Paragraph 72.

7

59. Paragraph 72(a) asserts allegations directed at parties other than Defendant that can only be answered against the parties against whom the allegations are made

60. Defendant denies the allegations of Paragraph 72(b). Although he did direct funds to be sent to his "Forge" account, Fleming and MKF did not know the account was a "fake" d/b/a account controlled by Defendant.

61. The allegations of Paragraphs 73 and 74 are conclusions of law for which no answer is required.

62. Paragraphs 75 to 80 are allegations directed at parties other than Defendant that can only be answered against the parties against whom the allegations are made.

63. Responding to Paragraph 81, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

64. Defendant admits the allegations of Paragraph 82, though he notes Plaintiff earlier alleged the money was sent to Westendorf and "endorsed over" to Fleming and MKF.

65. Defendant believes the allegations of Paragraph 83 are true, but he does not have current knowledge of MKF's trust account and therefore must deny the allegations.

66. Regarding the allegations of Paragraph 84 and its subparagraphs, Defendant admits the settlement agreement was not filed, placed on the record, or signed by all counsel and parties. The allegations of Paragraph 84 otherwise are conclusions of law for which no answer is required.

67. The allegations of Paragraphs 85 and 86 are conclusions of law for which no answer is required.

68. Responding to Paragraph 87, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

69. Defendant admits the allegations of Paragraph 88, though he notes Plaintiff earlier alleged the money was sent to Westendorf and "endorsed over" to Fleming and MKF.

70. Defendant admits the allegations of Paragraphs 89 to 92.

71. Paragraph 93 is a conclusion of law for which no answer is required.

72. Defendant admits the allegations of Paragraph 94.

73. Paragraphs 95 and 96 are conclusions of law for which no answer is required.

74. Responding to Paragraph 97, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

75. Defendant admits the allegations of Paragraph 98 and its subparagraphs, except that he denies the "possibility" of a defense verdict was "removed" by statements he made to third-parties. Defendant's threat to confess liability at trial perhaps might have accomplished that, but not statements to third-parties before settlement.

76. Defendant admits the allegations of Paragraphs 99 and 100.

77. Paragraph 101 is a conclusion of law for which no answer is required.

78. Responding to Paragraph 102, Defendant incorporates herein the responses enumerated above as if alleged and restated in full herein.

79. Paragraphs 103 and 104 are conclusions of law for which no answer is required.

80. Defendant admits the allegations of Paragraph 105.

81. Defendant denies the allegations of Paragraphs 106 and 107. Regarding the subparagraphs of Paragraph 107, Defendant admits he made telephone calls and sent and received mail, and that some of those telephone calls and mailings were in furtherance of his fraud against Nautilus, but denies they constitute a pattern of "racketeering activity." Defendant denies knowing

9

that any loans he received from Palmetto State Bank were from Hannah Plyler's conservatorship account.

82. Defendant admits he, Fleming, and Laffitte have been charged with financial crimes, including crimes related to the Satterfield settlement. Defendant assumes Plaintiff's statement "relating to the scheme described herein" refers to the Satterfield settlement.

83. Paragraphs 109 and 110 are allegations directed at parties other than Defendant that can only be answered against the parties against whom the allegations are made.

84. Defendant denies the allegations of Paragraph 111.

85. Paragraphs 112 to 116 are conclusions of law for which no answer is required.

86. Paragraphs 117 and 133 are allegations directed at parties other than Defendant that can only be answered against the parties against whom the allegations are made.

87. Paragraphs 134 to 135 are conclusions of law for which no answer is required.

**FOR A SECOND DEFENSE**

88. Defendant reasserts all allegations, denials, and defenses set forth herein to the extent they are consistent with this defense.

89. Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted against Defendant as to Second, Fourth, Seventh, Ninth, Tenth, Twelfth, and Fourteenth Causes of Action. The Court therefore should dismiss Plaintiff's claims under those causes pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**FOR A THIRD DEFENSE**

90. Defendant reasserts all allegations, denials, and defenses set forth herein to the extent they are consistent with this defense.

91. Plaintiff's legal claims against Defendant are barred by the applicable statutes of limitations.

92. The statute of limitations for a breach of contract claim is three years. S.C. Code § 15-530(1). Breach of contract claims accrue on the date the injured party either discovered the breach or should have discovered the breach through the exercise of reasonable diligence. *RWE NUKEM Corp. v. ENSR Corp.*, 644 S.E.2d 730, 733 (2007).

93. Plaintiff was aware of Defendant's breach of the contract of insurance even before it paid the Satterfield claim, over three years before claims were first asserted by Plaintiff against Defendant. Plaintiff paid the Satterfield claim despite such awareness because it judged the risk of challenging Defendant's actions to be higher than the cost of settling the claim.

94. The statute of limitations is three years for actions for fraud. S.C. Code § 15-3-530(7). Fraud claims accrue on the date of the discovery of the fraud itself or of the facts that would have led to the knowledge of the fraud if pursued with reasonable diligence, whichever is earlier. *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 386 S.E.2d 798, 799 (S.C. Ct. App. 1989).

95. Plaintiff was aware of facts that would have led to knowledge of Defendant's fraud if pursued with reasonable diligence even before it paid the Satterfield claim, over three years before claims were first asserted by Plaintiff against Defendant. Plaintiff's own files *state* that it suspected fraud before the claim was paid. Plaintiff nonetheless paid the Satterfield claim despite such awareness because it judged the risk of challenging Defendant's actions to be higher than the cost of settling the claim.

96. Regarding Plaintiff's other legal claims against Defendant, South Carolina's statute of limitations is three years. The general rule in South Carolina is that the cause of action accrues at the time the claim arises. *Brown v. Finger*, 124 S.E.2d 781, 786 (S.C. 1962). However, under

the discovery rule, a claim accrues when the injured party knows or by the exercise of reasonable diligence should know that he has a cause of action. *Campus Sweater & Sportswear Co. v. M.B. Kahn Const. Co.*, 515 F. Supp. 64, 77 (D.S.C. 1979).

97. Plaintiff's legal claims arose no later than the date Defendant's fraud caused Plaintiff to part hands with the Satterfield settlement, which occurred on April 18, 2019. Those funds cleared by the end of April 2019, more than three years before claims were first asserted against Defendant. At that time, Plaintiff's funds were in the hands of what Plaintiff alleges was Defendant's co-conspirator and forever lost to Plaintiff.

98. The discovery rule is inapplicable here because Plaintiff was aware, and by exercise of reasonable diligence should have been aware, of its causes of action no later than the date those causes of action arose. Plaintiff's own files *state* that it suspected fraud before the claim was paid. Plaintiff nonetheless paid the Satterfield claim despite such awareness because it judged the risk of challenging Defendant's actions to be higher than the cost of settling the claim.

**FOR A FOURTH DEFENSE**

99. Defendant reasserts all allegations, denials, and defenses set forth herein to the extent they are consistent with this defense.

100. Plaintiff's equitable claims against Defendant are barred by the doctrine of laches.

101. "Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." Emery v. Smith, 361 S.C. 207 (S.C. Ct. App. 2004). "Laches is an equitable doctrine, which arises upon the failure to assert a known right." *Id.* "The party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice." *Id.*

12

102. Plaintiff delayed asserting claims against Defendant. Plaintiff was aware, or should have been aware, of facts placing it on notice of claims against Defendant over three years ago. Plaintiff waited until the statute of limitations had run for all legal claims before asserting any legal or equitable claims.

103. Plaintiff's delay is unreasonable. Plaintiff paid the Satterfield claim despite being aware that it was likely fraudulent because it then judged the risk of challenging Defendant's actions to be higher than the cost of settling the claim. Plaintiff later brought claims against Defendant not because of the discovery of new information regarding the fraudulent nature of the Satterfield claim, but because (1) public revelation of Defendant's many unrelated crimes changed Plaintiff's risk calculus for challenging Defendant's fraud in the Satterfield settlement, and (2) Plaintiff was forced to retain counsel to conduct a privilege review of the Satterfield claims file in response to a federal grand jury subpoena, and in the course of that review counsel for Plaintiff realized Plaintiff could assert claims against Defendant.

104. Plaintiff's delay has prejudiced many parties including Defendant because they had settled claims brought by the Satterfield beneficiaries regarding the subject-matter of this litigation before Plaintiff for the first time asserted contradictory claims here.

[signature block follows]

                    <u>s/Phillip D. Barber</u>
                    Richard A. Harpootlian, Fed. ID No. 1730
                    Phillip D. Barber, Fed. ID No. 12816
                    RICHARD A. HARPOOTLIAN, P.A.
                    1410 Laurel Street (29201)
                    Post Office Box 1090
                    Columbia, South Carolina 29202
                    (803) 252-4848
                    Facsimile (803) 252-4810
                    rah@harpootlianlaw.com
                    pdb@harpootlianlaw.com

                    James M. Griffin, Fed. ID No. 1053
                    Margaret N. Fox, Fed. ID No. 10576
                    GRIFFIN DAVIS, LLC
                    4408 Forest Dr., Suite 300 (29206)
                    P.O. Box 999 (29202)
                    Columbia, South Carolina
                    (803) 744-0800
                    jgriffin@griffindavislaw.com
                    mfox@griffindavislaw.com

                    Attorneys for Richard Alexander Murdaugh

August 28, 2023
Columbia, South Carolina.