# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>     Plaintiff,<br><br> v.<br><br>RICHARD ALEXANDER MURDAUGH, SR., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, and PALMETTO STATE BANK,<br><br>     Defendants. | Case No.: 2:22-cv-1307-RMG<br><br>**JOINT SUBMISSION REGARDING THE STAGING OF DISCOVERY IN THIS MATTER** |

Pursuant to the Court's directives at the August 15, 2023 hearing and the Order entered August 16, 2023 [ECF 155], the Parties were directed to confer and submit a proposal(s) for phased discovery as to the Defendants' liability to Nautilus Insurance Company ("Nautilus") relating to the Satterfield claim. Nautilus and Palmetto State Bank ("PSB") have differing views on whether certain subject matters fall within the initial discovery phase identified by the Court, as set forth below, and the Parties request a brief telephonic status conference with the Court.

## I. Nautilus' Position

### A. Discovery Into Palmetto State Bank's Liability to Nautilus

The Court has directed the Parties to engage in an initial phase of discovery focused on "the liability of the Defendants regarding the payment by Plaintiff of the claim arising out of the death of Gloria Satterfield" before exploring "any alleged liability of Defendants for conduct or actions which preceded the Satterfield payment." ECF No. 155 at 2–3. Nautilus is cognizant of the Court's admonishment that this first phase of discovery be targeted.[1] Nautilus sets forth here

---

[1] Nautilus further recognizes that the bank is a victim of certain of Russell Laffitte's actions in connection with Mr. Murdaugh. But, as to third parties, it is infected by Mr. Laffitte's knowledge and actions. Indeed, the bank has been harmed precisely because it has been exposed

the discovery it seeks generally in this matter regarding PSB's liability to Nautilus, whether in Phase 1 or a later phase as permitted by the Court.

As an initial matter, Nautilus does not seek to impose liability on PSB or Mr. Westendorf for past harms to other victims of the conspiracy between Mr. Murdaugh and Mr. Laffitte; rather, Nautilus seeks to establish through discovery: (i) that Mr. Westendorf is liable to Nautilus for his conduct and representations as personal representative of the Estate of Gloria Satterfield and as a payee on the Nautilus check, as well as through agency for Fleming's conduct (ii) that PSB is vicariously liable for the conduct of Mr. Westendorf,[2] and (iii) that PSB had knowledge regarding frauds committed by Mr. Murdaugh at the time it approved and empowered Mr. Westendorf to serve as a fiduciary that renders it directly liable to foreseeable victims, including Nautilus.

Nautilus has amended its complaint to include claims that PSB is vicariously liable for the conduct of Mr. Westendorf *and* Mr. Laffitte. It further asserts that, because Mr. Laffitte knew of Mr. Murdaugh's schemes while acting as a PSB officer and Mr. Murdaugh's private banker, Mr. Laffitte's knowledge is imputable to the bank (also generally a question of fact for the ultimate factfinder), making PSB directly liable. Accordingly, Nautilus ultimately seeks to demonstrate that the harm suffered by Nautilus was part of a pattern of conduct over a decade of which PSB

---

to vicarious liability for his and Mr. Westendorf's service as fiduciaries, including as to the Satterfields.

[2] PSB contends that Mr. Westendorf was not acting within the scope of his employment in serving as a fiduciary in the Satterfield matter. While this is generally a question of fact to be resolved by the ultimate factfinder, discovery to date has established that Mr. Russell Laffite (acting as an officer of the Bank and Mr. Westendorf's direct superior) approved Mr. Westendorf's service as a fiduciary in the Satterfield matter, knowing what Mr. Laffitte (as a convicted co-conspirator with Mr. Murdaugh) knew about what serving as a fiduciary for Mr. Murdaugh entailed. It is undisputed that Mr. Westendorf used bank premises and instrumentalities while acting as Personal Representative and that his title as Vice President of PSB was included in the application to serve as successor Personal Representative filed in the Probate Court.

was, or absolutely should have been, aware and which it should not have permitted of its officers. *See, e.g.*, Rule 404(b), FRE ("[E]vidence [of other crimes, wrongs, or acts] may be admissible for . . . proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

In this initial phase, Nautilus seeks to discover information including the following:

- At the time the bank approved Mr. Westendorf to serve as a fiduciary in the Satterfield matter at Mr. Murdaugh's request, what was the bank's knowledge regarding the nature of bank personnel's prior service as a fiduciary at Mr. Murdaugh's request?
- At the time the bank approved Mr. Westendorf to serve as a fiduciary in the Satterfield matter at Mr. Murdaugh's request, what was the bank's knowledge of Mr. Murdaugh's desperate financial situation and indebtedness, including as to PSB?
- What was Mr. Laffitte's involvement, as CEO of Palmetto State Bank and Mr. Murdaugh's personal banker, in applying the funds Mr. Murdaugh stole from Nautilus to Mr. Murdaugh's loan balances and any overdrafts at Palmetto State Bank?
- How were Mr. Laffitte's actions in this regard similar to his prior actions in applying money stolen from Murdaugh's clients to his overdrafts and loan balances?
- What was the extent of the bank's actual or imputed knowledge, through Mr. Laffitte or otherwise, with regard to the source of funds it received from Murdaugh's accounts at other banks which were used to pay off Murdaugh's debts under loans opened by Mr. Laffitte on behalf of PSB?
- What efforts, if any, has PSB taken to enforce and ensure compliance with its Conflicts of Interest Policy—including as to the identification of potential conflicts arising out of client relationships, the propriety of service of bank personnel as fiduciaries, and as to the documentation required by PSB's management?
- What was the extent of the bank's actual or imputed knowledge that insurance funds were or would be involved in the settlement of the various cases in which its officers were serving as fiduciaries?

**B.     Relevance of Past Wrongdoing to PSB's Liability to Nautilus' Claims Relating to the Satterfield Payment**

Nautilus is a different flavor of victim than Murdaugh's clients. However, a Ponzi scheme

3

like that undertaken by Mr. Murdaugh will always need new sources of funds, and harm to new victims and even new types of victims is not just foreseeable, it is inevitable.  Once again, PSB's knowledge at the time it approved Mr. Westendorf to serve as a fiduciary at Mr. Murdaugh's request is a crucial element of Nautilus' claims.  Without being permitted to discover it, Nautilus will be prejudiced because it will be unable to demonstrate elements of certain of its claims in response to dispositive motions at the end of Phase I discovery.

And, although there are certain factual differences between the defrauding of Nautilus and the thefts from Murdaugh's other victims, the crucial link between them all is that, in each case, the fraud or theft could not have occurred without the appointment of a fiduciary—which in every case was an executive of Palmetto State Bank who applied for appointment solely on that basis—who would follow Murdaugh's instructions in exchange for a sizeable fee and with the further result of allowing Murdaugh to use the funds to pay of his loans to the benefit of PSB.

PSB is a respected institution in Hampton County, and the service of its officers as fiduciaries lent credibility to Murdaugh's undertakings, meaning less vetting was undertaken by the Probate Court regarding their appointment or the subsequent representations they made to the Probate Court, making it possible to conceal fraud from their victims and the public at large.  [ECF No. 142 at 29;  142-9 at 27:2–21].

In addition to the bank's knowledge of PSB executives' past service as fiduciaries at Murdaugh's request, the detail of that service is itself relevant to Nautilus' pending claims, as past acts of a similar nature are discoverable and are one way of showing that conduct affects the public interest for purposes of the South Carolina Unfair Trade Practices Act. [ECF No. 142 at 28, 29]. The advisory notes to the Federal Rules of Civil Procedure also demonstrate that prior incidents of a similar type are relevant to a party's claims or defenses so long as the discovery is suitably

4

focused:

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. ***The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard.*** Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

Committee Notes on Rules—2000 Amendment to Rule 26, FRCP (emphasis added).

### C.    Proposed Discovery Sought by Nautilus[3]

Subject to the above, Nautilus seeks to take the following depositions relating to the above issues, particularly the bank's knowledge:

- Russell Laffitte
- Charlie Laffitte
- Norris Laffitte
- H. Spann Laffitte
- H. Lucius Laffitte

Nautilus may seek the deposition of Jon Peters, another employee of PSB. Nautilus also intends to depose Cory Fleming about his relationship with Murdaugh and Russell Laffite, as well as his communications with Chad Westendorf relating to the Satterfield claim, and to depose Alex Murdaugh.

---

[3] Nautilus seeks to illustrate the scope and nature of the issues it would pursue in the course of discovery of this matter to the extent permitted by the Court. Nautilus does not intend this list to be exhaustive.

In addition, Nautilus has sought or intends to seek production of additional materials from PSB, including:

- Bank records demonstrating PSB personnel's involvement in distributing the funds Murdaugh stole from Nautilus between his various accounts and loans at PSB, including the identity of such personnel and their knowledge of Murdaugh's usual deposit patterns;

- The terms of the indemnity and joint defense agreement between PSB and Chad Westendorf identified in the deposition of Palmetto State Bank on June 30, 2023, which is relevant to rebut any contention that Mr. Westendorf was not acting within the scope of his employment at PSB when he served as a fiduciary in the Satterfield matter by, *inter alia*, demonstrating the extent to which PSB and Westendorf believe their interests align as to Nautilus;

- Records indicating the extent of the bank's knowledge of Mr. Murdaugh's spiraling debt in the years leading up to the defrauding of Nautilus, including meeting minutes, which are relevant to Nautilus' allegation that PSB "repeatedly ignored serious red flags that, taken together, indicated a pattern of illegal conduct and increasing financial distress that should have prompted action by [PSB]." [ECF 154 ¶ 40];

- Policies and documented procedures in place in 2019 relating to:
    - holding periods for deposits into Murdaugh's PSB accounts, including any overrides to general policies which would apply to any of Murdaugh's accounts, as well as documentation evidencing the person(s) who authorized any such activity;
    - lending money and issuing loans, including limitations on lending, controls, authorization levels, collateral requirements, and account monitoring;
    - supervision of bank personnel serving as fiduciaries;
    - establishing and/or handling of accounts related to deceased, such as Gloria Satterfield;
    - negotiating checks made payable to PSB such as those by Murdaugh in June 2019;

- The means, methods, and materials used to train the Bank's employees, including as to endorsements, trust functions, and fiduciary matters;

- Documentation related to compliance with the Bank Secrecy Act ("BSA"), including documentation of SARs and other reports or alerts related to Murdaugh's accounts or loans from 2018 and 2019;

- Any relevant video surveillance, phone logs or texts, and additional e-mails that may exist from 2018 onward relating to Murdaugh;

- Further information and/or documentation regarding the handling of Gloria Satterfield's account after her death, including the deposit of a check from the Murdaughs to Satterfield being deposited into Satterfield's PSB account the next business day after her fall, and the withdrawal of her remaining balance by someone other than Westendorf, at a time when Westendorf was serving as PR of her Estate.

As part of its overall claims against Defendants, Nautilus also would seek additional third-party discovery, including, but not limited to, records and exhibits relating to Mr. Murdaugh's accounts at Bank of America, Mr. Laffitte's ODC hearing, and any relevant records held by Mr. Laffitte himself, in the possession of his attorneys, or which have otherwise been produced to third parties and can be obtained and copied. Nautilus may also issue FOIAs or subpoenas to certain third parties, including government or regulatory entities, to the extent that PSB objects to producing certain materials it contends are protected (*e.g.*, related to BSA or otherwise). Finally, Nautilus also anticipates that experts may be named in this matter and that expert discovery, including depositions, will be necessary once such experts are identified. The timing of the expert discovery will depend on the phasing of discovery.

II.     **Palmetto State Bank's Position**

A.  **The Court has already rejected Nautilus' attempt to improperly expand this case through a fishing expedition of discovery into unrelated matters.**

On August 15, 2023, this Court convened a hearing to address the "blizzard of filings" that had stalled this case. Among those filings were PSB's pleas that the Court protect PSB from the expansive, overly burdensome, and non-proportional discovery the Plaintiff was demanding. Opening the hearing, the Court succinctly stated its intent: "[W]e're going to organize this case in a way that's logical and coherent and not chaotic." Tr. of Aug. 15, 2023, Mot. Hr'g, attached as Exhibit 1, at 4:22-24. His Honor then clearly and specifically defined the permissible scope of discovery for what the Court referred to as the "threshold question" in this case:

7

> There's a threshold question. And this primarily focuses on the potential liability of Palmetto State Bank; that is, did the bank do anything in the Satterfield matter to which it is legally culpable? And if it didn't, all that other stuff about connected to Laffitte and Murdaugh becomes an academic question. So my first effort is going to be doing **discovery focused on the issue is there any basis for Palmetto State Bank's liability**? Okay? **Regarding Satterfield**. And **we're going to focus on Satterfield**.

Ex. 1 at 6:12-21 (double emphasis added). This initial discovery, the Court further explained, is to be limited and must be focused "to figure out what in fact -- you know, what can the plaintiff actually establish?" Ex. 1 at 7:13-14. Judge Gergel went on to rule that plaintiff's discovery is ***not*** to go "beyond the Satterfield scheme." Ex. 1 at 9:1-2.

His Honor then explained that if this initial, limited discovery shows that "Palmetto State Bank and/or Westendorf didn't do anything wrong regarding having no civil liability, then the fact that there were other frauds committed by other persons who had a tie to Palmetto State Bank then becomes, in my view, a legal irrelevance." Ex. 1 at 9:2-7. "So," the Court summarized, "we're going to control, we're going to narrow in and focus the initial round of litigation and discovery on those issues." Ex. 1 at 9:8-10.

**B. Despite the Court's clear rulings, the foregoing proposal by Nautilus boldly seeks expansive and burdensome discovery far beyond the limits already set by this Court.**

In the foregoing discussion of its proposed discovery Nautilus essentially asks this Court to disregard its previous rulings and allow Nautilus to initiate a sweeping discovery into Palmetto State Bank's operations going back over 12 years to at least 2011. Instead of abiding by the Court's instruction, Section A and Section B of the foregoing are a request that this Court expand discovery of this initial phase because, "Nautilus seeks to demonstrate that the harm to Nautilus was part of a pattern of conduct over a decade of which PSB was, or absolutely should have been, aware and which should not have permitted of its officers." The Court should reject the proposal and force

Nautilus to limit its discovery to the "threshold question" of whether PSB did "anything in the Satterfield matter to which it is legally culpable." Ex. 1 at 6:12-21.

### C. The Court should limit the proposed discovery described by Nautilus.

Section C of the Nautilus proposal discusses depositions. Subject to limitation on scope as to the Satterfield matter only, PSB does not object to Nautilus's request to depose Russell Laffitte and Charles Laffitte. Both gentlemen spoke to Mr. Westendorf about his request to serve as personal representative. That service was unrelated to Westendorf's employment; nevertheless, properly limited depositions of Russell Laffitte and Charles Laffitte would be reasonable. However, it is absolutely unnecessary, overly burdensome, and not proportional to require three PSB board members (Norris Laffitte, H. Spann Laffitte, and H. Lucius Laffitte) to appear for depositions. Nothing in the record of this case shows these individuals knew anything at all about the Satterfield claims or the decision by Nautilus to make its payment. These depositions should not be allowed in this initial stage of discovery.

Section C also includes six bullet points with subparts that describe topics or discovery requests that Nautilus intends to pursue. PSB asks this Court to deny this proposed discovery because materials that Nautilus seeks are all clearly beyond the scope of the initial phase of discovery established by the Court in the August 15, 2023, hearing. This is not discovery about the "threshold question" of whether PSB did "anything in the Satterfield matter to which it is legally culpable." Nautilus wants video surveillance and bank records that by law cannot be disclosed, and it wants records of every single PSB employee that ever participated in any transaction for Alex Murdaugh.

### D. The Court's plan for a "Stage One" discovery period limited to "threshold liability" on a "pretty tight schedule" remains appropriate.

PSB further notes that, during the hearing on August 15, 202, the Court remarked, "Stage

9

One has got to be threshold liability. And if there is not threshold liability, Laffitte and Murdaugh are irrelevant players." Ex. 1 at 22:1-3. On the topic of discovery in "Stage One," the Court added, "And I would put you on a pretty tight schedule for doing it." Ex. 1 at 22:23-24. Noting that some of the witnesses that Nautilus will want to depose may not be "immediately available," Ex. 1 at 22:24-25, the Court stated, "Mr. Rannik, I want to help you with this. I'm glad to issue orders . . . directing these prisoners, for instance, to be made available." Ex. 1 at 23:3-7. In the thirty eight days that have passed since the hearing, Nautilus has not taken the Court up on its offer of assistance. It has noticed but not taken the deposition of Russell Laffitte, which the Court stated it will limit to "the issues related to the Satterfield case." Ex. 1 at 10:9-10.

PSB believes that the "pretty tight" schedule envisioned by the Court remains appropriate for this case, which Nautilus filed in April of 2022. Following the August hearing in this case, PSB proposed a schedule for Stage One that would cut off discovery on November 1, 2023, and allow the Defendants until November 15, 2023, to file dispositive motions. In an effort to compromise, PSB revised its proposal to include a discovery cut-off deadline of December 1, 2023, and dispositive motions deadline of December 17, 2023. PSB understands that its co-Defendants are agreeable to this revised proposal and that Nautilus has taken it under consideration.

## II.     **Joint Statement as to Scheduling Order**

The Parties request a telephonic status conference with the Court regarding the above, after which the Parties will likely be able to agree on a timeline for the authorized discovery.

                                                    **Respectfully submitted:**[4]

This 22nd day of September, 2023  
Charleston, South Carolina

/s/ *Jaan Rannik*  
EPTING & RANNIK, LLC  
Jaan G. Rannik (Fed I.D. No. 12621)  
Clinton T. Magill (Fed I.D. No. 12459)  
46A State Street  
Charleston, SC 29401  
P: (843) 377-1871  
F: (843) 377-1310  
jgr@epting-law.com  
ctm@epting-law.com  
COUNSEL FOR PLAINTIFF NAUTILUS INSURANCE COMPANY

/s/ *James W. Clement*  
WALKER GRESSETTE & LINTON, LLC  
Thomas P. Gressette, Jr. (Fed ID# 7261)  
G. Trenholm Walker (Fed ID# 4487)  
James W. Clement (Federal ID #12720)  
66 Hasell Street, Charleston, SC 29401  
P.O. Drawer 22167, Charleston, SC  
P: (843) 727-2200  
Gressette@WGLFIRM.com  
Walker@WGLFIRM.com  
Clement@WGLFIRM.com  
COUNSEL FOR DEFENDANT PALMETTO STATE BANK

/s/ *Christy Ford Allen*  
WILLS MASSALON & ALLEN LLC  
John A. Massalon (Federal ID #5227)  
Christy Ford Allen (Federal ID #7549)  
Post Office Box 859  
Charleston, South Carolina 29402  
P: (843) 727-1144  
jmassalon@wmalawfirm.net  
callen@wmalawfirm.net  
COUNSEL FOR DEFENDANT CHAD WESTENDORF

/s/ *Maryrose P. Williamson*  
HOOD LAW FIRM, LLC  
Robert H. Hood, Jr. (Fed I.D. 6998)  
Maryrose P. Williamson (Fed I.D. 12802)  
172 Meeting Street  
P.O. Box 1508  
Charleston, SC 29402  
P: (843) 577-4435  
F: (843) 722-1630  
Bobbyjr.hood@hoodlaw.com  
Maryrose.williamson@hoodlaw.com  
COUNSEL FOR DEFENDANT MOSS & KUHN, P.A.

---

[4] This filing is being jointly submitted by the undersigned, but the fact of this joint submission does not constitute the adoption by any party of any other party's position.

11