1                    UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF SOUTH CAROLINA
2                       CHARLESTON DIVISION

3
                  DEPOSITION OF CHAD WESTENDORF
4

5        NAUTILUS INSURANCE COMPANY,

6                       Plaintiff,

7          vs.               CASE NO. 2:22-cv-1307-RMG

8        RICHARD ALEXANDER MURDAUGH, SR., CORY FLEMING,
         MOSS & KUHN, P.A., CHAD WESTENDORF, and
9        PALMETTO STATE BANK,

10                      Defendants.
         _____
11

12       DEPONENT:   CHAD WESTENDORF

13
         DATE:        JUNE 30, 2023
14

15       TIME:        1:57 P.M.

16
         LOCATION:    WALKER GRESSETTE FREEMAN & LINTON
17                     CHARLESTON, SC

18
         REPORTED BY: RUTH L. MOTT, RPR, CRR
19                     CLARK BOLEN
                       P.O. BOX 73129
20                     CHARLESTON, SC 29422
                       843-762-6294
21                     WWW.CLARKBOLEN.COM

22

23

24

25

```
 1      A P P E A R A N C E S

 2

        ON BEHALF OF PLAINTIFF:
 3
                EPTING & RANNIK
 4              BY:  JAAN G. RANNIK
                BY:  CLINTON MAGILL
 5              46A State Street
                Charleston, SC 29401
 6              jgr@epting-law.com
                ctm@epting-law.com
 7
        ON BEHALF OF CORY FLEMING (BY ZOOM):
 8
                PENDARVIS LAW OFFICES
 9              BY:  THOMAS A. PENDARVIS
                710 Boundary Street
10              Suite A-1
                Beaufort, SC 29902
11              thomas@pendarvislaw.com

12      ON BEHALF OF MOSS & KUHN, PA (BY ZOOM):

13              HOOD LAW FIRM, LLC
                BY:  ROBERT H. HOOD, JR.
14              172 Meeting Street
                Charleston, SC 29401
15              bobbyjr.hood@hoodlaw.com

16      ON BEHALF OF CHAD WESTENDORF:

17              WILLS MASSALON & ALLEN
                BY:  CHRISTY FORD ALLEN
18              97 Broad Street
                Charleston, SC 29401
19              callen@wmalawfirm.net

20      ON BEHALF OF PALMETTO STATE BANK:

21              WALKER GRESSETTE FREEMAN & LINTON
                BY:  THOMAS P. GRESSETTE, JR.
22              BY:  JAMES W. CLEMENT
                66 Hasell Street
23              Charleston, SC 29401
                gressette@wglfirm.com
24              clement@wglfirm.com

25      ALSO PRESENT:  JONATHAN RALEY
```

Clark Bolen, Inc.

```
1                        I N D E X

2

3    WITNESS                                    PAGE

4    CHAD WESTENDORF

5       BY MR. RANNIK                              4
        CERTIFICATE OF REPORTER                   31
6       DEPONENT CORRECTION SHEET                 32

7

8             CHAD WESTENDORF - EXHIBITS

9    EXHIBIT          DESCRIPTION               PAGE

10   EXHIBIT NO. 01  2/22/22 DEPOSITION AND       6
                     EXHIBITS
11
     EXHIBIT NO. 02  APPLICATION FOR SUCCESSOR   12
12                   PERSONAL REPRESENTATIVE

13   EXHIBIT NO. 03  1/18/19 BANK STATEMENT      18

14   EXHIBIT NO. 04  TRANSFER RECORD             19

15   EXHIBIT NO. 05  EXCEPTION SHEET             20

16   EXHIBIT NO. 06  ENVIRONMENTAL CHECKLIST     22

17   EXHIBIT NO. 07  DOCUMENTS RELATING TO       25
                     SETTLEMENT OF SATTERFIELD
18                   CASE

19

20

21                        - - -

22

23

24

25
```

1                    CHAD WESTENDORF,

2      being first duly sworn, testified as follows:

3                       EXAMINATION

4      BY MR. RANNIK:

5           Q.   Good afternoon, Mr. Westendorf.  We've

6      chatted a little bit today, but my name's Jaan

7      Rannik.  I represent Nautilus Insurance Company

8      in this case.

9                I understand you've been deposed before,

10     correct?

11          A.   That is correct.

12          Q.   Just the one time?

13          A.   Yes, sir.

14          Q.   Okay.  Let me just quickly go over the

15     rules of the deposition.  I know you heard them

16     this morning.

17                But if you need a break at any time, let

18     me know, and we'll take one.  I don't think this

19     is going to be very long.  If you don't

20     understand a question that I ask, please let me

21     know that, and I will rephrase it.  If you have

22     any doubts about what I'm asking, direct that

23     question to me.  Because if you answer a

24     question, I'm going to assume you've understood

25     it; is that fair?

Deposition of Chad Westendorf                                                    5

```
1              A.  Yes, sir.

2              Q.  You may hear your attorney object to a

3    question.  You still have to answer the question

4    unless you're instructed not to.  Please --

5    you're already doing a great job of this, giving

6    verbal answers, yeses and nos, as opposed to head

7    nods and head shakes.  The court reporter will

8    thank you.  And let's make sure that we speak one

9    at a time, also, to hopefully make her life a

10   little bit easier.

11              Now, Mr. Westendorf, I want to just very

12   briefly ask you about the previous deposition

13   that you've given relating to your service as

14   personal representative for the Estate of Gloria

15   Satterfield.

16              That testimony was under oath, right?

17              A.  Yes, sir.

18              Q.  And you told the truth?

19              A.  Yes, sir.

20              Q.  And you had the opportunity to review

21   the transcript after you testified?

22              A.  Yes, sir.

23              Q.  And correct any errors?

24              A.  Yes, sir.

25              Q.  Did you correct any errors?  Were there
```

1        any?

2              A.  I made one correction in there.

3              Q.  Okay.  What I'd like to do -- and I

4        think we can probably save an awful lot of

5        time -- is mark as Exhibit 1 a copy of that

6        transcript and the exhibits to it.

7                     (Exhibit No. 01 marked for

8        identification.)

9              Q.  I'm just going to ask you -- well, let

10       me represent to you that this is your testimony

11       in that prior deposition.  Will you just have a

12       quick look at it and tell me if you agree.

13             A.  I mean, it matches up with the number of

14       pages and everything.  I mean, it looks like it's

15       it.  Without reading it, I mean --

16             Q.  Of course.

17                   MS. ALLEN:  Mr. Westendorf just

18       mentioned that he made one correction.  Is that

19       document in this one?

20                   MR. RANNIK:  And actually, it's

21       not, no.  I didn't have the errata page.  And so

22       we will need to, of course, make a note on the

23       record here that this is not the final transcript

24       because there's been a correction.

25                   MS. ALLEN:  Okay.  And can I

1    supplement the exhibit with the errata page?

2                    MR. RANNIK:  Yes, please.

3                    MS. ALLEN:  Okay.  I'll do that

4    after the deposition.  Thank you.

5         Q.  Mr. Westendorf, am I right that you

6    stand by the testimony you gave in that

7    deposition as you sit here today?

8         A.  Yes, sir.

9         Q.  And if I asked you the same questions,

10   I'd probably get the same information?

11        A.  Yes, sir.

12        Q.  What did you do to prepare for today's

13   deposition?

14        A.  Just consulted with Christy.

15        Q.  Didn't talk to anybody else?

16        A.  No, sir.

17        Q.  Did you review any documents?

18        A.  I looked back over my deposition.

19        Q.  I want to ask you some questions about

20   serving as a PR.

21             Based on what you know today, would you

22   agree that someone who serves as a conservator or

23   a PR has a responsibility to the person or the

24   estate that they're serving for?

25        A.  As of today, yes, sir.

Deposition of Chad Westendorf                                                                8

1          Q.  And you'd agree that it's wrong for

2    someone serving as a PR to loan money to

3    themselves from the money they're supposed to be

4    safeguarding, correct?

5          A.  I would assume so, yes.

6          Q.  And it would be wrong, of course, to

7    steal money from those accounts?

8          A.  Of course.

9          Q.  It's wrong to withhold money from the

10   person you're serving for when they're entitled

11   to that money?

12         A.  That's correct.

13         Q.  Is it wrong to use the money from one

14   person you're serving as PR for to pay back money

15   that was stolen from another person you were

16   serving as PR for?

17         A.  Yes, sir.

18         Q.  Wrong to misrepresent to the court that

19   someone who's under 18 -- sorry.  Strike that.

20             Is it wrong to misrepresent to the court

21   that someone is under the age of 18 and,

22   therefore, needs a conservator account when you

23   know that they're over the age of 18?

24             MS. ALLEN:  Object to the form.

25         A.  Could you just say that one more time,

1    please.

2         Q.  Of course.  Would it be wrong to tell a

3    court that someone is under 18 years old and,

4    therefore, they need a conservator account when

5    you know that they're actually over the age of

6    18?

7              MS. ALLEN:  Same objection.

8         A.  Yes.

9         Q.  Would it be wrong to represent to the

10   court that someone lives in Hampton County when,

11   in fact, you know they live in Columbia?

12              MS. ALLEN:  Object to the form.

13        A.  Say that one more time.

14        Q.  Sure.  Would it be wrong to, on a

15   conservatorship or PR application, represent to

16   the court that the person or the estate is in

17   Hampton, South Carolina, when, in fact, you know

18   that they're in Columbus, South Carolina?

19        A.  Yes, sir, that would be wrong.

20              MS. ALLEN:  Same objection.

21        Q.  Would it be wrong to do all of these

22   things that we've just talked about even if Alex

23   Murdaugh told you to do it?

24        A.  Yes.

25        Q.  Let's say that someone knew about all

Deposition of Chad Westendorf                                          10

1      the instances of wrongdoing.  Let's say they

2      happened and someone knew about it.  And let's

3      say that it had happened every single time Alex

4      Murdaugh had asked someone to serve as a PR.

5              In that situation, do you think it's

6      reasonable to expect that something -- more

7      wrongdoing would occur if you serve as a PR for

8      Alex Murdaugh in the future?

9                  MS. ALLEN:  Object to the form.

10                 MR. GRESSETTE:  Objection.

11         A.  You could assume that, yes.

12         Q.  Are you aware that Mr. Laffitte has been

13     convicted of much of the things that we just

14     described in federal court?

15         A.  Yes, sir.

16         Q.  And would you agree that Mr. Laffitte

17     should have known that serving as a PR for

18     Mr. Murdaugh would lead to more wrongdoing?

19                 MS. ALLEN:  Object to the form.

20         A.  I don't know.  I can't answer that.

21         Q.   If Mr. Laffitte's work as a conservator

22     or a PR for Mr. Murdaugh had involved wrongdoing

23     every time, you would expect by 2018 that

24     Mr. Laffitte would have understood that was the

25     gig, right?

1           A.  I would assume.

2           Q.  When you were asked to serve as PR for

3    the Estate of Gloria Satterfield, you ran that

4    request by Mr. -- by Russell Laffitte, correct?

5           A.  That is correct.

6           Q.  Did he tell you anything about any of

7    the wrongdoing associated with serving as a

8    fiduciary for Alex Murdaugh when you asked?

9                MR. GRESSETTE:  Objection.

10          A.  No, sir.

11          Q.  Did he tell you that Murdaugh had

12   substantial overdrafts?

13          A.  No, sir.

14          Q.  Did Mr. Laffitte tell you that when he

15   was a vice president like you were, he had caused

16   PSB to issue illegal loans to Alex Murdaugh from

17   a conservatorship account?

18                MS. ALLEN:  Objection to the form.

19                MR. GRESSETTE:  Objection.

20          A.  He did not.

21          Q.  Did he tell you that funds had been

22   disbursed in prior conservatorships in violation

23   of the disbursement statements approved by the

24   court?

25          A.  He did not.

1          Q.  He should have informed you of these

2     things, though, right?

3               MR. GRESSETTE:  Objection.

4          A.  I would hope so.

5          Q.  You would have liked to know?

6          A.  Yes, sir.

7          Q.  If you had known these things in 2018,

8     would you have agreed to serve as a PR for the

9     Estate of Gloria Satterfield?

10         A.  No, sir.

11         Q.  Would you have signed the application

12    for the appointment to be made a PR when Murdaugh

13    brought it to your office?

14         A.  If I knew those things, no, sir, I

15    wouldn't have.

16         Q.  Let me show you that or a document and

17    ask if you recognize it.

18              (Exhibit No. 02 marked for

19    identification.)

20         Q.  Do you recognize this document?

21         A.  Yes, sir.

22         Q.  And what is this document?

23         A.  Application for successor personal

24    representative.

25         Q.  Now, can you please read for us --

1       there's an X through one of the boxes on the

2       first page at the bottom there.  It says:

3       "Priority for appointment of the successor

4       personal representative is, other, describe."

5               Do you see where I'm talking about?

6       A.  Yes, sir.

7       Q.  What does that say?

8       A.  "Current personal representative desires

9       bank vice president to serve as personal

10      representative.  Sole other heir concurs."

11      Q.  Okay.  And then if I can get you to turn

12      to the next page.  At the top right, there's a

13      verification.

14              Is that your signature?

15      A.  That is.

16      Q.  What is the address that's provided

17      there?

18      A.  601 First Street West -- First Street --

19      excuse me -- Hampton, South Carolina 29924.

20      Q.  And what's at that bank?

21      A.  The bank, Palmetto State Bank.

22      Q.  The telephone number, what telephone

23      number is that?

24      A.  (803) 943-2671.

25      Q.  And is that a bank phone number?

```
 1              A.  Yes, sir.  That's the correction I made

 2        on the deposition, if I may say that.

 3              Q.  You may.

 4              A.  I did not type that and that's what I

 5        told -- that it was already there.

 6              Q.  As part of serving as PR for the Estate

 7        of Gloria Satterfield, you endorsed a check from

 8        Nautilus, correct?

 9              A.  Yes, sir.

10              Q.  I think you were at your office when you

11        did that?

12              A.  That's correct.

13              Q.  Did you receive a letter with that

14        check?

15              A.  Yes, sir.

16              Q.  And did that letter say these funds are

17        to be held in trust until an order approving the

18        settlement has been filed?

19              A.  Yes, sir.

20              Q.  If you had known of Alex Murdaugh's

21        wrongdoing in the past, would you have

22        endorsed -- well, let me ask you this.  I'm

23        sorry.  Did you do anything to ensure that an

24        order approving the settlement was filed before

25        the funds were distributed?
```

1          A.  No, sir.

2          Q.  Because you trusted Cory Fleming, right?

3          A.  That's correct.

4          Q.  If you had known about Alex Murdaugh's

5    prior wrongdoing and you were in this position,

6    you probably would have checked more things,

7    right?

8          A.  Correct.

9          Q.  So let me ask you a little bit about

10   your employment or your work now with PSB.

11              So Mr. Malinowski told us about it and

12   that you're now an independent contractor.  And

13   it sounded to me like you do sort of general

14   consulting work for the bank.

15         A.  Yes, sir.

16         Q.  Why the change from your prior role?

17         A.  I was unable to be bonded under the

18   bank's bond.

19         Q.  I see.  Okay.  Okay.

20              And that was as a result of the mess

21   with the Estate of Gloria Satterfield?

22         A.  I assume so, yes, sir.

23         Q.  And the bond that you were under, this

24   is the fidelity bond for the bank?

25         A.  I would assume so.  I don't know.

1          Q.  Now, you heard us also talk a little bit

2    earlier about the PR fee that you were paid?

3          A.  Yes, sir.

4          Q.  And that was $30,000?

5          A.  That's correct.

6          Q.  And you refunded that to the

7    Satterfields or you paid that to the Bland

8    Richter firm?

9          A.  Yes, sir, immediately.

10         Q.  And that was -- did that come out of

11   your Palmetto State Bank account?

12         A.  I borrowed the money.

13         Q.  Okay.

14         A.  I have a loan right now I'm paying back

15   for it.

16         Q.  Okay.  With Palmetto State Bank?

17         A.  Yes, sir.

18         Q.  When you were first contacted about

19   serving as the PR for the Estate of Gloria

20   Satterfield, I think you said it was right before

21   Thanksgiving and you were out of the office; is

22   that right?

23         A.  Yes, sir.

24         Q.  So it was a call you got on your cell

25   phone?

1              A.   That is correct.

2              Q.   Is that a personal cell phone or one

3       that's provided to you by the bank?

4              A.   Personal.

5              Q.   Does the bank ever reimburse you for

6       cell phone expenses?

7              A.   No, sir.

8              Q.   It was a number that you had previously

9       before you worked at the bank?

10             A.   No, sir.

11             Q.   But it had nothing to do -- it was just

12      your private phone?

13             A.   It's my private phone, yes, sir.

14             Q.   Okay.  Were you reimbursed for any

15      expenses incurred acting as the PR for the Estate

16      of Gloria Satterfield?

17             A.   From who?

18             Q.   From the bank.

19             A.   They've been paying my legal fees.

20             Q.   When you were the PR for the estate, did

21      the probate court require any kind of bond to be

22      posted?

23             A.   Not that I'm aware.

24             Q.   Did you know that Gloria Satterfield had

25      a bank account, or bank accounts, at PSB when she

1       died?

2              A.  I didn't.

3              Q.  You did?

4              A.  I did not.

5              Q.  Did not.  Okay.

6              A.  Excuse me.

7              Q.  Because those were not included as part

8       of the estate, right?

9              A.  I guess, yes.

10             Q.  And the funds didn't show up on the

11      final accounting for the estate?

12             A.  That's right.

13             Q.  I'd like to show you just a couple of

14      documents.

15                    (Exhibit No. 03 marked for

16      identification.)

17             Q.  This is a document, I'll represent to

18      you, that was produced in this litigation.  Can

19      you tell from looking at it what this is?

20             A.  Looks like a checking account for

21      Ms. Gloria Satterfield.

22             Q.  And it shows that the balance is getting

23      zeroed out in January of 2019?

24             A.  That's right.

25             Q.  In January of 2019 you were already

1    serving as the PR for the estate; is that

2    correct?

3         A.  That is correct.

4         Q.  If you look at the second page, which

5    you are, at the signature line there, what does

6    that say?

7         A.  It looks like it says Michael

8    Satterfield, personal rep.

9         Q.  Okay.  But at this time, he was not the

10   personal rep; is that correct?

11        A.  Not by my documents, no.

12        Q.  Okay.  I'd like to show you another

13   document produced in this case.

14                  (Exhibit No. 04 marked for

15   identification.)

16        Q.  And ask you if you can tell what this

17   is.  I know it's not a lot to go on.

18        A.  It looks like it's where I transferred

19   money from one account of Alec's to another per

20   Russell's request.

21        Q.  And I was going to ask what your

22   involvement was.  So you would have been the one

23   who effected the transfer?

24        A.  Yes, sir.

25        Q.  Did that happen often?

1          A.  If Russell wasn't at the office, I would

2     get a call from him and say, would you move that

3     from an account, line of credit, whatever, to a

4     checking account.

5          Q.  Okay.  Got it.

6               Do you happen to -- I don't know why you

7     would, but do you happen to recognize what those

8     two account numbers are on the left-hand side

9     there?

10         A.  Not really.

11         Q.  Yeah, no worries.

12              (Exhibit No. 05 marked for

13     identification.)

14              MS. ALLEN:  Can I take a second to

15     look at this one?  Because I haven't seen it.

16              MR. RANNIK:  Of course, you can.

17     And, Christy, let me give you one more that's

18     coming.

19              MS. ALLEN:  Okay.  Let's step out

20     for a second.

21              (Brief recess.)

22         Q.  So we're looking at Exhibit 5.  What is

23     this document?

24         A.  This is an exception sheet.  This is

25     done on loans when -- by the loan officer when

```
1        they're done.  And if there was any exceptions to
2        the loan -- which on this one, you can see it's
3        got a Y by credit score.  So obviously, that
4        tells me the credit score was under 600.  So
5        there was an exception there.
6             Q.  And sorry.  So we're clear, you're
7        talking about the beacon score being less than
8        600?
9             A.  Correct.
10            Q.  Beacon score is a credit score?
11            A.  Yes, sir.
12                And then on line -- Code 30 would have
13       been loan terms outside guidelines.  And that was
14       checked yes.  So obviously, the term of that
15       loan, submitted by Russell as the loan officer,
16       and it just comes to another loan officer to sign
17       as a dual.
18            Q.  Got it.  Got it.
19                Was there any discussion with
20       Mr. Laffitte about this loan --
21            A.  No, sir.
22            Q.  -- at this time?
23                Okay.  There's also -- if I can get you
24       to look at Code No. 22 on there.
25            A.  Yes, sir.
```

1          Q.  It says:  "Debt service coverage ratio

2     less than 1.2 percent."

3          What does that mean?

4          A.  Debt service coverage ratio is what we

5     use like our commercial loans to -- debt to

6     income, basically.  And obviously, it was less

7     than that.

8          Q.  Got it.

9               MR. RANNIK:  All right.  If we

10    could mark this as Exhibit 6, please.

11               (Exhibit No. 06 marked for

12    identification.)

13          Q.  Mr. Westendorf, same question, what's

14    this document?

15          A.  Environmental checklist is something

16    that's done on our renewals of our real estate

17    loans and basically says that it's an improved

18    property.  And if there is any environmental

19    problems, you would check yes down there.  It's

20    not my writing, though, so...

21          Q.  Gotcha.

22          So you're listed as the inspecting

23    officer --

24               (Reporter clarification.)

25          Q.  So you're listed as the inspecting

1    officer, but you didn't fill out this form?

2         A.  I did not.

3         Q.  Okay.

4         A.  But all the information looks right.

5         Q.  Okay.  Mr. Westendorf, another thing

6    that you heard Mr. Malinowski testify to is that

7    if you incur any business expenses that you want

8    reimbursed by the bank, you should submit an

9    expense form.

10              Have you ever done that?

11        A.  Yes.

12        Q.  Often?

13        A.  Usually about once a year, I was

14   fortunate to go to a bankers convention.  I was

15   involved with the bankers association before all

16   this.  And the bank was nice enough to let me go

17   and they would reimburse me for my fees.

18        Q.  Anything else you remember being on

19   any --

20        A.  Maybe some gas, but other than that, I

21   can't remember any.

22              MR. RANNIK:  Okay.  All right.

23   Will you give me a moment to confer with counsel.

24              (Brief recess.)

25        Q.  Just a few more questions.

1          A.  Sure.

2          Q.  Did you ever submit a conflict of

3    interest report to the bank?

4          A.  I did not.

5          Q.  Okay.  I'm going to show you what we

6    marked in the previous exhibit as Bank Exhibit 3.

7               Have you ever seen this document?

8          A.  No, sir.

9          Q.  Okay.  And if you flip to the last page,

10   did you ever fill this out and submit it to the

11   bank?

12         A.  No, sir.

13         Q.  Thank you.

14              When you were approached about being PR,

15   I asked you if you had run that by Russell

16   Laffitte.

17              Is there anybody else at the bank you

18   ran that past?

19         A.  When I went and spoke to Russell, I

20   asked him if I could serve as a PR in a case that

21   Alec was involved in.  I didn't know what the

22   case was at that time.  I asked him if he could

23   do it.  He said, Let me talk to my dad.  So both

24   him and Mr. Laffitte said I could do it.

25         Q.  Okay.  Did you ask anybody else?  Did

Deposition of Chad Westendorf                                                      25

1          you ask the bank president?  I think it was

2          Mr. Malinowski at that time.

3                    A.  I did not.

4                    Q.  All right.  I'd like to quickly show

5          you --

6                         MR. RANNIK:  And, Christy, these

7          are some of the -- these are the settlement

8          document exhibits from the prior deposition.

9          These are copies, and I just want to go through

10         and authenticate them.

11                        MS. ALLEN:  Okay.  Just give me a

12         second.

13                        MR. RANNIK:  Of course.

14                        MS. ALLEN:  Okay.  Thank you.

15                        MR. RANNIK:  I'd like to mark this

16         collection of documents as Exhibit 7, please.

17                        (Exhibit No. 07 marked for

18         identification.)

19                   Q.  Mr. Malinowski --

20                   A.  Westendorf.

21                   Q.  Mr. Westendorf.  Sorry.  Old habits.

22                   A.  Yes.

23                   Q.  So I've handed you Exhibit 7, which I

24         believe are the various documents relating to the

25         settlement of the case involving the Estate of

1      Gloria Satterfield.

2              Do you recognize these documents?

3      A.  All but 19.  I didn't see 19 until I was

4      at my deposition with Eric Bland.

5      Q.  Okay.  So let's go one at a time.  The

6      one -- the first page of this exhibit, which is

7      marked with a 30 on it, you recognize that, and

8      that's your signature?

9      A.  No.  I recognize this from being shown

10     over time.  That was after -- let's say after

11     Labor Day '21, I saw this.  I never saw that

12     before that.

13     Q.  Got it.  Got it.

14     A.  And that's Cory Fleming's signature.

15     Q.  It is.  I saw a C.  Sorry.  Jumping

16     ahead of myself.

17             All right.  The next document is marked

18     Exhibit 24 to your previous deposition.  Do you

19     recognize this?

20     A.  Yes, sir.

21     Q.  And is this an accurate copy of the

22     order approving settlement and the settlement

23     statement that you signed?

24     A.  Yes, sir.  I signed this in Judge

25     Mullen's chamber on the 13th of May, 2019.

1        Q.   Okay.

2        A.   And she -- that's her on the -- on that

3    one.

4        Q.   Right.  You mean at the bottom of each

5    page?

6        A.   Yes, and the final signature under

7    presiding judge.

8        Q.   Okay.  The next one, which was

9    Exhibit 23 to your previous deposition, do you

10   recognize this document?

11       A.   Yes, sir.

12       Q.   And is this a correct -- true and

13   correct copy of the petition for the approval of

14   that settlement?

15       A.   It looks to be, yes, sir.

16       Q.   And that's your signature on the pages 5

17   and 6?

18       A.   Yes, sir.

19       Q.   And the next is Exhibit 21 to your

20   previous deposition and this is a release of

21   claims against various parties.

22            Do you recognize this document?

23       A.   Yes, sir.

24       Q.   And is that your signature on the last

25   page?

1          A.  Yes, sir.

2          Q.  And then I believe you told me 19 is one

3     that you had not seen until your first

4     deposition?

5          A.  Yes, sir.

6          Q.  Okay.  And there's no signature by you

7     anywhere on this document, right?

8          A.  No.

9          Q.  All right.  I asked you a bunch of

10    questions about what Mr. Laffitte did or did not

11    tell you when you asked if you could serve as PR

12    for the Estate of Gloria Satterfield.  I forgot

13    one.

14              Did he tell you that he had been asked

15    to serve as the PR for the estate?

16         A.  He did not.

17         Q.  Did he tell you -- I assume he didn't,

18    therefore, tell you why he was not serving as the

19    PR?

20         A.  He did not.

21         Q.  Okay.  Another bit of cleanup, if we

22    could go back to -- which exhibit was this?

23         A.  No. 3.

24         Q.  Right there, No. 3.  Just to clarify,

25    this withdrawal, you didn't approve this

1    withdrawal as personal representative for the

2    Estate of Gloria Satterfield, correct?

3          A.  No, sir.

4          Q.  And the first time you knew anything

5    about this was probably at today's deposition?

6          A.  That is correct.

7          Q.  Did you ever have to submit a business

8    development proposal to the bank?

9          A.  What do you mean by that?

10          Q.  I mean sort of a plan of these -- I'm

11    going to try and bring in X amount of business or

12    these are the kinds of customers I'm going to try

13    and target or anything like that?

14          A.  No.  We used to have what was called a

15    call -- not a call report, but a call list.  And

16    we'd try to go out couple times a month and just

17    visit people.  And I'd turn that in to

18    Mr. Laffitte, but that's been 15, 20 years ago,

19    so...

20          Q.  Okay.

21          A.  That would be the only business

22    development I would have done.

23                MR. RANNIK:  All right.  Thank you

24    very much, Mr. Westendorf.  That's all I've got

25    for you.

```
1                          MR. PENDARVIS:  No questions on

2            behalf of Mr. Fleming.

3                          MR. HOOD:  This is Bobby Hood.  I

4            have no questions.

5                          MR. GRESSETTE:  None for the bank.

6                          (Deposition concluded at 2:36 p.m.)

7                                    -  -  -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition of Chad Westendorf                                    31

                        CERTIFICATE OF REPORTER


                        I, Ruth Mott, Registered
        Professional Reporter, Certified Realtime
        Reporter, and Notary Public for the State of
        South Carolina, do hereby certify that the
        witness in the foregoing deposition was by me
        duly sworn to testify to the truth, the whole
        truth and nothing but the truth in the
        within-entitled cause; that said deposition was
        taken at the time and location therein stated;
        that the testimony of the witness and all
        objections made at the time of the examination
        were recorded stenographically by me and were
        thereafter transcribed by computer-aided
        transcription, that the foregoing is a full,
        complete and true record of the testimony of the
        witness and of all objections made at the time of
        the examination; and that the witness was given
        an opportunity to read and correct said
        deposition and to subscribe the same.
                        Should the signature of the witness
        not be affixed to the deposition, the witness
        shall not have availed himself of the opportunity
        to sign or the signature has been waived.
                        I further certify that I am neither
        related to nor counsel for any party to the cause
        pending or interested in the events thereof.
                        Witness my hand, I have hereunto
        affixed my official seal on July 12, 2023 at
        Moncks Corner, Berkeley County, South Carolina.




                        Ruth Mott,
                        Registered Professional Reporter
                        Certified Realtime Reporter
                        and Notary Public
                        My Commission expires
                        February 23, 2025

```
 1                    DEPONENT CORRECTION SHEET
                I, the undersigned, CHAD WESTENDORF, do
 2      hereby certify that I have read the foregoing
        deposition and wish to make the following
 3      clarifications and/or corrections, if any.

 4      PAGE   LINE    CHANGE          REASON

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20                    CHAD WESTENDORF    Date

21

22

23

24

25
```

## WORD INDEX

**< $ >**
**$30,000** 16:*4*

**< 0 >**
**01** 3:*1*  6:*7*
**02** 3:*1*  12:*18*
**03** 3:*1*  18:*15*
**04** 3:*1*  19:*14*
**05** 3:*1*  20:*12*
**06** 3:*1*  22:*11*
**07** 3:*1*  25:*17*

**< 1 >**
**1** 3:*1*  6:*5*
**1.2** 22:*2*
**1/18/19** 3:*1*
**1:57** 1:*15*
**10** 3:*1*
**11** 3:*1*
**12** 3:*1*  31:*16*
**13** 3:*1*
**13th** 26:*25*
**14** 3:*1*
**15** 3:*1*  29:*18*
**16** 3:*1*
**17** 3:*1*
**172** 2:*14*
**18** 3:*1*  8:*19, 21, 23*
 9:*3, 6*
**19** 3:*1*  26:*3*  28:*2*

**< 2 >**
**2** 3:*1*
**2/22/22** 3:*1*
**2:22-cv-1307-RMG**
 1:*7*
**2:36** 30:*6*
**20** 3:*1*  29:*18*
**2018** 10:*23*  12:*7*
**2019** 18:*23, 25*
 26:*25*
**2023** 1:*12*  31:*16*
**2025** 31:*22*
**21** 3:*1*  26:*11*  27:*19*
**22** 3:*1*  21:*24*
**23** 3:*1*  27:*9*  31:*22*
**24** 3:*1*  26:*18*

**25** 3:*1*
**29401** 2:*5, 14, 18, 23*
**29422** 1:*20*
**29902** 2:*10*
**29924** 13:*19*

**< 3 >**
**3** 3:*1*  24:*6*  28:*23,*
*24*
**30** 1:*12*  21:*12*  26:*7*
**31** 3:*1*
**32** 3:*1*

**< 4 >**
**4** 3:*1*
**46A** 2:*5*

**< 5 >**
**5** 3:*1*  20:*22*  27:*16*

**< 6 >**
**6** 3:*1*  22:*10*  27:*17*
**600** 21:*4, 8*
**601** 13:*18*
**66** 2:*22*

**< 7 >**
**7** 3:*1*  25:*16, 23*
**710** 2:*9*
**73129** 1:*19*

**< 8 >**
**8** 3:*1*
**803** 13:*24*
**843-762-6294** 1:*20*

**< 9 >**
**9** 3:*1*
**943-2671** 13:*24*
**97** 2:*18*

**< A >**
**A-1** 2:*10*
**account** 8:*22*  9:*4*
 11:*17*  16:*11*  17:*25*
 18:*20*  19:*19*  20:*3,*
*4, 8*
**accounting** 18:*11*
**accounts** 8:*7*  17:*25*

**accurate** 26:*21*
**acting** 17:*15*
**address** 13:*16*
**affixed** 31:*13, 16*
**afternoon** 4:*5*
**age** 8:*21, 23*  9:*5*
**ago** 29:*18*
**agree** 6:*12*  7:*22*
 8:*1*  10:*16*
**agreed** 12:*8*
**ahead** 26:*16*
**Alec** 24:*21*
**Alec's** 19:*19*
**Alex** 9:*22*  10:*3, 8*
 11:*8, 16*  14:*20*  15:*4*
**ALEXANDER** 1:*8*
**ALLEN** 2:*17*  6:*17,*
*25*  7:*3*  8:*24*  9:*7,*
*12, 20*  10:*9, 19*
 11:*18*  20:*14, 19*
 25:*11, 14*
**amount** 29:*11*
**and/or** 32:*3*
**answer** 4:*23*  5:*3*
 10:*20*
**answers** 5:*6*
**anybody** 7:*15*
 24:*17, 25*
**APPLICATION** 3:*1*
 9:*15*  12:*11, 23*
**appointment** 12:*12*
 13:*3*
**approached** 24:*14*
**approval** 27:*13*
**approve** 28:*25*
**approved** 11:*23*
**approving** 14:*17, 24*
 26:*22*
**asked** 7:*9*  10:*4*
 11:*2, 8*  24:*15, 20, 22*
 28:*9, 11, 14*
**asking** 4:*22*
**associated** 11:*7*
**association** 23:*15*
**assume** 4:*24*  8:*5*
 10:*11*  11:*1*  15:*22,*
*25*  28:*17*
**attorney** 5:*2*
**authenticate** 25:*10*

**availed** 31:*13*
**aware** 10:*12*  17:*23*
**awful** 6:*4*

**< B >**
**back** 7:*18*  8:*14*
 16:*14*  28:*22*
**balance** 18:*22*
**BANK** 1:*9*  2:*20*
 3:*1*  13:*9, 20, 21, 25*
 15:*14, 24*  16:*11, 16*
 17:*3, 5, 9, 18, 25*
 23:*8, 16*  24:*3, 6, 11,*
*17*  25:*1*  29:*8*  30:*5*
**bankers** 23:*14, 15*
**bank's** 15:*18*
**Based** 7:*21*
**basically** 22:*6, 17*
**beacon** 21:*7, 10*
**Beaufort** 2:*10*
**BEHALF** 2:*1, 6, 12,*
*16, 20*  30:*2*
**believe** 25:*24*  28:*2*
**Berkeley** 31:*17*
**bit** 4:*6*  5:*10*  15:*9*
 16:*1*  28:*21*
**Bland** 16:*7*  26:*4*
**Bobby** 30:*3*
**bobbyjr.hood@hoodl**
**aw.com** 2:*15*
**BOLEN** 1:*19*
**bond** 15:*18, 23, 24*
 17:*21*
**bonded** 15:*17*
**borrowed** 16:*12*
**bottom** 13:*2*  27:*4*
**Boundary** 2:*9*
**BOX** 1:*19*
**boxes** 13:*1*
**break** 4:*17*
**Brief** 20:*21*  23:*24*
**briefly** 5:*12*
**bring** 29:*11*
**Broad** 2:*18*
**brought** 12:*13*
**bunch** 28:*9*
**business** 23:*7*  29:*7,*
*11, 21*

**< C >**

call  16:24  20:2
29:15
called  29:14
callen@wmalawfirm.
net  2:19
CAROLINA  1:1
9:17, 18  13:19
31:4, 17
CASE  1:7  3:1  4:8
19:13  24:20, 22
25:25
cause  31:6, 15
caused  11:15
cell  16:24  17:2, 6
CERTIFICATE  3:1
31:1
Certified  31:3, 20
certify  31:4, 14
32:2
CHAD  1:2, 8, 12
2:16  3:1  4:1  32:1,
20
chamber  26:25
change  15:16  32:4
CHARLESTON  1:2,
17, 20  2:5, 14, 18, 23
chatted  4:6
check  14:7, 14
22:19
checked  15:6  21:14
checking  18:20
20:4
CHECKLIST  3:1
22:15
CHRISTY  2:17
7:14  20:17  25:6
claims  27:21
clarification  22:24
clarifications  32:3
clarify  28:24
CLARK  1:19
cleanup  28:21
clear  21:6
CLEMENT  2:22
clement@wglfirm.co
m  2:24
CLINTON  2:4
Code  21:12, 24
collection  25:16

Columbia  9:11
Columbus  9:18
come  16:10
comes  21:16
coming  20:18
commercial  22:5
Commission  31:21
COMPANY  1:5  4:7
complete  31:10
computer-aided  31:9
concluded  30:6
concurs  13:10
confer  23:23
conflict  24:2
conservator  7:22
8:22  9:4  10:21
conservatorship
9:15  11:17
conservatorships
11:22
consulted  7:14
consulting  15:14
contacted  16:18
contractor  15:12
convention  23:14
convicted  10:13
copies  25:9
copy  6:5  26:21
27:13
Corner  31:17
correct  4:10, 11
5:23, 25  8:4, 12
11:4, 5  14:8, 12
15:3, 8  16:5  17:1
19:2, 3, 10  21:9
27:12, 13  29:2, 6
31:11
CORRECTION  3:1
6:2, 18, 24  14:1
32:1
corrections  32:3
CORY  1:8  2:6
15:2  26:14
counsel  23:23  31:15
County  9:10  31:17
couple  18:13  29:16
course  6:16, 22  8:6,
8  9:2  20:16  25:13

COURT  1:1  5:7
8:18, 20  9:3, 10, 16
10:14  11:24  17:21
coverage  22:1, 4
credit  20:3  21:3, 4,
10
CRR  1:17
ctm@epting-
law.com  2:6
Current  13:8
customers  29:12

< D >
dad  24:23
DATE  1:12  32:20
Day  26:11
Debt  22:1, 4, 5
Defendants  1:10
DEPONENT  1:12
3:1  32:1
deposed  4:9
DEPOSITION  1:2
3:1  4:15  5:12
6:11  7:4, 7, 13, 18
14:2  25:8  26:4, 18
27:9, 20  28:4  29:5
30:6  31:5, 6, 12, 13
32:2
describe  13:4
described  10:14
DESCRIPTION  3:1
desires  13:8
development  29:8,
22
died  18:1
direct  4:22
disbursed  11:22
disbursement  11:23
discussion  21:19
distributed  14:25
DISTRICT  1:1
DIVISION  1:2
document  6:19
12:16, 20, 22  18:17
19:13  20:23  22:14
24:7  25:8  26:17
27:10, 22  28:7
DOCUMENTS  3:1
7:17  18:14  19:11

25:16, 24  26:2
doing  5:5
doubts  4:22
dual  21:17
duly  4:2  31:5

< E >
earlier  16:2
easier  5:10
effected  19:23
employment  15:10
endorsed  14:7, 22
ensure  14:23
entitled  8:10

ENVIRONMENTAL
3:1  22:15, 18
EPTING  2:1
Eric  26:4
errata  6:21  7:1
errors  5:23, 25
Estate  5:14  7:24
9:16  11:3  12:9
14:6  15:21  16:19
17:15, 20  18:8, 11
19:1  22:16  25:25
28:12, 15  29:2
events  31:15
EXAMINATION
4:3  31:8, 11
EXCEPTION  3:1
20:24  21:5
exceptions  21:1
excuse  13:19  18:6
EXHIBIT  3:1  6:5,
7  7:1  12:18  18:15
19:14  20:12, 22
22:10, 11  24:6
25:16, 17, 23  26:6,
18  27:9, 19  28:22
EXHIBITS  3:1  6:6
25:8
expect  10:6, 23
expense  23:9
expenses  17:6, 15
23:7
expires  31:21

< F >

fact 9:*11*, *17*
fair 4:*25*
February 31:*22*
federal 10:*14*
fee 16:*2*
fees 17:*19* 23:*17*
fidelity 15:*24*
fiduciary 11:*8*
filed 14:*18*, *24*
fill 23:*1* 24:*10*
final 6:*23* 18:*11*
  27:*6*
FIRM 2:*13* 16:*8*
first 4:*2* 13:*2*, *18*
  16:*18* 26:*6* 28:*3*
  29:*4*
FLEMING 1:*8* 2:*6*
  15:*2* 30:*2*
Fleming's 26:*14*
flip 24:*9*
following 32:*2*
follows 4:*2*
FORD 2:*17*
foregoing 31:*5*, *9*
  32:*2*
forgot 28:*12*
form 8:*24* 9:*12*
  10:*9*, *19* 11:*18*
  23:*1*, *9*
fortunate 23:*14*
FREEMAN 1:*15*
  2:*21*
full 31:*9*
funds 11:*21* 14:*16*,
  *25* 18:*10*
further 31:*14*
future 10:*8*

< G >
gas 23:*20*
general 15:*13*
getting 18:*22*
gig 10:*25*
give 20:*17* 23:*23*
  25:*11*
given 5:*13* 31:*11*
giving 5:*5*
Gloria 5:*14* 11:*3*
  12:*9* 14:*7* 15:*21*
  16:*19* 17:*16*, *24*

18:*21* 26:*1* 28:*12*
  29:*2*
go 4:*14* 19:*17*
  23:*14*, *16* 25:*9*
  26:*5* 28:*22* 29:*16*
going 4:*19*, *24* 6:*9*
  19:*21* 24:*5* 29:*11*,
  *12*
Good 4:*5*
Gotcha 22:*21*
great 5:*5*
GRESSETTE 1:*15*
  2:*21* 10:*10* 11:*9*,
  *19* 12:*3* 30:*5*
gressette@wglfirm.co
m 2:*23*
guess 18:*9*
guidelines 21:*13*

< H >
habits 25:*21*
Hampton 9:*10*, *17*
  13:*19*
hand 31:*16*
handed 25:*23*
happen 19:*25* 20:*6*,
  *7*
happened 10:*2*, *3*
Hasell 2:*22*
head 5:*6*, *7*
hear 5:*2*
heard 4:*15* 16:*1*
  23:*6*
heir 13:*10*
held 14:*17*
hereunto 31:*16*
HOOD 2:*13* 30:*3*
hope 12:*4*
hopefully 5:*9*

< I >
identification 6:*8*
  12:*19* 18:*16* 19:*15*
  20:*13* 22:*12* 25:*18*
illegal 11:*16*
immediately 16:*9*
improved 22:*17*
included 18:*7*
income 22:*6*

incur 23:*7*
incurred 17:*15*
independent 15:*12*
information 7:*10*
  23:*4*
informed 12:*1*
inspecting 22:*22*, *25*
instances 10:*1*
instructed 5:*4*
INSURANCE 1:*5*
  4:*7*
interest 24:*3*
interested 31:*15*
involved 10:*22*
  23:*15* 24:*21*
involvement 19:*22*
involving 25:*25*
issue 11:*16*

< J >
JAAN 2:*4* 4:*6*
JAMES 2:*22*
January 18:*23*, *25*
jgr@epting-law.com
  2:*6*
job 5:*5*
JONATHAN 2:*25*
JR 2:*13*, *21*
Judge 26:*24* 27:*7*
July 31:*16*
Jumping 26:*15*
JUNE 1:*12*

< K >
kind 17:*21*
kinds 29:*12*
knew 9:*25* 10:*2*
  12:*14* 29:*4*
know 4:*15*, *18*, *21*
  7:*21* 8:*23* 9:*5*, *11*,
  *17* 10:*20* 12:*5*
  15:*25* 17:*24* 19:*17*
  20:*6* 24:*21*
known 10:*17* 12:*7*
  14:*20* 15:*4*
KUHN 1:*8* 2:*12*

< L >
Labor 26:*11*

Laffitte 10:*12*, *16*,
  *24* 11:*4*, *14* 21:*20*
  24:*16*, *24* 28:*10*
  29:*18*
Laffitte's 10:*21*
LAW 2:*6*, *13*
lead 10:*18*
left-hand 20:*8*
legal 17:*19*
letter 14:*13*, *16*
life 5:*9*
liked 12:*5*
line 19:*5* 20:*3*
  21:*12* 32:*4*
LINTON 1:*15* 2:*21*
list 29:*15*
listed 22:*22*, *25*
litigation 18:*18*
little 4:*6* 5:*10* 15:*9*
  16:*1*
live 9:*11*
lives 9:*10*
LLC 2:*13*
loan 8:*2* 16:*14*
  20:*25* 21:*2*, *13*, *15*,
  *16*, *20*
loans 11:*16* 20:*25*
  22:*5*, *17*
LOCATION 1:*15*
  31:*7*
long 4:*19*
look 6:*12* 19:*4*
  20:*15* 21:*24*
looked 7:*18*
looking 18:*19* 20:*22*
looks 6:*14* 18:*20*
  19:*7*, *18* 23:*4* 27:*15*
lot 6:*4* 19:*17*

< M >
MAGILL 2:*4*
Malinowski 15:*11*
  23:*6* 25:*2*, *19*
mark 6:*5* 22:*10*
  25:*15*
marked 6:*7* 12:*18*
  18:*15* 19:*14* 20:*12*
  22:*11* 24:*6* 25:*17*
  26:*7*, *17*

MASSALON 2:17
matches 6:13
mean 6:13, 14, 15
22:3 27:4 29:9, 10
Meeting 2:14
mentioned 6:18
mess 15:20
Michael 19:7
misrepresent 8:18, 20
moment 23:23
Moncks 31:17
money 8:2, 3, 7, 9, 11, 13, 14 16:12 19:19
month 29:16
morning 4:16
MOSS 1:8 2:12
MOTT 1:17 31:3, 17
move 20:2
Mullen's 26:25
MURDAUGH 1:8 9:23 10:4, 8, 18, 22 11:8, 11, 16 12:12
Murdaugh's 14:20 15:4

< N >
name's 4:6
NAUTILUS 1:5 4:7 14:8
need 4:17 6:22 9:4
needs 8:22
neither 31:14
never 26:11
nice 23:16
nods 5:7
nos 5:6
Notary 31:4, 21
note 6:22
number 6:13 13:22, 23, 25 17:8
numbers 20:8

< O >
oath 5:16
object 5:2 8:24 9:12 10:9, 19

objection 9:7, 20 10:10 11:9, 18, 19 12:3
objections 31:8, 10
obviously 21:3, 14 22:6
occur 10:7
office 12:13 14:10 16:21 20:1
officer 20:25 21:15, 16 22:23 23:1
OFFICES 2:6
official 31:16
Okay 4:14 6:3, 25 7:3 13:11 15:19 16:13, 16 17:14 18:5 19:9, 12 20:5, 19 21:23 23:3, 5, 22 24:5, 9, 25 25:11, 14 26:5 27:1, 8 28:6, 21 29:20
old 9:3 25:21
once 23:13
opportunity 5:20 31:11, 13
opposed 5:6
order 14:17, 24 26:22
outside 21:13
overdrafts 11:12

< P >
P.A 1:8
P.M 1:15 30:6
P.O 1:19
PA 2:12
PAGE 3:1 6:21 7:1 13:2, 12 19:4 24:9 26:6 27:5, 25 32:4
pages 6:14 27:16
paid 16:2, 7
PALMETTO 1:9 2:20 13:21 16:11, 16
part 14:6 18:7
parties 27:21
party 31:15
pay 8:14
paying 16:14 17:19

PENDARVIS 2:6, 9 30:1
pending 31:15
people 29:17
percent 22:2
person 7:23 8:10, 14, 15 9:16
PERSONAL 3:1 5:14 12:23 13:4, 8, 9 17:2, 4 19:8, 10 29:1
petition 27:13
phone 13:25 16:25 17:2, 6, 12, 13
Plaintiff 1:6 2:1
plan 29:10
please 4:20 5:4 7:2 9:1 12:25 22:10 25:16
position 15:5
posted 17:22
PR 7:20, 23 8:2, 14, 16 9:15 10:4, 7, 17, 22 11:2 12:8, 12 14:6 16:2, 19 17:15, 20 19:1 24:14, 20 28:11, 15, 19
prepare 7:12
PRESENT 2:25
president 11:15 13:9 25:1
presiding 27:7
previous 5:12 24:6 26:18 27:9, 20
previously 17:8
prior 6:11 11:22 15:5, 16 25:8
Priority 13:3
private 17:12, 13
probably 6:4 7:10 15:6 29:5
probate 17:21
problems 22:19
produced 18:18 19:13
Professional 31:3, 20
property 22:18
proposal 29:8

provided 13:16 17:3
PSB 11:16 15:10 17:25
Public 31:4, 21

< Q >
question 4:20, 23, 24 5:3 22:13
questions 7:9, 19 23:25 28:10 30:1, 4
quick 6:12
quickly 4:14 25:4

< R >
RALEY 2:25
ran 11:3 24:18
RANNIK 2:1, 4 3:1 4:4, 7 6:20 7:2 20:16 22:9 23:22 25:6, 13, 15 29:23
ratio 22:1, 4
read 12:25 31:11 32:2
reading 6:15
real 22:16
really 20:10
Realtime 31:3, 20
REASON 32:4
reasonable 10:6
receive 14:13
recess 20:21 23:24
recognize 12:17, 20 20:7 26:2, 7, 9, 19 27:10, 22
RECORD 3:1 6:23 31:10
recorded 31:8
refunded 16:6
Registered 31:3, 20
reimburse 17:5 23:17
reimbursed 17:14 23:8
related 31:15
RELATING 3:1 5:13 25:24
release 27:20

remember  23:*18, 21*
renewals  22:*16*
rep  19:*8, 10*
rephrase  4:*21*
report  24:*3*  29:*15*
REPORTED  1:*17*
REPORTER  3:*1*
  5:*7*  22:*24*  31:*1, 3,
4, 20*
represent  4:*7*  6:*10*
9:*9, 15*  18:*17*

REPRESENTATIVE
3:*1*  5:*14*  12:*24*
13:*4, 8, 10*  29:*1*
request  11:*4*  19:*20*
require  17:*21*
responsibility  7:*23*
result  15:*20*
review  5:*20*  7:*17*
RICHARD  1:*8*
Richter  16:*8*
right  5:*16*  7:*5*
  10:*25*  12:*2*  13:*12*
  15:*2, 7*  16:*14, 20, 22*
  18:*8, 12, 24*  22:*9*
  23:*4, 22*  25:*4*
  26:*17*  27:*4*  28:*7, 9,
24*  29:*23*
ROBERT  2:*13*
role  15:*16*
RPR  1:*17*
rules  4:*15*
run  24:*15*
Russell  11:*4*  20:*1*
  21:*15*  24:*15, 19*
Russell's  19:*20*
RUTH  1:*17*  31:*3,
17*

< S >
safeguarding  8:*4*
SATTERFIELD
3:*1*  5:*15*  11:*3*
  12:*9*  14:*7*  15:*21*
  16:*20*  17:*16, 24*
  18:*21*  19:*8*  26:*1*
  28:*12*  29:*2*
Satterfields  16:*7*

save  6:*4*
saw  26:*11, 15*
says  13:*2*  19:*7*
  22:*1, 17*
SC  1:*17, 20*  2:*5, 10,
14, 18, 23*
score  21:*3, 4, 7, 10*
seal  31:*16*
second  19:*4*  20:*14,
20*  25:*12*
see  13:*5*  15:*19*
  21:*2*  26:*3*
seen  20:*15*  24:*7*
  28:*3*
serve  10:*4, 7*  11:*2*
  12:*8*  13:*9*  24:*20*
  28:*11, 15*
serves  7:*22*
service  5:*13*  22:*1, 4*
serving  7:*20, 24*
  8:*2, 10, 14, 16*  10:*17*
  11:*7*  14:*6*  16:*19*
  19:*1*  28:*18*
SETTLEMENT  3:*1*
  14:*18, 24*  25:*7, 25*
  26:*22*  27:*14*
shakes  5:*7*
SHEET  3:*1*  20:*24*
  32:*1*
show  12:*16*  18:*10,
13*  19:*12*  24:*5*  25:*4*
shown  26:*9*
shows  18:*22*
side  20:*8*
sign  21:*16*  31:*14*
signature  13:*14*
  19:*5*  26:*8, 14*  27:*6,
16, 24*  28:*6*  31:*12,
14*
signed  12:*11*  26:*23,
24*
single  10:*3*
sir  4:*13*  5:*1, 17, 19,
22, 24*  7:*8, 11, 16, 25*
  8:*17*  9:*19*  10:*15*
  11:*10, 13*  12:*6, 10,
14, 21*  13:*6*  14:*1, 9,
15, 19*  15:*1, 15, 22*
  16:*3, 9, 17, 23*  17:*7,
10, 13*  19:*24*  21:*11,*

21, 25*  24:*8, 12*
  26:*20, 24*  27:*11, 15,
18, 23*  28:*1, 5*  29:*3*
sit  7:*7*
situation  10:*5*
Sole  13:*10*
sorry  8:*19*  14:*23*
  21:*6*  25:*21*  26:*15*
sort  15:*13*  29:*10*
sounded  15:*13*
SOUTH  1:*1*  9:*17,
18*  13:*19*  31:*4, 17*
speak  5:*8*
spoke  24:*19*
SR  1:*8*
stand  7:*6*
STATE  1:*9*  2:*5, 20*
  13:*21*  16:*11, 16*
  31:*4*
stated  31:*7*
STATEMENT  3:*1*
  26:*23*
statements  11:*23*
STATES  1:*1*
steal  8:*7*
stenographically
31:*8*
step  20:*19*
stolen  8:*15*
Street  2:*5, 9, 14, 18,
22*  13:*18*
Strike  8:*19*
submit  23:*8*  24:*2,
10*  29:*7*
submitted  21:*15*
subscribe  31:*12*
substantial  11:*12*
SUCCESSOR  3:*1*
  12:*23*  13:*3*
Suite  2:*10*
supplement  7:*1*
supposed  8:*3*
sure  5:*8*  9:*14*  24:*1*
sworn  4:*2*  31:*5*

< T >
take  4:*18*  20:*14*
taken  31:*7*
talk  7:*15*  16:*1*

24:*23*
talked  9:*22*
talking  13:*5*  21:*7*
target  29:*13*
telephone  13:*22*
tell  6:*12*  9:*2*  11:*6,
11, 14, 21*  18:*19*
  19:*16*  28:*11, 14, 17,
18*
tells  21:*4*
term  21:*14*
terms  21:*13*
testified  4:*2*  5:*21*
testify  23:*6*  31:*5*
testimony  5:*16*
  6:*10*  7:*6*  31:*7, 10*
thank  5:*8*  7:*4*
  24:*13*  25:*14*  29:*23*
Thanksgiving  16:*21*
thereof  31:*15*
thing  23:*5*
things  9:*22*  10:*13*
  12:*2, 7, 14*  15:*6*
think  4:*18*  6:*4*
  10:*5*  14:*10*  16:*20*
  25:*1*
THOMAS  2:*9, 21*
thomas@pendarvisla
w.com  2:*11*
TIME  1:*15*  4:*12,
17*  5:*9*  6:*5*  8:*25*
  9:*13*  10:*3, 23*  19:*9*
  21:*22*  24:*22*  25:*2*
  26:*5, 10*  29:*4*  31:*7,
8, 10*
times  29:*16*
today  4:*6*  7:*7, 21,
25*
today's  7:*12*  29:*5*
told  5:*18*  9:*23*
  14:*5*  15:*11*  28:*2*
top  13:*12*
transcribed  31:*9*
transcript  5:*21*  6:*6,
23*
transcription  31:*9*
TRANSFER  3:*1*
  19:*23*
transferred  19:*18*

true  27:*12*  31:*10*
trust  14:*17*
trusted  15:*2*
truth  5:*18*  31:*5, 6*
try  29:*11, 12, 16*
turn  13:*11*  29:*17*
two  20:*8*
type  14:*4*

< U >
unable  15:*17*
undersigned  32:*1*
understand  4:*9, 20*
understood  4:*24*
 10:*24*
UNITED  1:*1*
use  8:*13*  22:*5*
Usually  23:*13*

< V >
various  25:*24*  27:*21*
verbal  5:*6*
verification  13:*13*
vice  11:*15*  13:*9*
violation  11:*22*
visit  29:*17*
vs  1:*7*

< W >
waived  31:*14*
WALKER  1:*15*
 2:*21*
want  5:*11*  7:*19*
 23:*7*  25:*9*
well  6:*9*  14:*22*
went  24:*19*
we're  20:*22*  21:*6*
West  13:*18*
WESTENDORF
 1:*2, 8, 12*  2:*16*  3:*1*
 4:*1, 5*  5:*11*  6:*17*
 7:*5*  22:*13*  23:*5*
 25:*20, 21*  29:*24*
 32:*1, 20*
We've  4:*5*  9:*22*
WILLS  2:*17*
wish  32:*2*
withdrawal  28:*25*
 29:*1*

withhold  8:*9*
within-entitled  31:*6*
WITNESS  3:*1*
 31:*5, 7, 10, 11, 12, 13,*
 *16*
work  10:*21*  15:*10,*
 *14*
worked  17:*9*
worries  20:*11*
writing  22:*20*
wrong  8:*1, 6, 9, 13,*
 *18, 20*  9:*2, 9, 14, 19,*
 *21*
wrongdoing  10:*1, 7,*
 *18, 22*  11:*7*  14:*21*
 15:*5*
WWW.CLARKBOL
EN.COM  1:*21*

< Y >
Yeah  20:*11*
year  23:*13*
years  9:*3*  29:*18*
yeses  5:*6*

< Z >
zeroed  18:*23*
ZOOM  2:*6, 12*

## WORD LIST

**< $ >**
**$30,000** *(1)*

**< 0 >**
**01** *(2)*
**02** *(2)*
**03** *(2)*
**04** *(2)*
**05** *(2)*
**06** *(2)*
**07** *(2)*

**< 1 >**
**1** *(2)*
**1.2** *(1)*
**1/18/19** *(1)*
**1:57** *(1)*
**10** *(1)*
**11** *(1)*
**12** *(3)*
**13** *(1)*
**13th** *(1)*
**14** *(1)*
**15** *(2)*
**16** *(1)*
**17** *(1)*
**172** *(1)*
**18** *(7)*
**19** *(5)*

**< 2 >**
**2** *(1)*
**2/22/22** *(1)*
**2:22-cv-1307-RMG**
  *(1)*
**2:36** *(1)*
**20** *(3)*
**2018** *(2)*
**2019** *(3)*
**2023** *(2)*
**2025** *(1)*
**21** *(3)*
**22** *(3)*
**23** *(3)*
**24** *(2)*
**25** *(2)*
**29401** *(4)*

**29422** *(1)*
**29902** *(1)*
**29924** *(1)*

**< 3 >**
**3** *(4)*
**30** *(3)*
**31** *(1)*
**32** *(1)*

**< 4 >**
**4** *(2)*
**46A** *(1)*

**< 5 >**
**5** *(3)*

**< 6 >**
**6** *(4)*
**600** *(2)*
**601** *(1)*
**66** *(1)*

**< 7 >**
**7** *(3)*
**710** *(1)*
**73129** *(1)*

**< 8 >**
**8** *(1)*
**803** *(1)*
**843-762-6294** *(1)*

**< 9 >**
**9** *(1)*
**943-2671** *(1)*
**97** *(1)*

**< A >**
**A-1** *(1)*
**account** *(10)*
**accounting** *(1)*
**accounts** *(2)*
**accurate** *(1)*
**acting** *(1)*
**address** *(1)*
**affixed** *(2)*
**afternoon** *(1)*
**age** *(3)*

**ago** *(1)*
**agree** *(4)*
**agreed** *(1)*
**ahead** *(1)*
**Alec** *(1)*
**Alec's** *(1)*
**Alex** *(7)*
**ALEXANDER** *(1)*
**ALLEN** *(16)*
**amount** *(1)*
**and/or** *(1)*
**answer** *(3)*
**answers** *(1)*
**anybody** *(3)*
**APPLICATION** *(4)*
**appointment** *(2)*
**approached** *(1)*
**approval** *(1)*
**approve** *(1)*
**approved** *(1)*
**approving** *(3)*
**asked** *(10)*
**asking** *(1)*
**associated** *(1)*
**association** *(1)*
**assume** *(7)*
**attorney** *(1)*
**authenticate** *(1)*
**availed** *(1)*
**aware** *(2)*
**awful** *(1)*

**< B >**
**back** *(4)*
**balance** *(1)*
**BANK** *(27)*
**bankers** *(2)*
**bank's** *(1)*
**Based** *(1)*
**basically** *(2)*
**beacon** *(2)*
**Beaufort** *(1)*
**BEHALF** *(6)*
**believe** *(2)*
**Berkeley** *(1)*
**bit** *(5)*
**Bland** *(2)*
**Bobby** *(1)*
**bobbyjr.hood@hoodl**

**aw.com** *(1)*
**BOLEN** *(1)*
**bond** *(4)*
**bonded** *(1)*
**borrowed** *(1)*
**bottom** *(2)*
**Boundary** *(1)*
**BOX** *(1)*
**boxes** *(1)*
**break** *(1)*
**Brief** *(2)*
**briefly** *(1)*
**bring** *(1)*
**Broad** *(1)*
**brought** *(1)*
**bunch** *(1)*
**business** *(4)*

**< C >**
**call** *(5)*
**called** *(1)*
**callen@wmalawfirm.**
**net** *(1)*
**CAROLINA** *(6)*
**CASE** *(7)*
**cause** *(2)*
**caused** *(1)*
**cell** *(3)*
**CERTIFICATE** *(2)*
**Certified** *(2)*
**certify** *(3)*
**CHAD** *(9)*
**chamber** *(1)*
**change** *(2)*
**CHARLESTON** *(7)*
**chatted** *(1)*
**check** *(3)*
**checked** *(2)*
**checking** *(2)*
**CHECKLIST** *(2)*
**CHRISTY** *(4)*
**claims** *(1)*
**clarification** *(1)*
**clarifications** *(1)*
**clarify** *(1)*
**CLARK** *(1)*
**cleanup** *(1)*
**clear** *(1)*
**CLEMENT** *(1)*

clement@wglfirm.com (*1*)
CLINTON (*1*)
Code (*2*)
collection (*1*)
Columbia (*1*)
Columbus (*1*)
come (*1*)
comes (*1*)
coming (*1*)
commercial (*1*)
Commission (*1*)
COMPANY (*2*)
complete (*1*)
computer-aided (*1*)
concluded (*1*)
concurs (*1*)
confer (*1*)
conflict (*1*)
conservator (*4*)
conservatorship (*2*)
conservatorships (*1*)
consulted (*1*)
consulting (*1*)
contacted (*1*)
contractor (*1*)
convention (*1*)
convicted (*1*)
copies (*1*)
copy (*3*)
Corner (*1*)
correct (*23*)
CORRECTION (*6*)
corrections (*1*)
CORY (*4*)
counsel (*2*)
County (*2*)
couple (*2*)
course (*7*)
COURT (*10*)
coverage (*2*)
credit (*4*)
CRR (*1*)
ctm@epting-law.com (*1*)
Current (*1*)
customers (*1*)

< D >
dad (*1*)
DATE (*2*)
Day (*1*)
Debt (*3*)
Defendants (*1*)
DEPONENT (*3*)
deposed (*1*)
DEPOSITION (*23*)
describe (*1*)
described (*1*)
DESCRIPTION (*1*)
desires (*1*)
development (*2*)
died (*1*)
direct (*1*)
disbursed (*1*)
disbursement (*1*)
discussion (*1*)
distributed (*1*)
DISTRICT (*2*)
DIVISION (*1*)
document (*14*)
DOCUMENTS (*7*)
doing (*1*)
doubts (*1*)
dual (*1*)
duly (*2*)

< E >
earlier (*1*)
easier (*1*)
effected (*1*)
employment (*1*)
endorsed (*2*)
ensure (*1*)
entitled (*1*)

ENVIRONMENTAL (*3*)
EPTING (*1*)
Eric (*1*)
errata (*2*)
errors (*2*)
Estate (*18*)
events (*1*)
EXAMINATION (*3*)
EXCEPTION (*3*)
exceptions (*1*)

excuse (*2*)
EXHIBIT (*28*)
EXHIBITS (*4*)
expect (*2*)
expense (*1*)
expenses (*3*)
expires (*1*)

< F >
fact (*2*)
fair (*1*)
February (*1*)
federal (*1*)
fee (*1*)
fees (*2*)
fidelity (*1*)
fiduciary (*1*)
filed (*2*)
fill (*2*)
final (*3*)
FIRM (*2*)
first (*8*)
FLEMING (*4*)
Fleming's (*1*)
flip (*1*)
following (*1*)
follows (*1*)
FORD (*1*)
foregoing (*3*)
forgot (*1*)
form (*1*)
fortunate (*1*)
FREEMAN (*2*)
full (*1*)
funds (*4*)
further (*1*)
future (*1*)

< G >
gas (*1*)
general (*1*)
getting (*1*)
gig (*1*)
give (*3*)
given (*2*)
giving (*1*)
Gloria (*12*)
go (*8*)
going (*7*)

Good (*1*)
Gotcha (*1*)
great (*1*)
GRESSETTE (*8*)
gressette@wglfirm.com (*1*)
guess (*1*)
guidelines (*1*)

< H >
habits (*1*)
Hampton (*3*)
hand (*1*)
handed (*1*)
happen (*3*)
happened (*2*)
Hasell (*1*)
head (*2*)
hear (*1*)
heard (*3*)
heir (*1*)
held (*1*)
hereunto (*1*)
HOOD (*4*)
hope (*1*)
hopefully (*1*)

< I >
identification (*7*)
illegal (*1*)
immediately (*1*)
improved (*1*)
included (*1*)
income (*1*)
incur (*1*)
incurred (*1*)
independent (*1*)
information (*2*)
informed (*1*)
inspecting (*2*)
instances (*1*)
instructed (*1*)
INSURANCE (*2*)
interest (*1*)
interested (*1*)
involved (*3*)
involvement (*1*)
involving (*1*)
issue (*1*)

< J >
JAAN  (2)
JAMES  (1)
January  (2)
jgr@epting-law.com
 (1)
job  (1)
JONATHAN  (1)
JR  (2)
Judge  (2)
July  (1)
Jumping  (1)
JUNE  (1)

< K >
kind  (1)
kinds  (1)
knew  (4)
know  (15)
known  (4)
KUHN  (2)

< L >
Labor  (1)
Laffitte  (10)
Laffitte's  (1)
LAW  (2)
lead  (1)
left-hand  (1)
legal  (1)
letter  (2)
life  (1)
liked  (1)
line  (4)
LINTON  (2)
list  (1)
listed  (2)
litigation  (1)
little  (4)
live  (1)
lives  (1)
LLC  (1)
loan  (9)
loans  (4)
LOCATION  (2)
long  (1)
look  (4)
looked  (1)

looking  (2)
looks  (6)
lot  (2)

< M >
MAGILL  (1)
Malinowski  (4)
mark  (3)
marked  (10)
MASSALON  (1)
matches  (1)
mean  (7)
Meeting  (1)
mentioned  (1)
mess  (1)
Michael  (1)
misrepresent  (2)
moment  (1)
Moncks  (1)
money  (9)
month  (1)
morning  (1)
MOSS  (2)
MOTT  (3)
move  (1)
Mullen's  (1)
MURDAUGH  (10)
Murdaugh's  (2)

< N >
name's  (1)
NAUTILUS  (3)
need  (3)
needs  (1)
neither  (1)
never  (1)
nice  (1)
nods  (1)
nos  (1)
Notary  (2)
note  (1)
number  (5)
numbers  (1)

< O >
oath  (1)
object  (5)
objection  (7)
objections  (2)

obviously  (3)
occur  (1)
office  (4)
officer  (5)
OFFICES  (1)
official  (1)
Okay  (30)
old  (2)
once  (1)
opportunity  (3)
opposed  (1)
order  (3)
outside  (1)
overdrafts  (1)

< P >
P.A  (1)
P.M  (2)
P.O  (1)
PA  (1)
PAGE  (12)
pages  (2)
paid  (2)
PALMETTO  (5)
part  (2)
parties  (1)
party  (1)
pay  (1)
paying  (2)
PENDARVIS  (3)
pending  (1)
people  (1)
percent  (1)
person  (5)
PERSONAL  (11)
petition  (1)
phone  (6)
Plaintiff  (2)
plan  (1)
please  (7)
position  (1)
posted  (1)
PR  (24)
prepare  (1)
PRESENT  (1)
president  (3)
presiding  (1)
previous  (5)
previously  (1)

prior  (5)
Priority  (1)
private  (2)
probably  (4)
probate  (1)
problems  (1)
produced  (2)
Professional  (2)
property  (1)
proposal  (1)
provided  (2)
PSB  (3)
Public  (2)

< Q >
question  (6)
questions  (6)
quick  (1)
quickly  (2)

< R >
RALEY  (1)
ran  (2)
RANNIK  (14)
ratio  (2)
read  (3)
reading  (1)
real  (1)
really  (1)
Realtime  (2)
REASON  (1)
reasonable  (1)
receive  (1)
recess  (2)
recognize  (9)
RECORD  (3)
recorded  (1)
refunded  (1)
Registered  (2)
reimburse  (2)
reimbursed  (2)
related  (1)
RELATING  (3)
release  (1)
remember  (2)
renewals  (1)
rep  (2)
rephrase  (1)
report  (2)

REPORTED  (1)
REPORTER  (8)
represent  (5)

REPRESENTATIVE
 (7)
request  (2)
require  (1)
responsibility  (1)
result  (1)
review  (2)
RICHARD  (1)
Richter  (1)
right  (23)
ROBERT  (1)
role  (1)
RPR  (1)
rules  (1)
run  (1)
Russell  (5)
Russell's  (1)
RUTH  (3)

< S >
safeguarding  (1)
SATTERFIELD
 (14)
Satterfields  (1)
save  (1)
saw  (3)
says  (4)
SC  (7)
score  (5)
seal  (1)
second  (4)
see  (4)
seen  (3)
serve  (8)
serves  (1)
service  (3)
serving  (12)
SETTLEMENT  (8)
shakes  (1)
SHEET  (4)
show  (6)
shown  (1)
shows  (1)
side  (1)
sign  (2)

signature  (10)
signed  (3)
single  (1)
sir  (49)
sit  (1)
situation  (1)
Sole  (1)
sorry  (5)
sort  (2)
sounded  (1)
SOUTH  (6)
speak  (1)
spoke  (1)
SR  (1)
stand  (1)
STATE  (7)
stated  (1)
STATEMENT  (2)
statements  (1)
STATES  (1)
steal  (1)
stenographically  (1)
step  (1)
stolen  (1)
Street  (7)
Strike  (1)
submit  (4)
submitted  (1)
subscribe  (1)
substantial  (1)
SUCCESSOR  (3)
Suite  (1)
supplement  (1)
supposed  (1)
sure  (3)
sworn  (2)

< T >
take  (2)
taken  (1)
talk  (3)
talked  (1)
talking  (2)
target  (1)
telephone  (2)
tell  (12)
tells  (1)
term  (1)
terms  (1)

testified  (2)
testify  (2)
testimony  (5)
thank  (5)
Thanksgiving  (1)
thereof  (1)
thing  (1)
things  (6)
think  (5)
THOMAS  (2)
thomas@pendarvisla
w.com  (1)
TIME  (19)
times  (1)
today  (4)
today's  (2)
told  (5)
top  (1)
transcribed  (1)
transcript  (3)
transcription  (1)
TRANSFER  (2)
transferred  (1)
true  (2)
trust  (1)
trusted  (1)
truth  (4)
try  (3)
turn  (2)
two  (1)
type  (1)

< U >
unable  (1)
undersigned  (1)
understand  (2)
understood  (2)
UNITED  (1)
use  (2)
Usually  (1)

< V >
various  (2)
verbal  (1)
verification  (1)
vice  (2)
violation  (1)
visit  (1)
vs  (1)

< W >
waived  (1)
WALKER  (2)
want  (4)
well  (2)
went  (1)
we're  (2)
West  (1)
WESTENDORF
 (18)
We've  (2)
WILLS  (1)
wish  (1)
withdrawal  (2)
withhold  (1)
within-entitled  (1)
WITNESS  (8)
work  (3)
worked  (1)
worries  (1)
writing  (1)
wrong  (11)
wrongdoing  (7)
WWW.CLARKBOL
EN.COM  (1)

< Y >
Yeah  (1)
year  (1)
years  (2)
yeses  (1)

< Z >
zeroed  (1)
ZOOM  (2)