UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>                                   Plaintiff,<br><br>vs.<br><br>Richard Alexander Murdaugh, Sr., Cory Fleming, MOSS & KUHN, P.A., Chad Westendorf, and PALMETTO STATE BANK,<br><br>                                   Defendants. | Civil Action No. 2:22-cv-1307-RMG<br><br><br>**DEFENDANT CORY FLEMING'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

TO:     JAAN G. RANNIK, ESQ. AND CLINTON T. MAGILL, ESQ., COUNSEL FOR PLAINTIFF, NAUTILUS INSURANCE COMPANY:

Defendant, Cory Fleming ("Mr. Fleming"), respectfully submits this Opposition to the Motion for Partial Summary Judgment [ECF 187] ("Nautilus' Motion") filed on behalf of Plaintiff, NAUTILUS INSURANCE COMPANY ("Nautilus").

**<u>Summary of the Arguments in Opposition</u>**

Nautilus' Motion should be denied for many of the reasons Mr. Fleming's Motion for Summary Judgment [ECF 188/189] should be granted. Nautilus' Motion suffers from multiple prominent and fatal flaws:

1.     **<u>The parties' communications and conduct modified the terms for disbursing the settlement proceeds, and Nautilus accepted the modified terms to establish an enforceable settlement agreement that was not breached</u>**. Nautilus' Motion turns on the fact that the Order approving the wrongful death settlement was not filed. Nautilus' Motion, however, ignores the

evidence and testimony showing the original terms governing Mr. Fleming's ability to disperse the settlement proceeds were modified in several emails and letters between John Grantland, Esq., counsel for Alec Murdaugh, and Mr. Fleming. Mr. Fleming mailed and delivered to Mr. Grantland the *original* and *unfiled* Order signed by the Hon. Carmen T. Mullen ("Judge Mullen") approving the settlement. It was up to Nautilus and its insured, Alec Murdaugh, to determine when they felt it was appropriate to file the Order given the publicity surrounding the boating accident.

Nautilus accepted these modified terms controlling the disbursement of the settlement proceeds. Nautilus did not follow up with Mr. Fleming with questions on why the Order had not been filed or any other communications after the settlement proceeds check was endorsed. Nautilus identifies no evidence or testimony showing Mr. Fleming breached any duties owed to Nautilus under the modified terms controlling the disbursement of the settlement proceeds.

2.      **Nautilus presents no evidence showing Mr. Fleming falsified any evidence or had knowledge of Alec Murdaugh's criminal or tortious plans until after the Nautilus settlement was consummated.** Nautilus offers no evidence or testimony showing Mr. Fleming falsified any evidence, counseled or assisted Alec Murdaugh or any other witness to testify falsely, or presented to Nautilus any false evidence concerning Ms. Satterfield's death. Nautilus also offers no evidence or testimony showing Mr. Fleming knew that Alec Murdaugh had made false statements to Nautilus concerning the death of Ms. Satterfield.

3.      **Because no lawsuit was filed on the Satterfield Estate's claims, the Court should reject Nautilus' arguments Mr. Fleming failed to comply with statutory and court rule provisions governing the settlement of wrongful death claims when a lawsuit was filed.** Notwithstanding Nautilus' acknowledgment in Nautilus' Motion that no lawsuit was ever filed concerning the claims asserted on behalf of the Satterfield Estate, the Court should disregard the

statutes and court rules cited throughout Nautilus' Motion governing circumstances where "an action" was filed. Those statutes and court rules are not relevant to the claims or defenses in this lawsuit.

Nautilus' Motion essentially presents the Court with a false dichotomy, arguing whether the terms of Mr. Grantland's letter dated April 22, 2019, delivering the settlement proceeds were honored or not, and if not, Mr. Fleming is liable. When, in fact, the terms of the April 22, 2019 letter were modified, Nautilus accepted the modifications, and the evidence and testimony demonstrate Mr. Fleming complied with the modified terms. Nautilus' Motion then suffers confirmation bias, giving particular weight to things that fit its pre-existing beliefs all Defendants are liable and not giving any weight or even acknowledging the evidence or testimony contradicting those pre-existing beliefs.

Nautilus' Motion should be denied.

## STANDARD OF REVIEW

This Court recently described the standard of review for a motion for summary judgment:

> To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

*Just. Farms of N. Carolina, LLC v. Claas of Am., Inc.*, No. CV 2:23-1421-RMG, 2024 WL 473715, at *2 (D.S.C. Feb. 1, 2024).

## ESTABLISHED AND DISPUTED FACTS

The following table describes the disputed facts and record support of those disputed facts, which demonstrate as a matter of law that Nautilus' Motion should be denied as it asks the Court a) to ignore the modified terms for disbursing the settlement proceeds, b) asks this Court to accept its bald conclusions that Mr. Fleming was involved in presenting false testimony[1], and c) asks the Court to apply statutes and court rules governing wrongful death lawsuits, notwithstanding Nautilus' acknowledgment there was no lawsuit filed in the underlying matter.

| Date | Established and Disputed Facts | Record Support |
|------|-------------------------------|----------------|
| 04/22/2019 | Mr. Grantland sent a letter to Mr. Fleming enclosing the $3,800,000 settlement proceeds check made payable to *Chad Westendorf as Personal Representative of the Estate of Gloria Satterfield and Moss, Kuhn and Fleming, P.A.* The letter states, "**Please hold the settlement funds in trust <u>until the Petition and Order Approving Settlement have been</u> *<u>signed and filed at the Probate Court settlement hearing.</u>*" <br><br> Later developments changed such that the wrongful death settlement approval hearing took place in Circuit Court, and the unfiled original Order was mailed and emailed to Mr. Grantland for filing at their discretion. | Grantland letter to Fleming, dated Apr. 22, 2019; M&G000020 and NAUTILUS_002565-566, previously filed as ECF 189-18 (emphasis added). |
| 04/22/2019 | Mr. Fleming testified about the letter from Mr. Grantland dated April 22, 2019, with the enclosed settlement proceeds check: | Deposition of Cory Fleming, taken Feb. 14, 2024, 48:7-48:25; |

---

[1] The Court should reject the negative inferences suggested by Nautilus' Motion concerning having Mr. Westendorf appointed as the Successor PR. There is no evidence or testimony supporting Nautilus' claim on p. 5 of their Motion that Mr. Fleming "did not want to disclose the settlement to Tony" Satterfield, and therefore "instructed his staff to hold the check until [Mr.] Westendorf was appointed as the Successor PR of the Estate."

| Date | Established and Disputed Facts | Record Support |
|------|-------------------------------|----------------|
| | 48:7    Q.  This letter told you to hold the funds in<br>48:8  your trust account until there was a signed and<br>48:9  filed order from the probate court; is that<br>48:10  correct?<br>48:11        MR. CLEMENT:  Objection to the form.<br>48:12    A.  It says:  Please hold these settlement<br>48:13  funds in trust until the petition and order<br>48:14  approving settlement have been signed and filed at<br>48:15  the probate court settlement hearing.<br>48:16    Q.  That's a pretty standard request in your<br>48:17  experience?<br>48:18    A.  The holding funds is, not the probate<br>48:19  part.<br>48:20    Q.  Leaving probate aside, so holding funds<br>48:21  until there has been an order approving the<br>48:22  settlement and filed, is that a pretty standard<br>48:23  request?<br>48:24    A.  That's standard to hold the funds **until**<br>**48:25  there is an order approving settlement, yes**. | previously filed as ECF 189-25. |
| 05/06/2019 | Mr. Grantland and Ms. Miller exchanged emails about the wrongful death settlement approval hearing. Mr. Grantland explained, "We hope to have the hearing next week in *common pleas court*. We were originally going to do the approval in *probate court* since that would be more secretive and under the radar. But the probate court is backed up and will not give us a date. We can have the hearing next week with the Circuit Court judge, and Cory Fleming and I are both working on getting it scheduled with the judge." | Grantland email to Miller dated May 6, 2019; NAUTILUS_000678-679, previously filed as ECF 189-19. |
| 05/13/2019 | The wrongful death settlement approval hearing was heard by the Hon. Carmen T. Mullen in the Hampton County Courthouse with Mr. Fleming and Mr. Westendorf in attendance. Mr. Grantland testified that he went to the Beaufort County Courthouse under the mistaken belief that the hearing was being held there. During the hearing, Judge Mullen signed the Order Approving Settlement prepared by Mr. Grantland and gave the signed original Order to Mr. Fleming. | Order Approving Settlement, dated May 13, 2019; M&G000045, previously filed as ECF 189-21.<br><br>Grantland depo., 108:1 – 108:20 taken on March 12, 2024; previously filed as ECF 189-26. |
| 05/13/2019 3:41 PM | **After returning from the hearing, Mr. Fleming emailed Mr. Grantland a digital copy of the** | Fleming email to Grantland with digital |

| Date | Established and Disputed Facts | Record Support |
|---|---|---|
| | **signed original Order.** | copy of original Order, dated May 13, 2019; M&G000785 and M&G000045-048, previously filed as ECF 189-22. |
| 05/13/2019 | **After returning from the hearing, Mr. Fleming, sent a letter via US mail to Mr. Grantland providing "the original Order Approving Settlement, …."** | Fleming letter to Grantland with the original Order, dated May 13, 2019; M&G Supp to Second ODC Sub 025, previously filed as ECF 189-24. |
| >04/22/2024 | Mr. Fleming testified about the modification of the plans for the Order Approving Settlement:<br><br>50:23   Q.  So in what way did you not have a duty to<br>50:24  comply with the instructions to hold the funds in<br>50:25  trust until the order approving settlement was<br>51:1  signed and filed?<br>51:2        MR. CLEMENT:  Objection to form.<br>51:3     A.  Those instructions were modified.<br>51:4     Q.  In what way?<br>51:5     *A.  There was a specific understanding between*<br>51:6  *myself and counsel for Nautilus that first that we*<br>51:7  *were not going to have the probate court do it*<br>51:8  *because we typically used the circuit court.*  We<br>51:9  never used the probate court for approval.  That's<br>51:10  not to say you can't; it's just easier in my<br>51:11  experience to get the circuit court to do it,<br>51:12  wherever it may be.  *Then secondly that the signed*<br>51:13  *order -- I was not going to be responsible for the*<br>51:14  *filing of the signed order.*<br>51:15    Q.  You say you had an understanding about<br>51:16  that.  How did that understanding come to be?<br>51:17    A.  There was a discussion.  I don't remember<br>51:18  exactly.  *I think Mr. Murdaugh initiated it, but he*<br>51:19  *indicated to Mr. Grantland that he did not want the*<br>51:20  *settlement filed until the boat wreck stuff -- I*<br>51:21  *think we all know what I'm talking about -- until*<br>51:22  *the publicity from the boat wreck calmed down.*<br>51:23        *So I agreed to have it approved and that I*<br>51:24  *would send it to Mr. Grantland, and then*<br>51:25  *Mr. Grantland could file it whenever he felt* | Deposition of Cory Fleming, taken Feb. 14, 2024, 50:23-52:6; previously filed as ECF 189-25. |

| Date | Established and Disputed Facts | Record Support |
|------|-------------------------------|----------------|
| | 52:1 *necessary.*<br>52:2   Q.  You referred to I believe counsel for<br>52:3 Nautilus.  You mean counsel for Mr. Murdaugh;<br>52:4 correct?<br>52:5   A.  I'm sorry.  I thought it was one and the<br>52:6 same, but yes. | |
| 05/13/2019<br>5:49 PM | Mr. Grantland emailed Ms. Miller stating in relevant part, "**attached is the order approving the settlement. The original is on the way.**" | Grantland email to Miller dated May 13, 2019, 5:49 PM EST; M&G001935 and M&G000045-048, previously filed as ECF 189-23. |
| > 05/13/2019 | Mr. Fleming further testified about the modification of the plans for the Order Approving Settlement:<br><br>54:3   Q.  And you agree that you had a<br>54:4 responsibility to hold -- whatever the modification<br>54:5 of any agreement was, you agree you had a<br>54:6 responsibility to hold the funds in trust until<br>54:7 there was a valid settlement; correct?<br>54:8      MS. WILLIAMSON:  Object to form.<br>54:9      MR. PENDARVIS:  Objection.<br>54:10      MR. CLEMENT:  Objection to the form.<br>54:11   **A.  I believe that I complied with everything**<br>54:12 **I was supposed to comply with regarding that.** | Deposition of Cory Fleming, taken Feb. 14, 2024, 54:3-54:12; previously filed as ECF 189-25. |
| > 05/13/2019 | Mr. Fleming further testified about the plans for filing the Order Approving Settlement:<br><br>57:23   I do remember, however, explaining<br>57:24 to the judge that -- she didn't need to be told,<br>57:25 but that there was lots of publicity and that we<br>58:1 wanted to delay the filing for sometime until it<br>58:2 went down and that I would leave it either -- I did<br>58:3 not say I would file it, but I would leave it to<br>58:4 them to determine when they wanted to file it,<br>58:5 "them" meaning Alec's side, not differentiating him<br>58:6 or the insurance company or anybody, but I'll leave<br>58:7 it to them when it will be filed. | Deposition of Cory Fleming, taken Feb. 14, 2024, 57:23-58:7; previously filed as ECF 189-25. |
| > 05/13/2019 | Mr. Fleming further testified about the modification of the plans for the Order Approving Settlement:<br><br>58:13  Q.  No disagreements, correct, that following | Deposition of Cory Fleming, taken Feb. 14, 2024, 58:13-58:21; previously filed as ECF |

| Date | Established and Disputed Facts | Record Support |
|------|-------------------------------|----------------|
|  | 58:14  that hearing you disbursed money from Moss, Kuhn & <br> 58:15  Fleming's trust account to Forge without the order <br> 58:16  having been filed? <br> 58:17      MR. PENDARVIS: Form objection. <br> 58:18  **A.  I certainly disbursed money, and it** <br> 58:19  **appears that the order has not been filed; however,** <br> 58:20  **all parties knew it was not going to be filed** <br> 58:21  **including Mr. Grantland.** | 189-25. |

## Arguments

I.    **The parties' communications and conduct modified the terms for disbursing the settlement proceeds, and Nautilus accepted the modified terms to establish an enforceable settlement agreement that was not breached**.

The evidence and testimony show the terms for dispersing the settlement proceeds were modified and that Nautilus accepted the modifications, as shown in the communications between Mr. Grantland and Mr. Fleming and as shown by Nautilus' conduct. Nautilus has not and cannot present any evidence showing Mr. Fleming breached the modified agreement or any purported fiduciary duties Nautilus claims he owed and has not and cannot present any evidence establishing a proximate causal link between any of Mr. Fleming's acts or omissions and any alleged damages claim by Nautilus.

In the Fifth Cause of Action alleged by Nautilus in its Second Amended Complaint, Nautilus makes several conclusory allegations, including the allegations in Paragraph 60, claiming, "A fiduciary duty was owed by Fleming, … to Nautilus, on account of the deposit of funds paid by Nautilus for the benefit of the Satterfield Estate into MKF's trust account by Fleming, to ensure the funds were distributed to the intended beneficiaries only after an order approving the settlement had been signed and filed." *See* (Dkt. 154, p. 13, ¶ 60).  Nautilus' Sixth Cause of Action asserts claims against Mr. Fleming for "breach of an agreement." *See* (Dkt. 154, p. 13, ¶P 65-70). Both of

these causes of action are founded upon Mr. Grantland's letter to Mr. Fleming delivering the settlement proceeds check. This letter states, *"Please hold the settlement funds in trust until the Petition and Order Approving Settlement have been signed and filed at the Probate Court settlement hearing*." *See* (Grantland letter to Fleming, dated Apr. 22, 2019; M&G000020 and NAUTILUS_002565-566, previously filed as ECF 189-19). The plans for the settlement approval hearing and filing of the Order were changed by agreement, and the testimony and evidence concerning the modification and Nautilus' acceptance of the modified terms is the basis for Mr. Fleming's motion for summary judgment on these two causes of action and his opposition to Nautilus' Motion.

"A modification of a written contract must fulfill all of the elements required for a valid contract." *Roberts v. Gaskins,* 486 S.E.2d 771, 773 (S.C. App. 1997) (citing *Player v. Chandler*, 382 S.E.2d 891 (S.C. 1989)); *see also Lee v. Univ. of S.C.*, 757 S.E.2d 394, 398 (S.C. 2014) (quoting *Layman v. State*, 630 S.E.2d 265, 269 (S.C. 2006)) ("Once [a] bargain is formed, and the obligations set, a contract may only be altered by mutual agreement and for further consideration."). "The elements required for formation of a contract are an offer, acceptance, and valuable consideration." *Hardaway Concrete Co., Inc. v. Hall Contracting Corp.*, 647 S.E.2d 488, 492 (S.C. App. 2007) (citing *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003)). "Valuable consideration to support a contract may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Factor King, LLC v. Dooleymack Constructors of S.C., LLC*, No.: 2:17-cv-1845-PMD, 2017 WL 5001289, at *2 (D.S.C. Nov. 2, 2017) (internal quotation marks omitted) (quoting *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 687 S.E.2d 714, 718 (S.C. App. 2009)).

Parol evidence may be used to show that there was a subsequent agreement or modification to a contract. *Adamson v. Marianne Fabrics, Inc.*, 391 S.E.2d 249, 250 (S.C. 1990).

The terms for disbursing the settlement proceeds were modified (with the modified terms in italics) to require Mr. Fleming to "hold the settlement funds in trust until the Petition and Order Approving Settlement have been signed *by a Circuit Court judge and the original Order returned to Mr. Grantland to be filed at the discretion of Nautilus and its insured.*" *See* (Fleming email to Grantland with a digital copy of the original Order, dated May 13, 2019; M&G000785 and M&G000045-048, previously filed as ECF 189-22); (Fleming letter to Grantland with the original Order, dated May 13, 2019; M&G Supp to Second ODC Sub 025, previously filed as ECF 189-24); (Deposition of Cory Fleming, taken Feb. 14, 2024, 50:23-52:6, and 54:3-12; previously filed as ECF 189-25) ("Q. And you agree that you had a responsibility to hold -- *whatever the modification of any agreement was*, you agree you had a responsibility to hold the funds in trust until there was a valid settlement; correct? …. A. I believe that I complied with everything I was supposed to comply with regarding that.").

Here, counsel for the parties agreed the wrongful death settlement approval hearing would take place in Circuit Court instead of Probate Court as one of the modifications of the terms in Mr. Grantland's original cover letter delivering the settlement proceeds check to Mr. Fleming. Mr. Grantland and his client, Alec Murdaugh, were concerned about the publicity that could develop if the settlement approval hearing were heard in Circuit Court and the effects that such publicity may have on the circumstances surrounding the boat accident involving his son, Paul Murdaugh. *Compare* (Grantland letter to Fleming, dated Apr. 22, 2019; M&G000020 and NAUTILUS_002565-566, previously filed as ECF 189-18) *with* (Grantland email to Miller dated May 6, 2019; NAUTILUS_000678-679, previously filed as ECF 189-19) ("We hope to have the

hearing next week in *common pleas court*. We were originally going to do the approval in *probate court* since that would be more secretive and under the radar. But the probate court is backed up and will not give us a date. We can have the hearing next week with the Circuit Court judge, and Cory Fleming and I are both working on getting it scheduled with the judge.") (emphasis added).

Counsel also agreed to a second modification of the terms for disbursing the settlement proceeds whereby Mr. Grantland, Nautilus, and Mr. Murdaugh would determine when the Order would be filed. *See*; (Deposition of Cory Fleming, taken Feb. 14, 2024, 50:23-52:6; included as Exhibit 26) ("*I was not going to be responsible for the <u>filing</u> of the signed order.*") ("*I think Mr. Murdaugh initiated it, but he indicated to Mr. Grantland that he did not want the settlement filed until the boat wreck stuff – I think we all know what I'm talking about – until the publicity from the boat wreck calmed down. So I agreed to have it approved and that I would send it to Mr. Grantland, and then Mr. Grantland could file it whenever he felt necessary.*"); (Fleming email to Grantland with a digital copy of the original Order, dated May 13, 2019; M&G000785 and M&G000045-048, previously filed as ECF 189-22); (Fleming letter to Grantland with the original Order, dated May 13, 2019; M&G Supp to Second ODC Sub 025, previously filed as ECF 189-24); (Deposition of Cory Fleming, taken Feb. 14, 2024, 50:23-52:6; previously filed as ECF 189-25).

Nautilus accepted the modified terms as shown by Mr. Grantland's statement in his email to the Nautilus adjuster advising, "**attached is the order approving the settlement. The original is on the way**." *See* (Grantland email to Miller dated May 13, 2019, 5:49 PM EST; M&G001935 and M&G000045-048, previously filed as ECF 189-23). There is no evidence or testimony showing Nautilus objected to the modified terms. Although Mr. Grantland testified in 2024 he understood he would receive a filed copy of the Order Approving Settlement, it is significantly important to note that in 2019 when he received the email (and the letter) with the "original Order" that had not

been filed, he did not send a reply email, make a phone call, or send a letter to Mr. Fleming questioning why the Order had not been filed. The same is true for Ms. Miller / Nautilus, when she received Mr. Fleming's email forwarded by Mr. Grantland. At that point, Nautilus was in total control of when, where, and how the Order would be filed. Nothing was preventing Nautilus from filing the Order.

The evidence and testimony show that Mr. Fleming complied with the modified terms for dispersing the Satterfield Estate settlement proceeds. The South Carolina Circuit Court conducted a hearing, approved the wrongful death settlement, and signed an Order. Mr. Fleming emailed and mailed the original Order approving the settlement to counsel retained by Nautilus.

Nautilus achieved its objective to obtain an enforceable release from the Satterfield Estate terminating any claims against their insured, Alec Murdaugh, related to the death of Ms. Satterfield, thereby avoiding any substantial judgment they feared may have been awarded by a Hampton County (or Collison County) jury and any consequent bad faith claims that may have been threatened by Alec Murdaugh. The Satterfield Estate satisfied its objective to obtain a substantial recovery for the wrongful death of Mrs. Satterfield, notwithstanding Alec Murdaugh's subsequent theft of those settlement proceeds. The parties, Nautilus and the Satterfield Estate, satisfied the statutory requirements that "any settlement of a wrongful death or survival action must be approved by either a probate court, circuit court or United States District Court, as provided in Section 15-51-42," and a written Order was issued. *See* S.C. CODE ANN. § 15-51-41.

All of the evidence and testimony on this point can be reasonably viewed in only one way: The terms of Mr. Grantland's April 22, 2019, letter to Mr. Fleming were modified such that Nautilus and Mr. Murdaugh were in control of filing the original Order that Mr. Fleming mailed to them.

"To establish a claim for breach of fiduciary duty, Plaintiffs must show: (1) the existence of

a fiduciary relationship; (2) a breach of that duty; and (3) damages proximately resulting from the wrongful conduct of the defendant." *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 234216, at *5 (D.S.C. Jan. 22, 2014) (citing *Turpin v. Lowther*, 745 S.E.2d 397, 401 (S.C. App. 2013)). The existence of a fiduciary duty is a question of law for the court. *See Vortex Sports & Entm't, Inc. v. Ware*, 662 S.E.2d 444, 450 (S.C. App. 2008) (citing *Clearwater Trust v. Bunting*, 626 S.E.2d 334, 337 (S.C. 2006)). "A confidential or fiduciary relationship exists when one imposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *SSI Med. Servs., Inc. v. Cox*, 392 S.E.2d 789, 794 (S.C. 1990). "To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own behalf but in the interest of the party so reposing." *Moore v. Moore*, 599 S.E.2d 467, 472 (S.C. App. 2004).

"The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *J & W Corp. of Greenwood v. Broad Creek Marina of Hilton Head, LLC*, 896 S.E.2d 328, 342 (S.C. App. 2023) (citing *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. App. 2009)).

Nautilus has not and cannot present facts establishing Mr. Fleming's breach of the modified duties from Mr. Fleming to Nautilus controlling dispersing the settlement proceeds, even if the Court determines a fiduciary relationship existed. Nautilus has not and cannot present facts establishing a causal link between any acts or omissions by Mr. Fleming because 1) Nautilus was already obligated to deliver the $3.8 million settlement proceeds to the agent for the Satterfield Estate under the terms of the Release and under the terms of the Order Approving Settlement signed by Judge Mullen; and 2) the terms permitting dispersal of the settlement proceeds as outlined in

Mr. Grantland's April 22, 2019 letter to Mr. Fleming were modified and Mr. Fleming satisfied all the modified terms.

There are genuinely disputed material facts regarding Nautilus' claims that Mr. Fleming was not permitted to disperse the settlement proceeds. Nautilus' Motion should be denied.

**II.    Nautilus presents no evidence showing Mr. Fleming falsified any evidence or had knowledge of Alec Murdaugh's criminal or tortious plans until after the Nautilus settlement was consummated.**

Mr. Fleming honored the modified agreement concerning the release of the Nautilus settlement proceeds as shown in the preceding Section. Nautilus' Motion contains only arguments unsupported by any evidence or testimony as part of its claim that Mr. Fleming "is at fault for the improper release of funds." Nautilus' Motion at pp. 18, 21-25. The conduct for which Mr. Fleming pled guilty before this Court to a charge of "conspiracy to commit wire fraud" was limited to an improper "disbursement sheet to a Circuit Court outlining fraudulent prosecution expenses" and a second improper "disbursement sheet to a Circuit Court outlining inaccurate attorney fees and fraudulent prosecution expenses." *See* (Transcript of Arraignment and Change of Plea, 4:13-5:5, 187-1). Mr. Fleming's conduct leading to his guilty plea to the charge of conspiracy to commit wire fraud affected only the Satterfield Estate and, ultimately, Mr. Fleming. But did not affect the decision Nautilus made to settle with the Satterfield Estate or the modified agreement controlling the disbursement of the Satterfield settlement proceeds.

The Court should carefully review the extraordinary characterizations concerning Mr. Fleming's conduct cited on pp. 22-25 of Nautilus' Motion. These characterizations often omit material points or misconstrue the testimony or evidence cited. For example, in the fourth bullet point on page 22, Nautilus states, "*[Mr. Fleming] knew Mr. Murdaugh intended to take money away from the funds recovered*," citing testimony on pages 40 and 41 from Mr. Fleming's deposition.

Page 14 of 19

Nautilus' Motion, p. 22 citing (Fleming deposition, 40:24-41:8). That was not Mr. Fleming's

testimony. What Mr. Fleming testified was:

> 24    Q. Mr. Fleming, you previously admitted I
> 25  believe that you were aware that Mr. Murdaugh
> 1  intended to steal at least some of the money; is
> 2  that correct?
> 3    A. That's not correct.
> 4    Q. How is that incorrect, please?
> 5    A. It's too broad a statement. I did not
> 6  know until it -- there was a time that I knew it,
> 7  but it was not during any of the time frame that
> 8  we've been discussing.
> 9    **Q. When did you come to be aware that he**
> 10  **intended to steal a portion of the money?**
> 11    A. I'm going to push back a little bit on
> 12  your characterization. I'm not going to call it
> 13  steal. I'm just going to tell you what happened.
> 14  I will tell you what we discussed, and then you can
> 15  put whatever label you want to on it. I'm not
> 16  trying to be cute. I don't want to use labels.
> 17  **It was <u>subsequent to</u> the second settlement**
> 18  **and the discussions about distribution of the**
> 19  **funds**. I had at his request but also my
> 20  acquiescence agreed to significantly reduce that
> 21  portion of my fee as well. The difference this
> 22  time was that Mr. Murdaugh -- he said, well, that's
> 23  about $700,000 that you're not charging them.

(Fleming deposition, 40:24-41:23) (emphasis added).

The first three bullet points on page 22 characterize conduct typical of lawyers prosecuting wrongful death claims, such as accepting the representation of the client, drafting letters, including letters to insurance carriers, and demanding payouts under their policies. Mr. Fleming's conduct characterized in the remaining bullet points on page 22 describes conduct occurring either after Mr. Fleming sent the original Order Approving Settlement to Mr. Grantland or conduct related to Mr. Fleming's misrepresentations concerning attorney's fees and expenses, or conduct related to Mr. Fleming's communications with Mr. Westendorf, none of which adversely affected Nautilus or the

terms of the modified agreement concerning disbursement of the settlement proceeds.

Nautilus' Motion cites no evidence or testimony suggesting Mr. Fleming falsified any evidence, or counseled or assisted any witness to testify falsely in violation of his duties under the South Carolina Rules of Professional Responsibility. *See* Rule 3.4(b), RPC Rule 407, SCACR (Fairness to Opposing Party and Counsel – "A lawyer shall not: (b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law[.]")

In summary, and as argued in Mr. Fleming's motion for summary judgment, Mr. Fleming had almost no involvement in the information Nautilus relied on in settling the claims asserted on behalf of the Satterfield estate. Nautilus' Motion also cites no testimony or evidence showing Mr. Fleming had any knowledge or involvement in any statements made by Alec Murdaugh to Nautilus concerning the cause of Mrs. Satterfield's death. Nautilus' Motion should be denied.

**III.    Because no lawsuit was filed on the Satterfield Estate's claims, the Court should reject Nautilus' arguments Mr. Fleming failed to comply with statutory and court rule provisions governing the settlement of wrongful death claims when a lawsuit was filed.**

Nautilus' Motion makes multiple inaccurate claims and representations, suggesting a lawsuit or "civil action" was filed related to the settlement of the Satterfield Estate's wrongful death claim when Nautilus is aware that no lawsuit or "civil action" was filed or was required to be filed. *Compare,* Nautilus' Motion, p. 6 ("The Probate Court was never notified about the civil actions ….."); *with* Nautilus' Motion, p. 7 ("As no other case had been filed, …."); Nautilus' Motion, p. 10 ("In fact, there was no action that had been filed under the caption contained in the proposed order.").

All parties to the wrongful death settlement agreement complied with S.C. CODE ANN. § 15-51-41 because the settlement agreement was approved by a written order issued by Judge Mullen. *See* S.C. CODE ANN. §15-51-41 ("Any settlement of a wrongful death or survival action

must be approved by either a probate court, circuit court, or United States District Court, as provided in Section 15-51-42."). All parties to the wrongful death settlement agreement also complied with S.C. CODE ANN. § 15-51-42(B), which controls the approval of wrongful death settlements when "no action is pending."

Section 15-51-42(B) provides:

(B) If no action is pending, the personal representative shall petition either the probate or the circuit court of this State seeking approval of a proposed settlement. The petition must be verified by the personal representative and shall set forth, in terms satisfactory to the court in which the petition is filed, the basic facts surrounding the death of the decedent, the pertinent facts surrounding the liability of the alleged wrongdoer, the amount of insurance available to pay for damages, the terms of the proposed settlement, the statutory beneficiaries of the wrongful death or survival action, the heirs at law or appropriate devisees of the estate, the appropriate creditors, the amount of their claims, and, if the personal representative has retained legal counsel, the terms and provisions of the agreement with respect to attorney's fees and costs.

It is not necessary that a personal representative be represented by legal counsel for the court to consider the petition and approve the settlement. If the personal representative is represented by legal counsel, the counsel shall sign a certificate attesting to the fact that he is of the opinion that the settlement is fair and reasonable and in the best interests of the statutory beneficiaries and, in a survival action, the estate of the decedent.

The court shall schedule a hearing and receive into evidence those facts that the court considers necessary and proper to evaluate the settlement. After conducting this inquiry, the court shall issue its order either approving or disapproving the proposed settlement. If the settlement is approved by the court, the personal representative has the power to conclude the settlement, including the execution of those documents as the settlement terms contemplate.

S.C. CODE ANN. § 15-51-42(B).

The verified petition for approval of the wrongful death settlement prepared by Mr. Grantland was presented to Judge Mullen as required under Section 15-51-42(B). *See* (Order Approving Settlement, dated May 13, 2019, p. 1, ECF 187-28); (Deposition of Cory Fleming, taken Feb. 14, 2024, 60:5-8; previously filed as ECF 189-25) ("The documents themselves were prepared

by Mr. Grantland, and disbursement sheets were prepared by my office with my direction."). The verified petition satisfied the statutory requirements as Judge Mullen signed the Order Approving Settlement, after conducting a hearing. *See* Nautilus' Motion, p. 7. After the hearing, and after Judge Mullen signed the Order Approving Settlement, Mr. Westendorf, as Personal Representative of the Satterfield Estate was permitted to execute the Release and consummate the settlement.

Nautilus' arguments claim Judge Mullen "should not have heard the matter because the petition relating to Nautilus had never been filed, and no action had ever been filed with the caption provided to Judge Mullen," citing Rule 79(c), SCRCP. This argument ignores the provisions in Section 15-51-42(B) permitting the settlement of wrongful death claims without a lawsuit being filed.

Because no lawsuit was filed to obtain court approval of the wrongful death settlement, the court need not address Nautilus' arguments on pages 9-18 of Nautilus' Motion and citation to Rule 79(e), SCRCP; S.C. CODE ANN. § 15-51-42(C) (governing wrongful death settlement agreements when "a wrongful death or survival action has been filed in state court."); and S.C. CODE ANN. § 15-51-42(F) ("Any person bringing a wrongful death or survival action in a court ….."); and Rule 43(k), SCRCP. All those arguments, statutory provisions, and court rules apply only when a civil action asserting wrongful death claims or survival claims has been filed.

The Court should also reject Nautilus' arguments that because the Order Approving Settlement was not filed, there is no settlement. Nautilus received the Order Approving Settlement shortly after it was issued. *See* (Fleming email to Grantland with a digital copy of the original Order, dated May 13, 2019; M&G000785 and M&G000045-048, previously filed as ECF 189-22); (Fleming letter to Grantland with the original Order, dated May 13, 2019; M&G Supp to Second ODC Sub 025, previously filed as ECF 189-24); and (Deposition of Cory Fleming, taken Feb. 14,

2024, 50:23-52:6; previously filed as ECF 189-25). Nautilus was and still is in total control of if, how, when, and in what court the Order Approving Settlement could or would be filed.

The Court should also reject Nautilus' arguments concerning S.C. CODE ANN. § 15-51-42(G) as provisions concerning the administration of an estate, not whether a settlement agreement is binding.

Nautilus' arguments Mr. Fleming failed to comply with statutory and court rule provisions governing the settlement of wrongful death claims when a lawsuit was filed should be denied because no lawsuit was filed on the Satterfield Estate's claims. These statutes and court rules have no application here.

## CONCLUSION

Defendant, Cory H. Fleming, respectfully moves for an Order denying Nautilus' Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ *Thomas A. Pendarvis*
Thomas A. Pendarvis (Fed. Id. 5785)
PENDARVIS LAW OFFICES, P.C.
710 Boundary Street, Suite 1-A
Beaufort, SC 29902
843.524.9500
Thomas@PendarvisLaw.com

*Counsel for Defendant, Cory H. Fleming*

Beaufort, South Carolina
May 1, 2024