UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | Case No.: 2:22-cv-1307-RMG |
| ) | |
| Petitioner, ) | **DEFENDANT PALMETTO** |
| vs. ) | **STATE BANK'S REPLY TO** |
| ) | **PLAINTIFF'S RESPONSE IN** |
| RICHARD ALEXANDER MURDAUGH, SR., ) | **OPPOSITION TO MOTIONS FOR** |
| CORY FLEMING, MOSS & KUHN, P.A., CHAD ) | **SUMMARY JUDGMENT** |
| WESTENDORF, PALMETTO STATE BANK, ) | **(ECF ENTRY NO. 208)** |
| and THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondents. ) | |

Defendant Palmetto State Bank ("PSB") hereby submits its Reply to the Plaintiff, Nautilus Insurance Company's ("Nautilus") Response in Opposition, (ECF Entry No. 208), to the Motions for Summary Judgment filed by PSB and Chad Westendorf, (ECF Entry Nos. 190 and 191). PSB respectfully requests that this Honorable Court grant PSB's Motion for Summary Judgment for the reasons set forth therein and those explained below.

**I.     OVERVIEW**

PSB has moved for summary judgment on several grounds, including the lack of proof that either PSB or Chad Westendorf knew the following: (1) that Alex Murdaugh contrived the facts in his version of Gloria Satterfield's fall at Moselle on February 2, 2018; (2) that any person intended to misappropriate settlement proceeds recovered for the Estate of Gloria Satterfield; or (3) that any payments made by Murdaugh on a PSB loan may have been funded, in part, by Satterfield settlement proceeds that were misappropriated by him and deposited in his "Forge" account at Bank of America. Nothing in Nautilus's Response in Opposition to PSB's Motion for Summary Judgment refers to anything in the record that rebuts those truths.

Instead, Nautilus fills sixty pages with sweeping generalizations and characterizations impugning PSB and Westendorf that are without any reference to evidence in the record. Why?

Because there is none.

The only specific "action" of PSB related to the Satterfield Estate identified by Nautilus is that PSB did not object to Westendorf serving as personal representative in his individual capacity before he accepted the position. The failure to object does not amount to knowledge of anything other than that Westendorf was going to serve as a personal representative of an estate in a lawsuit.

The only actions of Westendorf that Nautilus points to are alleged shortcomings in his role as personal representative for the Satterfield Estate. However, his legal duties in that capacity were owed to the estate and its beneficiaries, not to Nautilus, the insurance company providing excess liability coverage to an *adverse* party. Whether he fulfilled those duties was the subject of a case brought by the Satterfield Estate against PSB and Westendorf that was settled more than two years ago.

Despite the Court's admonishing Nautilus about relying on the conduct of Russell Laffitte years before the Satterfield matter, Nautilus found itself unable to refrain from exhaustively referring to those actions as supposed proof in support of its claims against PSB and Westendorf in this case.

Even though those actions of Russell Laffitte are unrelated to the Satterfield matter, prejudicial, and should not be considered, there are important distinctions as the Court well knows. Russell Laffitte's processing of checks from PMPED's IOLTA account that were the settlement proceeds of Hakeem Pinckney, Natarsha Thomas, and Arthur Badger occurred between December 2011 and September 2013, and have no connection to the Satterfield matter years later.[1] Unlike

---

[1] Nautilus also refers to Laffitte's service as custodian for Hannah Plyler that ended in 2015. Nautilus incorrectly asserts that Laffitte and Murdaugh stole money from this account. Not so. The allegations against Laffitte center on his alleged mismanagement of the entrusted funds and self-dealing in making loans to himself and Murdaugh; there is no allegation that he stole the entrusted funds. See Civil Action No 2022-CP-25-00241 (Hampton CP).

the Satterfield matter, these prior cases concerned legitimate accidents; none involved Murdaugh's fabrication of the facts of an accident to dupe a liability insurance company. In those cases, Russell Laffitte served individually as personal representative for clients of PMPED. He did not serve as a fiduciary for a party adverse to a client of Murdaugh, much less Murdaugh himself. Furthermore, as the Court also knows, the funds generated from settlements in those prior instances were deposited in PMPED's IOLTA account at PSB, and the ensuing misappropriation involved PMPED checks made payable to PSB and signed by Murdaugh. Whereas, in the Satterfield matter, the settlement funds were deposited in Fleming's law firm's IOLTA account at BB&T, and the ensuing misappropriation involved MKF checks written to "Forge" that Murdaugh deposited in his account at Bank of America. Moreover, in all those prior cases, Murdaugh misappropriated the settlement funds of his law firm's clients, not the settlement funds of an adverse party threatening to sue him. Thus, the so-called scheme used by Murdaugh to misappropriate funds from accounts at PSB years earlier was entirely different from what transpired in the Satterfield matter. The Court is correct at this stage in not allowing Nautilus to rely on these unrelated, dissimilar misdeeds of the past as proof of Westendorf or PSB's culpability in the Satterfield matter.

      Additionally, Nautilus is mistaken in arguing that PSB's motion for summary judgment is based entirely on the lack of proximate cause and that PSB's motion cannot be decided until the Court has ruled on whether the settlement was legally invalid and unenforceable. (ECF Entry No. 208 at 1). Lack of proximate cause is just <u>one</u> ground for PSB's Motion. Nautilus is also incorrect that any question as to the validity of the Judge Mullen's order approving settlement stands in the way of PSB's Motion for summary judgment for the many reasons addressed in PSB's Memorandum in Opposition to Nautilus's Motion for Partial Summary Judgment that need not be repeated in this Reply. (ECF Entry No. 204).

**II.     REPLY ARGUMENT**

**1.      CIVIL CONSPIRACY**

Civil conspiracy is an intentional tort. As explained in PSB's Motion for Summary Judgment, (ECF Entry No. 190 at 16), establishing a claim for civil conspiracy requires a plaintiff to put forth evidence that, <u>inter alia</u>, the defendant combined or agreed with one or more persons to commit an unlawful act, or a lawful act by unlawful means, <u>for the purpose of harming the plaintiff</u>. (ECF Entry No. 190 at 16). Some proof that the defendant "acted with malice" is required to establish the requisite specific intent of this intentional tort. <u>See</u> <u>MST, LLC v. N. Am. Land Tr.</u>, No. 2:22-CV-00874-DCN, 2023 WL 3571500, at *11 (D.S.C. May 19, 2023) (discussing specific intent post <u>Paradis</u>).

In its Response, Nautilus fails to produce admissible evidence of specific, material facts giving rise to a genuine issue regarding <u>any</u> of the essential elements of civil conspiracy, including specific intent to harm. Moreover, there is no evidence that PSB entered into an agreement or acted in concert with another person for the purpose of injuring Nautilus.

Nautilus had no relationship with PSB. Nautilus cannot even prove that PSB knew it existed. As purported evidence to the contrary, Nautilus points to Exhibit 11 to its Response. (<u>See</u> ECF Entry No. 208 at 12-13). Exhibit 11 is not proof that PSB knew Nautilus existed. It is a page from a PSB inspection report. It indicates only that PSB reviewed insurance for the buildings that were collateral for PSB's loan. Those insurance policies would have been property policies, not an umbrella liability policy entirely unrelated to the property coverages on the buildings that were the collateral for PSB's loan.

Nautilus also argues that it is not required to show PSB knew its "precise identity" as part of proving that PSB conspired with other for the purpose of injuring Nautilus. (ECF Entry No. 208

4

at 9). The decision of the district court in <u>Labelle v. Brown & Williamson Tobacco Corp.</u>, No. 2:98-cv-3235-23. 1999 WL 33591435, (D.S.C. Mar. 18, 1999), upon which Nautilus relies, was decided long before <u>Paradis v. Charleston County School District</u>, 433 S.C. 562, 861 S.E.2d 774 (S.C. 2021). <u>Paradis</u> makes clear that Nautilus must prove PSB's "specific intent to accomplish the contemplated wrong." 433 S.C. at 575, 861 S.E.2d at 780 n.9 (2021) (citing 16 Am. Jur. 2d Conspiracy § 53 (2020); <u>see</u> <u>also</u> <u>Jinks v. Sea Pines Resort, LLC</u>, No. 9:21-CV-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021) (explaining that "a claim for civil conspiracy requires at least some degree of relationship between the plaintiff and the alleged conspirators," and a civil conspiracy claim cannot lie "[w]here, for example, alleged conspirators acted out of a general desire to make a profit rather than to harm the plaintiff . . . .").

The time has come. Nautilus may no longer rest on its allegations or spattering its brief with broad characterizations of the facts that are not supported in the record. PSB is entitled to judgment as a matter of law on the civil conspiracy claim. This conclusion is inescapable, irrespective of the validity of Judge Mullen's signed order approving the settlement.

**2.     NEGLIGENCE**

**A.     Duty to Warn**

Given that it had no relationship with PSB, Nautilus attempts to fabricate a duty by arguing that PSB had a duty to warn because it had a "role in creating risk." (ECF Entry No. 208 at 16). Presumably Nautilus is contending that PSB should have warned the insurance company that the Estate's claim was suspicious and maybe fraudulent – just like Nautilus's own attorney did.

The negligent or intentional creation of the risk that harms the plaintiff is one of five exceptions to the rule that "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." <u>Faile v. S.C. Dep't of Juv. Just.</u>, 350 S.C. 315, 334, 566

S.E.2d 536, 546 (2002) (citing Restatement (Second) of Torts § 314 (1965) and Montgomery v. National Convoy & Trucking Co., 186 S.C. 167, 195 S.E. 247 (1938) (imposing duty to warn approaching vehicles of stalled trucks blocking an icy highway). The South Carolina Supreme Court has been reluctant to invoke the exceptions. See id. at 339 ("This Court is reluctant to impose the duty to control unless there is an established authority relationship and a substantial risk of serious harm.").

Here, PSB had no duty to warn Nautilus because it did not create the risk, substantial or not, that Nautilus would be defrauded. PSB did not know about Ms. Satterfield's fall, much less that Murdaugh fabricated his rendition of it. Unlike Nautilus, neither PSB nor Westendorf investigated the claim.

Yet, Nautilus contends that PSB is responsible for the creation of the risk because it allowed Murdaugh to remain in overdraft "persistently," which it calls "a significant red flag for money laundering," and "turned a blind eye" to Murdaugh stealing money in a conspiracy involving Russell Laffitte. (ECF Entry No. 208 at 16). PSB strongly disagrees with Nautilus's unsubstantiated assertion that overdrafts mean money laundering, which means theft.[2] Moreover, neither PSB nor Westendorf knew of anyone's plan to steal settlement proceeds and, in any event, Nautilus was not harmed by any hypothetical money laundering or the misappropriation of funds from any bank account at PSB. The harm that it allegedly suffered is that "Nautilus was defrauded into paying $3.8m," as Nautilus acknowledges in its Response. (See ECF Entry No. 208 at 9). Nautilus was not defrauded by the later theft of those funds. Because PSB did not create the risk, it had no duty to warn.

---

[2] This is just one of multiple sweeping assertions by Nautilus that lacks reference to any proof in the record to support it.

Moreover, because Nautilus knew the claim was suspicious, if not fraudulent, there was no duty on anyone to warn it regardless of who created the risk. Turbeville v. Avery Lumber Co., 155 S.C. 202, 152 S.E. 439, 440 (1930) (No duty to warn a plaintiff who has knowledge of the risk).[3]

Additionally, there is no precedent that the duty to warn has any application to a purely economic loss. The Restatement (Second) of Torts states that the duty to warn, when it arises, applies only to the risk of bodily harm. See Restatement (Second) of Torts § 321(1) (1965) ("If the actor does an act, and subsequently realizes or should realize that **it has created an unreasonable risk of causing physical harm to another**, he is under a duty to exercise reasonable care to prevent the risk from taking effect.") (double emphasis added); see also Mansha Consulting LLC v. Alakai, 236 F. Supp. 3d 1267, 1277 (D. Haw. 2017) (citing the Restatement and declining to impose a duty of care to prevent economic injury).

For multiple reasons, PSB had no duty to warn Nautilus of what it already knew as a matter of law.

### B. Duty to Train or Supervise

Nautilus contends that PSB had a duty to train Westendorf to be a personal representative or to supervise him in that role. Nautilus conveniently forgets the duties that Chad Westendorf owed as a personal representative were owed to the Estate of Gloria Satterfield. As the estate's personal representative, Westendorf owed no duties to Nautilus, the excess liability insurer for an adverse party. Any alleged negligence by PSB in the training or supervising of Westendorf as a personal representative in his individual capacity is not actionable by Nautilus since neither Westendorf nor PSB owned duties to Nautilus.

---

[3] Nautilus received that warning from its team of professionals, including its attorney who alerted Nautilus before it paid the claim that it was the worst case of insurance fraud ever. (ECF Entry No. 190-12).

### 3. THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

Nautilus fails to produce any evidence of an unfair or deceptive act that PSB committed against it. (See ECF Entry No. 208 at 21-24). All it does is point to Satterfield's application to be successor personal representative, but it fails to identify any specific unfair or deceptive statements in Westendorf's application. Nautilus does not argue that it relied on, or even knew of, this application. No statements in the application constitute an unfair or deceptive act in trade or commerce nor were they the proximate cause of Nautilus's purported loss. Without proof of any transaction with PSB or statement by Westendorf or PSB, Nautilus is lacking even the most rudimentary elements of a UTPA claim.

Despite these fundamental gaps in its proof, Nautilus argues that PSB ratified the statements and actions of Westendorf by allegedly *receiving* the benefit of the Satterfield settlement proceeds in the form of loan payments by Murdaugh. The allegation that Murdaugh used stolen proceeds from the Satterfield settlement to pay off debt owed to PSB cannot constitute ratification as a matter of law. "One asserting ratification must establish the following three elements: (1) acceptance by the principal of the benefits of the agent's acts, (2) the principal's full knowledge of the facts, and (3) circumstances or an affirmative election demonstrating the principal's intent to accept the unauthorized arrangements." Stiltner v. USAA Cas. Ins. Co., 395 S.C. 183, 191-92 (2011) (citing Lincoln v. Aetna Cas. & Sur. Co., 300 S.C. 188, 191, 386 S.E.2d 801, 803 (Ct.App.1989)).

There is no evidence that PSB had knowledge the loan payment was funded by stolen settlement proceeds, much less full knowledge of that alleged fact. There is no proof that PSB or Westendorf knew of Murdaugh's plan to use a surreptitiously named account at Bank of America to steal proceeds from the Satterfield settlement. Ratification did not occur as a matter of law.

As Nautilus has failed to produce evidence of the essential elements of a SCUTPA claim, PSB is entitled to judgment as a matter of law as to it, regardless of the validity of Judge Mullen's order approving the settlement.

### 4. BREACH OF FIDUCIARY DUTY

As discussed above, PSB did not know of Nautilus and had no relationship with Nautilus. PSB was not Nautilus's fiduciary. It owed no legal duty to Nautilus at all. Regardless, Nautilus contends that PSB is liable for Fleming's conduct because, as personal representative of the Satterfield Estate, Westendorf's attorney was Fleming, who Nautilus contends served as its escrow agent and, therefore, was its fiduciary. (See ECF Entry No. 208 at 28). Nautilus is incorrect in this theory of imputed liability.

One of the very cases that Nautilus cites in support of this twisted argument actually defeats it: Moore v. Weinberg, 681 S.E.2d 875 (S.C. 2009). Weinberg stands for the rule that any duty owed to a third party arising from an attorney acting as an escrow agent "is independent of an attorney's status as a lawyer and distinct from duties that arise out of the attorney/client relationship." Id. at 878. In Weinberg, the court did not hold that the attorney's client was liable for breach of any duty that his attorney owed, in the role of escrow agent, to the third party.

It is also important to note the deposition testimony of Fleming and Grantland completely undermines Nautilus's assertion that the letter constitutes the terms of an "agreement." Both testified that they changed their common understanding from that expressed in the letter. (See ECF Entry No. 189 at 15-19, 28-31, and ECF Entry No. 202 at 4-12).

Finally, even if Fleming had some theoretical duty as to the escrowed settlement proceeds, that duty was distinct from, and did not arise out of, Fleming's attorney/client relationship with Westendorf. Neither Westendorf nor PSB would be liable for Fleming breaching that theoretical

9

duty. Accordingly, PSB is entitled to judgment as a matter of law as to the breach of fiduciary claim, regardless of the validity of Judge Mullen's order approving the settlement.

### 5. BREACH OF AGREEMENT/CONTRACT

Nautilus has failed to show that a contract with PSB or Westendorf formed out of Grantland's request of Fleming to hold the Satterfield settlement funds in trust until an order of the probate court approving the settlement had been signed and filed. There was no offer, no acceptance, and no consideration. Furthermore, as shown in the record references of Fleming's summary judgment filings in this case, Fleming and Grantland changed the terms for disbursement of the settlement proceeds. (See ECF Entry No. 189 at 15-19, 28-31, and ECF Entry No. 202 at 4-12).

The real "contract" was Nautilus's agreement to pay $3,800,000 in return for a release of all claims against it and its insured. A release is a contract. Ecclesiastes Prod. Ministries v. Outparcel Associates, LLC, 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct. App. 2007). This contract was fully performed three years ago.

Pursuant to the parties' written agreement, the Estate and its statutory beneficiaries released "all actions, causes of action, demands and/or claims of any nature whatsoever" that they "may have" against a number of individuals and entities, including Nautilus Insurance Company. (ECF Entry No. 135-6 at 4). Nautilus paid $3.8 million in exchange for the release. (ECF Entry No. 135-6 at 4). The release also includes a merger clause, which reads: "All Agreements and understandings between the parties hereto are embodied herein and the terms of this Release are contractual not a mere recital." (ECF Entry No. 135-6 at 5). Nowhere in the release was it agreed that Nautilus would pay the funds on conditions other than the terms of the release or that an escrow agent would hold the funds indefinitely until the filing of a court order approving the

settlement.

### 6. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

In its Response in Opposition to PSB's Motion, Nautilus is unable to identify any admissible proof whatsoever that PSB had actual knowledge of any alleged breach of a fiduciary duty owed by Fleming to Nautilus or that PSB knowingly participated in such a breach. Moreover, one cannot aid and abet the breach of a duty that does not exist.

The testimony that Nautilus cites as support for its allegation that "Mr. Westendorf was aware of the escrow conditions attaching to the Nautilus funds" is not what Nautilus bills it to be. (See ECF Entry No. 208 at 29-30) (citing ECF Entry Nos. 187-16 at 103:3-19 and 187-17 at 14:6-19). Westendorf's testimony is proof only that Westendorf reviewed the letter and would have been aware of what it said. The only thing Westendorf did was endorse the check and return it to Fleming. He had no knowledge of any alleged breach of an alleged fiduciary duty later by Fleming and there is zero proof he provided material assistance in the breach of the alleged duty.

PSB is entitled to judgment as a matter of law on the claim for aiding and abetting breach of fiduciary duty, irrespective of the validity of Judge Mullen's order approving the settlement.

### 7. AIDING AND ABETTING FRAUD

Nautilus has still not identified a single case applying South Carolina law that recognizes aiding and abetting fraud as a cognizable cause of action. There is none. And even if there were, it would require Nautilus to show that PSB knowingly participated in the alleged fraud. Evidence that Westendorf agreed to serve as the personal representative of an estate adverse to Murdaugh, that he was inexperienced in the role and relied on Fleming, and that he was paid a fee for his service is not proof that Westendorf – much less PSB – knowingly participated in the fraud.

PSB is entitled to judgment as a matter of law on the aiding and abetting fraud claim

irrespective of whether Judge Mullen's order approving the settlement was filed.

### 8. MONEY HAD & RECEIVED (UNJUST ENRICHMENT)

An action for money had and received requires a plaintiff to prove the defendant holds money in its hands that, in equity and good conscience, belongs to the plaintiff. See Duncan v. McCormick Cnty., 192 S.C. 216, 6 S.E.2d 265, 267 (1939). Here, Nautilus has not demonstrated that the money it used to pay the Satterfield claim still belongs to it. Regardless, even if Murdaugh made a payment on a PSB loan with funds that could be traced to the stolen Satterfield settlement proceeds, Nautilus has not shown that PSB was aware of the theft, much less that those proceeds were converted by Murdaugh to make a loan payment to PSB.

PSB has not come forward with facts in the record that support any of the elements of its claim against PSB for money had and received. This Court need not look any further than the two examples cited by Nautilus for where such a cause of action may lie. (See ECF Entry No. 208 at 32). Nautilus did not pay money to PSB under an unenforceable contract; it paid no money to PSB at all. Additionally, PSB did not receive money from Nautilus for a special purpose that was abandoned, unfulfilled, or to which the money was not applied. PSB did not receive any money from Nautilus, period. PSB had no knowledge that Murdaugh contrived facts surrounding Ms. Satterfield's fall, that he planned to steal and did steal settlement proceeds, or that he may have used the stolen settlement proceeds to pay down debts, including a PSB loan.

### 9. CONVERSION

This is yet another Nautilus claim based on Grantland's letter, the terms of which both Fleming and Grantland testified changed.

Without offering any proof or stating when, Nautilus claims that it demanded that Westendorf's employer return the money. This is a total fabrication. Nautilus makes the allegation

in its pleading but never made the demand before that pleading was filed more than three years after the funds were disbursed from Fleming's law firm's trust account. When Nautilus delivered its check, it gave up its right and title to the money. The settlement funds were not in an account at PSB but deposited in the trust account of Fleming's law firm at BB&T.

PSB is entitled to judgment as a matter of law as to the conversion claim, irrespective of the validity of Judge Mullen's order approving the settlement.

**10. CIVIL RICO**

Similar to the civil conspiracy claim, the unrelatedness of the conduct of Russell Laffitte referenced in Nautilus's Response is just one of the many fatal flaws to its RICO claim.

Predicate acts must be *sufficiently related* to the alleged RICO enterprise, meaning they "must have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989). The alleged fraud Murdaugh employed in the Satterfield matter is entirely dissimilar from that used in Murdaugh's misappropriation of client funds more than four years before.

Nautilus also fails to establish that it suffered an injury proximately caused by the misappropriation of funds belonging to Murdaugh's clients from PSB bank accounts years earlier. See Walters v. Mcmahen 684 F.3d 435, 443 (4th Cir. 2012) ("However, because the plaintiffs have not alleged facts establishing that they suffered an injury proximately caused by the hiring clerks' violation of the false attestation predicate, their claim also fails with regard to this predicate act."). Instead, Nautilus simply contends that PSB's argument regarding proximate cause fails because the settlement is a nullity. As explained below, Nautilus is wrong. In any event, PSB is entitled to judgment as a matter of law on the RICO claim for the reasons stated in its Motion, which are

more than its proximate cause argument.

## 11. PROXIMATE CAUSE

Proximate cause is an essential element to every one of Nautilus's claims. The proximate cause of Nautilus's alleged loss was its decision to pay a claim that Nautilus knew, or at the very least suspected, to be fraudulent. Splitting hairs, Nautilus contends that it paid the claim "conditionally," based again on John Grantland's letter, arguing the disbursement of the settlement proceeds without a filed order was the proximate cause of its alleged loss.

Nautilus's argument is flawed for the reasons previously discussed and those set forth in the filings of Fleming in support of his motion for summary judgment, (ECF Entry No. 189 at 15-19, 28-31), and in opposition to Nautilus's motion for partial summary judgment. (ECF Entry No. 202 at 4-12). Nautilus sustained its alleged "loss" when it decided to pay $3,800,000 to settle the claim. But, far from being a loss, Nautilus received the benefit of its bargain. Its payment fully protected its insured from any claims of the Satterfield Estate, which was the purpose of the settlement. Once it made this deal and delivered the settlement check, nothing that happened thereafter proximately caused Nautilus's loss. Accordingly, PSB is entitled to judgment as a matter of law as to all of Nautilus's claims because Nautilus has not established proximate cause as to any of them.

## 11. STATUTE OF LIMITATIONS

Nautilus does not contest that it knew, or should have known, that the Satterfield claim was fraudulent. In fact, as it must, Nautilus admits that it suspected the claim to be fraudulent but argues that it believed that proving the fraud in a court of law would be too hard. (See ECF Entry No. 208 at 44). This argument confuses the burden of proof and, more importantly, the discovery rule.

What Nautilus knew, or should have known, and what it felt it could prove are two different

things. The fact of the matter is that Nautilus's investigation culminated in a warning from its own attorney that the Satterfield claim was the worst case of insurance fraud ever, which Nautilus received prior to agreeing to pay the money. This all happened more than three years before Nautilus sued Westendorf and PSB.

The statute of limitations bars all of Nautilus's claims (other than the civil RICO claim), which were asserted more than three years after it knew the claim of the Satterfield Estate as presented by Murdaugh was suspicious if not fraudulent.

### III.  CONCLUSION

For the foregoing reasons, and those detailed in its Motion for Summary Judgment, (ECF Entry No. 190), Defendant Palmetto State Bank respectfully requests that this Court grant its Motion and enter an Order dismissing Plaintiff's claims against PSB with prejudice.

*s/ James W. Clement*
**G. Trenholm Walker (Fed ID# 4487)**
Direct:  (843) 727-2208
Email:  Walker@WGLFIRM.com
**Thomas P. Gressette, Jr. (Fed ID# 7261)**
Direct:  (843) 727-2249
Email:  Gressette@WGLFIRM.com
**James W. Clement (Fed ID# 12720)**
Direct:  (843) 727-2224
Email:  Clement@WGLFIRM.com

**WALKER GRESSETTE & LINTON, LLC**
Mail:    P.O. Drawer 22167, Charleston, SC 29413
Office:  66 Hasell Street, Charleston, SC 29401
Phone:  (843) 727-2200

***ATTORNEYS FOR PALMETTO STATE BANK***

May 15, 2024
Charleston, South Carolina