**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Nautilus Insurance Company, | Case No. 2:22-1307-RMG |
| Plaintiff, | |
| v. | |
| Richard Alexander Murdaugh, Sr., *et al.*, | **ORDER AND OPINION** |
| Defendants. | |

This matter comes before the Court on Plaintiff and Defendants' cross motions for summary judgment. (Dkt. Nos. 185, 187, 188, 189, 190, 191). The Parties filed responses (Dkt. Nos. 202, 203, 204, 205, 206, 208) and replies (Dkt. Nos. 212, 213, 214, 215). For the reasons set forth below, the Court denies Plaintiff's motion for partial summary judgment and grants in part and denies in part Defendants' motions for summary judgment.

## I.    Background

This dispute arises from an incident on February 2, 2018, where Ms. Gloria Satterfield, the Murdaugh family's longtime housekeeper, suffered a traumatic brain injury after falling on Defendant Alexander Murdaugh's Moselle property. (Dkt. No. 154, ¶ 11; Dkt. No. 189-1). Per Murdaugh, Ms. Satterfield was tripped by his dogs while collecting a check for work performed for someone else. (*Id.*, ¶ 18). Ms. Satterfield passed away from her injuries on February 26, 2018, leaving behind two sons. (*Id.*, ¶ 11).

Upon Ms. Satterfield's passing, Murdaugh offered to assist her sons in making a recovery against him under the Moselle property's liability policy. Murdaugh arranged for his longtime friend and former law partner Cory Fleming to represent the Estate, and for PSB Vice President Chad Westendorf to serve as the Estate's Personal Representative. (*Id.*, ¶ 15(b), (c); *see also* Dkt.

No. 158, ¶¶ 12-13).    Nautilus opened an investigation into the claim on March 20, 2018. Notwithstanding the myriad hesitations voiced within Nautilus over the course of the year-long investigation, Nautilus settled the Satterfield Estate's claim for $3.8 million following a mediation held on March 22, 2019. (*See, e.g.*, Dkt. No. 190-5 at 3 (Nautilus' adjuster writing "[t]he Lloyd's adjuster and I believe this claim is very questionable" on April 5, 2018); Dkt. No. 190-7 (Nautilus' chief claims officer noting "[t]here are some questionable things about the claim" on May 2, 2018); Dkt. No. 190-11 (Nautilus' coverage counsel John Grantland writing in a February 23, 2019 email that he "smell[ed] a trap" after Fleming suggested he wanted to take Murdaugh's sworn statement during mediation); Dkt. Nos. 190-12, 191-23 (Nautilus' insurance counsel complaining of "[w]orst case of insurance fraud and injustice I have ever heard of!" and "Extortion" following March 22, 2019 mediation)).

On April 22, 2019, Nautilus delivered a settlement check to Fleming made payable to "Chad Westendorf as personal representative of the Estate of Gloria Satterfield & Moss Kuhn & Fleming PA as Attorney". (Dkt. Nos. 190-15, 190-21).    In a cover letter, Nautilus requested that Fleming "[p]lease hold these settlement funds in trust until the Petition and Order Approving Settlement have been signed and filed at the Probate Court settlement hearing." (Dkt. No. 190-21). Fleming delivered the check to Westendorf at his PSB office for Westendorf's endorsement. (Dkt. No. 190-20 at 102:22-103:1).    Fleming then deposited the funds into a client trust account held by M&K at BB&T. (Dkt. No. 190-17).

The Parties opted to hold the settlement hearing before the Circuit Court, rather than the Probate Court, on May 13, 2019. (Dkt. Nos. 193-16, 193-17).    Only Westendorf and Fleming were present at the hearing before Judge Mullen, as John Grantland, the counsel retained by Nautilus on behalf of Murdaugh, appeared at the wrong courthouse.    (Dkt. No. 189-26 at 108:1-20).    Judge

Mullen approved and signed the settlement order in that hearing but did not file the order at Fleming's request. (Dkt. No. 191-1 at 92:4-93:4).    Following the hearing, Fleming mailed the original signed order to Grantland, and contends he believed Grantland would file the order at a later date.  (Dkt. Nos. 189-24, 189-25 at 51:5-52:6).  Fleming then executed a $2,951.931.95 check made payable to "Forge" from the Moss & Kuhn trust account at Murdaugh's instruction and delivered the check to Murdaugh. (Dkt. No. 190-18; Dkt. No. 190-16 at 56:9-14; Dkt. No. 187-20 at 54:18-60:1).  Fleming testified that he believed Murdaugh had created an account in the name of the Satterfield heirs at Forge Consulting. (Dkt. No. 190-16 at 39:19-40:2).  In fact, Murdaugh had opened a personal bank account at Bank of America under the name Forge to facilitate the theft of the funds. (Dkt. No. 190-19 at 28:17-21).  Over the course of the scheme, Fleming disbursed $3,483.41.95 total from the M&K trust account to the Forge account at Murdaugh's direction.  (*Id.* at 28:17-18).

The Satterfield heirs did not receive any of the Nautilus settlement funds.  On August 15, 2023, Nautilus filed its Second Amended Complaint before this Court, alleging injury as a result of the $3.8 million payment it made to settle the Satterfield Estate's claims.  (Dkt. No. 154).

## II.    Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *See id.*  Therefore, summary judgment should be granted "only when it is clear that

there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving part must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.    Discussion

#### A.  Plaintiff's Motion

Nautilus moves for partial summary judgment on its claim that "[t]he underlying settlement to which Nautilus Insurance Company ('Nautilus') conditionally contributed to resolve a claim by the Estate of Gloria Satterfield (the 'Estate') is void and unenforceable under South Carolina law." (Dkt. No. 187 at 1).  In Nautilus' view, "[t]o the extent any dispositive motions of any Defendant is premised in whole or in part on Nautilus deciding the settle the Satterfield claim, those motions cannot be decided without first determining if there is a settlement at all." (*Id.* at 1 n.1).  Further, Nautilus contends that Defendants failed to comply with state law procedures following the settlement, such that the disbursement of the settlement funds was invalid. (*Id.* at 8-16). This Court understands Nautilus' argument to be that its decision to settle the

4

Satterfield Estate claim should not be considered the proximate cause of its own harm because the underlying settlement has no legal effect.

This Court does not have jurisdiction to invalidate a settlement approved by a South Carolina court. The Fourth Circuit addressed a similar scenario in *Horowitz v. Continental Casualty Company*, where plaintiffs sought to invalidate a settlement they had entered into with three defendant law firms and a malpractice insurance carrier in Maryland state court. 681 F. App'x 198, 200 (4th Cir. 2017). The court declined to overturn the settlement, citing the *Rooker-Feldman* doctrine which recognizes that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id.* (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)).

Nautilus also argues that Defendants failed to comply with the South Carolina Rules of Civil Procedure, such that the settlement is rendered unenforceable. "Federal courts have no general supervisory power to require state courts to follow any special procedures except when necessary to assure compliance with federal constitutional dictates." *Nationwide Mut. Ins. Co. v. Burke*, 897 F.2d 734, 738 (4th Cir. 1990). This Court determines purported errors with settlement procedure to be outside of its jurisdiction.

<u>In light of the foregoing, Nautilus' motion for partial summary judgment is denied.</u>

### B. Defendants' Motions

The Court next addresses the causes of action on which Defendants Cory Fleming, Moss & Kuhn (M&K), Chad Westendorf and Palmetto State Bank (PSB) (collectively, "Moving Defendants") move for summary judgment.[1]

### 1. Statute of Limitations

Westendorf and PSB argue that South Carolina's three-year statute of limitations bars each of Nautilus' claims aside from its RICO claim and its request for equitable relief in the form of restitution and declaratory judgment. (*See* Dkt. No. 191 at 14-20; Dkt. No. 190 at 15-16) (citing S.C. Code Ann. § 15-3-530 (1), (5))). For the reasons set forth below, the Court holds that Nautilus has no viable claims against Defendants Westendorf and PSB, and as a result does not reach this issue.

### 2. Vicarious Liability

The Court does not determine whether M&K is vicariously liable for the acts of Fleming at this time.[2] Under South Carolina law, partnership associations are liable for the acts of their employees undertaken within the scope of their employment. (S.C. Code Ann. § 33-19-340(b)). "A servant acts within the scope of employment if the action is reasonably necessary to accomplish the purpose of his employment and the action furthers the master's business." *Tedder v. Dixie Lawn Serv., Inc.*, No. 2007-UP-249, 2007 WL 8327512, at *2 (S.C. Ct. App. May 22, 2007).

---

[1] Defendant Richard Alexander Murdaugh, Sr., elected to default in this action and has not moved for summary judgment. (Dkt. No. 192).

[2] Because the Court grants summary judgment in favor of Defendants Westendorf and PSB on each cause of action, it does not address Nautilus' argument that PSB is vicariously liable for the actions of Westendorf.

Whether an individual acted within the scope of his employment is a question of fact for the jury. *Murphy v. Jefferson Pilot Commc'ns Co.*, 613 S.E.2d 808, 813 (S.C. Ct. App. 2005).

It is for the jury to determine whether Fleming acted within the scope of his employment, such that M&K is liable for his acts. As a result, where evidence exists that precludes an award of summary judgment in favor of Fleming on any count, that count consequentially proceeds against M&K.

### 1. Conspiracy (All Defendants) – Count 2

Defendants Fleming, M&K, Westendorf, and PSB move for summary judgment on Nautilus' second cause of action, which alleges Defendants engaged in a civil conspiracy "to deceive Nautilus into paying insurance proceeds purportedly to settle claims arising out of the death of Ms. Satterfield by falsely representing to Nautilus the existence of an arm's-length lawsuit against Murdaugh by the Satterfields, covertly steering the lawsuit for the furtherance of their unlawful agreement, and covertly distributing the insurance proceeds amongst themselves." (Dkt. No. 154, ¶ 28). Nautilus further claims that "[t]he conspiracy to defraud Nautilus resulted from, grew out of, and was an extension of conspiracies to manipulate banking regulations and other laws to enrich the conspirators" by "engaging in a Ponzi scheme and taking monies from other third-parties." (*Id.*, ¶¶ 29, 30). Nautilus contends it was damaged via its contribution to the settlement of the claims "[a]s a direct and proximate result of the conspiracy." (*Id.*, ¶ 31).

Under South Carolina law, "a plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021). "[C]ivil conspiracy is an intentional tort requiring a

specific intent to accomplish the contemplated wrong." *Id.* n.9. "In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *First Union Nat'l Bank of South Carolina v. Soden*, 511 S.E.2d 372, 383 (S.C. Ct. App. 1998). "Conspiracy may be inferred from the nature of the acts committed, the relationship of the parties, the interests of the alleged conspirators, and other relevant circumstances." *Moore v. Weinberg*, 644 S.E.2d 740, 750 (S.C. Ct. App. 2007), *aff'd*, 681 S.E.2d 875 (S.C. 2009).

### a.  Chad Westendorf & PSB

The Court finds insufficient evidence to sustain Nautilus' claim that Westendorf or PSB were engaged in a civil conspiracy to defraud Nautilus. Nautilus relies on (1) Westendorf's appointment as Personal Representative of the Satterfield Estate at Murdaugh's request and (2) Westendorf's receipt of $30,000 in payment for serving in this capacity as evidence of his role in the conspiracy. (Dkt. No. 208 at 7-8). Nautilus argues that PSB is independently liable for its role in the conspiracy because it authorized Westendorf to serve as Personal Representative with the knowledge that his appointment was requested by Murdaugh, citing the prior bad acts of Russell Lafitte, who coordinated with Murdaugh to steal money from various PSB accounts while employed by the bank. (*Id.* at 7-13). In Nautilus' view, "that which Lafitte knew, PSB knew," "what Westendorf knew as Vice President of PSB, the bank knew" and "what Fleming knew in his representation of Westendorf, Westendorf knew, and thus the bank knew." (*Id.* at 9-10).

The problem with Nautilus' theory of imputed liability is twofold: (1) Lafitte is not a Defendant to this action, and the Court declines to impute his actions to PSB in order to hold PSB liable for distinct activity not alleged to involve Lafitte, and (2) Fleming has admitted that Westendorf was not aware of the scheme between Murduagh and himself to misappropriate funds

8

from the Nautilus settlement. (Dkt. No. 191-14 at 43:6-8). On this Court's review of the record, Westendorf's involvement in the settlement of the Satterfield Estate claim was relatively limited. Westendorf was appointed as Successor Personal Representative to the Satterfield Estate on December 18, 2018. (Dkt. No. 187-14). He appeared before Judge Mullen the very next day to attend the Lloyds settlement hearing, and endorsed the petition seeking approval of that settlement and the settlement check at Fleming's behest. (Dkt. No. 191-1 at 47:13-48:8). Per Westendorf, Fleming informed him that the settlement funds would be disbursed to "Forge" as "an annuity investor or a structured settlement" for the Satterfield heirs. (*Id.* at 53:11-54:3). On January 7, 2019, Murdaugh visited Westendorf's PSB office to obtain his signature on the Lloyds disbursement sheet, which reflected Westendorf's $10,000 personal representative fee carved out of the funds. (Dkt. Nos. 191-3, 191-1 at 66:23-67:20). Westendorf subsequently appeared by telephone at the March 22, 2019 mediation between Nautilus and Murdaugh. (Dkt. No. 190-20 at 33:17-34:2). After the Parties reached a settlement, Westendorf endorsed the $3.8 million settlement check and returned it to Fleming's investigator on April 25, 2019. (Dkt. No. 191-1 at 95:15-17). Westendorf appeared before Judge Mullen for the Nautilus settlement hearing on May 13, 2019. (*Id.* at 91:13-17). As he had done previously with the Lloyds settlement, Westendorf signed a petition to approve the Nautilus settlement and disbursement sheets, at which point he received an additional $20,000 in payment for his service as Personal Representative. (Dkt. Nos. 191-10, 191-11; Dkt. No. 187-21).

Fleming testified that Westendorf was not involved in preparing either the settlement petitions or the disbursement sheets. (Dkt. No. 191-14 at 60:2-8 (Fleming testifying that "the disbursement sheets were prepared by my office with my direction")). Fleming also testified that the arrangement devised by Murdaugh and Fleming to misappropriate settlement funds to obtain

9

"fun money" for Murdaugh was "absolutely not" explained to Westendorf. (*Id.* at 43:6-8). While Westendorf undeniably failed in his duties as Personal Representative of the Satterfield Estate, neglecting to undertake even basic due diligence to protect the Estate's interests, there is no record evidence creating a reasonable inference of Westendorf's knowledge or participation in the scheme between Murdaugh and Fleming to injure Nautilus.

As explained above, this Court will not hold PSB liable for its alleged involvement in a conspiracy to defraud Nautilus based on the actions of a former PSB executive, Russell Lafitte, who is not named in this action nor alleged to have been involved in this scheme. That Lafitte abused his role as a Personal Representative while "acting with the cloak of PSB authority" in other instances at Murdaugh's behest does not create a reasonable inference that PSB was engaged in a conspiracy to bring a fraudulent claim and cause Nautilus to settle it, which is the injury Nautilus alleges here. (*See* Dkt. No. 208 at 8). <u>The Court grants summary judgment to Westendorf and PSB on Nautilus' second cause of action.</u>

### b. Cory Fleming & M&K

The Court finds a genuine dispute of material fact exists as to whether Fleming combined with Murdaugh in his scheme to defraud Nautilus. Fleming argues that he could not have been involved in a conspiracy to cause Nautilus to pay the settlement funds where "all of Mr. Fleming's 'bad acts' in breach of his duties to the Satterfield Estate occurred *after* Nautilus decided to settle." (Dkt. No. 189 at 23) (emphasis added). Per Fleming, any bad acts that he committed after Nautilus decided to settle the claim harmed the Satterfield Estate, not Nautilus. (*Id.* at 24).

The Court disagrees with Fleming's contention that "[t]here is no evidence of any 'overt act' by Mr. Fleming prior to the settlement." (*Id.*). It is uncontested that Fleming was aware of Murdaugh's intent to steal at least a portion of the settlement funds, although Fleming disputes

that he possessed this knowledge prior to Nautilus' decision to settle. (Dkt. No. 187:20 at 40:24-43:5). That Fleming agreed to represent the Satterfield Estate, at Murdaugh's request, and coordinated with Murdaugh to redirect a portion of Fleming's own client's settlement funds to Murdaugh by misrepresenting his legal fees to the Circuit Court creates more than a reasonable inference of Fleming's involvement in the conspiracy from the outset. (Dkt. No. 191-14 at 12:19-15:10, 63:18-64:16). Whether Fleming was knowledgeable of Murdaugh's broader scheme, including whether he knew the claim was fraudulent and acted with the specific intent to facilitate Nautilus' payment of the insurance claim through his representation of the Satterfield Estate, knowing that Murdaugh intended to steal a portion of the funds, is a question of fact for the jury. *See State v. Atieh*, 725 S.E.2d 730, 735 (S.C. Ct. App. 2012). <u>The Court denies summary judgment to Fleming and M&K on Nautilus' second cause of action.</u>

### 2.    Negligence (PSB and M&K) – Counts 3 (PSB) & 13 (M&K)

Nautilus alleges that PSB and M&K were negligent for failing to supervise the actions of Westendorf and Fleming. "A plaintiff, to establish a cause of action for negligence, must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002). A "[d]uty arises from the relationship between the alleged tortfeasor and the injured party" and "the parties must have a relationship recognized by law as the foundation of a duty of care." *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 333 (S.C. 2003). "Whether the law recognizes a

11

particular duty is an issue of law to be decided by the Court." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 714 (S.C. 2003).

### a.  PSB

PSB moves for summary judgment on Nautilus' third cause of action, which alleges that PSB "owed a duty to Nautilus and the public to properly supervise its employees" but "failed to demonstrate even basic due diligence and continued its relationship with Murdaugh for over a decade, despite myriad indications of criminal activity and lack of creditworthiness." (Dkt. No. 154, ¶¶ 42-43).  Nautilus advances various theories of PSB's liability, including (1) duty to warn, (2) duty to supervise/train, and (3) respondeat superior. (Dkt. No. 208 at 15-20).

First, PSB did not owe an independent duty of care to Nautilus, as banks in South Carolina do not owe customers or non-customers a duty of care.  *Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 792 (D.S.C.), *aff'd sub nom. Midland Mortg. Co. v. Wells Fargo Bank NA*, 545 F. App'x 194 (4th Cir. 2013). Second, PSB did not have a duty to warn Nautilus of any risk, because PSB did not "create[] a situation that [it] knew or should have known posed a substantial risk of injury [to Nautilus.]" (Dkt. No. 208 at 16 (citing *Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-CV-01427-RBH, 2023 WL 11015357, at *4 (D.S.C. Sept. 27, 2023)). That Murdaugh "persistently remain[ed] in overdraft" at the bank, that another bank officer (Russell Lafitte) colluded with Murdaugh in separate crimes, and that Murdaugh may have paid some of his PSB loans and overdraft fees with stolen funds in no way establishes that PSB knew or should have known that Murdaugh was conspiring to defraud Nautilus, much less that PSB was aware that Murdaugh was engaged in *any* criminal activity at the time. (*See* Dkt. No. 208 at 16). Third, PSB did not owe a duty to Nautilus to supervise or train its employees.  "An employer owes a duty of care to a third party when the possible harm resulting to the third party by the employee

could have been reasonably anticipated by the employer." *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 299 (S.C. 1996). PSB could not have reasonably anticipated harm to Nautilus arising from the actions of an employee who served as the Personal Representative of a party adverse to Nautilus in the context of an insurance settlement.

Nautilus' respondeat superior theory shares a similar problem. Nautilus contends that "PSB (the principal) authorized the service, acted through the instrumentality of its agent who it permitted to publicly represent his PSB capacity in a sworn application to the Court and who it otherwise held out as a competent and fit executive officer of PSB." (Dkt. No. 208 at 19). This framing illustrates that PSB could be held liable to the ***Satterfield Estate*** if proven that (1) Westendorf was acting within the scope of his employment as Personal Representative and (2) he acted negligently. Westendorf did not owe Nautilus any duty, and as a result no duty may be imputed from Westendorf to PSB.

The absence of any duty owed by PSB to Nautilus is fatal to Nautilus' negligence claim. *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 276 (S.C. 2003) ("An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff."). The Court grants summary judgment to PSB on Nautilus' third cause of action.

### b. M&K

M&K moves for summary judgment on Nautilus' thirteenth cause of action, which alleges that M&K was negligent for "fail[ing]' to notify *anyone* about unauthorized, unlawful, and wrongful disbursement of the monies paid by Nautilus" and contends "MKF owed a duty to Nautilus, as the originator of the funds it held in escrow, to disclose the theft, and MKF breached that duty." (Dkt. No. 154, ¶¶ 130-31). Nautilus contends that M&K's review of a May 2019 trust

13

account statement should have triggered its "duty to investigate and notify Nautilus" of potential fraud by Murdaugh. (Dkt. No. 206 at 21).

In *Gipson v. Williamson*, the Court of Appeals of South Carolina recognized that a law firm could be held negligent for failing to properly disburse escrow funds to a client. No. 2020-000720, 2023 WL 6461170 (S.C. Ct. App. Oct. 4, 2023). The client alleged the firm was negligent in failing to follow his instructions in disbursing escrow funds after a law firm employee inadvertently disbursed the funds via wire transfer to an incorrect email address, rather than delivering the funds via a mailed check as requested by the plaintiff. *Id.* at *3. The Court of Appeals upheld the trial court's decision denying Defendant's motion for a directed verdict where "[Plaintiff] presented testimony whereby the jury could have found that Law Firm owed a duty of care to [Plaintiff] as the escrow agent for the sales proceeds, possibly breached that duty by disregarding his instructions, and the breach caused Gipson to lose the sales proceeds." *Id.* In other words, the Court recognized that a duty may exist as a matter of law, and considered it proper for the jury to determine whether a breach of that duty occurred.

The Court recognizes that M&K owed a similar duty to Nautilus here as holder of the escrow funds. It is a factual matter for the jury to determine whether M&K breached that duty by failing to ensure that the funds were properly disbursed to the Satterfield Estate. The Court denies summary judgment to M&K on Nautilus' thirteenth cause of action.

### 3. South Carolina Unfair Trade Practices Act (SCUTPA) (All Defendants) – Count 4

Moving Defendants move for summary judgment on Nautilus' fourth cause of action, which alleges that Defendants violated the South Carolina Unfair Trade Practices Act through "unlawful trade practices [which] adversely impact the public interest by bringing systems of

14

justice and public institutions into disrepute and decreasing public confidence therein." (Dkt. No. 154, ¶ 51). SCUTPA declared unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a) (1985). The Act defines "trade" and "commerce" to "include the advertising, offering for sale, sale or distribution of any services and any property . . . directly or indirectly affecting the people of this State." *Id.* § 39-5-10(b). "To recover in an action under the UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). "[A] deceptive act is any act which has a tendency to deceive," and "[a]n act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." *Id.* at 500. Further, "[t]o be actionable under the UTPA, an unfair or deceptive act or practice must have an impact upon the public interest," which may be demonstrated by "showing the same kind of actions occurred in the past" or by showing "a potential for repetition of the unfair and deceptive acts." *Id.* at 502. "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the act's embrace." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347, 349–50 (S.C. Ct. App. 1986).

### a. Westendorf & PSB

Nautilus contends that "PSB authorized its officers to serve as fiduciaries for Murdaugh, using their capacity as officers as the qualification for appointment as PRs, which ultimately resulted in a benefit to them and their officers through fiduciary fees and a subsequent diversion of funds entrusted to PSB's officers which were used to pay off Murdaugh's debts to PSB." (Dkt. No. 208 at 23). Per Nautilus, "It is of no consequence that Nautilus was not a party to that

15

application; what is of consequence is that PSB's representations through its officers—resulting in improper benefits (which they ratified and accepted) to them and to PSB—were unfair and deceptive acts represented through the courts of justice."). (*Id.* at 23-24).

Nautilus' creative theory lacks evidentiary support. Neither Westendorf's service as a Personal Representative, nor PSB's authorization of his service as a Personal Representative, constitutes "an unfair or deceptive act in the conduct of trade or commerce." Neither party "advertis[e"d], offer[ed] for sale, [sold] or distribut[ed]" its service as a Personal Representative, and this Court does not view an individual's service in this capacity to constitute trade or commerce. *Wright v.* Craft, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). SCUTPA does not apply to the conduct Nautilus complains of.

The Court grants summary judgment to Westendorf and PSB on Nautilus' fourth cause of action.

### b. Fleming & M&K

Fleming claims there is "no evidence that [he] 'engaged in an unfair or deceptive act' directed toward Nautilus or that Nautilus relied on in making its decision to settle the Satterfield Estate's claims." (Dkt. No. 189 at 25). The Court disagrees. As one example of a "deceptive act directed toward Nautilus," Fleming represented to Nautilus that he was in contact with Forge Consulting to structure an annuity for the Satterfield heirs, when in actuality he planned to (and did) deliver the settlement funds directly to Murdaugh after requesting that Nautilus add Moss & Kuhn as a payee on the settlement check. (Dkt. No. 187-20 at 54:18-60:1). Coupled with Fleming's shocking abuse of the South Carolina legal system over the course of a decade, SCUTPA's public interest requirement is easily satisfied. *See Matter of Fleming*, 895 S.E.2d 672, 676 (2023). That Fleming has been disbarred for his conduct does not prevent this Court from

making this finding. *See Wright*, 640 S.E.2d at 502 (recognizing that "each case must be evaluated on its own merits to determine what a plaintiff must show to satisfy the potential for repetition/public impact prong of the UTPA"). The Court also finds that Nautilus has plausibly alleged a causal connection between Fleming's false representations to Nautilus and Nautilus' purported damage as a result of its disbursement of the settlement funds. *See Wilson v. Ortho-McNeil-Janssen Pharm., Inc.*, 777 S.E.2d 176, 189, 192 (S.C. 2015).

Given that Nautilus makes no argument as to M&K's independent liability under SCUTPA, the Court understands Nautilus to argue that M&K should be held vicariously liable under the statute for Fleming's unfair and deceptive acts. A district court in Maine allowed a plaintiff to pursue a theory of vicarious liability under Maine's unfair trade practices act, reasoning that "[a]ctions pursuant to the UTPA and actions for unlawful and deceptive conduct sound in tort" and "[i]n an action for the tortious conduct of an agent, both the agent and principal can be held liable." *Benner v. Wells Fargo Bank, N.A.*, No. 2:16-CV-00467-NT, 2018 WL 1548683, at *16 (D. Me. Mar. 29, 2018) (quoting *Advanced Const. Corp. v. Pilecki*, 901 A.2d 189, 196 (Me. 2006)). Finding no contrary authority in this state, the Court determines that Nautilus may pursue a SCUTPA claim against M&K under a theory of vicarious liability.

This Court denies summary judgment to Fleming & M&K on Nautilus' fourth cause of action.

### 4. Breach Of Fiduciary Duty (Fleming, M&K, Westendorf, and PSB) – Count 5

Defendants Fleming, M&K, Westendorf and PSB move for summary judgment on Nautilus' claim that they owed a fiduciary duty to Nautilus "on account of the deposit of funds paid by Nautilus for the benefit of the Satterfield Estate into MKF's trust account by Fleming,"

17

which duty was breached by the Defendants' "disbursing, or allowing the disbursement of, the funds to Murdaugh through his fictitious entity 'Forge' via check delivered to a PO Box in Hampton County, and doing so without an order approving the settlement having been filed." (Dkt. No. 154 at ¶¶ 60-61).

"A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 68 (S.C. 2005). "To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012). "As a general rule, a fiduciary relationship cannot be established by the unilateral action of one party" and "[t]he other party must have actually accepted or induced the confidence placed in him." *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003). The existence of a fiduciary duty is a question of law for the Court. *Turpin v. Lowther*, 745 S.E.2d 397, 401 (S.C. Ct. App. 2013).

### a. Westendorf & PSB

Nautilus' claim as to Westendorf and PSB fails as a matter of law because Westendorf, as Personal Representative of the party adverse to Nautilus' insured, did not owe a fiduciary duty to Nautilus, but to the Satterfield Estate. The Court reiterates its rejection of Nautilus' argument that Fleming's conduct is imputed to Westendorf. (*See* Dkt. No. 208 at 28-29). The Court grants summary judgment to Westendorf and PSB on Nautilus' fifth cause of action.

18

#### b.  Fleming & M&K

Nautilus contends that Fleming's role as escrow agent created a principal-agent relationship between Nautilus, Fleming, and M&K, under which Fleming and M&K owed a fiduciary duty to Nautilus. (Dkt. No. 206 at 12-13).  The South Carolina Supreme Court recognized that an attorney acting as an escrow agent owed a fiduciary duty to the assignee of his client's funds in *Moore v. Weinberg*.  *See* 681 S.E.2d 875, 878 (S.C. 2009).  In that case, the attorney improperly disbursed escrow funds to his client, rather than the assignee of the client's funds.  The assignee brought claims of negligence, conversion, and civil conspiracy against the attorney, and the South Carolina Supreme Court held that the trial court's grant of summary judgment on the assignee's negligence and conversion claims was improper.  *Id.* at 879.

Here, Fleming represented the party legally entitled to the escrow funds (the Satterfield Estate), not the party from whom the funds were owed (Nautilus).  However, this distinction is insignificant for purposes of recognizing the fiduciary duty owed by Fleming to Nautilus.  The Court finds that Fleming "induced the confidence placed in him" by acting as the escrow agent to whom Nautilus delivered the settlement funds.  *See Regions Bank*, 582 S.E.2d at 444.  Whether Fleming and M&K breached their fiduciary duty to Nautilus is a question of fact for the jury. *Spence v. Wingate*, 716 S.E.2d 920, 928 (S.C. 2011).  <u>The Court denies summary judgment to Fleming and M&K on Nautilus' fifth cause of action.</u>

#### 5.  Breach Of Agreement (Fleming, M&K, Westendorf, and PSB) – Count 6

Defendants Fleming, M&K, Westendorf, and PSB move for summary judgment on Nautilus' sixth cause of action, which alleges that Defendants breached an agreement with Nautilus to hold the settlement funds in escrow until an order approving the settlement was signed

19

and filed. (Dkt. No. 154, ¶¶ 66-67). As evidence of the purportedly breached agreement, Nautilus cites a letter from Murdugh's counsel, John Grantland, to Cory Fleming dated April 22, 2019, reading: "Please hold these settlement funds in trust until the Petition and Order Approving Settlement have been signed and filed at the Probate Court settlement hearing." (*See* Dkt. No. 190-21). Nautilus' view is that Defendants' performance in response to Grantland's letter request – the deposit of the settlement funds in escrow – formed a contract as to the terms of the settlement check. (Dkt. No. 154, ¶ 66).

"The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003). "A valid offer 'identifies the bargained for exchange and creates a power of acceptance in the offeree.'" *Id.* (quoting *Carolina Amusement Co. v. Connecticut Nat'l Life Ins. Co.*, 437 S.E.2d 122, 125 (S.C. Ct. App. 1993)). "A unilateral contract occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance." *Sauner*, 581 S.E.2d at 165-66. "When the existence of a contract is questioned and the evidence either conflicts or gives rise to more than one inference, the issue of the contract's existence becomes a question for the finder of fact." *Sherman v. W & B Enterprises, Inc.*, 592 S.E.2d 307, 310 (S.C. Ct. App. 2003).

### a. Westendorf & PSB

Nautilus does not argue that Westendorf or PSB were a party to the purported April 22, 2019 contract between Nautilus and Fleming. It is undisputed that Westendorf did not disburse the settlement funds, which Nautilus alleges to be the violation of that agreement – Fleming did. The Court grants summary judgment to Westendorf and PSB on Nautilus' sixth cause of action.

### b. Fleming & M&K

Per Nautilus, "By depositing Nautilus' funds in M&K's escrow account, both Fleming and M&K (a payee on Nautilus' check) agreed to the conditions in the letter accompanying the check; namely, that the funds would be held in escrow unless and until an order approving the settlement was signed and filed in the probate court." (Dkt. No. 206 at 10-11). Fleming contends that "the terms permitting dispersal of the settlement proceeds as outlined in Mr. Grantland's April 22, 2019 letter to Mr. Fleming were modified and Mr. Fleming satisfied all the modified terms." (Dkt. No. 189 at 31). The record reflects a genuine dispute of material fact as to whether Nautilus' letter formed a binding agreement between Nautilus and Fleming regarding the disbursement of the settlement funds, as well as to whether the Parties agreed to modify the settlement terms following the April 22, 2019 letter. <u>Accordingly, the Court denies summary judgment to Fleming and M&K on Nautilus' sixth cause of action.</u>

### 6. Aiding And Abetting Breach Of Fiduciary Duty (Murdaugh, Westendorf, and PSB) – Count 7

Defendants Westendorf and PSB move for summary judgment on Nautilus' seventh cause of action, which alleges they "participated in the breach of fiduciary duty by Fleming and MKF" by "failing to take any step to ensure or verify that the funds were disbursed to the Satterfield heirs or that the terms of the disbursement had been complied with." (Dkt. No. 154, ¶ 72). "The elements for the cause of action of aiding and abetting a breach of fiduciary duty are: (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages." *Vortex Sports & Ent., Inc. v. Ware*, 662 S.E.2d 444, 448 (S.C. Ct. App. 2008). "To prove this cause of action, the plaintiff must present evidence that the defendant had actual knowledge of the third party's breach of fiduciary duty." *Gibson v. Ameris Bank*, 804 S.E.2d 276,

281 (S.C. Ct. App. 2017). "The South Carolina Court of Appeals has interpreted 'knowing participation' as more than just mere tangential involvement, but actual encouragement or active procurement of the breach of fiduciary duty." *Simmons v. Danhauer & Assocs., LLC*, No. 8:08-CV-03819-JMC, 2010 WL 4238856, at *4 (D.S.C. Oct. 21, 2010), *aff'd*, 477 F. App'x 53 (4th Cir. 2012) (quoting *Vortex Sports*, 662 S.E.2d at 449); *see also Fort v. Suntrust Bank*, No. 7:13-CV-1883-BHH, 2016 WL 4492898, at *17 (D.S.C. Aug. 25, 2016) ("'Knowing participation' requires more than mere linked involvement in a breach [.]").

The Court finds no evidence that Westendorf actively encouraged Fleming to breach his fiduciary duty to Nautilus by disbursing the settlement funds prior to the filing of the settlement order. Fleming testified that Westendorf was not aware of his and Murdaugh's plan to misappropriate funds or falsify the settlement sheets presented to the Circuit Court, which this Court views as dispositive. (Dkt. No. 190-16 at 43:6-8, 60:2-8). At most, Westendorf's receipt of a $20,000 fee without first seeking confirmation that the settlement order had been filed is additional evidence of his astonishing lack of diligence and care to the Satterfield beneficiaries. However, Westendorf's "linked involvement" in the disbursement of the funds by virtue of his receipt of a personal representative fee is insufficient to hold Westendorf liable for aiding and abetting Fleming's alleged breach. The Court grants summary judgment to Westendorf and PSB on Nautilus' seventh cause of action.

### 7. Aiding And Abetting Fraud (Fleming, M&K, Westendorf, and PSB) – Count 8

Moving Defendants move for summary judgment as a matter of law on Nautilus' eighth cause of action, which alleges Defendants "took affirmative steps to aid and abet Murdaugh's scheme to obtain insurance monies under false and fraudulent pretense and concealed a pattern

22

of transfers within and among various accounts that allowed these Defendants to benefit from the wrongful conduct." (Dkt. No. 154, ¶ 76). There is no recognized cause of action for aiding and abetting fraud under South Carolina law. <u>As a result, the Court grants judgment as a matter of law to Moving Defendants on Nautilus' eighth cause of action</u>.

### 8. Money Had And Received/Unjust Enrichment (Murdaugh, Fleming, M&K, Westendorf, PSB) – Count 9[3]

Moving Defendants move for summary judgment on Nautilus' ninth cause of action, which alleges that "Defendants are directly and/or vicariously liable to Nautilus for the return of [the settlement] funds." (Dkt. No. 154, ¶ 86). "An action for money had and received exists where a defendant has money belonging to the plaintiff which in equity should be repaid to the plaintiff." *Okatie River, L.L.C. v. Se. Site Prep, L.L.C.*, 577 S.E.2d 468, 472 (S.C. Ct. App. 2003). "To recover restitution in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." *Inglese v. Beal*, 742 S.E.2d 687, 691 (S.C. Ct. App. 2013). "[R]estitution is the mechanism by which balance is restored between the parties. It is the return of the benefit from the beneficiary to the benefactor. . . . Thus, any 'imbalance' between the parties that does not result in a windfall to the defendant will not be remedied by use of restitution." 13 S.C. Jur. Implied Contracts § 6 (citing *Ellis v. Smith Grading & Paving, Inc.*, 366 S.E.2d 12 (S.C. Ct. App. 1988)).

---

[3] To the extent Nautilus has any remedy at law, unjust enrichment is not an available theory of recovery. *See Williams Carpet Contractors, Inc. v. Skelly*, 734 S.E.2d 177, 182 (S.C. Ct. App. 2012) ("Case law bars recovering under both [a quantum meruit claim and a legal claim].").

Nautilus contends that (1) the settlement funds were paid under an unenforceable contract, (2) Westendorf and Fleming realized a benefit by taking payment out of those funds, and (3) M&K retained some of the funds paid by Nautilus in a trust account. (*See* Dkt. No. 154, ¶ 83; Dkt. No. 206 at 14-16; Dkt. No. 208 at 32-33). Nautilus' claim fails as a matter of law because Nautilus had no "expectation of payment" from any Defendant, which "is an element of a quantum meruit action in South Carolina." *Webb v. First Fed. Sav. & Loan Ass'n of Anderson*, 388 S.E.2d 823, 827 (S.C. Ct. App. 1989), *overruled on other grounds by Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (2000); *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 563 (D.S.C. 2020), *aff'd*, No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) ("South Carolina law also clearly contemplates an expectation of payment in unjust enrichment claims."). <u>The Court grants summary judgment to Moving Defendants on Nautilus' ninth cause of action</u>.

### 9.  Conversion (All Defendants) – Count Ten

Moving Defendants move for summary judgment on Nautilus' tenth cause of action, which alleges that Defendants are liable for conversion "[b]ecause the funds were disbursed contrary to Nautilus' express instructions and were then misappropriated by Murdaugh (with the knowledge and assistance of Fleming and MKF and enabled by Westendorf, and to the benefit of all Defendants)." (Dkt. No. 154, ¶ 95). "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Hawkins v. City of Greenville*, 594 S.E.2d 557, 566 (S.C. Ct. App. 2004) (internal citations omitted). "The plaintiff must show either title or right to possession of the property at the time of conversion." *Moore v. Weinberg*, 644 S.E.2d 740, 749 (S.C. Ct. App. 2007), *aff'd*, 681 S.E.2d 875 (2009) (quoting *Oxford Fin. Cos. v. Burgess*, 402

24

S.E.2d 480 (S.C. 1991)).  "A plaintiff may prevail upon a claim for conversion by showing the unauthorized detention of property, after demand."  *Id.*

The preliminary question is whether Nautilus retained title to the funds until the escrow condition was satisfied.  *Compare* 28 Am. Jur. 2d Escrow § 15:

> Legal title remains in the depositor or grantor when funds are placed in escrow.  No legal title or estate passes until the condition has been performed or the event has happened upon which it is to be delivered to the grantee and it has been delivered by the depositary to the grantee.

*with* 30A C.J.S. Escrows § 6:

> The rule that the party who deposits property into an escrow account is the owner of the account and retains title until performance of a condition by the other party does not apply to situations which may be labeled 'escrow' but in which the owner has unconditionally divested itself of the money or property upon deposit. For example, when money or property is unconditionally and presently owed to one of two competing claimants, but is placed 'in escrow' pending resolution of which claimant is so entitled, in that situation, which is not dependent upon the performance of a condition, the depositor is divested of ownership upon deposit.

The Court considers that the latter situation applies here: Nautilus had unconditionally divested itself of the funds at the time of disbursing the settlement funds to Fleming.  In other words, the disbursed funds were the property of the Satterfield Estate at the time of the theft, and Nautilus may not bring a claim for conversion of property it did not own.

In *Moore v. Weinberg*, which Nautilus cites in support of its argument, (*see* Dkt. No. 208 at 35), the South Carolina Court of Appeals reversed the trial court's grant of summary judgment in a similar factual scenario, reasoning that the attorney acted as agent for the principal and "would be responsible to whom the fund really belongs."  644 S.E.2d 740, 749-50 (S.C. Ct. App. 2007). Unlike in that case, where the attorney wrongfully disbursed escrow funds belonging to a third

party to his own client (and was thus liable to the third party for those funds), here, Fleming disbursed funds belonging to his own client to a third party. The appropriate plaintiff to bring a conversion claim against Fleming and Moss & Kuhn is the rightful owner of the escrow funds – the Satterfield Estate. <u>The Court grants summary judgment to Moving Defendants on Nautilus' tenth cause of action</u>.

### 10. Violation Of The Racketeer Influenced And Corrupt Organizations Act (18 U.S.C. §§ 1962(A)–(D)) (All Defendants) – Count 12

Moving Defendants move for summary judgment on Nautilus' twelfth cause of action, which alleges Defendants have "knowingly and intentionally engaged in an association in fact or an enterprise . . . engaged in a pattern of 'racketeering activity' within the meaning of RICO" through the commission of alleged wire fraud and embezzlement of bank funds. (Dkt. No. 154, ¶¶ 106-07). Nautilus contends that "Defendants obtained and misappropriated funds belonging to others to enrich themselves and cover debts, effecting a Ponzi scheme by which funds stolen from one client in conservatorship were used to pay back portions of funds stolen from another" and that "Nautilus became a victim of this enterprise" when "the Ponzi scheme neared collapse [and] additional sources of funds were required to cover stolen funds that had become due." (*Id.*, ¶¶ 111-12). Nautilus claims that Defendants engaged in mail and wire fraud in furtherance of this scheme. (*Id.*, ¶ 107).

"To establish a claim under RICO, a plaintiff must show: (1) a violation of 18 U.S.C. § 1962, (2) an injury to business or property, and (3) that the injury was caused by the violation of § 1962." *Jones v. Ram Med., Inc.*, 807 F. Supp. 2d 501, 510–11 (D.S.C. 2011). Where a plaintiff alleges fraud as a predicate act triggering the statute's liability, he must plead it with particularity pursuant to Fed. R. Civ. P. 9. *Mylan Lab. Inc. v. Matkari*, 7 F.3d 1130, 1137 (4th Cir. 1993).

26

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Nautilus fails to establish that Defendants' alleged participation in a Ponzi scheme proximately caused Nautilus' injury. Nautilus seeks to rely on the actions of Murdaugh and Lafitte – which predate the acts alleged in this case by multiple years – to argue the existence of an association-in-fact enterprise involving the named Defendants to this action, contending these prior acts culminated to cause Nautilus' payment of a fraudulent insurance claim. The Court finds this connection to be far too attenuated to sustain Nautilus' RICO claim. The common thread between that criminal act and the activity alleged here is Murdaugh, and Murdaugh only. For this reason, Nautilus cannot prove the existence of an "association-in fact-enterprise" that is "distinct from the persons alleged to have violated § 1962(c)." *Palmetto State Med. Cent. v. Operation Lifeline*, 117 F.3d 142, 149 n.9 (4th Cir.1997) (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1163 (4th Cir.1994)). Further, "[t]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" *Id.* at 947. That Murdaugh engaged in similar criminal activity with the assistance of Lafitte may support a "pattern of racketeering activity" as to

Murdaugh alone, but does not establish the existence of an enterprise alleged to involve entirely different actors and a different scheme.

In light of the foregoing, the Court grants summary judgment to Moving Defendants on Nautilus' twelfth cause of action.

### 11. Declaratory Judgment – Count 14

Defendants Westendorf and PSB move for judgment as a matter of law on Nautilus' request that this Court issue declaratory judgment as to "the rights and obligations of Nautilus, Murdaugh, and the Co-conspirators" in this case. (*See* Dkt. No. 154, ¶ 135). "A declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). As neither purpose would be served here, the Court grants summary judgment to Moving Defendants on Nautilus' fourteenth cause of action.

### IV.    Conclusion

In light of the foregoing, the Court **DENIES** Nautilus' motion for partial summary judgment (Dkt. No. 187). Defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part as follows:

- Nautilus' Second Cause of Action (Conspiracy)

    o **GRANTED** as to Defendants PSB and Westendorf (Dkt. Nos. 190, 191)

    o **DENIED** as to Defendants M&K and Fleming (Dkt. Nos. 185, 188, 189)

- Nautilus' Third Cause of Action (Negligence)

    o **GRANTED** as to Defendant PSB (Dkt. No. 190)

28

- Nautilus' Fourth Cause of Action (SCUTPA)

    o **GRANTED** as to Defendants PSB and Westendorf (Dkt. Nos. 190, 191)

    o **DENIED** as to Defendants M&K and Fleming (Dkt. Nos. 185, 188, 189)

- Nautilus' Fifth Cause of Action (Breach of Fiduciary Duty)

    o **GRANTED** as to Defendants PSB and Westendorf (Dkt. Nos. 190, 191)

    o **DENIED** as to Defendants M&K and Fleming (Dkt. Nos. 185, 188, 189)

- Nautilus' Sixth Cause of Action (Breach of Agreement)

    o **GRANTED** as to Defendants PSB and Westendorf (Dkt. Nos. 190, 191)

    o **DENIED** as to Defendants M&K and Fleming (Dkt. Nos. 185, 188, 189)

- Nautilus' Seventh Cause of Action (Aiding and Abetting Breach of Fiduciary Duty)

    o **GRANTED** as to Defendants PSB and Westendorf (Dkt. Nos. 190, 191)

- Nautilus' Eighth Cause of Action (Aiding and Abetting Fraud)

    o **GRANTED** as to Moving Defendants (Dkt. Nos. 185, 188, 189, 190, 191)

- Nautilus' Ninth Cause of Action (Money Had and Received/Unjust Enrichment)

    o **GRANTED** as to Moving Defendants (Dkt. Nos. 185, 188, 189, 190, 191)

- Nautilus' Tenth Cause of Action (Conversion)

    o **GRANTED** as to Moving Defendants (Dkt. Nos. 185, 188, 189, 190, 191)

- Nautilus' Twelfth Cause of Action (RICO)

    o **GRANTED** as to Moving Defendants (Dkt. Nos. 185, 188, 189, 190, 191)

- Nautilus' Thirteenth Cause of Action (Negligence)

    o **DENIED** as to M&K (Dkt. No. 185)

- <u>Nautilus' Fourteenth Cause of Action (Declaratory Judgment)</u>

  o **GRANTED** as to Moving Defendants (Dkt. Nos. 185, 188, 189, 190, 191)

**AND IT IS SO ORDERED.**


　　　　　　　　　　　　　　　 s/Richard M. Gergel
Richard Mark Gergel
United States District Judge

June 18, 2024
Charleston, South Carolina