UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>RICHARD ALEXANDER MURDAUGH, Sr., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, and PALMETTO STATE BANK,<br><br>    Defendants. | Case No. 2:22-cv-1307-RMG<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION** |

Nautilus Insurance Company ("Nautilus") replies in support of its Motion for Reconsideration [ECF No. 219] as follows.

**I. The Nullity of the Settlement *Is* at Issue.**

Mr. Westendorf contends that the voidness of the Satterfield settlement is not at issue in this case. ECF No. 223 at 2–3. This is incorrect.

**A. With Regard to Nautilus' Causes of Action**

First, Nautilus asserted causes of action against all Defendants for (i) Money Had and Received/Unjust Enrichment and (ii) Conversion, contending that, because the settlement was never consummated under South Carolina law, Nautilus is entitled to the return of its funds. ECF No. 154, ¶¶ 81–96. Nautilus expressly alleged the settlement's voidness as a basis for Nautilus' entitlement to the return of its funds. Accordingly, the argument that the question is not at issue in this suit is untenable.

The Court dismissed Nautilus' Money Had and Received/Unjust Enrichment claim on the basis that "Nautilus had no 'expectation of payment' from any Defendant, which 'is an element of a quantum meruit action in South Carolina.'" ECF No. 218 at 24. On the contrary. The Nautilus funds were *conditionally* delivered to Mr. Fleming with the expectation that, should the settlement

not be approved as required by law, the funds would be returned to Nautilus rather than disbursed to Mr. Murdaugh, Mr. Fleming, and Mr. Westendorf, and ultimately used to pay down the debts Mr. Murdaugh owed to PSB. Nautilus expected it, not only because it is the sensible and just result, but also because it is the law in South Carolina:

> Because we hold that the Severance Agreement is void, it is clear Preston realized a benefit that would be inequitable for him to retain in the absence of the agreement. Thus, we must address the appropriate remedy.
>
> [. . .]
>
> [T]he County shall recover the total amount the County paid in cash to Preston pursuant to the Severance Agreement, plus the value of the 2006 County vehicle. Therefore, we remand to the circuit court to determine the amount the County is entitled to recover from Preston in the form of a civil judgment.

*Anderson Cnty. v. Preston*, 831 S.E.2d 911, 918 (S.C. 2019). Because Nautilus' claims concern not only the Defendants' acts of inducement and collusive conduct in furtherance of the scheme to wrongfully obtain possession of Nautilus's funds, but also the conduct of Defendants following Nautilus' conditional delivery of those funds, the voidness of the settlement is relevant and at issue in claims alleged by Nautilus.

### B.   With Regard to Defenses Asserted by Defendants

Second, Defendants[1] have argued—and one or more of the Defendants will likely attempt to argue to the jury at trial—that it was the settlement of the claim that harmed Nautilus, not Defendants' conduct. Aside from Nautilus' disagreement with the merits of this argument, the

---

[1] All Defendants, including Moss & Kuhn and Mr. Fleming. *E.g.*, ECF No. 185 (M&K Motion for Summary Judgment) at 3 ("Nautilus decision to pay the $3.8 million settlement in the Satterfield matter was the proximate cause of its loss."); ECF No. 189 (Fleming Motion for Summary Judgment) at 22 ("The evidence and testimony reveal that the Nautilus, lawyers retained by Nautilus, its adjusters, and private adjusters investigated and evaluated the factual basis and legal issues related to the Satterfield Estate's claims for over a year before the case was settled.").

argument necessarily fails if the settlement was never finalized under South Carolina law. Accordingly, the voidness of the settlement is at issue because it defeats a core theory of defense relied upon by Defendants.[2]

The effect of the settlement under South Carolina law is a question of law, and if the Court does not decide it, Nautilus will be deprived of a dispositive legal response to this defense and would be prejudiced if raised at trial to suggest the existence of a lawful settlement.

## II.     PSB's Arguments Regarding the *Rooker-Feldman* Doctrine

PSB mischaracterizes the case law surrounding the *Rooker-Feldman* doctrine in arguing that it is applicable to this issue. *Rooker-Feldman* applies when the relief requested by a plaintiff in federal court requires the federal court to either (i) determine that the judgment was "erroneously entered" or (ii) "take action that would render the judgment ineffectual." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (quoting *Ernst v. Child & Youth Servs.,* 108 F.3d 486, 491 (3d Cir. 1997)).

Here, neither is the case. Nautilus does not request the Court hold that a judgment was "erroneously entered," as it is undisputed that no order approving the "settlement" was *ever* entered at all, hence there was no judgment. Second, it is not any action or ruling requested of this Court by Nautilus that would "render [a] judgment ineffectual," but rather it is the defects in the settlement and the voluntary dismissal of the underlying action that rendered it ineffectual under South Carolina law. Federal courts are empowered to determine what effect, if any, to give state court judgments. *See Lance v. Dennis*, 546 U.S. 459, 466, 126 S. Ct. 1198, 1202 (2006) ("Congress

---

[2] This remains true as to M&K and Mr. Fleming, even if PSB and Mr. Westendorf were to be dismissed from the case at this juncture.

has directed federal courts to look principally to state law in deciding what effect to give state-court judgments."). Nautilus respectfully asks that this Court do so.

Specifically, PSB mischaracterizes the Supreme Court's decision in *Lance*. According to PSB, the Supreme Court "expressly declined to rule that the *Rooker-Feldman* doctrine may not be applied 'against a party not named in an earlier proceeding,' citing special circumstances." ECF No. 222 at 5. In a footnote to its holding, the Supreme Court stated:

> In holding that *Rooker–Feldman* does not bar the plaintiffs here from proceeding, **we need not address whether** there are *any* circumstances, however limited, in which *Rooker–Feldman* may be applied against a party not named in an earlier state proceeding— *e.g.*, where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent.

*Lance v. Dennis*, 546 U.S. 459, 466 n. 2 (2006) (emphasis added). In short, the Supreme Court simply did not reach the issue that PSB relies upon. Moreover, to the extent that PSB argues that the relationship of insurer to insured is akin to that of an estate to a decedent, the argument is made without supporting authority and misses the mark.

In any event, the *Lance* holding is more accurately reflected in the following:

> The District Court erroneously conflated preclusion law with *Rooker–Feldman*. Whatever the impact of privity principles on preclusion rules, *Rooker–Feldman* is not simply preclusion by another name. The doctrine applies only in "limited circumstances," *Exxon Mobil, supra*, at 291, 125 S.Ct. 1517, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. **The *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.**

*Id.* at 466 (emphasis added).

PSB also cites (ECF No. 222 at 5) to *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), in which the Supreme Court held that:

4

> [28 U.S.C. §1257 does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (C.A.7 1993); *accord Noel v. Hall*, 341 F.3d 1148, 1163–1164 (C.A.9 2003).

*Exxon Mobil Corp.*, 544 U.S. at 293.  This is inapposite to the proposition for which PSB cites it.[3]

Ultimately, each case cited by PSB in its Response is distinguishable for another, simpler reason: not one involves an unfiled, unentered order.  PSB's arguments about the definition of a "judgment" or what an unentered order purported to be are of no consequence when the proposed order was never entered as an order of the Court.  As nothing was entered, there is no order to overturn.

There is, however, a need to address the legal issues of the voidness of the settlement, as the concept of a settlement was raised as a defense to liability and as a reason to limit discovery as to certain defendants, and it will likely be raised to the jury at the trial of this case.  Indeed, by declining to rule on this question, the Court would effectively affirm the validity of an unentered order which was never capable of being affirmed as an order in the first place.

---

[3]  *See also Thana v. Bd. of License Commissioners for Charles Cnty., Maryland*, 827 F.3d 314, 320 (4th Cir. 2016) ("To emphasize the narrow role that the *Rooker–Feldman* doctrine is to play, the Supreme Court has noted repeatedly that, since the decisions in *Rooker* and *Feldman*, it has never applied the doctrine to deprive a district court of subject matter jurisdiction. *See, e.g.*, . . . *Lance*, 546 U.S. at 464 . . . *Exxon*, 544 U.S. at 287 . . . Similarly, since *Exxon*, we have never, in a published opinion, held that a district court lacked subject matter jurisdiction under the Rooker–Feldman doctrine.")

### III.     Evidence of PSB's & Mr. Westendorf's Knowledge of the Scheme

Contrary to Mr. Westendorf's assertions, a reasonable jury could certainly conclude on the record in this matter that accepting $30,000.00 for a few hour's work and asking no questions about it demonstrates that Mr. Westendorf knew—or was willfully blind to the fact—that he was assisting and furthering a fraudulent scheme. In its Motion to Reconsider [ECF No. 219], Nautilus cited *Fitzgibbons v. Atkins*[4] for the proposition that, when a defendant has accepted an sum of money that is disproportionate to the effort required of him, a reasonable jury can conclude he knew of the underlying impropriety such that summary judgment is inappropriate. ECF No. 219 at 7–8.

In opposition, Mr. Westendorf contends the case is distinguishable, because the record in that case supposedly contained "at least ten (10) emails authored by the defendant accused of participating in the alleged conspiracy" and that:

> In the face of those affirmative emails, the court rejected the retort that the defendant relied on the other defendants' representations that the transaction was legitimate and commented that a factfinder could reasonably infer, in addition to the communications cited, that she collected a large fee, $65,148.10, an issue of her knowing participation in the lucrative scheme. . . .

ECF No. 223 at 5. Mr. Westendorf misconstrues the facts and record in that case.

The emails referenced by Mr. Westendorf were authored by the ringleader defendant, one Mr. Williams.[5] The proposition set forth by Nautilus relied on the case as to a separate defendant

---

[4] No. 8:17-CV-02092-TMC-JDA, 2019 WL 5856265, at *7 (D.S.C. Aug. 22, 2019), *report and recommendation adopted*, No. 8:17-CV-02092-DCC, 2020 WL 1065408 (D.S.C. Mar. 5, 2020).

[5] "The Court has already discussed how ***Williams*** repeatedly used emails to deceive Plaintiff in furtherance of the scheme." *Fitzgibbons*, 2019 WL 5856265, at *7 (emphasis added); *see also id.* at *5 ("Plaintiff has forecasted significant evidence that Williams operated as the face of the LOC transactions from SCHC's perspective and that he took steps to affirmatively convince Plaintiff that the Bank was actually involved in the transaction and also that Williams attempted to prevent

more similarly situated to Mr. Westendorf, one Ms. Raymond, and there is no indication in the record of that case that Ms. Raymond authored anything. Rather, it was her acceptance of a large fee that created a jury question regarding her knowledge of that scheme:

> Raymond's claim that the forecasted evidence was insufficient to create a genuine dispute as to whether she knowingly participated in the scheme fares no better than Williams's. Raymond does not deny assisting Williams regarding the LOC transactions, but, like Williams, she asserts that she "relied on the other defendants' representations that the LOCs were legitimate." [Doc. 297-3 at 3 ¶ 23.] However, also like Williams, she received payments for the transactions that were inexplicably large. She admits she received payments totaling $65,148.10.10 [Doc. 308-1 at 6–15.] She claims the payment was compensation for 8–12 hours of "clerical" work she did for Williams, and she offers no explanation for why she would have been paid such a large sum. [Id. at 6–15.] It goes without saying that Raymond's explanation strains credulity. The Court concludes that a factfinder could reasonably infer that she collected the $65,148.10 for her knowing participation in the very lucrative scheme to defraud Plaintiff. Cf. Williams, 405 F.2d at 17.

*Fitzgibbons*, 2019 WL 5856265, at *7.

The numerous acts of incomprehensible negligence on Mr. Westendorf's part could be seen by a jury as willfully furthering a fraudulent scheme. *See, e.g.*, ECF No. 187 at 26–27. The question should be decided by a jury, as should the question of whether Mr. Westendorf acted within his scope of employment at PSB in doing so. *See Froneberger v. Smith*, 748 S.E.2d 625, 633 (S.C. Ct. App. 2013) ("Any doubt as to whether the servant was acting within the scope of his authority when he injured a third person must be resolved against the master, at least to the extent of requiring that the question be submitted to the jury." (quoting *Wade v. Berkeley Cnty.*, 498 S.E.2d 684, 688 (S.C. Ct. App. 1998)); *see also Crittenden v. Thompson-Walker Co.*, 341 S.E.2d 385, 387–88 (S.C. Ct. App. 1986) ("Consequently, although it may have been outside the scope of

---

Plaintiff from communicating with the Bank. Much of this evidence was in the form of **emails from Williams**." (emphasis added)).

Welch's authority, the jury could reasonably find the assault was an act in furtherance of the master's business. These facts were sufficient to send the question of the master's vicarious liability to the jury." (citation omitted)).

IV. **Harm to the Satterfields Does Not Preclude Harm to Nautilus.**

Mr. Westendorf repeats the Court's finding that "Mr. Westendorf's receipt of a $20,000 settlement fee without first seeking confirmation that the settlement order had been filed is additional evidence of his astonishing lack of diligence and care to the Satterfield beneficiaries." ECF No. 223 at 5 (citing ECF No. 218 at 22). Nautilus does not disagree. However, harm to the Satterfields and harm to Nautilus are by no means mutually exclusive.

PSB has admitted that, but for Mr. Westendorf's involvement, the scheme to defraud Nautilus could not have succeeded. ECF No. 187-38 at 88:24–89:6. Nautilus contends there is circumstantial evidence by which a reasonable jury could conclude Mr. Westendorf was a knowing and willing participant in the scheme. That the scheme involved breached a fiduciary duty to the Satterfields as part of a scheme to steal funds properly belonging to Nautilus does not mean that only one of those parties was harmed or entitled to damages from those involved in the scheme. And, that the Satterfields recovered from these Defendants in other actions on separate theories of liability does not preclude Nautilus recovering damages from these Defendants for the wrongs and damages it suffered.

V. **Conclusion**

For these reasons, Nautilus requests this Court grant its Motion to Reconsider.

8

|  |  |
|---|---|
|  | **Respectfully submitted:** |
|  | **EPTING & RANNIK, LLC** |
| This 13th day of August, 2024<br>Charleston, South Carolina | */s/ Jaan Rannik*<br>Jaan G. Rannik (Fed. ID No. 12621)<br>Clinton T. Magill (Fed. ID No. 12459)<br>46A State Street<br>Charleston, SC 29401<br>P: (843) 377-1871<br>F: (843) 377-1310<br>jgr@epting-law.com<br>ctm@epting-law.com |
|  | COUNSEL FOR NAUTILUS INSURANCE COMPANY |