UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>RICHARD ALEXANDER MURDAUGH, Sr., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, and PALMETTO STATE BANK,<br><br>　　　　　　　　　　Defendants. | Case No. 2:22-cv-1307-RMG<br><br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

By Order of December 11, 2024 [ECF No. 262], the Court directed that any dispositive motion related to Defendant Cory Fleming's ("Mr. Fleming's") amended pleading be filed by December 13, 2024. Nautilus Insurance Company ("Nautilus") moves this Court for summary judgment as follows.[1]

## I.　LEGAL STANDARDS

### A.　FRCP 56

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Brown v. Brennan*, No. 4:14-CV-00307-RMG, 2015 WL 2452751, at *2 (D.S.C. May 21, 2015) (quoting Fed. R. Civ. P. 56(a)). Purely legal issues may appropriately be resolved at summary judgment. *Dupree v. Younger*, 598 U.S. 729, 737 (2023) (observing "a purely legal question is, by definition, one whose answer is independent of disputed facts").

---

[1] The statement of reasons required by Local Rule 6.01 is incorporated into this motion, and a supporting memorandum is not required under Local Rule 7.04 because the reasoning of the motion is set forth herein.

1

"Only material facts—those 'that might affect the outcome of the suit under the governing law'—will preclude the entry of summary judgment." *Id.* (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute about a material fact is genuine, 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). In reviewing a motion for summary judgment, the court must "construe the evidence, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the nonmoving party." *Dash v. Mayweather*, 731 F.3d 303, 310 (4th Cir. 2013) (citing *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011)). However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Id.* at 311.

II.     **ARGUMENT**

    A.     **Cory Fleming**

Nautilus is entitled to summary judgment against Mr. Fleming. Mr. Fleming denies liability to Nautilus in his newly filed Amended Answer [ECF No. 263] and denies certain allegations.[2] Mr. Fleming is estopped from denying those allegations, or denying liability to Nautilus, because he bound by (i) admissions he made in pleading guilty to criminal charges, (ii) findings of fact made by the South Carolina Supreme Court in an order disbarring him from the practice of law, and (iii) prior admissions made by Mr. Fleming in this proceeding.

    1. **Denials in Amended Answer**

In his amended answer, Mr. Fleming denies, for example:

---

[2] *Infra* Part II.A.1.

2

- Coordinating with Murdaugh to pressure Nautilus into agreeing to settle the Satterfield claim; ECF No. 263 at 3, ¶ 16 (denying allegations in paragraph 15(e) of Plaintiff's operative pleading, including that Murdaugh "was coordinating the handling of the [Satterfield] claim with Fleming—including communicating about the claim");

- That the purpose of arranging for Chad Westendorf to serve as successor Personal Representative was to conceal the existence of the fraudulently obtained funds from the Satterfields; ECF No. 263 at 3, ¶ 14 (denying remaining allegations in paragraph 15(c) of Plaintiff's operative pleading, including that "arrang[ing] for Westendorf to serve as the personal representative . . . ma[de] it possible for the Defendants to conceal the existence of the fraudulently obtained funds" and was "a key component without which the scheme to defraud Nautilus could not have been effected");

- Disbursing Nautilus' funds from Moss & Kuhn's ("M&K's") trust account to "Forge" without an order approving the settlement having been filed; ECF No. 263 at 3, ¶ 17, 18 (denying allegations that Fleming "disbursed [Nautilus'] funds (minus fees of over $600,000) to a bank account created and controlled by Murdaugh in the name of 'Forge'" and did so "immediately," without an order approving the settlement being filed);

- Any knowledge that "Forge" was a d/b/a of Alex Murdaugh; *See* ECF No. 263 at 7, ¶ 43 (denying he disbursed funds "to Murdaugh through his fictitious entity "Forge"); and

- Any knowledge that Mr. Murdaugh intended to steal money; *see* ECF No. 263 at 3, ¶ 17.[3]

Mr. Fleming is estopped from denying these facts, as discussed *infra*.

### 2. Mr. Fleming Is Estopped.

South Carolina law is settled that a party is estopped from contesting in a civil action (i) facts adjudicated in a criminal proceeding against that party or (ii) facts which the party had a "full and fair opportunity to litigate." *See Doe v. Doe,* 551 S.E.2d 257, 258, 259 (S.C. 2001) (holding "once a person has been criminally convicted, he is bound by that adjudication in a subsequent

---

[3] Curiously, Mr. Fleming also denies having sufficient knowledge as to whether Gloria Satterfield fell on February 2, 2018, despite purportedly representing a client in a wrongful death claim relating to that very incident. ECF No. 263 at 2, ¶ 7;

3

civil proceeding based on the same facts underlying the criminal conviction" and further recognizing that "mutuality is no longer a requirement of collateral estoppel"); *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 403 S.E.2d 625, 627 (S.C. 1991) ("Nonmutual collateral estoppel may be asserted unless the party precluded lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him the opportunity to relitigate the issue.").

Mr. Fleming is estopped from denying or contesting facts established by previous adjudications as to Mr. Fleming or by his admissions in this action.

### a. Findings of the South Carolina Supreme Court

In Mr. Fleming's disbarment proceeding, the South Carolina Supreme Court found, *inter alia*:

> A third scheme involved creation of a bank account intended to imitate Forge Consulting, LLC, a Georgia-based consulting company that specializes in brokering structured settlement annuities for lawsuit proceeds, among other things. Murdaugh created a bank account using the name "Forge" to make it appear as though client funds deposited into that account were being transferred into legitimate structured settlements. Respondent [Fleming] repeatedly claimed he did not know the imitation Forge bank account was an illegitimate vehicle through which Murdaugh stole millions from unsuspecting clients. However, the State's evidence proves otherwise. Specifically, the State's hearing exhibits plainly demonstrate **Respondent knew the legitimate Forge Consulting entity merely assists in arranging structured settlements; it does not accept disbursements of settlement funds. Accordingly, "Forge" would never be a proper payee in disbursing escrow funds intended for a structured settlement on behalf of a client. The evidence also demonstrates Respondent knew that, for tax reasons, proceeds pursuant to a structured settlement agreement are not disbursed to a client or lawyer prior to being turned over to the settlement fund; rather, the funds must be disbursed directly from the settling insurance company to the settlement fund. Despite this knowledge, Respondent repeatedly directed that insurers forward settlement proceeds directly to his law firm. Respondent then directed that various disbursements of client funds be made out**

**to the intentionally ambiguous payee of "Forge" and forwarded those funds to Murdaugh personally or to a post office box in Hampton, South Carolina, with no identifying cover letter, client identifiers, or other information specifying the proper allocation of the funds into structured annuities.**

[. . .]

**Following Gloria[ Satterfield]'s death, Respondent and Murdaugh conspired together to pressure Murdaugh's two insurance carriers (Carrier 1 and Carrier 2) to settle the wrongful death and survival claims for the full limits of Murdaugh's insurance policies** and to steal the proceeds from Gloria's estate (Estate).

[. . .]

On November 12, 2018, counsel for Carrier 1 forwarded Respondent a letter indicating Carrier 1 intended to tender the full $505,000 policy limits in satisfaction of the claim relating to Gloria's death. Upon receipt of that letter, Respondent did not communicate to his client, Tony Satterfield, that a settlement might be imminent. Instead, **Respondent instructed his paralegal "[w]e need to hold this until we get the PR changed. I will tell you when you need to do something."**

[. . .]

. . . **Respondent made misrepresentations to opposing counsel and others involved in the litigation to make it appear as though he was communicating with the PR about structuring a settlement through the legitimate Forge Consulting entity**. However, despite these representations, Respondent personally instructed that the settlement check should be made payable to "Chad Westendorf as Personal Representative of the Estate of Gloria Satterfield," which was inconsistent with a structured settlement that must be paid directly to the settlement fund. When Carrier 2 [Nautilus] followed-up specifically asking for clarification about the proper payee for the settlement that was ostensibly going to be structured, Respondent stated "I meant to add Moss Kuhn and Fleming on the check. I will need to check with Forge on Monday to double check." Respondent never contacted the legitimate Forge Consulting entity. Rather, the following week, Respondent confirmed in writing "Standard check," made payable to "Chad Westendorf as [PR] and Moss, Kuhn and Fleming attorneys."

[. . .]

> **In furtherance of continuing and concealing his long-standing criminal schemes, Respondent made knowing misrepresentations and intentionally omitted information in his dealings with insurance carriers, opposing counsel, a circuit court judge**, his clients, and Gloria Satterfield's heirs. Respondent ignored the sanctity of the lawyer-client relationship by failing to consult with his client regarding offers of settlement, communicating about the litigation with parties known to be represented by counsel, and allowing Murdaugh and his office staff to prepare documents on behalf of Respondent's client. Additionally, Respondent falsified settlement statements, fabricated expenses, made unauthorized payments from settlement funds, and converted settlement proceeds for his own use. Respondent hand-delivered improperly written checks to Murdaugh rather than forwarding them to the proper payee, thus enabling Murdaugh to convert those proceeds to his own use.

ECF No. 187-35 at 2, 3–4, 6, & 8 (emphases added).

Mr. Fleming did not contest the findings of the South Carolina Supreme Court in his disciplinary/disbarment proceedings based upon this conduct, despite the Supreme Court's express invitation and opportunity for him to do so if he wished:

> To the extent Respondent [Fleming] desires an opportunity to be heard in this matter, he may request a hearing and present any supporting argument in a petition for rehearing pursuant to Rule 221, SCACR.

*Id.* at 10 n.11; ECF No. 187-20 at 71:7–15. Accordingly, it is established that:

- Mr. Fleming engaged in a conspiracy to pressure Nautilus into settling;

- Mr. Fleming knew that "Forge" was not the real Forge Consulting LLC, but rather a creation of Mr. Murdaugh;

- Mr. Fleming made knowing misrepresentations to Nautilus that a legitimate structured settlement company was involved in the putative settlement;

- Mr. Fleming directed his staff to hold the funds received from Lloyds' until Mr. Westendorf was confirmed as the personal representative, evidencing his knowledge that the purpose of the replacement personal representative was to conceal the existence of any settlement from the Estate;

- Mr. Fleming committed intrinsic and extrinsic fraud with regard to the putative settlement, including making false representations to Nautilus and the state court.

Mr. Fleming is estopped from taking a position in this matter inconsistent with these established facts.

### b. Guilty Pleas

When charged with criminal conspiracy based on his conduct in the Satterfield matter, Mr. Fleming pled guilty before this Court and before the South Carolina state court. In the state court, Mr. Fleming was charged and pled guilty to insurance fraud in connection with the Satterfield claim:

> That CORY HOWERTON FLEMING, in Beaufort County, on or about some time in May 2019, did, with an intent to injure, defraud, and deceive, knowingly make a false statement or misrepresentation, and did knowingly assist, abet, solicit, or conspire with a person to make a false statement or misrepresentation, with the intent of obtaining or causing another to obtain or attempting to obtain or causing another to obtain, an underserved economic advantage or benefit in connection with an insurance transaction.
>
> [. . .] Throughout the [sic] Fleming's representation and handling of the case, in dealings with others involved in the case, Fleming as the plaintiff's lawyer made false statements and misrepresentations, and assisted, abetted, solicited, and conspired to make false statements and misrepresentations, about the manner in which the funds were going to be disbursed, about the setting up of an actual structure for the benefit of Gloria's estate (that never occurred), and about the costs and fees incurred in the litigation, while failing to disclose his surreptitious arrangement with Murdaugh..

**Ex. 1** (Count 15); *see also* **Ex. 2** (guilty plea to Count 15).

Before this Court, Mr. Fleming admitted he knew Mr. Murdaugh intended to steal at least a portion of the funds conditionally contributed by Nautilus:

> THE COURT: So let me understand this a little bit better. One day we're going to have a sentencing hearing. I need to understand this. Where did you think the 600-and-some-odd-thousand dollars was going to go if not -- was Mr. Murdaugh to get some portion of it?
>
> THE DEFENDANT: A portion, yes, sir.

>THE COURT: How much?
>
>THE DEFENDANT: Around a hundred thousand dollars roughly.
>
>THE COURT: Now, is that a normal thing that defendants get, a hundred thousand dollars of the plaintiff's attorneys' fees?
>
>THE DEFENDANT: No, sir.

**Ex. 3** at 30:10–22. Mr. Fleming's guilty pleas establish that Mr. Fleming knowingly made statements and misrepresentations as part of a conspiracy, the intent of which was to obtain an underserved economic advantage from an insurance company.

### c. *Admissions in this Action*

Further, Mr. Fleming's conduct—admitted in this action—establishes that he aided and advanced Mr. Murdaugh's scheme with regard to the Satterfield matter:

- Mr. Fleming agreed, at Mr. Murdaugh's request, that he would represent the Estate and advance a wrongful death claim against Mr. Murdaugh in an effort to recover from Mr. Murdaugh's insurers, ECF No. 187-20 at 12:19–16:6, 20:5–20;

- He drafted a letter appearing to be at the request of the Estate, but really at Mr. Murdaugh's request, stating that he represented the Estate and would be pursuing a wrongful death claim against Mr. Murdaugh, *id.* at 16:2-6; ECF No. 187-3;

- He did so knowing and intending that, as the stated goal was to induce Mr. Murdaugh's carriers into paying out under their policies, the letter would be delivered to Mr. Murdaugh's insurance carriers, which it was, ECF No. 187-20 at 20:5–20;

- He knew Mr. Murdaugh intended to steal money from the funds recovered, *id.* at 40:24–41:8;

- He misrepresented the terms of the settlements to the court, including inventing legal expenses that had not been incurred, *id.* at 60:9–64:16; ECF No. 187-19; ECF No. 187-26;

- He accepted legal fees payable to Moss & Kuhn of $650,055.59 and wrote himself checks for an additional $26,200.00 from the funds recovered, ECF No. 187-21;

- He deposited the funds conditionally delivered by Nautilus into his firm's trust account without objecting to the conditions required by Nautilus, thereby agreeing

- to abide by those conditions, including holding the funds in trust until an order approving the settlement was filed, ECF No. 187-20 at 49:5–15; ECF No. 187-23;

- Instead of complying with the conditions required by Nautilus, he hand-delivered a check made out to "Forge" to Mr. Murdaugh without any order having been filed, ECF No. 187-20 at 54:18–55:13;

- He never informed the beneficiaries of the Estate that any settlement had been reached or that a multi-million dollar recovery had been obtained, *id.* at 43:12–15.

### 3. Mr. Fleming Is Liable to Nautilus.

The established and undisputed facts set forth *supra* require a reasonable factfinder to find that Mr. Fleming is liable to Nautilus. For purposes of this Motion, Nautilus only requests summary judgment on its Breach of Agreement cause of action.

#### a. *Breach of Agreement*

Mr. Fleming has not disputed that, by depositing Nautilus' funds in M&K's escrow account, he Fleming and M&K (a payee on Nautilus' check) were bound by the escrow conditions accompanying the funds; namely, that the funds would be held in escrow unless and until an order approving the settlement was signed and filed in the probate court. Indeed, Mr. Fleming acknowledged that it was a standard request and practice to hold funds in trust until an order is filed. ECF No. 187-20 at 48:7–25. The parties agree that the escrow conditions were modified in one respect — it was subsequently agreed that the order would be filed in circuit court, rather than in the probate court. ECF No. 187-5. There is, however, no dispute that Nautilus' funds were disbursed without the order approving the settlement being filed anywhere. ECF No. 187-20 at 58:13–21.

While not disputing the existence of an agreement, Mr. Fleming contends there was an additional modification and that Mr. Grantland agreed that *he*, Mr. Grantland, would be responsible for filing the order, not Mr. Fleming. *Id.* at 51:12–52:1. However, even assuming (for the purposes

of this Motion) that were true, it does not create a genuine issue of material fact as to Mr. Fleming's liability, because Mr. Fleming does not contend that there was ever any agreement that he could disburse the funds from M&K's trust account prior to the order being filed.[4] It is undisputed that Mr. Fleming knowingly disbursed the funds without an order having been filed, whoever was to file it, in breach of the express escrow conditions attaching to the funds.

Under South Carolina law, until a settlement is formalized in compliance with the South Carolina Rules of Civil Procedure and any statutory requirements, it is not binding. Until a settlement is binding, a payor is permitted to withdraw its assent. *See, e.g.*, *Farnsworth v. Davis Heating & Air Conditioning, Inc.*, 627 S.E.2d 724, 725-26 (S.C. 2006) ("Rule 43(k) provides that '[n]o agreement . . . shall be binding unless' one of the three conditions listed above is met. In other words, an agreement is non-binding until a condition is satisfied. Until a party is bound, she is entitled to withdraw her assent."). This is why Nautilus' funds were to be held in trust until the settlement was finalized. And had Defendants done so, the funds would remain in escrow because the settlement was never finalized, and Nautilus could have recovered them once the fraud was revealed. Defendants' breaches made that impossible, causing harm to Nautilus.

### b. Failure to Comply with Escrow Conditions

As a party responsible for depositing and holding Nautilus' funds in escrow, Fleming and M&K were bound by the escrow conditions attached to those funds, and their failure to abide by the conditions entitles Nautilus to the return of its funds. *See In re Dameron*, 155 F.3d 718, 723

---

[4] Nor is an order final under South Carolina law until it is filed. *Doe v. Doe*, 478 S.E.2d 854, 859 (S.C. Ct. App.1996). ("Judgments ... are not final until written and entered."); *First Union National Bank v. Hitman, Inc.*, 411 S.E.2d 681, 682 (S.C. Ct. App. 1991), affirmed, 418 S.E.2d 545 (S.C. 1992); *Bayne v. Bass*, 394 S.E.2d 726 (S.C. Ct. App. 1990) (divorce decree not final until written and recorded). Requiring a signed and filed order as a predicate to any funds being disbursed was to provide reasonable protections for Nautilus that the putative settlement was a legitimate transaction.

(4th Cir. 1998) ("It is, therefore, elementary that when trust conditions are not satisfied the trustee has a duty to return the property to the trustor."); *Abovenet Commc'ns, Inc. v. 1807 Faraday Ct. Ltd. P'ship*, 162 F. App'x 264, 266 (4th Cir. 2006) ("By the same token, when the conditions specified in the escrow arrangement are not met, the escrow must be returned to the grantor."); *see also Moore v. Weinberg*, 383 S.C. 583, 588, 681 S.E.2d 875, 878 (2009) (recognizing a fiduciary duty that "arises from an attorney's role as an escrow agent [which] is independent of an attorney's status as a lawyer and distinct from duties that arise out of the attorney/client relationship").[5] Fleming violated the escrow conditions when he improperly disbursed Nautilus' funds, funds that should have remained in trust until there was a valid, enforceable settlement.

Mr. Fleming's breach of the agreement and failure to abide by the escrow conditions is not merely a technical problem. It is highly significant. The filing of the order would make the terms of the settlement public, which is precisely what Defendants sought to avoid, because making a settlement public would make it impossible to conceal the theft of the funds from that settlement. As the goal of the scheme was to convert funds Mr. Murdaugh's insurers would pay, it was critical that the existence of the settlement be concealed, hence Mr. Fleming's request that the order *not* be filed. *See* ECF No. 187-16 at 100:8–19.

In other words, compliance with the condition Mr. Grantland placed on the deposit of Nautilus' funds was incompatible with the scheme to defraud Nautilus. Mr. Fleming's request of Judge Mullen not to file the order (ECF No. 187-16 at 100:8–19) was critical to the effort to defraud

---

[5] *Cf. United States v. Oregon*, 671 F.3d 484, 490–91 (4th Cir. 2012) (noting under North Carolina law that "the party who deposited the funds into an escrow account retains title to those funds until the escrow condition is satisfied" and "when an escrow agent embezzles escrow funds prior to the satisfaction of the escrow condition, the loss lies with the depositor and not with the obligee," though both depositor and obligee have an interest in the funds).

11

Nautilus and steal the funds. Mr. Fleming's disbursement of the funds without an order being filed made the funds unrecoverable from trust, damaging Nautilus.

Under South Carolina law, Mr. Fleming and M&K are liable to Nautilus for the return of its funds:

> Respondent admitted that he endorsed the settlement check, deposited it into his trust account, and transferred his legal fees to his operating account. Clearly, Respondent's actions were in direct violation of the instructions by GEICO that Respondent retain the settlement proceeds in his trust account until the parties signed and returned the Release. Even if, as Respondent contends, the settlement check was received prior to the GEICO instruction letter, this would not negate Respondent's misconduct. Once he received the letter, Respondent should have withdrawn his legal fees from the operating account and transferred them back to his trust account. Furthermore, Respondent was aware on August 22, 2005 that Client did not intend to sign the GEICO release. Thus, per GEICO's instruction, Respondent should have returned his legal fees to his trust account until the matter was resolved. . . .

*In re White*, 663 S.E.2d 21, 26, *reinstatement granted*, 669 S.E.2d 588 (S.C. 2008).

### B.    Moss & Kuhn Is Liable to the Same Extent as Mr. Fleming.[6]

Under South Carolina law, a professional corporation is liable for the actions of its member to the same extent that its member is liable. S.C. Code Ann. § 33-19-340(b) ("A domestic or foreign professional corporation whose employees perform professional services within the scope of their employment or of their apparent authority to act for the corporation is liable to the same extent as its employees."). While it is often left to the factfinder to determine whether certain

---

[6] In previous briefing [ECF No. 244], M&K contended that any request for summary judgment against it is untimely as it falls outside of the deadline for Phase 1 dispositive motions established in a prior scheduling order [ECF No. 175]. Nautilus' understanding of Phase 1 was that it was focused upon the liability of Defendants Palmetto State Bank and Westendorf, and that the dispositive motion deadline therein did not foreclose further dispositive motions ahead of trial related to other Defendants. It would appear this was M&K's understanding too, as M&K has noticed the deposition of Nautilus to occur December 16, 2024 more than nine months after close of discovery in the scheduling order M&K now argues should be enforced.

conduct fell within the scope of employment, courts may make the determination when it is not reasonably in dispute:

> 'What acts are within the scope of employment can be determined by no fixed rule. The authority from the master is generally to be gathered from all the surrounding and attendant circumstances. **In cases where the deviation is slight and not unusual the Court may, and often will, as matter of law, determine that the servant was still executing his master's business.** So, too, where the deviation is very marked and unusual, as in *Holder v. Haynes*, 193 S.C. 176, 7 S.E.2d 833, the Court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremities will be regarded as involving merely a question of fact, to be left to the jury.'

*McKinley v. Rawls*, 333 F.2d 198, 200 (4th Cir. 1964) (emphasis added) (quoting *Adams v. S.C. Power Co.*, 200 S.C. 438, 21 S.E.2d 17–19 (1942)). Here, it is not a close call.

It cannot be reasonably disputed that Mr. Fleming represented the Satterfield Estate in his capacity as a partner at M&K. He wrote letters on M&K's letterhead. *E.g.*, ECF No. 187-3. He signed the mediation settlement agreement with his firm's name in his signature block. ECF No. 187-32. He deposited funds relating to the representation in his firm's trust account and paid the legal fees he took from the representation into his firm's operating account. ECF No. 187-21. The check conditionally delivered by Nautilus was made out to "Chad Westendorf as personal representative of the Estate of Gloria Satterfield **and Moss, Kuhn and Fleming, P.A.**". ECF No. 187- 31 (emphasis added). The firm shared in the profits resulting from the $650,000 legal fee taken from Nautilus' funds. ECF No. 187-36 at 42:5–43:1 (legal fees transferred directly in operating account), 10:1–21 (profits splits between partners determined on ad hoc basis, and the firm unaware of a partner ever being excluded from profits generated by a case); ECF No. 187-21. M&K admitted that Mr. Fleming's work in connection with the Satterfield matter was imputable to M&K. ECF No. 187-36 at 58:2–58:3 ("[I]f the firm did it, it would have been done by Cory.").

13

Because M&K is liable for Mr. Fleming's conduct to the same extent Mr. Fleming himself is liable (S.C. Code Ann. § 33-19-340(b)), Nautilus requests that summary judgment be entered against both Defendants on its Breach of Agreement cause of action.

### III.     CONCLUSION AND REQUESTED RELIEF

Nautilus respectfully requests the Court grant summary judgment against Mr. Fleming and M&K on the Breach of Agreement cause of action. Nautilus does not elect a remedy at this time.

**Respectfully submitted:**

This 13th day of December, 2024
Charleston, South Carolina

*/s/ Jaan Rannik*
EPTING & RANNIK, LLC
Jaan G. Rannik (Fed. ID No. 12621)
46A State Street
Charleston, SC 29401
P: (843) 377-1871
F: (843) 377-1310
jgr@epting-law.com

*/s/ Gregg Meyers*
Gregg Meyers (Fed ID No. 4183)
114 4th Ave NW
Byron, MN 55920
843-324-1589
attygm@gmail.com

COUNSEL FOR NAUTILUS INSURANCE COMPANY