UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>                      Plaintiff,<br><br>v.<br><br>RICHARD ALEXANDER MURDAUGH, Sr., CORY FLEMING, MOSS & KUHN, P.A., CHAD WESTENDORF, and PALMETTO STATE BANK,<br><br>                      Defendants. | Case No. 2:22-cv-1307-RMG<br><br>PLAINTIFF'S MOTION *IN LIMINE* |

    Nautilus Insurance Company ("Nautilus") moves this Court for an Order excluding (i) any contention that the underlying insurance claim brought by Mr. Murdaugh was not fraudulent, (ii) testimony or argument that a valid, enforceable settlement of the underlying Satterfield matter exists under South Carolina law, and (iii) testimony or argument that Defendants are estopped from asserting as a result of Mr. Fleming's prior guilty pleas and the findings of the South Carolina Supreme Court.[1]

I.    **LEGAL STANDARDS**

    The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider. "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith,* 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride,* 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing relevance [of evidence] is at the heart of the district court's trial management function."). A district court therefore has "broad

---

[1] The statement of reasons required by Local Rule 6.01 is incorporated into this motion, and a supporting memorandum is not required under Local Rule 7.04 because the reasoning of the motion is set forth herein.

1

discretion" in deciding a motion *in limine*. *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). Nonetheless, a motion *in limine* "should be granted only when the evidence is clearly inadmissible on all potential grounds." *United States v. Verges*, No.1:13-cr-222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014); *Newkirk v. Enzor*, No. CV 2:13-1634-RMG, 2017 WL 823553, at *2 (D.S.C. Mar. 2, 2017).

## II.    ARGUMENT

Defendants should be estopped from denying that Mr. Murdaugh's underlying insurance claim was fraudulent, from asserting that a properly approved, valid settlement of the Satterfield Estate's wrongful death and survival claims exists, and from testifying regarding matters that they are estopped from asserting as a matter of law.

### A.    A Fraudulent Insurance Claim

As has now been conceded by defendant Murdaugh, "he invented a story about his dogs causing the death of Gloria Satterfield to create his own liability to the Satterfield beneficiaries and cajoled his insurer Nautilus into settling that liability for a large payment, which he intended to, and did, steal . . . ." ECF No. 192 at 1. Mr. Murdaugh is, of course, bound by his pleadings. *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989) ("The general rule is that a party is bound by the admissions of his pleadings" (quotation marks omitted)).

The claim submitted to Nautilus was, from its inception, a fraud by Mr. Murdaugh, as he has conceded. Among other things, the trial will determine the extent to which Mr. Fleming and his firm cooperated with and are responsible regarding Mr. Murdaugh's fraudulent claim. However, none of the Defendants should be at liberty to dispute that the claim was a fraud from its inception and caused harm to Nautilus. As to Mr. Murdaugh's admitted fraud, Defendants

Fleming and his firm should be limited to claiming only that they were unaware of Mr. Murdaugh's fraud.

### B.    Existence of a Settlement

Wrongful death settlements in South Carolina must be court-approved following a public hearing. [2] S.C. Code § 15-51-42(B) ("The court shall schedule a hearing and receive into evidence those facts that the court considers necessary and proper to evaluate the settlement. After conducting this inquiry, the court shall issue its order either approving or disapproving the proposed settlement."); *Seltzer v. Squires*, No. 2:19-CV-1712-RMG, 2023 WL 1097819, at *2 (D.S.C. Jan. 30, 2023) ("[U]nder S.C. Code Ann. § 15-51-42 the Court is required to *publicly* approve settlements in wrongful death and survival actions." (emphasis added)).

In South Carolina, no court ruling constitutes a valid order until it is reduced to a writing and filed on the record. *First Union Nat'l Bank of S.C. v. Hitman, Inc.*, 411 S.E.2d 681, 682 (S.C. Ct. App. 1991) ("No order is final until it is written *and entered*.") (emphasis added and citations omitted), *aff'd*, 418 S.E.2d 545 (S.C. 1992); *see also Brailsford v. Brailsford*, 669 S.E.2d 342, 346 (S.C. Ct. App. 2008) ("The South Carolina Supreme Court has held that under Rule 58 'the written

---

[2] S.C. Code §§ 15-51-41 and 15-51-42(B) set out requirements that were not met for the wrongful death settlement. While a petition for approval of the Lloyd's settlement was filed in Hampton County Circuit Court and assigned case number 2018-CP-25-00505 (ECF No. 187-15), neither the petition nor the order Judge Mullen signed on May 13, 2019 regarding the Nautilus agreement to settle (ECF No. 187-28) (which contained a different caption and had no case number) was ever filed. An order never filed has no effect. *First Union Nat'l Bank of S.C. v. Hitman, Inc.*, 411 S.E.2d 681, 682 (S.C. Ct. App. 1991). Nor was the mandatory notice given to the probate court after court approval, as required by S.C. Code § 15-51-42(G) ("The attorney for the personal representative must notify the probate court immediately upon completion of the survival action and furnish the court with a copy of the order approving settlement or a copy of the judgment, whichever is appropriate."). That notice was given neither after Judge Mullen "approved" the settlement in 2019, nor in 2020 after Mr. Fleming and Mr. Murdaugh filed a stipulation of dismissal (ECF No. 187-30) of circuit court action 2018-CP-25-00505.

order is the trial judge's final order' and until entry of the written order the judge is free to change his mind. . . . An oral order of the court is not final and binding until reduced to writing, signed by the judge, and delivered for recordation."), *overruled in part on other grounds by Hughes on behalf of Est. of Hughes v. Bank of Am. Nat'l Ass'n*, 898 S.E.2d 102 (S.C. 2024).

With regard to the wrongful death claim advanced by Defendants on behalf of the Estate of Gloria Satterfield, it is undisputed that (i) no public hearing was ever held and (ii) no order approving the purported settlement was ever filed. Because an order does not exist under South Carolina law if it is not filed, it follows that there *is* no order approving the Satterfield settlement, therefore there is no court approval of the settlement, and therefore there is no binding settlement.

Nautilus expects Defendants to contend that there *is* a binding, enforceable settlement, and that Nautilus' decision to enter that settlement is the proximate cause of Nautilus' harm. However, a settlement that was fraudulent from its inception and which was not properly concluded under South Carolina law does not exist and does not bind Nautilus cannot, as a matter of law, be the proximate cause of Nautilus' harm. Accordingly, Nautilus moves the Court to exclude any testimony or argument by Defendants that the settlement was properly approved, and therefore that a valid, enforceable settlement exists and is the proximate cause of Nautilus' harm.

### 1. The Settlement Agreement Already Required a Filed Order Approving the Settlement Before that Was Made an Express Escrow Condition.

Nautilus also expects Defendants to contend they were not bound by and/or did not breach the escrow conditions attached to the funds conditionally contributed by Nautilus, because the settlement agreement required only that the "[f]unds will be held in trust until the settlement is approved by a court." However, the escrow conditions did not add any requirement not inherent in the settlement agreement; both simply require that there be proper, valid court approval of the settlement (which, under South Carolina law, means a filed order approving the settlement) before

4

the funds were disbursed. Defendants should not be permitted to testify that the escrow condition that an order be signed and filed was a new term imposed by Nautilus or was otherwise not binding.

### C. Estoppel

South Carolina law is settled that a party is estopped from contesting in a civil action (i) facts adjudicated in a criminal proceeding against that party or (ii) facts which the party had a "full and fair opportunity to litigate." *See Doe v. Doe,* 551 S.E.2d 257, 258, 259 (S.C. 2001) (holding "once a person has been criminally convicted, he is bound by that adjudication in a subsequent civil proceeding based on the same facts underlying the criminal conviction" and further recognizing that "mutuality is no longer a requirement of collateral estoppel"); *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 403 S.E.2d 625, 627 (S.C. 1991) ("Nonmutual collateral estoppel may be asserted unless the party precluded lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him the opportunity to relitigate the issue.").

Cory Fleming is estopped from testifying or offering evidence in contradiction of (i) facts he admitted by virtue of his guilty pleas and (ii) the factual findings of the South Carolina Supreme Court in the order disbarring him from the practice of law.

Specifically, Mr. Fleming should be excluded from contending any of the following.

#### 1. Coordination with Murdaugh

The South Carolina Supreme Court found:

> Following Gloria[ Satterfield]'s death, Respondent and Murdaugh conspired together to pressure Murdaugh's two insurance carriers (Carrier 1 and Carrier 2) to settle the wrongful death and survival claims . . . .

ECF No. 187-35 at 4. Mr. Fleming did not contest this finding, despite the Supreme Court's express invitation and opportunity for him to do so if he wished:

> To the extent Respondent [Fleming] desires an opportunity to be heard in this matter, he may request a hearing and present any supporting argument in a petition for rehearing pursuant to Rule 221, SCACR.

ECF No. 187-35 at 10 n.11; *see also* ECF No. 187-20 at 71:7–15. Accordingly, that fact is established, and Mr. Fleming is estopped from contending that he did not conspire with Murdaugh to pressure Nautilus into agreeing to settle the Satterfield claim.

### 2. Knowledge Regarding Forge

The South Carolina Supreme Court found:

> Respondent [Fleming] repeatedly claimed he did not know the imitation Forge bank account was an illegitimate vehicle through which Murdaugh stole millions from unsuspecting clients. However, the State's evidence proves otherwise.

ECF No. 187-35 at 2. Mr. Fleming did not challenge this finding. Accordingly, that fact is established, and Mr. Fleming is estopped from contending that he did not know that "Forge" was an invention of Mr. Murdaugh and not the real Forge Consultants, LLC.

### 3. Misrepresentations to Nautilus

The South Carolina Supreme Court found:

> Respondent made misrepresentations to opposing counsel and others involved in the litigation to make it appear as though he was communicating with the PR about structuring a settlement through the legitimate Forge Consulting entity. However, despite these representations, Respondent personally instructed that the settlement check should be made payable to "Chad Westendorf as Personal Representative of the Estate of Gloria Satterfield," which was inconsistent with a structured settlement that must be paid directly to the settlement fund. When Carrier 2 [Nautilus] followed-up specifically asking for clarification about the proper payee for the settlement that was ostensibly going to be structured, Respondent stated "I meant to add Moss Kuhn and Fleming on the check. I will need to check with Forge on Monday to double check." Respondent never contacted the legitimate Forge Consulting entity. Rather, the following week, Respondent confirmed in writing "Standard check," made payable to "Chad Westendorf as [PR] and Moss, Kuhn and Fleming attorneys."

ECF No. 187-35 at 5-6. Mr. Fleming did not challenge this finding. Accordingly, it is established that Mr. Fleming misrepresented to Nautilus the intention to structure a settlement through a legitimate entity, knowing the funds were actually going to Mr. Murdaugh's fictitious "Forge" account. Mr. Fleming is estopped from contending otherwise.

### 4. Knowledge Regarding Murdaugh's Intent to Steal

Pleading guilty before this Court, Mr. Fleming admitted:

> THE COURT: So let me understand this a little bit better. One day we're going to have a sentencing hearing. I need to understand this. Where did you think the 600-and-some-odd-thousand dollars was going to go if not -- was Mr. Murdaugh to get some portion of it?
>
> THE DEFENDANT: A portion, yes, sir.
>
> THE COURT: How much?
>
> THE DEFENDANT: Around a hundred thousand dollars roughly.
>
> THE COURT: Now, is that a normal thing that defendants get, a hundred thousand dollars of the plaintiff's attorneys' fees?
>
> THE DEFENDANT: No, sir.

ECF No. 267-3 at 30:10–22. Accordingly, Mr. Fleming conceded that he advanced and facilitated the putative settlement of a claim, despite knowing a portion of the proceeds would go directly to the defendant in the wrongful death claim Mr. Fleming advanced. Mr. Fleming is estopped from denying his knowledge of Mr. Murdaugh's fraudulent intent.

### III.   CONCLUSION

Nautilus respectfully requests this Court enter an order excluding evidence as set forth above.

**[signatures on following page]**

**Respectfully submitted:**

This 23rd day of December, 2024
Charleston, South Carolina

/s/ *Jaan Rannik*
EPTING & RANNIK, LLC
Jaan G. Rannik (Fed. ID No. 12621)
46A State Street
Charleston, SC 29401
P: (843) 377-1871
F: (843) 377-1310
jgr@epting-law.com

/s/ *Gregg Meyers*
Gregg Meyers (Fed ID No. 4183)
114 4th Ave NW
Byron, MN 55920
843-324-1589
attygm@gmail.com

COUNSEL FOR NAUTILUS INSURANCE COMPANY