IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

- - -

NAUTILUS INSURANCE COMPANY,:
                                    :     CASE NO.:
          Plaintiff,              :
                                    :  2:22-cv-1307-RMG
          vs.                      :
                                    :
RICHARD ALEXANDER MURDAUGH,:
SR.; CORY FLEMING; MOSS &          :
KUHN, PA; CHAD WESTENDORF,  :
AND PALMETTO STATE BANK,     :
                                    :
          Defendants.           :

**CERTIFIED TRANSCRIPT**

_____

DEPOSITION OF JOHN M. GRANTLAND, ESQUIRE
_____


DATE TAKEN:      Tuesday, March 12, 2024

TIME BEGAN:      10:01 a.m.

TIME ENDED:      2:28 p.m.

LOCATION:        Maynard Nexsen
                 1230 Main Street, Suite 700
                 Columbia, South Carolina

REPORTED BY:     Deidre Osborne, RPR



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                Pages 2..5
John Grantland, 03/12/2024

```
                                          Page 2
1            A P P E A R A N C E S
2  FOR THE PLAINTIFF NAUTILUS INSURANCE COMPANY:
3       EPTING & RANNIK, LLC
        BY: CLINTON MAGILL, ESQUIRE (videoconference)
4           JAAN RANNIK, ESQUIRE (videoconference)
        46A State Street
5       Charleston, South Carolina  29401
        843-377-1871
6       ctm@epting-law.com
        jgr@epting-law.com
7
8  FOR THE DEFENDANT CORY FLEMING:
9       PENDARVIS LAW OFFICES, P.C.
        BY: THOMAS A. PENDARVIS, ESQUIRE
10      710 Boundary Street, Suite 1-A
        Beaufort, South Carolina  29902
11      843-524-9500
        thomas@pendarvislaw.com
12
13 FOR THE DEFENDANT MOSS & KUHN:
14      HOOD LAW FIRM, LLC
        BY: BOBBY HOOD, ESQUIRE (videoconference)
15      172 Meeting Street
        Post Office Box 1508  (29402)
16      Charleston, South Carolina  29401
        843-577-1209
17      bobbyjr.hood@hoodlaw.com
18
   FOR THE DEFENDANT CHAD WESTENDORF:
19
        WILLS MASSALON & ALLEN
20      BY: CHRISTY FORD ALLEN, ESQUIRE
        97 Broad Street
21      Post Office Box 859  (29402)
        Charleston, South Carolina  29401
22      843-727-1144
        callen@wmalawfirm.net
23
24
25 (continued)
```

```
                                          Page 3
1            A P P E A R A N C E S
             (continued)
2
3  FOR THE DEFENDANT PALMETTO STATE BANK:
4       WALKER GRESSETTE LINTON, LLC
        BY: JAMES CLEMENT, ESQUIRE (in person)
5           TRENHOLM WALKER, ESQUIRE (videoconference)
            TOM GRESSETTE, ESQUIRE (videoconference)
6       66 Hasell Street
        Post Office Box 22167  (29413)
7       Charleston, South Carolina  29401
        843-727-2200
8       clement@wglfirm.com
        walker@wglfirm.com
9       gressette@wglfirm.com
10 FOR THE WITNESS JOHN GRANTLAND, ESQUIRE:
11      MAYNARD NEXSEN, PC
        JAMES G. LONG, III, ESQUIRE
12      1230 Main Street, Suite 700
        Post Office Drawer 2426  (29202)
13      Columbia, South Carolina  29201
        803-253-8268
14      jlong@maynardnexsen.com
15
16
17
18
19
20
21
22
23
24
25
```

```
                                          Page 4
1                I N D E X
2                                            PAGE
3  Examination By Mr. Pendarvis          13,193
4  Examination By Mr. Hood                  116
5  Examination By Ms. Allen             117,196
6  Examination By Mr. Clement               164
7  Examination By Mr. Magill                188
8  Certificate of Reporter                  203
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                          Page 5
1                E X H I B I T S
2      DESCRIPTION                        MARKED
3  1   Memorandum Dated 7/11/2018             23
4  2   Nautilus Internal Notes                24
5  3   Email Dated 11/12/2018                 26
6  4   Letter Dated 11/12/2018                27
7  5   Second Comprehensive Report Dated      31
       11/6/2018
8
9  6   Email Chain 11/27/2018                 38
10 7   Letter Dated 1/7/2019                  40
11 8   Letter Dated 1/9/2019                  42
12 9   Email Chain                            44
13 10  Nautilus Internal Notes                50
14 11  Email Chain                            54
15 12  Email Chain                            56
16 13  Email Chain                            60
17 14  Emails Dated 3/6/2019                  62
18 15  Emails Dated 3/6/2019                  64
19 16  Email Dated 3/8/2019                   65
20 17  Letter Dated 3/11/2019                 68
21 18  Letter Dated 3/14/2019                 70
22 19  Westerkam Report Dated 3/11/2019       76
23 20  Emails Dated 3/18/2019                 78
24 21  Email Dated 3/25/2019                  87
25 (continued)
```




NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 6..9
John Grantland, 03/12/2024

| | | Page 6 |
|---|---|---|
| 1 | E X H I B I T S | |
| | (continued) | |
| 2 | | |
| | DESCRIPTION | MARKED |
| 3 | | |
| | 22  Email Dated 3/25/2019 | 89 |
| 4 | | |
| | 23  Emails Dated 3/25/2019 | 91 |
| 5 | | |
| | 24  Email Chain | 93 |
| 6 | | |
| | 25  Emails Dated 4/2/2019 | 94 |
| 7 | | |
| | 26  Release | 95 |
| 8 | | |
| | 27  Petition for Approval of Settlement | 95 |
| 9 | | |
| | 28  Order Approving Settlement | 95 |
| 10 | | |
| | 29  Email Chain | 99 |
| 11 | | |
| | 30  Letter Dated 4/22/2019 | 100 |
| 12 | | |
| | 31  Copy of Check | 102 |
| 13 | | |
| | 32  Emails Dated 5/6/2019 | 104 |
| 14 | | |
| | 33  Emails Dated 5/10/2019 | 106 |
| 15 | | |
| | 34  Letter Dated 5/13/2019 | 109 |
| 16 | | |
| | 35  Order Approving Settlement Dated | 109 |
| 17 | | 5/13/2019 |
| 18 | 36  Email Chain | 112 |
| 19 | 37  Email Dated 6/13/2019 | 118 |
| 20 | 38  Email Chain | 122 |
| 21 | 39  Email Chain | 123 |
| 22 | 40  Order Approving Settlement Dated | 124 |
| | | 5/13/2019 |
| 23 | | |
| 24 | 41  Emails Dated 8/29/2021 | 126 |
| 25 | (continued) | |

| | | Page 7 |
|---|---|---|
| 1 | E X H I B I T S | |
| | (continued) | |
| 2 | | |
| | DESCRIPTION | MARKED |
| 3 | | |
| | 42  Billing Entries | 155 |
| 4 | | |
| | 43  Letter Dated 11/14/2018 | 164 |
| 5 | | |
| | 44  Email Dated 3/25/2019 | 172 |
| 6 | | |
| | 45  Emails Dated 5/10/2019 | 179 |
| 7 | | |
| | 46  Email Chain | 191 |
| 8 | | |
| | 47  Stipulation of Dismissal Dated | 194 |
| 9 | | 10/5/2020 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Page 8

```
 1  (It is hereby stipulated and agreed by and
 2  between counsel for the respective parties that
 3  this deposition is being taken in accordance with
 4  the Federal Rules of Civil Procedure and that the
 5  deponent waives reading and signing of this
 6  deposition transcript.)
 7              - - -
 8      MR. LONG:  I'm Jimmy Long.  I represent
 9  John Grantland here as a -- he's a witness being
10  deposed today.  Of course, John's a lawyer, and
11  so I just want to put on the record that
12  previously in regards to this matter that Alex
13  Murdaugh had waived all privileges and all
14  privilege to John's representation of him, and as
15  a result, we've produced the entire file
16  including privileged communications.  Nautilus
17  has also, I understand, waived the privilege
18  completely in regards to this action.
19      I'd like Jaan or Clinton or somebody to
20  confirm that on the record for me.
21      MR. MAGILL:  As long as it's not been
22  with a drop-down coverage issue, which he
23  shouldn't have anything to do with, I believe
24  otherwise, this action has been waived.
25      MR. LONG:  Well, how am I supposed to
```

Page 9

```
 1  know whether your -- the question involves the
 2  privilege or not?
 3      MR. MAGILL:  Well, I would not think
 4  that Mr. Grantland would have any knowledge of
 5  that.  We were just commenting in the case as a
 6  whole.  There is one issue that has been --
 7      MR. LONG:  He knows about that issue.
 8      MR. MAGILL:  We have a confidentiality
 9  order on it, yeah.
10      MR. LONG:  He knows about that issue.
11  He knows that was out -- that was well-known.
12      MR. MAGILL:  Okay.  Well --
13      MR. LONG:  The fact that there was an
14  issue in regards to the -- are you talking about
15  the GAP?
16      MR. MAGILL:  Yes.
17      MR. LONG:  Yeah, he knows about that.
18      MR. MAGILL:  So it's -- it's
19  confidential, not privilege.  I apologize.
20  There's a order, I guess, or an agreement we
21  have.  So the privilege is -- insofar as his
22  deposition has been waived, yes.
23      MR. LONG:  Completely?
24      MR. MAGILL:  Yes.
25      MR. LONG:  Okay.  There's also -- what's
```

 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 10..13
John Grantland, 03/12/2024

Page 10

```
 1   y'all's position in regards to the mediation?
 2   Does he have the authority to answer questions
 3   regarding what occurred during the mediation?
 4            MR. MAGILL:  Yes.
 5            MR. LONG:  Everybody agree to that?
 6            MR. CLEMENT:  Yes.
 7            MR. LONG:  So y'all can ask him today,
 8   like, what happened during the actual mediation
 9   itself.  Are -- are you prohibited from doing
10   that under the ADR rules?  I just want to give
11   him -- I just want to make sure he doesn't
12   stumble into something that people get upset
13   about.  I mean, obviously for us, our position
14   would be he'd just rather -- he'd just like to
15   answer the questions without having to worry
16   about what he can and cannot say.
17            MR. PENDARVIS:  Maybe we can agree that
18   the testimony is given subject to whether it's
19   admissible at a later point for any of the
20   proceedings.
21            MR. LONG:  And I would agree with that,
22   that the -- I'm not sure whether any testimony
23   about what happened in the mediation would be
24   admissible in court.  That would be something
25   that would be up to the judge.
```

Page 11

```
 1            MR. PENDARVIS:  That --
 2            MR. LONG:  Right?
 3            MR. PENDARVIS:  I'd agree with that.
 4   And -- but it's -- and to the extent that
 5   questions are asked and answers are given, that
 6   doesn't waive the argument later to object to
 7   those being --
 8            MR. LONG:  Uh-huh.
 9            MR. PENDARVIS:  -- admitted into the
10   court proceedings.
11            MR. LONG:  Everybody on the -- everybody
12   agree with that?
13            MR. MAGILL:  Yes.
14            MR. LONG:  And --
15            MR. PENDARVIS:  And there is an
16   exception in the ADR rules to confidentiality
17   related to subsequent actions --
18            MR. LONG:  Uh-huh.
19            MR. PENDARVIS:  -- but we'll -- we'll --
20   that all can be addressed later in --
21            MS. ALLEN:  Right.
22            MR. PENDARVIS:  -- some type of motion.
23            MR. LONG:  And I thought about that, but
24   I'm just being --
25            MS. ALLEN:  Sure.
```

Page 12

```
 1            MR. LONG:  -- careful about it.
 2            The -- and then, third, I would also say
 3   I'm not really aware of what your confidentiality
 4   order says, and we haven't really looked at that.
 5   I don't think it really applies to us.  That's
 6   for y'all.  All right?  So in other words, if
 7   he -- y'all talk about anything today that you
 8   think should be confidential or whatever, under
 9   the court order in the case, it would be up to
10   y'all to designate that or say that.  Right?
11            MR. PENDARVIS:  Agreed.
12            MR. LONG:  I mean, John wouldn't have
13   any obligation to --
14            MR. PENDARVIS:  Agreed.
15            MR. CLEMENT:  Agreed.
16            MS. ALLEN:  Agreed, yeah.
17            MR. LONG:  -- address that.
18            Okay.  Those were the things I wanted to
19   kind of address before we started.  I think we're
20   ready.
21            Are you ready?
22            THE WITNESS:  Uh-huh.  I'm good.
23                          - - -
24            JOHN GRANTLAND, ESQUIRE, after having been
25   first duly sworn, was examined and testified as
```

Page 13

```
 1   follows:
 2                          - - -
 3                     EXAMINATION
 4                          - - -
 5   BY MR. PENDARVIS:
 6       Q.  John, you -- for the record, Thomas
 7   Pendarvis.  I'm representing Cory Fleming in this
 8   matter.  I know you have taken hundreds of
 9   depositions and defended at least dozens.
10            And are you familiar with the protocol for
11   depositions?
12       A.  Yes, sir.
13       Q.  The rules do require that I say some of the
14   things, and, of course, this is not an endurance
15   contest.  If you need to take a break at any point,
16   please let me know.
17       A.  Yes, sir.
18       Q.  Okay.  If you have any questions about the
19   questions I pose, please redirect those back to me so
20   that we can be clear.  You're -- the only time you're
21   permitted to discuss with your counsel anything is if
22   there is a claim of privilege or confidentiality,
23   but, otherwise, it's a conversation -- or a question-
24   and-answer between the two of us.  Agreed?
25       A.  Yes, sir.
```



AdvancedONE LEGAL  is now  LEXITAS

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                Pages 14..17
John Grantland, 03/12/2024

Page 14

1    Q.  Okay.  Could you state your full name for
2  the record?
3    A.  John Martin Grantland.
4    Q.  John, what was your role in the claim that
5  was being made against Lloyd's of London and then
6  later Nautilus Insurance Company by Alex Murdaugh?
7    A.  So my role, I'm Lloyd's and Scott
8  Wallenger's counsel, and Nautilus hired us to defend
9  Alex Murdaugh -- to defend Alex in this -- in the
10  claim, the -- brought by the Satterfields.
11    Q.  Okay.  And when did you first get involved?
12    A.  Not until, I think, November of '18.  I
13  mean, I think the case was assigned to my partner,
14  J.R. Murphy, and when a decision was made that we're
15  going to try to go to mediation, I'm -- I'm -- I know
16  dog bite cases.  I know the Fourteenth Circuit, so
17  I -- J.R. asked me to step in and take it from there.
18    Q.  And you mentioned dog bite cases.  What do
19  you mean by that?
20    A.  You know, the -- just the traditional case
21  where you have a dog either attacks or -- bites or
22  otherwise attacks an -- you know, a person on a
23  property, and, you know, we have statutes that deal
24  with that, and when you represent homeowners'
25  carriers, like we do, we have a lot of dog cases

Page 15

1  ranging from bites to attacks or all kind of things.
2    Q.  Did you -- there was a memo in the file from
3  Konnor Owens.  Who is Konnor?
4    A.  He was a law clerk.
5    Q.  Okay.  Well, let me -- let me step back --
6    A.  Yeah.
7    Q.  -- a little bit before we get into the
8  details.
9    A.  Uh-huh.
10    Q.  So in the initial phases of your and
11  Mr. Murphy's representation of Mr. Murdaugh on behalf
12  of the carrier, Nautilus, could you -- what were you
13  doing?  Claim investigation?
14    A.  Yes.  I mean, we were -- I mean, by the time
15  it came to me, it was like we were -- we were -- a
16  decision had been made to go to mediation, and we're
17  going to at least investigate all of our defenses,
18  defenses on -- well, defenses regarding what happened
19  and -- and her -- and why she fell and -- and her --
20  her injuries --
21    Q.  Okay.
22    A.  -- and...
23    Q.  Well, so just for -- so you and I are on the
24  same page for chronology of events --
25    A.  Sure.

Page 16

1    Q.  -- let me go through a few key things just
2  by date and name, so -- and you tell me if I say
3  something that's -- that doesn't -- isn't consistent
4  with what you remember.
5    My records, our records, show February 2,
6  2018, is when Ms. Gloria Satterfield fell on the
7  Moselle property owned by Alex and Maggie Murdaugh.
8  Is that correct?
9    A.  That's my understanding.
10    Q.  And she was taken to healthcare
11  facilities, and on February 26, 2018, Ms. Gloria
12  Satterfield died.  Is that consistent?
13    A.  That's my understanding, yes, sir.
14    Q.  Okay.  And at the time of the occurrence,
15  there were two policies on the property, correct?
16    A.  I think Alex was insured through Lloyd's and
17  an excess policy or umbrella through Nautilus.
18    Q.  Okay.  So that was the -- the Lloyd's policy
19  was a $500,000 policy?
20    A.  That's my understanding.
21    Q.  And that was the primary policy.
22    A.  Right.
23    Q.  And Lloyd's was a excess policy for 5
24  million per occurrence?
25    A.  Nautilus, yes, sir.

Page 17

1    Q.  Nautilus.  Excuse me.
2    A.  Yeah, yeah.
3    Q.  I apologize for that.
4    Did you have an understanding when Alex
5  Murdaugh reported the claim?
6    A.  No.
7    Q.  I'm going to skip over a few things that
8  we'll probably come back to, but when you got
9  involved, did you review the file materials that
10  Mr. Murphy had as part of your --
11    A.  Yes.
12    Q.  -- representation?
13    Okay.  And did you review all of the
14  communications and investigation materials that had
15  been developed while Mr. Murphy was handling the
16  investigation?
17    A.  Yes.  I assume I would.
18    Q.  Okay.  In reviewing the materials, I'm just
19  going to, you know --
20    A.  Uh-huh.
21    Q.  -- generically describe some of this, but it
22  appears that there were investigations of one of the
23  dog trainers.  Is that --
24    A.  That's my understanding about -- Scott
25  Wallenger may have done -- he -- I know Scott went to



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 18..21
John Grantland, 03/12/2024

Page 18

1  the property and did a lot of interviewing and a lot
2  of -- a lot of the hands-on initial interviewing of
3  what happened -- of investigation of what happened,
4  and he shared his information with us.
5     Q.  Okay.  So in addition to -- and so there was
6  some investigation about the dogs and the dog
7  training for the -- I think there were --
8     A.  That's my understanding.
9     Q.  -- four dogs on the property --
10    A.  I think so.
11    Q.  -- that day?
12    A.  Uh-huh.  I think so.
13    Q.  Of the February 2nd day of the incident?
14        And there was also a significant evaluation
15  of Ms. Gloria Satterfield's medical condition,
16  correct?
17    A.  Yes, sir.
18    Q.  I mean --
19    A.  I was involved in that.
20    Q.  -- pharmaceuticals, all the treatments and
21  what have you --
22    A.  Yes, sir.
23    Q.  -- prior to the fall.  Is that -- was that
24  part of the investigation?
25    A.  Well, we -- we -- you know, we requested all

Page 19

1  of her primary care records, and the records that we
2  were aware of, we requested from -- from Cory so that
3  we could evaluate her condition prior to the fall and
4  afterward, obviously.
5     Q.  And it sounds as though, John, from when --
6  when you got involved that there had been a demand on
7  Lloyd's for a policy limit, and Lloyd's had indicated
8  an intent to tender policy limits prior to your
9  involvement.  Is that correct?
10    A.  That's my -- my understanding.
11    Q.  Okay.
12    A.  And actually did tender.
13    Q.  And did tender.  Okay.
14    A.  Uh-huh.
15    Q.  By the time of your involvement, Mr. Chad
16  Westendorf was the successor personal representative
17  of Gloria Satterfield's estate?
18    A.  I believe so.
19    Q.  Okay.
20    A.  I mean, I -- that's -- you know, that's my
21  understanding.  He was -- it may have been one of the
22  Satterfield boys initially, and then it was
23  Mr. Westendorf, but I don't -- but by the time I was
24  involved, it was Mr. Westendorf.
25    Q.  And were you aware of Mr. Murphy -- or were

Page 20

1  you involved in getting the personal representative's
2  estate established or --
3     A.  No.
4     Q.  -- the successor personal representative
5  established?
6     A.  No.  Huh-uh.
7     Q.  Okay.  And same for Mr. Murphy.
8     A.  Right.  We would not have anything to do
9  with that.
10    Q.  Okay.  How about, were either of you, you or
11  Mr. Murphy, involved in getting anyone appointed as
12  conservator for any of the beneficiaries of the
13  estate?
14    A.  No.
15    Q.  Okay.  At any point.
16    A.  No.
17    Q.  Okay.
18    A.  I mean, I was told that when we -- when we
19  were -- when we were -- when we had settled for a
20  number, I was told that there would be a conservator
21  for the Satterfield -- the Satterfield son who was
22  special needs.
23    Q.  Okay.  Did you do any interviews of Alex
24  Murdaugh that were part of the claim evaluation
25  process?

Page 21

1     A.  I'm sure I did.  We talked a lot, at least,
2  you know -- but by the time I was involved, it was
3  about scheduling a mediation, and we certainly --
4  I -- we -- he told me his -- what -- what -- he told
5  me what happened and -- and, yeah.  So we had a
6  number of phone calls about it.
7     Q.  Okay.  What -- and there were prior notes in
8  the file here by Mr. Wallenger or others with
9  Nautilus about statements Mr. Murdaugh had made about
10  the claim when it was reported, correct?
11    A.  Yes, sir.  That's right.
12    Q.  Okay.  And these -- what -- your
13  conversations you're describing were months
14  afterwards --
15    A.  Right.
16    Q.  -- where you're basically getting ready for
17  a mediation.
18    A.  Right.
19    Q.  Okay.  Did you interview anyone besides Alex
20  Murdaugh?
21    A.  No.  That's -- I mean, I -- I had -- I hired
22  two doctors to -- and gave them, Dr. Pritchard and
23  Dr. Westerkam -- and gave them records and talked to
24  them and reported their findings to -- to Nautilus.
25    Q.  Did you have any discussions with Maggie



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    Pages 22..25
John Grantland, 03/12/2024

Page 22

1  Murdaugh?
2      A.  No.  Never talked to her.
3      Q.  How about any discussions with Paul
4  Murdaugh?
5      A.  No.
6      Q.  Did you see the notes in the file about
7  statements they had made --
8      A.  Yes.
9      Q.  -- about the events?
10     A.  Yes.
11     Q.  Both Paul and Maggie?
12     A.  Right.  From Scott Wallenger.
13     Q.  We're going to get into a few of the
14  documents, and these aren't too voluminous, and there
15  are a few that we may be able to skip over that were
16  provided earlier, but in general when you -- when the
17  decision had been made to mediate -- let me rephrase
18  that.
19         Had the decision to mediate been made before
20  you got directly involved?
21     A.  Yes.
22     Q.  Okay.  So your instructions were basically,
23  "Let's get this claim settled"?
24     A.  Yes.  Let's work with Amy on -- in doing
25  what we can do to -- to -- and do whatever

Page 23

1  investigation we can do regarding her damages and to
2  get the best settlement we can for Alex.
3      Q.  And by Amy, you mean Amy Coryer Miller; is
4  that --
5      A.  Yeah, Amy Miller, the adjuster.
6      Q.  Okay.  She was your primary contact --
7      A.  Yes.
8      Q.  -- at Nautilus --
9      A.  Yes.
10     Q.  -- Amy Miller?
11     A.  Yeah.
12     Q.  Okay.  I'll tell you what.  It might be just
13  easiest to move into some exhibits now.  I'm
14  basically going in the order that they were produced
15  in that file that you guys had some problems opening
16  up, so I'm going to show a few exhibits to you, John.
17     A.  Okay.
18                    - - -
19     (Memorandum Dated 7/11/2018 marked Exhibit Number
20     1 for identification.)
21                    - - -
22  BY MR. PENDARVIS:
23     Q.  Going backwards a little bit, John, this was
24  a memo or may even have been just part of a memo, but
25  this was a memo in the file that was produced, and

Page 24

1  it's from Mr. Konnor Owens to J.R. Murphy dated July
2  11, 2019.  Is this the dog bite research --
3      A.  Right.
4      Q.  -- you have mentioned earlier?
5      A.  Yes.
6      Q.  And, I mean, the -- I'll tell you what.
7  I'll let you do it.
8         Could you read the answer to the questions
9  right under the --
10     A.  You mean --
11     Q.  -- bold?
12     A.  Yeah.  "South Carolina's dog bite statute
13  does impose strict liability in cases where the
14  injury was caused by the dog jumping on the injured
15  party."
16     Q.  So the strict liability issue was a concern
17  as part of the claim evaluation was maturing,
18  correct?
19     A.  Right.
20         MR. PENDARVIS:  Okay.  Off the record
21     for just a second.
22                    - - -
23     (A discussion was held off the record.)
24                    - - -
25     (Nautilus Internal Notes marked Exhibit Number 2

Page 25

1     for identification.)
2                    - - -
3         MR. PENDARVIS:  Okay.  Back on the
4     record, please.
5  BY MR. PENDARVIS:
6      Q.  Mr. Grantland, I'm passing you a document
7  that's marked as Exhibit 2 to your deposition.  It
8  appears to be some internal -- Nautilus internal
9  notes that were produced in this case.  Were these
10  materials available to you --
11     A.  No.  I --
12     Q.  -- when you were representing Mr. Murdaugh?
13     A.  I haven't seen this document before until I
14  knew it was going to be an exhibit to my deposition.
15     Q.  Okay.
16         MR. RANNIK:  Tom, sorry to interrupt.
17     This is Jaan Rannik.  Could I ask you just to
18     reference the Bates numbers --
19         MR. PENDARVIS:  Sure.
20         MR. RANNIK:  -- of the exhibits once you
21     go in for the clarity on the record?
22         MR. PENDARVIS:  I'll do my very best for
23     that, Jaan.  This is Nautilus_000771 through 772.
24         MR. RANNIK:  Thank you.
25         MR. PENDARVIS:  Do you need to -- since



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 26..29
John Grantland, 03/12/2024

Page 26

1    we're just at Exhibit 2, let me -- I can tell you
2    what Exhibit 1 is just so you'll have that.
3              MR. RANNIK:  No worries on Exhibit 1.
4    And the only reason that I'm even asking is
5    because some of these documents were produced as
6    confidential.  We're probably going to have to go
7    back and designate some portions either of the
8    exhibits or of the testimony as confidential, and
9    so I just want to, for ease of reference, be able
10   to point to them, but for Number 1 we're good.
11   Thank you.
12             MR. PENDARVIS:  Okay.  Well, I'll do my
13   best to keep that on the record as we proceed.
14             MR. RANNIK:  Thank you.
15                        - - -
16   (Email Dated 11/12/2018 marked Exhibit Number 3
17    for identification.)
18                        - - -
19   BY MR. PENDARVIS:
20        Q.  John, I'm passing to you now another exhibit
21   marked as Exhibit Number 3 to your deposition, and
22   this is Nautilus_000255.  It appears to be an email
23   from Mr. Murphy to Ms. Miller dated November 12,
24   2018.
25             The first line of the -- of the first

Page 27

1    sentence in the exhibit explains Ms. Miller's belief
2    that they're fully expecting to receive a policy
3    limit time-limited demand from -- so from the outset
4    of the case, it was clear that was coming, correct?
5        A.  Yes, sir.  Absolutely.
6        Q.  And below -- the itemized list below are
7    basically medical records that were needed to better
8    evaluate the claim; is that correct?
9        A.  That's correct.
10       Q.  As part of the representation, did you see
11   correspondence from Mr. Wallenger's firm to
12   Ms. Miller about the Nautilus position on the claim?
13       A.  I'm sure I did.  I'm -- I know I saw Scott's
14   letter, his investigation of what happened and who he
15   interviewed and his -- his evaluation, and I've seen
16   the letter from Attorney Rheney.  I don't know when I
17   saw that letter, but -- but I'm -- I've seen that
18   letter before.
19       Q.  Okay.  I'm going to pass to you --
20       A.  Yeah.
21       Q.  -- a copy of that letter.
22                        - - -
23   (Letter Dated 11/12/2018 marked Exhibit Number 4
24    for identification.)
25                        - - -

Page 28

1    BY MR. PENDARVIS:
2        Q.  This is marked as Deposition Exhibit Number
3    4.
4        A.  Right.
5        Q.  It's a letter dated November 12, 2018.
6        A.  Right.
7              MR. PENDARVIS:  And for those on the --
8    and for the record, it's Nautilus_002323
9    continuing to Nautilus_002325.
10   BY MR. PENDARVIS:
11       Q.  And is that the letter from Mr. Rheney you
12   were just describing?
13       A.  Yes.
14       Q.  And did you -- at some point in your
15   representation before the mediation, you were able to
16   review this document?
17       A.  I think so.  You know, I was -- it wasn't
18   written to me, and I'm not sure how it -- if it was
19   sent by Amy to J.R., but, I mean, I know I've read
20   it.  When I've read it, I can't tell you.
21       Q.  And stepping back a little bit for a big
22   picture, the estate of Gloria Satterfield was being
23   represented by Cory Fleming, correct?
24       A.  That's correct.
25       Q.  And did you know Cory before this --

Page 29

1        A.  I did.
2        Q.  -- claim?
3        A.  I did.  We've had cases together.
4        Q.  Okay.  And could you describe your
5    relationship with Cory?
6        A.  Just, you know, cordial, professional.
7        Q.  This letter -- and I'll let you -- if you'd
8    like to look at it.  On page 2 of the letter, the --
9    let's see, the second full paragraph includes some
10   concerns or descriptions, I should say, about
11   Mr. Murdaugh's reputation in Hampton County and the
12   Lowcountry.  Is it fair to say that was a concern of
13   how this whole lawsuit would play out if there was a
14   lawsuit?
15       A.  Yes.
16       Q.  And so for the insured's benefit, that was a
17   risk that Nautilus was aware of.
18       A.  Absolutely.
19       Q.  Did -- were there any discussions with
20   Ms. Miller about the likelihood of a verdict if this
21   case was -- if were litigated and what this -- what
22   may happen, what a jury might do for the claim?
23       A.  Yes.
24       Q.  Describe -- tell me what those conversations
25   were about.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 30..33
John Grantland, 03/12/2024

Page 30

1     A.  I mean, when we were evaluating the case,
2  you know, Hampton, Allendale, the Fourteenth Circuit
3  is not like every other county in South Carolina, and
4  we discussed their verdicts in Hampton.  I had a
5  PowerPoint that Mark Tinsley had provided me on a
6  case years before from cases he and Woody had tried
7  down there, just astronomical verdicts on nominal
8  damages, and I shared that with them, and so -- and,
9  you know, with $700,000 in medical bills -- and if
10  Alex is admitting fault, I mean, the verdict could --
11  could exceed his coverage, so we -- we definitely had
12  discussions about the danger of having a case down in
13  Hampton --
14     Q.  Okay.
15     A.  -- or a trial in Hampton.
16     Q.  Did decisions by Lloyd's to tender policy
17  limits have any effect on decisions Nautilus was
18  making about whether to resolve the claim?
19     A.  I don't -- I just know that it was highly
20  unusual for an insurance company to tender $500,000
21  with no strings other than a promise that we'll
22  mediate and we won't file suit until we mediate.  So
23  I've never had this -- I've never had a case like
24  this before.
25     Q.  No covenant not to execute?

Page 31

1     A.  No -- no protection.
2     Q.  That is pretty unusual.
3        And so if I were -- just I'm -- I'm making
4  clear that -- on your testimony about this particular
5  November 12, 2018, letter.  You believe you saw it at
6  some point.  You just don't recall when in the -- in
7  the course of your representation that you reviewed
8  this.
9     A.  Right.
10     Q.  But it was prior to the mediation.
11     A.  I assume it was prior to the mediation, but,
12  you know, it's -- you know, the -- but I can't say
13  100 percent, but I assume it was because all -- you
14  know, this is -- this is all information we knew.
15  None of this was a secret.
16             - - -
17  (Second Comprehensive Report Dated 11/6/2018
18  marked Exhibit Number 5 for identification.)
19             - - -
20  BY MR. PENDARVIS:
21     Q.  Mr. Grantland, I believe you mentioned this
22  earlier, but I'm passing to you now a document marked
23  as Exhibit 5 of this deposition, and it's -- bears
24  Bates numbers Nautilus_002303 continuing through
25  Nautilus_002314.  I believe this is the letter from

Page 32

1  Mr. Wallenger that you mentioned earlier.
2     A.  That's right.
3     Q.  Similar to Exhibit 4, is this another letter
4  that you would have reviewed before the mediation?
5     A.  Yes.
6     Q.  Okay.  Were there any -- you reviewed all
7  these materials with your lawyer before the
8  deposition?
9     A.  Yes.
10     Q.  I'm trying to save some time here.
11     A.  Yeah.  Thank you.
12     Q.  Were there anything -- any of the contents
13  of Exhibit 5 that you remember reviewing and having a
14  question about or concerns?
15     A.  No.  I mean, I'm sure I talked to Scott
16  about it, but -- but -- but, no.
17     Q.  Did any of you interview any of the
18  Satterfield family members?
19     A.  No.
20     Q.  We've seen references in a few of these
21  materials where reports were that Maggie, for
22  instance, heard from some Satterfield family members
23  that a dog was involved in the fall.  Do you recall
24  seeing that?
25     A.  I do.

Page 33

1     Q.  And did anyone interview any of the
2  Satterfield family members to confirm or verify that?
3     A.  No.  I mean, they're -- they're represented
4  by Cory, and that's not something we would -- we
5  would do.
6     Q.  Okay.  Did you ask Mr. Fleming for --
7     A.  No.
8     Q.  -- a chance to take a statement from any of
9  these --
10     A.  No.
11     Q.  Okay.
12     A.  I mean, the assumption was Alex had said,
13  "She told me the dogs tripped her up," and that's --
14  that was the main -- that was the evidence we were
15  going on.
16     Q.  Okay.  And you -- there were private
17  investigators that followed the Satterfield boys,
18  right?
19     A.  I don't know anything about that.
20     Q.  Did you -- did you see in the claim files
21  any of the private investigators --
22     A.  No, not at all.
23     Q.  Okay.  You weren't involved --
24     A.  I mean, no.
25     Q.  -- in the order?



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 34..37
John Grantland, 03/12/2024

Page 34

1    A.  I think we -- we wanted -- at some point, we
2  wanted to try to interview the EMS workers who came
3  on the scene, and we called them, and they said,
4  "We're not talking to you."
5         And I told Ms. Miller that they're not going
6  to talk to us, and I think she may have hired an
7  independent adjuster to speak to them, but -- but,
8  no, we didn't hire any PIs or anything like that.
9    Q.  Okay.  If you would, John, take a look at --
10  I think this is page 6 of the letter.  Pages 5 and 6.
11  Excuse me.  Pages -- well, actually, pages 5 and 6
12  and 7 appear to have Mr. Wallenger's notes on his
13  interviews with Alex Murdaugh, Maggie Murdaugh and
14  Paul Murdaugh.
15    A.  That's correct.
16    Q.  Did you have any conversations with Scott
17  Wallenger prior to the mediation --
18    A.  Yes.
19    Q.  -- about the investigation he had done?
20    A.  Yes.
21    Q.  Tell me about that conversation.
22    A.  I mean, just -- just, you know, confirming,
23  you know, his -- you know, everything he had done,
24  and, you know, he -- he thoroughly investigated
25  whether a dog was involved, what evidence was a dog

Page 35

1  involved in the -- in Ms. Satterfield's fall, and, I
2  mean, I did more investigation into what was the
3  cause of her death and what evidence from the medical
4  side was there of whether a dog was involved or
5  whether the fall caused her to die, and so that's --
6  he did the liability piece, and I did more of the
7  damages piece.
8    Q.  Did he have any conclusions?  We see his
9  statements.
10    A.  Yeah.
11    Q.  Did he have any summary conclusions about
12  whether he really thought the dogs were involved or
13  not?
14    A.  I mean, we both -- Alex was the only
15  evidence that the dogs were involved at the end of
16  the day.  I mean, that's -- that was his -- his
17  testimony was the only evidence, and he was adamant.
18    Q.  No one relied on the statements, I think, on
19  page 7 of the letter where it says, "Maggie said that
20  the Satterfields' relatives told Maggie that, quote
21  'The dogs tripped Gloria up'"?
22    A.  Yeah.  That's -- yeah.  I know that most
23  important to me was what Alex said.  I didn't
24  interview any of the Satterfield relatives.  I
25  just -- nor did I interview Maggie.

Page 36

1    Q.  Okay.
2    A.  And I don't know where -- I don't know where
3  they got -- the Satterfield relatives got that
4  information, but, I mean, it could have been gotten
5  from Ms. Satterfield while she was awake in the
6  hospital, but, you know --
7    Q.  That's what I was thinking too.
8    A.  Yeah.
9    Q.  What about the next -- the statement on the
10  next page, page 8?  And this is the comments about
11  his interview with Paul Murdaugh, and it says --
12  midway through that bolded paragraph, it says, "Paul
13  remembers that his father, Alex, arrived and asked
14  what happened and that Satterfield, quote, 'Said
15  something about the dogs,' close quote."
16         Similarly, did -- was that a material
17  consideration in Nautilus's decision about --
18    A.  I mean, it was consistent.  I guess, it --
19  you know, it was -- it was all consistent with what
20  Alex had said.  I mean, this -- this is consistent
21  with what Alex said, and it's consistent with what
22  Maggie said.  But I didn't interview Paul or Maggie.
23  The only information I had would have been from
24  Scott.
25    Q.  What about -- let's go back a page or two on

Page 37

1  to page 6.  There was some things we'll look at later
2  about some documents about no one said they saw dogs
3  there.  The first responders, I'll call it.
4    A.  Right.
5    Q.  The medical folks.
6         What about the statement in Mr. Wallenger's
7  letter under "Maggie Murdaugh," really the last
8  sentence in his -- one, two -- third paragraph where
9  it says, "Maggie put all the dogs inside the house"?
10    A.  That is -- that was my understanding, that
11  the dogs were put up by the time EMS arrived.
12    Q.  Okay.  So when they got there, there
13  wouldn't have been any dogs --
14    A.  Right.
15    Q.  -- to look at.
16    A.  Right.
17    Q.  Okay.  Mr. Grantland, before I show you an
18  email about a report concerning Brett Lawson, the dog
19  trainer, just, you know, big picture.  There were
20  considerations about whether the dog trainer may have
21  some responsibility with -- if the dogs had been
22  involved, whether the dog trainer -- lack of training
23  may have had some causal link to this.  Is that fair?
24    A.  I think that would have been Lloyd's
25  investigation.  By the time it got to me, that was



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH              Pages 38..41
John Grantland, 03/12/2024

Page 38

1  not -- we were not thinking about making a claim
2  against the dog trainer.
3                         - - -
4     (Email Chain 11/27/2018 marked Exhibit Number 6
5     for identification.)
6                         - - -
7  BY MR. PENDARVIS:
8     Q.  Okay.  I'm going to pass to you a copy of a
9  document marked as Exhibit 6.  This one is
10 Nautilus_000287 through 288.  Marked as Exhibit 6.
11 And I didn't include the report itself.
12    A.  Right.
13    Q.  But do I understand from the content of the
14 email at the bottom half of page 1 of Exhibit 6 that
15 that report had been developed either by Lloyd --
16 someone on behalf of Lloyd's or someone internal to
17 Nautilus, and it was provided to you and J.R.,
18 Mr. Murphy?
19    A.  Right.  Yeah.  And I don't recall seeing the
20 report.  It -- and so -- but I know that that was --
21 I know that was -- the -- looking at the dog trainer
22 was done by -- when Scott was -- Scott was the first
23 person -- first lawyer to be investigating the -- the
24 incident.  I know that was one of the issues, and I
25 think maybe this was just -- I don't -- I don't know

Page 39

1  who hired the independent adjuster, whether Nautilus
2  did or Lloyd's, but --
3     Q.  Okay.  Okay.  And the -- I did see some
4  reference to Bourbon -- the dog, Bourbon --
5     A.  Right, right.
6     Q.  -- having been returned from the trainer,
7  Brett Lawson, not long before the incident in
8  February 2nd.
9     A.  That was my understanding too.
10    Q.  Okay.  So that's why there might have been
11 some concern that maybe the dog trainer had something
12 to do with a dog involved?
13    A.  Right.
14    Q.  Okay.  But that never panned out?
15    A.  No.
16    Q.  Okay.  So of the medical professionals that
17 were hired, Dr. Pritchard was the first doctor you
18 all retained to do an evaluation of Ms. Gloria
19 Satterfield?
20    A.  Yes, sir.
21    Q.  And it was a comprehensive pre-fall and
22 post-fall evaluation?
23    A.  Well, it was a neurological -- I mean, she
24 had a head injury, and so we wanted him to evaluate
25 mainly what was her injury and did this injury kill

Page 40

1  her.  Was this the cause -- did this cause her death?
2  And that -- I mean, that's -- I mean, it wasn't
3  about -- for Dr. Pritchard, it was all about the
4  neurological issues:  What was her injury, and what
5  effect did it have on her?  Did it lead to her
6  demise?
7     Q.  We're going to look at some documents --
8     A.  Yeah.
9     Q.  -- about Dr. Pritchard, but -- and I just
10 want to make sure I understand this.  And so
11 Dr. Westerkam was more involved on the medication and
12 some of her history issues and whether that
13 contributed?
14    A.  Well -- and, yes.  It was a -- he's more of
15 an internist, and it was, like, what was her state of
16 health, and what was the cause of death?  Did the
17 fall cause her to die, or did something else cause
18 her to die?  That was kind of the purpose of having
19 Dr. Westerkam.
20    Q.  Okay.
21    A.  And what meds was she on?  What conditions
22 did she have?  Would that have contributed to her
23 fall?
24                         - - -
25    (Letter Dated 1/7/2019 marked Exhibit Number 7

Page 41

1     for identification.)
2                         - - -
3  BY MR. PENDARVIS:
4     Q.  Okay.  All right.  I'm passing to you now a
5  document marked as Exhibit 7.  This is
6  Nautilus_000296_001 through 002.
7          And after you --
8          MR. LONG:  Can I see that?  And this is
9     7?
10         MR. PENDARVIS:  Yeah.  I skipped over
11    one, my apologies.
12         MR. LONG:  Yeah.  Okay.
13         MR. PENDARVIS:  Sorry about that, Jim.
14    I'll do my best if I'm skipping to --
15         THE WITNESS:  Skip them all.
16 BY MR. PENDARVIS:
17    Q.  Skip them all?
18         And I -- and, John, this is --
19    A.  Yeah.
20    Q.  This is your letter --
21    A.  Sure.
22    Q.  -- to Ms. Miller?
23    A.  Right.
24    Q.  And just to speed things along, the very
25 bottom paragraph on page 1 summarizes Dr. Pritchard's


AdvancedONE LEGAL  is now  LEXITAS

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 42..45
John Grantland, 03/12/2024

Page 42

1  expected testimony?
2       A.  Right.
3                    - - -
4       (Letter Dated 1/9/2019 marked Exhibit Number 8
5       for identification.)
6                    - - -
7  BY MR. PENDARVIS:
8       Q.  Okay.  John, I'm passing to you now the --
9  an exhibit.  You know what?  I just marked my copy.
10 An exhibit that's marked as Nautilus_000325_001
11 continuing through 002.
12      A.  Okay.
13      Q.  This is a letter from -- is this a copy of a
14 letter from you to Cory Fleming?
15      A.  That's correct.
16      Q.  And it's basically -- the opening starts off
17 with, you know, "Let's get started with."
18          Had you all discussed mediation before you
19 sent this letter?
20      A.  That was the -- yeah.  I mean, that was on
21 the table before I -- I mean, that was on the table
22 before I was asked to get involved, and when I got
23 involved, my job was to get the case prepared for
24 mediation, get it evaluated -- get the damages
25 aspects evaluated as best I can.

Page 43

1          And so -- so, yeah, I mean, we -- we were --
2  I mean, I reached out to Cory.  I said, "Before we go
3  to mediation, we got a whole lot of stuff we don't
4  have that we need to have, and we're not in suit.  We
5  can't subpoena anything.  You're going to have to
6  give us this.  If you want us to come to mediation,
7  you've got to give us all these things, all these --
8  medical stuff that -- records that we needed."
9       Q.  And you all agreed pretty quickly on Jon
10 Austen?
11      A.  Yes.
12      Q.  I saw some exchange about that, but --
13      A.  Uh-huh.
14      Q.  -- ultimately Jon Austen was decided --
15      A.  Right.
16      Q.  -- as the mediator?
17      A.  Ms. Miller knew him; I knew him; Cory knew
18 him.
19      Q.  Everybody knows him.
20      A.  Right.
21                   - - -
22      (Email Chain marked Exhibit Number 9 for
23      identification.)
24                   - - -
25 BY MR. PENDARVIS:

Page 44

1       Q.  Okay.  I did want to ask you about this.
2  I'm marking -- I'm passing to you now -- this is a
3  email thread marked as Exhibit 9.  This is a
4  Nautilus_000327 through 329.
5       A.  Okay.
6       Q.  And questions I've got for you are about
7  the --
8       A.  Uh-huh.
9       Q.  -- last statement at the top on page 1 of
10 Exhibit 9.  It's describing phone calls with
11 "Murdaugh," and I'm assuming that's Alex.
12      A.  Right.
13      Q.  And the "Satterfield attorney," which I'm
14 assuming that's Cory Fleming.
15      A.  That's correct.
16      Q.  Was that one phone call with both of them on
17 the phone?
18      A.  Yes.
19      Q.  Okay.  How -- tell me about that call.
20      A.  It was all -- I don't remember every detail,
21 but the gist of it is, "We need to hurry up and get
22 this case mediated."  And, you know, Alex was anxious
23 about getting it -- getting it mediated.  You know,
24 he didn't have coverage or -- and, you know, there
25 was -- you know, he was concerned that we were

Page 45

1  dragging our feet.
2          And -- and I was trying to explain to him
3  that we -- we have stuff we got to -- "You got to let
4  me do my job.  We have -- we have records we need to
5  receive and review and evaluate before we can just
6  rush into mediation.  So you got..."
7          So it was -- it was basically, "What --
8  why -- why haven't we mediated yet?"
9          And I was just, "Listen, we got -- we
10 have -- you know, we -- we need records on
11 Ms. Satterfield that we don't have to evaluate, and
12 if you want us to mediate, you got to let us do our
13 job."
14      Q.  Okay.  And --
15      A.  I mean, that's kind of the gist of it.  I
16 mean, I don't remember every detail.
17      Q.  Who initiated the call?
18      A.  I mean, I got -- I think, as I recall, it
19 was a call from Alex with Cory on the line or Cory
20 with Alex on the line.
21      Q.  Was it --
22      A.  Highly unusual.
23      Q.  -- a call -- well, was it a call to you and
24 "Let me get Cory on the phone" --
25      A.  No.  Huh-uh.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH     Pages 46..49
John Grantland, 03/12/2024

Page 46

1    Q.  -- or "Let me get Alex on the phone"?
2    A.  No.
3    Q.  Because they were already both on the phone?
4    A.  Right.
5    Q.  Do you know if they were in the same room?
6    A.  I don't know.  I don't remember that.  I
7  just remember they were both on there.  And Alex did
8  most of the talking.  It was about, "Hurry up and get
9  this thing mediated."
10   Q.  You were -- what did Cory say during that
11  call?
12   A.  I don't remember.
13   Q.  Anything other than, "Let's mediate"?
14   A.  No.  I mean, Cory was not -- it was -- Cory
15  was going to give me everything I asked him for.  I
16  mean, it was never "I'm not going to give you that."
17  It was, you know, -- because, again, we're not --
18  we're pre-suit.  We're not -- we can't subpoena
19  anything, so, you know, I'm asking -- I'm asking Cory
20  to do some work to get -- to get records and -- from
21  different providers.
22       And I'm not sure if he had them all already
23  or if he had to send -- send authorizations out and
24  it took a while, but -- but, you know, that -- that
25  was -- that was the gist of it.  You know, Alex

Page 47

1  wanted us to hurry up and thought we were dragging
2  our feet or I was dragging my feet or Nautilus was
3  dragging their feet.
4       And Cory was telling him, "He's -- he's
5  getting us the information we're requesting."
6    Q.  Was it basically just logistics, getting
7  documents from this place delivered to you, kind of
8  thing?
9    A.  Yeah.  I mean, I don't -- I don't remember
10  the specifics about that, but I just know that the --
11  the message here was, "Hurry up.  You know, we -- you
12  know, I'm -- I don't have -- I don't -- I'm not
13  covered right now or I have coverage problems, and --
14  and we need to get this thing resolved and put to
15  bed."
16   Q.  Okay.  Were there any discussions in this
17  phone call referred to on page 1 of Exhibit 9 about
18  Hampton County, big verdicts --
19   A.  No.
20   Q.  -- or anything like that?
21   A.  They knew I knew that.
22   Q.  Okay.  Okay.  Now, on the -- page 2 of this
23  same exhibit.  And the phone -- the email message we
24  just looked at is -- and it's hard to tell.  January
25  10th, 6:32 a.m.?

Page 48

1    A.  Right.  Yeah.  I don't know.
2    Q.  And this is -- the second page discusses
3  a -- has references to a call -- or the email is
4  dated January 9, 2019, at 3:30 p.m., and it says, "I
5  spoke to Attorney Fleming this afternoon."
6    A.  Right.
7    Q.  "Attached is the letter."
8       That's the cover letter asking for the
9  documents?
10   A.  Right.
11   Q.  And did Cory call you after receiving the
12  letter with the list of medical records you were
13  requesting?
14   A.  I think he did.  I don't specifically
15  remember, but we talked a lot.
16   Q.  Did you speak with his paralegal, Tanya
17  King?
18   A.  We talked to Tanya a lot.
19   Q.  She was involved in getting the records to
20  you all?
21   A.  Yes.
22   Q.  Okay.  Were there any statements from Cory
23  Fleming about the liability part of the evaluation
24  that was important to Nautilus or to you?
25   A.  No.  I mean, I think at some point Cory said

Page 49

1  he wanted Alex to give a deposition under the cloak
2  of mediation to hear Alex's side of the story and --
3  because he had -- I think he said he had never heard
4  Alex's version of the story, but everyone else did,
5  but in any event, that's, you know -- but, no.
6    Q.  Okay.
7    A.  But other than him wanting Alex to give a
8  statement at mediation, that was the only time --
9    Q.  Okay.
10   A.  -- he had ever talked about the liability
11  issues.
12       MS. ALLEN:  I'm sorry.  Did you say that
13   Cory said he had never hear the story?
14       THE WITNESS:  That's right.
15       MS. ALLEN:  Okay.
16       THE WITNESS:  Or he had never heard
17   Alex's explanation of what happened.
18  BY MR. PENDARVIS:
19   Q.  What do you know about any relationship
20  between Cory Fleming and Alex Murdaugh?
21   A.  I mean, I knew they were friends, and I had
22  other cases with them where one represented a driver
23  and one represented the passenger, and I represented
24  the at-fault driver who was sued in Hampton or
25  Allendale by virtue of the passenger suing the



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    Pages 50..53
John Grantland, 03/12/2024

Page 50

1 driver, and then the driver cross-claiming the -- my
2 driver, so I had cases with them over the years where
3 one represented one person and one represented the
4 other.
5     Q. How would you describe their relationship?
6     A. I mean, I -- I understood that they were
7 friends, and -- but, I mean, that's -- that's just, I
8 mean -- but, I mean, you know, that's -- I -- and
9 after, I've read that they went to USC together, but
10 I just understood that they were friends and that he
11 was somebody -- and I think Alex started out at Moss
12 & Kuhn when he got out of law school.
13     Q. When did you learn that?
14     A. I mean, I think I knew just in my dealings
15 with Alex --
16     Q. Okay.
17     A. -- that he started there before he went back
18 to the Murdaugh firm.
19             - - -
20     (Nautilus Internal Notes marked Exhibit Number 10
21     for identification.)
22             - - -
23 BY MR. PENDARVIS:
24     Q. All right. Mr. Grantland, I'm passing to
25 you a document that's been marked Exhibit 10 to your

Page 51

1 deposition. It bears Bates numbers Nautilus_002453
2 through 2454, and this appears to be Nautilus
3 internal notes. Did you have copies of these
4 materials?
5     A. No. I mean, the first time I saw this was
6 when you produced it to Jimmy.
7     Q. This would have been information that you
8 understand Amy Miller would have been putting into
9 their system?
10     A. Yes, sir.
11     Q. So what Ms. Miller put in here are things
12 she learned through you and other materials that you
13 were provided or that may have been provided before
14 you got involved.
15     A. Right, right. Exactly.
16     Q. Were -- did -- around -- and the note that
17 we're looking at on page 1 of Exhibit 10 refers to
18 January 10, 2019, 9:10 a.m. You see that?
19     A. Yes.
20     Q. Around that time, were you having
21 conversations with her? This portion of this is --
22 this is a longer note. This is just a portion of it.
23     A. Right.
24     Q. But this portion is talking about the dogs
25 and the -- whatever was being discussed around

Page 52

1 Hampton County about the dogs. Do you see that?
2     A. Yes.
3     Q. Were you aware that Alex's father was
4 telling people around that the dogs had caused the
5 fall?
6     A. I mean, I -- I don't specifically have a
7 memory of what Alex said about Mr. Murdaugh, but
8 that's consistent with my -- my conversations with
9 Alex. I mean, he was -- he was very -- he felt -- he
10 was very -- he felt very bad for the Satterfield
11 sons. He felt -- you know, he wanted them to be
12 compensated. He wanted us to hurry up and get it
13 resolved, and he did not want a lawsuit, and it was
14 just like, you know, that was his biggest concern.
15     Q. Were there concerns that, if a lawsuit was
16 filed, it would affect Mr. Murdaugh's law practice --
17     A. Absolutely.
18     Q. -- and his business?
19     A. Absolutely. He would look like a hypocrite
20 if his housekeeper's children had to sue him when the
21 housekeeper fell on property that -- or was -- fell
22 because of a dog. Strict liability is a statute, and
23 there's no comparative negligence. He was concerned
24 about it affecting him personally and affecting
25 his -- his firm. Absolutely.

Page 53

1     Q. Okay. And -- and this conversation or this
2 discussion Ms. Miller's recording into the Nautilus
3 file material -- file system is concerned about the
4 issue with the dogs.
5     A. Right. And she's obviously typing in what
6 I'm saying to her.
7     Q. And I presume this part at the -- let's see.
8 One, two -- it's about halfway down. It says,
9 "Defense counsel." And I'm assuming that's referring
10 to you?
11     A. Yeah. I told them to shut up. I told them
12 shut up. "Quit talking about it." You know, I did.
13 "You got to shut up. You got to let me do my job.
14 You're shooting yourself in the foot."
15     Q. Did Mr. Alex Murdaugh follow your directions
16 after you made that warning to him?
17     A. I don't think so. I don't know, I mean...
18     MR. PENDARVIS: Jimmy, I'm skipping over
19     the next document.
20 BY MR. PENDARVIS:
21     Q. There were some documents. I'm just going
22 to skip over some of these.
23     A. Uh-huh.
24     Q. I've got a couple of documents where it's
25 saying the same thing you just said, that --


AdvancedONE LEGAL is now LEXITAS

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                Pages 54..57
John Grantland, 03/12/2024

Page 54

1     A.  Sure.
2        Q.  -- you were telling Ms. Miller that he --
3  you know, "He's telling me now that even if a suit is
4  filed, it will hurt his business and all that."
5  Okay.  I'm not going to put that into the record.
6        I'll tell you what.  Hang on.  Let's move
7  things on.  There are some things that are farther
8  into this lengthy exhibit.
9                    - - -
10    (Email Chain marked Exhibit Number 11 for
11    identification.)
12                   - - -
13  BY MR. PENDARVIS:
14       Q.  I'm passing to you now a document that's
15  marked as Exhibit 11.  It's an email thread.  It
16  begins Bates number Nautilus_000410 continuing
17  through 419.  Further into the email on, I think, the
18  third page is a list of medications.  Do you see
19  that?
20    A.  Yes.
21       Q.  And are these the medications that
22  Dr. Westerkam was evaluating in terms of how that --
23  you know, these medications may have affected
24  Ms. Satterfield?
25    A.  Right.  We may have sent them to both

Page 55

1  Dr. Westerkam and Dr. Pritchard.
2        Q.  And toward the back of the -- of this
3  exhibit and of this thread of emails, there's
4  communications from Tanya King and Mr. Fleming
5  providing records attached to the emails.
6     A.  Yes.
7        Q.  Is that -- so you were -- through January
8  and February of 2019, you were getting --
9  periodically getting copies of Ms. Satterfield's
10  record -- medical records?
11    A.  Yes.  Yes, sir.
12       Q.  Were there any medical records that were
13  missing when you all -- before you went into the
14  mediation?
15    A.  I don't think so.  But I know we had enough,
16  if we -- if there was something here or there, but we
17  certainly had enough information to go to mediation.
18       Q.  Okay.
19    A.  It -- whatever -- if anything was missing,
20  it wasn't worth stopping.  I mean, it's pre-suit, so
21  you're not going to -- we know we're not going to get
22  everything.
23       Q.  Right.
24    A.  But we had enough to evaluate it.
25                   - - -

Page 56

1     (Email Chain marked Exhibit Number 12 for
2     identification.)
3                    - - -
4  BY MR. PENDARVIS:
5        Q.  I'm going to pass to you now a document
6  marked -- another series of email threads.  This one
7  is marked as Exhibit 12.  Nautilus_000474 through
8  481.  If you can identify that.  Is that --
9     A.  Yes.
10       Q.  -- an email thread that you were --
11    A.  Yes.
12       Q.  -- involved in?
13    A.  Yes.  I think this is when we were looking
14  for someone like Dr. Westerkam to give us evaluation
15  on cause of death, maybe life expectancy, although he
16  wasn't able to do that.
17       Q.  So on the first page of Exhibit 12 -- okay.
18  Let's start from the back.  Page 3 references an --
19  this is from Ms. Miller to you indicating a desire to
20  get Dr. Pritchard to evaluate life expectancy issues?
21    A.  Right.  And he couldn't do that.
22       Q.  Okay.  Page 2 of Exhibit 12 is a February
23  23, 2019, email from you to Ms. Miller.  Third full
24  paragraph talks about a conversation with
25  Mr. Fleming.  Do you see that?

Page 57

1     A.  Yes.
2        Q.  Take a look at that for a minute.  Tell me,
3  John, what you meant about, "I smell a trap."
4     A.  Just I -- that, you know, there -- Alex
5  and -- Alex is telling Cory things or Cory is telling
6  Alex things.  I mean, they're work -- that this is --
7  this doesn't -- if Alex speaks at the mediation and
8  says everything he wants to say, that doesn't help
9  our case.  It doesn't -- it makes our case worse.
10       Q.  Okay.  Did --
11    A.  And that -- and that, you know, they were
12  talking to each other.  I mean, Alex knew when I
13  received records from Tanya.  Alex was aware.  And,
14  you know, "Hurry up.  Why haven't you reviewed -- you
15  know, what else do you need?"
16       Q.  Okay.  Did Alex Murdaugh tell you he had
17  spoken with Cory Fleming?
18    A.  No.
19       Q.  Did Cory Fleming tell you he'd spoken to
20  Alex Murdaugh?
21    A.  No.  But, I mean, it just was apparent.
22       Q.  And did Alex tell you -- did Alex tell you
23  that he wanted to speak at the mediation?
24    A.  No.  I told Alex, "Cory wants you to give a
25  deposition or speak at mediation.  I thinks it's a



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 58..61
John Grantland, 03/12/2024

---

Page 58

1 terrible idea, and I don't want you to do that."
2          And he said, "I don't want to do that."
3      Q.  Did -- I've not seen any written record of
4  this, but did Cory Fleming ask for a statement
5  from --
6      A.  No.
7      Q.  -- Alex Murdaugh?
8      A.  No.
9      Q.  On page 1 of Exhibit 12, Ms. Miller -- the
10 very bottom of this email thread of page 1,
11 Ms. Miller is sending an email to you mentioning that
12 she did speak with Alex Murdaugh on March 22, 2018,
13 when the claim was reported.
14     A.  Yeah.
15     Q.  Do you see that?
16     A.  Yeah.  Alex wanted to speak to her and was
17 upset that he had not spoken to her, and I reported
18 to her that the insured's mad that he hasn't -- "He
19 doesn't know your name.  He doesn't -- you've never
20 talked to him."
21          And she said, "No, I've" -- I think she
22 said, "I talked to him early on."
23     Q.  Did Ms. Miller tell you anything about her
24 conversation with Alex Murdaugh on March 22, 2018?
25     A.  Not specifically.

Page 59

1      Q.  Generally?
2      A.  I don't remember -- I don't remember her
3  telling me -- other than that -- it's my
4  understanding that they talked when the claim was
5  first reported, or when the claim was assigned to
6  her, she talked to him, but they only talked once,
7  and that's really all I know.
8      Q.  Shortly after this -- these emails, this
9  email thread on February 25, 2019, had everyone on
10 Nautilus's side of the dispute decided Alex was not
11 going to speak at the mediation?
12     A.  I mean, he said he didn't want to, and we
13 certainly didn't want him to.
14     Q.  Okay.  I'll hold -- we're going to get to
15 the mediation later.
16     A.  Yeah.  Yeah.
17     (The stenographer requests a break.)
18          MR. PENDARVIS:  Yeah, sure.
19          Break time, everyone.
20               - - -
21     (There was a recess from 11:02 to 11:18.)
22               - - -
23          MR. MAGILL:  Jimmy, this is Clinton
24     Magill from Nautilus.  We had an exchange earlier
25     to confirm the waiver of privilege with regard to

Page 60

1  the underlying matter, anything with John
2  Grantland.  For the record, I just wanted to
3  clarify that the waiver of privilege does not
4  apply to Nautilus and us as counsel with regard
5  to this action.  We're just talking about the
6  underlying matters.
7          MR. LONG:  Yeah, I agree with that, and
8  I understand what you're saying.
9          MR. MAGILL:  Thank you.
10          MR. PENDARVIS:  Okay.  Got that cleared
11 up?  Excellent.
12               - - -
13     (Email Chain marked Exhibit Number 13 for
14     identification.)
15               - - -
16 BY MR. PENDARVIS:
17     Q.  Mr. Grantland, moving back into the record.
18 And I'm really, as we're going through these, trying
19 to establish the record on the claim evaluation that
20 was done prior to mediation.  In that regard, I'm
21 passing to you a document marked as Exhibit 13 to
22 your deposition, Nautilus_000465 through 473.
23          MS. ALLEN:  What's the date on the
24     front?
25          MR. PENDARVIS:  The initial date is

Page 61

1  February 25, 2019, at 13 -- excuse me --
2  3:15 p.m., and that is the first date that
3  appears on page 1 of Exhibit 13.
4          THE WITNESS:  Okay.
5  BY MR. PENDARVIS:
6      Q.  And, candidly, this could have been one of
7  the earlier exhibits.
8      A.  No, no.
9      Q.  The first page is the only really new piece
10 of information.
11     A.  Yeah.
12          MR. PENDARVIS:  My apologies, everyone.
13 BY MR. PENDARVIS:
14     Q.  And I do want to ask you about, though, the
15 email midway through page 1 of Exhibit 13 from
16 Ms. Miller to you.  And so the -- there were
17 independent adjusters sent to the first responders to
18 understand what they heard and saw when they came to
19 see Ms. Satterfield on February 2nd --
20     A.  That's my understanding.
21     Q.  -- 2018?
22     A.  Yes.
23     Q.  Okay.  Do you recall any -- the substance of
24 any report that you might have gotten from those?
25     A.  Just that -- whoever spoke to the first



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 62..65
John Grantland, 03/12/2024

Page 62

1  responders.  The first responders said they were not
2  aware of any dogs being around --
3        Q.  Okay.
4        A.  -- or something to that effect.
5        Q.  And no one discussing dogs --
6        A.  Right.
7        Q.  -- at the scene?  Okay.
8        A.  It was all about taking care of Ms. --
9  Ms. Satterfield.
10         MR. PENDARVIS:  Okay.  Jimmy, I'm
11      skipping over the next one too.
12         MR. LONG:  Okay.
13             - - -
14      (Emails Dated 3/6/2019 marked Exhibit Number 14
15      for identification.)
16             - - -
17  BY MR. PENDARVIS:
18        Q.  And, again, Mr. Grantland, just more for
19  the -- record on the claim evaluation process --
20        A.  Sure.
21        Q.  -- your investigation process.  I'm passing
22  to you now another email thread.  This one's marked
23  Exhibit 14 to your deposition, Nautilus_000533
24  through 535.  You see that?
25        A.  Yes.

Page 63

1        Q.  And the list of conditions that are --
2  appear on page one of Exhibit 14, was that a list
3  that Ms. Miller developed?
4        A.  I don't know.  I'm not sure if it came from
5  our medical summary that we did based on the records
6  or from Ms. Miller.  I'm not -- it -- I mean she
7  received the -- the substance from the medical
8  records --
9        Q.  Right.
10        A.  -- and so I'm assuming this is her question
11  to me to ask Dr. Westerkam.
12        Q.  And so if I'm understanding correctly,
13  Dr. Pritchard was -- had been engaged, and then the
14  decision was made to get an internist, and
15  Dr. Westerkam was the candidate to go do this
16  second --
17        A.  Right.
18        Q.  -- life expectancy evaluation.
19        A.  And he really didn't -- no one wanted to do
20  a life expectancy.  And that -- or -- neither
21  Dr. Westerkam or Dr. Pritchard really -- they thought
22  that was kind of speculative, but Westerkam could at
23  least say all the -- all the other health issues
24  Ms. Satterfield had going on that -- and what was --
25  what caused her to pass away.

Page 64

1        MR. PENDARVIS:  Okay.  Jimmy, I'm
2      skipping the next one too.  A good bit of
3      testimony on that.
4             - - -
5      (Emails Dated 3/6/2019 marked Exhibit Number 15
6      for identification.)
7             - - -
8  BY MR. PENDARVIS:
9        Q.  John, I'm passing you another document.
10  This is an email thread marked as Exhibit 15 to your
11  deposition.  It contains Bates number Nautilus_000526
12  through 000529.  You see that?
13        A.  Yes.
14        Q.  And this is an email thread between you and
15  Ms. Miller?
16        A.  Yes.
17        Q.  Had you -- the two of you had a
18  conversation?  Her email to you that is dated March
19  6, 2019, 9:24, sets forth four different categories
20  of positions, I'll call it, that -- that she thought
21  was important for the mediation session.  Is that
22  correct?
23        A.  Yes, sir.
24        Q.  Had you all discussed these items before?
25        A.  Absolutely.

Page 65

1        Q.  Okay.  Was there anything new to this
2  conversation that you all hadn't already --
3        A.  No.
4        Q.  -- developed?
5        A.  I mean, no.  Other than just -- you know, we
6  can't make the doctors tell us -- you know, we can
7  only ask the doctors these questions.  They may or
8  may not be able to give us an opinion, but these --
9  these are the issues that we wanted to address with
10  Dr. Westerkam.
11        Q.  Okay.  Thank you.
12        A.  Uh-huh.
13             - - -
14      (Email Dated 3/8/2019 marked Exhibit Number 16
15      for identification.)
16             - - -
17  BY MR. PENDARVIS:
18        Q.  I'm going to pass to you now a single-page
19  email marked as Exhibit 16.  This is Nautilus_000554.
20  And this is from Ms. Miller to you dated March 8,
21  2019, correct?
22        A.  Yes.
23        Q.  And this email -- in this email, Ms. Miller
24  is communicating to you about a boat collision
25  involving Paul Murdaugh.  It doesn't say Paul, but



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 66..69
John Grantland, 03/12/2024

Page 66

1  it's "Mr. Murdaugh's son." Did you recall receiving
2  this?
3      A. Yes.
4      Q. Before you received this March 8, 2019,
5  email, had you heard about the boat crash?
6      A. At some point. I mean, I -- like everybody.
7  If it was -- I'm not sure whether she told me --
8  whether I read it in the paper that day or heard
9  about it that day, but it's certainly around the same
10 time.
11     Q. I think the crash was on February 24, 2019.
12     A. Okay. Well, then I would have known before
13 she did.
14     Q. Okay.
15     A. I mean, I would have read the news like
16 anybody else.
17     Q. Did you have any conversations with Alex
18 Murdaugh about this event?
19     A. Just -- just that he was upset about it.
20     Q. Okay. Did you all have any -- did you have
21 any conversations with Alex Murdaugh on how this boat
22 crash event might play into the mediation with the
23 Satterfield claim?
24     A. I mean, he wanted -- he wanted this case,
25 the Satterfield case, resolved because he -- you

Page 67

1  know, this -- he was dealing with this, and I'm not
2  sure the specifics of his insurance, but he was
3  concerned about insurance coverage.
4      Q. For Paul --
5      A. Right.
6      Q. -- or whatever exposure Paul may have --
7      A. Right.
8      Q. -- had from this.
9      A. Or for -- you know, just for him and for
10 Paul.
11     Q. Did you speak with Alex after receiving this
12 email about the boat event?
13     A. I don't know if I did or not.
14     Q. How about Ms. Miller, after you received
15 this email, did you have any conversations with her
16 about how this boat event may impact mediation?
17     A. I don't -- I'm -- we had a lot of
18 conversations. Whether I specifically had one with
19 her about the boat -- how the boat crash would affect
20 mediation, I can't -- I can't say, but I know it came
21 up in other conversations. I mean, it was all part
22 of Alex's overall just -- he -- "This needs to be put
23 to bed." It's --
24     Q. Another reason to --
25     A. Yeah.

Page 68

1      Q. Okay. Okay.
2                      - - -
3      (Letter Dated 3/11/2019 marked Exhibit Number 17
4      for identification.)
5                      - - -
6  BY MR. PENDARVIS:
7      Q. Mr. Grantland, I'm passing to you now a
8  copy -- I believe it's a letter from you to
9  Ms. Miller dated March 11, 2019. This is Bates
10 number Nautilus_000508_001 through 002.
11         Is this a copy of a letter that you sent to
12 Ms. Miller?
13     A. Yes.
14     Q. And this is -- can I accurately summarize
15 this as a summary of Dr. Westerkam's opinions --
16     A. Yes.
17     Q. -- after reviewing the records and, you
18 know, offering his opinion?
19     A. Yes.
20     Q. And if I'm understanding Dr. Westerkam's
21 summary as you state to Ms. Miller, he believed this
22 was, like, a multi-factor event, that the fall was
23 just one of other factors that led to
24 Ms. Satterfield's death?
25     A. That's correct, I mean. And I think, again,

Page 69

1  she had recovered from the head injury from the fall,
2  but -- but then she took a turn in the hospital and
3  got worse and never recovered.
4      Q. Did you have any discussions with Ms. Miller
5  about the plaintiff in this case would -- would not
6  have to prove that it was the sole cause; it was just
7  a cause?
8      A. Yeah. This was not -- I mean, he couldn't
9  give us a clean break between the fall and her death.
10 You know, the fall, serious injuries from the fall,
11 broken injuries from the fall, and then it led to --
12 and then she went downhill from that.
13     Q. Okay.
14     A. So he couldn't just -- he could not say with
15 medical certainty that she died from this -- this --
16 this medical event and it had nothing to do with her
17 fall.
18     Q. Okay. And that would increase the risk
19 of --
20     A. Absolutely.
21     Q. -- plaintiff being able to establish
22 causation and --
23     A. Right.
24     Q. Okay. All right.
25         MR. PENDARVIS: Off the record just for



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 70..73
John Grantland, 03/12/2024

Page 70

1    a minute. No. It's right here. Back on the
2    record. I'm sorry. The document I was looking
3    for was right here, kind of like the exhibit
4    stickers.
5            Sorry about that.
6                    - - -
7    (Letter Dated 3/14/2019 marked Exhibit Number 18
8    for identification.)
9                    - - -
10   BY MR. PENDARVIS:
11       Q. Mr. Grantland, I'm passing to you now a copy
12   of a document marked as Exhibit 18. It appears to be
13   a copy of a mediation letter you wrote to Mr. Jon
14   Austen on this matter.
15       A. Yes.
16       Q. Is that correct?
17       A. Yes.
18       Q. And prior to sending Mr. Austen this letter
19   dated March 14, 2019, did you discuss the claim with
20   Mr. Austen?
21       A. I'm sure I did. I don't remember the
22   specifics, but he either called me or I called him.
23       Q. Fairly typical, right?
24       A. Right.
25       Q. You have a conversation about the claim

Page 71

1    and defenses and --
2        A. Right. And it's unusual because Alex was
3    the defendant.
4        Q. Okay. Did you have any conversations -- or
5    as part of your conversation with Jon Austen, did any
6    of that include discussions about Cory Fleming?
7        A. No. I mean, just other -- other than -- I
8    mean, no. I mean, Cory's the lawyer for the estate,
9    and I think Jon knew that Alex referred the
10   Satterfields to Cory.
11       Q. Huh. How did he know that?
12       A. I mean, I just -- Alex told us.
13       Q. Okay. Did -- in your conversation with Jon
14   Austen, was Alex Murdaugh on the phone or --
15       A. No.
16       Q. -- part of that?
17       A. No.
18       Q. Okay.
19       A. I mean, this may have been at the
20   mediation --
21       Q. Okay.
22       A. -- but...
23       Q. I know it's hard to distinguish.
24       A. Yeah.
25       Q. It's been a while.

Page 72

1        A. Right.
2        Q. In the initial conversations you had with
3    Jon Austen about the claim that was going -- he was
4    going to mediate, did you have any discussion about
5    the dog or the claim about the dogs having --
6        A. Yeah.
7        Q. -- caused the fall?
8        A. I mean, we -- it was very clear that the
9    only evidence of a dog was Alex. And -- and, you
10   know, if -- you know, we -- we're not -- if -- the
11   only evidence of a dog was Alex, and this was one of
12   those cases where, if a suit was filed, it was going
13   to hurt Alex more than just the law -- than the
14   actual -- the law -- the results of the lawsuit.
15   Just the fact that the suit was -- we're really
16   trying to keep suit from being filed because that
17   would affect him. It would affect his firm, and that
18   was very -- made very clear to me, so we were trying
19   to -- so he was the only evidence of liability, but
20   he was also pressured to get this case resolved.
21       Q. Were you aware of Cory Fleming having any
22   involvement until he appeared as the lawyer? I mean
23   any involvement in Ms. Satterfield's death.
24       A. No. I mean, I don't know when he got
25   involved, and I just know that when I got the case

Page 73

1    and the claim was made, Cory was the Satterfield's
2    attorney.
3        Q. And the page 1 of Exhibit 18, the mediation
4    letter, did -- were there any conversations about
5    the -- you know, there's a reference in the
6    "Background" section. First full paragraph beneath
7    says, "On the date of the loss." You see that?
8        A. Right. Yes.
9        Q. It says, "Murdaugh has at least three dogs
10   that had been through obedience training who were
11   allegedly also at the house."
12           Did you have any conversations with Jon
13   Austen about potential exposure by the dog trainer?
14       A. No.
15       Q. Okay. Page 2 of this same letter marked as
16   Exhibit 18 also talks about EMS workers. Did you
17   explain to -- to Jon Austen that the dogs had been
18   secured before the EMS workers --
19       A. Yes.
20       Q. -- got there?
21       A. Yes.
22       Q. Okay. And toward the bottom of the section
23   that's captioned "Why Did Plaintiff Fall," there
24   is -- the final paragraph says, "For purposes of
25   mediation." And it says, "I do not intend to argue



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 74..77
John Grantland, 03/12/2024

Page 74

1  liability."
2          Did that happen at the mediation?  Did you
3  argue liability issues or --
4      A.  We didn't have an opening session.  We just
5  went there, met everyone and went in separate rooms.
6      Q.  Okay.
7      A.  So this was not a -- I had a mediation
8  outline, I think, like I always do.  I didn't have a
9  PowerPoint, but I had, like, an outline, and I think
10  it may have been decided -- I may have done the
11  outline.  Then it was decided we're not going to do
12  openings.  We're just going to just separate.  So
13  before this letter was written, it had not been
14  decided that we're -- no one wants to -- Cory did not
15  want to have an opening session.  He just wanted us
16  just to split up.
17      Q.  We're going to get to the mediation shortly.
18      A.  Okay.  Yeah.
19      Q.  I jut -- but as far as --
20      A.  But that was -- you know, you -- normally,
21  at a mediation, you -- as a defense lawyer, you argue
22  what you can argue, whether it's liability or damages
23  or both.  And we just said, "We're not fighting about
24  whether a dog was involved.  We're trying to get the
25  case resolved."

Page 75

1      Q.  Okay.  Did -- since Lloyd's or Brit,
2  whichever -- however it's referred to, since they
3  tendered their limits, they -- there was no -- Scott
4  Wallenger didn't participate in the mediation; did
5  he?
6      A.  No.  He was there.
7      Q.  He was there?
8      A.  Uh-huh.
9      Q.  Who all attended the mediation?
10      A.  I mean, it was -- in our room it was me and
11  a guy named Robert Kennedy of Phelps Dunbar, I
12  believe.  Scott Wallenger, Amy Miller, Alex.  And
13  that -- I mean, we had six of us.  I mean, three
14  lawyers, Amy and -- five of us.  Three lawyers and
15  Amy and Alex in one room, and Cory was in a room.
16  And I believe the -- the banker was in a room by
17  hisself.
18      Q.  Mr. Westendorf?
19      A.  Uh-huh.
20      Q.  He was -- was he on the --
21      A.  I believe.
22      Q.  On the phone or in a separate room?
23      A.  I remember seeing him in a room.
24      Q.  Okay.
25      A.  But I -- you know, again, you meet

Page 76

1  everybody, and then you're -- you're -- we're sent
2  off to the room with a big pipe in the wall, and I --
3  but I remember you shake hands with people, and then
4  you go in separate rooms --
5      Q.  Okay.
6      A.  -- and that was -- that was it.
7      Q.  And my understanding is this was -- this was
8  delivered about one week before the mediation?
9      A.  I think so.
10      Q.  March 21 was the mediation?
11      A.  Yes.
12      Q.  Okay.  I'm going to go ahead and mark this
13  as an exhibit.  It's somewhat repetitive, but...
14                    - - -
15  (Westerkam Report Dated 3/11/2019 marked Exhibit
16      Number 19 for identification.)
17                    - - -
18  BY MR. PENDARVIS:
19      Q.  Mr. Grantland, I'm passing to you now a
20  single-page exhibit marked as Exhibit 19.  This is
21  Bates labeled Nautilus_002240.  This appears to be an
22  opinion from Dr. Westerkam.
23      A.  Yes.
24      Q.  Is that what it is?
25      A.  Yes.

Page 77

1      Q.  And -- and this -- you had -- you used this
2  at the mediation or discussed it?
3      A.  I would have.  I mean, I -- again, we -- I
4  mean, by the time we're at the mediation, it's all
5  about numbers.
6      Q.  Okay.
7      A.  They want the policy limits, and we're
8  trying to get the case resolved.  But I certainly
9  passed this on to Ms. Miller.
10      Q.  And consistent with the idea of trying to
11  get the case resolved --
12      A.  Right.
13      Q.  -- his opinion is describing -- is the -- I
14  think it says on the very last paragraph, "The
15  cardiac arrest was expected -- unexpected given her
16  medical status and may have indicated an underlying
17  cardiac condition that was unknown at the time.
18  Therefore, I believe the patient's death is
19  multi-factorial"?
20      A.  Right.
21      Q.  Which meant it may have been a cause --
22      A.  But not the only cause.
23      Q.  Right.  Okay.
24      A.  I mean, there was no definitive -- you
25  couldn't say, "Well, she fell and she was injured,



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 78..81
John Grantland, 03/12/2024

Page 78

1  but she died from something else."
2          - - -
3      (Emails Dated 3/18/2019 marked Exhibit Number 20
4      for identification.)
5          - - -
6  BY MR. PENDARVIS:
7      Q.  I'll tell you what.  I'm going to ask you
8  some -- I'm going to pass you an exhibit.  I've got
9  some questions about the topic before I get into the
10  exhibit, but I'm passing to you now an email thread,
11  a series of emails, marked as Exhibit 20 to your
12  deposition, and it's Bates labeled Nautilus_000577
13  through 579.
14      A.  Yes.
15      Q.  These are emails between you and Ms. Miller?
16      A.  Yes.
17      Q.  Before the mediation itself, this is -- the
18  last email on this chain is March 18, 2019.  Were
19  there conversations about ultimate venue if the
20  matter was not resolved?
21      A.  Yes.
22      Q.  Tell me about those conversations.
23      A.  I mean, you know, I assumed Alex lived in
24  Hampton.  I assumed the -- the house in Islandton was
25  in Hampton, but apparently it was in Colleton, but

Page 79

1  that was -- I assumed everything was Hampton.  I
2  assumed he had a home in Hampton and this house in
3  Islandton was kind of just a weekend hunting lodge,
4  but -- so we were discussing venue, and I said,
5  "Hampton's a terrible venue."
6      Q.  I thought it was pretty interesting how you
7  described it toward the bottom.  I'm going to read
8  it.
9      A.  Yeah.
10      Q.  "It's really like an alternative universe or
11  the" --
12      A.  Right.
13      Q.  -- Twilight Zone down there."
14      A.  That's right.
15      Q.  And that's from the defense perspective?
16      A.  That's from my perspective, yes.
17      Q.  Now --
18      A.  And that's consistent with -- I think around
19  this time I was sending her a PowerPoint that Mark
20  Tinsley had shown at a mediation with just no damages
21  and crazy verdicts.
22      Q.  I saw where Hampton County was number four
23  in the Hellhole Jurisdiction's website in the county.
24      A.  Right.
25      Q.  At the time anyway.

Page 80

1      A.  Right.
2      Q.  Okay.  Now, page 1 of Exhibit 20, second
3  full -- and toward the bottom.  This is your email to
4  Ms. Miller at 8:13 in the morning on March 18.  It --
5  you're giving some projections on what it's likely
6  going to take to get the case settled.
7      A.  Right.
8      Q.  And it says, "Honestly, if you want to
9  settle on Friday, I think it will take closer to 3
10  million to 4 million."
11      How did you come to that number -- numbers?
12      A.  Our coverage was 5 million.  The meds were
13  700,000.  You know, the going settlement -- at least
14  most cases settled down there -- the demand was ten
15  times the meds, and sometimes you could get it down
16  from that, but that was just spitballing.
17      Q.  Were you and Ms. Miller concerned it was
18  going to be -- it was going to take a $5 million
19  policy limit to get the case resolved?
20      A.  I mean, that -- I knew that was the risk if
21  the case went to trial.  It could be in excess of 5
22  million, and then we'd deal with -- we'd have to deal
23  with extracontractual issues, bad faith claim by --
24  by Alex, but, you know, they wanted to mediate.  You
25  know, if someone's insistent on mediating, that -- to

Page 81

1  me, that means that they're willing to take less than
2  the limits.  Otherwise, they wouldn't be insistent on
3  mediating.  So I assumed -- 3 to 4 million is a lot
4  of money, and I assumed that we would -- it would not
5  require the policy limits, but I didn't -- I knew it
6  would require most of the policy.
7      Q.  Okay.  Were you aware of the amount of
8  reserves --
9      A.  No.
10      Q.  -- Nautilus had --
11      A.  I wouldn't have -- I wouldn't know anything
12  about that.
13      Q.  Okay.  They reserved something, but you
14  just --
15      A.  Right.
16      Q.  -- didn't know what.
17      A.  They wouldn't tell me.  As a defense lawyer,
18  I wouldn't know that.  And, I mean, your strategy is
19  you go to mediation.  You assume if you put good
20  money out there, the actual parties will be motivated
21  to want to get it resolved.
22      Q.  Okay.  And page 2 of this exhibit has your
23  reference to the PowerPoints --
24      A.  Right.
25      Q.  -- of Mr. Tinsley.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 82..85
John Grantland, 03/12/2024

Page 82

1    Okay.  Subject to the discussion earlier
2  about confidentiality issues related to the mediation
3  being reserved for later in this dispute, whether
4  they're admissible or not, I do have some questions
5  for you --
6      A.  Okay.
7      Q.  -- about the mediation.
8          MS. ALLEN:  Can we go off the record for
9  one second?
10         MR. PENDARVIS:  Certainly.
11              - - -
12     (A discussion was held off the record.)
13              - - -
14  BY MR. PENDARVIS:
15     Q.  So, Mr. Grantland, you've already testified
16  that the parties broke into separate rooms to begin
17  the -- after, you know, meeting and greeting
18  everyone, separating, the two separate rooms, to
19  begin the actual mediation part.
20     A.  That's correct.
21     Q.  Okay.  And during the mediation, was
22  Mr. Murdaugh insisting that the case get settled and
23  he was advocating --
24     A.  Yes.
25     Q.  -- accepting offers and getting it settled?

Page 83

1      A.  Yes.
2      Q.  Consistently.
3      A.  Yes.
4      Q.  Were there complications related to the
5  Lloyd's tender of their offer?  Is that involved in
6  any way with the discussions?
7      A.  No.  I mean, Scott was there mainly for --
8  he had -- he did most of the investigation, and he
9  was there more to support, but, I mean, it was --
10  their money was gone.  He was just there because he
11  was involved in the initial investigation, and he
12  knew more of the facts than I did.
13     Q.  And so there were discussions about the
14  basis for the claim --
15     A.  Right.
16     Q.  -- and defenses to the claim and what
17  happened that led to the -- ultimately the --
18     A.  Right.
19     Q.  -- negotiations of a settlement.  Okay.
20         And were -- and I have one exception to what
21  Ms. Allen had expressed concerns about when we were
22  off record.  I do want to find out did -- were there
23  any statements by Mr. Cory Fleming that were
24  discussed in your room in terms of positions taken on
25  behalf of the estate of Gloria Satterfield?

Page 84

1      A.  You mean settlement demands or --
2      Q.  Well, not so much the settlement demands,
3  but statements of fact or conclusions or, you know,
4  assertions about what happened or things of that
5  nature from --
6      A.  No.
7      Q.  -- Cory Fleming?
8      A.  No.  I mean, he was in a separate room, and
9  we said hello, but that was -- you know, I mean, Cory
10  said some things towards the end of the mediation
11  but -- regarding settlement, but -- but not about the
12  facts.
13     Q.  But those were value issues on money, like
14  whether that's -- whether the offer/counteroffer was
15  sufficient or not, but that's the discussions you
16  were --
17     A.  Right.
18     Q.  What comments you were getting from --
19     A.  Right, right.
20     Q.  -- Cory Fleming's side was, "That's not
21  enough," or things of that nature?
22     A.  Right.  I mean, ultimately it came down
23  to -- and I don't know how many back-and-forths there
24  was, but Austen gave a proposal, and sometimes
25  mediators do that, and it was 3 -- I think it was the

Page 85

1  3.8 number, and it was more than we had, and it was a
2  lot less than -- I think their demand was 4.5 or
3  something like that.
4          And -- and Cory -- I mean, that was --
5  that's kind of where we left it, and the last thing I
6  said to -- the last thing Cory said to me was he's
7  talked to Tony, and if we can get that, we can settle
8  the case.
9      Q.  This number, the mediator's number --
10     A.  Yeah.  The mediator's proposal.
11     Q.  -- Mr. Austen, ultimately became the
12  number --
13     A.  Right.
14     Q.  -- 3.8 million.  Okay.
15     A.  He said he talked to -- I mean, so, you
16  know, that was the number given to us, and we're --
17  we're -- we said, "We'll -- let's give us some time
18  to process that and get -- and roundtable it and get
19  back to you."
20         And Cory said he talked to Tony, and if we
21  get to that number, he'll -- we can -- if we get to
22  3.8, they'll accept it.
23     Q.  And this is kind of a hallway conversation?
24     A.  Yeah.  This is, like --
25     Q.  All the lawyers will come out into the hall.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 86..89
John Grantland, 03/12/2024

Page 86

1  We've all done that.
2         A.  This is -- yeah.  Yeah.  This is the last.
3  You know, we're leaving --
4         Q.  Okay.
5         A.  -- at that point.
6         (Stenographer admonishes simultaneous cross-talk
7         and requests all participants take turns
8         speaking.)
9  BY MR. PENDARVIS:
10        Q.  So after the mediation concluded, no
11  declaration of impasse, right?  Is that correct?
12        A.  That's right.
13        Q.  And it was a -- everyone understood there
14  will be continuing conversations trying to resolve
15  the case, and it was an issue more about Nautilus and
16  authority to resolve it at 3.8?
17        A.  Right.
18        Q.  Okay.  And so after the formal mediation
19  concluded, did you have continued conversations with
20  Ms. Miller or others inside of Nautilus about
21  authority, or was it just Ms. Miller?
22        A.  Just Ms. Miller.
23        Q.  Okay.  And at a point between the 21st of
24  March 2019 and March 25, 2019, a decision had been
25  made to accept the mediator offer number of 3.8?

Page 87

1         A.  That's correct.
2                       - - -
3         (Email Dated 3/25/2019 marked Exhibit Number 21
4         for identification.)
5                       - - -
6  BY MR. PENDARVIS:
7         Q.  Okay.  I'm going to pass to you now a
8  document marked as Exhibit 21 which is Bates
9  labeled -- it's a single-page email Bates labeled
10  Nautilus_000593.  Is this a copy of a email from you
11  to --
12             MR. CLEMENT:  Tommy, I'm sorry to
13        interrupt you, but I think you might have
14        misstated the date of mediation in the last
15        question.
16             MR. PENDARVIS:  I'm sorry.  Mediation
17        was March 21, 2019?
18             MR. CLEMENT:  Was it the 21st or the
19        22nd?
20             MR. PENDARVIS:  I think it was the 21st.
21        It was a Friday.
22             MR. CLEMENT:  Okay.
23             MR. LONG:  It was the 22nd.
24             MR. PENDARVIS:  The Friday
25        before March --

Page 88

1             MR. CLEMENT:  Yeah, it was the 22nd.
2             MR. PENDARVIS:  Okay.  22nd.  My
3        apologies if I said that, and I've said that
4        consistently throughout the day, if that's wrong.
5        Whatever the day the mediation was --
6             THE WITNESS:  Right.
7             MR. PENDARVIS:  -- was that --
8             THE WITNESS:  Right.
9             MR. PENDARVIS:  The Friday before March
10        25th, so that would be the 22nd.  My apologies.
11        Thank you.
12  BY MR. PENDARVIS:
13        Q.  So by March 25, 2019 -- and let me get back
14  to authenticate the email.  Is this an email you sent
15  to Mr. Fleming and Mr. Wallenger with copies to
16  Mr. Murdaugh and Ms. Miller and Jon Austen on the
17  25th confirming terms of settlement?
18        A.  Yes.
19        Q.  Okay.  And over the weekend, I presume you
20  and others at -- and Scott Wallenger had been working
21  on the settlement agreement?
22        A.  It may have been worked on before --
23        Q.  Okay.
24        A.  Before then.  I'm not sure.
25        Q.  Okay.  I'm just looking at it.

Page 89

1         A.  Uh-huh.
2         Q.  And it says, "Attachment: Settlement
3  Agreement."
4         A.  Right.
5         Q.  "Updated" -- I think you're correct on that.
6  "Updated 3/25/19"?
7         A.  Right.  Yeah.
8         Q.  Okay.  And this is more of a curiosity
9  question, this next email.
10                      - - -
11        (Email Dated 3/25/2019 marked Exhibit Number 22
12        for identification.)
13                      - - -
14  BY MR. PENDARVIS:
15        Q.  Mr. Grantland, I'm passing to you now a
16  document marked as Exhibit 22 to your deposition, and
17  it's dated March 25 at 6:27 a.m.  Do you think those
18  are correct times?
19        A.  No.
20        Q.  Okay.
21        A.  No.
22        Q.  Something was --
23        A.  Yeah.
24        Q.  Okay.  I was going to say.  You guys are up
25  at 5:00 in the morning?



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 90..93
John Grantland, 03/12/2024

Page 90

1    A.  Not -- not working.
2    Q.  Okay.  But this --
3              MR. LONG:  I've been wondering if --
4    I've wondered if that's Pacific time.
5              MR. PENDARVIS:  Okay.
6              THE WITNESS:  Yeah.
7              MR. PENDARVIS:  Could be.
8              MR. LONG:  Because she's in -- she's in
9    Arizona.  It could be Mountain.
10             MR. PENDARVIS:  I feel better for
11   everybody.  Okay.  The -- well, even though she
12   would be up pretty early doing that, but --
13             MR. LONG:  The recording it on her time.
14   In other words, when he sends the email to her --
15             MR. PENDARVIS:  It's --
16             MR. LONG:  -- it's 5:43 --
17             MR. PENDARVIS:  Okay.
18             MR. LONG:  -- in the morning in Arizona.
19   That's a possibility.
20             MR. PENDARVIS:  All right.
21             MR. LONG:  I wondered that myself,
22   but...
23   BY MR. PENDARVIS:
24   Q.  So the curiosity question on Exhibit 22 was
25   more along the lines of was there some concern that

Page 91

1    the number wasn't correct at 3.8?
2    A.  I think it was more of just verifying 3.8 --
3    is 3.8 the total including Brit, or is it our total
4    not including Brit?
5         And I said, "There's no questions it's
6    just -- it's 3.8 new money."
7    Q.  Okay.
8              MR. PENDARVIS:  Jimmy, I'm skipping the
9    next exhibit.
10             MR. LONG:  Okay.
11                   - - -
12   (Emails Dated 3/25/2019 marked Exhibit Number 23
13   for identification.)
14                   - - -
15   BY MR. PENDARVIS:
16   Q.  Mr. Grantland, I've marked as Exhibit 23 to
17   your deposition another email thread.  This one is
18   Bates labeled Nautilus_000608 through 609.  This
19   email thread between you and Ms. Miller?
20   A.  Yes.
21   Q.  Had you had -- by -- this is March 29th, a
22   few days after this agreement's been -- settlement's
23   been confirmed.  Had you had any conversations
24   about -- with Cory Fleming about who may serve as a
25   conservator for Mr. Harriott?

Page 92

1    A.  He -- he -- it was -- he said that the --
2    and I had this -- there was an email.  He said that
3    the PR would act as a conservator and -- I mean,
4    because we were -- I -- we were concerned about the
5    Satterfield child with special needs or man with
6    special needs, and he -- I specifically asked
7    them about a conservator, and he said that the PR
8    would act as a conservator.
9    Q.  And that's the successor PR, Mr. Westendorf?
10   A.  Yes.
11   Q.  Okay.
12   A.  That was my understanding, that there is --
13   but I distinctly asked that question, got an email
14   back and sent that email to -- to Amy.
15   Q.  Okay.  And there's a reference in the -- the
16   last of the thread which is the top of page 1 that
17   you will be in touch, and I presume that's with
18   Ms. Miller, after you speak with Cory Fleming.
19   A.  I'm not sure where you're --
20   Q.  Oh, I'm sorry.  I'm on the -- that's not --
21   A.  I'm on Exhibit 23.
22   Q.  That's fine.  That will be our next one.
23   A.  Okay.
24   A.  Yeah.  Sorry about that.
25   A.  Uh-huh.

Page 93

1    Q.  Two steps ahead.
2                   - - -
3    (Email Chain marked Exhibit Number 24 for
4    identification.)
5                   - - -
6    BY MR. PENDARVIS:
7    Q.  That discussion's part of what's marked as
8    Exhibit 24, and I'm passing it to you now, and that's
9    Nautilus_000608 and 609.
10   A.  That's right.
11   Q.  Two page.
12        And so after you have this email thread back
13   and forth with Ms. Miller, you spoke with Cory
14   Fleming about --
15   A.  Yes.
16   Q.  -- who will be a conservator?
17   A.  Yes.
18   Q.  Was Nautilus involved in the appointment of
19   a conservator --
20   A.  No.
21   Q.  -- for the estate?
22   A.  No.
23   Q.  Did Nautilus have any involvement in the
24   estate itself, file any documents or anything of that
25   nature?



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    Pages 94..97
John Grantland, 03/12/2024

Page 94

1    A. No.
2    Q. Okay. When I say "estate," the estate of
3 Gloria Satterfield.
4    A. Right.
5            - - -
6    (Emails Dated 4/2/2019 marked Exhibit Number 25
7    for identification.)
8            - - -
9 BY MR. PENDARVIS:
10    Q. Mr. Grantland, I'm passing to you now
11 another email thread. This is a two-page document
12 marked Exhibit 25 to your deposition, Nautilus_000620
13 through 621. The bottom part on page 1 describes the
14 language requested for the settlement proceeds check,
15 and it's -- it's listed on -- in the exhibit as -- to
16 be made payable to Chad Westendorf as personal
17 representative of the estate of Gloria Satterfield
18 and Moss, Kuhn & Fleming, Attorneys. Correct?
19    A. Yes.
20    Q. Is that fairly ordinary?
21    A. No.
22    Q. Anything unusual with that?
23    A. No.
24    Q. Okay. And you were provided with a W9 --
25    A. Yes.

Page 95

1    Q. -- from Moss Kuhn Fleming?
2    A. Yes.
3    Q. And, again, that's fairly typical?
4    A. Yes.
5    Q. Required almost.
6    A. Yes.
7    Q. All right.
8            - - -
9    (Release marked Exhibit Number 26 for
10    identification.)
11            - - -
12    (Petition for Approval of Settlement marked
13    Exhibit Number 27 for identification.)
14            - - -
15    (Order Approving Settlement marked Exhibit Number
16    28 for identification.)
17            - - -
18 BY MR. PENDARVIS:
19    Q. Before I even pass these three exhibits to
20 you, I'm going to apologize. I'm not sure when the
21 highlights got on Exhibit -- what's going to be
22 marked as Exhibit 28, but they're here --
23    A. Right.
24    Q. -- and I'm going to pass to you now three
25 exhibits. These are marked confidential, and they're

Page 96

1 unsigned documents. The first one marked Exhibit 26
2 is titled Release. The second one marked Exhibit 27
3 is Petition for Approval of Settlement, and Number 28
4 is the Order Approving Settlement with the -- with
5 the highlights.
6        So are -- are these documents you drafted?
7    A. We kind of drafted them collectively. I
8 mean, I -- I think, you know, Scott Wallenger, Robert
9 Kennedy, Cory, I mean, we -- and this is not unusual.
10 You circulate proposed orders, proposed release, and
11 so I can't speak to who highlighted, but we -- we may
12 have done a draft, but we certainly circulated it to
13 Robert Kennedy, Scott Wallenger and Cory.
14    Q. And in particular -- and this is more of a
15 big-picture question, but it involves all three of
16 these documents. Did -- independent of this release
17 and settlement agreement, did Nautilus agree to pay
18 any attorney's fees to the Satterfields for whatever
19 attorney's fees they had to pay?
20    A. No.
21    Q. It was a lump sum settlement, and whoever --
22 whatever attorney's fees they paid was their issue,
23 correct?
24    A. Right. Yeah.
25    Q. So to your understanding, neither -- no --

Page 97

1 none of these documents have any obligation where
2 Nautilus had to pay attorney's fees in addition to
3 the $3.8 million it tendered or it settled the claim
4 for, correct?
5    A. That's correct. Yeah.
6    Q. Okay. So the total gross settlement was
7 4,305,000?
8    A. Right.
9    Q. That included the 3.8 and the monies from
10 Lloyd's --
11    A. From Brit.
12    Q. -- Brit?
13    A. Correct.
14    Q. Okay. Now, the release, of course, there
15 was no lawsuit filed at the time, correct?
16    A. Right.
17    Q. So the release has no state court or federal
18 court caption, correct?
19    A. That's correct.
20    Q. And same for the -- well, let's take a look
21 at the petition marked Exhibit 27. The Petition For
22 Approval of Settlement and the Exhibit 28 Order
23 Approving Settlement have caption styles on the top,
24 correct?
25    A. Yes.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 98..101
John Grantland, 03/12/2024

Page 98

1    Q.  And they're both styled "In Re: Gloria
2  Satterfield" with no docket number?
3    A.  Yes.
4    Q.  Okay.  Was there a discussion about why that
5  was to be that way?
6    A.  That was discussed at the mediation.  I'm
7  not sure who came up with that idea, but that's --
8  that was kind of what was agreed to.  If we got the
9  settlement, this would -- that would be a part of it,
10  was both the Satterfield -- my understanding, both
11  Satterfields and -- and Alex wanted it "In Re: Gloria
12  Satterfield."
13    Q.  Okay.  And there was a Satterfield estate,
14  correct?
15    A.  Right.
16    Q.  And this was a claim that -- one part of the
17  claim was a claim that belonged to the estate,
18  right --
19    A.  Right.
20    Q.  -- the survival claim?
21    A.  Right.
22    Q.  Okay.  In general, are -- those are fairly
23  typical form documents, I'll call them, for Release,
24  Petition For Settlement and Order Approving
25  Settlement, correct?

Page 99

1    A.  Yes.
2    Q.  Is there anything out of the ordinary you
3  saw in...
4    A.  Not really.  I mean, you -- I mean, there --
5  you have to have the same language in most all of
6  your petitions and your -- and your orders, and you
7  just -- you tweak it for a particular case, but
8  generally, it's the -- it's a form document.
9    Q.  Okay.
10                    - - -
11    (Email Chain marked Exhibit Number 29 for
12    identification.)
13                    - - -
14  BY MR. PENDARVIS:
15    Q.  Earlier, we were discussing about who
16  prepared documents and things of that nature.  I'm
17  going to pass to you now an email thread marked
18  Exhibit 29 to your deposition.  This is an email
19  thread that ended on April 17, 2019, between you and
20  Ms. Miller; is that correct?
21    A.  Yes.
22    Q.  And for the record, this is Nautilus_000660
23  through 662.
24      And I see at the bottom you're explaining --
25  you're responding to an email from Ms. Miller on the

Page 100

1  prior page, but she is asking, you know -- you know,
2  "Don't the plaintiff's attorneys typically prepare
3  these?"
4      And you're responding when you say -- could
5  you read that?
6    A.  I mean, that -- I basically said, "In South
7  Carolina defense counsel typically prepare court
8  approval documents.  The only time a plaintiff's
9  counsel will do it if there's no counsel for the
10  defendant.  More often than not, we do the
11  documents."
12    Q.  Okay.  I loved her response: "'I see,' said
13  the blind man."
14      MR. PENDARVIS:  Okay.  And my apologies
15    for those of us in the room and on the phone.  I
16    got an email copy of one of the documents I just
17    believed I had included in the package, but it
18    was not.
19                    - - -
20    (Letter Dated 4/22/2019 marked Exhibit Number 30
21    for identification.)
22                    - - -
23  BY MR. PENDARVIS:
24    Q.  I'm going to pass to you now a letter marked
25  Exhibit 30 from you to Mr. Fleming, and this is

Page 101

1  M&G000020 which is a copy of a cover letter from you
2  to Mr. Fleming enclosing the $3,800,000 check, and
3  there is some issues in this lawsuit about what's
4  stated in the second full paragraph.  Could you read
5  that in, please?
6    A.  "Please hold these settlement funds in trust
7  until the Petition and Order Approving Settlement
8  have been signed and filed in the probate court
9  settlement hearing."
10    Q.  Okay.  Was there a probate court settlement
11  hearing?
12    A.  That -- we were -- it was -- we were
13  planning to go to probate court until the week before
14  Judge Mullen heard it.  Cory told me that they can't
15  get a hearing, and Judge Mullen -- they -- Judge
16  Mullen will work them in or work -- work the case in,
17  and so we changed the caption from probate court to
18  common pleas, but the original plan was to go to
19  probate court.
20    Q.  I'm not going to include the copy of the
21  check.
22    A.  No.
23    Q.  But it was a $3,800,000 check --
24    A.  Right.
25    Q.  -- included with this correspondence.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 102..105
John Grantland, 03/12/2024

Page 102

1    A. Right.
2    Q. Via FedEx, correct?
3    A. Right.
4    Q. It was overnight delivered?
5       I'll tell you what. It's -- let me do put
6 that in.
7              - - -
8    (Copy of Check marked Exhibit Number 31 for
9    identification.)
10             - - -
11 BY MR. PENDARVIS:
12   Q. I'm going to pass to you now a two-page
13 exhibit marked as Exhibit 31, and it's marked as
14 Bates number Nautilus_002565 through 2566.
15      Is this a copy of -- the first page of this
16 exhibit, is this a copy of the check that was sent to
17 Mr. Fleming on April 22 --
18   A. Yes.
19   Q. 2019?
20      And on the second page, is this the
21 endorsement that was added to that check --
22   A. I mean, I wouldn't have --
23   Q. -- to your knowledge?
24   A. I would not have seen this, but that's what
25 it appears to be.

Page 103

1    Q. Okay. And it appears to have been
2 deposited --
3    A. Right.
4    Q. -- into the account of Moss, Kuhn & Fleming,
5 PA?
6    A. Right.
7    Q. Do you recognize the signature?
8    A. No. I mean, it says "Chad Westendorf as
9 Personal Representative." I assume that's
10 Mr. Westendorf.
11   Q. Before the -- this mediation, had you ever
12 met Mr. Westendorf before?
13   A. No.
14   Q. And it was basically just a handshake at the
15 beginning?
16   A. That's it.
17      MR. PENDARVIS: Okay. If anybody wants
18   a break or anything, let me know. Just went --
19   I've got a few exhibits. I'm getting close to
20   the end.
21      Christy, if you need a break or
22   anything, just let me know. I didn't --
23   MS. ALLEN: I'm all good.
24   MR. CLEMENT: I'm good.
25   MR. PENDARVIS: Okay.

Page 104

1              - - -
2    (Emails Dated 5/6/2019 marked Exhibit Number 32
3    for identification.)
4              - - -
5 BY MR. PENDARVIS:
6    Q. All right. Mr. Grantland, I'm passing to
7 you a document marked Exhibit 32 to your deposition.
8 This is another email thread Bates labeled
9 Nautilus_000678 through 679.
10   A. Right.
11   Q. Is this an email between you and Ms. Miller?
12   A. Yes.
13   Q. The bottom part of page 1 of this exhibit
14 discuss -- explains to her, I think, what you've just
15 said a moment ago, that -- difficulties getting heard
16 in probate court, and it was going to be coordinated
17 through a circuit court judge.
18   A. Right.
19   Q. And that ultimately turned out to be Judge
20 Carmen Mullen?
21   A. That's correct.
22   Q. And the final paragraph on that email or
23 actually the middle paragraph said, "So by the way,
24 Alex's son was arraigned today"?
25   A. Right.

Page 105

1    Q. Was that -- why were you discussing that
2 with Ms. Miller?
3    A. You know, it just -- she had -- you know,
4 the boat -- the boat crash occurred, you know, right
5 before the mediation, and, yeah, I'm not sure
6 exactly -- it was in the news, and I just mentioned
7 it to her, but...
8    Q. Let me rewind back to the mediation --
9    A. Yeah.
10   Q. -- itself. Was there any discussion during
11 the mediation between you and Alex about the boat
12 crash?
13   A. Just that he was upset about it, and, you
14 know, he really wanted to get this -- this case
15 settled. But we didn't get into specifics of what
16 happened.
17   Q. Right.
18   A. Yeah.
19   Q. But, I mean, as far as it may have affected
20 resolution or not of the claim by the Satterfield
21 estate, was there any concern about the boat wreck
22 having any impact?
23   A. No. Just -- he just really needed to get
24 this -- this case behind him, the Satterfield case
25 behind him.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 106..109
John Grantland, 03/12/2024

Page 106

```
1        Q.  Okay.
2                    - - -
3        (Emails Dated 5/10/2019 marked Exhibit Number 33
4        for identification.)
5                    - - -
6   BY MR. PENDARVIS:
7        Q.  And, Mr. Grantland, I'm passing to you now
8   another email chain.  This one is marked as Exhibit
9   33 to your deposition, and it's Bates labeled
10  Nautilus_000681 through 682.
11       A.  Yes.
12       Q.  Is this an email thread between you and
13  Ms. Miller?
14       A.  Yes.
15       Q.  The bottom portion on page 1 is an email
16  from you to Ms. Miller saying, "We're doing the court
17  approval on Monday"?
18       A.  That's correct.
19       Q.  And page -- the second page --
20       A.  Uh-huh.
21       Q.  -- the earlier email, you were explaining --
22  this is an email from Cory to you on page 2 of
23  Exhibit 33, correct?
24       A.  That's right.
25       Q.  And were you involved in getting it
```

Page 107

```
1   scheduled -- the hearing for the wrongful death
2   settlement approval scheduled with Judge Mullen?
3        A.  No.  Cory said he would set that up, and
4   he'd let us know --
5        Q.  Okay.
6        A.  -- when he was going to do it, when it would
7   be done.
8        Q.  And his -- the second sentence is, "Have you
9   sent me the paperwork?"
10            And that's -- that's --
11       A.  That's right.  I mean, again, up until -- I
12  mean, we were -- we -- we were all set to do probate
13  court, and then we were, "Okay.  We're going to do
14  common pleas."  And, "Who's going to be the judge?"
15            And, you know, we -- you know, he wanted --
16  so we -- I know that -- we knew that -- we didn't
17  have, like -- we didn't have a roster and -- where
18  you have court approval hearings or status
19  conferences.  It was just -- we were just being
20  thrown in somewhere, and, you know, we found out on
21  Friday that she wants to see us on Monday morning, so
22  we had to scramble and finish whatever we were doing
23  to get it -- get the order to him.
24       Q.  Did you attend the settlement conference on
25  Monday?
```

Page 108

```
1        A.  I tried.  Well, I went to Beaufort, and I
2   was -- I was -- Cory said he would handle it, and
3   then I talked to Scott Wallenger, and somebody
4   needs -- Scott said he not coming -- he's not going,
5   so I said, "Well, I better go."
6            And I went to Beaufort, hung out there, made
7   calls, found out they're in Hampton, got in the car,
8   and then I found out it was over.
9        Q.  "They" being Judge Mullen and Mr. Fleming?
10       A.  Right.
11       Q.  Do you know if anyone else attended?
12       A.  I've been told Mr. Westendorf was there.  I
13  don't know.  But -- but I --
14       Q.  You weren't there.
15       A.  I wasn't there.
16       Q.  Okay.
17       A.  I -- again, I was of the impression that it
18  was in Beaufort, and that's where Judge Mullen's
19  chambers are, and that's where I went.
20       Q.  Okay.
21            MR. PENDARVIS:  Christy, I'm going to
22       use one of the -- I didn't get -- we did not
23       print a copy of this cover letter from Cory to
24       Alex, and so it's got "Defense Exhibit."  You
25       mind if I put a label on top of that?
```

Page 109

```
1            MS. ALLEN:  No.  That's fine.
2            MR. PENDARVIS:  Does it matter?
3            MS. ALLEN:  No, no.  You go ahead.  No
4       problem.
5            MR. PENDARVIS:  Okay.  It was marked as
6       Number 7.
7            MS. ALLEN:  That's fine.  I just -- as
8       long as it keeps the Bates label --
9            MR. PENDARVIS:  Yeah.
10           MS. ALLEN:  -- that's no problem.
11           MR. PENDARVIS:  Yeah.
12                    - - -
13      (Letter Dated 5/13/2019 marked Exhibit Number 34
14      for identification.)
15                    - - -
16      (Order Approving Settlement Dated 5/13/2019
17      marked Exhibit Number 35 for identification.)
18                    - - -
19  BY MR. PENDARVIS:
20       Q.  Okay.  Mr. Grantland I'm passing to you two
21  documents marked as Exhibits 34 and 35, respectively.
22  This is -- the cover is a letter from Cory Fleming to
23  you, and the second exhibit is an "Order Approving
24  Settlement" that's signed by Judge Mullen.  I'm going
25  to pass those to you.
```



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 110..113
John Grantland, 03/12/2024

Page 110

1    MS. ALLEN:  That order is the one that
2  you submit -- that you sent around, Thomas, that
3  copy?
4    MR. PENDARVIS:  Yes, it is.  Exhibit 8
5  was -- and I -- for the record, Exhibit 8 is
6  Nautilus_002286 through 2289.
7    MS. ALLEN:  No, no.  You don't need
8  Exhibit 8.
9    MR. PENDARVIS:  Yeah, I do.  That would
10  have been your Exhibit 8.
11    MS. ALLEN:  Right.  But you sent it --
12  you gave him yours.
13    MR. PENDARVIS:  Yes, I gave him mine.
14    MS. ALLEN:  And what -- and it had
15  Nautilus --
16    MR. PENDARVIS:  The only one that came
17  from you was the cover letter.
18    MS. ALLEN:  Gotcha.  Okay.
19  BY MR. PENDARVIS:
20    Q.  Mr. Grantland, did you receive this letter
21  from Mr. Fleming?
22    A.  Not in -- the first time I saw this letter
23  was in 2021 --
24    Q.  Okay.
25    A.  -- when -- when I either got it from you or

Page 111

1  I got it from Judge Mullen.  But I never -- the only
2  order I received was by email --
3    Q.  Okay.
4    A.  -- from Cory.
5    Q.  The same day, right?
6    A.  The same day.  And I was expecting to get a
7  filed order at some point, and -- or -- but I didn't
8  see this letter until 2021.
9    Q.  Did you have a signed copy of that order in
10  the file?
11    A.  The only -- the order I have is the order
12  that was emailed to me from --
13    Q.  Okay.
14    A.  From Cory.
15    Q.  Okay.
16    A.  Not -- not filed.
17    Q.  And what was the purpose of this going to
18  you in the original?
19    A.  I assumed he was -- I assumed -- you know,
20  Cory and I talked, and he said he had some probate
21  stuff to do, and he'd send me -- he would send me
22  the -- he'd file the order with some probate stuff,
23  probate documents, later, and I expected I'd be
24  getting a filed order, but, you know -- but I
25  never -- I didn't -- I -- I didn't see this.  When --

Page 112

1  when everything broke, then I looked in -- looked in
2  the file, and I saw that I had an emailed order from
3  Cory, but I -- I think you and I talked and Judge
4  Mullen talked, and she emailed me this letter.
5    Q.  Okay.  And so --
6    A.  But I --
7    Q.  Well, did you follow up with Mr. Fleming
8  about getting a copy of the order approving the
9  settlement?
10    A.  No.  I -- I got the order.  I assumed I
11  would be getting a filed order.  I sent it to the
12  client.  I started closing my file.
13    Q.  "Client" being Ms. Miller?
14    A.  Yes, Ms. Miller.
15    Q.  Okay.  Did you provide a copy of that to
16  Mr. Murdaugh?
17    A.  No.
18    Q.  Okay.  Why not?
19    A.  I don't know.  I don't know if we -- Renee
20  may have, but I honestly don't know.
21    Q.  And Renee is...
22    A.  My assistant.
23    - - -
24  (Email Chain marked Exhibit Number 36 for
25    identification.)

Page 113

1    - - -
2  BY MR. PENDARVIS:
3    Q.  Okay.  And I'm passing to you now a document
4  marked Exhibit 36 to your deposition.  This is
5  another email thread.  This is marked Nautilus --
6  Bates labeled Nautilus_000683 through 684.  Is this
7  sort of the file-closing email to Ms. Miller?
8    A.  That's right.
9    Q.  "Thank you.  It's been fun working with
10  you."
11    A.  Exactly.
12    Q.  "Enjoyed that," and all?  Okay.
13    Until everything, I'll use your phrase,
14  "hit" a few years later, that was the last event in
15  your representation of the -- of Mr. Murdaugh --
16    A.  That's correct.
17    Q.  -- with the claims by the Satterfield
18  estate?
19    A.  I started closing my file on the 14th and
20  didn't think about the case again.
21    Q.  Are -- did your representation include
22  anything about the administration of the -- how the
23  settlement proceeds were administered through the
24  probate estate of Gloria Satterfield?
25    A.  No.  I mean, again, we -- I was of the



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 114..117
John Grantland, 03/12/2024

Page 114

1  impression that it was going to be a structure
2  through Forge, and there would be a conservator, and
3  that was -- you know, we -- we wanted to -- we had a
4  structure person, and we said, "We'll put our
5  structure person in touch with your structure
6  person."
7        And, I mean, there are just tax implications
8  that if -- if you just give a lawyer cash and they --
9  as opposed to it going from the insurance company to
10 the structure broker.  So we had -- Cory and I had
11 that discussion, and he said, "No, this is how we
12 want to do it."
13     Q.  Okay.
14     A.  And -- but that's -- so we didn't --
15 ultimately had no -- we just sent it to him, and we
16 assumed it would be going to Forge and be a
17 conservator.
18     Q.  But none of those responsibilities were
19 yours --
20     A.  No.
21     Q.  -- or Nautilus Insurance Company, correct?
22     A.  No, no.  But we -- we assumed it -- some of
23 it would be structured, and we had a structure broker
24 ready to go to talk to Forge, and Cory said, "This is
25 how we want to do it."  And that's what we did.

Page 115

1      Q.  So once the -- the non-structuring decision
2  was made, that was it for Nautilus --
3      A.  Right.
4      Q.  -- right?
5      A.  Right.
6      Q.  Would we -- would Nautilus have been required
7  to attend any conservator hearings?
8      A.  No.
9      Q.  How about, would Nautilus or Mr. Murdaugh
10 have been required to attend any probate allocation
11 hearings on whatever may have happened in probate
12 court with these settlement proceeds?
13     A.  Not -- not -- I mean, we had a release.  We
14 had an order.  I mean, it was -- it was over.
15     Q.  That's --
16     A.  Yeah.
17     Q.  That's the goal, right --
18     A.  Right.
19     Q.  -- to get the release?
20     A.  Uh-huh.
21         MR. PENDARVIS:  Okay.  No further
22 questions for me for now.
23         THE WITNESS:  Okay.
24         MR. CLEMENT:  Can we take a break?
25         MR. PENDARVIS:  Yeah.

Page 116

1            - - -
2    (There was a recess from 12:23 to 12:29.)
3            - - -
4            EXAMINATION
5            - - -
6  BY MR. HOOD:
7      Q.  All right.  John, just a couple questions.
8  Other than Tonya -- or Tanya and Cory, did you have
9  any discussions in the course of your involvement in
10 the underlying case with anyone else at Moss & Kuhn?
11     A.  No.
12         MR. HOOD:  Thank you.  That's all I
13 have.  Told you it would be grueling.
14         MR. CLEMENT:  Do you want to go or do
15 you want --
16         MS. ALLEN:  I'll go.  That's fine.  I'll
17 go and --
18         MR. LONG:  Okay.
19         MS. ALLEN:  Okay.  And I've got
20 exhibits.
21            - - -
22     (A discussion was held off the record
23        regarding exhibit numbering.)
24            - - -
25         MS. ALLEN:  Okay.  So they're going to

Page 117

1  be different numbers than what I sent you.
2          MR. LONG:  Okay.
3          MS. ALLEN:  But I brought some copies.
4  I brought copies in case.
5          MR. LONG:  How do you want to handle it?
6          MS. ALLEN:  Well, we said --
7          MR. LONG:  You just going to hand them
8  to him and --
9          MS. ALLEN:  I'm going to put new
10 stickers on them.
11         MR. LONG:  Okay.
12         MS. ALLEN:  And, I mean --
13         MR. LONG:  Sounds good.
14         MS. ALLEN:  If that's okay.  And I'll
15 just use these different stickers so we don't
16 have repeat numbers.  So my Number 1, I'm going
17 to put a 37 on it.  But let me -- I'll put that
18 on the record as soon as we get going.  And I've
19 got copies if anybody else wants them, but --
20         MR. LONG:  Well, I can probably just --
21         MS. ALLEN:  Yeah.  Okay.  I'll put that
22 one down here.
23            - - -
24            EXAMINATION
25            - - -



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                Pages 118..121
John Grantland, 03/12/2024

Page 118

1  BY MS. ALLEN:
2      Q.  All right.  Mr. Grantland, I'm Christy
3  Allen.  I represent Chad Westendorf, and I've got a
4  couple of exhibits, and as a follow-up, I'm going to
5  kind of jump around.
6      A.  Okay.
7                    - - -
8      (Email Dated 6/13/2019 marked Exhibit Number 37
9      for identification.)
10                   - - -
11 BY MS. ALLEN:
12     Q.  What I have given you is an email that's
13 marked as Exhibit Number 37.  If you would, take a
14 look at it.  Had you seen this email -- this is an
15 email dated June 13, 2019, and it says it's printed
16 out, it looks like, from Renee Dillon based on the
17 top of the paper.  It's got Murphy & Grantland Bates
18 Number M&G001960.
19         Had you seen this email prior to getting it
20 in advance of this deposition?
21     A.  The first time I saw this email was in 2022.
22     Q.  Okay.  In what context?
23     A.  ODC asked us to -- we submitted all of our
24 emails and documents and files to ODC, and then they
25 asked us for emails from Renee Dillon --

Page 119

1      Q.  Okay.
2      A.  -- and...
3      Q.  Okay.  And so you -- you'll see here at --
4  looks like Renee Dillon -- does Renee Dillon still
5  work for you?
6      A.  She's my assistant, yes.
7      Q.  Okay.  It looks like she sent an email to
8  Judge Mullen's maybe law clerk on June 3rd of 2019,
9  and in that email, she says that "Plaintiff's counsel
10 has mailed us the original signed Order Approving
11 Settlement."
12         And then she goes on and asks Judge Mullen's
13 law clerk, "Do you have a preference on how we should
14 proceed?"
15         Do you have any independent knowledge about
16 what this email was about?
17     A.  No.  I mean, I -- I know that -- again, I
18 was surprised by this when I saw it in 2022, and I
19 don't know if -- if we got that -- if we got an
20 unfiled order from Cory or if she's referring to the
21 email where Cory says he's going to put the originals
22 in the mail --
23     Q.  Okay.
24     A.  -- but I was not -- I was not aware of her
25 communication to Cory that we had received an order.

Page 120

1      Q.  Okay.  You agree it does say, "Plaintiff's
2  counsel mailed us" -
3      A.  Yes.  Oh, yes.
4      Q.  -- "the original signed order."
5      A.  Uh-huh.
6      Q.  So based on this -- and, now, have you
7  talked with her about this email?
8      A.  Yes.  She doesn't remember -- she doesn't
9  remember anything.
10     Q.  Okay.  And --
11     A.  I mean, the reason I said it could have been
12 based on his email is because we don't have -- we
13 don't have that letter in our file where he sends
14 us -- sending us -- sent --
15     Q.  "The please find enclosed original order" --
16     A.  Order.
17     Q.  I think it says --
18     A.  Right.
19     Q.  -- it was FedEx or something?
20     A.  Right.
21     Q.  That's what you're talking about?
22     A.  Right.
23     Q.  You don't believe you guys had that in your
24 file.
25     A.  No.  We -- we -- I know we don't have it in

Page 121

1  our file.  I don't -- I can't --
2      Q.  Okay.
3      A.  I can't explain what happened.
4      Q.  Okay.  Okay.  And you talked to Ms. Dillon,
5  and she doesn't have any independent recollection
6  about this communication to the Court.
7      A.  No.
8      Q.  Okay.  And do you have any -- any
9  independent recollection about discussing with
10 anybody, whether it was Cory or Renee Dillon or Alex,
11 about how or where this original order is to be
12 filed?
13     A.  I always assumed Cory would be filing it.
14     Q.  Okay.  Okay.  And if you received an
15 original, unfiled signed order from a plaintiff's
16 lawyer, what do you -- what would you do?
17     A.  I'd call the plaintiff's lawyer and say,
18 "Why -- why are you sending me this order?  It needs
19 to be filed."  I mean, I -- I can't think of ever
20 having an un- -- an unfiled order.  It's really not
21 an order until it's filed.
22     Q.  Okay.  All right.  And so just so I
23 understand, these emails that came from Renee Dillon,
24 because you're not on this email, that production was
25 maybe a supplemental production that your -- you guys



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 122..125
John Grantland, 03/12/2024

Page 122

1  made to the ODC.

2      A.  Yes.

3                  - - -

4      (Email Chain marked Exhibit Number 38 for

5      identification.)

6                  - - -

7  BY MS. ALLEN:

8      Q.  Okay.  Okay.  And if you will, take a look

9  at what was Number 5 but is being marked as Exhibit

10 Number 38.

11             MR. LONG:  You said Number 5?

12 BY MS. ALLEN:

13     Q.  This looks to be the email, it looks like.

14 And I think maybe we've already produced this.  This

15 has already been produced.  This is May 13th in the

16 middle where it looks like Cory sends to you an email

17 that says, "Original to follow in mail.  Thanks."

18             And looks like you responded back, "Thank

19 you.  Keep in touch and take care."

20             But so you -- you -- you did have that email

21 copy --

22     A.  Right.

23     Q.  -- in your file that came with this May 13,

24 2019, email.

25     A.  Right.

Page 123

1      Q.  All right.  This -- well, let me ask you

2  this question.  This is a Bates label Murphy &

3  Grantland 785.  Okay?  At the bottom of this.

4             Do you know -- it looks like you and

5  Ms. Dillon were copied on the May 13th email here in

6  the middle.

7      A.  Right.

8      Q.  Right?

9             And he says, "Original to follow in mail."

10             And this email does not show that there is

11 an attachment based on the information.

12                  - - -

13     (Email Chain marked Exhibit Number 39 for

14     identification.)

15                  - - -

16 BY MS. ALLEN:

17     Q.  And let me ask you -- let me show you what

18 I'm going to mark as Exhibit Number 39, which was

19 originally marked as 6.  This is the document.  On

20 the right-hand corner, it says CHF_00015.  And I'll

21 represent to you that it appears to be the same

22 email.  Meaning, this one on Exhibit Number 39 looks

23 to be from Cory to you copied to Renee Dillon on May

24 13th, "Original to follow in the mail," it says.  It

25 appears to be the same as the one in Exhibit Number

Page 124

1  38 which looks like came from -- from your system --

2      A.  Yes.

3      Q.  -- right?

4             And it looks like -- and the one on Exhibit

5  Number 39 that came from Cory's system, it has an

6  attachment reference with a, you know, pile of

7  numbers, and it says PDF.  You see that?

8      A.  Yes.

9      Q.  Is that a document that you've been able to

10 identify within your email system?

11     A.  I assume it's the -- it's the order signed

12 by Judge Mullen, the blue-inked order.  That's what I

13 assume.

14     Q.  Okay.  Let me show you what I think you -- I

15 assume you are referring to, but...

16                  - - -

17     (Order Approving Settlement Dated 5/13/2019

18     marked Exhibit Number 40 for identification.)

19                  - - -

20 BY MS. ALLEN:

21     Q.  I'll show you what we'll mark as Exhibit

22 Number 40, which was 8.

23             All right.  Mr. Grantland, I've handed you

24 what looked -- is -- appears to be a signed order

25 approving settlement with blue signature initials and

Page 125

1  signature page, right?

2      A.  Yes, ma'am.

3      Q.  And then it's got Murphy & Grantland 00045

4  through 4 -- sorry.  48 --

5      A.  Yes.

6      Q.  -- right?

7             And so what do you -- why is it that you

8  believe that this document is the one that was

9  attached to the May 13, 2019, email in Exhibits 38

10 and 39?

11     A.  I remember receiving an order by email, and

12 I forwarded it to the client, and, I mean, I believe

13 this is the email that I received -- this is the

14 order I received by email.

15     Q.  Okay.  And so you -- so you think you got --

16 you received this order by email with the blue ink on

17 it.

18     A.  Yes.

19     Q.  And then I believe we looked at some other

20 correspondence where you sent that to Nautilus's --

21     A.  Right.

22     Q.  -- adjuster, correct?

23     A.  Right.

24     Q.  And you don't -- there's no indication that

25 it was sent anywhere else.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 126..129
John Grantland, 03/12/2024

---

Page 126

1    A.  Right.  Other than --
2    Q.  Okay.
3    A.  -- to our office.
4    Q.  And you don't -- and through your
5  investigation, you haven't discovered that anything
6  else happened with regard to this order other than
7  what you've just said.
8    A.  Right.  This -- this -- this is what we had
9  in our file.  We didn't -- we never got a filed
10  order.
11                        - - -
12    (Emails Dated 8/29/2021 marked Exhibit Number 41
13    for identification.)
14                        - - -
15  BY MS. ALLEN:
16    Q.  Okay.  Let me show you what we'll mark as
17  Exhibit 41, which was 10.  All right.  Mr. Grantland,
18  this at the top, again, looks like a printout.  At
19  least this copy is from Renee Dillon, based on the
20  top, and then it's an email from Judge Mullen to you
21  on September 29, '21, attaching files which appear to
22  be these 5/13 letter and emails that we've been
23  talking about with the order.  You see that?
24    A.  Yes.
25    Q.  What -- why did you have this exchange with

---

Page 127

1  Judge Mullen in September 29th of '21?
2    A.  She called me, and I'm not sure whether it
3  was from Thomas or whether it was from another
4  lawyer -- Cory or another lawyer, but, I mean, she
5  called, asked, "Where is the -- do you have the
6  order?"
7    Q.  Uh-huh.
8    A.  And I said, "The only order I have is the
9  order that was emailed to me."
10    Q.  Okay.  And then -- and then it looks like
11  she forwarded -- so she -- it looks like -- sorry.
12  It says here there is two attachments, "2019-5-13
13  Fleming LT Grantland - enclosing original Order
14  Approving Settlement.pdf."  See that?
15    A.  Right.
16    Q.  And then there's another file, "2019-05-13
17  Fleming email to Grantland - original Order to follow
18  in mail."  You see that --
19    A.  Right.
20    Q.  -- right?
21        Would you agree that kind of corresponds
22  with the ones that we've been talking about today,
23  right?
24    A.  Right.
25    Q.  And did -- she called you?  I guess I'm

---

Page 128

1  trying to understand why.
2    A.  I don't know.
3    Q.  Why did this exchange happen in September of
4  '21?
5    A.  Well, when everything just kind of broke,
6  we're -- you know, when Alex confessed and -- "Well,
7  where is the order; you know, what was the
8  settlement," you know, I started receiving phone
9  calls.  And I'm not sure.  I talked to a number of
10  people, but at some point, either -- at some point
11  Judge Mullen called me or -- I know I didn't initiate
12  the call, but she called me and asked me, "What
13  happened to the order?"
14    Q.  Right.
15    A.  And, you know, all I have is an emailed
16  order --
17    Q.  Okay.
18    A.  -- or the only order I ever got was an
19  emailed order.
20    Q.  Right.  And so this -- this attachment that
21  was forwarded to you in September, it looks like it
22  says, "Fleming email to Grantland - original Order to
23  follow in the mail."  We looked at that one
24  already --
25    A.  Right.

---

Page 129

1    Q.  -- and you -- that was one that you had
2  received --
3    A.  Right.
4    Q.  -- back in May.  And so when she sent you
5  that, that wasn't a new email to you?
6    A.  No.  But the letter enclosing original
7  order, that's what -- I'd never seen that before.
8    Q.  Okay.  And so is this the first time you saw
9  that letter -- the letter referenced here, "Enclosing
10  Original Order"?
11    A.  Right.
12    Q.  Okay.  So that would have been September
13  29th --
14    A.  Right.
15    Q.  -- of '21.
16    A.  Right.
17    Q.  Okay.  And I guess based on what you said
18  earlier, the email between Renee Dillon and Judge
19  Mullen's law clerk from 2019, that wasn't something
20  that you discovered until even later.
21    A.  That's correct.
22    Q.  Okay.  Did Ms. -- Judge Mullen make any
23  indication to you about that exchange in any way?
24    A.  No.  I -- it was a short call, but it was
25  just about what happened to the order.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    Pages 130..133
John Grantland, 03/12/2024

Page 130

1    Q.  And when you saw that email from Renee
2  Dillon to Judge Mullen's law clerk dated June 13th --
3  well, her email was June 3, 2019.  Did you do any
4  additional searches for whether or not that original
5  document might be in her desk or in her files, for
6  example?
7    A.  I mean, I know Renee did, and I know, you
8  know, we searched the system.
9    Q.  Okay.  What is your process for when you get
10  mail in, like, FedEx mail at your office?  What is
11  the process?
12    A.  I mean, it goes, you know, from the file
13  room to the assistants, and the assistants scan it in
14  and stamp it, scan it in and give it to the lawyers.
15    Q.  Gotcha.  Okay.  All right.  Let's see.  Do
16  you know if anyone knows the whereabouts of the
17  original signed order?
18    A.  No.
19    Q.  Okay.  Based on this email between
20  Ms. Dillon and Judge Mullen's law clerk in June of
21  2019, you would agree it's possible that she received
22  it and it just got misplaced.
23    A.  Well, she tried to file it.  I'm not sure
24  what happened.
25    Q.  Okay.  But you talked to her, and she

Page 131

1  doesn't have a --
2    A.  She has no --
3    Q.  -- recollection about it.
4    A.  No.
5    Q.  Okay.  And you'd agree -- well, I'll just
6  strike that.
7      You didn't have any conversations with
8  Ms. Dillon about -- I think you said earlier about
9  how to file it.  Like, this email says, "I've got the
10  original.  How should we file it?"
11      And then the response says, "Could you
12  please e-file it," right?  Which among us, as
13  lawyers, that doesn't make sense, right --
14    A.  Right.
15    Q.  -- because it was already signed.
16      You don't recall any conversation with
17  her --
18    A.  No.
19    Q.  -- about anything related to this
20  possibility of trying to figure out what to do with
21  this order?
22    A.  No.  I -- again, I didn't know about this
23  exchange until 2022.
24    Q.  Okay.  All right.  Let's see.  And I believe
25  you said earlier that once you sent the settlement

Page 132

1  check to Mr. Fleming and you received back the signed
2  settlement agreement and the signed release --
3    A.  I think I got the release first.
4    Q.  Got the release first?
5    A.  Uh-huh.
6    Q.  And isn't it true that your client wanted
7  the signed release first before you released the
8  check?
9    A.  Absolutely.
10    Q.  Right.  So you got the signed release from
11  the estate, and then you released the check, sent it
12  to Cory Fleming, and from your perspective, that deal
13  was done.
14    A.  Right.
15    Q.  Right.
16    A.  Absolutely.
17      MR. MAGILL:  Object to form.
18  BY MS. ALLEN:
19    Q.  Nautilus has taken the position in this case
20  that because the order was not filed that the
21  settlement agreement was not valid.  Once you receive
22  the signed release and give the check, at the time
23  your opinion was that it was valid and it was
24  complete, right?
25      MR. LONG:  Objection.

Page 133

1      THE WITNESS:  I mean, it still had to be
2    court-approved.
3  BY MS. ALLEN:
4    Q.  Right.
5    A.  It's a death case.
6    Q.  Right.  But you got the -- you got a copy of
7  the order that had the judge's signature, right?
8    A.  Right.  But it wasn't, I mean -- but, I
9  mean, I got the order, and I sent it to Nautilus.
10    Q.  Okay.
11    A.  But, I mean, it's -- but except for this
12  case, all my other orders have been filed, so...
13    Q.  Right.  Right.  But it was court-approved,
14  though, right?
15    A.  Right.
16    Q.  And you made sure that it was court-
17  approved.
18    A.  Right.
19    Q.  Right.
20    A.  Well, I tried to.
21    Q.  Yeah.  And you -- well, are you aware
22  that --
23    A.  I mean, I -- it was set up.  I'm saying I --
24  I went to the wrong courthouse.
25    Q.  I understand.  I guess what I'm saying is



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 134..137
John Grantland, 03/12/2024

Page 134

1 you saw the order come back signed --
2    A.  Absolutely.
3    Q.  -- by Judge Mullen.
4    A.  Yes.
5    Q.  And you're not aware of any information that
6 that's not her signature.
7    A.  That's right.
8    Q.  And you were satisfied with receipt of the
9 copy of the order signed by the judge and approved by
10 the judge, right?
11    A.  Yes.
12    Q.  And you forwarded that on to Nautilus --
13    A.  Yes.
14    Q.  -- in order for Nautilus to also close their
15 file --
16    A.  Right.
17    Q.  -- right?
18       Okay.  Did you have any discussion with Alex
19 Murdaugh about delaying the filing of the order
20 approving this settlement?
21    A.  No.
22    Q.  Did you have any discussion with Cory
23 Fleming about delaying the filing of this order?
24    A.  No.
25    Q.  Okay.  Did you have any discussion with any

Page 135

1 person about delaying the filing of the order?
2    A.  No.
3    Q.  And in the 2019 time frame, did Cory report
4 anything to you about the hearing that he attended
5 with Judge Mullen in order to obtain the signature on
6 this document?
7    A.  Just that he -- he would get -- he had some
8 other probate stuff to do, and he -- he would send me
9 all the file documents when he gets the probate stuff
10 done.
11    Q.  Okay.  Tell me -- do you recall -- was that
12 a phone conversation?
13    A.  I mean, it was because I -- I -- I went to
14 Beaufort, and they were in Hampton, and he --
15    Q.  Uh-huh.  So you --
16    A.  And, "Sorry for the mix-up."
17       And I didn't know -- and he said, "I'll
18 email you the order, and I'll -- we have other
19 probate" -- something to the effect that he had other
20 probate documents to file, and he'll send me all --
21 everything filed when he's -- when it's all done, and
22 I assumed it would have been days later.
23    Q.  Okay.  Do you recall calling him, like, from
24 the car that day when you found out you were at the
25 wrong courthouse?

Page 136

1    A.  Yeah.  I mean, I was -- we -- either him or
2 Tanya.  I mean, it was -- but I know we -- Cory and I
3 talked.
4    Q.  Uh-huh.  Okay.  Did you understand that the
5 order was going to be filed in the probate court?
6    A.  No.  I mean, I -- well, I knew he had
7 probate stuff to do.  There are other documents when
8 you have a court approval that, as a defense lawyer,
9 I'm going to see, and I assumed -- I assume that it
10 was -- you know, we were kind of rushed into doing it
11 Monday morning --
12    Q.  Uh-huh.
13    A.  -- and and I would get the documents when
14 he was ready, when he had them all prepared.
15    Q.  Okay.  Did Alex ever express to you his
16 desire to keep the settlement quiet?
17    A.  Oh, yeah.  I mean, he -- and so did -- I
18 mean, everyone wanted it -- I mean, that's -- that
19 was one reason to go to probate court, was it was
20 less -- I think Scott Wallenger pointed out that you
21 might -- it might get picked up by the news if it's
22 in circuit court or something, but --
23    Q.  Right.  You and Scott talked about there
24 being concurrent jurisdiction --
25    A.  Right, right.

Page 137

1    Q.  -- for that.  Okay.
2       And did Cory ever talk to you about keeping
3 the settlement agreement quiet in any way?
4    A.  Other than just, you know, the Satterfield
5 boys don't want the publicity.
6    Q.  Okay.  So he did tell you that?
7    A.  Yeah, yeah.
8    Q.  Okay.
9    A.  And the -- and Alex didn't want the
10 publicity.
11    Q.  Okay.
12    A.  And that's not -- I mean, that's -- they
13 were -- it was consistent.
14    Q.  I think you mentioned earlier that Cory said
15 to you that -- and either this was at or after the
16 mediation -- that he had spoken with the Satterfield
17 boys?
18    A.  Or with Tony.
19    Q.  Or -- well, was it Tony --
20    A.  Yes.
21    Q.  -- that he said?  Okay.
22       And you understand Tony to be -- like, who
23 did you understand that to be at the time?
24    A.  He was a registered nurse.
25    Q.  Okay.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 138..141
John Grantland, 03/12/2024

Page 138

1   A.  And there are two sons.  One son was
2  dependent upon Ms. Satterfield --
3       Q.  Okay.
4       A.  -- and didn't have a regular job.
5       Q.  Okay.
6       A.  And then Tony was independent.
7       Q.  And did Cory tell you all of -- all of those
8  things about Tony?
9       A.  I mean, I learned that along the way.
10      Q.  Okay.  So you recalled Cory telling you
11  either, I guess, maybe after the mediation or at the
12  end of the mediation that he had spoken to Tony
13  Satterfield --
14      A.  Right.
15      Q.  -- right?
16          And that if the insurance company would pay
17  the $3.8 million --
18      A.  We'd have a deal.
19      Q.  -- then Tony would agree to accept it --
20      A.  That's correct.
21      Q.  -- right?  Okay.
22          And then I believe you just mentioned a
23  minute ago another -- something else that Cory said
24  about the Satterfield -- or Tony and the Satterfield
25  boys didn't want the publicity.

Page 139

1       A.  That's correct.
2       Q.  He told you that also?
3       A.  Yes.
4       Q.  Okay.  Do you recall Cory saying anything
5  else about Tony Satterfield or the Satterfield boys
6  in particular which would indicate that Cory was
7  communicating with them?
8       A.  I mean, we were concerned about a
9  conservator for -- and he -- he said that there would
10  definitely be a conservator through the -- through
11  the PR, and don't -- that should not be a concern
12  and...
13      Q.  Okay.
14      A.  But, you know -- and I -- you know, before
15  mediation, we wanted them to be there.
16      Q.  Right.  I was going to ask you about that
17  next.
18      A.  Yeah.  I mean, we -- you know, you always
19  want the plaintiff of the -- the plaintiffs to be at
20  a mediation.
21      Q.  Uh-huh.
22      A.  And...
23      Q.  And I -- there's some entries on your bills,
24  and I'll just ask you --
25      A.  Uh-huh.

Page 140

1       Q.  -- since it's in the documents, that
2  indicate that you talked to Cory about why, it says,
3  the sons are not coming to the mediation.  This is on
4  March 19th.  Do you recall that conversation?
5       A.  Oh, yeah.  We wanted them there.
6       Q.  Tell me about the conversation you had with
7  Cory about that.
8       A.  Just he -- I mean, we -- I mean, Amy Miller
9  wanted them there.  You always want the -- the
10  minor -- the plaintiffs there just to hear the dollar
11  figures and to --
12      Q.  Right.
13      A.  And to be a part.  And Cory said they did
14  not want to be in the same room with Alex, and they
15  didn't feel comfortable being there with Alex, and
16  they were not coming.
17      Q.  Okay.
18      A.  And I -- and it was either we go forward
19  anyway or scrap it, and we decided to go forward
20  anyway.
21      Q.  Okay.  And isn't it true that either -- that
22  Cory demanded that your adjuster be there in person?
23      A.  Yes.
24      Q.  And so there had already been some
25  suggestion about people participating by phone, and

Page 141

1  Cory objected to the adjuster not coming in person,
2  right?
3       A.  Right.  And it's a big enough case where you
4  want your -- your person with authority to be there.
5       Q.  Sure.  Right.  And just like you --
6       A.  Yeah.
7       Q.  -- wanted the plaintiffs to be there --
8       A.  Absolutely.
9       Q.  -- regardless, the Satterfield sons.
10      A.  Right.
11      Q.  Right.
12          And so after you had this phone call with
13  Cory that he said that the -- Tony Satterfield and
14  his brother were not coming, and I think you said
15  Cory told you they did not want to be in the same
16  room with Alex.
17      A.  That's right.
18      Q.  Right.
19          He say anything else?
20      A.  That's what stands out.  That's just what I
21  remember standing out.  They don't want to be -- they
22  don't want to be in the same room with him.
23      Q.  Okay.  And so at that moment, did you think
24  that Cory was going to be there alone?
25      A.  I mean, I assumed the PR would be there.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 142..145
John Grantland, 03/12/2024

Page 142

1   Q. Okay.
2   A. I mean, that was the -- you know, yeah.
3 I -- I mean, I -- the PR is still in play.
4   Q. Okay.  And did you --
5   A. And the PR is the plaintiff.
6   Q. Did you confirm with Cory that the personal
7 representative was going to be present at the
8 mediation?
9   A. I don't remember if we had a email or a
10 phone -- but I know -- I know we talked about who
11 would be there and who wouldn't be there.
12   Q. Okay.  Okay.  You said earlier that you
13 recalled meeting Chad Westendorf at the mediation or
14 shaking his hand?
15   A. Right.  It was -- you know, it was a
16 mediation where you go into Jon's office and
17 you're -- you're sent to a room, but you at least
18 shake hands with everybody beforehand --
19   Q. Yeah.
20   A. -- and I -- and I just remember him being
21 identified as "the banker."
22   Q. Okay.  So Mr. Westendorf testified that he
23 attended that mediation by phone, just to kind of
24 tell you that.
25   A. Right.

Page 143

1   Q. And there is some email that corroborates
2 that in the Westendorf-Fleming correspondence.
3       So do -- did -- did Cory represent to you
4 that Mr. Westendorf was present?
5   A. I don't know if he did or Jon Austen did,
6 but I just remember somebody sitting in a room by
7 themselves who was identified as "the banker."
8   Q. Okay.
9   A. And -- and, again, it was not a traditional
10 mediation where you're all -- where you take roll and
11 you meet everybody.
12   Q. Right.
13   A. We literally walked in, shook hands and...
14   Q. Okay.  So -- so you do specifically recall
15 that there was a person there who Cory represented as
16 the personal representative?
17   A. Right.  As "the banker."
18   Q. But you -- you wouldn't have known if it was
19 Chad Westendorf or some other person.
20   A. No.
21   Q. Okay.  And do you recall anybody being there
22 by phone?
23   A. No.  And, again, we were separated.  I mean,
24 we -- we got there.  We shook hands, and then we were
25 all in our room, and we were in a small room --

Page 144

1   Q. Uh-huh.  Okay.
2   A. -- and Cory's in a room by himself.  The
3 banker's in a room by himself, and Jon's going -- I
4 mean, we were -- Jon's going from room to room, but
5 we were -- we were pretty much --
6   Q. Okay.  And so did you -- did you understand
7 that Jon was going in and talking to Cory who was by
8 himself in a room?
9   A. Yes.
10   Q. Okay.
11   A. I mean, if Cory had gone into the room with
12 the banker, I would not necessarily have known that.
13 I mean, I --
14   Q. Okay.
15   A. When you're --
16   Q. And did you understand that this banker,
17 whoever that person was, was there all day?
18   A. Yeah.  As far as I know.  But I wasn't -- I
19 wasn't paying attention --
20   Q. Okay.
21   A. -- to that.  My job was to deal with Alex
22 and --
23   Q. Okay.
24   A. And...
25   Q. And if Cory had said the Satterfield sons

Page 145

1 are not coming and the personal representative is not
2 coming, what would you have --
3   A. We would have --
4   Q. What would you have said?
5   A. -- to scrap the mediation.  Let's -- you got
6 to have a -- she's not going to fly from Arizona.
7   Q. Okay.  So you said it was a mediation where
8 it was agreed not to do sort of opening statements
9 and presentations, right?
10   A. Right.
11   Q. And so y'all went to Jon's office in
12 Charleston --
13   A. Yes.
14   Q. -- right?  Jon Austen's office in
15 Charleston.
16       And so I think you said earlier when you got
17 there, you and your group went into one room.
18   A. Right.
19   Q. And then you said Cory was in one room, and
20 you recall another person who you understood was Chad
21 Westendorf was --
22   A. Right.
23   Q. -- in a third room.
24   A. Right.
25   Q. How -- were there -- were there times when



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 146..149
John Grantland, 03/12/2024

Page 146

1  your group was split up amongst yourselves for any
2  reason?
3       A.  I mean, Alex eventually went out to his
4  truck.
5       Q.  Okay.  What do you mean by that?
6       A.  I mean, he -- he was upset with Amy, and I
7  told him he needed to go outside.
8       Q.  Okay.  So Amy was in the room, you, Scott
9  Wallenger.
10      A.  And Robert Kennedy.
11      Q.  And Robert Kennedy.  And he was from --
12      A.  Phelps Dunbar.
13      Q.  Okay.  And Alex.
14      A.  Right.
15      Q.  So that was your group.
16      A.  Right.
17      Q.  And there was a time where Alex was getting
18  upset with Amy --
19      A.  Right.
20      Q.  -- right?
21          And you told Alex, "Maybe you need to go
22  outside" --
23      A.  Right.
24      Q.  -- "and take a break."
25      A.  Right.

Page 147

1       Q.  And how long did he stay out there?
2       A.  He stayed out there pretty much most of --
3  most of the day in his -- in the cab of his truck.
4       Q.  Oh.  Okay.
5       A.  I don't know -- I don't remember how long
6  the day was.  I know we were breaking maybe 2:00 or
7  3:00.
8       Q.  Okay.  And was there ever a time that you
9  recall there being any sort of presentation to a
10  bigger group than just those people that were in your
11  room?
12      A.  No.
13      Q.  Okay.  Did Cory represent to you that he was
14  conferring with whoever the banker was about the
15  settlement discussions?
16      A.  No.  The only time -- the only thing Cory
17  told me was if we get to -- if we can get to 3.8,
18  Tony would agree to take it.  Or Tony -- he talked to
19  Tony, and if we got to 3.8, we could settle.
20      Q.  Okay.  There is reference in some of the --
21  there's been reference of some sort of interaction
22  between Alex and, I guess, Amy at the conclusion of
23  that day whereas maybe Amy was trying to leave, and
24  Alex wanted her to go back.  Does that -- do you have
25  any independent recollection of anything about that?

Page 148

1       A.  There was -- there was definitely tension in
2  the beginning --
3       Q.  Uh-huh.
4       A.  -- and -- and, I mean, he's -- Alex's upset
5  with her.  Alex's pointing his finger at her.  He may
6  have poked her in the chest.
7       Q.  He may have physically poked her?
8       A.  Just -- just -- just, you know, "You need to
9  do this."  Just that kind of hand gesture.
10          And we -- that's when we said, "Alex, you
11  need to go outside."
12      Q.  Okay.
13      A.  But that -- and they stay separated.
14      Q.  Okay.  So if you're --
15      A.  If they got together at the end, it was
16  basically just to say sorry and -- or, "We're working
17  on trying to get it resolved."  And that was that.
18      Q.  Okay.  And so the only sort of, I mean --
19  and I don't use the word altercation.
20      A.  Right.  No.
21      Q.  I don't mean to make it bigger than what you
22  just said, but only sort of -- you know, sort of
23  negative interaction that you recall was when all of
24  you were together?
25      A.  And Alex --

Page 149

1       Q.  And Alex got --
2       A.  -- wants it -- wants it done.
3       Q.  Okay.  And he was --
4       A.  Wants to get it done right away.
5       Q.  Did he raise his voice?
6       A.  No more than typical.  No more than his
7  normal voice.
8       Q.  Which is somewhat loud, right?
9       A.  Right.
10      Q.  Is that what you're trying to say?
11      A.  Yeah, yeah, yeah.
12      Q.  He's not a soft-spoken person, right?
13      A.  Right.  That's right.
14      Q.  Okay.  Okay.  And then you told him, "You
15  should probably go outside"?
16      A.  Yeah.
17      Q.  And then --
18      A.  Well, I walked out with him, just, "You need
19  to cool off.  We're not going to get this done if
20  you're fussing at the adjuster.  You know, you're
21  just not -- you need to be -- just let us do our
22  job."
23      Q.  And did you go back out?  Did you, like, go
24  back out to Alex --
25      A.  Oh, yeah.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH        Pages 150..153
John Grantland, 03/12/2024

Page 150

1    Q. -- just to let him know what's going on a
2  couple times?
3        A. Yeah. Absolutely. A lot.
4    Q. Okay.
5        A. He's dipping, and I'm out there just talking
6  to him.
7    Q. Okay. And -- and how -- what do you recall
8  about how that day ended?
9        A. Just that Jon came up with -- I mean, they
10 were -- they were at 4.5 and north of 4.5, and Jon
11 said, "I'm going to do a proposal."
12        And he gave -- he gave us the proposal, and
13 we did not have that authority -- but we asked
14 for an extension or at least to hold it up open, and
15 Cory agreed to hold it up.
16        And then later Cory said, "If you can get to
17 that number, we'll accept it."
18    Q. Okay. So Cory didn't tell you the day of
19 the mediation that he had talked to Tony and --
20        A. No. He did.
21    Q. Or did he --
22        A. He did --
23    Q. So that --
24        A. Before we left.
25    Q. Before you left he told you that.

Page 151

1        A. Uh-huh.
2    Q. Bear with me one second.
3        Other than your seeing somebody at the
4  mediation that you -- it was represented to you was
5  Chad Westendorf, other than that, did you have any
6  interaction with Chad Westendorf --
7        A. No.
8    Q. -- ever?
9        A. No.
10    Q. Did Cory ever even tell you that he was
11 asking for Chad Westendorf's approval about anything?
12        A. No.
13    Q. Did Cory indicate that he was in regular
14 communication with Chad Westendorf about the
15 negotiations?
16        A. No.
17    Q. Do you recall if -- if Chad Westendorf had
18 any part in drafting the petition to approve the
19 settlement?
20        A. I didn't send it to him. I mean, I sent
21 everything to Cory and to Scott and Robert.
22    Q. Okay. And when you sent the settlement
23 check, which I think was introduced earlier, by FedEx
24 to Cory on April 22nd -- I mean to Cory on April
25 22nd, you fully expected that Cory would be

Page 152

1  depositing that check directly into his trust
2  account, right?
3        A. Of course.
4    Q. And Cory never said that Chad Westendorf was
5  going to do anything with that check.
6        A. I mean whatever -- I didn't ask that
7  question. I mean, Chad's the PR of the estate, so I
8  wouldn't...
9    Q. I believe you said earlier that both the
10 Satterfields and Alex wanted the caption to read "In
11 Re: Gloria Satterfield" which is the caption on the
12 settlement papers.
13        A. And I think that was discussed at mediation.
14 I think in the settlement -- if we had a proposed --
15 if we came to an agreement, that was one of the
16 conditions, is that the settlement documents would be
17 "In Re."
18    Q. Okay. And was that --
19        A. That was something that we discussed -- I
20 remember discussing that in Jon Austen's office.
21    Q. Okay. And was that a condition that you
22 understood was imposed or requested from Cory?
23        A. I mean, I -- I'm not sure whose idea it was.
24 That's -- there was -- I know that's what Alex
25 wanted, and I know that's what -- I thought -- and

Page 153

1  Cory agreed. I don't know if it was Cory or Alex,
2  but that was --
3    Q. Okay.
4        A. I just remember Jon Austen talking about,
5  "We can do" --
6    Q. Okay. That wasn't your idea.
7        A. No, it wasn't my idea.
8    Q. Okay. And so it was either Alex or Cory,
9  based on what you understand --
10        A. Right.
11    Q. -- that suggested that that -- would you say
12 that was even a term of the agreement?
13        A. No. Huh-uh.
14    Q. No.
15        A. No. I wouldn't necessarily -- I wouldn't
16 call it a term. It's just this is what -- this is
17 how we do the caption. And, again, I don't -- I just
18 remember discussing it at mediation with Jon Austen.
19    Q. Okay. And you didn't have any objection to
20 that.
21        A. No.
22    Q. At the time of the mediation, was there
23 discussion about where the order would be filed?
24        A. No. But we -- I mean, at some point after
25 that, we said we want to do it in probate court. I



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    Pages 154..157
John Grantland, 03/12/2024

Page 154

1  mean, I think Scott Wallenger and I -- or at least we
2  talked about probate court would be less -- less
3  publicity than state court.
4        Q.  And did you communicate that to Alex?
5        A.  Yeah.
6        Q.  Okay.
7        A.  I mean, that's what -- I think that's
8  what -- everyone was in agreement.  But then I think
9  probate court was backed up.
10       Q.  Okay.  And so how do you know that probate
11 court was backed up?
12       A.  That's what Cory told me.
13       Q.  Okay.  So you didn't make any -- you didn't
14 make any efforts --
15       A.  No.
16       Q.  -- whatsoever about where -- to figure out
17 where to file -- where to get it approved?
18       A.  Right.  There -- I was just working on the
19 documents.
20       Q.  Right.  And you didn't care what judge
21 approved it, right?
22       A.  No.  I just needed it -- yeah, just need it
23 approved.
24       Q.  Okay.  And was -- the first time you heard
25 of Cory meeting with Judge Mullen the Friday before,

Page 155

1  was that about the first time that you heard about
2  that maybe Judge Mullen would be the one that --
3        A.  I think it may have been a few days earlier
4  that she'll -- she'll work us in, but we didn't know
5  until that Friday that it would be on Monday.
6        Q.  Okay.
7        A.  I think that's...
8        Q.  And that's not unusual --
9        A.  No.  Huh-uh.
10       Q.  -- right?
11       A.  No.
12       Q.  As far as these approvals go, I mean, is
13 it -- you'd agree that it's typical that lawyers try
14 to find whatever judge they can --
15       A.  Right.
16       Q.  -- to make --
17       A.  Right.
18       Q.  To make the filing, right?
19       A.  That's right.
20              MR. MAGILL:  Object to form.
21                   - - -
22       (Billing Entries marked Exhibit Number 42 for
23       identification.)
24                   - - -
25 BY MS. ALLEN:

Page 156

1        Q.  I'll show you just a couple more.  We're
2  almost done.  What will be marked as Defendants'
3  Exhibit Number 42, which is Number 2 in my original
4  file, which is a page from one of your billing
5  entries which has got a M&G002376 at the bottom.
6           All right.  Mr. Grantland, this is a bill
7  from one of your -- it's a page from one of your
8  bills that you guys have produced.  It looks like
9  it's dated March of 2019.  There are -- let's see.
10 Looks like -- here, on March 19th it looks like you
11 reviewed and analyzed Attorney Wallenger's
12 investigative file.  You see that?
13       A.  Right.
14       Q.  And then it also says above it that you
15 talked to Attorney Wallenger about why the plaintiff
16 is not bringing the son to mediation.
17          What do you recall about your conversations
18 with -- with Mr. Wallenger about that particular
19 issue?
20       A.  I think it was just -- I think up until then
21 we -- we were acting under the assumption that the
22 Satterfield boys would be there, and then Cory said
23 they're not, and that was a concern for me.  That was
24 a concern for Nautilus.  That was a concern for Scott
25 Wallenger.  We all were concerned about --

Page 157

1        Q.  Uh-huh.
2        A.  -- you know, they need to be there.
3        Q.  Okay.  And then if you look down on March
4  20th -- this is before the mediation -- it says you
5  talked with Alex about his concerns and expectations
6  at the mediation.
7        A.  Right.
8        Q.  And then looks like, again, on the 21st you
9  talked to him regarding the terms of the mediation.
10 Do you recall any specific conversations with him
11 prior to the mediation?
12       A.  Just he wanted to make sure she was coming
13 and --
14       Q.  That the adjuster was coming?
15       A.  Yeah, yeah, yeah.  That -- and wanted to
16 make sure they -- it was going to get done.
17       Q.  Did you -- do you recall telling Alex that
18 the Satterfield sons were not attending?
19       A.  I think we discussed it.  But I don't
20 remember what he said.
21       Q.  Okay.  So you don't recall him expressing
22 any concern about that?
23       A.  No.
24       Q.  Do -- did Alex -- I think you mentioned
25 earlier that he told you that he had recommended that



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH      Pages 158..161
John Grantland, 03/12/2024

---

Page 158

1 the Satterfield sons retain Cory Fleming.
2     A. Right.
3     Q. Right. Do you recall Alex telling you
4 anything else about communications that he had with
5 the Satterfield boys?
6     A. Just -- I mean, he -- he felt very guilty
7 about Gloria's fall and Gloria's death, and we wanted
8 them to be able to make a claim, and he knew Cory and
9 trusted Cory, and -- and that -- you know, he knew
10 that they -- just basically that Cory knew what to do
11 to take care of them, and, you know, I didn't know
12 until after the fact that he had maybe sent
13 authorizations out for medical records or things like
14 that, but I wasn't aware of that until, you know,
15 after 2021.
16     Q. So you didn't have -- you didn't have any
17 information that -- that Alex had any involvement in
18 the probate --
19     A. In the estate. Right.
20     Q. -- file or the estate --
21     A. Right.
22     Q. -- until later?
23     A. Right. I mean, yeah. I mean, the...
24     Q. You mentioned earlier that Mark -- Mike -- I
25 mean, Mark Tinsley had given a PowerPoint

Page 159

1 presentation and that talked about verdicts in
2 Hampton County generally.
3     A. Right.
4     Q. I assume that didn't relate to this case
5 specifically --
6     A. Right.
7     Q. -- right?
8       And that you showed that to Ms. Miller.
9     A. I emailed it to her, yeah.
10     Q. Emailed it to her. Okay.
11       Is that a presentation that you can provide
12 to your counsel? Well, one, I'm not aware that it's
13 been provided -- produced in this case, and I guess
14 my question is, is that something that you can talk
15 with your counsel --
16     A. Yeah.
17     Q. -- about providing that?
18     A. I think it's -- it may have been Allendale
19 verdicts, maybe Allendale and Hampton, but it was a
20 scar verdict PowerPoint, and it was just about how
21 these nominal injuries had large damages.
22     Q. And is that something that you often
23 communicate to your clients when you have --
24 defending cases in Allendale or Hampton County?
25     A. If they don't know otherwise. I mean, I --

Page 160

1 it's -- it's kind of old now. It's probably 20 years
2 old, the -- the --
3     Q. The PowerPoint itself?
4     A. Or, yeah, the verdicts are over 20 years
5 ago.
6     Q. Okay. That's something that you regularly
7 communicate to your defense clients who may be
8 defendants in those counties?
9     A. If they're -- right. It's certainly
10 informative. If I can send it to Jim.
11     (The stenographer asks for clarification.)
12       THE WITNESS: I'm happy to send it to
13 Mr. Long.
14 BY MS. ALLEN:
15     Q. I believe that Exhibit Number 1 was a July
16 2018, like, legal research memo on the dog bite
17 statute that looks like you said a law clerk sent to
18 your law partner --
19     A. Right.
20     Q. -- J.R. Murphy. Do you know if that was
21 prepared in relation to this -- to this
22 Satterfield-Murdaugh case?
23     A. I think J.R. was -- the claim was -- the
24 claim came to him, and J.R. wanted an update on the
25 dog bite statute or the case law that's been -- well,

Page 161

1 the -- you know, just -- it's a law clerk job.
2     Q. Uh-huh.
3     A. But basically it's just an update on the dog
4 bite statute.
5     Q. Okay.
6     A. And --
7     Q. So --
8     A. Because it's not necessarily a dog bite. I
9 mean, it can be -- or otherwise attacks.
10     Q. Right. But liability --
11     A. Yeah.
12     Q. -- as it comes from that statute --
13     A. Yeah.
14     Q. -- was --
15     A. Strict.
16     Q. -- as the research showed.
17     A. Yeah, yeah.
18     Q. Do you know if you sent that to Ms. Miller?
19     A. I didn't.
20     Q. Okay. Do you know what communications
21 Mr. Murphy had, if any, with Nautilus or Amy Miller
22 about this claim?
23     A. I'm sure they had a good bit before I got
24 involved.
25     Q. Okay. And -- okay. Is it your



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 162..165
John Grantland, 03/12/2024

Page 162

1  understanding that those -- any emails between
2  Mr. Murphy and Amy Miller or anybody at Nautilus have
3  been -- is it your understanding that those have been
4  produced?
5      A.  Yes.
6      Q.  Okay.  Do you know what, if anything,
7  Mr. Murphy did before you sort of stepped into the
8  case?
9      A.  I mean, I think they talked -- he talked to
10 Nautilus about the options, you know.  Can we remove
11 the case?  You know, what are -- what if we just say,
12 "No, we don't believe it happened"?
13     Q.  Okay.
14     A.  What -- you know, if we just kind of go
15 through a risk analysis on -- and options on what can
16 we -- how to position the case and how to -- to deal
17 with it.
18     Q.  Do you recall how it was -- or what the
19 first interaction was between your firm and Alex
20 Murdaugh about this file?
21     A.  Other than I think at some point when it was
22 decided that we'll agree to go to mediation, I
23 reached out to Alex and told him, "Just -- we got it.
24 Just let us do our job."  And --
25     Q.  Okay.  So do you think that was the first --

Page 163

1  do you think -- your communication to Alex saying,
2  "I'm involved," do you think that was the first
3  time --
4      A.  My firm --
5      Q.  -- it was -- your firm --
6      A.  The first time I --
7         (Stenographer admonishes simultaneous cross-talk
8         and requests all participants take turns
9         speaking.)
10 BY MS. ALLEN:
11     Q.  Do you think that was the -- do you think
12 that was the first time anybody at your firm
13 communicated to Alex about your firm being hired to
14 handle the defense?
15     A.  I believe so.
16     Q.  Okay.
17     A.  I've seen an email from Alex to me, you
18 know, outlining his concerns.
19     Q.  Okay.
20     A.  And that would have been shortly after me
21 reaching out to him.
22     Q.  Did Alex email you a lot?
23     A.  No.
24     Q.  How did you normally communicate with him?
25     A.  Phone.

Page 164

1      Q.  And who would usually initiate the call?
2      A.  He would.
3      Q.  So he would call you?
4      A.  Uh-huh.  Yes.
5         MS. ALLEN:  I think that's all I have.
6         THE WITNESS:  Thank you.
7         MS. ALLEN:  Thank you.
8         - - -
9      (The stenographer requests a break.
10     There was a recess from 1:21 to 1:29.)
11        - - -
12        MR. CLEMENT:  I'm going to start by
13 marking --
14        MR. CLEMENT:  Are we at Exhibit 43?
15        THE STENOGRAPHER:  I have 43, yes, sir.
16        MR. CLEMENT:  Okay.  All right.  I'm
17 marking Exhibit 43.
18        - - -
19 (Letter Dated 11/14/2018 marked Exhibit Number 43
20 for identification.)
21        - - -
22        MR. CLEMENT:  Mr. Grantland.
23        Mr. Long.
24        - - -
25        EXAMINATION

Page 165

1         - - -
2  BY MR. CLEMENT:
3      Q.  And for purposes of the record, I'll
4  reintroduce myself.  My name is Jim Clement.  I
5  represent the bank in this case, Palmetto State Bank.
6         MR. LONG:  You're -- let's go.  This
7  one's not in the notebook.
8         Right?
9         MR. CLEMENT:  Pardon?
10        MR. LONG:  This one's not on the list;
11 is it?
12        MR. CLEMENT:  Yeah.  This is -- this is
13 one that's not in the --
14        MR. LONG:  That's what I was trying to
15 tell you.  Let's go.
16        - - -
17     (There was a recess from 1:30 to 1:32.)
18        - - -
19        MR. CLEMENT:  All right.  We ready to go
20 back on the record?
21 BY MR. CLEMENT:
22     Q.  All right.  Mr. Grantland, what I just
23 handed you is a letter marked Exhibit 43 dated
24 November 14, 2018.  It's written by your law partner,
25 J.R. Murphy.  Do you see that?



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    Pages 166..169
John Grantland, 03/12/2024

Page 166

1    A. Yes.
2        Q. Okay. I just want to ask you one question
3    about it. Mr. Murphy writes in the first sentence,
4    "I, along with John Grantland, have been retained by
5    Nautilus Insurance Company to assist in the
6    investigation and valuation of this claim."
7        Do you see?
8    A. Yes.
9        Q. Okay. Is that consistent with your
10   understanding of your role in this matter?
11   A. Yes. I mean, that's -- I mean, I think at
12   least at that point -- at that point, you know,
13   Nautilus hired J.R. to assist in the investigation.
14   When it was decided, you know, that we're going to
15   take the case to mediation, you know, my job was more
16   to be Alex's counsel, Alex's attorney at mediation,
17   particularly with Brit settling out or Brit passing
18   the case to us.
19       Q. Sure. And who exactly were you to assist in
20   the investigation and valuation?
21   A. I mean, I -- I mean, I was assisting
22   Nautilus in investigation. But it -- but, you
23   know -- and in defense of Alex.
24       Q. Sure. And is that part of the tripartite --
25   A. Yeah.

Page 167

1        Q. -- relationship?
2    A. Right, right.
3        Q. Okay.
4    A. That's right.
5        Q. All right. Earlier you were asked about the
6    email where you wrote, "I smell a trap."
7    A. Right.
8        Q. Do you remember that?
9    A. Uh-huh.
10       Q. And Mr. Pendarvis asked you what you meant
11   by -- by that phrase, "I smell a trap."
12       And I believe you started to testify that --
13   you said something like, "They were working," and
14   then you stopped. And --
15   A. Well, they were talking to each other.
16       Q. Okay. And I was going to ask. Did you
17   mean -- or did you mean to say that they, being Alex
18   and Cory, were working together?
19   A. Or that they were talking.
20       MR. LONG: Objection.
21       Go ahead.
22       THE WITNESS: You know, I just know that
23   they were talking, and I knew that Alex giving a
24   statement, a deposition, you know, would not help
25   get this case resolved. It could make it -- it

Page 168

1    could potentially make it worse, and I did not
2    want Alex falling on a sword or giving any
3    statements as to what happened or the value of
4    the case or anything like that. Those were my
5    concerns.
6    BY MR. CLEMENT:
7        Q. Okay. Did you tell Ms. Coryer Miller or
8    Ms. Miller that Alex and --
9    A. Yeah.
10       Q. -- Cory were talking?
11   A. I mean, I think there was -- they had talked
12   earlier. I mean, I think I'd reached out to her
13   before that they -- they had talked to each other,
14   and I told Alex to be -- to shut up --
15       Q. Sure.
16   A. -- quit talking and let me do my job.
17       Q. Is that unusual for --
18   A. Yes. Highly unusual.
19       Q. Okay. And if you can let me finish my
20   question --
21   A. I'm sorry.
22       Q. -- I'd appreciate it.
23       Is that unusual for a claim like this, a
24   wrongful death claim, for the defense -- the
25   defendant and the claimant's attorney to communicate?

Page 169

1    A. Yes.
2        Q. Okay. I'm going to hand you what was
3    previously marked Deposition Exhibit 18. It's the
4    mediation statement. And I'm going to ask you some
5    specific questions based on the content of this
6    mediation statement, mediation position statement.
7    Would you agree with me that -- well, let me ask you,
8    first: Did you provide this mediation position
9    statement to Ms. Miller before the mediation?
10   A. Yes.
11       Q. And to your knowledge, Nautilus knew all the
12   information in this -- this mediation statement prior
13   to the mediation.
14   A. Yes.
15       Q. Okay. So you would agree with me that
16   Nautilus had been informed by the time of mediation
17   that the medical records show that Ms. Satterfield
18   reported to a neurosurgeon that she did not know why
19   she fell?
20   A. That's correct.
21       Q. And you'd agree that Nautilus knew by the
22   time of mediation that the medical records revealed
23   that Ms. Satterfield had neuropathy and had complaint
24   of tingling in her feet?
25   A. That's -- that's correct.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    Pages 170..173
John Grantland, 03/12/2024

Page 170

1     Q.  And you would agree that by the time of
2  mediation Nautilus knew that Ms. Satterfield was on
3  several medications that have side effects including
4  dizziness?
5     A.  That's correct.
6     Q.  And you would agree with me that by the time
7  of mediation Nautilus knew that one of
8  Ms. Satterfield's medications, amlodipine, states
9  severe dizziness as a side effect?
10    A.  I don't know -- I don't -- if it's in my
11 letter, then, yes.
12    Q.  Okay.
13    A.  Yeah.
14    Q.  Sure.
15    A.  I'm just looking for it in the letter, yeah.
16    Q.  And would you agree with me by the time of
17 mediation you had informed Nautilus that
18 Ms. Satterfield could have simply just fallen down
19 the steps?
20    A.  That's correct.
21    Q.  And you had informed Nautilus by the time of
22 mediation that Ms. Satterfield had underlying health
23 conditions that contributed to her death.
24    A.  That's correct.
25    Q.  And you --

Page 171

1     A.  Well, I -- I mean, that's what Dr. Westerkam
2  said.
3     Q.  Yes, sir.  And you informed Nautilus by the
4  time of mediation that Dr. Pritchard, a MUSC
5  neurosurgeon, had opined that Ms. Satterfield was
6  lucid and coherent enough to give a history of how
7  she fell and, in fact, told a neurosurgeon that she
8  did not know why she fell.
9     A.  That's right.  But Dr. Pritchard was a
10 neurologist, but, yes.
11    Q.  Neurologist.
12    A.  Yeah.
13    Q.  Okay.  And then you would agree with me that
14 by the time of mediation, you informed Nautilus that
15 Ms. Satterfield's multiple preexisting conditions,
16 according to Dr. Westerkam, had contributed to her
17 fall and her rapid medical decline.
18    A.  That's correct.
19    Q.  And you informed Nautilus by the time of
20 mediation that Dr. Westerkam had also opined that
21 Ms. Satterfield had an underlying cardiac condition
22 and her cause of death was multi-factorial.
23    A.  That's correct.
24    Q.  Okay.  And, of course, mediation was on
25 March 22, 2019.  I'm going to show you another email

Page 172

1  that hasn't been discussed today, so if you -- it's a
2  one-liner, so hopefully it won't take too long to
3  discuss.  Or I'll take that back, that one, and give
4  you a clean copy.
5          MR. PENDARVIS:  What's the Bates number?
6          MR. CLEMENT:  This is Miller/Nautilus
7     000764.
8          MR. LONG:  You're good on this?
9          THE WITNESS:  Yes.
10         MR. CLEMENT:  I'm marking this
11    Deposition Exhibit 44.
12              -  -  -
13    (Email Dated 3/25/2019 marked Exhibit Number 44
14    for identification.)
15              -  -  -
16 BY MR. CLEMENT:
17    Q.  Is this an email that you received from
18 Ms. Miller on March 25, 2019?
19    A.  Yes.
20    Q.  So is that about -- that's three days after
21 mediation?
22    A.  Yes.
23    Q.  And does she write in this email, "Hi, Jon
24 and John.  I just tried to reach you both by
25 telephone.  Nautilus had decided that we will accept

Page 173

1  Jon's proposal of 3.8 million.  Thank you"?
2     A.  That's correct.
3     Q.  Did I -- did I read that correctly?
4     A.  Yes, sir.
5     Q.  And is that how you learned that Nautilus
6  decided to settle the case?
7     A.  Either that or returned her phone call.  I'm
8  not sure which one happened first, but --
9     Q.  Okay.  Was it after mediation?
10    A.  Yes.
11    Q.  -- had concluded?
12    A.  Yes.
13    Q.  Okay.  And Nautilus made that decision to
14 settle for less than policy limits, right?
15    A.  That's correct.
16         MR. MAGILL:  Object to the form.
17         MR. CLEMENT:  Okay.  And I think this
18    next exhibit is going to be Exhibit 27.  Let me
19    see if I can find it.
20         All right.  I'll have to -- yeah.  I'm
21    going to have to use my own.  Sorry.
22         I'm marking this -- I'm going to mark
23    this --
24         MR. LONG:  This isn't the same one?
25         MR. CLEMENT:  Pardon?



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 174..177
John Grantland, 03/12/2024

Page 174

1     MR. LONG:  This isn't 27?
2     MR. CLEMENT:  I had -- no, it's not.
3     And this is Bates stamped
4  Miller/Nautilus 000655.
5     MR. LONG:  Let me see.  I think this is
6  already in.
7     MR. CLEMENT:  Tell me when you're ready.
8     THE WITNESS:  I haven't even seen it.
9     MR. CLEMENT:  Oh.
10    THE WITNESS:  I'm sorry.  But go ahead.
11    MR. LONG:  No, no, no.
12    MR. CLEMENT:  Okay.
13    MR. LONG:  Yeah.  It's already in, I
14  think.  I'll show you what number it is.
15    MR. CLEMENT:  We did discuss it.  It's
16  an email chain.  I'm not sure if it's got all the
17  emails on it or not.
18    MR. LONG:  Yeah.  I was checking.
19    MR. CLEMENT:  Is it 40...
20    MR. LONG:  Yeah.  It's Exhibit 29.
21    MR. CLEMENT:  29?  Okay.  Why don't we
22  just use what's in here then?
23    MR. LONG:  Take a look at it and decide.
24  Yeah.
25    MR. CLEMENT:  I'm going to withdraw what

Page 175

1  I had marked as Deposition Exhibit 45, and I'm --
2  for the record, I'm showing Mr. Grantland
3  Deposition Exhibit 29?
4     THE WITNESS:  Yes.
5  BY MR. CLEMENT:
6     Q.  All right.  Mr. Grantland, on the second
7  page of that exhibit, you should see an email from --
8  well, let me ask you.  That email at the -- yep.  So
9  that email here at the top, is that an email from
10  Ms. Miller to you sent on April 17th of 2019?
11    A.  Yes.
12    Q.  And in this email she's discussing the
13  proposed petition for approval of settlement and
14  proposed order.  Do you see that?
15    A.  Yes.
16    Q.  And Ms. Miller writes -- you got a question
17  about this earlier -- "Typically a plaintiff's
18  attorney prepares a petition for approval of
19  settlement.  I'm curious as to why the estate's
20  attorney did not prepare the petition.  He did
21  absolutely no work for a $4,305,000 payout."
22    Do you see that?
23    A.  Yes.
24    Q.  Did you -- or do you share that same opinion
25  of the plaintiff's attorney in this case,

Page 176

1  Mr. Fleming?
2     A.  I mean, I have a lot of opinions, but...
3     Q.  Yeah.  But was his role minimal?
4     A.  Yes.
5     Q.  It was.  Okay.
6     I mean, he didn't draft pleadings.
7     A.  Right.
8     Q.  He didn't take any depositions.
9     A.  Right.
10    Q.  He didn't serve written discovery.
11    A.  Right.
12    Q.  He didn't file suit, right?
13    A.  Right.
14    Q.  And he didn't have to defend against a
15  declaratory judgment action; did he?
16    A.  That's correct.
17    Q.  And were you aware that your colleague, J.R.
18  Murphy, had suggested to Nautilus that it file a
19  declaratory judgment action?
20    A.  To one of y'all's -- that -- I mean, there
21  was a lot of issues -- those were -- that was
22  certainly an issue that was discussed between J.R.
23  and -- and Nautilus before I got involved, you know,
24  what to do.  You got a dog bite --
25    Q.  Sure.

Page 177

1     A.  -- in Hampton that's worth questioning
2  whether it occurred, and...
3     Q.  Did you and Mr. Murphy have a conversation
4  about whether to file a --
5     A.  No.  I mean --
6     Q.  -- declaratory judgment action?
7     A.  No.  By the time it came to me, the decision
8  was made where we need somebody to -- to -- you know,
9  to work the case up for mediation and get it settled.
10    Q.  Do you know why Nautilus declined to file a
11  declaratory judgment action?
12    A.  I have no idea.
13    Q.  Okay.  Ask you -- let's see.
14    MR. CLEMENT:  Exhibit -- I'm looking for
15  Exhibit 32.  Yeah.  Okay.  This was -- I'm
16  showing the witness Exhibit 32.
17  BY MR. CLEMENT:
18    Q.  Mr. Grantland, this was an email from --
19  let's see.  Sorry.  Let me get a copy real quick.
20    MR. CLEMENT:  Oh, you got it.  Thank
21  you.
22    MR. PENDARVIS:  It's got highlighting on
23  it.
24    MR. CLEMENT:  Yeah, that's fine.
25  BY MR. CLEMENT:



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 178..181
John Grantland, 03/12/2024

Page 178

1    Q.  This is an email.  The bottom email is from
2  you to Ms. Miller on May 6, 2019.  Do you see that?
3    A.  Yes.
4    Q.  Okay.  And you write about the settlement
5  approval hearing moving from the probate court to the
6  court of common pleas?
7    A.  Right.
8    Q.  And you write, "We were originally going to
9  do the approval in probate court since that would be
10  more secretive and under the radar."
11    Did you, in fact, write that to Ms. Miller?
12    A.  I did.
13    Q.  And so she knew that the plan was to try to
14  keep this out of the public eye?
15    A.  Yeah.  I mean, yes.  There was no question
16  Alex didn't want the publicity, and the Satterfields
17  didn't want the publicity, or at least that was
18  communicated.
19    MR. MAGILL:  Object.
20  BY MR. CLEMENT:
21    Q.  Okay.  And you informed her that -- you're
22  informing her that the plan had changed, that you all
23  were going to seek approval in the court of common
24  pleas, correct?
25    A.  That's correct.

Page 179

1    Q.  And she didn't have any issue with that; did
2  she?
3    A.  No, not that I recall.
4    Q.  Okay.  Do you remember her response?  Well,
5  let me show you because it's not in this email chain.
6  I don't think this one has been covered today, so
7  give me just one moment.  It's just the top email
8  wasn't included.
9    MR. LONG:  Do you know what this is?
10    THE WITNESS:  Yeah.
11    MR. LONG:  You got one for me?
12    MR. CLEMENT:  Yeah, I do.  Let me mark
13    that one.
14    - - -
15    (Emails Dated 5/10/2019 marked Exhibit Number 45
16    for identification.)
17    - - -
18  BY MR. CLEMENT:
19    Q.  All right.  I'm marking this as Exhibit 45.
20  And it is Bates stamped Miller/Nautilus 000700.  I
21  want to ask you specifically about the top email.  Is
22  that an email that you received from Ms. Miller on
23  May 10, 2019?
24    A.  Yes.
25    Q.  And her email is in response to yours below

Page 180

1  informing her that you're going to do the court
2  approval on Monday?
3    A.  Yes.
4    Q.  And she writes, "Good news.  I'm anxious to
5  put this one to bed.  Have a great weekend."
6    A.  Yes.
7    Q.  Is that right?
8    A.  Yeah.
9    Q.  So do you have any idea why Nautilus was
10  anxious to put this claim to bed?
11    MR. MAGILL:  Object to form.
12    THE WITNESS:  I mean, I can't speak for
13    Nautilus, but for me, it was a stressful case --
14    stressful claim, and we wanted -- and we were --
15    you know, once you have the court approval,
16    it's -- and get the -- once you -- once you get
17    to that point, it's over.
18  BY MR. CLEMENT:
19    Q.  Did you understand that Nautilus was content
20  with the settlement that it had reached with the
21  claimant?
22    MR. MAGILL:  Object to form.
23    THE WITNESS:  I mean, I can't speak for
24    Nautilus, but -- but for me, I was -- I was happy
25    that we were able to get the case resolved.

Page 181

1  BY MR. CLEMENT:
2    Q.  Okay.  And did Ms. Miller express similar
3  feelings to you?
4    A.  I mean --
5    MR. MAGILL:  Object to form.
6    THE WITNESS:  Yeah.  I mean, as best I
7    can recall, I mean, she was pleased with the
8    outcome and pleased with the settlement.
9  BY MR. CLEMENT:
10    Q.  Okay.  And I've got one additional document
11  that I want to ask you about.  If you will give me
12  one moment, I think we've --
13    MR. CLEMENT:  Do we have this one?
14    I'll give you a copy.  This is 23 in
15    your book.
16    MR. LONG:  You think it's 23?
17    MR. CLEMENT.  Yes, sir.  We are almost
18    there.
19    - - -
20    (A discussion was held off the record.)
21    - - -
22    MR. LONG:  It's 38 in the notebook and
23    probably --
24    MR. PENDARVIS:  Did I just give you the
25    wrong number?


is now  LEXITAS

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 182..185
John Grantland, 03/12/2024

Page 182

1    MR. CLEMENT: No. This is the right
2  one. It was marked as Exhibit 23.
3    MR. LONG: Oh, that's not what you --
4  that's not what you handed me.
5    MR. PENDARVIS: Nautilus_683.
6    MR. LONG: That's not what you handed
7  me.
8    MR. CLEMENT: Oh. Oh, okay. Yeah. I'm
9  sorry.
10   MR. LONG: You handed me something
11 different. I mean, I have --
12   MR. CLEMENT: Yeah. We've got it in
13 here somewhere. We'll find it.
14   MR. PENDARVIS: I may have written down
15 the wrong exhibit number on my little copy.
16   MR. CLEMENT: That's okay. Well --
17   MR. PENDARVIS: It's 33.
18   MR. CLEMENT: 33? Okay.
19   MR. LONG: Exhibit 33?
20   MR. PENDARVIS: Yeah.
21   MR. CLEMENT: Yes, sir.
22   MR. LONG: That's the one you just
23 showed me.
24   THE WITNESS: That's what you just
25 showed me. Actually, that's in there. I thought

Page 183

1  I had seen it before.
2  BY MR. CLEMENT:
3    **Q. Yes, sir. Okay. So, Mr. Grantland, I've**
4  **just placed before you Exhibit 33.**
5    MR. LONG: Now, you -- you -- show me
6  Exhibit 45.
7    MR. CLEMENT: What's going on? That was
8  the one I just asked him about.
9    MR. LONG: Yeah. These are the same.
10 Yeah. So 33 and 45 are the same document. Okay?
11   MR. CLEMENT: Yeah. All right. I'm
12 looking for the one that says, "Will do, Amy," in
13 the beginning. It's in here. But we can use my
14 set if...
15   MR. LONG: "Will do," and what?
16   MR. CLEMENT: He says, "Will do, Amy. I
17 hope our paths across again."
18   MR. LONG: That's tab 38 in --
19   MR. PENDARVIS: That's at the top of 38.
20   MR. LONG: -- Exhibit 36. Exhibit 36.
21   MR. CLEMENT. Okay. Thank you. Here we
22 go. All right.
23     All right. Just placed before
24 Mr. Grantland Exhibit --
25     THE WITNESS: 36.

Page 184

1    MR. CLEMENT: -- 36.
2  BY MR. CLEMENT:
3    **Q. All right. Mr. Grantland, this is the -- if**
4  **you will, flip to the second page of Exhibit 36, the**
5  **bottom email.**
6    A. Yeah.
7    **Q. Is that an email that you sent to Ms. Miller**
8  **on May 13th --**
9    A. Yes.
10   **Q. -- of 2019?**
11     In this email you write, "Amy, how are you?
12 Attached is the order approving the settlement. The
13 original is on the way."
14   A. Yes.
15   Q. Is that correct?
16     All right. And then you were asked earlier
17 about this email, but just to be clear, when you --
18 when you wrote, "The original is on the way," what --
19 what exactly are you referring to?
20   A. He's sending me the -- the -- he's -- Cory
21 is -- I'm referring to Cory's email where he says,
22 "The original is on the way," and I'm assuming I'm
23 getting a filed original order.
24   Q. Okay. And your assumption that the original
25 order -- that Cory was going to file the original

Page 185

1  order was based on what?
2    A. Based on our discussions.
3    Q. Okay. And those are verbal discussions.
4    A. Right.
5    Q. Okay. And?
6    A. And, you know, there is a letter somewhere
7  where I said, "Hold it in trust, file it," and I
8  think there's a -- regarding probate court.
9    Q. Okay.
10   A. There's a -- I wrote him a letter, "Hold
11 this in trust until the order's approved and final."
12   **Q. Yes, sir. And then the plan changed to**
13 **file --**
14   A. In state court.
15   **Q. -- in state court, in the court of common**
16 **pleas.**
17   A. Right.
18   **Q. In your experience when you filed an order,**
19 **do you get an original back?**
20   A. Well, I just meant a hard -- I mean the --
21 whatever -- I assumed I was getting, you know, an
22 original filed order from -- from Cory.
23   Q. Okay.
24   A. I mean, I just -- I guess, you know, I -- I
25 think when I got his email, I forwarded it on to Amy



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 186..189
John Grantland, 03/12/2024

Page 186

1  and said, "The original is on the way."  Meaning,
2  whatever he's sending me, I'll be sending to her.
3       Q.  And to the best of your recollection, did
4  you ever receive the original order?
5       A.  No.
6       Q.  Okay.  In any event, Ms. Miller on the first
7  page of this same email chain, at the bottom she
8  responds to you the next day.  Do you see that email?
9       A.  Yes.
10      Q.  And is that an email that you received?
11      A.  Yes.
12      Q.  And she writes, "I'm well, and I hope are
13 you are too.  This claim is now officially over.  You
14 may close your file."
15          I've done some insurance defense work, and
16 when an adjuster tells you to close your file --
17      A.  You close your file.
18      Q.  -- you close your file.  It means you're not
19 going to get paid anymore, right?
20          MR. MAGILL:  Object to form.
21          THE WITNESS:  I didn't look at it that
22 way, but I was happy to be -- happy to close it.
23 BY MR. CLEMENT:
24      Q.  The case is over, right?
25      A.  Right.

Page 187

1       Q.  And when she wrote this, Ms. Miller, she
2  didn't have a original filed or copy of a filed order
3  approving the settlement; did she?
4       A.  No.  Nor did I.
5       Q.  Nor did you.  Okay.
6          If you will, give me just one moment.  I
7  think that is probably my last question for you.
8          And let me ask you: Did you ever speak with
9  Chad Westendorf directly?
10      A.  I shook hands with somebody that I was -- I
11 assumed was Chad Westendorf at the mediation.  That's
12 the extent of it.
13      Q.  Okay.  Did you speak with anyone associated
14 with Palmetto State Bank --
15      A.  No.
16      Q.  -- during the course of your
17 representation --
18      A.  No.
19      Q.  -- of Mr. Murdaugh?
20      A.  No.
21          MR. CLEMENT:  Okay.  All right.  That's
22 the last question I have for you.  Thank you.
23          THE WITNESS:  Thank you.
24          MR. MAGILL:  I think I'm the last one.
25 If we can take ten minutes, I've got very brief

Page 188

1  questions, but I've got two additional exhibits
2  based upon today.
3          I'll just send them right on right now
4  and give you an opportunity to look at it if you
5  need it, Jimmy.
6          MR. LONG:  I'm not going to have access
7  to that.
8          MR. MAGILL:  Sorry.  What?
9          MR. LONG:  So are you going to tell me
10 what they are?
11          MR. MAGILL:  Yeah.  It's a stipulation
12 of dismissal that was filed in the petition case
13 and an email between Cory Fleming with the Court
14 that John Grantland was not on.
15          MR. LONG:  Is that about the dismissal?
16          MR. MAGILL:  Right.
17          MR. LONG:  Okay.  I think I've seen
18 those before.
19          MR. MAGILL:  I'll send it to you right
20 now.  We'll take ten minutes and then come back.
21          MR. LONG:  Okay.
22              - - -
23 (There was a recess from 2:02 to 2:14.)
24              - - -
25          EXAMINATION

Page 189

1              - - -
2  BY MR. MAGILL:
3       Q.  Good afternoon, Mr. Grantland.
4       A.  Hey.
5       Q.  My name is Clinton Magill.  I'm here on
6  behalf of the plaintiff in this action, Nautilus
7  Insurance Company.  I appreciate your patience today.
8  I've only got a few questions.
9          I want to start with this document Bates
10 labeled M&G00020.  I believe Mr. Pendarvis marked it
11 as Exhibit 30.  Do you recall testifying about this
12 document?
13      A.  Yes, sir.
14          MR. LONG:  Wait a minute.  Wait a
15 minute.  Exhibit 30?
16          MR. PENDARVIS:  It's in that one.
17          MR. MAGILL:  I thought that was it.  If
18 it's not, let's get that right.
19          THE WITNESS:  I'm looking at it.
20          MR. PENDARVIS:  It's not the yellow
21 color, but --
22          THE WITNESS:  Yeah.  It's the same.
23 BY MR. MAGILL:
24      Q.  Okay.  Can you identify this document one
25 more time?



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH            Pages 190..193
John Grantland, 03/12/2024

Page 190

1    A. This is the letter, cover letter, where we
2 sent the $3.8 million check to Cory by FedEx.
3    Q. Okay. And you instructed that the
4 settlement funds be held in trust until an order was
5 filed --
6    A. That's correct.
7    Q. -- right?
8    A. That's correct.
9    Q. Was an order ever filed?
10    A. No.
11    Q. Do you ever authorize the release of funds
12 without the filing of an order?
13    A. No.
14    Q. You expected Mr. Fleming to file the order?
15    A. Yes.
16    Q. And that, if I understand your testimony,
17 that he would send you a copy of the filed final
18 order; is that right?
19    A. Yes.
20    Q. I want to show you this document which has
21 not been marked.
22        MR. MAGILL: What exhibit number are we
23 on, Madam Court Reporter?
24        THE STENOGRAPHER: This would be Number
25 46.

Page 191

1                  - - -
2    (Email Chain marked Exhibit Number 46 for
3    identification.)
4                  - - -
5 BY MR. MAGILL:
6    Q. I know you may not have a copy in front of
7 you, so --
8        MR. LONG: He does.
9        THE WITNESS: I do.
10        MR. LONG: He does. If you want to call
11    out -- he can't read that screen that you're
12    sending him. Do you want to call out the page
13    numbers, the Bates number?
14        MR. MAGILL: Sure. CHF_00146.
15        THE WITNESS: I'm looking at it.
16 BY MR. MAGILL:
17    Q. Okay. If you can, just take a look at this
18 document, and tell me if you've ever seen this prior
19 to today.
20    A. Never seen it --
21        MR. LONG: Go ahead and answer.
22        THE WITNESS: I've never seen it before.
23        MR. LONG: Okay. What you sent to me
24    was, like, seven pages. Are you putting the
25    whole seven pages in or just CHF_146?

Page 192

1        MR. MAGILL: The whole seven pages. I
2    apologize. CHF_0146 through 00152.
3        MR. LONG: Okay.
4 BY MR. MAGILL:
5    Q. Can you tell me what this document appears
6 to be?
7    A. Emails between Cory Fleming and Hampton
8 County.
9    Q. Okay. So you see the date? I'm going to
10 look at CHF_00146, that first page. The date that
11 this is occurring, September 30, 2020, and October 1,
12 2020, do you see that?
13    A. Yes.
14    Q. Okay. And during this time, did Mr. Fleming
15 ever reach out to you to tell you that he was
16 communicating with the Court on this case?
17        MR. PENDARVIS: Object to the form.
18        THE WITNESS: No.
19 BY MR. MAGILL:
20    Q. Okay. If you look at the third email from
21 Mr. Fleming to Tanya King and Brooks-Creech, do you
22 see that?
23    A. Yes.
24    Q. Okay. Mr. Fleming says, "This case is
25 actually settled. It keeps appearing, but no suit

Page 193

1 was ever filed. We simply filed the settlement order
2 under this case number."
3        Do you see that?
4    A. Yes.
5    Q. Did I read that correctly?
6    A. Yes.
7    Q. So you are not copied on this; are you?
8    A. No.
9    Q. Okay. Can you read the response right above
10 that from the Court?
11    A. "Hey. Nothing was ever filed with us to
12 remove it from the active -- from our active docket.
13 Can you file a SOD?" Which I assume is stipulation
14 of dismissal.
15    Q. So this appears to be the Court informing
16 Mr. Fleming that nothing has been filed to remove the
17 case from the docket. Is that what you would expect
18 of the -- well, scratch that.
19        Mr. Fleming was going to file the order
20 under your understanding, correct?
21    A. That's what -- the next email says, "We need
22 to do a stipulation of dismissal. Thank you."
23    Q. Right. And this is occurring, again, in
24 September 30, 2020. They're saying, "There was
25 nothing ever filed with us to remove it from the



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 194..197
John Grantland, 03/12/2024

Page 194

1  active docket." Do you see that?
2      A.  Yes.
3                    - - -
4      (Stipulation of Dismissal Dated 10/5/2020 marked
5      Exhibit Number 47 for identification.)
6                    - - -
7  BY MR. MAGILL:
8      Q.  Okay.  I wanted to show you one more
9  document here.  And this will be Exhibit Number --
10 which exhibit was this?
11     A.  This'll be 47.
12     Q.  47.  Thank you so much.
13          This is a two-page document, Stipulation of
14 Dismissal, filed in the petition action.  Have you
15 seen this prior to today?
16     A.  No.
17     Q.  Okay.  Can you tell me what it appears to
18 be?
19     A.  It's a stipulation of dismissal.
20     Q.  Okay.  Who had signed this dismissal?
21     A.  Cory Fleming and, looks like, Alex.
22     Q.  Okay.  Were you ever made aware of this
23 stipulation of dismissal being filed at the time?
24     A.  No.
25     Q.  Were you ever asked for authority to enter a

Page 195

1  stipulation of dismissal?
2      A.  No.
3      Q.  Okay.  At any point in time after the
4  settlement hearing, did Mr. Fleming ever reach out to
5  ask you why you never filed an order?
6      A.  No.
7      Q.  Would you expect him to do that if, in fact,
8  you were supposed to file it?
9            MR. PENDARVIS:  Form, objection.
10           MR. LONG:  Objection.
11           THE WITNESS:  I assume so.  That --
12 orders are supposed to be filed.
13 BY MR. MAGILL:
14     Q.  Right.  So one last -- well, couple
15 questions for you.  You've been practicing for some
16 time.  Do you recall practicing before e-filing?
17     A.  Yes.
18     Q.  Was it typical to take two copies of filings
19 to the court, and when you file it, they'd stamp one,
20 and you'd file one and you keep the other.
21     A.  Yeah.  I mean, something like two or three
22 copies.  It just depends on how many parties.
23     Q.  Okay.  Is that generally consistent with
24 what you meant when you said you'd expect --
25     A.  To get --

Page 196

1      Q.  -- Fleming to send a filed order?
2      A.  Yes.
3            MR. MAGILL:  That's all the questions I
4  have.  Thank you.
5            MR. PENDARVIS:  I have a couple follow-
6  ups.
7                    - - -
8                    REEXAMINATION
9                    - - -
10 BY MR. PENDARVIS:
11     Q.  Mr. Fleming, back -- Mr. Grantland.  Excuse
12 me.  Back to Exhibit 30, the cover letter, we were
13 just looking at.
14     A.  Yeah.
15     Q.  I have got some specifics on the language,
16 so you might --
17     A.  Okay.
18     Q.  -- want to get the document.
19     A.  Okay.  I got it.
20     Q.  Thank you.  The -- the paragraph that
21 states, "Please hold these settlement funds in" --
22 well, let me just read this.  "Please hold these
23 settlement funds in trust until the Petition and
24 Order Approving Settlement have been signed and filed
25 in the probate court settlement hearing -- at the

Page 197

1  probate court settlement hearing," correct?
2      A.  Yes.
3      Q.  But it doesn't require for Cory Fleming --
4  it doesn't say, "Cory Fleming, you are to file the
5  settlement -- the petition and the order;" does it?
6      A.  That's -- but the letter is to Cory.
7      Q.  It is.
8      A.  Yeah.
9      Q.  But you were planning on attending the
10 hearing.
11     A.  Right.
12     Q.  And it could have been that you were the one
13 that filed it, correct?
14     A.  But I didn't.
15     Q.  But it could have been.  My question is:  It
16 could have been you that got -- were there at the
17 hearing and filed the order, correct?
18           MR. LONG:  Objection.
19           MR. MAGILL:  Objection.
20           THE WITNESS:  I mean, if I would have
21 been at the hearing with him, that would have
22 been the case.
23 BY MR. PENDARVIS:
24     Q.  Okay.  So this language in paragraph two on
25 Exhibit 30 isn't specific as to who was to file the



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          Pages 198..201
John Grantland, 03/12/2024

Page 198

1  order.  It just talks about having the order signed
2  and filed, correct?
3      A.  That's correct.
4      Q.  Okay.  You mentioned something earlier.  I
5  have two little other small follow-ups,
6  Mr. Grantland.  You mentioned earlier about Nautilus
7  being concerned about the conservatorship.  Why would
8  Nautilus care about what happened after the
9  settlement had been consummated?
10     A.  I mean, there -- it was made -- it was made
11 aware to us that one of the Satterfield boys was
12 disabled --
13     Q.  Okay.
14     A.  -- and, you know, we -- you know, that's --
15 we wanted to make sure that if we reach a settlement
16 that he's protected.
17     Q.  Did Nautilus owe any duties to the
18 Satterfield family, Satterfield beneficiaries of
19 Ms. Gloria Satterfield's estate?
20     A.  I mean, we're trying to settle -- but we're
21 trying to settle the case and compensate.  I mean,
22 we're trying to -- I don't -- I'm not sure if -- how
23 to answer that as far as whether Nautilus had a duty.
24 But, I mean, that was a concern.  There's a disabled
25 adult, and we want to make sure he's protected.

Page 199

1      Q.  Okay.  And one other thing that I was just
2  trying to understand.  You were describing the events
3  and where everyone was at the mediation.
4      A.  Yeah.
5      Q.  And you said at one point in your testimony
6  that Cory was in one room and Mr. -- the person you
7  thought was Mr. Westendorf was in another.
8      A.  Yeah.
9      Q.  Why would they have been in separate rooms?
10     A.  I don't know.
11     Q.  How did you know they were in separate
12 rooms?
13     A.  Well, they could have been together.  I just
14 know that I only met the guy I thought was Westendorf
15 once, and I went into Cory's room several times and
16 talked, and he was by himself.
17     Q.  So it could have been as Mr. Westendorf
18 testified, that he participated by telephone?
19     A.  Yeah.  I mean, I -- I mean, I -- but I
20 was -- someone was represented to us as the banker,
21 so --
22     Q.  Okay.
23     A.  -- I don't know who that was.  I mean, I
24 assumed it was Westendorf.
25     Q.  Or he could have appeared and then gone back

Page 200

1  to wherever and --
2      A.  Right.  I mean, we were -- we weren't -- we
3  were kind of sequestered in our little room.  With
4  the exception of me going out and talking to Alex or
5  maybe going in and talking to Cory, I wasn't privy --
6      Q.  Okay.
7      A.  -- as to what was going on in the rest of
8  the office.
9          MR. PENDARVIS:  Got no further
10     questions.  Thank you.
11         THE WITNESS:  Thank you.
12             - - -
13         REEXAMINATION
14             - - -
15 BY MS. ALLEN:
16     Q.  I got -- I have just one or two.  Sorry.
17 I'm sorry.
18         You mentioned earlier there were some emails
19 where you were discussing with Amy Miller about the
20 boat crash, which I guess happened prior to the
21 mediation.
22     A.  Right.
23     Q.  Right?  Not -- not too far in time.
24         Did Alex tell you who his lawyers were as it
25 relates to the boat crash --

Page 201

1      A.  No.
2      Q.  -- case?
3      A.  No.  It -- no.  We -- we talked about that
4  in the context of it was a bad thing -- it was a
5  stressful thing that happened, and he was -- he was
6  already concerned about insurance.
7      Q.  Right.  Did you understand that -- that the
8  Beach family or some victim in the boat crash case
9  had made -- if that -- if they had made any claims
10 against Alex or his family related to that at the
11 time of this settlement?
12     A.  Not at the time of this.
13     Q.  Okay.  And so did -- so did you talk to any
14 other lawyers like at PMPED, for example, that --
15 regarding the boat crash case and the timing of it as
16 it relates to this Satterfield settlement?
17     A.  No.
18     Q.  Okay.  And Alex didn't tell you who was
19 representing him as it relates to any claims.
20     A.  No.  It's -- not at all.
21     Q.  Did you understand at sometime further, you
22 know, in the future who his -- who his lawyers were
23 in the boat crash case?
24     A.  I mean, it was John Tiller, I believe.  But
25 that's only just following the news.



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    Pages 202..203
John Grantland, 03/12/2024

Page 202

1    Q.  Okay.  Alex never communicated --
2    A.  No.  Huh-uh.
3    Q.  -- anything like that --
4    A.  Huh-uh.  No.
5    Q.  -- to you.
6        And Cory didn't communicate with you about
7  that either.
8    A.  No.
9    Q.  Did Renee Dillon communicate with Alex or
10  anybody at his law firm?
11    A.  Maybe relating to scheduling, but that would
12  have been --
13    Q.  Okay.
14    A.  -- the extent.
15    Q.  And would any communications that she had
16  with Alex or anybody at PMPED have been included in
17  the subpoena responses --
18    A.  Yes.
19    Q.  -- that you talked about earlier?
20    A.  Right.
21        MS. ALLEN:  That's all I have.  Thank
22  you.
23        MR. LONG:  I don't have anything.  We're
24  good.
25  (Witness excused.  Deposition concluded at 2:28 p.m.)

Page 203

1            CERTIFICATE OF REPORTER
2        I, Deidre Osborne, Registered Professional
   Reporter and Notary Public for the State of South
3  Carolina at Large, do hereby certify:
       That the foregoing deposition was taken
4  before me on the date and at the time and location
   stated on page 1 of this transcript; that the
5  deponent was duly sworn to testify to the truth, the
   whole truth and nothing but the truth; that the
6  testimony of the deponent and all objections made at
   the time of the examination were recorded
7  stenographically by me and were thereafter
   transcribed; that the foregoing deposition as typed
8  is a true, accurate and complete record of the
   testimony of the deponent and of all objections made
9  at the time of the examination to the best of my
   ability.
10       I further certify that I am neither related
   to nor counsel for any party to the cause pending or
11  interested in the events thereof.  Witness my hand, I
   have hereunto affixed my official seal this 20th day
12  of March, 2024, at Lexington County, South Carolina.
13
14
15       _____
16
         Deidre Osborne, RPR
17       Registered Professional Reporter
         Notary Public
18       State of South Carolina at Large
         My Commission Expires:
19       June 13, 2029
20
21
22
23
24
25



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                 204
John Grantland, 03/12/2024              Index: ..Grantland, Esq., Joh

---

### Exhibits

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 01
  5:3 23:19,20 26:2,3
  160:15

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 02
  5:4 24:25 25:7 26:1

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 03
  5:5 26:16,21

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 04
  5:6 27:23 28:2,3 32:3

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 05
  5:7 31:18,23 32:13

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 06
  5:8 38:4,9,10,14

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 07
  5:9 40:25 41:5

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 08
  5:10 42:4 110:4,5,8,10

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 09
  5:11 43:22 44:3,10 47:17

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 10
  5:12 50:20,25 51:17

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 11
  5:13 54:10,15

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 12
  5:14 56:1,7,17,22 58:9

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 13
  5:15 60:13,21 61:3,15

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 14
  5:16 62:14,23 63:2

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 15

5:17 64:5,10

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 16
  5:18 65:14,19

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 17
  5:19 68:3

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 18
  5:20 70:7,12 73:3,16
  169:3

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 19
  5:21 76:15,16,20

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 20
  5:22 78:3,11 80:2

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 21
  5:23 87:3,8

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 22
  6:3 89:11,16 90:24



Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 23
  6:4 91:12,16 92:21 182:2

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 24
  6:5 93:3,8

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 25
  6:6 94:6,12

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 26
  6:7 95:9 96:1

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 27
  6:8 95:13 96:2 97:21
  173:18

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 28
  6:9 95:15,16,22 97:22

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 29
  6:10 99:11,18 174:20
  175:3

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 30
  6:11 100:20,25 189:11,
  15 196:12 197:25

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 31
  6:12 102:8,13

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 32
  6:13 104:2,7 177:15,16

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 33
  6:14 106:3,8,9,23 182:19
  183:4

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 34
  6:15 109:13

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 35
  6:16 109:17

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 36
  6:18 112:24 113:4
  183:20 184:4

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 37
  6:19 118:8,13

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 38
  6:20 122:4,9,10 123:25
  124:1

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 39
  6:21 123:13,18,22 124:4,
  5

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 40
  6:22 124:18,21,22

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 41
  6:23 126:12,17

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 42
  7:3 155:22 156:3

Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
 Exhibit 43
  7:4 164:14,17,19 165:23



**Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 44**
  7:5 172:11,13

**Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 45**
  7:6 175:1 179:15,19
  183:6

**Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 46**
  7:7 191:2

**Grantland, Esq., John M.
03-12-24 (
Nautilus Insurance Co.)
Exhibit 47**
  7:8 194:5

---

**$**

**$3,800,000**
  101:2,23

**$3.8**
  97:3 138:17 190:2

**$4,305,000**
  175:21

**$5**
  80:18

**$500,000**
  16:19 30:20

**$700,000**
  30:9

---

**0**

---

**00045**
  125:3

**000529**
  64:12

**000655**
  174:4

**000700**
  179:20

**000764**
  172:7

**00152**
  192:2

**002**
  41:6 42:11 68:10

---

**1**

---

**1**
  23:20 26:2,3,10 38:14
  41:25 44:9 47:17 51:17
  58:9,10 61:3,15 73:3
  80:2 92:16 94:13 104:13
  106:15 117:16 160:15
  192:11

**1/7/2019**
  40:25

**1/9/2019**
  42:4

**10**
  50:20,25 51:17,18
  126:17 179:23

**10/5/2020**
  194:4

---

**100**
  31:13

**10th**
  47:25

**11**
  24:2 54:10,15 68:9

**11/12/2018**
  26:16 27:23

**11/14/2018**
  164:19

**11/27/2018**
  38:4

**11/6/2018**
  31:17

**11:02**
  59:21

**11:18**
  59:21

**12**
  26:23 28:5 31:5 56:1,7,
  17,22 58:9

**12:23**
  116:2

**12:29**
  116:2

**13**
  60:13,21 61:1,3,15
  118:15 122:23 125:9

**13th**
  122:15 123:5,24 130:2
  184:8

**14**
  62:14,23 63:2 70:19
  165:24

**14th**



113:19

**15**
64:5,10

**16**
65:14,19

**17**
68:3 99:19

**17th**
175:10

**18**
14:12 70:7,12 73:3,16
78:18 80:4 169:3

**19**
76:16,20

**19th**
140:4 156:10

**1:21**
164:10

**1:29**
164:10

**1:30**
165:17

**1:32**
165:17

---
**2**
---

**2**
16:5 24:25 25:7 26:1
29:8 47:22 56:22 73:15
81:22 106:22 156:3

**20**
78:3,11 80:2 160:1,4

**2018**
16:6,11 26:24 28:5 31:5
58:12,24 61:21 160:16

165:24

**2019**
24:2 48:4 51:18 55:8
56:23 59:9 61:1 64:19
65:21 66:4,11 68:9 70:19
78:18 86:24 87:17 88:13
99:19 102:19 118:15
119:8 122:24 125:9
129:19 130:3,21 135:3
156:9 171:25 172:18
175:10 178:2 179:23
184:10

**2019-05-13**
127:16

**2019-5-13**
127:12

**2020**
192:11,12 193:24

**2021**
110:23 111:8 158:15

**2022**
118:21 119:18 131:23

**20th**
157:4

**21**
76:10 87:3,8,17 126:21
127:1 128:4 129:15

**21st**
86:23 87:18,20 157:8

**22**
58:12,24 89:11,16 90:24
102:17 171:25

**2289**
110:6

**22nd**
87:19,23 88:1,2,10
151:24,25

**23**
56:23 91:12,16 92:21
181:14,16 182:2

**24**
66:11 93:3,8

**2454**
51:2

**25**
59:9 61:1 86:24 88:13
89:17 94:6,12 172:18

**2566**
102:14

**25th**
88:10,17

**26**
16:11 95:9 96:1

**27**
95:13 96:2 97:21 173:18
174:1

**28**
95:16,22 96:3 97:22

**288**
38:10

**29**
99:11,18 126:21 174:20,
21 175:3

**29th**
91:21 127:1 129:13

**2:00**
147:6

**2:02**
188:23

**2:14**
188:23

**2:28**

 is now 

202:25

**2nd**
18:13 39:8 61:19

---

**3**

---

**3**
26:16,21 56:18 80:9 81:3
84:25 130:3

**3.8**
85:1,14,22 86:16,25
91:1,2,3,6 97:9 147:17,
19 173:1

**3/11/2019**
68:3 76:15

**3/14/2019**
70:7

**3/18/2019**
78:3

**3/25/19**
89:6

**3/25/2019**
87:3 89:11 91:12 172:13

**3/6/2019**
62:14 64:5

**3/8/2019**
65:14

**30**
100:20,25 189:11,15
192:11 193:24 196:12
197:25

**31**
102:8,13

**32**
104:2,7 177:15,16

**329**
44:4

**33**
106:3,9,23 182:17,18,19
183:4,10

**34**
109:13,21

**35**
109:17,21

**36**
112:24 113:4 183:20,25
184:1,4

**37**
117:17 118:8,13

**38**
122:4,10 124:1 125:9
181:22 183:18,19

**39**
123:13,18,22 124:5
125:10

**3:00**
147:7

**3:15**
61:2

**3:30**
48:4

**3rd**
119:8

---

**4**

---

**4**
27:23 28:3 32:3 80:10
81:3 125:4

**4,305,000**
97:7

**4.5**
85:2 150:10

**4/2/2019**
94:6

**4/22/2019**
100:20

**40**
124:18,22 174:19

**41**
126:12,17

**419**
54:17

**42**
155:22 156:3

**43**
164:14,15,17,19 165:23

**44**
172:11,13

**45**
175:1 179:15,19 183:6,
10

**46**
190:25 191:2

**47**
194:5,11,12

**473**
60:22

**48**
125:4

**481**
56:8

---

**5**

---

**5**
16:23 31:18,23 32:13




34:10,11 80:12,21 122:9,
11

**5/10/2019**
106:3 179:15

**5/13**
126:22

**5/13/2019**
109:13,16 124:17

**5/6/2019**
104:2

**535**
62:24

**579**
78:13

**5:00**
89:25

**5:43**
90:16

---

**6**

**6**
34:10,11 37:1 38:4,9,10,
14 64:19 123:19 178:2

**6/13/2019**
118:8

**609**
91:18 93:9

**621**
94:13

**662**
99:23

**679**
104:9

**682**
106:10

**684**
113:6

**6:27**
89:17

**6:32**
47:25

---

**7**

**7**
34:12 35:19 40:25 41:5,9
109:6

**7/11/2018**
23:19

**700,000**
80:13

**772**
25:23

**785**
123:3

---

**8**

**8**
36:10 42:4 65:20 66:4
110:4,5,8,10 124:22

**8/29/2021**
126:12

**8:13**
80:4

---

**9**

**9**
43:22 44:3,10 47:17 48:4

**9:10**
51:18

**9:24**
64:19

---

**A**

**A**
24:23 82:12 116:22
181:20

**a.m.**
47:25 51:18 89:17

**able**
22:15 26:9 28:15 56:16
65:8 69:21 124:9 158:8
180:25

**about**
9:7,10,14,17 10:13,16,23
11:23 12:1,7 13:18 17:24
18:6 20:10 21:3,6,9 22:3,
6,9 27:12 29:10,20,25
30:12,18 31:4 32:14,16
33:19 34:19,21 35:11
36:9,10,15,17,25 37:2,6,
18,20 38:1 40:3,9 41:13
43:12 44:1,6,19,23 46:8
47:10,17 48:23 49:10,19
51:24 52:1,7,24 53:3,8,
12 56:24 57:3 58:23 60:5
61:14 62:8 65:24 66:5,9,
18,19 67:3,12,14,16,19
69:5 70:5,25 71:6 72:3,4,
5 73:4,13,16 74:23 76:8
77:5 78:9,19,22 81:12
82:2,7 83:13,21 84:4,11
86:15,20 91:24 92:4,7,24
93:14 98:4 99:15 101:3
105:11,13,21 112:8
113:20,22 115:9 119:15,
16 120:7,21 121:6,9,11
126:23 127:22 129:23,25
131:3,8,19,22 134:19,23


AdvancedONE LEGAL is now LEXITAS

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          210
John Grantland, 03/12/2024          Index: above..afternoon

135:1,4 136:23 137:2
138:8,24 139:5,8,16
140:2,6,7,25 142:10
147:14,25 150:8 151:11,
14 153:4,23 154:2,16
155:1 156:15,17,18,25
157:5,22 158:4,7 159:1,
17,20 161:22 162:10,20
163:13 166:3 167:5
172:20 175:17 177:4
178:4 179:21 181:11
183:8 184:17 188:15
189:11 198:1,6,7,8
200:19 201:3,6 202:6,19

**above**
156:14 193:9

**absolutely**
27:5 29:18 52:17,19,25
64:25 69:20 132:9,16
134:2 141:8 150:3
175:21

**accept**
85:22 86:25 138:19
150:17 172:25

**accepting**
82:25

**access**
188:6

**according**
171:16

**account**
103:4 152:2

**accurately**
68:14

**across**
183:17

**act**

92:3,8

**acting**
156:21

**action**
60:5 176:15,19 177:6,11
189:6 194:14

**actions**
11:17

**active**
193:12 194:1

**actual**
10:8 72:14 81:20 82:19

**actually**
19:12 34:11 104:23
182:25 192:25

**adamant**
35:17

**added**
102:21

**addition**
18:5 97:2

**additional**
130:4 181:10 188:1

**address**
12:17,19 65:9

**addressed**
11:20

**adjuster**
23:5 34:7 39:1 125:22
140:22 141:1 149:20
157:14 186:16

**adjusters**
61:17

**administered**
113:23

**administration**
113:22

**admissible**
10:19,24 82:4

**admitted**
11:9

**admitting**
30:10

**admonishes**
86:6 163:7

**ADR**
10:10 11:16

**adult**
198:25

**advance**
118:20

**advocating**
82:23

**affect**
52:16 67:19 72:17

**affected**
54:23 105:19

**affecting**
52:24

**after**
12:24 41:7 48:11 50:9
53:16 59:8 67:11,14
68:17 82:17 86:10,18
91:22 92:18 93:12
137:15 138:11 141:12
153:24 158:12,15 163:20
172:20 173:9 195:3
198:8

**afternoon**
48:5 189:3



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                                  211
John Grantland, 03/12/2024                          Index: afterward..also

**afterward**
19:4

**afterwards**
21:14

**again**
46:17 62:18 68:25 75:25
77:3 95:3 107:11 108:17
113:20,25 119:17 126:18
131:22 143:9,23 153:17
157:8 183:17 193:23

**against**
14:5 38:2 176:14 201:10

**ago**
104:15 138:23 160:5

**agree**
10:5,17,21 11:3,12 60:7
96:17 120:1 127:21
130:21 131:5 138:19
147:18 155:13 162:22
169:7,15,21 170:1,6,16
171:13

**agreed**
12:11,14,15,16 13:24
43:9 98:8 145:8 150:15
153:1

**agreement**
9:20 88:21 89:3 96:17
132:2,21 137:3 152:15
153:12 154:8

**agreement's**
91:22

**ahead**
76:12 93:1 109:3 167:21
174:10 191:21

**Alex**
14:6,9 16:7,16 17:4
20:23 21:19 23:2 30:10

33:12 34:13 35:14,23
36:13,20,21 44:11,22
45:19,20 46:1,7,25 49:1,
7,20 50:11,15 52:7,9
53:15 57:4,5,6,7,12,13,
16,20,22,24 58:7,12,16,
24 59:10 66:17,21 67:11
71:2,9,12,14 72:9,11,13
75:12,15 78:23 80:24
98:11 105:11 108:24
121:10 128:6 134:18
136:15 137:9 140:14,15
141:16 144:21 146:3,13,
17,21 147:22,24 148:10,
25 149:1,24 152:10,24
153:1,8 154:4 157:5,17,
24 158:3,17 162:19,23
163:1,13,17,22 166:23
167:17,23 168:2,8,14
178:16 194:21 200:4,24
201:10,18 202:1,9,16

**Alex's**
49:2,4,17 52:3 67:22
104:24 148:4,5 166:16

**all**
11:20 12:6 15:1,17 17:13
18:20,25 31:13,14 32:6
33:22 36:19 37:9 39:18
40:3 41:4,15,17 42:18
43:7,9 44:20 46:22 48:20
50:24 54:4 55:13 59:7
62:8 63:23 64:24 65:2
66:20 67:21 69:24 75:9
77:4 85:25 86:1,7 90:20
95:7 96:15 99:5 103:23
104:6 107:12 113:12
116:7,12 118:2,23
121:22 123:1 124:23
126:17 128:15 130:15
131:24 133:12 135:9,20,
21 136:14 138:7 143:10,

25 144:17 148:23 156:6,
25 163:8 164:5,16
165:19,22 167:5 169:11
173:20 174:16 175:6
178:22 179:19 183:11,
22,23 184:3,16 187:21
196:3 201:20 202:21

**allegedly**
73:11

**Allen**
11:21,25 12:16 49:12,15
60:23 82:8 83:21 103:23
109:1,3,7,10 110:1,7,11,
14,18 116:16,19,25
117:3,6,9,12,14,21
118:1,3,11 122:7,12
123:16 124:20 126:15
132:18 133:3 155:25
160:14 163:10 164:5,7
200:15 202:21

**Allendale**
30:2 49:25 159:18,19,24

**allocation**
115:10

**almost**
95:5 156:2 181:17

**alone**
141:24

**along**
41:24 90:25 138:9 166:4

**already**
46:3,22 65:2 82:15
122:14,15 128:24 131:15
140:24 174:6,13 201:6

**also**
9:25 12:2 18:14 72:20
73:11,16 134:14 139:2
156:14 171:20



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH         212
John Grantland, 03/12/2024         Index: altercation..and

altercation
148:19

alternative
79:10

although
56:15

always
74:8 121:13 139:18
140:9

amlodipine
170:8

among
131:12

amongst
146:1

amount
81:7

Amy
22:24 23:3,5,10 28:19
51:8 75:12,14,15 92:14
140:8 146:6,8,18 147:22,
23 161:21 162:2 183:12,
16 184:11 185:25 200:19

an
9:13,20 11:15 13:14
14:22 16:17 17:4 19:8
25:14 26:22 30:20 34:6
37:17 39:18 40:15 42:9,
10 54:15 56:10,18 58:11
59:24 63:14 64:10,14
65:8 74:9,15 76:13,21
77:16 78:8,10 79:10
86:15 88:14 92:2,13
99:17,18,25 100:16
104:11 106:12,15,22
109:23 112:2 115:14
118:12,14 119:7,19,25
121:14,20,21 122:16

123:11 124:5 125:11
126:20 128:15,18 150:14
152:15 160:24 161:3
163:17 171:21 172:17
174:16 175:7,9 176:22
177:18 178:1 179:22
184:7 185:18,19,21
186:10,16 188:4,13
190:4,9,12 195:5

analysis
162:15

analyzed
156:11

and
10:16,21 11:4,5,14,15,23
12:2,4,25 13:9,10,14
14:5,7,8,11,14,17,18,23,
24 15:10,16,19,22,23
16:2,7,10,11,14,16,21,23
17:13,14 18:1,4,5,6,14,
20 19:1,3,5,7,12,13,22,
25 20:7 21:3,5,7,12,22,
23,24 22:11,14,25 23:1,
3,25 24:6 26:4,7,8,21
27:6,14,15 28:7,8,11,14,
18,21,25 29:4,7,11,16,21
30:3,6,8,9,22 31:3,23
32:13 33:1,4,13,16 34:3,
5,6,10,11,12,13,24 35:1,
3,5,6,17 36:2,10,11,13,
14,21 38:11,17,19,20,24
39:3,21,24,25 40:2,4,9,
10,11,12,14,15,16,21
41:7,8,18,24 42:16,22
43:1,4,9 44:6,11,13,21,
22,24 45:2,5,9,11,14,23
46:7,8,20,22,23 47:1,4,
13,14,23,24 48:2,4,11
49:2,20,21,23 50:1,3,7,8,
10,11 51:2,12,16,25

52:12,13,18,22,24 53:1,
5,7,9 54:4,21 55:1,2,3,4,
8 56:21 57:5,7,11,13,22
58:1,2,16,17,21 59:7,12
60:4,7,18 61:2,6,14,16,
18 62:5,18 63:1,10,12,
13,14,19,20,24 64:14
65:20,23 67:1,9 68:14,
17,20,25 69:2,3,9,11,12,
16,18,22 70:18 71:1,2,9
72:9,11,17,25 73:1,3,22,
25 74:5,9,23 75:10,12,
14,15,16 76:1,2,3,6,7,12
77:1,7,10,16,25 78:12,15
79:2,4,15,18,21 80:3,8,
15,17,22 81:4,18,22
82:17,21,22,25 83:8,11,
13,16,20 84:8,23,24,25
85:1,4,5,7,16,18,20,23
86:7,13,15,18,23,24
88:3,13,15,16,19,20
89:2,8,16 91:5,19 92:2,3,
6,7,9,14,15,17 93:8,9,12,
13 94:15,18,24 95:3,24,
25 96:3,9,10,13,14,17,21
97:9,20,22 98:1,11,13,
16,24 99:6,16,19,22,24
100:4,14,15,25 101:2,7,
8,15,17 102:13,20 103:1,
14 104:11,16,19,22
105:5,6,11,13 106:7,9,
12,19,25 107:3,8,10,13,
14,15,17,20,22 108:1,2,
3,6,8,9,18,19,24 109:21,
23 110:5,14 111:6,7,17,
20,21,23 112:2,3,4,5,21
113:3,12,19 114:2,4,7,8,
10,11,14,15,16,23,24,25
116:8,17,19 117:8,12,14,
18 118:3,4,15,24 119:2,
3,9,12,18 120:6,10
121:4,5,8,14,17,22



122:8,14,18,19 123:4,9,
10,17,20 124:4,7,25
125:3,7,10,11,12,15,19,
24 126:4,20,22 127:2,8,
10,16,25 128:6,9,12,15,
20 129:1,4,8,17,18
130:1,7,13,14,20,22,25
131:5,11,24 132:1,2,6,
11,12,22,23 133:9,16,21
134:5,8,9,12 135:3,8,14,
16,17,18,20,21 136:2,9,
13,17,23 137:2,9,12,15,
22 138:1,4,6,7,16,22,24
139:9,11,12,14,22,23,24
140:11,13,14,15,18,19,
21,24,25 141:3,5,12,13,
14,23 142:4,5,11,16,20
143:1,9,10,13,21,23,24,
25 144:2,3,6,7,16,22,24,
25 145:1,9,11,16,17,19
146:6,10,11,13,17,21,24
147:1,8,19,22,23 148:4,
10,13,16,17,18,19,25
149:1,3,14,17,23 150:5,
7,10,12,13,14,16,19
151:21,22 152:4,10,13,
18,21,25 153:8,17,19
154:1,4,10,20,24 155:8
156:11,14,22,23 157:3,5,
8,13,15 158:7,8,9,11
159:1,8,13,19,20,22
160:24 161:6,25 162:2,
15,16,19,23,24 163:8,20
164:1 165:3 166:6,19,20,
23,24 167:10,12,13,14,
16,18,23 168:1,8,14,16,
19,25 169:4,11,21,23
170:1,6,16,21,25 171:3,
6,7,13,17,19,22,24
172:3,23,24 173:5,13,17
174:3,23 175:1,12,13,16
176:14,17,23 177:2,3,9

178:4,8,10,13,16,21
179:1,20,25 180:4,14,16
181:2,8,10,22 183:10,15
184:16,22,24 185:3,5,6,
7,11,12 186:1,3,10,12,15
187:1,8 188:4,13,20
190:3,16 191:18,21
192:7,11,14,21 193:23
194:9,21 195:19,20
196:23,24 197:5,12,17
198:2,14,21,25 199:1,3,
5,6,15,16,25 200:1,4,5
201:5,13,15,18 202:6,15

**and-answer**
13:24

**another**
26:20 32:3 56:6 62:22
64:9 67:24 91:17 94:11
104:8 106:8 113:5 127:3,
4,16 138:23 145:20
171:25 199:7

**answer**
10:2,15 24:8 191:21
198:23

**answers**
11:5

**anxious**
44:22 180:4,10

**any**
9:4 10:19,22 12:13
13:15,18 20:12,15,23
21:25 22:3 29:19 30:17
32:6,12,17 33:1,8,21
34:8,16 35:8,11,24 37:13
47:16 48:22 49:5,19
55:12 58:3 61:23,24 62:2
66:17,20,21 67:15 69:4
71:4,5 72:4,21,23 73:4,
12 83:6,23 91:23 93:23,

24 96:18 97:1 105:10,21,
22 115:7,10 116:9
119:15 121:5,8 129:22,
23 130:3 131:7,16 134:5,
18,22,25 137:3 146:1
147:9,25 151:5,18
153:19 154:13,14
157:10,22 158:16,17
161:21 162:1 168:2
176:8 179:1 180:9 186:6
195:3 198:17 201:9,13,
19 202:15

**anybody**
66:16 103:17 117:19
121:10 143:21 162:2
163:12 202:10,16

**anymore**
186:19

**anyone**
20:11 21:19 33:1 108:11
116:10 130:16 187:13

**anything**
12:7 13:21 20:8 32:12
33:19 34:8 43:5 46:13,19
47:20 55:19 58:23 60:1
65:1 81:11 93:24 94:22
99:2 103:18,22 113:22
120:9 126:5 131:19
135:4 139:4 141:19
147:25 151:11 152:5
158:4 162:6 168:4 202:3,
23

**anyway**
79:25 140:19,20

**anywhere**
125:25

**apologies**
41:11 61:12 88:3,10
100:14

 is now 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          214
John Grantland, 03/12/2024          Index: apologize..asked

**apologize**
9:19 17:3 95:20 192:2

**apparent**
57:21

**apparently**
78:25

**appear**
34:12 63:2 126:21

**appeared**
72:22 199:25

**appearing**
192:25

**appears**
17:22 25:8 26:22 51:2
61:3 70:12 76:21 102:25
103:1 123:21,25 124:24
192:5 193:15 194:17

**applies**
12:5

**apply**
60:4

**appointed**
20:11

**appointment**
93:18

**appreciate**
168:22 189:7

**approval**
95:12 96:3 97:22 100:8
106:17 107:2,18 136:8
151:11 175:13,18 178:5,
9,23 180:2,15

**approvals**
155:12

**approve**
151:18

**approved**
133:17 134:9 154:17,21,
23 185:11

**approving**
95:15 96:4 97:23 98:24
101:7 109:16,23 112:8
119:10 124:17,25 127:14
134:20 184:12 187:3
196:24

**April**
99:19 102:17 151:24
175:10

**are**
9:14 10:9 11:5 12:21
13:10 15:23 22:15 27:6
44:6 51:11 54:7,21 63:1
65:9 78:15 89:18,24
95:25 96:6 98:22 108:19
113:21 114:7 121:18
124:15 133:21 136:7
138:1 140:3 145:1 156:9
160:4 162:11 164:14
181:17 183:9,10 184:11,
19 185:3 186:12,13
188:9,10 190:22 191:24
193:7 195:12 197:4

**aren't**
22:14

**argue**
73:25 74:3,21,22

**argument**
11:6

**Arizona**
90:9,18 145:6

**around**
51:16,20,25 52:4 62:2
66:9 79:18 110:2 118:5

**arraigned**
104:24

**arrest**
77:15

**arrived**
36:13 37:11

**as**
9:5,21 12:25 17:10 19:5
20:11 24:17 25:7 26:5,8,
13,21 27:10 28:2 31:23
38:9,10 41:5 42:10,25
43:16 44:3 45:18 54:15
56:7 60:4,18,21 64:10
65:19 68:15,21 70:12
71:5 72:22 73:15 74:19,
21 76:13,20 78:11 81:17
87:8 89:16 91:16,24
92:3,8 93:7 94:15,16
95:22 102:13 103:8
105:19 106:8 109:5,7,8,
21 114:9 117:18 118:4,
13 122:9 123:18,19,25
124:21 126:16 131:12
136:8 142:21 143:7,15,
17 144:18 155:12 156:2
161:12,16 168:3 170:9
175:1,19 179:19 181:6
182:2 189:11 197:25
198:23 199:17,20 200:7,
24 201:15,19

**ask**
10:7 25:17 33:6 44:1
58:4 61:14 63:11 65:7
78:7 123:1,17 139:16,24
152:6 166:2 167:16
169:4,7 175:8 177:13
179:21 181:11 187:8
195:5

**asked**
11:5 14:17 36:13 42:22

 is now 

46:15 92:6,13 118:23,25
127:5 128:12 150:13
167:5,10 183:8 184:16
194:25

**asking**
26:4 46:19 48:8 100:1
151:11

**asks**
119:12 160:11

**aspects**
42:25

**assertions**
84:4

**assigned**
14:13 59:5

**assist**
166:5,13,19

**assistant**
112:22 119:6

**assistants**
130:13

**assisting**
166:21

**associated**
187:13

**assume**
17:17 31:11,13 81:19
103:9 124:11,13,15
136:9 159:4 193:13
195:11

**assumed**
78:23,24 79:1,2 81:3,4
111:19 112:10 114:16,22
121:13 135:22 136:9
141:25 185:21 187:11
199:24

**assuming**
44:11,14 53:9 63:10
184:22

**assumption**
33:12 156:21 184:24

**astronomical**
30:7

**at**
10:19 12:4 13:9,15 15:17
16:14 20:15 21:1 23:8
26:1 28:14 29:8 31:5
33:22 34:1,9 35:15 37:1,
15 38:14,21 40:7 44:9
47:24 48:4,25 49:8 50:11
51:17 53:7 57:2,7,23,25
59:11 61:1 62:7 63:22
66:6 71:19 73:9,11 74:2,
21 77:2,4,17 79:20,25
80:4,13 86:5,16,23
88:20,25 89:17,25 91:1
97:15,21 98:6 99:24
103:14 111:7 116:10
118:14 119:3 122:9
123:3 125:19 126:18
128:10,23 130:10 132:22
135:24 137:15,23 138:11
139:19 141:23 142:7,13,
17 147:22 148:5,15
149:20 150:10,14 151:3
152:13 153:18,22,24
154:1 156:5 157:6 162:2,
21 163:12 164:14
166:11,12,16 174:23
175:8,9 178:17 183:19
186:7,21 187:11 188:4
189:19 191:15,17
192:10,20 194:23 195:3
196:13,25 197:16,21
199:3,5 201:10,12,14,20,
21 202:10,16,25

**at-fault**
49:24

**attached**
48:7 55:5 125:9 184:12

**attaching**
126:21

**attachment**
89:2 123:11 124:6
128:20

**attachments**
127:12

**attacks**
14:21,22 15:1 161:9

**attend**
107:24 115:7,10

**attended**
75:9 108:11 135:4
142:23

**attending**
157:18 197:9

**attention**
144:19

**attorney**
27:16 44:13 48:5 73:2
156:11,15 166:16 168:25
175:18,20,25

**attorney's**
96:18,19,22 97:2

**attorneys**
94:18 100:2

**Austen**
43:10,14 70:14,18,20
71:5,14 72:3 73:13,17
84:24 85:11 88:16 143:5
153:4,18

 is now 

**Austen's**
145:14 152:20

**authenticate**
88:14

**authority**
10:2 86:16,21 141:4
150:13 194:25

**authorizations**
46:23 158:13

**authorize**
190:11

**available**
25:10

**awake**
36:5

**aware**
12:3 19:2,25 29:17 52:3
57:13 62:2 72:21 81:7
119:24 133:21 134:5
158:14 159:12 176:17
194:22 198:11

**away**
63:25 149:4

---

**B**

**back**
13:19 15:5 17:8 25:3
26:7 28:21 36:25 50:17
55:2 56:18 60:17 70:1
85:19 88:13 92:14 93:12
105:8 122:18 129:4
132:1 134:1 147:24
149:23,24 165:20 172:3
185:19 188:20 196:11,12
199:25

**back-and-forths**
84:23

**backed**
154:9,11

**Background**
73:6

**backwards**
23:23

**bad**
52:10 80:23 201:4

**bank**
165:5 187:14

**banker**
75:16 142:21 143:7,17
144:12,16 147:14 199:20

**banker's**
144:3

**based**
63:5 118:16 120:6,12
123:11 126:19 129:17
130:19 153:9 169:5
185:1,2 188:2

**basically**
21:16 22:22 23:14 27:7
42:16 45:7 47:6 100:6
103:14 148:16 158:10
161:3

**basis**
83:14

**Bates**
25:18 31:24 51:1 54:16
64:11 68:9 76:21 78:12
87:8,9 91:18 102:14
104:8 106:9 109:8 113:6
118:17 123:2 172:5
174:3 179:20 189:9
191:13

**be**
10:14,23,24,25 11:20

12:8,9 13:20 20:20 22:15
23:12 25:8,14 26:9,22
38:23 51:2 52:11 65:8
67:22 70:12 76:21 80:18,
21 81:2,20 86:14 88:10
90:7,9,12 92:17,22 93:16
94:16 95:21 98:5,9
102:25 104:16,19 107:7,
14 111:23 112:11 114:1,
2,16,23 116:13 117:1
121:11,13,19 122:13
123:21,23,25 124:24
126:22 130:5 133:1
136:5 137:22,23 139:10,
11,15,19 140:13,14,22
141:4,7,15,21,22,24,25
142:7,11 149:21 151:25
152:16 153:23 154:2
155:2,5 156:2,22 157:2
158:8 160:7 161:9
166:16 168:14 173:18
178:9 184:17 186:2,22
190:4,24 192:6 193:15
194:9,11,18 195:12

**Beach**
201:8

**Bear**
151:2

**bears**
31:23 51:1

**Beaufort**
108:1,6,18 135:14

**became**
85:11

**because**
26:5 31:13 46:3,17 49:3
52:22 66:25 71:2 72:16
83:10 90:8 92:4 120:12
121:24 131:15 132:20




NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                217
John Grantland, 03/12/2024                        Index: bed..bit

135:13 161:8 179:5

**bed**
47:15 67:23 180:5,10

**been**
9:6,22 12:24 15:16 17:15
19:6,21 22:17,19 23:24
36:4,23 37:13,21,24
38:15 39:6,10 50:25
51:7,8,13 61:6 63:13
71:19,25 73:10,17 74:10,
13 77:21 86:24 88:20,22
90:3 91:22,23 101:8
103:1 108:12 110:10
113:9 115:6,10 120:11
122:15 124:9 126:22
127:22 129:12 133:12
135:22 140:24 147:21
155:3 159:13,18 160:25
162:3 163:20 166:4
169:16 172:1 179:6
190:21 193:16 195:15
196:24 197:12,15,16,21,
22 198:9 199:9,13,17
202:12,16

**before**
12:19 15:7 22:19 25:13
27:18 28:15,25 30:6,24
32:4,7 37:17 39:7 42:18,
21,22 43:2 45:5 50:17
51:13 55:13 64:24 66:4,
12 73:18 74:13 76:8
78:9,17 87:25 88:9,22,24
95:19 101:13 103:11,12
105:5 129:7 132:7
139:14 150:24,25 154:25
157:4 161:23 162:7
168:13 169:9 176:23
183:1,4,23 188:18
191:22 195:16

**beforehand**
142:18

**begin**
82:16,19

**beginning**
103:15 148:2 183:13

**begins**
54:16

**behalf**
15:11 38:16 83:25 189:6

**behind**
105:24,25

**being**
11:7,24 14:5 28:22 51:25
62:2 69:21 72:16 82:3
107:19 108:9 112:13
122:9 136:24 140:15
142:20 143:21 147:9
163:13 167:17 194:23
198:7

**belief**
27:1

**believe**
19:18 31:5,21,25 68:8
75:12,16,21 77:18
120:23 125:8,12,19
131:24 138:22 152:9
160:15 162:12 163:15
167:12 189:10 201:24

**believed**
68:21 100:17

**belonged**
98:17

**below**
27:6 179:25

**beneath**
73:6

**beneficiaries**
20:12 198:18

**benefit**
29:16

**besides**
21:19

**best**
23:2 25:22 26:13 41:14
42:25 181:6 186:3

**better**
27:7 90:10 108:5

**between**
13:24 49:20 64:14 69:9
78:15 86:23 91:19 99:19
104:11 105:11 106:12
129:18 130:19 147:22
162:1,19 176:22 188:13
192:7

**big**
28:21 37:19 47:18 76:2
141:3

**big-picture**
96:15

**bigger**
147:10 148:21

**biggest**
52:14

**bill**
156:6

**billing**
155:22 156:4

**bills**
30:9 139:23 156:8

**bit**
15:7 23:23 28:21 64:2
161:23

 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH         218
John Grantland, 03/12/2024                      Index: bite..by

**bite**
14:16,18 24:2,12 160:16,
25 161:4,8 176:24

**bites**
14:21 15:1

**blind**
100:13

**blue**
124:25 125:16

**blue-inked**
124:12

**boat**
65:24 66:5,21 67:12,16,
19 105:4,11,21 200:20,
25 201:8,15,23

**bold**
24:11

**bolded**
36:12

**book**
181:15

**both**
22:11 35:14 44:16 46:3,7
54:25 74:23 98:1,10
152:9 172:24

**bottom**
38:14 41:25 58:10 73:22
79:7 80:3 94:13 99:24
104:13 106:15 123:3
156:5 178:1 184:5 186:7

**Bourbon**
39:4

**boys**
19:22 33:17 137:5,17
138:25 139:5 156:22
158:5 198:11

**break**
13:15 59:17,19 69:9
103:18,21 115:24 146:24
164:9

**breaking**
147:6

**Brett**
37:18 39:7

**brief**
187:25

**bringing**
156:16

**Brit**
75:1 91:3,4 97:11,12
166:17

**broke**
82:16 112:1 128:5

**broken**
69:11

**broker**
114:10,23

**Brooks-creech**
192:21

**brother**
141:14

**brought**
14:10 117:3,4

**business**
52:18 54:4

**but**
11:4,19,23 13:23 17:8,21
19:23 21:2 22:16 23:24
26:10 27:17 28:19 31:10,
11,12,13,22 32:16 34:7
36:4,6,22 38:13,20 39:2,
14 40:9 43:12 44:21

46:24 47:10 48:15 49:4,
5,7 50:7,8,9 51:24 52:7
55:15,16,24 57:21 58:4
59:6 63:22 65:8,25 66:9
67:2,20 69:2 70:22 71:22
72:19 74:9,19,20 75:25
76:3,13 77:8,22 78:1,10,
25 79:4 80:16,24 81:5,13
83:9 84:3,9,11,13,15,24
87:13 90:2,12,22 92:13
95:22 96:11,12,15 98:7
99:7 100:1,17 101:18,23
102:24 105:7,15,19
108:13 110:11 111:1,7,
24 112:3,6,20 114:14,18,
22 117:3,17,19 119:24
122:9,20 124:15 127:4
128:10,12 129:6,24
130:25 133:6,8,11,13
136:2,22 139:14 142:10,
17 143:6,18 144:4,18
148:13,22 150:13 153:2,
24 154:8 155:4 157:19
158:14 159:19 161:3,10
166:22 171:9,10 173:8
174:10 176:2,3 180:13,
24 183:13 184:17 186:22
188:1 189:21 192:25
197:3,6,9,14,15 198:20,
24 199:19 201:24 202:11

**by**
13:5 14:6,10,19 15:14
16:2,7 19:15,23 21:2,8
23:3,22 24:14 25:5 26:19
28:1,10,19,23 30:16
31:20 33:4 37:11,25
38:7,15,22 41:3,16 42:7
43:25 49:18,25 50:23
53:20 54:13 56:4 60:16
61:5,13 62:17 64:8 65:17
68:6 70:10 73:13 75:16


AdvancedONE LEGAL is now LEXITAS

76:18 77:4 78:6 80:23,24
82:14 83:23 86:9 87:6
88:12,13 89:14 90:23
91:15,21 93:6 94:9 95:18
99:14 100:23 102:11
104:5,23 105:20 106:6
109:19,24 110:19 111:2
113:2,17 116:6 118:1,11
119:18 122:7,12 123:16
124:12,20 125:11,14,16
126:15 132:18 133:3
134:3,9 136:21 140:25
142:23 143:6,22 144:2,3,
7 146:5 151:23 155:25
160:14 163:10 164:12
165:2,21,24 166:4
167:11 168:6 169:16,21
170:1,6,16,21 171:3,14,
19 172:16,24 175:5
177:7,17,25 178:20
179:18 180:18 181:1,9
183:2 184:2 186:23
189:2,23 190:2 191:5,16
192:4,19 194:7 195:13
196:10 197:23 199:16,18
200:15

## C

**cab**
147:3

**call**
37:3 44:16,19 45:17,19,
23 46:11 47:17 48:3,11
64:20 98:23 121:17
128:12 129:24 141:12
153:16 164:1,3 173:7
191:10,12

**called**
34:3 70:22 127:2,5,25

128:11,12

**calling**
135:23

**calls**
21:6 44:10 108:7 128:9

**came**
15:15 34:2 61:18 63:4
67:20 84:22 98:7 110:16
121:23 122:23 124:1,5
150:9 152:15 160:24
177:7

**can**
10:7,16,17 11:20 13:20
22:25 23:1,2 26:1 41:8
42:25 45:5 56:8 65:6
68:14 74:22 82:8 85:7,21
115:24 117:20 147:17
150:16 153:5 155:14
159:11,14 160:10 161:9
162:10,15 168:19 173:19
181:7 183:13 187:25
189:24 191:17 192:5
193:9,13 194:17

**can't**
28:20 31:12 43:5 46:18
65:6 67:20 96:11 101:14
121:1,3,19 180:12,23
191:11

**candidate**
63:15

**candidly**
61:6

**cannot**
10:16

**caption**
97:18,23 101:17 152:10,
11 153:17

**captioned**
73:23

**car**
108:7 135:24

**cardiac**
77:15,17 171:21

**care**
19:1 62:8 122:19 154:20
158:11 198:8

**careful**
12:1

**Carmen**
104:20

**Carolina**
30:3 100:7

**Carolina's**
24:12

**carrier**
15:12

**carriers**
14:25

**case**
9:5 12:9 14:13,20 25:9
27:4 29:21 30:1,6,12,23
42:23 44:22 57:9 66:24,
25 69:5 72:20,25 74:25
77:8,11 80:6,19,21 82:22
85:8 86:15 99:7 101:16
105:14,24 113:20 116:10
117:4 132:19 133:5,12
141:3 159:4,13 160:22,
25 162:8,11,16 165:5
166:15,18 167:25 168:4
173:6 175:25 177:9
180:13,25 186:24 188:12
192:16,24 193:2,17
197:22 198:21 201:2,8,

 is now 

15,23

**cases**
14:16,18,25 24:13 29:3
30:6 49:22 50:2 72:12
80:14 159:24

**cash**
114:8

**categories**
64:19

**causal**
37:23

**causation**
69:22

**cause**
35:3 40:1,16,17 56:15
69:6,7 77:21,22 171:22

**caused**
24:14 35:5 52:4 63:25
72:7

**certainly**
21:3 55:17 59:13 66:9
77:8 82:10 96:12 160:9
176:22

**certainty**
69:15

**Chad**
19:15 94:16 103:8 118:3
142:13 143:19 145:20
151:5,6,11,14,17 152:4
187:9,11

**Chad's**
152:7

**chain**
38:4 43:22 54:10 56:1
60:13 78:18 93:3 99:11
106:8 112:24 122:4
123:13 174:16 179:5

186:7 191:2

**chambers**
108:19

**chance**
33:8

**changed**
101:17 178:22 185:12

**Charleston**
145:12,15

**check**
94:14 101:2,21,23 102:8,
16,21 132:1,8,11,22
151:23 152:1,5 190:2

**checking**
174:18

**chest**
148:6

**CHF_00015**
123:20

**CHF_00146**
191:14 192:10

**CHF_0146**
192:2

**CHF_146**
191:25

**child**
92:5

**children**
52:20

**Christy**
103:21 108:21 118:2

**chronology**
15:24

**circuit**
14:16 30:2 104:17

136:22

**circulate**
96:10

**circulated**
96:12

**claim**
13:22 14:4,10 15:13 17:5
20:24 21:10 22:23 24:17
27:8,12 29:2,22 30:18
33:20 38:1 58:13 59:4,5
60:19 62:19 66:23 70:19,
25 72:3,5 73:1 80:23
83:14,16 97:3 98:16,17,
20 105:20 158:8 160:23,
24 161:22 166:6 168:23,
24 180:10,14 186:13

**claimant**
180:21

**claimant's**
168:25

**claims**
113:17 201:9,19

**clarification**
160:11

**clarify**
60:3

**clarity**
25:21

**clean**
69:9 172:4

**clear**
13:20 27:4 31:4 72:8,18
184:17

**cleared**
60:10

**Clement**

 

10:6 12:15 87:12,18,22
88:1 103:24 115:24
116:14 164:12,14,16,22
165:2,4,9,12,19,21 168:6
172:6,10,16 173:17,25
174:2,7,9,12,15,19,21,25
175:5 177:14,17,20,24,
25 178:20 179:12,18
180:18 181:1,9,13,17
182:1,8,12,16,18,21
183:2,7,11,16,21 184:1,2
186:23 187:21

**clerk**
15:4 119:8,13 129:19
130:2,20 160:17 161:1

**client**
112:12,13 125:12 132:6

**clients**
159:23 160:7

**Clinton**
59:23 189:5

**cloak**
49:1

**close**
36:15 103:19 134:14
186:14,16,17,18,22

**closer**
80:9

**closing**
112:12 113:19

**coherent**
171:6

**colleague**
176:17

**collectively**
96:7

**Colleton**
78:25

**collision**
65:24

**color**
189:21

**come**
17:8 43:6 80:11 85:25
134:1 188:20

**comes**
161:12

**comfortable**
140:15

**coming**
27:4 108:4 140:3,16
141:1,14 145:1,2 157:12,
14

**commenting**
9:5

**comments**
36:10 84:18

**common**
101:18 107:14 178:6,23
185:15

**communicate**
154:4 159:23 160:7
163:24 168:25 202:6,9

**communicated**
163:13 178:18 202:1

**communicating**
65:24 139:7 192:16

**communication**
119:25 121:6 151:14
163:1

**communications**
17:14 55:4 158:4 161:20

202:15

**company**
14:6 30:20 114:9,21
138:16 166:5 189:7

**comparative**
52:23

**compensate**
198:21

**compensated**
52:12

**complaint**
169:23

**complete**
132:24

**Completely**
9:23

**complications**
83:4

**comprehensive**
31:17 39:21

**concern**
24:16 29:12 39:11 52:14
90:25 105:21 139:11
156:23,24 157:22 198:24

**concerned**
44:25 52:23 53:3 67:3
80:17 92:4 139:8 156:25
198:7 201:6

**concerning**
37:18

**concerns**
29:10 32:14 52:15 83:21
157:5 163:18 168:5

**concluded**
86:10,19 173:11 202:25




NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH　　222
John Grantland, 03/12/2024　　　Index: conclusion..correct

**conclusion**
147:22

**conclusions**
35:8,11 84:3

**concurrent**
136:24

**condition**
18:15 19:3 77:17 152:21
171:21

**conditions**
40:21 63:1 152:16
170:23 171:15

**conference**
107:24

**conferences**
107:19

**conferring**
147:14

**confessed**
128:6

**confidential**
9:19 12:8 26:6,8 95:25

**confidentiality**
9:8 11:16 12:3 13:22
82:2

**confirm**
33:2 59:25 142:6

**confirmed**
91:23

**confirming**
34:22 88:17

**conservator**
20:12,20 91:25 92:3,7,8
93:16,19 114:2,17 115:7
139:9,10

**conservatorship**
198:7

**consideration**
36:17

**considerations**
37:20

**consistent**
16:3,12 36:18,19,20,21
52:8 77:10 79:18 137:13
166:9 195:23

**consistently**
83:2 88:4

**consummated**
198:9

**contact**
23:6

**contains**
64:11

**content**
38:13 169:5 180:19

**contents**
32:12

**contest**
13:15

**context**
118:22 201:4

**continued**
86:19

**continuing**
28:9 31:24 42:11 54:16
86:14

**contributed**
40:13,22 170:23 171:16

**conversation**
13:23 34:21 53:1 56:24

**conversations**
21:13 29:24 34:16 51:21
52:8 66:17,21 67:15,18,
21 71:4 72:2 73:4,12
78:19,22 86:14,19 91:23
131:7 156:17 157:10

**cool**
149:19

**coordinated**
104:16

**copied**
123:5,23 193:7

**copies**
51:3 55:9 88:15 117:3,4,
19 195:18,22

**copy**
27:21 38:8 42:9,13 68:8,
11 70:11,13 87:10
100:16 101:1,20 102:8,
15,16 108:23 110:3
111:9 112:8,15 122:21
126:19 133:6 134:9
172:4 177:19 181:14
182:15 187:2 190:17
191:6

**cordial**
29:6

**corner**
123:20

**correct**
16:8,15 18:16 19:9 21:10
24:18 27:4,8,9 28:23,24
34:15 42:15 44:15 64:22
65:21 68:25 70:16 82:20
86:11 87:1 89:5,18 91:1

58:24 64:18 65:2 70:25
71:5,13 85:23 131:16
135:12 140:4,6 177:3

 

94:18 96:23 97:4,5,13,
15,18,19,24 98:14,25
99:20 102:2 104:21
106:18,23 113:16 114:21
125:22 129:21 138:20
139:1 169:20,25 170:5,
20,24 171:18,23 173:2,
15 176:16 178:24,25
184:15 190:6,8 193:20
197:1,13,17 198:2,3

**correctly**
63:12 173:3 193:5

**correspondence**
27:11 101:25 125:20
143:2

**corresponds**
127:21

**corroborates**
143:1

**Cory**
13:7 19:2 28:23,25 29:5
33:4 42:14 43:2,17 44:14
45:19,24 46:10,14,19
47:4 48:11,22,25 49:13,
20 57:5,17,19,24 58:4
71:6,10 72:21 73:1 74:14
75:15 83:23 84:7,9,20
85:4,6,20 91:24 92:18
93:13 96:9,13 101:14
106:22 107:3 108:2,23
109:22 111:4,14,20
112:3 114:10,24 116:8
119:20,21,25 121:10,13
122:16 123:23 127:4
132:12 134:22 135:3
136:2 137:2,14 138:7,10,
23 139:4,6 140:2,7,13,22
141:1,13,15,24 142:6
143:3,15 144:7,11,25
145:19 147:13,16

150:15,16,18 151:10,13,
21,24,25 152:4,22 153:1,
8 154:12,25 156:22
158:1,8,9,10 167:18
168:10 184:20,25 185:22
188:13 190:2 192:7
194:21 197:3,4,6 199:6
200:5 202:6

**Cory's**
71:8 124:5 144:2 184:21
199:15

**Coryer**
23:3 168:7

**could**
14:1 15:12 19:3 24:8
25:17 29:4 30:10,11 36:4
61:6 63:22 69:14 80:15,
21 90:7,9 100:4 101:4
120:11 131:11 147:19
167:25 168:1 170:18
197:12,15,16 199:13,17,
25

**couldn't**
56:21 69:8,14 77:25

**counsel**
13:21 14:8 53:9 60:4
100:7,9 119:9 120:2
159:12,15 166:16

**counties**
160:8

**county**
29:11 30:3 47:18 52:1
79:22,23 159:2,24 192:8

**couple**
53:24 116:7 118:4 150:2
156:1 195:14 196:5

**course**
13:14 31:7 97:14 116:9

152:3 171:24 187:16

**court**
10:24 11:10 12:9 97:17,
18 100:7 101:8,10,13,17,
19 104:16,17 106:16
107:13,18 115:12 121:6
136:5,8,19,22 153:25
154:2,3,9,11 178:5,6,9,
23 180:1,15 185:8,14,15
188:13 190:23 192:16
193:10,15 195:19 196:25
197:1

**court-**
133:16

**court-approved**
133:2,13

**courthouse**
133:24 135:25

**covenant**
30:25

**cover**
48:8 101:1 108:23
109:22 110:17 190:1
196:12

**coverage**
30:11 44:24 47:13 67:3
80:12

**covered**
47:13 179:6

**crash**
66:5,11,22 67:19 105:4,
12 200:20,25 201:8,15,
23

**crazy**
79:21

**cross-claiming**
50:1

 is now 

**cross-talk**
86:6 163:7

**curiosity**
89:8 90:24

**curious**
175:19

**D**

**damages**
23:1 30:8 35:7 42:24
74:22 79:20 159:21

**danger**
30:12

**date**
16:2 60:23,25 61:2 73:7
87:14 192:9,10

**dated**
23:19 24:1 26:16,23
27:23 28:5 31:17 40:25
42:4 48:4 62:14 64:5,18
65:14,20 68:3,9 70:7,19
76:15 78:3 87:3 89:11,17
91:12 94:6 100:20 104:2
106:3 109:13,16 118:8,
15 124:17 126:12 130:2
156:9 164:19 165:23
172:13 179:15 194:4

**day**
18:11,13 35:16 66:8,9
88:4,5 111:5,6 135:24
144:17 147:3,6,23 150:8,
18 186:8

**days**
91:22 135:22 155:3
172:20

**deal**
14:23 80:22 132:12

**dealing**
138:18 144:21 162:16

67:1

**dealings**
50:14

**death**
35:3 40:1,16 56:15 68:24
69:9 72:23 77:18 107:1
133:5 158:7 168:24
170:23 171:22

**decide**
174:23

**decided**
43:14 59:10 74:10,11,14
140:19 162:22 166:14
172:25 173:6

**decision**
14:14 15:16 22:17,19
36:17 63:14 86:24 115:1
173:13 177:7

**decisions**
30:16,17

**declaration**
86:11

**declaratory**
176:15,19 177:6,11

**decline**
171:17

**declined**
177:10

**defend**
14:8,9 176:14

**defendant**
71:3 100:10 168:25

**defendants**
160:8

**Defendants'**
156:2

**defended**
13:9

**defending**
159:24

**defense**
53:9 74:21 79:15 81:17
100:7 108:24 136:8
160:7 163:14 166:23
168:24 186:15

**defenses**
15:17,18 71:1 83:16

**definitely**
30:11 139:10 148:1

**definitive**
77:24

**delaying**
134:19,23 135:1

**delivered**
47:7 76:8 102:4

**demand**
19:6 27:3 80:14 85:2

**demanded**
140:22

**demands**
84:1,2

**demise**
40:6

**dependent**
138:2

**depends**
195:22

**deposited**
103:2



AdvancedONE LEGAL  is now  LEXITAS

**depositing**
152:1

**deposition**
9:22 25:7,14 26:21 28:2
31:23 32:8 49:1 51:1
57:25 60:22 62:23 64:11
78:12 89:16 91:17 94:12
99:18 104:7 106:9 113:4
118:20 167:24 169:3
172:11 175:1,3 202:25

**depositions**
13:9,11 176:8

**describe**
17:21 29:4,24 50:5

**described**
79:7

**describes**
94:13

**describing**
21:13 28:12 44:10 77:13
199:2

**descriptions**
29:10

**designate**
12:10 26:7

**desire**
56:19 136:16

**desk**
130:5

**detail**
44:20 45:16

**details**
15:8

**developed**
17:15 38:15 63:3 65:4

**did**
14:11 15:2 17:4,9,13
18:1 19:12,13 20:23
21:1,19,25 22:6 27:10,13
28:14,25 29:1,3,19 30:16
32:17 33:1,6,20 34:16
35:2,6,8,11,25 36:16
39:2,3,25 40:1,5,16,17,
22 44:1 46:7,10 48:11,
14,16 49:4,12 50:13
51:3,16 52:13 53:12,15
57:10,16,19,22 58:3,4,
12,23 63:5 66:1,13,17,20
67:11,13,15 69:4 70:19,
21 71:4,5,11,13 72:4
73:4,12,16,23 74:2,14
75:1,4 80:11 83:8,12,22
86:19 93:23 96:16,17
107:24 108:22 110:20
111:9 112:7,15 113:21
114:25 116:8 122:20
126:25 127:25 128:3
129:22 130:3,7 134:18,
22,25 135:3 136:4,15,17
137:2,6,23 138:7 140:13
141:15,23 142:4,6 143:3,
5 144:6,16 147:1,13
149:5,23 150:13,20,21,
22 151:5,10,13 154:4
157:17,24 162:7 163:22,
24 167:16,17 168:1,7
169:8,18 171:8 173:3
174:15 175:20,24 176:15
177:3 178:11,12 179:1
180:19 181:2,24 186:3
187:3,4,5,8,13 192:14
193:5 195:4 198:17
199:11 200:24 201:7,13,
21 202:9

**didn't**
34:8 35:23 36:22 38:11

44:24 59:12,13 63:19
74:4,8 75:4 81:5,16
103:22 105:15 107:16,17
108:22 111:7,25 113:20
114:14 126:9 128:11
131:7,22 135:17 137:9
138:4,25 140:15 150:18
151:20 152:6 153:19
154:13,20 155:4 158:11,
16 159:4 161:19 176:6,8,
10,12,14 178:16,17
179:1 186:21 187:2
197:14 201:18 202:6

**die**
35:5 40:17,18

**died**
16:12 69:15 78:1

**different**
46:21 64:19 117:1,15
182:11

**difficulties**
104:15

**Dillon**
118:16,25 119:4 121:4,
10,23 123:5,23 126:19
129:18 130:2,20 131:8
202:9

**dipping**
150:5

**directions**
53:15

**directly**
22:20 152:1 187:9

**disabled**
198:12,24

**discovered**
126:5 129:20




**discovery**
176:10

**discuss**
13:21 70:19 104:14
172:3 174:15

**discussed**
30:4 42:18 51:25 64:24
77:2 83:24 98:6 152:13,
19 157:19 172:1 176:22

**discusses**
48:2

**discussing**
62:5 79:4 99:15 105:1
121:9 152:20 153:18
175:12 200:19

**discussion**
24:23 53:2 72:4 82:1,12
98:4 105:10 114:11
116:22 134:18,22,25
153:23 181:20

**discussion's**
93:7

**discussions**
21:25 22:3 29:19 30:12
47:16 69:4 71:6 83:6,13
84:15 116:9 147:15
185:2,3

**dismissal**
188:12,15 193:14,22
194:4,14,19,20,23 195:1

**dispute**
59:10 82:3

**distinctly**
92:13

**distinguish**
71:23

**dizziness**
170:4,9

**do**
13:13 14:18,25 20:8,23
22:25 23:1 24:7 25:22,25
26:12 29:22 32:23,25
33:5 38:13 39:12,18
41:14 45:4,12 46:5,20
49:19 52:1 53:13 54:18
56:16,21,25 57:15 58:1,
2,15 61:14,23 63:15,19
69:16 73:25 74:8,11 82:4
83:22 84:25 89:17 100:9,
10 102:5 103:7 107:6,12,
13 108:11 110:9 111:21
114:12,25 116:14 117:5
119:13,15 121:8,16
123:4 125:7 127:5 130:3,
15 131:20 135:8,11,23
136:7 139:4 140:4 143:3,
14,21 145:8 146:5
147:24 148:9 149:21
150:7,11 151:17 152:5
153:5,17,25 154:10
156:17 157:10,17,24
158:3,10 160:20 161:18,
20 162:6,18,24,25 163:1,
2,11 165:25 166:7 167:8
168:16 175:14,22,24
176:24 177:10 178:2,9
179:4,9,12 180:1,9
181:13 183:12,15,16
185:19 186:8 189:11
190:11 191:9,12 192:12,
21 193:3,22 194:1 195:7,
16

**docket**
98:2 193:12,17 194:1

**doctor**
39:17

**doctors**
21:22 65:6,7

**document**
25:6,13 28:16 31:22 38:9
41:5 50:25 53:19 54:14
56:5 60:21 64:9 70:2,12
87:8 89:16 94:11 99:8
104:7 113:3 123:19
124:9 125:8 130:5 135:6
181:10 183:10 189:9,12,
24 190:20 191:18 192:5
194:9,13 196:18

**documents**
22:14 26:5 37:2 40:7
47:7 48:9 53:21,24 93:24
96:1,6,16 97:1 98:23
99:16 100:8,11,16
109:21 111:23 118:24
135:9,20 136:7,13 140:1
152:16 154:19

**does**
10:2 24:13 60:3 109:2
119:4 120:1 123:10
147:24 172:23 191:8,10
197:5

**doesn't**
10:11 11:6 16:3 57:7,8,9
58:19 65:25 120:8 121:5
131:1,13 197:3,4

**dog**
14:16,18,21,25 17:23
18:6 24:2,12,14 32:23
34:25 35:4 37:18,20,22
38:2,21 39:4,11,12 52:22
72:5,9,11 73:13 74:24
160:16,25 161:3,8
176:24

**dogs**
18:6,9 33:13 35:12,15,21

 

37:2,9,11,13,21 51:24
52:1,4 53:4 62:2,5 72:5
73:9,17

**dogs,'**
36:15

**doing**
10:9 15:13 22:24 90:12
106:16 107:22 136:10

**dollar**
140:10

**don't**
12:5 19:23 27:16 30:19
31:6 33:19 36:2 38:19,25
43:3 44:20 45:11,16
46:6,12 47:9,12 48:1,14
52:6 53:17 55:15 58:1,2
59:2 63:4 67:13,17 70:21
72:24 84:23 100:2
108:13 110:7 112:19,20
117:15 119:19 120:12,
13,23,25 121:1 125:24
126:4 128:2 131:16
137:5 139:11 141:21,22
142:9 143:5 147:5
148:19,21 153:1,17
157:19,21 159:25 162:12
170:10 174:21 179:6
198:22 199:10,23 202:23

**done**
17:25 34:19,23 38:22
60:20 74:10 86:1 96:12
107:7 132:13 135:10,21
149:2,4,19 156:2 157:16
186:15

**down**
30:7,12 53:8 79:13
80:14,15 84:22 117:22
157:3 170:18 182:14

**downhill**
69:12

**dozens**
13:9

**Dr**
21:22,23 39:17 40:3,9,
11,19 41:25 54:22 55:1
56:14,20 63:11,13,15,21
65:10 68:15,20 76:22
171:1,4,9,16,20

**draft**
96:12 176:6

**drafted**
96:6,7

**drafting**
151:18

**dragging**
45:1 47:1,2,3

**driver**
49:22,24 50:1,2

**duly**
12:25

**Dunbar**
75:11 146:12

**during**
10:3,8 46:10 82:21
105:10 187:16 192:14

**duties**
198:17

**duty**
198:23

---

**E**

---

**e-file**
131:12

**e-filing**
195:16

**each**
57:12 167:15 168:13

**earlier**
22:16 24:4 31:22 32:1
59:24 61:7 82:1 99:15
106:21 129:18 131:8,25
137:14 142:12 145:16
151:23 152:9 155:3
157:25 158:24 167:5
168:12 175:17 184:16
198:4,6 200:18 202:19

**early**
58:22 90:12

**ease**
26:9

**easiest**
23:13

**effect**
30:17 40:5 62:4 135:19
170:9

**effects**
170:3

**efforts**
154:14

**either**
14:21 20:10 26:7 38:15
70:22 110:25 128:10
136:1 137:15 138:11
140:18,21 153:8 173:7
202:7

**else**
40:17 49:4 57:15 66:16
78:1 108:11 116:10
117:19 125:25 126:6
138:23 139:5 141:19




158:4

**email**
26:16,22 37:18 38:4,14
43:22 44:3 47:23 48:3
54:10,15,17 56:1,6,10,23
58:10,11 59:9 60:13
61:15 62:22 64:10,14,18
65:14,19,23 66:5 67:12,
15 78:10,18 80:3 87:3,9,
10 88:14 89:9,11 90:14
91:17,19 92:2,13,14
93:3,12 94:11 99:11,17,
18,25 100:16 104:8,11,
22 106:8,12,15,21,22
111:2 112:24 113:5,7
118:8,12,14,15,19,21
119:7,9,16,21 120:7,12
121:24 122:4,13,16,20,
24 123:5,10,13,22
124:10 125:9,11,13,14,
16 126:20 127:17 128:22
129:5,18 130:1,3,19
131:9 135:18 142:9
143:1 163:17,22 167:6
171:25 172:13,17,23
174:16 175:7,8,9,12
177:18 178:1 179:5,7,21,
22,25 184:5,7,11,17,21
185:25 186:7,8,10
188:13 191:2 192:20
193:21

**emailed**
111:12 112:2,4 127:9
128:15,19 159:9,10

**emails**
55:3,5 59:8 62:14 64:5
78:3,11,15 91:12 94:6
104:2 106:3 118:24,25
121:23 126:12,22 162:1
174:17 179:15 192:7

200:18

**EMS**
34:2 37:11 73:16,18

**enclosed**
120:15

**enclosing**
101:2 127:13 129:6,9

**end**
35:15 84:10 103:20
138:12 148:15

**ended**
99:19 150:8

**endorsement**
102:21

**endurance**
13:14

**engaged**
63:13

**Enjoyed**
113:12

**enough**
55:15,17,24 84:21 141:3
171:6

**enter**
194:25

**entries**
139:23 155:22 156:5

**ESQUIRE**
12:24

**establish**
60:19 69:21

**established**
20:2,5

**estate**
19:17 20:2,13 28:22 71:8

83:25 93:21,24 94:2,17
98:13,17 105:21 113:18,
24 132:11 152:7 158:19,
20 198:19

**estate's**
175:19

**evaluate**
19:3 27:8 39:24 45:5,11
55:24 56:20

**evaluated**
42:24,25

**evaluating**
30:1 54:22

**evaluation**
18:14 20:24 24:17 27:15
39:18,22 48:23 56:14
60:19 62:19 63:18

**even**
23:24 26:4 54:3 90:11
95:19 129:20 151:10
153:12 174:8

**event**
49:5 66:18,22 67:12,16
68:22 69:16 113:14
186:6

**events**
15:24 22:9 199:2

**eventually**
146:3

**ever**
49:10 103:11 121:19
128:18 136:15 137:2
147:8 151:8,10 186:4
187:8 190:9,11 191:18
192:15 193:1,11,25
194:22,25 195:4

**every**




NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH            229
John Grantland, 03/12/2024            Index: everybody..expressed

30:3 44:20 45:16

**everybody**
10:5 11:11 43:19 66:6
76:1 90:11 142:18
143:11

**everyone**
49:4 59:9,19 61:12 74:5
82:18 86:13 136:18
154:8 199:3

**everything**
34:23 46:15 55:22 57:8
79:1 112:1 113:13 128:5
135:21 151:21

**evidence**
33:14 34:25 35:3,15,17
72:9,11,19

**exactly**
51:15 105:6 113:11
166:19 184:19

**EXAMINATION**
13:3 116:4 117:24
164:25 188:25

**examined**
12:25

**example**
130:6 201:14

**exceed**
30:11

**Excellent**
60:11

**except**
133:11

**exception**
11:16 83:20 200:4

**excess**
16:17,23 80:21

**exchange**
43:12 59:24 126:25
128:3 129:23 131:23

**excuse**
17:1 34:11 61:1 196:11

**excused**
202:25

**execute**
30:25

**exhibit**
23:19 24:25 25:7,14
26:1,2,3,16,20,21 27:1,
23 28:2 31:18,23 32:3,13
38:4,9,10,14 40:25 41:5
42:4,9,10 43:22 44:3,10
47:17,23 50:20,25 51:17
54:8,10,15 55:3 56:1,7,
17,22 58:9 60:13,21
61:3,15 62:14,23 63:2
64:5,10 65:14,19 68:3
70:3,7,12 73:3,16 76:13,
15,20 78:3,8,10,11 80:2
81:22 87:3,8 89:11,16
90:24 91:9,12,16 92:21
93:3,8 94:6,12,15 95:9,
13,15,21,22 96:1,2
97:21,22 99:11,18
100:20,25 102:8,13,16
104:2,7,13 106:3,8,23
108:24 109:13,17,23
110:4,5,8,10 112:24
113:4 116:23 118:8,13
122:4,9 123:13,18,22,25
124:4,18,21 126:12,17
155:22 156:3 160:15
164:14,17,19 165:23
169:3 172:11,13 173:18
174:20 175:1,3,7 177:14,
15,16 179:15,19 182:2,
15,19 183:4,6,20,24

184:4 189:11,15 190:22
191:2 194:5,9,10 196:12
197:25

**exhibits**
23:13,16 25:20 26:8 61:7
95:19,25 103:19 109:21
116:20 118:4 125:9
188:1

**expect**
193:17 195:7,24

**expectancy**
56:15,20 63:18,20

**expectations**
157:5

**expected**
42:1 77:15 111:23
151:25 190:14

**expecting**
27:2 111:6

**experience**
185:18

**explain**
45:2 73:17 121:3

**explaining**
99:24 106:21

**explains**
27:1 104:14

**explanation**
49:17

**exposure**
67:6 73:13

**express**
136:15 181:2

**expressed**
83:21

 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    230
John Grantland, 03/12/2024                      Index: expressing..filed

**expressing**
157:21

**extension**
150:14

**extent**
11:4 187:12 202:14

**extracontractual**
80:23

**eye**
178:14

---

**F**

---

**facilities**
16:11

**fact**
9:13 72:15 84:3 158:12
171:7 178:11 195:7

**factors**
68:23

**facts**
83:12 84:12

**fair**
29:12 37:23

**fairly**
70:23 94:20 95:3 98:22

**faith**
80:23

**fall**
18:23 19:3 32:23 35:1,5
40:17,23 52:5 68:22
69:1,9,10,11,17 72:7
73:23 158:7 171:17

**fallen**
170:18

**falling**
168:2

**familiar**
13:10

**family**
32:18,22 33:2 198:18
201:8,10

**far**
74:19 105:19 144:18
155:12 198:23 200:23

**farther**
54:7

**father**
36:13 52:3

**fault**
30:10

**February**
16:5,11 18:13 39:8 55:8
56:22 59:9 61:1,19 66:11

**federal**
97:17

**Fedex**
102:2 120:19 130:10
151:23 190:2

**feel**
90:10 140:15

**feelings**
181:3

**fees**
96:18,19,22 97:2

**feet**
45:1 47:2,3 169:24

**fell**
15:19 16:6 52:21 77:25
169:19 171:7,8

**felt**
52:9,10,11 158:6

**few**
16:1 17:7 22:13,15 23:16
32:20 91:22 103:19
113:14 155:3 189:8

**fighting**
74:23

**figure**
131:20 154:16

**figures**
140:11

**file**
15:2 17:9 21:8 22:6
23:15,25 30:22 53:3
93:24 111:10,22 112:2,
12 113:19 120:13,24
121:1 122:23 126:9
127:16 130:12,23 131:9,
10 134:15 135:9,20
154:17 156:4,12 158:20
162:20 176:12,18 177:4,
10 184:25 185:7,13
186:14,16,17,18 190:14
193:13,19 195:8,19,20
197:4,25

**file-closing**
113:7

**filed**
52:16 54:4 72:12,16
97:15 101:8 111:7,16,24
112:11 121:12,19,21
126:9 132:20 133:12
135:21 136:5 153:23
184:23 185:18,22 187:2
188:12 190:5,9,17 193:1,
11,16,25 194:14,23
195:5,12 196:1,24
197:13,17 198:2

 is now 

**files**
33:20 118:24 126:21
130:5

**filing**
121:13 134:19,23 135:1
155:18 190:12

**filings**
195:18

**final**
73:24 104:22 185:11
190:17

**find**
83:22 120:15 155:14
173:19 182:13

**findings**
21:24

**fine**
92:22 109:1,7 116:16
177:24

**finger**
148:5

**finish**
107:22 168:19

**firm**
27:11 50:18 52:25 72:17
162:19 163:4,5,12,13
202:10

**first**
12:25 14:11 26:25 37:3
38:22,23 39:17 51:5
56:17 59:5 61:2,9,17,25
62:1 73:6 96:1 102:15
110:22 118:21 129:8
132:3,4,7 154:24 155:1
162:19,25 163:2,6,12
166:3 169:8 173:8 186:6
192:10

**five**
75:14

**Fleming**
13:7 28:23 33:6 42:14
44:14 48:5,23 49:20 55:4
56:25 57:17,19 58:4 71:6
72:21 83:23 84:7 88:15
91:24 92:18 93:14 94:18
95:1 100:25 101:2
102:17 103:4 108:9
109:22 110:21 112:7
127:13,17 128:22 132:1,
12 134:23 158:1 176:1
188:13 190:14 192:7,14,
21,24 193:16,19 194:21
195:4 196:1,11 197:3,4

**Fleming's**
84:20

**flip**
184:4

**fly**
145:6

**folks**
37:5

**follow**
53:15 112:7 122:17
123:9,24 127:17 128:23

**follow-**
196:5

**follow-up**
118:4

**follow-ups**
198:5

**followed**
33:17

**following**
201:25

**follows**
13:1

**foot**
53:14

**for**
10:13,19 12:6 13:6,10
14:1 15:23,24 16:23 17:3
18:7 19:7 20:7,12,19,21
21:16 23:2,20 24:21
25:1,21,22 26:9,10,17
27:24 28:7,8,21 29:16,22
30:20 31:18 32:21 33:6
38:5 40:3 41:1 42:5,23
43:22 44:6 46:15 48:8
50:21 52:10 54:10 56:1,
14 57:2 58:4 60:2,13
62:15,18 64:6,21 65:15
67:4,9 68:4 69:25 70:3,8
71:8 73:24 76:16 78:4
82:3,5,8 83:7,14 87:4
89:12 90:10 91:13,25
93:3,21 94:7,14 95:9,12,
13,16 96:3,18 97:4,20,21
98:23,24 99:7,11,22
100:9,15,21 102:8 104:3
106:4 107:1 109:14,17
110:5 112:24 115:2,22
118:9,25 119:5 122:4
123:13 124:18 126:13
130:4,5,9 133:11 134:14
135:16 137:1 139:9
146:1 150:14 151:11
155:22 156:23,24 158:13
160:11 164:20 165:3
168:17,23,24 170:15
172:14 173:14 175:2,13,
18,21 177:9,14 179:11,
16 180:12,13,23,24
183:12 187:7,22 191:2
194:5,25 195:15 197:3
201:14

 is now 

**Forge**
114:2,16,24

**form**
98:23 99:8 132:17
155:20 173:16 180:11,22
181:5 186:20 192:17
195:9

**formal**
86:18

**forth**
64:19 93:13

**forward**
140:18,19

**forwarded**
125:12 127:11 128:21
134:12 185:25

**found**
107:20 108:7,8 135:24

**four**
18:9 64:19 79:22

**Fourteenth**
14:16 30:2

**frame**
135:3

**Friday**
80:9 87:21,24 88:9
107:21 154:25 155:5

**friends**
49:21 50:7,10

**from**
10:9 14:17 15:1,2 19:2,5
22:12 24:1 26:23 27:3,
11,16 28:11 30:6 31:25
32:22 33:8 35:3 36:5,23
38:13 39:6 42:13,14
45:19 46:20 47:7 48:22
55:4 56:18,19,23 57:13

58:5 59:21,24 61:15,24
63:4,6,7 65:20 67:8 68:8
69:1,10,11,12,15 72:16
76:22 78:1 79:15,16
80:16 84:5,18 87:10 95:1
97:9,11 99:25 100:25
101:1,17 106:16,22
108:23 109:22 110:17,
21,25 111:1,4,12,14
112:2 114:9 116:2
118:16,25 119:20
121:15,23 123:23 124:1,
5 126:19,20 127:3
129:19 130:1,12 132:10,
12 135:23 144:4 145:6
146:11 152:22 156:4,7
161:12 163:17 164:10
165:17 172:17 175:7,9
177:18 178:1,5 179:22
185:22 188:23 192:20
193:10,12,17,25

**front**
60:24 191:6

**full**
14:1 29:9 56:23 73:6
80:3 101:4

**fully**
27:2 151:25

**fun**
113:9

**funds**
101:6 190:4,11 196:21,
23

**further**
54:17 115:21 200:9
201:21

**fussing**
149:20

**future**
201:22

---

## G

**GAP**
9:15

**gave**
21:22,23 84:24 110:12,
13 150:12

**general**
22:16 98:22

**generally**
59:1 99:8 159:2 195:23

**generically**
17:21

**gesture**
148:9

**get**
10:12 14:11 15:7 22:13,
23 23:2 42:17,22,23,24
44:21 45:24 46:1,8,20
47:14 52:12 55:21 56:20
59:14 63:14 72:20 74:17,
24 77:8,11 78:9 80:6,15,
19 81:21 82:22 85:7,18,
21 88:13 101:15 105:14,
15,23 107:23 108:22
111:6 115:19 117:18
130:9 135:7 136:13,21
147:17 148:17 149:4,19
150:16 154:17 157:16
167:25 177:9,19 180:16,
25 185:19 186:19 189:18
195:25 196:18

**gets**
135:9

**getting**

 is now 

20:1,11 21:16 44:23
47:5,6 48:19 55:8,9
82:25 84:18 103:19
104:15 106:25 111:24
112:8,11 118:19 146:17
184:23 185:21

**gist**
44:21 45:15 46:25

**give**
10:10 43:6,7 46:15,16
49:1,7 56:14 57:24 65:8
69:9 85:17 114:8 130:14
132:22 171:6 172:3
179:7 181:11,14,24
187:6 188:4

**given**
10:18 11:5 77:15 85:16
118:12 158:25

**giving**
80:5 167:23 168:2

**Gloria**
16:6,11 18:15 19:17
28:22 35:21 39:18 83:25
94:3,17 98:1,11 113:24
152:11 198:19

**Gloria's**
158:7

**go**
14:15 15:16 16:1 25:21
26:6 36:25 43:2 55:17
63:15 76:4,12 81:19 82:8
101:13,18 108:5 109:3
114:24 116:14,16,17
136:19 140:18,19 142:16
146:7,21 147:24 148:11
149:15,23 155:12
162:14,22 165:6,15,19
167:21 174:10 183:22
191:21

**goal**
115:17

**goes**
119:12 130:12

**going**
14:15 15:17 17:7,19
22:13 23:14,16,23 25:14
26:6 27:19 33:15 34:5
38:8 40:7 43:5 46:15,16
53:21 54:5 55:21 56:5
59:11,14 60:18 63:24
65:18 72:3,4,12 74:11,
12,17 76:12 78:7,8 79:7
80:6,13,18 87:7 89:24
95:20,21,24 99:17
100:24 101:20 102:12
104:16 107:6,13,14
108:4,21 109:24 111:17
114:1,9,16 116:25 117:7,
9,16,18 118:4 119:21
123:18 136:5,9 139:16
141:24 142:7 144:3,4,7
145:6 149:19 150:1,11
152:5 157:16 164:12
166:14 167:16 169:2,4
171:25 173:18,21,22
174:25 178:8,23 180:1
183:7 184:25 186:19
188:6,9 192:9 193:19
200:4,5,7

**gone**
83:10 144:11 199:25

**good**
12:22 26:10 64:2 81:19
103:23,24 117:13 161:23
172:8 180:4 189:3
202:24

**got**
17:8 19:6 22:20 36:3
37:12,25 42:22 43:3,7

44:6 45:3,6,9,12,18
50:12 51:14 53:13,24
60:10 69:3 72:24,25
73:20 78:8 92:13 95:21
98:8 100:16 103:19
108:7,24 110:25 111:1
112:10 116:19 117:19
118:3,17 119:19 125:3,
15 126:9 128:18 130:22
131:9 132:3,4,10 133:6,9
143:24 145:5,16 147:19
148:15 149:1 156:5
161:23 162:23 174:16
175:16 176:23,24
177:20,22 179:11 181:10
182:12 185:25 187:25
188:1 189:8 196:15,19
197:16 200:9,16

**Gotcha**
110:18 130:15

**gotten**
36:4 61:24

**Grantland**
9:4 12:24 14:3 25:6
31:21 37:17 50:24 60:2,
17 62:18 68:7 70:11
76:19 82:15 89:15 91:16
94:10 104:6 106:7
109:20 110:20 118:2,17
123:3 124:23 125:3
126:17 127:13,17 128:22
156:6 164:22 165:22
166:4 175:2,6 177:18
183:3,24 184:3 188:14
189:3 196:11 198:6

**great**
180:5

**greeting**
82:17

 is now 

**gross**
97:6

**group**
145:17 146:1,15 147:10

**grueling**
116:13

**guess**
9:20 36:18 127:25
129:17 133:25 138:11
147:22 159:13 185:24
200:20

**guilty**
158:6

**guy**
75:11 199:14

**guys**
23:15 89:24 120:23
121:25 156:8

---

**H**

**had**
15:16 17:10,14 19:6,7
20:19 21:5,9,21 22:7,17,
19 23:15 29:3 30:4,5,6,
11,23 33:12 34:19,23
36:20,23 37:21,23 38:15
39:11,24 42:18 46:22,23
49:3,10,13,16,21 50:2
52:4,20 55:15,17,24
57:16 58:17 59:9,24
63:13,24 64:17,24 66:5
67:8,17,18 69:1,16 72:2
73:10,17 74:7,9,13 75:13
77:1 79:2,20 81:10 83:8,
21 85:1 86:24 88:20
91:21,23 92:2 96:19 97:2
100:17 103:11 105:3
107:22 110:14 111:20

112:2 114:3,10,15,23
115:13,14 118:14,19
119:25 120:23 126:8
129:1 133:1,7 135:7,19
136:6,14 137:16 138:12
140:6,24 141:12 142:9
144:11,25 150:19 151:17
152:14 157:25 158:4,12,
17,25 159:21 161:21,23
168:11,13 169:16,23
170:17,21,22 171:5,16,
20,21 172:25 173:11
174:2 175:1 176:18
178:22 180:20 183:1
194:20 198:9,23 201:9
202:15

**hadn't**
65:2

**half**
38:14

**halfway**
53:8

**hall**
85:25

**hallway**
85:23

**Hampton**
29:11 30:2,4,13,15 47:18
49:24 52:1 78:24,25
79:1,2,22 108:7 135:14
159:2,19,24 177:1 192:7

**Hampton's**
79:5

**hand**
117:7 142:14 148:9
169:2

**handed**
124:23 165:23 182:4,6,

10

**handle**
108:2 117:5 163:14

**handling**
17:15

**hands**
76:3 142:18 143:13,24
187:10

**hands-on**
18:2

**handshake**
103:14

**Hang**
54:6

**happen**
29:22 74:2 128:3

**happened**
10:8,23 15:18 18:3 21:5
27:14 36:14 49:17 83:17
84:4 105:16 115:11
121:3 126:6 128:13
129:25 130:24 162:12
168:3 173:8 198:8
200:20 201:5

**happy**
160:12 180:24 186:22

**hard**
47:24 71:23 185:20

**Harriott**
91:25

**has**
9:6,22 48:3 73:9 81:22
97:17 119:10 122:15
124:5 131:2 132:19
156:5 179:6 190:20
193:16




**hasn't**
58:18 172:1

**have**
9:4,8,21 10:2 12:12 13:8,
18 14:21,23,25 17:4,25
18:21 19:21 20:8 21:25
23:24 24:4 26:2,6 30:17
32:4 34:6,12,16 35:8,11
36:4,23 37:13,20,23,24
39:10 40:5,22 43:4,5
44:24 45:3,4,10,11
47:12,13 51:3,7,8,13
52:6 54:23,25 61:6,24
66:12,15,17,20 67:6,15
69:4,6 70:25 71:4,19
72:4 73:12 74:4,8,10,15
77:3,16,21 80:22 81:11
82:4 83:20 86:19 87:13
88:22 93:12,23 96:12
97:1,23 99:5 101:8
102:22,24 103:1 105:19
107:8,17,18 110:10
111:9,11 112:20 115:6,
10,11 116:8,13 117:16
118:12 119:13,15 120:6,
11,12,13,25 121:5,8
122:20 126:25 127:5,8
128:15 129:12 131:1,7
133:12 134:18,22,25
135:18,22 136:8 138:4,
18 143:18 144:12 145:2,
3,4,6 147:24 148:6,7
150:13 151:5 153:19
155:3 156:8 158:16
159:18,23 162:2,3
163:20 164:5,15 166:4
170:3,18 173:20,21
176:2,14 177:3,12 179:1
180:5,9,15 181:13
182:11,14 187:2,22
188:6 191:6 194:14

196:4,5,15,24 197:12,15,
16,20,21 198:5 199:9,13,
17,25 200:16 202:12,16,
21,23

**haven't**
12:4 25:13 45:8 57:14
126:5 174:8

**having**
10:15 12:24 30:12 32:13
39:6 40:18 51:20 72:5,21
105:22 121:20 198:1

**he**
9:7,10,11,17 10:2,11,16
12:7 15:4 17:25 18:4
19:21 21:4 27:14 30:6
34:19,23,24 35:6,8,11,
12,17 44:24,25 46:22,23
48:14 49:1,3,10,13,16
50:10,12,17 52:9,10,11,
12,13,19,23 54:2 56:15,
21 57:8,16,23 58:2,17,
18,19 59:12 63:19 66:19,
24,25 67:1,2,22 68:21
69:8,14 70:22 71:11
72:3,19,20,22,24 74:15
75:5,6,7,20 79:2 82:23
83:8,10,11 84:8 85:15,20
90:14 92:1,2,6,7 105:13,
14,23 107:3,6,15 108:2,4
111:19,20,21 114:11
120:13 123:9 135:4,7,8,
9,14,17,19 136:6,14,17
137:6,16,21,24 138:12
139:2,9 140:8 141:13,19
142:22 143:5 146:6,7,11
147:1,2,13,18 148:5,7
149:3,5 150:12,19,20,21,
22,25 151:10,13 157:12,
20,25 158:4,6,8,9,12
162:9 164:2,3 175:20

176:6,8,10,12,14,15
183:16 184:21 190:17
191:8,10,11 192:15
199:16,18,25 201:5

**he'd**
10:14 57:19 107:4
111:21,22

**he'll**
85:21 135:20

**he's**
40:14 47:4 54:3 85:6
108:4 119:21 135:21
148:4 149:12 150:5
184:20 186:2 198:16,25

**head**
39:24 69:1

**health**
40:16 63:23 170:22

**healthcare**
16:10

**hear**
49:2,13 140:10

**heard**
32:22 49:3,16 61:18
66:5,8 101:14 104:15
154:24 155:1

**hearing**
101:9,11,15 107:1 135:4
178:5 195:4 196:25
197:1,10,17,21

**hearings**
107:18 115:7,11

**held**
24:23 82:12 116:22
181:20 190:4

**Hellhole**
79:23

 

**hello**
84:9

**help**
57:8 167:24

**her**
15:19,20 19:1,3 22:2
23:1 33:13 35:3,5 39:25
40:1,4,5,12,15,17,18,22
51:21 53:6 58:16,17,18,
23 59:2,6 63:10,25 64:18
67:15,19 69:9,16 77:15
79:19 90:13,14 100:12
104:14 105:7 119:24
120:7 130:3,5,25 131:17
134:6 147:24 148:5,6,7
159:9,10 168:12 169:24
170:23 171:16,17,22
173:7 178:21,22 179:4,
25 180:1 186:2

**here**
21:8 32:10 47:11 51:11
55:16 70:1,3 95:22
117:22 119:3 123:5
127:12 129:9 156:10
174:22 175:9 182:13
183:13,21 189:5 194:9

**Hey**
189:4 193:11

**Hi**
172:23

**highlighted**
96:11

**highlighting**
177:22

**highlights**
95:21 96:5

**highly**
30:19 45:22 168:18

**him**
10:7,11 39:24 43:17,18,
19 45:2 46:15 47:4 49:7
52:20,24 53:16 58:20,22
59:6,13 67:9 70:22 72:17
75:23 105:24,25 107:23
110:12,13 114:15 117:8
135:23 136:1 141:22
142:20 146:7 149:14,18
150:1,6 151:20 157:9,10,
21 160:24 162:23
163:21,24 183:8 185:10
191:12 195:7 197:21
201:19

**himself**
144:2,3,8 199:16

**hire**
34:8

**hired**
14:8 21:21 34:6 39:1,17
163:13 166:13

**his**
9:21 18:4 21:4 27:14,15
30:11 34:12,23 35:8,16
36:11,13 37:8 48:16
52:14,18,20,25 54:4 67:2
68:18 72:17 77:13 107:8
120:12 136:15 141:14
142:14 146:3 147:3
148:5 149:5,6 152:1
157:5 163:18 176:3
185:25 200:24 201:10,22
202:10

**hisself**
75:17

**history**
40:12 171:6

**hit**
113:14

**hold**
59:14 101:6 150:14,15
185:7,10 196:21,22

**home**
79:2

**homeowners'**
14:24

**honestly**
80:8 112:20

**HOOD**
116:6,12

**hope**
183:17 186:12

**hopefully**
172:2

**hospital**
36:6 69:2

**house**
37:9 73:11 78:24 79:2

**housekeeper**
52:21

**housekeeper's**
52:20

**how**
20:10 22:3 28:18 29:13
44:19 50:5 54:22 66:21
67:14,16,19 71:11 79:6
80:11 84:23 113:22
114:11,25 115:9 117:5
119:13 121:11 131:9,10
145:25 147:1,5 150:7,8
153:17 154:10 159:20
162:16,18 163:24 171:6
173:5 184:11 195:22
198:22 199:11

**however**
75:2




NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                    237
John Grantland, 03/12/2024                              Index: Huh..if

**Huh**
71:11

**Huh-uh**
20:6 45:25 153:13 155:9
202:2,4

**hundreds**
13:8

**hung**
108:6

**hunting**
79:3

**hurry**
44:21 46:8 47:1,11 52:12
57:14

**hurt**
54:4 72:13

**hypocrite**
52:19

---

**I**

---

**I'D**
11:3 111:23 121:17
129:7 168:12,22

**I'LL**
23:12 24:6,7 25:22 26:12
29:7 37:3 41:14 54:6
59:14 64:20 78:7 98:23
102:5 113:13 116:16
117:14,17,21 123:20
124:21 131:5 135:17,18
139:24 156:1 165:3
172:3 173:20 174:14
181:14 186:2 188:3,19

**I'M**
10:22 11:24 12:3,22 13:7
14:7,15 17:7,18 21:1
23:13,16 25:6 26:4,20

27:13,17,19 28:18 31:3,
22 32:10,15 38:8 41:4,14
42:8 44:2,11,13 46:16,
19,22 47:12 49:12 50:24
53:6,9,18,21 54:5,14
56:5 60:18,20 62:10,21
63:4,6,10,12 64:1,9
65:18 66:7 67:1,17 68:7,
20 70:2,11,21 76:12,19
78:7,8,10 79:7 87:7,12,
16 88:24,25 89:15 91:8
92:19,20,21 93:8 94:10
95:20,24 98:6 99:16
100:24 101:20 102:12
103:19,23,24 104:6
105:5 106:7 108:21
109:20,24 113:3 117:9,
16 118:2,4 123:18 127:2,
25 128:9 130:23 133:23,
25 136:9 150:5,11
152:23 159:12 160:12
161:23 163:2 164:12,16
168:21 169:2,4 170:15
171:25 172:10 173:7,20,
22 174:10,16,25 175:1,2,
19 177:14,15 179:19
180:4 182:8 183:11
184:21,22 186:12 187:24
188:6 189:5,19 191:15
192:9 198:22 200:17

**I'VE**
27:15,17 28:19,20 30:23
44:6 50:9 53:24 58:3,21
78:8 88:3 90:3,4 91:16
103:19 108:12 116:19
117:18 118:3 124:23
131:9 163:17 181:10
183:3 186:15 187:25
188:1,17 189:8 191:22

**idea**
58:1 77:10 98:7 152:23

153:6,7 177:12 180:9

**identification**
23:20 25:1 26:17 27:24
31:18 38:5 41:1 42:5
43:23 50:21 54:11 56:2
60:14 62:15 64:6 65:15
68:4 70:8 76:16 78:4
87:4 89:12 91:13 93:4
94:7 95:10,13,16 99:12
100:21 102:9 104:3
106:4 109:14,17 112:25
118:9 122:5 123:14
124:18 126:13 155:23
164:20 172:14 179:16
191:3 194:5

**identified**
142:21 143:7

**identify**
56:8 124:10 189:24

**if**
12:6 13:15,18,21 16:2
28:18 29:7,13,20,21 30:9
31:3 34:9 37:21 41:14
43:6 45:12 46:5,22,23
52:15,20 54:3 55:16,19
56:8 57:7 63:4,12 66:7
67:13 68:20 72:10,12
78:19 80:8,20,25 81:19
85:7,20,21 88:3,4 90:3,4
98:8 100:9 103:17,21
108:11,25 112:19 114:8
117:14,19 118:13
119:19,20 121:14 122:8
130:16 136:21 138:16
142:9 143:5,18 144:11,
25 147:17,19 148:14,15
149:19 150:16 151:17
152:14,15 153:1 157:3
159:25 160:9,10,20
161:18,21 162:6,11,14


is now LEXITAS™

168:19 170:10 172:1
173:19 174:16 181:11
183:14 184:3 187:6,25
188:4 189:17 190:16
191:10,17,18 192:20
195:7 197:20 198:15,22
201:9

**impact**
67:16 105:22

**impasse**
86:11

**implications**
114:7

**important**
35:23 48:24 64:21

**impose**
24:13

**imposed**
152:22

**impression**
108:17 114:1

**in**
9:5,14 10:1,23,24 11:16,
20 12:6,9 13:7 14:4,9,17
15:2,10 17:18 18:5,19
20:1,11 21:7 22:6,16,24
23:14,15,25 24:13 25:9,
21 27:1 28:14 29:11
30:3,4,9,12,15 31:6
32:20,23 33:20,25 35:1
36:5,17 37:6,8 39:7 43:4
46:5 47:16 48:19 49:5,24
50:14 51:11 53:5,14
54:22 56:12 60:20 65:23
66:8 67:21 69:2,5 71:13
72:2,23 73:5 74:5 75:4,
10,15,16,22,23 76:2,4
78:23,24,25 79:2,23

80:4,21 82:3 83:5,11,24
84:8 87:14 89:25 90:8,
14,18 92:15,17 93:18,23
94:15 96:14 97:2 98:1,
11,22 99:3,5 100:6,15,17
101:3,4,5,6,8,16 102:6
104:16 105:6 106:25
107:20 108:7,18 110:22,
23 111:9,18 112:1
113:14 114:5 115:11
116:9 117:4 118:20,21,
22 119:9,18,22 120:13,
23,25 122:15,17,19,23
123:5,9,24,25 125:9
126:9 127:1,18 128:3,21,
23 129:4,23 130:5,10,13,
14,20 132:19 134:14
135:3,5,14 136:5,22
137:3 139:6 140:1,14,22
141:1,15,22 142:3 143:2,
6,13,25 144:2,3,7,8
145:11,14,19,23 146:8
147:3,10,20 148:1,6
151:13,18 152:10,14,17,
20 153:25 154:8 155:4
156:3 158:17,19 159:1,
13,24 160:8,21 165:5,7,
13 166:3,5,10,13,19,22,
23 169:12,24 170:10,15
171:7 172:23 174:6,13,
22 175:12,25 177:1
178:9,11,23 179:5,25
181:14,22 182:12,25
183:12,13,18 184:11
185:7,11,14,15,18 186:6
188:12 189:6,16 190:4
191:6,25 193:23 194:14
195:3,7 196:21,23,25
197:24 199:5,6,7,9,11
200:3,5,7,23 201:4,8,22,
23 202:16

**incident**
18:13 38:24 39:7

**include**
38:11 71:6 101:20
113:21

**included**
97:9 100:17 101:25
179:8 202:16

**includes**
29:9

**including**
91:3,4 170:3

**increase**
69:18

**independent**
34:7 39:1 61:17 96:16
119:15 121:5,9 138:6
147:25

**indicate**
139:6 140:2 151:13

**indicated**
19:7 77:16

**indicating**
56:19

**indication**
125:24 129:23

**information**
18:4 31:14 36:4,23 47:5
51:7 55:17 61:10 123:11
134:5 158:17 169:12

**informative**
160:10

**informed**
169:16 170:17,21 171:3,
14,19 178:21

 is now 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    239
John Grantland, 03/12/2024    Index: informing..involvement

**informing**
178:22 180:1 193:15

**initial**
15:10 18:2 60:25 72:2
83:11

**initially**
19:22

**initials**
124:25

**initiate**
128:11 164:1

**initiated**
45:17

**injured**
24:14 77:25

**injuries**
15:20 69:10,11 159:21

**injury**
24:14 39:24,25 40:4 69:1

**ink**
125:16

**inside**
37:9 86:20

**insistent**
80:25 81:2

**insisting**
82:22

**insofar**
9:21

**instance**
32:22

**instructed**
190:3

**instructions**
22:22

**insurance**
14:6 30:20 67:2,3 114:9,
21 138:16 166:5 186:15
189:7 201:6

**insured**
16:16

**insured's**
29:16 58:18

**intend**
73:25

**intent**
19:8

**interaction**
147:21 148:23 151:6
162:19

**interesting**
79:6

**internal**
24:25 25:8 38:16 50:20
51:3

**internist**
40:15 63:14

**interrupt**
25:16 87:13

**interview**
21:19 32:17 33:1 34:2
35:24,25 36:11,22

**interviewed**
27:15

**interviewing**
18:1,2

**interviews**
20:23 34:13

**into**
10:12 11:9 15:7 22:13
23:13 35:2 45:6 51:8

53:2 54:5,8,17 55:13
60:17 66:22 78:9 82:16
85:25 103:4 105:15
136:10 142:16 144:11
145:17 152:1 162:7
199:15

**introduced**
151:23

**investigate**
15:17

**investigated**
34:24

**investigating**
38:23

**investigation**
15:13 17:14,16 18:3,6,24
23:1 27:14 34:19 35:2
37:25 62:21 83:8,11
126:5 166:6,13,20,22

**investigations**
17:22

**investigative**
156:12

**investigators**
33:17,21

**involved**
14:11 17:9 18:19 19:6,24
20:1,11 21:2 22:20 32:23
33:23 34:25 35:1,4,12,15
37:22 39:12 40:11 42:22,
23 48:19 51:14 56:12
72:25 74:24 83:5,11
93:18 106:25 161:24
163:2 176:23

**involvement**
19:9,15 72:22,23 93:23
116:9 158:17

 is now 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                          240
John Grantland, 03/12/2024                           Index: involves..it

**involves**
9:1 96:15

**involving**
65:25

**is**
9:6,21 10:18 11:15
13:14,21,22 15:3 16:6,8,
12 17:23 18:23 19:9 23:3
24:2 25:17,23 26:2,4,22
27:8 28:2,11 29:12 30:3,
10 31:2,14,25 32:3 34:10
36:10,20 37:10,23 38:9
41:5,8,18,20 42:13 44:2,
3,21 47:24 48:2,3,7
51:21,22,24 52:22 53:3
54:3,18 55:7 56:7,8,13,
19,22 57:5,6 58:11 59:23
60:25 61:2,9 63:10
64:10,14,18,21 65:19,20,
24 68:9,11,14 70:16
73:24 76:7,20,24 77:13,
18 78:17,18 80:3 81:3,18
83:5 85:23,24 86:2,11
87:8,10 88:14 89:8 91:3,
17,21 92:12,16 94:11,20
96:2,3,4,9,14 99:2,18,20,
22 100:1,25 101:1,3
102:15,16,20 104:8,11
106:8,12,15,22 107:8
109:22,23 110:1,4,5
111:11 112:21 113:4,5,6
114:11,24 118:12,14
120:12 121:11 122:9,15
123:2,10,19 124:9,24
125:7,8,13 126:8,19
127:5,8,12 128:7,15
129:8 130:9,10 133:25
140:3 142:3,5 143:1
145:1 147:20 149:8,10
152:11,16 153:16 155:12
156:3,4,6,16 157:4

159:11,14,22 161:25
162:3 165:4,11,12,23
166:9,24 168:17,23
172:6,17,20 173:5,18
174:3,5,14,19 175:9
178:1 179:9,20,21,25
180:7 181:14 182:1
184:3,7,12,13,15,18,21,
22 185:6 186:1,10,13,24
187:7 188:15 189:5
190:1,18 192:11,24
193:13,17,23 194:13
195:23 197:6,7,15

**Islandton**
78:24 79:3

**isn't**
16:3 132:6 140:21
173:24 174:1 197:25

**issue**
9:6,7,10,14 24:16 53:4
86:15 96:22 156:19
176:22 179:1

**issues**
38:24 40:4,12 49:11
56:20 63:23 65:9 74:3
80:23 82:2 84:13 101:3
176:21

**it**
9:9 12:1,5,9 14:17 15:15
17:21 19:5,21,22,24
21:2,6,10 23:12 24:7
25:7,14 26:22 27:4
28:17,18,20 29:8,12
30:19 31:5,10,11,13
32:16 35:19 36:4,11,12,
18,19 37:3,9,25 38:17,20
39:21,23 40:2,3,5,14,15
42:24 44:20,21,23 45:7,
15,18,21,23 46:8,14,16,
17,24,25 47:6 48:4 51:1,

6,22 52:12,13,16,24
53:8,12 54:4,15 55:19,
20,24 57:9,21 62:8 63:4,
6 64:11,20 65:25 66:7,8,
9,19 67:20,21 69:6,11,16
70:12 72:8,12,17 73:9,25
74:10,11,13 75:10 76:6,
24 77:2,14,21 78:25
79:6,7,8 80:4,8,9,15,17,
18,21 81:4,5,21 82:25
83:9 84:22,25 85:1,5,18,
22 86:13,15,16,21 87:18,
20,21,23 88:1,22,25 89:2
90:9,13 91:2,3 92:1 93:8
96:12,15,21 97:3 98:9,11
99:7 100:9,17 101:12,14,
23 102:4,25 103:1,8,14,
16 104:16 105:3,6,7,13,
19 106:25 107:6,19,23
108:2,8,17 109:2,5,8
110:4,11,14,25 111:1
112:11 114:1,9,12,15,16,
22,23,25 115:2,14
116:13 117:5,17 118:14,
15,16,19 119:7,18 120:1,
11,17,19,25 121:10,13,
18 122:13,16 123:4,20,
21,24 124:4,5,7 125:7,
12,17,25 127:2,3,10,11,
12 128:21 129:24
130:12,13,14,22,23
131:3,9,10,12,15 132:6,
11,23 133:1,8,9,13,16,23
135:13,22 136:2,9,10,18,
19,21 137:13,19 138:19
140:2,18,19,21 142:15
143:9,18 145:7,8 147:18
148:15,17,21 149:2,4
150:14,15,17 151:4,20
152:23 153:1,7,8,16,18,
25 154:17,21,22 155:3,5,
13 156:8,10,14,20 157:4,



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH            241
John Grantland, 03/12/2024                          Index: it's..just

16,19 159:9,10,18,19,20
160:10,12 161:9,12,25
162:3,12,17,18,21,23
163:5 165:11 166:3,14,
22 167:25 168:1,22
170:15 172:2 173:9,19
174:8,14,15,17,19,23
176:5,18 177:2,7,9,20,23
179:20 180:13,20 182:2,
12,13 183:1 185:7,25
186:18,21,22 187:12
188:4,5,19 189:10,17,19
191:15,20,22 192:25
193:12,25 194:17 195:8,
18,19,22 196:19 197:3,4,
5,7,12,13,15 198:1,10
199:17,24 200:24 201:3,
4,15,16,19,24

**it's**
9:18 10:18 11:4 13:23
24:1 28:5,8 31:12,23
36:21 42:16 44:10 47:24
53:8,24 54:15 55:20
57:25 59:3 66:1,9 67:23
68:8 70:1 71:2,23,25
74:22 75:2 76:13 77:4
78:12 79:10 80:5 87:9
89:17 90:15,16 91:5,6
94:15 99:8 102:5,13
106:9 108:24 113:9
118:15,17 121:20,21
124:11 125:3 126:20
130:21 133:5,11 135:21
136:21 140:1 141:3
153:16 155:13 156:7,9
159:12,18 160:1,9 161:1,
3,8 165:24 169:3 170:10
172:1 174:2,13,15,16,20
177:22 179:5,7 180:16,
17 181:16,22 182:17
183:13 188:11 189:16,

18,20,22 194:19 201:20

**itemized**
27:6

**items**
64:24

**itself**
10:9 38:11 78:17 93:24
105:10 160:3

---

## J

**J.R.**
14:14,17 24:1 28:19
38:17 160:20,23,24
165:25 166:13 176:17,22

**Jaan**
25:17,23

**January**
47:24 48:4 51:18 55:7

**Jim**
41:13 160:10 165:4

**Jimmy**
51:6 53:18 59:23 62:10
64:1 91:8 188:5

**job**
42:23 45:4,13 53:13
138:4 144:21 149:22
161:1 162:24 166:15
168:16

**John**
12:12,24 13:6 14:3,4
19:5 23:16,23 26:20 34:9
41:18 42:8 57:3 60:1
64:9 116:7 166:4 172:24
188:14 201:24

**Jon**
43:9,14 70:13 71:5,9,13

72:3 73:12,17 88:16
143:5 144:7 145:14
150:9,10 152:20 153:4,
18 172:23

**Jon's**
142:16 144:3,4 145:11
173:1

**judge**
10:25 101:14,15 104:17,
19 107:2,14 108:9,18
109:24 111:1 112:3
119:8,12 124:12 126:20
127:1 128:11 129:18,22
130:2,20 134:3,9,10
135:5 154:20,25 155:2,
14

**judge's**
133:7

**judgment**
176:15,19 177:6,11

**July**
24:1 160:15

**jump**
118:5

**jumping**
24:14

**June**
118:15 119:8 130:2,3,20

**jurisdiction**
136:24

**Jurisdiction's**
79:23

**jury**
29:22

**just**
9:5 10:10,11,14 11:24
14:20 15:23 16:1 17:18




NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          242
John Grantland, 03/12/2024                    Index: jut..known

23:12,24 24:21 25:17
26:1,2,9 28:12 29:6 30:7,
19 31:3,6 34:22 35:25
37:19 38:25 40:9 41:24
42:9 45:5,9 46:7 47:6,10,
24 50:7,10,14 51:22
52:14 53:21,25 57:4,21
60:2,5 61:25 62:18 65:5
66:19 67:9,22 68:23
69:6,14,25 71:7,12
72:13,15,25 74:4,12,15,
16,23 79:3,20 80:16
81:14 83:10 86:21,22
88:25 91:2,6 99:7 100:16
103:14,18,22 104:14
105:3,6,13,23 107:19
109:7 114:7,8,15 116:7
117:7,15,20 121:22
126:7 128:5 129:25
130:22 131:5 135:7
137:4 138:22 139:24
140:8,10 141:5,20
142:20,23 143:6 147:10
148:8,9,16,22 149:18,21
150:1,5,9 153:4,16,17
154:18,22 156:1,20
157:12 158:6,10 159:20
161:1,3 162:11,14,23,24
165:22 166:2 167:22
170:15,18 172:24 174:22
179:7 181:24 182:22,24
183:4,8,23 184:17
185:20,24 187:6 188:3
191:17,25 195:22
196:13,22 198:1 199:1,
13 200:16 201:25

**jut**
74:19

## K

**keep**
26:13 72:16 122:19
136:16 178:14 195:20

**keeping**
137:2

**keeps**
109:8 192:25

**Kennedy**
75:11 96:9,13 146:10,11

**key**
16:1

**kill**
39:25

**kind**
12:19 15:1 40:18 45:15
47:7 63:22 70:3 79:3
85:5,23 96:7 98:8 118:5
127:21 128:5 136:10
142:23 148:9 160:1
162:14 200:3

**King**
48:17 55:4 192:21

**knew**
25:14 31:14 43:17 47:21
49:21 50:14 57:12 71:9
80:20 81:5 83:12 107:16
136:6 158:8,9,10 167:23
169:11,21 170:2,7
178:13

**know**
9:1 13:8,16 14:15,16,20,
22,23 17:19,25 18:25
19:20 21:2 27:13,16
28:17,19,25 29:6 30:2,9,
19 31:12,14 33:19 34:22,

23,24 35:22 36:2,6,19
37:19 38:20,21,24,25
42:9,17 44:22,23,24,25
45:10 46:5,6,17,19,24,25
47:10,11,12 48:1 49:5,19
50:8 52:11,14 53:12,17
54:3,23 55:15,21 57:4,
11,14,15 58:19 59:7 63:4
65:5,6 67:1,9,13,20
68:18 69:10 71:11,23
72:10,24,25 73:5 74:20
75:25 78:23 80:13,24,25
81:11,16,18 82:17 84:3,
9,23 85:16 86:3 96:8
100:1 103:18,22 105:3,4,
14 107:4,15,16,20
108:11,13 111:19,24
112:19,20 114:3 119:17,
19 120:25 123:4 124:6
128:2,6,7,8,11,15 130:7,
8,12,16 131:22 135:17
136:2,10 137:4 139:14,
18 142:2,10,15 143:5
144:18 147:5,6 148:8,22
149:20 150:1 152:24,25
153:1 154:10 155:4
157:2 158:9,11,14
159:25 160:20 161:1,18,
20 162:6,10,11,14
163:18 166:12,14,15,23
167:22,24 169:18 170:10
171:8 176:23 177:8,10
179:9 180:15 185:6,21,
24 191:6 198:14 199:10,
11,14,23 201:22

**knowledge**
9:4 102:23 119:15
169:11

**known**
66:12 143:18 144:12

 is now 

**knows**
   9:7,10,11,17 43:19
   130:16

**Konnor**
   15:3 24:1

**Kuhn**
   50:12 94:18 95:1 103:4
   116:10

---

### L

**label**
   108:25 109:8 123:2

**labeled**
   76:21 78:12 87:9 91:18
   104:8 106:9 113:6
   189:10

**lack**
   37:22

**language**
   94:14 99:5 196:15
   197:24

**large**
   159:21

**last**
   37:7 44:9 77:14 78:18
   85:5,6 86:2 87:14 92:16
   113:14 187:7,22,24
   195:14

**later**
   10:19 11:6,20 14:6 37:1
   59:15 82:3 111:23
   113:14 129:20 135:22
   150:16 158:22

**law**
   15:4 50:12 52:16 72:13,
   14 119:8,13 129:19
   130:2,20 160:17,18,25

161:1 165:24 202:10

**Lawson**
   37:18 39:7

**lawsuit**
   29:13,14 52:13,15 72:14
   97:15 101:3

**lawyer**
   32:7 38:23 71:8 72:22
   74:21 81:17 114:8
   121:16,17 127:4 136:8

**lawyers**
   75:14 85:25 130:14
   131:13 155:13 200:24
   201:14,22

**lead**
   40:5

**learn**
   50:13

**learned**
   51:12 138:9 173:5

**least**
   13:9 15:17 21:1 63:23
   73:9 80:13 126:19
   142:17 150:14 154:1
   166:12 178:17

**leave**
   147:23

**leaving**
   86:3

**led**
   68:23 69:11 83:17

**left**
   85:5 150:24,25

**legal**
   160:16

**lengthy**
   54:8

**less**
   81:1 85:2 136:20 154:2
   173:14

**let**
   13:16 15:5 16:1 22:17
   24:7 26:1 29:7 45:3,12,
   24 46:1 53:13 88:13
   102:5 103:18,22 105:8
   107:4 117:17 123:1,17
   124:14 126:16 149:21
   150:1 162:24 168:16,19
   169:7 173:18 174:5
   175:8 177:19 179:5,12
   187:8 196:22

**let's**
   22:23,24 29:9 36:25
   42:17 46:13 53:7 54:6
   56:18 85:17 97:20
   130:15 131:24 145:5
   156:9 165:6,15 177:13,
   19 189:18

**letter**
   27:14,16,17,18,21,23
   28:5,11 29:7,8 31:5,25
   32:3 34:10 35:19 37:7
   40:25 41:20 42:4,13,14,
   19 48:7,8,12 68:3,8,11
   70:7,13,18 73:4,15 74:13
   100:20,24 101:1 108:23
   109:13,22 110:17,20,22
   111:8 112:4 120:13
   126:22 129:6,9 164:19
   165:23 170:11,15 185:6,
   10 190:1 196:12 197:6

**liability**
   24:13,16 35:6 48:23
   49:10 52:22 72:19 74:1,
   3,22 161:10

 is now 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    244
John Grantland, 03/12/2024                Index: life..Lowcountry

**life**
56:15,20 63:18,20

**like**
10:8,14 14:25 15:15 29:8
30:3,23 34:8 40:15 47:20
52:14,19 56:14 66:6,15
68:22 70:3 74:8,9 79:10
84:13 85:3,24 107:17
118:16 119:4,7 122:13,
16,18 123:4 124:1,4
126:18 127:10,11 128:21
130:10 131:9 135:23
137:22 141:5 149:23
156:8,10 157:8 158:13
160:16,17 167:13 168:4,
23 191:24 194:21 195:21
201:14 202:3

**likelihood**
29:20

**likely**
80:5

**limit**
19:7 27:3 80:19

**limits**
19:8 30:17 75:3 77:7
81:2,5 173:14

**line**
26:25 45:19,20

**lines**
90:25

**link**
37:23

**list**
27:6 48:12 54:18 63:1,2
165:10

**listed**
94:15

**Listen**
45:9

**literally**
143:13

**litigated**
29:21

**little**
15:7 23:23 28:21 182:15
198:5 200:3

**lived**
78:23

**Lloyd**
38:15

**Lloyd's**
14:5,7 16:16,18,23 19:7
30:16 37:24 38:16 39:2
75:1 83:5 97:10

**lodge**
79:3

**logistics**
47:6

**London**
14:5

**long**
9:7,10,13,17,23,25 10:5,
7,21 11:2,8,11,14,18,23
12:1,12,17 39:7 41:8,12
60:7 62:12 87:23 90:3,8,
13,16,18,21 91:10 109:8
116:18 117:2,5,7,11,13,
20 122:11 132:25 147:1,
5 160:13 164:23 165:6,
10,14 167:20 172:2,8
173:24 174:1,5,11,13,18,
20,23 179:9,11 181:16,
22 182:3,6,10,19,22
183:5,9,15,18,20 188:6,

9,15,17,21 189:14 191:8,
10,21,23 192:3 195:10
197:18 202:23

**longer**
51:22

**look**
29:8 34:9 37:1,15 40:7
52:19 57:2 97:20 118:14
122:8 157:3 174:23
186:21 188:4 191:17
192:10,20

**looked**
12:4 47:24 112:1 124:24
125:19 128:23

**looking**
38:21 51:17 56:13 70:2
88:25 170:15 177:14
183:12 189:19 191:15
196:13

**looks**
118:16 119:4,7 122:13,
16,18 123:4,22 124:1,4
126:18 127:10,11 128:21
156:8,10 157:8 160:17
194:21

**loss**
73:7

**lot**
14:25 18:1,2 21:1 43:3
48:15,18 67:17 81:3 85:2
150:3 163:22 176:2,21

**loud**
149:8

**loved**
100:12

**Lowcountry**
29:12



**LT**
127:13

**lucid**
171:6

**lump**
96:21

---

**M**

**M&g000020**
101:1

**M&g00020**
189:10

**M&g001960**
118:18

**M&g002376**
156:5

**ma'am**
125:2

**mad**
58:18

**Madam**
190:23

**made**
14:5,14 15:16 21:9 22:7,
17,19 53:16 63:14 72:18
73:1 86:25 94:16 108:6
115:2 122:1 133:16
173:13 177:8 194:22
198:10 201:9

**Maggie**
16:7 21:25 22:11 32:21
34:13 35:19,20,25 36:22
37:7,9

**Magill**
9:3,8,12,16,18,24 10:4
11:13 59:23,24 60:9

132:17 155:20 173:16
178:19 180:11,22 181:5
186:20 187:24 188:8,11,
16,19 189:2,5,17,23
190:22 191:5,14,16
192:1,4,19 194:7 195:13
196:3 197:19

**mail**
119:22 122:17 123:9,24
127:18 128:23 130:10

**mailed**
119:10 120:2

**main**
33:14

**mainly**
39:25 83:7

**make**
10:11 40:10 65:6 129:22
131:13 148:21 154:13,14
155:16,18 157:12,16
158:8 167:25 168:1
198:15,25

**makes**
57:9

**making**
30:18 31:3 38:1

**man**
92:5 100:13

**many**
84:23 195:22

**March**
58:12,24 64:18 65:20
66:4 68:9 70:19 76:10
78:18 80:4 86:24 87:17,
25 88:9,13 89:17 91:21
140:4 156:9,10 157:3
171:25 172:18

**mark**
30:5 76:12 79:19 123:18
124:21 126:16 158:24,25
173:22 179:12

**marked**
23:19 24:25 25:7 26:16,
21 27:23 28:2 31:18,22
38:4,9,10 40:25 41:5
42:4,9,10 43:22 44:3
50:20,25 54:10,15 56:1,
6,7 60:13,21 62:14,22
64:5,10 65:14,19 68:3
70:7,12 73:15 76:15,20
78:3,11 87:3,8 89:11,16
91:12,16 93:3,7 94:6,12
95:9,12,15,22,25 96:1,2
97:21 99:11,17 100:20,
24 102:8,13 104:2,7
106:3,8 109:5,13,17,21
112:24 113:4,5 118:8,13
122:4,9 123:13,19
124:18 126:12 155:22
156:2 164:19 165:23
169:3 172:13 175:1
179:15 182:2 189:10
190:21 191:2 194:4

**marking**
44:2 164:13,17 172:10
173:22 179:19

**Martin**
14:3

**material**
36:16 53:3

**materials**
17:9,14,18 25:10 32:7,21
51:4,12

**matter**
13:8 60:1 70:14 78:20
109:2 166:10



**matters**
60:6

**maturing**
24:17

**may**
17:25 19:21 22:15 23:24
29:22 34:6 37:20,23
51:13 54:23,25 65:7,8
67:6,16 71:19 74:10
77:16,21 88:22 91:24
96:11 105:19 112:20
115:11 122:15,23 123:5,
23 125:9 129:4 148:5,7
155:3 159:18 160:7
178:2 179:23 182:14
184:8 186:14 191:6

**maybe**
10:17 38:25 39:11 56:15
119:8 121:25 122:14
138:11 146:21 147:6,23
155:2 158:12 159:19
200:5 202:11

**me**
13:16,19 14:17 15:5,15
16:1,2 17:1 21:4,5 22:17
26:1 28:18 29:24 30:5
33:13 34:11,21 35:23
37:25 44:19 45:4,24
46:1,15 53:13 54:3 57:2
59:3 61:1 63:11 66:7
70:22 72:18 75:10 78:22
81:1,17 85:6 88:13
101:14 102:5 103:18,22
105:8 107:9 111:12,21
112:4 115:22 117:17
121:18 123:1,17 124:14
126:16 127:2,9 128:11,
12 135:8,11,20 140:6
147:17 151:2 154:12
156:23 163:17,20

168:16,19 169:7,15
170:6,16 171:13 173:18
174:5,7 175:8 177:7,19
179:5,7,11,12 180:13,24
181:11 182:4,7,10,23,25
183:5 184:20 186:2
187:6,8 188:9 191:18,23
192:5 194:17 196:12,22
200:4

**mean**
10:13 12:12 14:13,19
15:14 18:18 19:20 20:18
21:21 23:3 24:6,10 28:19
30:1,10 32:15 33:3,12,24
34:22 35:2,14,16 36:4,
18,20 39:23 40:2 42:20,
21 43:1,2 45:15,16,18
46:14,16 47:9 48:25
49:21 50:6,7,8,14 51:5
52:6,9 53:17 55:20 57:6,
12,21 59:12 63:6 65:5
66:6,15,24 67:21 68:25
69:8 71:7,8,12,19 72:8,
22,24 75:10,13 77:3,4,24
78:23 80:20 81:18 83:7,9
84:1,8,9,22 85:4,15 92:3
96:8,9 99:4 100:6 102:22
103:8 105:19 107:11,12
113:25 114:7 115:13,14
117:12 119:17 120:11
121:19 125:12 127:4
130:7,12 133:1,8,9,11,23
135:13 136:1,2,6,17,18
137:12 138:9 139:8,18
140:8 141:25 142:2,3
143:23 144:4,11,13
146:3,5,6 148:4,18,21
150:9 151:20,24 152:6,7,
23 153:24 154:1,7
155:12 158:6,23,25
159:25 161:9 162:9

166:11,21 167:17
168:11,12 171:1 176:2,6,
20 177:5 178:15 180:12,
23 181:4,6,7 182:11
185:20,24 195:21 197:20
198:10,20,21,24 199:19,
23 200:2 201:24

**Meaning**
123:22 186:1

**means**
81:1 186:18

**meant**
57:3 77:21 167:10
185:20 195:24

**mediate**
22:17,19 30:22 45:12
46:13 72:4 80:24

**mediated**
44:22,23 45:8 46:9

**mediating**
80:25 81:3

**mediation**
10:1,3,8,23 14:15 15:16
21:3,17 28:15 31:10,11
32:4 34:17 42:18,24
43:3,6 45:6 49:2,8 55:14,
17 57:7,23,25 59:11,15
60:20 64:21 66:22 67:16,
20 70:13 71:20 73:3,25
74:2,7,17,21 75:4,9 76:8,
10 77:2,4 78:17 79:20
81:19 82:2,7,19,21 84:10
86:10,18 87:14,16 88:5
98:6 103:11 105:5,8,11
137:16 138:11,12
139:15,20 140:3 142:8,
13,16,23 143:10 145:5,7
150:19 151:4 152:13
153:18,22 156:16 157:4,



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    247
John Grantland, 03/12/2024    Index: mediator..Monday

6,9,11 162:22 166:15,16
169:4,6,8,9,12,13,16,22
170:2,7,17,22 171:4,14,
20,24 172:21 173:9
177:9 187:11 199:3
200:21

**mediator**
43:16 86:25

**mediator's**
85:9,10

**mediators**
84:25

**medical**
18:15 27:7 30:9 35:3
37:5 39:16 43:8 48:12
55:10,12 63:5,7 69:15,16
77:16 158:13 169:17,22
171:17

**medication**
40:11

**medications**
54:18,21,23 170:3,8

**meds**
40:21 80:12,15

**meet**
75:25 143:11

**meeting**
82:17 142:13 154:25

**members**
32:18,22 33:2

**memo**
15:2 23:24,25 160:16

**memorandum**
23:19

**memory**
52:7

**mentioned**
14:18 24:4 31:21 32:1
105:6 137:14 138:22
157:24 158:24 198:4,6
200:18

**mentioning**
58:11

**message**
47:11,23

**met**
74:5 103:12 199:14

**middle**
104:23 122:16 123:6

**midway**
36:12 61:15

**might**
23:12 29:22 39:10 61:24
66:22 87:13 130:5
136:21 196:16

**Mike**
158:24

**Miller**
23:3,5,10 26:23 27:12
29:20 34:5 41:22 43:17
51:8,11 54:2 56:19,23
58:9,11,23 61:16 63:3,6
64:15 65:20,23 67:14
68:9,12,21 69:4 75:12
77:9 78:15 80:4,17
86:20,21,22 88:16 91:19
92:18 93:13 99:20,25
104:11 105:2 106:13,16
112:13,14 113:7 140:8
159:8 161:18,21 162:2
168:7,8 169:9 172:18
175:10,16 178:2,11
179:22 181:2 184:7
186:6 187:1 200:19

**Miller's**
27:1 53:2

**Miller/nautilus**
172:6 174:4 179:20

**million**
16:24 80:10,12,18,22
81:3 85:14 97:3 138:17
173:1 190:2

**mind**
108:25

**mine**
110:13

**minimal**
176:3

**minor**
140:10

**minute**
57:2 70:1 138:23 189:14,
15

**minutes**
187:25 188:20

**misplaced**
130:22

**missing**
55:13,19

**misstated**
87:14

**mix-up**
135:16

**moment**
104:15 141:23 179:7
181:12 187:6

**Monday**
106:17 107:21,25 136:11
155:5 180:2

 is now 

**money**
81:4,20 83:10 84:13 91:6

**monies**
97:9

**months**
21:13

**more**
35:2,6 40:11,14 62:18
72:13 83:9,12 85:1 86:15
89:8 90:25 91:2 96:14
100:10 149:6 156:1
166:15 178:10 189:25
194:8

**morning**
80:4 89:25 90:18 107:21
136:11

**Moselle**
16:7

**Moss**
50:11 94:18 95:1 103:4
116:10

**most**
35:22 46:8 80:14 81:6
83:8 99:5 147:2,3

**motion**
11:22

**motivated**
81:20

**Mountain**
90:9

**move**
23:13 54:6

**moving**
60:17 178:5

**Mr**
9:3,4,7,8,10,12,13,16,17,
18,23,24,25 10:4,5,6,7,
17,21 11:1,2,3,8,9,11,13,
14,15,18,19,22,23 12:1,
11,12,14,15,17 13:5
15:11 17:10,15 19:15,23,
24,25 20:7,11 21:8,9
23:22 24:1,20 25:3,5,6,
12,16,19,20,22,24,25
26:3,12,14,19,23 27:11
28:1,7,10,11 29:11
31:20,21 32:1 33:6 34:12
37:6,17 38:7,18 41:3,8,
10,12,13,16 42:7 43:25
49:18 50:23,24 52:7,16
53:15,18,20 54:13 55:4
56:4,25 59:18,23 60:7,9,
10,16,17,25 61:5,12,13
62:10,12,17,18 64:1,8
65:17 66:1 68:6,7 69:25
70:10,11,13,18,20 75:18
76:18,19 78:6 81:25
82:10,14,15,22 83:23
85:11 86:9 87:6,12,16,
18,20,22,23,24 88:1,2,7,
9,12,15,16 89:14,15
90:3,5,7,8,10,13,15,16,
17,18,20,21,23 91:8,10,
15,16,25 92:9 93:6 94:9,
10 95:18 99:14 100:14,
23,25 101:2 102:11,17
103:10,12,17,24,25
104:5,6 106:6,7 108:9,
12,21 109:2,5,9,11,19,20
110:4,9,13,16,19,20,21
112:7,16 113:2,15 115:9,
21,24,25 116:6,12,14,18
117:2,5,7,11,13,20 118:2
122:11 124:23 126:17
132:1,17,25 142:22
143:4 155:20 156:6,18
160:13 161:21 162:2,7
164:12,14,16,22,23
165:2,6,9,10,12,14,19,
21,22 166:3 167:10,20
168:6 172:5,6,8,10,16
173:16,17,24,25 174:1,2,
5,7,9,11,12,13,15,18,19,
20,21,23,25 175:2,5,6
176:1 177:3,14,17,18,20,
22,24,25 178:19,20
179:9,11,12,18 180:11,
18,22 181:1,5,9,13,16,
17,22,24 182:1,3,5,6,8,
10,12,14,16,17,18,19,20,
21,22 183:2,3,5,7,9,11,
15,16,18,19,20,21,24
184:1,2,3 186:20,23
187:19,21,24 188:6,8,9,
11,15,16,17,19,21 189:2,
3,10,14,16,17,20,23
190:14,22 191:5,8,10,14,
16,21,23 192:1,3,4,14,
17,19,21,24 193:16,19
194:7 195:4,9,10,13
196:3,5,10,11 197:18,19,
23 198:6 199:6,7,17
200:9 202:23

**Ms**
11:21,25 12:16 16:6,11
18:15 26:23 27:1,12
29:20 34:5 35:1 36:5
39:18 41:22 43:17 45:11
49:12,15 51:11 53:2
54:2,24 55:9 56:19,23
58:9,11,23 60:23 61:16,
19 62:8,9 63:3,6,24
64:15 65:20,23 67:14
68:9,12,21,24 69:4 72:23
77:9 78:15 80:4,17 82:8
83:21 86:20,21,22 88:16
91:19 92:18 93:13 99:20,
25 103:23 104:11 105:2
106:13,16 109:1,3,7,10

 

110:1,7,11,14,18 112:13,
14 113:7 116:16,19,25
117:3,6,9,12,14,21
118:1,11 121:4 122:7,12
123:5,16 124:20 126:15
129:22 130:20 131:8
132:18 133:3 138:2
155:25 159:8 160:14
161:18 163:10 164:5,7
168:7,8 169:9,17,23
170:2,8,18,22 171:5,15,
21 172:18 175:10,16
178:2,11 179:22 181:2
184:7 186:6 187:1
198:19 200:15 202:21

**much**
84:2 144:5 147:2 194:12

**Mullen**
101:14,15,16 104:20
107:2 108:9 109:24
111:1 112:4 124:12
126:20 127:1 128:11
129:22 134:3 135:5
154:25 155:2

**Mullen's**
108:18 119:8,12 129:19
130:2,20

**multi-factor**
68:22

**multi-factorial**
77:19 171:22

**multiple**
171:15

**Murdaugh**
14:6,9 15:11 16:7 17:5
20:24 21:9,20 22:1,4
25:12 34:13,14 36:11
37:7 44:11 49:20 50:18
52:7 53:15 57:16,20

58:7,12,24 65:25 66:18,
21 71:14 73:9 82:22
88:16 112:16 113:15
115:9 134:19 162:20
187:19

**Murdaugh's**
29:11 52:16 66:1

**Murphy**
14:14 17:10,15 19:25
20:7,11 24:1 26:23 38:18
118:17 123:2 125:3
160:20 161:21 162:2,7
165:25 166:3 176:18
177:3

**Murphy's**
15:11

**MUSC**
171:4

**my**
14:7,13 16:5,9,13,20
17:24 18:8 19:10,20
25:14,22 26:12 37:10
39:9 41:11,14 42:9,23
45:4 47:2 50:1,14 52:8
53:13 59:3 61:12,20 76:7
79:16 88:2,10 92:12
98:10 100:14 112:12,22
113:19 117:16 119:6
133:12 144:21 153:7
156:3 159:14 163:4
165:4 166:15 168:4,16,
19 170:10 173:21 182:15
183:13 187:7 189:5
197:15

**myself**
90:21 165:4

## N

**name**
14:1 16:2 58:19 165:4
189:5

**named**
75:11

**nature**
84:5,21 93:25 99:16

**nautilus**
14:6,8 15:12 16:17,25
17:1 21:9,24 23:8 24:25
25:8 27:12 29:17 30:17
38:17 39:1 47:2 48:24
50:20 51:2 53:2 59:24
60:4 81:10 86:15,20
93:18,23 96:17 97:2
110:15 113:5 114:21
115:2,6,9 132:19 133:9
134:12,14 156:24 161:21
162:2,10 166:5,13,22
169:11,16,21 170:2,7,17,
21 171:3,14,19 172:25
173:5,13 176:18,23
177:10 180:9,13,19,24
189:6 198:6,8,17,23

**Nautilus's**
36:17 59:10 125:20

**Nautilus_000255**
26:22

**Nautilus_000287**
38:10

**Nautilus_000296_001**
41:6

**Nautilus_000325_001**
42:10

**Nautilus_000327**



44:4

**Nautilus_000410**
54:16

**Nautilus_000465**
60:22

**Nautilus_000474**
56:7

**Nautilus_000508_001**
68:10

**Nautilus_000526**
64:11

**Nautilus_000533**
62:23

**Nautilus_000554**
65:19

**Nautilus_000577**
78:12

**Nautilus_000593**
87:10

**Nautilus_000608**
91:18 93:9

**Nautilus_000620**
94:12

**Nautilus_000660**
99:22

**Nautilus_000678**
104:9

**Nautilus_000681**
106:10

**Nautilus_000683**
113:6

**Nautilus_000771**
25:23

**Nautilus_002240**
76:21

**Nautilus_002286**
110:6

**Nautilus_002303**
31:24

**Nautilus_002314**
31:25

**Nautilus_002323**
28:8

**Nautilus_002325**
28:9

**Nautilus_002453**
51:1

**Nautilus_002565**
102:14

**Nautilus_683**
182:5

**necessarily**
144:12 153:15 161:8

**need**
13:15 25:25 43:4 44:21
45:4,10 47:14 57:15
103:21 110:7 146:21
148:8,11 149:18,21
154:22 157:2 177:8
188:5 193:21

**needed**
27:7 43:8 105:23 146:7
154:22

**needs**
20:22 67:22 92:5,6 108:4
121:18

**negative**
148:23

**negligence**
52:23

**negotiations**
83:19 151:15

**neither**
63:20 96:25

**neurological**
39:23 40:4

**neurologist**
171:10,11

**neuropathy**
169:23

**neurosurgeon**
169:18 171:5,7

**never**
22:2 30:23 39:14 46:16
49:3,13,16 58:19 69:3
111:1,25 126:9 129:7
152:4 191:20,22 195:5
202:1

**new**
61:9 65:1 91:6 117:9
129:5

**news**
66:15 105:6 136:21
180:4 201:25

**next**
36:9,10 53:19 62:11 64:2
89:9 91:9 92:22 139:17
173:18 186:8 193:21

**no**
17:6 20:3,6,14,16 21:21
22:2,5 25:11 26:3 30:21,
25 31:1 32:15,16,19
33:3,7,10,22,24 34:8
35:18 37:2 39:15 45:25
46:2,14 47:19 48:25 49:5
51:5 52:23 57:18,21,24
58:6,8,21 61:8 62:5

 is now 

63:19 65:3,5 70:1 71:7,8,
15,17 72:24 73:14 74:14
75:3,6 77:24 79:20 81:9
83:7 84:6,8 86:10 89:19,
21 91:5 93:20,22 94:1,
21,23 96:20,25 97:15,17
98:2 100:9 101:22 103:8,
13 105:23 107:3 109:1,3,
10 110:7 112:10,17
113:25 114:11,15,20,22
115:8,21 116:11 119:17
120:25 121:7 125:24
129:6,24 130:18 131:2,4,
18,22 134:21,24 135:2
136:6 143:20,23 147:12,
16 148:20 149:6 150:20
151:7,9,12,16 153:7,13,
14,15,21,24 154:15,22
155:9,11 157:23 162:12
163:23 174:2,11 175:21
177:5,7,12 178:15 179:3
182:1 186:5 187:4,15,18,
20 190:10,13 192:18,25
193:8 194:16,24 195:2,6
200:9 201:1,3,17,20
202:2,4,8

**nominal**
30:7 159:21

**non-structuring**
115:1

**none**
31:15 97:1 114:18

**nor**
35:25 187:4,5

**normal**
149:7

**normally**
74:20 163:24

**north**
150:10

**not**
9:2,3,19 10:22 12:3
13:14 14:12 20:8 28:18
30:3,25 33:4,22 34:4,5
35:13 38:1 39:7 43:4
46:14,16,17,18,22 47:12
52:13 54:5 55:21 58:3,
17,25 59:10 60:3 62:1
63:4,6 65:8 66:7 67:1,13
69:5,8,14 72:10 73:25
74:7,11,13,14,23 77:22
78:20 81:4 82:4 84:2,11,
15,20 88:24 90:1 91:4
92:19,20 95:20 96:9 98:7
99:4 100:10,18 101:20
102:24 105:5,20 108:4,
22 110:22 111:16 112:18
115:13 119:24 121:20,24
123:10 127:2 128:9
130:4,23 132:20,21
134:5,6 137:12 139:11
140:3,14,16 141:1,14,15
143:9 144:12 145:1,6,8
149:12,19,21 150:13
152:23 155:8 156:16,23
157:18 159:12 161:8
165:7,10,13 167:24
168:1 169:18 171:8
173:8 174:2,16,17
175:20 179:3,5 182:3,4,6
186:18 188:6,14 189:18,
20 190:21 191:6 193:7
198:22 200:23 201:12,20

**note**
51:16,22

**notebook**
165:7 181:22

**notes**
21:7 22:6 24:25 25:9
34:12 50:20 51:3

**nothing**
69:16 193:11,16,25

**November**
14:12 26:23 28:5 31:5
165:24

**now**
23:13 26:20 31:22 41:4
42:8 44:2 47:13,22 54:3,
14 56:5 62:22 65:18 68:7
70:11 76:19 78:10 79:17
80:2 87:7 89:15 93:8
94:10 95:24 97:14 99:17
100:24 102:12 106:7
113:3 115:22 120:6
160:1 183:5 186:13
188:3,20

**number**
20:20 21:6 23:19 24:25
26:10,16,21 27:23 28:2
31:18 38:4 40:25 42:4
43:22 50:20 54:10,16
56:1 60:13 62:14 64:5,11
65:14 68:3,10 70:7 76:16
78:3 79:22 80:11 85:1,9,
12,16,21 86:25 87:3
89:11 91:1,12 93:3 94:6
95:9,13,15 96:3 98:2
99:11 100:20 102:8,14
104:2 106:3 109:6,13,17
112:24 117:16 118:8,13,
18 122:4,9,10,11 123:13,
18,22,25 124:5,18,22
126:12 128:9 150:17
155:22 156:3 160:15
164:19 172:5,13 174:14
179:15 181:25 182:15
190:22,24 191:2,13



193:2 194:5,9

**numbering**
116:23

**numbers**
25:18 31:24 51:1 77:5
80:11 117:1,16 124:7
191:13

**nurse**
137:24

## O

**obedience**
73:10

**object**
11:6 132:17 155:20
173:16 178:19 180:11,22
181:5 186:20 192:17

**objected**
141:1

**objection**
132:25 153:19 167:20
195:9,10 197:18,19

**obligation**
12:13 97:1

**obtain**
135:5

**obviously**
10:13 19:4 53:5

**occurred**
10:3 105:4 177:2

**occurrence**
16:14,24

**occurring**
192:11 193:23

**October**
192:11

**ODC**
118:23,24 122:1

**of**
9:4 10:19 11:22 12:3,19
13:8,13,14,22,24 14:5,
12,25 15:1,10,11,12,17,
24 16:14 17:10,13,21,22
18:1,2,3,13,15,24 19:1,2,
15,17,21,25 20:10,12,23,
24 21:6 22:13 23:24
24:17 25:20 26:5,7,8,9,
25 27:4,10,14,21 28:22
29:8,12,17,20 30:12
31:7,15,23 32:12,13,17,
20 33:1,8,21 34:10 35:3,
4,6,15,19,24 37:22 38:8,
13,14,16,24 39:16,18
40:12,14,15,16,18 42:13
43:3 44:9,16,21 45:15
46:8,25 47:7,17,22
48:12,23 49:2,4,17,25
50:12 51:3,17,21,22
52:7,22 53:22,24 54:18,
22 55:2,3,8,9 56:6,15,17,
22 58:3,9,10 59:10,25
60:3 61:3,6,10,15,23
62:2,8 63:1,2,22 64:2,17,
20 67:2,17,22 68:11,15,
23 69:19 70:3,12,13
71:5,6,16 72:9,11,14,19,
21 73:3,7,15,22,24
75:11,13,14 77:10 78:11
79:3 80:2,21 81:4,6,7,22,
25 83:5,8,12,19,24,25
84:3,4,10,21 85:5,23
86:11,20,23,25 87:10,14
88:17 89:8 90:25 91:2
92:16 93:7,18,24 94:2,17
95:12 96:3,7,14,15,16

97:1,14,22 98:8,9,16
99:2,5,16 100:15,16
101:1,20 102:8,15,16
103:4 104:13 105:15,20
106:22 108:17,22,23,25
111:9,17 112:8,15 113:7,
15,22,24,25 114:18,22
116:9 118:4,5,17,20,23
119:8,24 121:19 123:3
124:6 127:1,21 128:3,5,9
129:15 130:16,20 131:20
133:6 134:5,8,9,19,23
135:1 136:10 138:7,12
139:19 142:23 145:8
147:2,3,9,20,21,22,25
148:9,18,22,23 150:10,
18 152:3,7,15 153:12,22
154:25 156:4,7,9 157:9
158:11,14 160:1 162:7,
14 165:3 166:6,10,23,24
168:3 169:5,16,22,24
170:1,7,16,21 171:4,6,
14,19,22,24 173:1 175:7,
10,13,18,25 176:2,20,21
178:6,14,23 183:19
184:4,10 185:15 186:3,7
187:2,12,16,19 188:12
189:6 190:11,12,17
191:6 193:14,18,22
194:4,13,19,22,23 195:1,
18 198:11,18 200:3,4,7
201:4,11,12,15

**off**
24:20,23 42:16 69:25
76:2 82:8,12 83:22
116:22 149:19 181:20

**offer**
83:5 86:25

**offer/counteroffer**
84:14



**offering**
68:18

**offers**
82:25

**office**
126:3 130:10 142:16
145:11,14 152:20 200:8

**officially**
186:13

**often**
100:10 159:22

**Oh**
92:20 120:3 136:17
140:5 147:4 149:25
174:9 177:20 182:3,8

**okay**
9:12,25 12:18 13:18
14:1,11 15:5,21 16:10,
14,18 17:13,18 18:5
19:11,13,19 20:7,10,15,
17,23 21:7,12,19 22:22
23:6,12,17 24:20 25:3,15
26:12 27:19 29:4 30:14
32:6 33:6,11,16,23 34:9
36:1 37:12,17 38:8 39:3,
10,14,16 40:20 41:4,12
42:8,12 44:1,5,19 45:14
47:16,22 48:22 49:6,9,15
50:16 53:1 54:5 55:18
56:17,22 57:10,16 59:14
60:10 61:4,23 62:3,7,10,
12 64:1 65:1,11 66:12,
14,20 68:1 69:13,18,24
71:4,13,18,21 73:15,22
74:6,18 75:1,24 76:5,12
77:6,23 80:2 81:7,13,22
82:1,6,21 83:19 85:14
86:4,18,23 87:7,22 88:2,
19,23,25 89:8,20,24

90:2,5,11,17 91:7,10
92:11,15,23 94:2,24
97:6,14 98:4,13,22 99:9
100:12,14 101:10 103:1,
17,25 106:1 107:5,13
108:16,20 109:5,20
110:18,24 111:3,13,15
112:5,15,18 113:3,12
114:13 115:21,23
116:18,19,25 117:2,11,
14,21 118:6,22 119:1,3,
7,23 120:1,10 121:2,4,8,
14,22 122:8 123:3
124:14 125:15 126:2,16
127:10 128:17 129:8,12,
17,22 130:9,15,19,25
131:5,24 133:10 134:18,
25 135:11,23 136:4,15
137:1,6,8,11,21,25
138:3,5,10,21 139:4,13
140:17,21 141:23 142:1,
4,12,22 143:8,14,21
144:1,6,10,14,20,23
145:7 146:5,8,13 147:4,
8,13,20 148:12,14,18
149:3,14 150:4,7,18
151:22 152:18,21 153:3,
6,8,19 154:6,10,13,24
155:6 157:3,21 159:10
160:6 161:5,20,25 162:6,
13,25 163:16,19 164:16
166:2,9,19 167:3,16
168:7,19 169:2,15
170:12 171:13,24 173:9,
13,17 174:12,21 176:5
177:13,15 178:4,21
179:4 181:2,10 182:8,16,
18 183:3,10,21 184:24
185:3,5,9,23 186:6
187:5,13,21 188:17,21
189:24 190:3 191:17,23
192:3,9,14,20,24 193:9

194:8,17,20,22 195:3,23
196:17,19 197:24 198:4,
13 199:1,22 200:6
201:13,18 202:1,13

**old**
160:1,2

**on**
9:9 11:11 14:22 15:11,
18,23 16:6,11,15 18:9
19:6 22:24 24:14 25:3,21
26:3,13 27:12 28:7 29:8
30:5,7,17 31:4 33:15
34:3,12 35:18 36:9,25
38:16 40:5,11,21 41:25
42:20,21 43:9 44:9,16
45:10,19,20,24 46:1,3,7
47:17,22 51:17 52:21
54:6,7,17 56:15,17 58:9,
12,22,24 59:9 60:19,23
61:3,19 62:19 63:2,5,24
64:3 66:11,21 70:1,14
71:14 73:7 75:20,22
77:9,14 78:18 80:4,5,9,
25 81:2 83:24 84:13
88:16,21,22 89:5 90:13,
24 92:20,21 94:13,15
95:21 97:23 99:19,25
100:15 102:17,20 104:22
106:15,17,22 107:20,21,
24 108:25 113:19 115:11
117:10,17,18 118:16
119:8,12,13 120:6,12
121:24 123:5,11,19,22,
23 124:4 125:16 126:19,
21 129:17 130:19 134:12
135:5 139:23 140:3
148:17 150:1 151:24
152:11 153:9 154:18
155:5 156:10 157:3,8
160:16,24 161:3 162:15
165:10,20 168:2 169:5



170:2 171:24 172:8,18
174:17 175:6,10 177:22
178:2 179:22 180:2
182:15 183:7 184:8,13,
18,22 185:1,2,25 186:1,6
188:3,14 189:5 190:23
192:16 193:7 195:22
196:15 197:9,24 200:7

**once**
25:20 59:6 115:1 131:25
132:21 180:15,16 199:15

**one**
9:6 17:22 19:21 35:18
37:2,8 38:9,24 41:11
44:16 49:22,23 50:3 53:8
56:6 61:6 62:5,11 63:2,
19 64:2 67:18 68:23
72:11 74:14 75:15 76:8
82:9 83:20 91:17 92:22
96:1,2 98:16 100:16
106:8 108:22 110:1,16
117:22 123:22,25 124:4
125:8 128:23 129:1
136:19 138:1 145:17,19
151:2 152:15 155:2
156:4,7 159:12 165:13
166:2 170:7 172:3 173:8,
24 176:20 179:6,7,11,13
180:5 181:10,12,13
182:2,22 183:8,12 187:6,
24 189:16,24 194:8
195:14,19,20 197:12
198:11 199:1,5,6 200:16

**one's**
62:22 165:7,10

**one-liner**
172:2

**ones**
127:22

**only**
13:20 26:4 35:14,17
36:23 49:8 59:6 61:9
65:7 72:9,11,19 77:22
100:8 110:16 111:1,11
127:8 128:18 147:16
148:18,22 189:8 199:14
201:25

**open**
150:14

**opening**
23:15 42:16 74:4,15
145:8

**openings**
74:12

**opined**
171:5,20

**opinion**
65:8 68:18 76:22 77:13
132:23 175:24

**opinions**
68:15 176:2

**opportunity**
188:4

**opposed**
114:9

**options**
162:10,15

**or**
9:2,20 12:8,10 13:22,23
14:21 15:1 16:17 19:25
20:2,10 21:8 23:24 26:8
29:10 30:15 32:14 33:2
34:8 35:4,12 36:22,25
38:16 39:2 40:17 44:24
45:19 46:1,23 47:2,13,20
48:3,24 49:16,24 51:13

52:21 53:1 55:16 57:5,25
59:5 62:4 63:6,20,21
65:7 66:8 67:6,9,13
70:22 71:4,14 72:5 74:3,
22,23 75:1,22 77:2 79:10
82:4 84:1,3,4,15,21 85:2
86:20,21 87:18 91:3 92:5
93:24 97:3,17 101:16
103:18,21 104:22 105:20
107:18 110:25 111:7
114:21 115:9 116:8,14
119:20 120:19 121:10,11
127:3,4 128:11,18 130:4,
5 136:1,22 137:15,18,19
138:11,24 139:5 140:19
142:9,13 143:5,19 147:6,
18 148:16 150:14,21
152:22 153:1,8 154:1
158:13,20 159:24 160:4,
25 161:9,21 162:2,18
166:17 167:17,19 168:2,
3,4,7 172:3 173:7 174:17
175:24 178:17 187:2
191:25 195:21 199:25
200:4,16 201:8,10 202:9,
16

**order**
9:9,20 12:4,9 23:14
33:25 95:15 96:4 97:22
98:24 101:7 107:23
109:16,23 110:1 111:2,7,
9,11,22,24 112:2,8,10,11
115:14 119:10,20,25
120:4,15,16 121:11,15,
18,20,21 124:11,12,17,
24 125:11,14,16 126:6,
10,23 127:6,8,9,13,17
128:7,13,16,18,19,22
129:7,10,25 130:17
131:21 132:20 133:7,9
134:1,9,14,19,23 135:1,

 is now 

5,18 136:5 153:23
175:14 184:12,23,25
185:1,18,22 186:4 187:2
190:4,9,12,14,18 193:1,
19 195:5 196:1,24 197:5,
17 198:1

**order's**
185:11

**orders**
96:10 99:6 133:12
195:12

**ordinary**
94:20 99:2

**original**
101:18 111:18 119:10
120:4,15 121:11,15
122:17 123:9,24 127:13,
17 128:22 129:6,10
130:4,17 131:10 156:3
184:13,18,22,23,24,25
185:19,22 186:1,4 187:2

**originally**
123:19 178:8

**originals**
119:21

**other**
12:6 30:3,21 46:13 49:7,
22 50:4 51:12 57:12 59:3
63:23 65:5 67:21 68:23
71:7 90:14 116:8 125:19
126:1,6 133:12 135:8,18,
19 136:7 137:4 143:19
151:3,5 162:21 167:15
168:13 195:20 198:5
199:1 201:14

**others**
21:8 86:20 88:20

**otherwise**
13:23 14:22 81:2 159:25
161:9

**our**
10:13 15:17 16:5 45:1,12
47:2 57:9 63:5 75:10
80:12 91:3 92:22 114:4
118:23 120:13 121:1
126:3,9 143:25 149:21
162:24 183:17 185:2
193:12 200:3

**out**
9:11 29:13 39:14 43:2
46:23 50:11,12 81:20
83:22 85:25 99:2 104:19
107:20 108:6,7,8 118:16
131:20 135:24 136:20
141:20,21 146:3 147:1,2
149:18,23,24 150:5
154:16 158:13 162:23
163:21 166:17 168:12
178:14 191:11,12 192:15
195:4 200:4

**outcome**
181:8

**outline**
74:8,9,11

**outlining**
163:18

**outset**
27:3

**outside**
146:7,22 148:11 149:15

**over**
17:7 22:15 41:10 50:2
53:18,22 62:11 88:19
108:8 115:14 160:4
180:17 186:13,24

**overall**
67:22

**overnight**
102:4

**owe**
198:17

**Owens**
15:3 24:1

**own**
173:21

**owned**
16:7

---

**P**

**p.m.**
48:4 61:2 202:25

**PA**
103:5

**Pacific**
90:4

**package**
100:17

**page**
15:24 29:8 34:10 35:19
36:10,25 37:1 38:14
41:25 44:9 47:17,22 48:2
51:17 54:18 56:17,18,22
58:9,10 61:3,9,15 63:2
73:3,15 80:2 81:22 92:16
93:11 94:13 100:1
102:15,20 104:13
106:15,19,22 125:1
156:4,7 175:7 184:4
186:7 191:12 192:10

**pages**
34:10,11 191:24,25

 is now 

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                256
John Grantland, 03/12/2024                      Index: paid..people

192:1

**paid**
96:22 186:19

**Palmetto**
165:5 187:14

**panned**
39:14

**paper**
66:8 118:17

**papers**
152:12

**paperwork**
107:9

**paragraph**
29:9 36:12 37:8 41:25
56:24 73:6,24 77:14
101:4 104:22,23 196:20
197:24

**paralegal**
48:16

**Pardon**
165:9 173:25

**part**
17:10 18:24 20:24 23:24
24:17 27:10 48:23 53:7
67:21 71:5,16 82:19 93:7
94:13 98:9,16 104:13
140:13 151:18 166:24

**participants**
86:7 163:8

**participate**
75:4

**participated**
199:18

**participating**
140:25

**particular**
31:4 96:14 99:7 139:6
156:18

**particularly**
166:17

**parties**
81:20 82:16 195:22

**partner**
14:13 160:18 165:24

**party**
24:15

**pass**
27:19 38:8 56:5 63:25
65:18 78:8 87:7 95:19,24
99:17 100:24 102:12
109:25

**passed**
77:9

**passenger**
49:23,25

**passing**
25:6 26:20 31:22 41:4
42:8 44:2 50:24 54:14
60:21 62:21 64:9 68:7
70:11 76:19 78:10 89:15
93:8 94:10 104:6 106:7
109:20 113:3 166:17

**paths**
183:17

**patience**
189:7

**patient's**
77:18

**Paul**
22:3,11 34:14 36:11,12,
22 65:25 67:4,6,10

**pay**
96:17,19 97:2 138:16

**payable**
94:16

**paying**
144:19

**payout**
175:21

**PDF**
124:7

**Pendarvis**
10:17 11:1,3,9,15,19,22
12:11,14 13:5,7 23:22
24:20 25:3,5,19,22,25
26:12,19 28:1,7,10 31:20
38:7 41:3,10,13,16 42:7
43:25 49:18 50:23 53:18,
20 54:13 56:4 59:18
60:10,16,25 61:5,12,13
62:10,17 64:1,8 65:17
68:6 69:25 70:10 76:18
78:6 82:10,14 86:9 87:6,
16,20,24 88:2,7,9,12
89:14 90:5,7,10,15,17,
20,23 91:8,15 93:6 94:9
95:18 99:14 100:14,23
102:11 103:17,25 104:5
106:6 108:21 109:2,5,9,
11,19 110:4,9,13,16,19
113:2 115:21,25 167:10
172:5 177:22 181:24
182:5,14,17,20 183:19
189:10,16,20 192:17
195:9 196:5,10 197:23
200:9

**people**
10:12 52:4 76:3 128:10
140:25 147:10

 is now 

**per**
16:24

**percent**
31:13

**periodically**
55:9

**permitted**
13:21

**person**
14:22 38:23 50:3 114:4,
5,6 135:1 140:22 141:1,4
143:15,19 144:17 145:20
149:12 199:6

**personal**
19:16 20:1,4 94:16 103:9
142:6 143:16 145:1

**personally**
52:24

**perspective**
79:15,16 132:12

**petition**
95:12 96:3 97:21 98:24
101:7 151:18 175:13,18,
20 188:12 194:14 196:23
197:5

**petitions**
99:6

**pharmaceuticals**
18:20

**phases**
15:10

**Phelps**
75:11 146:12

**phone**
21:6 44:10,16,17 45:24
46:1,3 47:17,23 71:14

75:22 100:15 128:8
135:12 140:25 141:12
142:10,23 143:22 163:25
173:7

**phrase**
113:13 167:11

**physically**
148:7

**picked**
136:21

**picture**
28:22 37:19

**piece**
35:6,7 61:9

**pile**
124:6

**pipe**
76:2

**PIS**
34:8

**place**
47:7

**placed**
183:4,23

**plaintiff**
69:5,21 73:23 139:19
142:5 156:15 189:6

**plaintiff's**
100:2,8 119:9 120:1
121:15,17 175:17,25

**plaintiffs**
139:19 140:10 141:7

**plan**
101:18 178:13,22 185:12

**planning**

101:13 197:9

**play**
29:13 66:22 142:3

**pleadings**
176:6

**pleas**
101:18 107:14 178:6,24
185:16

**please**
13:16,19 25:4 101:5,6
120:15 131:12 196:21,22

**pleased**
181:7,8

**PMPED**
201:14 202:16

**point**
10:19 13:15 20:15 26:10
28:14 31:6 34:1 48:25
66:6 86:5,23 111:7
128:10 153:24 162:21
166:12 180:17 195:3
199:5

**pointed**
136:20

**pointing**
148:5

**poked**
148:6,7

**policies**
16:15

**policy**
16:17,18,19,21,23 19:7,8
27:2 30:16 77:7 80:19
81:5,6 173:14

**portion**
51:21,22,24 106:15

 is now 

**portions**
  26:7

**pose**
  13:19

**position**
  10:1,13 27:12 132:19
  162:16 169:6,8

**positions**
  64:20 83:24

**possibility**
  90:19 131:20

**possible**
  130:21

**post-fall**
  39:22

**potential**
  73:13

**potentially**
  168:1

**Powerpoint**
  30:5 74:9 79:19 158:25
  159:20 160:3

**Powerpoints**
  81:23

**PR**
  92:3,7,9 139:11 141:25
  142:3,5 152:7

**practice**
  52:16

**practicing**
  195:15,16

**pre-fall**
  39:21

**pre-suit**
  46:18 55:20

**preexisting**
  171:15

**preference**
  119:13

**prepare**
  100:2,7 175:20

**prepared**
  42:23 99:16 136:14
  160:21

**prepares**
  175:18

**present**
  142:7 143:4

**presentation**
  147:9 159:1,11

**presentations**
  145:9

**pressured**
  72:20

**presume**
  53:7 88:19 92:17

**pretty**
  31:2 43:9 79:6 90:12
  144:5 147:2

**previously**
  169:3

**primary**
  16:21 19:1 23:6

**print**
  108:23

**printed**
  118:15

**printout**
  126:18

**prior**

  18:23 19:3,8 21:7 30:4
  31:10,11 34:17 60:20
  70:18 100:1 118:19
  157:11 169:12 191:18
  194:15 200:20

**Pritchard**
  21:22 39:17 40:3,9 55:1
  56:20 63:13,21 171:4,9

**Pritchard's**
  41:25

**private**
  33:16,21

**privilege**
  9:2,19,21 13:22 59:25
  60:3

**privy**
  200:5

**probably**
  17:8 26:6 117:20 149:15
  160:1 181:23 187:7

**probate**
  101:8,10,13,17,19
  104:16 107:12 111:20,
  22,23 113:24 115:10,11
  135:8,9,19,20 136:5,7,19
  153:25 154:2,9,10
  158:18 178:5,9 185:8
  196:25 197:1

**problem**
  109:4,10

**problems**
  23:15 47:13

**proceed**
  26:13 119:14

**proceedings**
  10:20 11:10

AdvancedONE LEGAL is now LEXITAS

**proceeds**
94:14 113:23 115:12

**process**
20:25 62:19,21 85:18
130:9,11

**produced**
23:14,25 25:9 26:5 51:6
122:14,15 156:8 159:13
162:4

**production**
121:24,25

**professional**
29:6

**professionals**
39:16

**prohibited**
10:9

**projections**
80:5

**promise**
30:21

**property**
14:23 16:7,15 18:1,9
52:21

**proposal**
84:24 85:10 150:11,12
173:1

**proposed**
96:10 152:14 175:13,14

**protected**
198:16,25

**protection**
31:1

**protocol**
13:10

**prove**
69:6

**provide**
112:15 159:11 169:8

**provided**
22:16 30:5 38:17 51:13
94:24 159:13

**providers**
46:21

**providing**
55:5 159:17

**public**
178:14

**publicity**
137:5,10 138:25 154:3
178:16,17

**purpose**
40:18 111:17

**purposes**
73:24 165:3

**put**
37:9,11 47:14 51:11 54:5
67:22 81:19 102:5
108:25 114:4 117:9,17,
21 119:21 180:5,10

**putting**
51:8 191:24

---

**Q**

**question**
9:1 32:14 63:10 87:15
89:9 90:24 92:13 96:15
123:2 152:7 159:14
166:2 168:20 175:16
178:15 187:7,22 197:15

**question-**
13:23

**questioning**
177:1

**questions**
10:2,15 11:5 13:18,19
24:8 44:6 65:7 78:9 82:4
91:5 115:22 116:7 169:5
188:1 189:8 195:15
196:3 200:10

**quick**
177:19

**quickly**
43:9

**quiet**
136:16 137:3

**quit**
53:12 168:16

**quote**
35:20 36:14,15

---

**R**

**radar**
178:10

**raise**
149:5

**ranging**
15:1

**Rannik**
25:16,17,20,24 26:3,14

**rapid**
171:17

**rather**
10:14

**Re**
98:1,11 152:11,17

**reach**
172:24 192:15 195:4
198:15

**reached**
43:2 162:23 168:12
180:20

**reaching**
163:21

**read**
24:8 28:19,20 50:9 66:8,
15 79:7 100:5 101:4
152:10 173:3 191:11
193:5,9 196:22

**ready**
12:20,21 21:16 114:24
136:14 165:19 174:7

**real**
177:19

**really**
12:3,4,5 35:12 37:7 59:7
60:18 61:9 63:19,21
72:15 79:10 99:4 105:14,
23 121:20

**reason**
26:4 67:24 120:11
136:19 146:2

**recall**
31:6 32:23 38:19 45:18
61:23 66:1 131:16
135:11,23 139:4 140:4
143:14,21 145:20 147:9
148:23 150:7 151:17
156:17 157:10,17,21
158:3 162:18 179:3
181:7 189:11 195:16

**recalled**
138:10 142:13

**receipt**
134:8

**receive**
27:2 45:5 110:20 132:21
186:4

**received**
57:13 63:7 66:4 67:14
111:2 119:25 121:14
125:13,14,16 129:2
130:21 132:1 172:17
179:22 186:10

**receiving**
48:11 66:1 67:11 125:11
128:8

**recess**
59:21 116:2 164:10
165:17 188:23

**recognize**
103:7

**recollection**
121:5,9 131:3 147:25
186:3

**recommended**
157:25

**record**
13:6 14:2 24:20,23 25:4,
21 26:13 28:8 54:5 55:10
58:3 60:2,17,19 62:19
69:25 70:2 82:8,12 83:22
99:22 110:5 116:22
117:18 165:3,20 175:2
181:20

**recording**
53:2 90:13

**records**

**16:5 19:1 21:23 27:7
43:8 45:4,10 46:20
48:12,19 55:5,10,12
57:13 63:5,8 68:17
158:13 169:17,22**

**recovered**
69:1,3

**redirect**
13:19

**REEXAMINATION**
196:8 200:13

**reference**
25:18 26:9 39:4 73:5
81:23 92:15 124:6
147:20,21

**referenced**
129:9

**references**
32:20 48:3 56:18

**referred**
47:17 71:9 75:2

**referring**
53:9 119:20 124:15
184:19,21

**refers**
51:17

**regard**
59:25 60:4,20 126:6

**regarding**
10:3 15:18 23:1 84:11
116:23 157:9 185:8
201:15

**regardless**
141:9

**regards**
9:14 10:1**



AdvancedONE LEGAL    is now    LEXITAS

NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    261
John Grantland, 03/12/2024    Index: registered..resolved

**registered**
137:24

**regular**
138:4 151:13

**regularly**
160:6

**reintroduce**
165:4

**relate**
159:4

**related**
11:17 82:2 83:4 131:19
201:10

**relates**
200:25 201:16,19

**relating**
202:11

**relation**
160:21

**relationship**
29:5 49:19 50:5 167:1

**relatives**
35:20,24 36:3

**release**
95:9 96:2,10,16 97:14,17
98:23 115:13,19 132:2,3,
4,7,10,22 190:11

**released**
132:7,11

**relied**
35:18

**remember**
16:4 32:13 44:20 45:16
46:6,7,12 47:9 48:15
59:2 70:21 75:23 76:3
120:8,9 125:11 141:21

142:9,20 143:6 147:5
152:20 153:4,18 157:20
167:8 179:4

**remembers**
36:13

**remove**
162:10 193:12,16,25

**Renee**
112:19,21 118:16,25
119:4 121:10,23 123:23
126:19 129:18 130:1,7
202:9

**repeat**
117:16

**repetitive**
76:13

**rephrase**
22:17

**report**
31:17 37:18 38:11,15,20
61:24 76:15 135:3

**reported**
17:5 21:10,24 58:13,17
59:5 169:18

**Reporter**
190:23

**reports**
32:21

**represent**
14:24 118:3 123:21
143:3 147:13 165:5

**representation**
15:11 17:12 27:10 28:15
31:7 113:15,21 187:17

**representative**
19:16 20:4 94:17 103:9

142:7 143:16 145:1

**representative's**
20:1

**represented**
28:23 33:3 49:22,23 50:3
143:15 151:4 199:20

**representing**
13:7 25:12 201:19

**reputation**
29:11

**requested**
18:25 19:2 94:14 152:22

**requesting**
47:5 48:13

**requests**
59:17 86:7 163:8 164:9

**require**
13:13 81:5,6 197:3

**required**
95:5 115:6,10

**research**
24:2 160:16 161:16

**reserved**
81:13 82:3

**reserves**
81:8

**resolution**
105:20

**resolve**
30:18 86:14,16

**resolved**
47:14 52:13 66:25 72:20
74:25 77:8,11 78:20
80:19 81:21 148:17
167:25 180:25



**respectively**
109:21

**responded**
122:18

**responders**
37:3 61:17 62:1

**responding**
99:25 100:4

**responds**
186:8

**response**
100:12 131:11 179:4,25
193:9

**responses**
202:17

**responsibilities**
114:18

**responsibility**
37:21

**rest**
200:7

**results**
72:14

**retain**
158:1

**retained**
39:18 166:4

**returned**
39:6 173:7

**revealed**
169:22

**review**
17:9,13 28:16 45:5

**reviewed**
31:7 32:4,6 57:14 156:11

**reviewing**
17:18 32:13 68:17

**rewind**
105:8

**Rheney**
27:16 28:11

**right**
11:2,21 12:6,10 16:22
20:8 21:11,15,18 22:12
24:3,9,19 28:4,6 31:9
32:2 33:18 37:4,14,16
38:12,19 39:5,13 41:4,23
42:2 43:15,20 44:12 46:4
47:13 48:1,6,10 49:14
50:24 51:15,23 53:5
54:25 55:23 56:21 62:6
63:9,17 67:5,7 69:23,24
70:1,3,23,24 71:2 72:1
73:8 77:12,20,23 79:12,
14,24 80:1,7 81:15,24
83:15,18 84:17,19,22
85:13 86:11,12,17 88:6,8
89:4,7 90:20 93:10 94:4
95:7,23 96:24 97:8,16
98:15,18,19,21 101:24
102:1,3 103:3,6 104:6,
10,18,25 105:4,17
106:24 107:11 108:10
110:11 111:5 113:8
115:3,4,5,17,18 116:7
118:2 120:18,20,22
121:22 122:22,25 123:1,
7,8 124:3,23 125:1,6,21,
23 126:1,8,17 127:15,19,
20,23,24 128:14,20,25
129:3,11,14,16 130:15
131:12,13,14,24 132:10,
14,15,24 133:4,6,7,8,13,
14,15,18,19 134:7,10,16,
17 136:23,25 138:14,15,

21 139:16 140:12 141:2,
3,5,10,11,17,18 142:15,
25 143:12,17 145:9,10,
14,18,22,24 146:14,16,
19,20,23,25 148:20
149:4,8,9,12,13 152:2
153:10 154:18,20,21
155:10,15,17,18,19
156:6,13 157:7 158:2,3,
19,21,23 159:3,6,7
160:9,19 161:10 164:16
165:8,19,22 167:2,4,5,7
171:9 173:14,20 175:6
176:7,9,11,12,13 178:7
179:19 180:7 182:1
183:11,22,23 184:3,16
185:4,17 186:19,24,25
187:21 188:3,16,19
189:18 190:7,18 193:9,
23 195:14 197:11 200:2,
22,23 201:7 202:20

**right-hand**
123:20

**risk**
29:17 69:18 80:20
162:15

**Robert**
75:11 96:8,13 146:10,11
151:21

**role**
14:4,7 166:10 176:3

**roll**
143:10

**room**
46:5 75:10,15,16,22,23
76:2 83:24 84:8 100:15
130:13 140:14 141:16,22
142:17 143:6,25 144:2,3,
4,8,11 145:17,19,23



146:8 147:11 199:6,15
200:3

**rooms**
74:5 76:4 82:16,18
199:9,12

**roster**
107:17

**roundtable**
85:18

**rules**
10:10 11:16 13:13

**rush**
45:6

**rushed**
136:10

---

**S**

---

**said**
33:12 34:3 35:19,23
36:14,20,21,22 37:2 43:2
48:25 49:3,13 52:7 53:25
58:2,21,22 59:12 62:1
74:23 79:4 84:9,10 85:6,
15,17,20 88:3 91:5 92:1,
2,7 100:6,12 104:15,23
107:3 108:2,4,5 111:20
114:4,11,24 117:6
120:11 122:11 126:7
127:8 129:17 131:8,25
135:17 137:14,21 138:23
139:9 140:13 141:13,14
142:12 144:25 145:4,7,
16,19 148:10,22 150:11,
16 152:4,9 153:25
156:22 157:20 160:17
167:13 171:2 185:7
186:1 195:24 199:5

**same**
15:24 20:7 46:5 47:23
53:25 66:9 73:15 97:20
99:5 111:5,6 123:21,25
140:14 141:15,22 173:24
175:24 183:9,10 186:7
189:22

**satisfied**
134:8

**Satterfield**
16:6,12 19:22 20:21
28:22 32:18,22 33:2,17
35:24 36:3,5,14 39:19
44:13 45:11 52:10 54:24
61:19 62:9 63:24 66:23,
25 83:25 92:5 94:3,17
98:2,10,12,13 105:20,24
113:17,24 137:4,16
138:2,13,24 139:5 141:9,
13 144:25 152:11 156:22
157:18 158:1,5 169:17,
23 170:2,18,22 171:5,21
198:11,18 201:16

**Satterfield's**
18:15 19:17 35:1 55:9
68:24 72:23 73:1 170:8
171:15 198:19

**Satterfield-murdaugh**
160:22

**Satterfields**
14:10 71:10 96:18 98:11
152:10 178:16

**Satterfields'**
35:20

**save**
32:10

**saw**
27:13,17 31:5 37:2 43:12

51:5 61:18 79:22 99:3
110:22 112:2 118:21
119:18 129:8 130:1
134:1

**say**
10:16 12:2,10 13:13 16:2
29:10,12 31:12 46:10
49:12 57:8 63:23 65:25
67:20 69:14 77:25 89:24
94:2 100:4 121:17
141:19 148:16 149:10
153:11 162:11 167:17
197:4

**saying**
53:6,25 60:8 106:16
133:23,25 139:4 163:1
193:24

**says**
12:4 35:19 36:11,12 37:9
48:4 53:8 57:8 73:7,9,24,
25 77:14 80:8 89:2 103:8
118:15 119:9,21 120:1,
17 122:17 123:9,20,24
124:7 127:12 128:22
131:9,11 140:2 156:14
157:4 183:12,16 184:21
192:24 193:21

**scan**
130:13,14

**scar**
159:20

**scene**
34:3 62:7

**scheduled**
107:1,2

**scheduling**
21:3 202:11



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH                264
John Grantland, 03/12/2024                    Index: school..sets

**school**
50:12

**Scott**
14:7 17:24,25 22:12
32:15 34:16 36:24 38:22
75:3,12 83:7 88:20 96:8,
13 108:3,4 136:20,23
146:8 151:21 154:1
156:24

**Scott's**
27:13

**scramble**
107:22

**scrap**
140:19 145:5

**scratch**
193:18

**screen**
191:11

**searched**
130:8

**searches**
130:4

**second**
24:21 29:9 31:17 48:2
63:16 80:2 82:9 96:2
101:4 102:20 106:19
107:8 109:23 151:2
175:6 184:4

**secret**
31:15

**secretive**
178:10

**section**
73:6,22

**secured**

73:18

**see**
22:6 27:10 29:9 33:20
35:8 39:3 41:8 51:18
52:1 53:7 54:18 56:25
58:15 61:19 62:24 64:12
73:7 99:24 107:21 111:8,
25 119:3 124:7 126:23
127:14,18 130:15 131:24
136:9 156:9,12 165:25
166:7 173:19 174:5
175:7,14,22 177:13,19
178:2 186:8 192:9,12,22
193:3 194:1

**see,'**
100:12

**seeing**
32:24 38:19 75:23 151:3

**seek**
178:23

**seen**
25:13 27:15,17 32:20
58:3 102:24 118:14,19
129:7 163:17 174:8
183:1 188:17 191:18,20,
22 194:15

**send**
46:23 111:21 135:8,20
151:20 160:10,12 188:3,
19 190:17 196:1

**sending**
58:11 70:18 79:19
120:14 121:18 184:20
186:2 191:12

**sends**
90:14 120:13 122:16

**sense**
131:13

**sent**
28:19 42:19 54:25 61:17
68:11 76:1 88:14 92:14
102:16 107:9 110:2,11
112:11 114:15 117:1
119:7 120:14 125:20,25
129:4 131:25 132:11
133:9 142:17 151:20,22
158:12 160:17 161:18
175:10 184:7 190:2
191:23

**sentence**
27:1 37:8 107:8 166:3

**separate**
74:5,12 75:22 76:4
82:16,18 84:8 199:9,11

**separated**
143:23 148:13

**separating**
82:18

**September**
126:21 127:1 128:3,21
129:12 192:11 193:24

**sequestered**
200:3

**series**
56:6 78:11

**serious**
69:10

**serve**
91:24 176:10

**session**
64:21 74:4,15

**set**
107:3,12 133:23 183:14

**sets**
64:19

 is now 

**settle**
80:9 85:7 147:19 173:6,
14 198:20,21

**settled**
20:19 22:23 80:6,14
82:22,25 97:3 105:15
177:9 192:25

**settlement**
23:2 80:13 83:19 84:1,2,
11 88:17,21 89:2 94:14
95:12,15 96:3,4,17,21
97:6,22,23 98:9,24,25
101:6,7,9,10 107:2,24
109:16,24 112:9 113:23
115:12 119:11 124:17,25
128:8 131:25 132:2,21
134:20 136:16 137:3
147:15 151:19,22
152:12,14,16 175:13,19
178:4 180:20 181:8
184:12 187:3 190:4
193:1 195:4 196:21,23,
24,25 197:1,5 198:9,15
201:11,16

**settlement's**
91:22

**Settlement.pdf.**
127:14

**settling**
166:17

**seven**
191:24,25 192:1

**several**
170:3 199:15

**severe**
170:9

**shake**
76:3 142:18

**shaking**
142:14

**share**
175:24

**shared**
18:4 30:8

**she**
15:19 16:10 23:6 33:13
34:6 36:5 39:23 40:21,22
48:19 51:12 58:12,21
59:6 63:6 64:20 66:7,13
69:1,2,12,15 77:25 78:1
90:11 100:1 105:3
107:21 112:4 119:7,9,12
120:8 121:5 127:2,4,11,
25 128:12 129:4 130:21,
23,25 131:2 157:12
169:18,19 171:7,8
172:23 178:13 179:1,2
180:4 181:7 186:7,12
187:1,3 202:15

**she'll**
155:4

**she's**
53:5 90:8 119:6,20 145:6
175:12

**shook**
143:13,24 187:10

**shooting**
53:14

**short**
129:24

**shortly**
59:8 74:17 163:20

**should**
12:8 29:10 119:13
131:10 139:11 149:15

175:7

**show**
16:5 23:16 37:17 123:10,
17 124:14,21 126:16
156:1 169:17 171:25
174:14 179:5 183:5
190:20 194:8

**showed**
159:8 161:16 182:23,25

**showing**
175:2 177:16

**shown**
79:20

**shut**
53:11,12,13 168:14

**side**
35:4 49:2 59:10 84:20
170:3,9

**signature**
103:7 124:25 125:1
133:7 134:6 135:5

**signed**
101:8 109:24 111:9
119:10 120:4 121:15
124:11,24 130:17 131:15
132:1,2,7,10,22 134:1,9
194:20 196:24 198:1

**significant**
18:14

**similar**
32:3 181:2

**Similarly**
36:16

**simply**
170:18 193:1

**simultaneous**



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          266
John Grantland, 03/12/2024                    Index: since..sons

**86:**6 163:7

**since**
25:25 75:1,2 140:1 178:9

**single-page**
65:18 76:20 87:9

**sir**
13:12,17,25 16:13,25
18:17,22 21:11 27:5
39:20 51:10 55:11 64:23
164:15 171:3 173:4
181:17 182:21 183:3
185:12 189:13

**sitting**
143:6

**six**
75:13

**skip**
17:7 22:15 41:15,17
53:22

**skipped**
41:10

**skipping**
41:14 53:18 62:11 64:2
91:8

**small**
143:25 198:5

**smell**
57:3 167:6,11

**so**
9:18,21 10:7 12:6 13:19
14:7,16 15:10,23 16:2,18
18:5,10,12 19:2,18 21:5
22:22 23:16 24:16 26:2,9
27:3 28:17 29:16 30:8,
11,22 31:3 35:5 37:12
38:20 39:10,16,24 40:10
43:1 45:6,7 46:19 50:2

51:11 53:17 55:7,15,20
56:17 61:16 63:10,12
69:14 72:18,19 74:7,12
76:9 79:4 81:3 82:15
83:13 84:2 85:15 86:10,
18 88:10,13 90:24 93:12
96:6,11,25 97:6,17
101:17 104:23 107:16,21
108:5,24 112:5 114:10,
14 115:1 116:25 117:15,
16 119:3 120:6 121:22
122:20 125:7,15 127:11
128:20 129:4,8,12
132:10 133:12 135:15
136:17 137:6 138:10
140:24 141:12,23 142:22
143:3,14 144:6 145:7,11,
16 146:8,15 148:14,18
150:18,23 152:7 153:8
154:10,13 157:21 158:16
161:7 162:25 163:15
164:3 169:15 172:1,2,20
175:8 178:13 179:6
180:9 183:3,10 188:9
191:7 192:9 193:7,15
194:12 195:11,14 196:16
197:24 199:17,21 201:13

**SOD**
193:13

**soft-spoken**
149:12

**sole**
69:6

**some**
11:22 13:13 17:21 18:6
23:13,15 25:8 26:5,7
28:14 29:9 31:6 32:10,22
34:1 37:1,2,21,23 39:3,
11 40:7,12 43:12 46:20
48:25 53:21,22 54:7 66:6

78:8,9 80:5 82:4 84:10
85:17 90:25 101:3 111:7,
20,22 114:22 117:3
125:19 128:10 135:7
139:23 140:24 143:1,19
147:20,21 153:24 162:21
169:4 186:15 195:15
196:15 200:18 201:8

**somebody**
50:11 108:3 143:6 151:3
177:8 187:10

**someone**
38:16 56:14 199:20

**someone's**
80:25

**something**
10:12,24 16:3 33:4 36:15
39:11 40:17 55:16 62:4
78:1 81:13 85:3 89:22
120:19 129:19 135:19
136:22 138:23 152:19
159:14,22 160:6 167:13
182:10 195:21 198:4

**sometime**
201:21

**sometimes**
80:15 84:24

**somewhat**
76:13 149:8

**somewhere**
107:20 182:13 185:6

**son**
20:21 66:1 104:24 138:1
156:16

**sons**
52:11 138:1 140:3 141:9
144:25 157:18 158:1




**soon**
117:18

**sorry**
25:16 41:13 49:12 70:2,5
87:12,16 92:20,24 125:4
127:11 135:16 148:16
168:21 173:21 174:10
177:19 182:9 188:8
200:16,17

**sort**
113:7 145:8 147:9,21
148:18,22 162:7

**sounds**
19:5 117:13

**South**
24:12 30:3 100:6

**speak**
34:7 48:16 57:23,25
58:12,16 59:11 67:11
92:18 96:11 180:12,23
187:8,13

**speaking**
86:8 163:9

**speaks**
57:7

**special**
20:22 92:5,6

**specific**
157:10 169:5 197:25

**specifically**
48:14 52:6 58:25 67:18
92:6 143:14 159:5
179:21

**specifics**
47:10 67:2 70:22 105:15
196:15

**speculative**
63:22

**speed**
41:24

**spitballing**
80:16

**split**
74:16 146:1

**spoke**
48:5 61:25 93:13

**spoken**
57:17,19 58:17 137:16
138:12

**stamp**
130:14 195:19

**stamped**
174:3 179:20

**standing**
141:21

**stands**
141:20

**start**
56:18 164:12 189:9

**started**
12:19 42:17 50:11,17
112:12 113:19 128:8
167:12

**starts**
42:16

**state**
14:1 40:15 68:21 97:17
154:3 165:5 185:14,15
187:14

**stated**
101:4

**statement**
33:8 36:9 37:6 44:9 49:8
58:4 167:24 169:4,6,9,12

**statements**
21:9 22:7 35:9,18 48:22
83:23 84:3 145:8 168:3

**states**
170:8 196:21

**status**
77:16 107:18

**statute**
24:12 52:22 160:17,25
161:4,12

**statutes**
14:23

**stay**
147:1 148:13

**stayed**
147:2

**stenographer**
59:17 86:6 160:11 163:7
164:9,15 190:24

**step**
14:17 15:5

**stepped**
162:7

**stepping**
28:21

**steps**
93:1 170:19

**stickers**
70:4 117:10,15

**still**
119:4 133:1 142:3

**stipulation**



188:11 193:13,22 194:4,
13,19,23 195:1

**stopped**
167:14

**stopping**
55:20

**story**
49:2,4,13

**strategy**
81:18

**stressful**
180:13,14 201:5

**strict**
24:13,16 52:22 161:15

**strike**
131:6

**strings**
30:21

**structure**
114:1,4,5,10,23

**structured**
114:23

**stuff**
43:3,8 45:3 111:21,22
135:8,9 136:7

**stumble**
10:12

**styled**
98:1

**styles**
97:23

**subject**
10:18 82:1

**submit**
110:2

**submitted**
118:23

**subpoena**
43:5 46:18 202:17

**subsequent**
11:17

**substance**
61:23 63:7

**successor**
19:16 20:4 92:9

**sue**
52:20

**sued**
49:24

**sufficient**
84:15

**suggested**
153:11 176:18

**suggestion**
140:25

**suing**
49:25

**suit**
30:22 43:4 54:3 72:12,
15,16 176:12 192:25

**sum**
96:21

**summarize**
68:14

**summarizes**
41:25

**summary**
35:11 63:5 68:15,21

**supplemental**
121:25

**support**
83:9

**supposed**
195:8,12

**sure**
10:11,22 11:25 15:25
21:1 25:19 27:13 28:18
32:15 40:10 41:21 46:22
54:1 59:18 62:20 63:4
66:7 67:2 70:21 88:24
92:19 95:20 98:7 105:5
127:2 128:9 130:23
133:16 141:5 152:23
157:12,16 161:23 166:24
168:15 170:14 173:8
174:16 176:25 191:14
198:15,22,25

**surprised**
119:18

**survival**
98:20

**sword**
168:2

**sworn**
12:25

**system**
51:9 53:3 124:1,5,10
130:8

---

**T**

**tab**
183:18

**table**
42:21

**take**
13:15 14:17 33:8 34:9
57:2 80:6,9,18 81:1 86:7



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          269
John Grantland, 03/12/2024                    Index: taken..that

97:20 115:24 118:13
122:8,19 143:10 146:24
147:18 158:11 163:8
166:15 172:2,3 174:23
176:8 187:25 188:20
191:17 195:18

**taken**
13:8 16:10 83:24 132:19

**taking**
62:8

**talk**
12:7 34:6 114:24 137:2
159:14 201:13

**talked**
21:1,23 22:2 32:15
48:15,18 49:10 58:20,22
59:4,6 85:7,15,20 108:3
111:20 112:3,4 120:7
121:4 128:9 130:25
136:3,23 140:2 142:10
147:18 150:19 154:2
156:15 157:5,9 159:1
162:9 168:11,13 199:16
201:3 202:19

**talking**
9:14 34:4 46:8 51:24
53:12 57:12 60:5 120:21
126:23 127:22 144:7
150:5 153:4 167:15,19,
23 168:10,16 200:4,5

**talks**
56:24 73:16 198:1

**Tanya**
48:16,18 55:4 57:13
116:8 136:2 192:21

**tax**
114:7

**telephone**
172:25 199:18

**tell**
16:2 23:12 24:6 26:1
28:20 29:24 34:21 44:19
47:24 54:6 57:2,16,19,22
58:23 65:6 78:7,22 81:17
102:5 135:11 137:6
138:7 140:6 142:24
150:18 151:10 165:15
168:7 174:7 188:9
191:18 192:5,15 194:17
200:24 201:18

**telling**
47:4 52:4 54:2,3 57:5
59:3 138:10 157:17
158:3

**tells**
186:16

**ten**
80:14 187:25 188:20

**tender**
19:8,12,13 30:16,20 83:5

**tendered**
75:3 97:3

**tension**
148:1

**term**
153:12,16

**terms**
54:22 83:24 88:17 157:9

**terrible**
58:1 79:5

**testified**
12:25 82:15 142:22
199:18

**testify**
167:12

**testifying**
189:11

**testimony**
10:18,22 26:8 31:4 35:17
42:1 64:3 190:16 199:5

**than**
30:21 46:13 49:7 59:3
65:5 71:7 72:13 81:1
83:12 85:1,2 100:10
116:8 117:1 126:1,6
137:4 147:10 148:21
149:6 151:3,5 154:3
162:21 173:14

**Thank**
25:24 26:11,14 32:11
60:9 65:11 88:11 113:9
116:12 122:18 164:6,7
173:1 177:20 183:21
187:22,23 193:22 194:12
196:4,20 200:10,11
202:21

**Thanks**
122:17

**that**
9:4,5,6,7,10,11,13,17
10:5,10,12,17,21,22,24,
25 11:1,3,4,5,12,20,23
12:4,7,10,17 13:13,20
14:4,14,19,23,24 16:3,8,
12,18,21 17:3,7,9,14,22,
23 18:11,19,23 19:1,2,6,
9 20:9,18,20,24 22:15,18
23:4,14,15,25 25:9,23
26:2,4,13 27:2,4,7,8,17,
21 28:11 29:12,16,17
30:5,8,19,21 31:2,4,7
32:1,4,13,21,23,24 33:2,



14,17,19 34:5,8,21
35:15,16,19,20,22 36:3,
12,13,14,16 37:10,23,24,
25 38:14,15,20,21,24
39:9,11,14,16 40:2,12,
18,22 41:8,13 42:20,21
43:4,8,12 44:16,19,25
45:3,11 46:6,10,16,24,25
47:10,20,21 48:24 49:8,
12 50:6,9,10,13,17 51:7,
12,13,16,18,20 52:1,3,4,
14,15,21 53:16,25 54:2,
3,4,5,7,19,21,22 55:7,12
56:8,10,16,21,25 57:2,4,
6,8,11,23 58:1,2,11,15,
17,18 59:3,4 60:3,7,10,
19,20 61:2,24,25 62:4,24
63:1,2,3,5,20,22,24 64:3,
12,18,20,21 65:2,9 66:8,
9,19 68:11,22,23 69:6,
12,15,18 70:5,16 71:6,9,
11,16 72:3,8,15,16,17,25
73:7,10,17 74:2,14,20
75:13 76:6,24 77:17
79:1,19 80:11,16,20,25
81:1,4,12,18 82:16,22
83:5,17,23 84:4,9,21,25
85:3,4,7,16,18,21 86:1,5,
11 88:3,7,10 89:5 90:12,
21,25 92:1,2,7,12,13,14,
16,22,24 93:7,24 94:20,
22 97:9 98:4,5,6,7,8,9,
16,17 99:16,19,20 100:5,
6 101:5,12,14 102:6,16,
21 104:15,19,22 105:1,
13 107:3,16,21 108:17,
25 110:1,2,9,16 111:9,12
112:2,15 113:12,14
114:1,3,8,11 115:2
117:17,21 119:9,17,19,
25 120:13,23 121:23,24,
25 122:17,20,23 123:10,

21 124:5,7,9 125:7,8,13,
20,24 126:5,22,23 127:9,
14,18,21,22 128:20,23
129:1,5,7,9,12,19,20,23
130:1,4,21 131:6,13,25
132:6,12,20,23 133:7,16,
22 134:5,12 135:4,7,11,
19,24 136:4,8,9,18,20
137:1,6,14,15,16,21,23
138:9,12,16,23 139:2,6,
9,11,16 140:1,2,4,7,21,
22 141:13,23,24 142:2,6,
12,22,23,24 143:1,2,4,15
144:7,12,16,17,21 146:5,
15 147:8,10,13,23,24,25
148:9,13,17,23 149:10
150:8,9,13,17,19,23,25
151:4,5,10,13,25 152:1,
4,5,6,9,13,15,16,18,19,
20,21 153:2,6,11,12,20,
25 154:4,10 155:1,2,4,5,
13 156:8,12,14,18,21,23,
24 157:14,15,17,22,25
158:4,9,10,12,14,17,24
159:1,4,8,11,12,14,17,22
160:6,15,17,20 161:12,
18 162:1,3,22,25 163:2,
11,12,20 165:25 166:9,
12,14,24 167:8,11,12,17,
19,22,23 168:4,8,13,17,
23 169:7,15,17,18,21,22,
23 170:1,2,3,6,7,17,22,
23 171:4,5,7,13,14,20
172:1,3,17,20,25 173:3,
5,7,13 175:7,8,9,14,22,
24 176:17,18,20,21,22
178:2,9,11,13,17,21,22
179:1,3,13,22 180:1,7,
17,19,20,25 181:11
183:7,12 184:7,15,24,25
186:8,10,21 187:7,10
188:7,12,14,15 189:16,

17,18 190:3,16,17,18
191:11 192:10,12,15,22
193:3,5,10,16,17,18
194:1 195:7,11,23
196:20 197:12,13,16,21
198:11,15,16,23,24
199:1,6,14,18,23 201:3,
5,7,9,10,14 202:3,7,11,
15,19

**that's**
12:5 16:3,9,13,20 17:24
18:8 19:10,20 21:11,21
25:7 27:9 28:24 32:2
33:4,13 34:15 35:5,16,22
36:7 39:10 40:2 42:10,15
44:11,14,15 45:15 48:8
49:5,14 50:7,8,25 52:8
53:9 54:14 59:7 61:20
68:25 73:23 79:14,15,16,
18 82:20 84:14,15,20
85:5 86:12 87:1 88:4
90:4,19 92:9,17,20,22
93:8,10 95:3 97:5,19
98:7 102:24 103:9,16
104:21 106:18,24
107:10,11 108:18,19
109:1,7,10,24 113:8,16
114:14,25 115:15,17
116:12,16 117:14 118:12
120:21 124:12 129:7,21
134:6,7 136:18 137:12
138:20 139:1 141:17,20
148:10 149:13 152:24,25
154:7,12 155:7,8,19
160:6,25 164:5 165:13,
14 166:11 167:4 169:20,
25 170:5,20,24 171:1,9,
18,23 172:20 173:2,15
176:16 177:1,24 178:25
182:3,4,6,16,22,24,25
183:18,19 187:11,21



190:6,8 193:21 196:3
197:6 198:3,14 201:25
202:21

**the**
9:1,5,13,14,15,21 10:1,2,
3,8,10,15,18,19,22,23,25
11:4,6,9,11,16 12:2,9,18,
22 13:6,10,13,18,20,24
14:2,4,9,10,13,16,20
15:2,7,10,12,14,23 16:6,
14,15,18,21 17:5,9,13,
15,18,22 18:1,2,6,7,9,13,
20,23,24 19:1,3,15,16,
21,23 20:1,4,12,21,24
21:2,8,10 22:6,9,13,16,
19 23:2,5,14,25 24:2,6,8,
9,13,14,16,17,20,23
25:3,18,20,21 26:4,7,8,
13,25 27:1,3,4,6,8,10,12,
16 28:7,8,11,15,22 29:8,
9,11,16,20,22 30:1,2,10,
12,18 31:6,7,10,11,12,25
32:4,7,12,17,23 33:1,12,
13,14,17,20,21,25 34:2,
3,10,17,19 35:1,2,3,5,6,
12,14,15,16,17,18,19,20,
21,24 36:3,5,9,10,15,23
37:3,5,6,7,9,11,18,20,21,
22,25 38:2,11,13,14,19,
21,22,23,24 39:1,3,4,6,7,
11,16,17 40:1,3,11,16,18
41:15,24 42:8,16,20,21,
23,24 43:16 44:7,9,13,
17,21 45:15,17,19,20,24
46:1,3,5,8,25 47:5,10,11,
22,23 48:2,3,7,8,11,12,
19,23 49:1,2,4,8,10,13,
14,16,23,24,25 50:1,2,3,
18 51:5,16,24,25 52:1,4,
10,20 53:2,3,4,7,14,19,
25 54:5,17,21 55:2,5,13

56:17,18 57:7,23 58:9,
13,18 59:4,5,10,11,15,
17,25 60:1,2,3,5,17,19,
23,25 61:2,4,7,9,14,16,
17,23,25 62:1,7,11,19
63:1,5,7,13,15,23 64:2,
17,21 65:6,7,9 66:5,8,9,
11,15,22,25 67:2,12,19
68:17,22 69:1,2,5,6,9,10,
11,18,25 70:1,2,3,19,21,
25 71:3,8,9,14,19 72:2,3,
5,7,8,10,13,14,15,19,22,
25 73:1,3,5,7,11,13,17,
18,22,24 74:2,10,17,24
75:4,9,16,20,22 76:2,8,
10 77:2,4,7,8,10,11,13,
14,17,18,22 78:9,17,19,
24 79:7,11,15,23,25
80:3,4,6,12,13,14,15,19,
20,21 81:2,5,6,7,20,23
82:1,2,7,8,12,16,17,18,
19,21,22 83:4,6,8,11,12,
13,14,16,17,25 84:2,10,
11,14,15,25 85:5,6,8,9,
10,11,16,25 86:2,10,15,
18,23,25 87:14,18,20,23,
24 88:1,4,5,6,8,9,10,14,
16,19,21 89:25 90:6,11,
13,14,18,24,25 91:1,3,8
92:1,3,4,7,9,15,16,20
93:18,21,23 94:2,13,14,
15,17 95:20 96:1,2,4,5,
18 97:3,6,9,14,15,17,20,
21,22,23 98:6,8,10,16,
17,20 99:2,5,8,22,24,25
100:2,8,9,10,13,15,16,17
101:2,4,7,8,13,16,17,18,
20 102:15,16,20 103:4,7,
11,14,20 104:13,22,23
105:4,5,6,8,11,20,21,24
106:15,16,19,21 107:1,8,
9,14,23,24 108:7,17,22

109:8,22,23 110:1,5,16,
17,22 111:1,5,6,10,11,
17,18,22 112:2,8,10,11
113:7,14,15,17,19,20,22,
23,25 114:9,10 115:1,17,
19,23 116:9,10,22
117:18 118:16,17,21
119:10,20,21,22 120:4,
11,15 121:6,17 122:1,13,
15 123:3,5,6,11,19,20,
21,24,25 124:4,11,12
125:8,9,12,13,16 126:18,
19,23 127:5,8,22 128:7,
12,13,18,23 129:6,8,9,
18,25 130:8,11,12,13,14,
16 131:9,11,25 132:1,2,
3,4,7,10,11,19,20,22
133:1,6,7,9,24 134:1,8,9,
10,19,23 135:1,3,4,5,9,
16,18,19,24 136:4,5,13,
16,21 137:3,4,5,9,15,16,
23 138:9,11,12,16,17,24,
25 139:5,10,11,19 140:1,
3,6,9,10,14 141:1,7,9,13,
15,22,25 142:2,3,5,6,7,
13,21 143:2,7,16,17
144:2,11,12,25 145:1,5
146:8 147:3,6,14,16,20,
22 148:2,6,15,18,19
149:20 150:12,18,19
151:3,14,18,22 152:7,9,
10,11,14,15,16 153:12,
17,22,23 154:18,24,25
155:1,2,18 156:5,15,16,
21 157:4,6,8,9,11,14,18
158:1,5,12,18,19,20,23
160:2,3,4,11,12,16,23,
24,25 161:1,3,16 162:7,
10,11,16,18,25 163:2,6,
11,12,14 164:1,6,9,15
165:3,5,7,10,13,20
166:3,5,13,15,18,20,24



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH          272
John Grantland, 03/12/2024                    Index: their..they

167:5,22 168:3,4,24,25
169:3,5,9,11,13,16,17,
21,22 170:1,6,15,16,19,
21 171:3,14,19 172:5,9
173:6,16,24 174:8,10,16
175:2,4,6,8,9,12,19,20,
25 177:7,9,16 178:1,4,5,
9,10,13,14,16,17,22,23
179:7,10,21 180:1,12,15,
16,20,23,25 181:6,7,8,
20,22,24 182:1,15,22,24
183:8,9,10,12,13,19,25
184:3,4,12,13,18,20,22,
24,25 185:11,12,15,20
186:1,3,4,6,7,8,21,24
187:3,11,12,16,22,23,24
188:12,13,15 189:6,19,
20,22 190:1,2,3,11,12,
14,17,24 191:9,12,13,15,
22,24 192:1,9,10,16,17,
18,20 193:1,9,10,12,15,
16,17,18,19,21,25
194:14,23 195:3,11,19,
20 196:3,12,15,18,20,23,
25 197:4,5,6,9,12,16,17,
20,21,22,25 198:1,7,8,
11,17,21 199:2,3,6,14,20
200:4,7,8,11,19,20,25
201:4,7,8,10,12,15,22,
23,25 202:14,17

**their**
21:24 47:3 50:5 51:9
75:3 83:5,10 85:2 96:22
134:14

**them**
21:22,23,24 26:10 30:8
34:3,7 41:15,17 44:16
46:22 49:22 50:2 52:11
53:11 54:25 92:7 96:7
98:23 101:16 117:7,10,
19 136:14 139:7,15

140:5,9 158:8,11 188:3

**themselves**
143:7

**then**
12:2 14:5 19:22 50:1
63:13 66:12 69:2,11,12
74:11 76:1,3 80:22 88:24
107:13 108:3,8 112:1
118:24 119:12 125:3,19
126:20 127:10,16 131:11
132:11 138:6,19,22
143:24 145:19 149:14,17
150:16 154:8 156:14,20,
22 157:3,8 167:14
170:11 171:13 174:22
184:16 185:12 188:20
199:25

**there**
9:6,13 11:15 13:22 14:17
15:2 16:15 17:22 18:5,7,
14 19:6 20:20 21:7 22:14
29:13,19 30:7 32:6,12
33:16 35:4 37:1,3,12,19
39:10 44:24 46:7 47:16
48:22 50:17 52:15 53:21
54:7 55:12,16 57:4 59:21
61:16 65:1 73:4,20,23
74:5 75:3,6,7 77:24
78:19 79:13 80:14 81:20
83:4,7,9,10,13,22 84:23
86:13 90:25 92:2,12
97:14 98:4,13 99:2,4
101:3,10 105:10,21
108:6,12,14,15 114:2,7
116:2 123:10 127:12
136:7,23 138:1 139:9,15
140:5,9,10,15,22,24
141:4,7,24,25 142:11
143:1,15,21,24 144:17
145:17,25 146:17 147:1,

2,8,9,20 148:1 150:5
152:24 153:22 154:18
156:9,22 157:2 164:10
165:17 168:11 176:20
178:15 181:18 182:25
185:6 188:23 193:24
197:16 198:10 200:18

**there's**
9:20,25 52:23 55:3 73:5
91:5 92:15 100:9 125:24
127:16 139:23 147:21
185:8,10 198:24

**Therefore**
77:18

**these**
21:12 22:14 25:9 26:5
32:7,20 33:9 43:7 51:3
53:22 54:21,23 59:8
60:18 64:24 65:7,8,9
78:15 95:19,25 96:6,16
97:1 100:3 101:6 115:12
117:15 121:23 126:22
155:12 159:21 183:9
196:21,22

**they**
22:7 23:14 34:3 36:3
37:2,12 46:3,5,7 47:21
49:21 50:6,9,10 57:11
59:4,6 61:18 62:1 63:21
65:7 75:2,3 77:7 80:24
81:2,13,17 96:19,22
101:14,15 108:9 114:8
118:24 135:14 137:12
140:13,14,16 141:15,21
148:13,15 150:9,10
155:14 157:2,16 158:10
159:25 161:23 162:9
167:13,15,17,19,23
168:11,13 188:10 199:9,
11,13 201:9



**they'd**
195:19

**they'll**
85:22

**they're**
27:2 33:3 34:5 57:6 81:1
82:4 95:22,25 98:1 108:7
116:25 156:23 160:9
193:24

**thing**
46:9 47:8,14 53:25 85:5,
6 147:16 199:1 201:4,5

**things**
12:18 13:14 15:1 16:1
17:7 37:1 41:24 43:7
51:11 54:7 57:5,6 84:4,
10,21 99:16 138:8
158:13

**think**
9:3 12:5,8,19 14:12,13
16:16 18:7,10,12 28:17
34:1,6,10 35:18 37:24
38:25 45:18 48:14,25
49:3 50:11,14 53:17
54:17 55:15 56:13 58:21
66:11 68:25 71:9 74:8,9
76:9 77:14 79:18 80:9
84:25 85:2 87:13,20
89:5,17 91:2 96:8 104:14
112:3 113:20 120:17
121:19 122:14 124:14
125:15 131:8 132:3
136:20 137:14 141:14,23
145:16 151:23 152:13,14
154:1,7,8 155:3,7 156:20
157:19,24 159:18 160:23
162:9,21,25 163:1,2,11
164:5 166:11 168:11,12
173:17 174:5,14 179:6
181:12,16 185:8,25

187:7,24 188:17

**thinking**
36:7 38:1

**thinks**
57:25

**third**
12:2 37:8 54:18 56:23
145:23 192:20

**this**
13:7,14 14:9 17:21 22:23
23:23,25 24:2 25:9,13,
17,23 26:22 28:2,16,25
29:7,13,20,21 30:23,24
31:4,8,14,15,21,23,25
32:3 34:10 36:10,20
37:23 38:9,25 39:25
40:1,10 41:5,8,18,20
42:13,19 43:6 44:1,2,3,
22 46:9 47:7,14,16,22
48:2,5 51:2,5,7,21,22,24
53:1,7 54:8 55:2,3 56:6,
13,19 57:6,7 58:4,10
59:8,23 60:5 61:6 62:22
63:10,15 64:10,14 65:1,
19,20,23 66:2,4,18,21,24
67:1,8,11,15,16,22 68:9,
11,14,15,21 69:5,8,15,16
70:14,18 71:19 72:11,20
73:15 74:7,13 76:7,12,
20,21 77:1,9 78:17,18
79:2,19 80:3 81:22 82:3
85:9,23,24 86:2 87:10
88:14 89:8,9 90:2 91:17,
18,21,22 92:2 93:12
94:11 96:9,14,16 98:9,16
99:18,22 100:25 101:3,
25 102:15,16,20,24
103:11 104:8,11,13
105:14,24 106:8,12,22
108:23 109:22 110:20,22

111:8,17,25 112:4 113:4,
5,6 114:11,24 118:14,19,
20,21 119:16,18 120:6,7
121:6,11,18,24 122:13,
14,15,23 123:1,2,3,10,
19,22 125:8,13,16 126:6,
8,18,19,25 128:3,20
129:8 130:19 131:9,19,
21,22 132:19 133:11
134:20,23 135:6 137:15
140:3 141:12 144:16
148:9 149:19 153:16
156:6 157:4 159:4,13
160:21 161:22 162:20
165:5,6,10,12 166:6,10
167:25 168:23 169:5,8,
12 172:6,8,10,17,23
173:17,22,23,24 174:1,3,
5 175:12,17,25 177:15,
18 178:1,14 179:5,6,9,19
180:5,10 181:13,14
182:1 184:3,11,17
185:11 186:7,13 187:1
189:6,9,11,24 190:1,20,
24 191:17,18 192:5,11,
14,16,24 193:2,7,15,23
194:9,10,13,15,20,22
196:22 197:24 201:11,
12,16

**This'll**
194:11

**Thomas**
13:6 110:2 127:3

**thoroughly**
34:24

**those**
11:7 12:18 13:19 28:7
29:24 61:24 72:12 78:22
84:13 89:17 98:22
100:15 109:25 114:18



138:7 147:10 160:8
162:1,3 168:4 176:21
185:3 188:18

**though**
19:5 61:14 90:11 133:14

**thought**
11:23 35:12 47:1 63:21
64:20 79:6 152:25
182:25 189:17 199:7,14

**thread**
44:3 54:15 55:3 56:10
58:10 59:9 62:22 64:10,
14 78:10 91:17,19 92:16
93:12 94:11 99:17,19
104:8 106:12 113:5

**threads**
56:6

**three**
73:9 75:13,14 95:19,24
96:15 172:20 195:21

**through**
16:1,16,17 25:23 31:24
36:12 38:10 41:6 42:11
44:4 51:2,12 54:17 55:7
56:7 60:18,22 61:15
62:24 64:12 68:10 73:10
78:13 91:18 94:13 99:23
102:14 104:9,17 106:10
110:6 113:6,23 114:2
125:4 126:4 139:10
162:15 192:2

**throughout**
88:4

**thrown**
107:20

**Tiller**
201:24

**time**
13:20 15:14 16:14 19:15,
23 21:2 32:10 37:11,25
49:8 51:5,20 59:19 66:10
77:4,17 79:19,25 85:17
90:4,13 97:15 100:8
110:22 118:21 129:8
132:22 135:3 137:23
146:17 147:8,16 153:22
154:24 155:1 163:3,6,12
169:16,22 170:1,6,16,21
171:4,14,19 177:7
189:25 192:14 194:23
195:3,16 200:23 201:11,
12

**time-limited**
27:3

**times**
80:15 89:18 145:25
150:2 199:15

**timing**
201:15

**tingling**
169:24

**Tinsley**
30:5 79:20 81:25 158:25

**titled**
96:2

**to**
9:14 10:1,2,5,10,11,14,
15,18,25 11:4,6,16,17
12:5,9,10,13,18 13:15,
19,21 14:8,9,13,15,17
15:1,15,16,17 16:10
17:7,8,19,25 18:5,23
19:3,8 20:8 21:22,23,24
22:2,13,15,17,19,25
23:1,13,16 24:1,8 25:7,8,
10,14,16,17,25 26:6,9,

10,13,20,21,22,23 27:2,
7,11,19 28:9,15,18,19
29:8,12 30:16,18,20,25
31:10,11,22 32:3,10,15
33:2,8 34:2,4,6,7,12,17
35:5,23 37:1,15,23,25
38:8,16,17,23 39:4,12,
18,24 40:5,7,10,17,18,22
41:4,14,22,24 42:8,14,
22,23 43:2,3,4,5,6,7
44:1,2,21 45:2,3,4,11,12,
23 46:15,16,20,23 47:1,
7,14,17,24 48:3,5,18,19,
24 49:1,2,7 50:9,18,24,
25 51:2,6,17 52:11,12,20
53:6,10,11,13,16,22
54:5,14,25 55:5,17,21,24
56:5,14,16,19,20,23
57:8,12,19,23,24 58:1,2,
11,16,17,18,20,22 59:5,
6,11,12,13,14,21,25
60:2,4,5,19,20,21 61:14,
16,17,18,25 62:4,22,23
63:11,14,15,19,25 64:10,
18 65:1,8,9,18,20,24
67:22,23,24 68:7,8,11,
21,23 69:6,11,16,21
70:11,12,13,18 71:10,23
72:4,13,16,18,19,20
73:17,25 74:11,12,14,15,
16,17,24 75:2 76:2,12,
19,21 77:8,9,10 78:7,8,
10,11 79:7 80:3,6,8,9,10,
11,18,19,21,22,24,25
81:1,3,19,21,23 82:1,2,
16,18 83:4,9,16,17,20,22
84:23 85:6,7,15,16,18,
19,20,21 86:14,16,25
87:7,11,12 88:14,15
89:15,16,24 90:14 91:16
92:14 93:8 94:10,12,15,
16 95:19,20,21,24 96:11,



12,17,18,19,25 97:2
98:5,8,17 99:5,17,18,25
100:24,25 101:2,13,17,
18,20 102:12,16,21,23,
25 103:1,19 104:6,7,14,
16,19 105:7,8,14,23
106:7,9,16,22 107:6,12,
13,14,21,22,23 108:1,3,
6,21,23 109:20,22,25
111:6,12,17,21 112:11,
15 113:3,4,7 114:1,3,9,
12,15,16,24,25 115:7,10,
19 116:2,14,25 117:5,7,
8,9,17 118:4,19,23,24
119:7,20,21,25 121:4,6,
11,19 122:1,13,16,17
123:9,18,21,23,24,25
124:9,15,24 125:9,12,20
126:3,6,20,21 127:9,17
128:1,9,13,21,22 129:5,
23,25 130:2,13,14,23,25
131:9,19,20 132:1,12,17
133:1,9,20,24 134:12,14
135:4,5,8,13,19,20
136:5,7,9,15,16,19
137:2,15,22,23 138:12,
19 139:15,16,19 140:2,3,
10,11,13,14,19 141:1,4,
7,15,21,22,24 142:7,17,
23 143:3 144:4,7,21
145:5,6,8,11 146:3,7,21
147:9,13,17,18,19,23,24
148:8,11,16,17,21 149:4,
10,19,21,24 150:1,6,11,
14,15,16,19 151:4,18,20,
21,24 152:5,10,15
153:19,25 154:4,16,17
155:14,16,18,20 156:15,
16 157:2,9,11,12,15,16
158:8,10,11 159:4,8,9,
10,12,23 160:7,10,12,17,
21,24 161:18 162:9,16,

22,23 163:1,13,17,21
164:10,12 165:14,17,19
166:2,5,13,14,15,16,18,
19 167:12,15,16,17
168:3,12,13,14,25 169:2,
4,9,11,13,18 170:23
171:6,16,25 172:2,24
173:6,13,16,18,20,21,22
174:25 175:10,19
176:14,18,20,24 177:4,7,
8,9,10 178:2,5,8,11,13,
23 179:21,25 180:1,4,5,
10,11,17,22,25 181:3,5,
11 184:4,7,17,19,21,25
185:12,25 186:2,3,8,16,
19,20,22 188:4,6,7,9,19,
23 189:9 190:2,14,20
191:10,12,19,23 192:6,9,
15,17,21 193:11,15,16,
19,22,25 194:8,15,17,25
195:4,7,8,12,18,19,25
196:1,12,18 197:4,6,25
198:11,15,17,20,21,22,
23,25 199:2,20 200:1,4,
5,7,20,25 201:10,13,16,
19 202:5,11

**today**
10:7 12:7 104:24 127:22
172:1 179:6 188:2 189:7
191:19 194:15

**together**
29:3 50:9 148:15,24
167:18 199:13

**told**
20:18,20 21:4 33:13 34:5
35:20 53:11 57:24 66:7
71:12 101:14 108:12
116:13 139:2 141:15
146:7,21 147:17 149:14
150:25 154:12 157:25

162:23 168:14 171:7

**Tom**
25:16

**Tommy**
87:12

**Tony**
85:7,20 137:18,19,22
138:6,8,12,19,24 139:5
141:13 147:18,19 150:19

**Tonya**
116:8

**too**
22:14 36:7 39:9 62:11
64:2 172:2 186:13
200:23

**took**
46:24 69:2

**top**
44:9 92:16 97:23 108:25
118:17 126:18,20 175:9
179:7,21 183:19

**topic**
78:9

**total**
91:3 97:6

**touch**
92:17 114:5 122:19

**toward**
55:2 73:22 79:7 80:3

**towards**
84:10

**traditional**
14:20 143:9

**trainer**
37:19,20,22 38:2,21
39:6,11 73:13

 is now 

**trainers**
   17:23

**training**
   18:7 37:22 73:10

**trap**
   57:3 167:6,11

**treatments**
   18:20

**trial**
   30:15 80:21

**tried**
   30:6 108:1 130:23
   133:20 172:24

**tripartite**
   166:24

**tripped**
   33:13 35:21

**truck**
   146:4 147:3

**true**
   132:6 140:21

**trust**
   101:6 152:1 185:7,11
   190:4 196:23

**trusted**
   158:9

**try**
   14:15 34:2 155:13
   178:13

**trying**
   32:10 45:2 60:18 72:16,
   18 74:24 77:8,10 86:14
   128:1 131:20 147:23
   148:17 149:10 165:14
   198:20,21,22 199:2

**turn**
   69:2

**turned**
   104:19

**turns**
   86:7 163:8

**tweak**
   99:7

**Twilight**
   79:13

**two**
   13:24 16:15 21:22 36:25
   37:8 53:8 64:17 82:18
   93:1,11 109:20 127:12
   138:1 188:1 195:18,21
   197:24 198:5 200:16

**two-page**
   94:11 102:12 194:13

**type**
   11:22

**typical**
   70:23 95:3 98:23 149:6
   155:13 195:18

**typically**
   100:2,7 175:17

**typing**
   53:5

---

**U**

**Uh-huh**
   11:8,18 12:22 15:9 17:20
   18:12 19:14 43:13 44:8
   53:23 65:12 75:8,19 89:1
   92:25 106:20 115:20
   120:5 127:7 132:5
   135:15 136:4,12 139:21,

25 144:1 148:3 151:1
157:1 161:2 164:4 167:9

**ultimate**
   78:19

**ultimately**
   43:14 83:17 84:22 85:11
   104:19 114:15

**umbrella**
   16:17

**un-**
   121:20

**under**
   10:10 12:8 24:9 37:7
   49:1 156:21 178:10
   193:2,20

**underlying**
   60:1,6 77:16 116:10
   170:22 171:21

**understand**
   38:13 40:10 51:8 60:8
   61:18 121:23 128:1
   133:25 136:4 137:22,23
   144:6,16 153:9 180:19
   190:16 199:2 201:7,21

**understanding**
   16:9,13,20 17:4,24 18:8
   19:10,21 37:10 39:9 59:4
   61:20 63:12 68:20 76:7
   92:12 96:25 98:10 162:1,
   3 166:10 193:20

**understood**
   50:6,10 86:13 145:20
   152:22

**unexpected**
   77:15

**unfiled**
   119:20 121:15,20

 is now 

**universe**
79:10

**unknown**
77:17

**unsigned**
96:1

**until**
14:12 25:13 30:22 72:22
101:7,13 107:11 111:8
113:13 121:21 129:20
131:23 155:5 156:20
158:12,14,22 185:11
190:4 196:23

**unusual**
30:20 31:2 45:22 71:2
94:22 96:9 155:8 168:17,
18,23

**up**
10:25 12:9 23:16 33:13
37:11 44:21 46:8 47:1,11
52:12 53:11,12,13 57:14
60:11 67:21 74:16 89:24
90:12 98:7 107:3,11
112:7 133:23 136:21
146:1 150:9,14,15 154:9,
11 156:20 168:14 177:9

**up'**
35:21

**update**
160:24 161:3

**Updated**
89:5,6

**upon**
138:2 188:2

**ups**
196:6

**upset**

10:12 58:17 66:19
105:13 146:6,18 148:4

**us**
10:13 12:5 13:24 14:8
18:4 34:6 43:6,7 45:12
47:1,5 52:12 56:14 60:4
65:6,8 69:9 71:12 74:15
75:13,14 85:16,17
100:15 107:4,21 118:23,
25 119:10 120:2,14
131:12 149:21 150:12
155:4 162:24 166:18
193:11,25 198:11 199:20

**USC**
50:9

**use**
108:22 113:13 117:15
148:19 173:21 174:22
183:13

**used**
77:1

**usually**
164:1

---

**V**

**valid**
132:21,23

**valuation**
166:6,20

**value**
84:13 168:3

**venue**
78:19 79:4,5

**verbal**
185:3

**verdict**

29:20 30:10 159:20

**verdicts**
30:4,7 47:18 79:21
159:1,19 160:4

**verify**
33:2

**verifying**
91:2

**version**
49:4

**very**
25:22 41:24 52:9,10
58:10 72:8,18 77:14
158:6 187:25

**Via**
102:2

**victim**
201:8

**virtue**
49:25

**voice**
149:5,7

**voluminous**
22:14

---

**W**

**W9**
94:24

**Wait**
189:14

**waive**
11:6

**waived**
9:22

 is now 

**waiver**
59:25 60:3

**walked**
143:13 149:18

**wall**
76:2

**Wallenger**
17:25 21:8 22:12 32:1
34:17 75:4,12 88:15,20
96:8,13 108:3 136:20
146:9 154:1 156:15,18,
25

**Wallenger's**
14:8 27:11 34:12 37:6
156:11

**want**
10:10,11 26:9 40:10 43:6
44:1 45:12 52:13 58:1,2
59:12,13 61:14 74:15
77:7 80:8 81:21 83:22
114:12,25 116:14,15
117:5 137:5,9 138:25
139:19 140:9,14 141:4,
15,21,22 153:25 166:2
168:2 178:16,17 179:21
181:11 189:9 190:20
191:10,12 196:18 198:25

**wanted**
12:18 34:1,2 39:24 47:1
49:1 52:11,12 57:23
58:16 60:2 63:19 65:9
66:24 74:15 80:24 98:11
105:14 107:15 114:3
132:6 136:18 139:15
140:5,9 141:7 147:24
152:10,25 157:12,15
158:7 160:24 180:14
194:8 198:15

**wanting**
49:7

**wants**
57:8,24 74:14 103:17
107:21 117:19 149:2,4

**warning**
53:16

**was**
9:11,13 12:25 14:4,5,13,
14 15:2,4,15 16:10,16,
18,19,21,23 17:15 18:5,
14,19,23 19:16,21,22,23,
24 20:18,20,21 21:2,10
23:6,23,25 24:14,16,17,
23 25:14 27:4 28:17,18,
22 29:12,13,16,17,21
30:17,19 31:10,11,13,15
32:23 33:12,14 34:25
35:2,4,14,16,17,23 36:5,
7,16,18,19 37:1,10,25
38:17,20,21,22,24,25
39:9,17,21,23,25 40:1,3,
4,11,14,15,16,18,21
42:20,21,22,23 43:14
44:16,20,22,25 45:2,7,9,
19,21,23 46:8,14,15,16,
17,25 47:2,4,6,11 48:19,
24 49:8,24 50:11 51:5,25
52:3,9,10,13,14,15,21,23
54:22 55:16,19 57:13,21
58:13,16 59:4,5,10,21
60:20 62:8 63:2,13,14,
15,22,24 64:21 65:1
66:7,11,19 67:1,2,21
68:22 69:6,8 70:2,3 71:2,
14 72:3,8,9,11,12,15,18,
19,20 73:1 74:7,11,13,
20,24 75:3,6,7,10,15,16,
20 76:6,7,10 77:15,17,
24,25 78:20,24,25 79:1,

3,6,19,22 80:12,14,16,
17,18,20 82:12,21,23
83:7,9,10,11 84:8,9,14,
20,24,25 85:1,2,4,6,16
86:13,15,21 87:17,18,20,
21,23 88:1,5,7 89:22,24
90:24,25 91:2 92:1,2,12
93:18 96:21,22 97:6,15
98:4,5,6,8,10,13,16,17
100:18 101:10,12,18,23
102:4,16,21 103:14
104:16,24 105:1,6,10,13,
21 107:6,19 108:2,8,12,
17,18 109:5 110:5,17,23
111:2,6,12,17,19 113:14,
25 114:1,3 115:2,14
116:2,22 118:21 119:16,
18,24 120:19 121:10,24
122:9 123:18 124:22
125:8,25 126:17 127:3,9
128:7,18,21 129:1,24
130:3 131:15 132:13,20,
21,23 133:13,16,23
135:11,13 136:1,2,5,10,
14,19 137:13,15,19,24
138:1,6 139:6,16 140:18
141:24 142:2,7,15 143:4,
7,9,15,18 144:7,17,21
145:7,8,19,20,21 146:1,
6,8,11,15,17 147:6,8,13,
14,17,23 148:1,15,17,23
149:3 151:4,10,13,23
152:4,13,15,18,19,21,22,
23,24 153:1,2,8,12,22
154:8,9,11,18,24 155:1
156:20,23,24 157:12,14,
16 159:19,20 160:15,20,
23 161:14 162:18,19,21,
25 163:2,5,11,12 164:10
165:14,17 166:14,15,21
167:16 168:11 169:2
170:2 171:5,9,22,24

 AdvancedONE LEGAL is now LEXITAS™

173:9 174:18 176:3,5,21,
22 177:8,15,18 178:13,
15,17 180:9,13,19,24
181:7,20 182:2 183:7
184:25 185:1,21 186:22
187:10,11 188:12,14,23
189:17 190:4,9 191:24
192:15 193:1,11,19,24
194:10 195:18 197:25
198:10,11,24 199:1,3,6,
7,14,16,20,23,24 200:7
201:4,5,18,24

**wasn't**
28:17 40:2 55:20 56:16
91:1 108:15 129:5,19
133:8 144:18,19 153:6,7
158:14 179:8 200:5

**way**
83:6 98:5 104:23 129:23
137:3 138:9 184:13,18,
22 186:1,22

**we**
9:5,8,20 10:17 12:4,19
13:20 14:23,25 15:7,14,
15 18:25 19:1,2,3 20:8,
18,19 21:1,3,4,5 22:15,
25 23:1,2 26:13 30:1,4,
11,22 31:14 33:4,14
34:1,3,8 35:8,14 38:1
39:24 43:1,2,3,4,8 44:21,
25 45:3,4,5,8,9,10,11
46:18 47:1,11,14,23
48:15,18 54:25 55:15,16,
21,24 56:13 59:12,24
63:5 65:5,6,9 67:17 72:8,
10,18 74:4,23 75:13 77:3
79:4 81:4 82:8 83:21
84:9 85:1,5,7,17,20,21
92:4 96:7,9,11,12 98:8
99:15 100:10 101:12,17

105:15 107:12,13,15,16,
17,19,20,22 108:22
112:19 113:25 114:3,4,
10,11,14,15,22,23,25
115:13,24 117:6,15,18
118:23 119:13,19,25
120:12,25 125:19 126:8,
9 128:23 130:8 131:10
135:18 136:1,2,10 139:8,
15,18 140:5,8,18,19
142:9,10 143:13,23,24,
25 144:4,5 145:3 147:6,
17,19 148:10 150:13,24
152:14,15,19 153:5,17,
24,25 154:1 155:4
156:21,25 157:19 158:7
162:10,11,12,14,16,23
164:14 165:19 172:25
174:15,21 177:8 178:8
180:14,25 181:13,17
183:13,21 187:25 190:1,
22 193:1,21 196:12
198:14,15,25 200:2
201:3

**we'd**
80:22 138:18

**we'll**
11:19 17:8 30:21 37:1
85:17 114:4 124:21
126:16 150:17 162:22
182:13 188:20

**we're**
12:19 14:14 15:16 22:13
26:1,6,10 34:4 40:7 43:4
46:17,18 47:5 51:17
55:21 59:14 60:5,18
72:10,15 74:11,12,14,17,
23,24 76:1 77:4,7 85:16,
17 86:3 106:16 107:13
128:6 148:16 149:19

156:1 166:14 198:20,22
202:23

**we've**
29:3 32:20 86:1 122:14
126:22 127:22 181:12
182:12

**website**
79:23

**week**
76:8 101:13

**weekend**
79:3 88:19 180:5

**well**
9:3,12 15:5,18,23 18:25
26:12 34:11 39:23 40:14
45:23 66:12 77:25 84:2
90:11 97:20 108:1,5
112:7 117:6,20 123:1
128:5,6 130:3,23 131:5
133:20,21 136:6 137:19
149:18 159:12 160:25
167:15 169:7 171:1
175:8 179:4 182:16
185:20 186:12 193:18
195:14 196:22 199:13

**well-known**
9:11

**went**
17:25 50:9,17 55:13
69:12 74:5 80:21 103:18
108:1,6,19 133:24
135:13 145:11,17 146:3
199:15

**were**
9:5 12:18 15:12,14,15
16:15 17:22 18:7 19:2,25
20:10,19,24 21:7,13
22:15,22 23:14 25:9,12


AdvancedONE LEGAL is now LEXITAS

26:5 27:7 28:12,15
29:19,21,25 30:1 31:3
32:6,12,21 33:14,16
35:12,15 37:11,19 38:1
39:17 43:1 44:25 46:3,5,
7,10 47:1,16 48:12,22
49:21 50:6,10 51:13,16,
20 52:3,15 53:21 54:2
55:7,8,12 56:10,13 57:11
61:16 62:1 72:18,21
73:4,10 78:18 79:4
80:12,17 81:7 83:4,13,
20,21,22,23 84:13,16,18
92:4 94:24 99:15 101:12
105:1 106:21,25 107:12,
13,19,22 113:23 114:18
123:5 134:8 135:14,24
136:10 137:13 139:8
140:16 141:14 143:23,
24,25 144:4,5 145:25
147:6,10 148:24 150:10
156:21,25 157:18 166:19
167:5,13,15,18,19,23
168:4,10 176:17,21
178:8,23 180:14,25
184:16 194:22,25 195:8
196:12 197:9,12,16
199:2,11 200:2,3,18,19,
24 201:22

**weren't**
33:23 108:14 200:2

**Westendorf**
19:16,23,24 75:18 92:9
94:16 103:8,10,12
108:12 118:3 142:13,22
143:4,19 145:21 151:5,6,
14,17 152:4 187:9,11
199:7,14,17,24

**Westendorf's**
151:11

**Westendorf-fleming**
143:2

**westerkam**
21:23 40:11,19 54:22
55:1 56:14 63:11,15,21,
22 65:10 76:15,22 171:1,
16,20

**Westerkam's**
68:15,20

**what**
10:3,8,16,23 12:3 14:4,
18 15:12,18 16:4 18:3,21
21:4,5,7,12 22:25 23:12
24:6 26:2 27:14 29:21,
22,24 34:25 35:2,3,23
36:7,9,14,19,21,25 37:6
39:25 40:4,15,16,21 42:9
45:7 46:10 49:17,19
51:11 52:7 53:5 54:6
57:3,15 60:8 61:18
63:24,25 74:22 76:24
78:7 80:5 81:16 83:16,20
84:4,18 98:8 102:5,24
104:14 105:15 110:14
111:17 114:25 117:1
118:12,22 119:16 120:21
121:3,16 122:9 123:17
124:12,14,21,24 125:7
126:7,8,16,25 128:7,12
129:7,17,25 130:9,10,24
131:20 133:25 141:20
145:2,4 146:5 148:21
149:10 150:7 152:24,25
153:9,16 154:7,8,12,20
156:2,17 157:20 158:10
161:20 162:6,11,14,15,
18 165:14,22 167:10
168:3 169:2 171:1
174:14,25 176:24 179:9
182:3,4,6,24 183:15

184:18,19 185:1 188:8,
10 190:22 191:23 192:5
193:17,21 194:17 195:24
198:8 200:7

**what's**
9:25 60:23 93:7 95:21
101:3 150:1 172:5
174:22 183:7

**whatever**
12:8 22:25 51:25 55:19
67:6 88:5 96:18,22
107:22 115:11 152:6
155:14 185:21 186:2

**whatsoever**
154:16

**when**
14:11,14,24 16:6 17:4,8
19:5,6 20:18,19 21:10
22:16 25:12 27:16 28:20
30:1 31:6 37:12 38:22
42:22 50:12,13 51:6
52:20 55:13 56:13 57:12
58:13 59:4,5 61:18
72:24,25 83:21 90:14
94:2 95:20 100:4 107:6
110:25 111:25 112:1
119:18 128:5,6 129:4
130:1,9 135:9,21,24
136:7,13,14 144:15
145:16,25 148:10,23
151:22 159:23 162:21
166:14 174:7 184:17,18
185:18,25 186:16 187:1
195:19,24

**where**
14:21 21:16 24:13 32:21
35:19 36:2 37:8 49:22
50:2 53:24 72:12 79:22
85:5 92:19 97:1 107:17
108:18,19 119:21 120:13



121:11 122:16 125:20
127:5 128:7 141:3
142:16 143:10 145:7
146:17 153:23 154:16,17
167:6 177:8 184:21
185:7 190:1 199:3
200:19

**whereabouts**
130:16

**whereas**
147:23

**wherever**
200:1

**whether**
9:1 10:18,22 30:18 34:25
35:4,5,12 37:20,22 39:1
40:12 66:7,8 67:18
74:22,24 82:3 84:14
121:10 127:2,3 130:4
177:2,4 198:23

**which**
44:13 77:21 87:8 92:16
101:1 123:18 124:1,22
126:17,21 131:12 139:6
149:8 151:23 152:11
156:3,4,5 173:8 190:20
193:13 194:10 200:20

**whichever**
75:2

**while**
17:15 36:5 46:24 71:25

**who**
15:3 20:21 27:14 34:2
39:1 45:17 49:24 73:10
75:9 91:24 93:16 96:11
98:7 99:15 137:22
142:10,11 143:7,15
144:7 145:20 160:7

164:1 166:19 194:20
197:25 199:23 200:24
201:18,22

**Who's**
107:14

**whoever**
61:25 96:21 144:17
147:14

**whole**
9:6 29:13 43:3 191:25
192:1

**whose**
152:23

**why**
15:19 39:10 45:8 57:14
73:23 98:4 105:1 112:18
121:18 125:7 126:25
128:1,3 140:2 156:15
169:18 171:8 174:21
175:19 177:10 180:9
195:5 198:7 199:9

**will**
54:4 80:9 81:20 85:25
86:14 92:17,22 93:16
100:9 101:16 122:8
156:2 172:25 181:11
183:12,15,16 184:4
187:6 194:9

**willing**
81:1

**with**
10:21 11:3,12 13:10,21
14:24 16:4 18:4 20:9
21:8,25 22:3,24 29:5,19
30:8,9,21 32:7 34:13,16
36:11,19,21 37:21 39:12
42:17 44:10,16 45:19,20
48:12,16 49:22 50:2,15

51:21 52:8 53:4 56:24
57:17 58:12,24 59:25
60:1,4,7 65:9 66:17,21,
22 67:1,11,15,18 69:4,
14,16 70:19 71:5,13 72:2
73:12 76:2,3 77:10
79:18,20 80:22,23 83:6
86:19 88:15 91:24 92:5,
17,18 93:13 94:22,24
96:4 98:2,7 101:25 105:2
107:2 111:22 112:7
113:9,17 114:5 115:12
116:10 120:7 121:9
122:23 124:6,25 125:16
126:6,23,25 127:22
131:7,16,20 134:8,18,22,
25 135:5 137:16,18
139:7 140:6,14,15 141:4,
12,16,22 142:6,18
144:11,21 146:6,18
147:14 148:5 149:18
150:9 151:2,6,14 152:5
153:18 154:25 156:18
157:5,10 158:4 159:15
161:21 162:17 163:24
166:4,9,17 169:7,15
170:6,16 171:13 179:1
180:20 181:7,8 187:8,10,
13,14 188:13 189:9
192:16 193:11,25 195:23
197:21 200:3,19 202:6,9,
16

**withdraw**
174:25

**within**
124:10

**without**
10:15 190:12

**witness**
12:22 41:15 49:14,16



NAUTILUS INSURANCE vs RICHARD ALEXANDER MURDAUGH    282
John Grantland, 03/12/2024              Index: won't..yeah

61:4 88:6,8 90:6 115:23
133:1 160:12 164:6
167:22 172:9 174:8,10
175:4 177:16 179:10
180:12,23 181:6 182:24
183:25 186:21 187:23
189:19,22 191:9,15,22
192:18 195:11 197:20
200:11 202:25

**won't**
30:22 172:2

**wondered**
90:4,21

**wondering**
90:3

**Woody**
30:6

**word**
148:19

**words**
12:6 90:14

**work**
22:24 46:20 57:6 101:16
119:5 155:4 175:21
177:9 186:15

**worked**
88:22

**workers**
34:2 73:16,18

**working**
88:20 90:1 113:9 148:16
154:18 167:13,18

**worries**
26:3

**worry**
10:15

**worse**
57:9 69:3 168:1

**worth**
55:20 177:1

**would**
9:3,4 10:14,21,23,24,25
12:2,9 17:17 20:8,20
29:13 32:4 33:4,5 34:9
36:23 37:24 40:22 50:5
51:7,8 52:16,19 66:12,15
67:19 69:5,18 72:17 77:3
81:4,6 88:10 90:12 92:3,
8 98:9 102:24 107:3,6
108:2 110:9 111:21
112:11 114:2,16,23
115:6,9 116:13 118:13
121:13,16 127:21 129:12
130:21 135:7,8,22
136:13 138:16,19 139:6,
9 141:25 142:11 144:12
145:2,3,4 147:18 151:25
152:16 153:11,23 154:2
155:2,5 156:22 163:20
164:1,2,3 167:24 169:7,
15 170:1,6,16 171:13
178:9 190:17,24 193:17
195:7 197:20,21 198:7
199:9 202:11,15

**wouldn't**
12:12 37:13 81:2,11,17,
18 102:22 142:11 143:18
152:8 153:15

**wreck**
105:21

**write**
172:23 178:4,8,11
184:11

**writes**
166:3 175:16 180:4

186:12

**written**
28:18 58:3 74:13 165:24
176:10 182:14

**wrong**
88:4 133:24 135:25
181:25 182:15

**wrongful**
107:1 168:24

**wrote**
70:13 167:6 184:18
185:10 187:1

---

## Y

**y'all**
10:7 12:6,7,10 145:11

**y'all's**
10:1 176:20

**yeah**
9:9,17 12:16 15:6 17:2
21:5 23:5,11 24:12 27:20
32:11 35:10,22 36:8
38:19 40:8 41:10,12,19
42:20 43:1 47:9 48:1
53:11 58:14,16 59:16,18
60:7 61:11 67:25 69:8
71:24 72:6 74:18 79:9
85:10,24 86:2 88:1 89:7,
23 90:6 92:24 96:24 97:5
105:5,9,18 109:9,11
110:9 115:16,25 117:21
133:21 136:1,17 137:7
139:18 140:5 141:6
142:2,19 144:18 149:11,
16,25 150:3 154:5,22
157:15 158:23 159:9,16
160:4 161:11,13,17
165:12 166:25 168:9



170:13,15 171:12 173:20
174:13,18,20,24 176:3
177:15,24 178:15
179:10,12 180:8 181:6
182:8,12,20 183:9,10,11
184:6 188:11 189:22
195:21 196:14 197:8
199:4,8,19

**years**
30:6 50:2 113:14 160:1,4

**yellow**
189:20

**yep**
175:8

**yes**
9:16,22,24 10:4,6 11:13
13:12,17,25 15:14 16:13,
25 17:11,17 18:17,22
21:11 22:8,10,21,24
23:7,9 24:5 27:5 28:13
29:15,23 32:5,9 34:18,20
39:20 40:14 43:11 44:18
48:21 51:10,19 52:2
54:20 55:6,11 56:9,11,13
57:1 61:22 62:25 64:13,
16,23 65:22 66:3 68:13,
16,19 70:15,17 73:8,19,
21 76:11,23,25 78:14,16,
21 79:16 82:24 83:1,3
88:18 91:20 92:10 93:15,
17 94:19,25 95:2,4,6
97:25 98:3 99:1,21
102:18 104:12 106:11,14
110:4,13 112:14 119:6
120:3,8 122:2 124:2,8
125:2,5,18 126:24 134:4,
11,13 137:20 139:3
140:23 144:9 145:13
162:5 164:4,15 166:1,8,
11 168:18 169:1,10,14

170:11 171:3,10 172:9,
19,22 173:4,10,12 175:4,
11,15,23 176:4 178:3,15
179:24 180:3,6 181:17
182:21 183:3 184:9,14
185:12 186:9,11 189:13
190:15,19 192:13,23
193:4,6 194:2 195:17
196:2 197:2 202:18

**yet**
45:8

**you**
9:14 10:9 12:7,21 13:6,8,
10,15,18 14:1,11,18,19,
20,21,22,23,24 15:2,12,
23 16:2,4 17:4,8,9,13,19
18:21,25 19:6,20,25
20:1,10,23 21:2,19,25
22:6,16,20 23:3,12,15,16
24:4,6,7,8,10 25:6,10,12,
17,20,24,25 26:1,11,14,
20 27:10,19 28:11,14,15,
17,20,25 29:4,6,7 30:2,9
31:5,6,7,12,13,21,22
32:1,4,6,11,13,17,23
33:6,16,20,23 34:4,9,16,
22,23,24 36:6,19 37:17,
19 38:8,17 39:17 41:4,7
42:8,9,14,17,18 43:6,9
44:1,2,6,22,23,24,25
45:3,6,10,12,23 46:5,10,
16,17,19,24,25 47:7,11
48:11,12,16,20,24 49:5,
12,19 50:5,8,13,25 51:3,
6,7,12,14,18,20 52:1,3,
11,14 53:10,12,13,16,25
54:2,3,6,14,18,23 55:7,8,
13 56:5,8,10,19,23,25
57:3,4,11,14,15,16,19,
22,24 58:1,11,15,23
60:9,21 61:14,16,23,24

62:22,24 64:9,12,14,17,
18,24 65:2,5,6,11,18,20,
24 66:1,4,5,17,20,25
67:9,11,14,15 68:7,8,11,
17,21 69:4,10 70:11,13,
19,25 71:4 72:2,4,9,10,
21 73:5,7,12,16 74:2,20,
21,22 75:25 76:3,4,19
77:1,24 78:7,8,10,15,23
79:6 80:8,11,13,15,17,24
81:7,13,19 82:5,17 84:1,
3,9,15,18 85:15,19 86:3,
19 87:7,10,13 88:11,14,
19 89:15,17,24 91:19,21,
23 92:17,18 93:8,12,13
94:10,24 95:20,24 96:6,
8,10 99:2,4,5,6,7,17,19
100:1,4,5,24,25 101:1,4
102:5,12 103:7,11,21
104:7,11 105:1,3,4,11,13
106:7,12,16,21,22,25
107:8,15,18,20,24
108:11,14,24 109:3,20,
23,25 110:2,7,11,12,17,
20,25 111:9,18,19,24
112:3,7,15 113:3,9,10
114:3,8 116:8,12,13,14,
15 117:1,5,7 118:12,13,
14,19 119:3,5,13,15
120:1,6,23 121:4,8,14,
16,18,25 122:8,11,16,18,
19,20 123:1,4,17,21,23
124:6,7,14,15,21,23
125:7,15,16,20,24 126:4,
5,16,20,23,25 127:5,18,
21,25 128:6,7,8,15,21
129:1,4,5,8,17,20,23
130:1,3,7,9,12,16,21,25
131:7,8,11,16,25 132:1,
7,10,11,21 133:6,16,21
134:1,8,12,18,22,25
135:4,11,15,18,23,24



136:4,8,10,15,20,23
137:2,4,6,14,15,22,23
138:7,10,22 139:2,4,14,
16,18,24 140:2,4,6,9
141:3,5,12,14,15,23
142:2,4,6,12,15,16,17,24
143:3,10,11,14,18,21
144:6,16 145:2,4,5,7,16,
17,19,20 146:5,8,21
147:8,13,24 148:8,10,21,
22,23,24 149:14,18,20,
21,23 150:7,16,18,25
151:4,5,10,17,22,25
152:9,21 153:9,11,19
154:4,10,13,20,24 155:1
156:1,8,10,12,14,17
157:2,3,4,8,10,17,21,24,
25 158:3,9,11,14,16,24
159:8,11,14,22,23 160:6,
17,20 161:1,18,20 162:6,
7,10,11,14,18,25 163:1,
2,11,17,22,24 164:3,6,7
165:15,23,25 166:2,7,12,
14,15,19,22 167:5,6,8,
10,12,13,14,16,17,22,24
168:7,19 169:2,4,7,8,15
170:1,6,16,17,21,25
171:3,13,14,19,25 172:1,
4,17,24 173:1,5 174:14
175:7,8,10,14,16,22,24
176:17,23,24 177:3,8,10,
13,20,21 178:2,4,8,11,
21,22 179:4,5,9,11,21,22
180:9,15,16,19 181:3,11,
14,16,24 182:3,4,6,10,
22,24 183:4,5,21 184:4,
7,11,16,17,18,19 185:6,
18,19,21,24 186:4,8,10,
13,16,17,18 187:5,6,7,8,
13,22,23 188:4,9,19
189:11,24 190:3,11,14,
17,20 191:6,7,10,12,17,

23,24 192:5,9,12,15,20,
21 193:3,7,9,13,17,22
194:1,8,12,14,17,22,25
195:5,7,8,15,16,19,20,24
196:4,16,20 197:4,9,12,
16 198:4,6,14 199:2,5,6,
11 200:10,11,18,19,24
201:7,13,18,21 202:5,6,
19,22

**you'd**
29:7 131:5 155:13
169:21 195:20,24

**you'll**
26:2 119:3

**you're**
13:20 21:13,16 43:5
53:14 55:21 60:8 76:1
80:5 89:5 92:19 99:24,25
100:4 120:21 121:24
134:5 142:17 143:10
144:15 148:14 149:10,20
165:6 172:8 174:7
178:21 180:1 186:18
191:11

**you've**
43:7 58:19 82:15 104:14
124:9 126:7 191:18
195:15

**your**
9:1 12:3 13:21 14:1,4
15:10 17:10 19:8,15
21:12 22:22 23:6 25:7
26:21 28:14 29:4 31:4,7
32:7 41:20 50:25 53:15
58:19 60:22 62:21,23
64:10 71:5,13 78:11 80:3
81:18,22 83:24 89:16
91:17 94:12 96:25 99:6,
18 102:23 104:7 106:9
110:10 113:4,13,15,21

114:5 116:9 120:23
121:25 122:23 124:1,10
126:4 130:9,10 132:6,12,
23 139:23 140:22 141:4
145:17 146:1,15 147:10
151:3 153:6 156:4,7,17
159:12,15,23 160:7,18
161:25 162:3,19 163:1,5,
12,13 165:24 166:9,10
169:11 176:17 181:15
184:24 185:18 186:3,14,
16,17,18 187:16 189:7
190:16 193:20 199:5

**yours**
110:12 114:19 179:25

**yourself**
53:14

**yourselves**
146:1

---

# Z

**Zone**
79:13

