UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>                    Plaintiff,<br>v.<br><br>CORY FLEMING, *et al.*,<br><br>                    Defendants. | Case No. 2:22-cv-1307-RMG<br><br>**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** |

Nautilus Insurance Company ("Nautilus") renews its Motion for Judgment as a Matter of Law pursuant to Rule 50(b), Fed. R. Civ. P.[1], and moves this Honorable Court to enter judgment in its favor against Defendant Moss & Kuhn, P.A. ("M&K").

**I.     Background**

This matter was tried to a jury as to Defendants Cory Fleming and M&K beginning on January 6, 2025. On January 8, 2025, the jury returned a verdict against Mr. Fleming on two causes of action: (i) civil conspiracy, and (ii) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). The jury found Mr. Fleming liable to Nautilus on both claims but found that M&K was not vicariously liable for Mr. Fleming's wrongful conduct. The jury awarded Nautilus $1.25M, and this Court exercised its discretion to treble the damages and award attorneys' fees as to the SCUTPA cause of action. Judgment was entered on January 31, 2025. ECF No. 336.

**II.    Argument**

A professional association is liable for the wrongful conduct of its employee when it falls within the employee's scope of employment *or* his apparent authority to act on behalf of the employer. S.C. Code Ann. § 33-19-340(b) ("A domestic or foreign professional corporation whose

---

[1] Nautilus moved for a directed verdict on the issue of vicarious liability at the close of the Defendants' cases, which was denied.

1

employees perform professional services within the scope of their employment or of their apparent authority to act for the corporation is liable to the same extent as its employees.").

Whether an employee's actions fall within the scope of employment may be resolved by the Court as a matter of law when the circumstances are sufficiently clear. *McKinley v. Rawls*, 333 F.2d 198, 200 (4th Cir. 1964); *Stevens v. Moore*, 46 S.E.2d 73, 79 (S.C. 1948) ("In cases where the deviation is slight and not unusual the Court may, and often will, as matter of law, determine that the servant was still executing his master's business."). Nautilus respectfully requests the Court do so.

Mr. Fleming's misconduct occurred as part of his practice of law at M&K, which places it squarely within the scope of his employment *and* within his apparent (and actual) authority to act on behalf of M&K. As a matter of law, M&K is vicariously liable.

### A.  Scope of Employment

An employee acts within the scope of his employment when his conduct is "reasonably necessary to accomplish the purpose of the employment and is in furtherance of the master's business, even if the [employee] exceeds their authority." *Hyde v. S. Grocery Stores, Inc.*, 15 S.E.2d 353, 357 (S.C. 1941). Mr. Kuhn, testifying at trial on behalf of M&K, acknowledged that M&K's business was the provision of legal services in exchange for a fee. **Ex. 1** (Trial Tr. (Jan. 8, 2025)) at 409:11–24.

The jury found that Mr. Fleming violated SCUTPA, which requires an unfair or deceptive act "in the conduct of trade or commerce." *See* S.C. Code § 39-5-20(a) ("Unfair methods of competition and unfair or deceptive acts or practices *in the conduct of any trade or commerce* are hereby declared unlawful." (emphasis added)). "Trade or commerce" for purposes of SCUTPA includes "[e]very business occupation carried on for subsistence or profit and involving the elements of bargain and sale, barter, exchange, or traffic." *Health Promotion Specialists, LLC v.*

*S.C. Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (quoting *Black's Law Dictionary* (9th ed. 2009)); *see also Bretton v. State Lottery Comm'n*, 673 N.E.2d 76, 78-79 (Mass App. Ct. 1996) (recognizing that "the proscription in § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts or practices which are perpetrated in a business context" (citations omitted)).

In finding Mr. Fleming liable to Nautilus for violations of SCUTPA, the jury necessarily found that his misconduct occurred within the scope of his professional activities as an attorney. Indeed, Mr. Fleming practiced solely as a partner at M&K and was authorized to act on behalf of the firm while representing M&K clients, including the Estate of Gloria Satterfield.[2] M&K admitted Mr. Fleming acted on its behalf in portions of its deposition that were read to the jury during trial:

> [J]ust to keep it clear, if the firm did it, it would have been done by Cory.

**Ex. 2** (M&K Dep. Tr.) at 58:1–3;

> Q. Do you have any – I mean, would you agree that Cory acting on behalf of your firm affirmatively had Moss, Kuhn & Fleming added to that check?
>
> A. Yes.

*Id.* at 62:11–15.

Mr. Fleming's misconduct "earned" a fee of $650,055.59, which was deposited in M&K's operating account and used for the benefit of the firm. The firm's trust account ledger reflects the fee being paid to "Moss Kuhn & Fleming." **Ex. 3** (Plaintiff's Trial Ex. 38). The insurance checks

---

[2] M&K testified during trial that the Estate of Gloria Satterfield was a client of the firm. **Ex. 1** (Trial Tr. (Jan. 8, 2025)) at 408:16–19. Mr. Fleming's wrongful conduct with respect to that client's wrongful death claim was, as a matter of law, within the scope of his employment at M&K.

3

from which this fee was deducted were made out to "Chad Westendorf as personal representative for the Estate of Gloria Satterfield *and Moss, Kuhn & Fleming as attorney*" and were deposited in M&K's trust account. **Ex. 4** (Plaintiff's Trial Ex. 28) (emphasis added).

His conduct in connection with the representation that generated that fee—even if fraudulent, illegal, and unknown to M&K (*see infra*, Part II.A.1)—was in furtherance of M&K's business. It involved the use of his firm email address, communications on firm letterhead, and listing of the firm's details in the signature block on the settlement agreement. These facts establish that Mr. Fleming was acting within the scope of his employment with M&K with respect to his unfair and deceptive acts toward Nautilus.

### 1. *M&K's Defenses*

M&K contended that, because Mr. Fleming's conduct included illegal actions intended to benefit himself and Mr. Murdaugh, his conduct was outside the scope of his employment and cannot render M&K vicariously liable. This argument fails as a matter of law.

It is well-settled law in South Carolina that a principal is liable for an employee's fraudulent acts within the scope of his employment even if the principal did not authorize or know of the misconduct:

> It is a general doctrine of law, that although the principal is not ordinarily liable (for he sometimes is) in a criminal suit for the acts or misdeeds of his agent, unless, indeed, he has authorized or co-operated in them, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, negligences and other malfeasances and omissions of duty of his agent *in the course of his employment,* although the principal did not authorize or justify or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them.

*Hutchison v. Rock Hill Real Estate & Loan Co.*, 43 S.E. 295, 306 (S.C. 1902) (quotation and citation marks omitted, emphasis in original). Indeed, an employee's actions are within the scope of his employment so long as they are in "furtherance of the master's business," even if the actions

4

are, on the whole, "not in the interest of the master" or "necessary for the proper performance of the servant's duty to the master . . . ." *See Matheson v. Am. Tel. & Tel. Co.*, 137 S.C. 227, 239, 135 S.E. 306, 309 (1926) (quoting 39 Corpus Juris, 1283).

The fact that Mr. Fleming received a personal benefit from his representation of a firm client does not take his conduct outside the scope of his employment. It is commonplace that partners of a law firm obtain a personal financial benefit from revenue they generate from client matters. Were it true that such derivative personal gain placed their legal work that generated the revenue outside the scope of their employment, no partner at a law firm whose income was based on revenue would ever be considered to act within the scope of her employment. The contemplated scenario for when vicarious liability does not apply (i.e., the conduct is outside the scope of employment) is when an employee's actions are for an independent purpose "*wholly disconnected with* the furtherance of his [employer's] business." *See Pridgen v. Ward*, 705 S.E.2d 58, 62 (S.C. Ct. App. 2010). Mr. Fleming, in the course of practicing law, conspired with Alex Murdaugh, resulting in the generation a fee of over $650,000 for M&K, a fee from which the firm and its partners benefitted. It cannot be said that his conduct was "wholly disconnected with" M&K's business as a law firm.

### B. Authority

With respect to his efforts to recover from Nautilus, Mr. Fleming acted not just within his apparent authority to act on behalf of M&K, but rather within his actual authority to do so.

Mr. Fleming accepted the legal representation, at Mr. Murdaugh's request, of a party adverse to Mr. Murdaugh and worked with Mr. Murdaugh to maximize the recovery from Mr. Murdaugh's insurers for the benefit of Mr. Murdaugh, Mr. Fleming, and M&K. Mr. Fleming's efforts to this end reflected numerous indicia of his apparent and actual authority to act on behalf of M&K in handling the representation, including:

- Writing a letter on M&K letterhead stating he was the attorney for the Estate of Gloria Satterfield to put Mr. Murdaugh's carriers on notice of a wrongful death claim; **Ex. 5** (Plaintiff's Trial Ex. 3);

- Depositing the $3.8M check issued by Nautilus in M&K's trust account; **Ex. 3** (Plaintiff's Trial Ex. 38);

- Collecting a $650,055.59 fee for the firm and depositing it in the firm's operating account; *Id.*;

- Utilizing firm personnel to aid him in furthering the wrongful death claim; *E.g.*, **Exs. 6, 7** (Plaintiff's Trial Exs. 12, 13);

- Signing the mediation settlement agreement with M&K's information in his signature block; **Ex. 8** (Plaintiff's Trial Ex. 23) at 2;

- Directing settlement checks to include "Moss, Kuhn and Fleming PA as attorney" as a payee; **Ex. 4** (Plaintiff's Trial Ex. 28).

It is undisputed that Mr. Fleming was authorized by M&K to (and did in fact) take these actions on behalf of M&K. Nautilus relied on his authority to act on behalf of the firm, as is evidenced by, *inter alia*, the issuance of a check to Mr. Fleming's firm for $3.8M. **Ex. 4** (Plaintiff's Trial Ex. 28). Accordingly, his actions were within his apparent authority to act on behalf of M&K, rendering M&K vicariously liable for his misconduct.

### III.　Conclusion

Nautilus respectfully requests that the Court grant Nautilus judgment notwithstanding the verdict and enter judgment in its favor against M&K.

**[signatures on following page]**

6

**Respectfully submitted:**

This 4th day of February, 2025  
Charleston, South Carolina

*/s/ Jaan Rannik*  
EPTING & RANNIK, LLC  
Jaan G. Rannik (Fed. ID No. 12621)  
46A State Street  
Charleston, SC 29401  
P: (843) 377-1871  
F: (843) 377-1310  
jgr@epting-law.com

*/s/ Gregg Meyers*  
Gregg Meyers (Fed ID No. 4183)  
114 4th Ave NW  
Byron, MN 55920  
843-324-1589  
attygm@gmail.com

COUNSEL FOR NAUTILUS INSURANCE COMPANY