# EXHIBIT 2

1    A.   The answer's no.  But just to keep it
2 clear, if the firm did it, it would have been
3 done by Cory.  So he's the only one --
4    Q.   Right.  But he --
5    A.   -- who can answer that question.  Since
6 to my knowledge --
7    Q.   Right.  But he's not here --
8    A.   -- neither I --
9    Q.   -- he's not designated as a 30(b)(6)
10 person to testify.
11    A.   That's correct.
12    Q.   Okay.  I don't think we are
13 misunderstanding each other.  I understand you've
14 got the firm -- the file and that -- and I'm just
15 trying to confirm that's the entire amount of
16 information the person who is here representing
17 the law firm has as far as answering these
18 questions.
19    A.   That is correct.  Know absolutely
20 nothing about it --
21    Q.   Okay.
22    A.   -- other than what's in the file.
23    Q.   All right.  Understanding Exhibit 2 is
24 the communications -- I represented that are the
25 only communications that I see in the file

1  firm, I believe that's the same number as your
2  firm.
3          (Dft. Exhibit No. 4 marked for
4  identification.)
5       A.  Yes, it is.
6       Q.  Do you see that?  So that's not Chad's.
7          And then just to kind of familiarize you
8  with this email.  After that, that's when Cory
9  responds and says, no, we need to add Moss,
10 Kuhn & Fleming, you see that.
11         Do you have any -- I mean, would you
12 agree that Cory acting on behalf of your firm
13 affirmatively had Moss, Kuhn & Fleming added to
14 that check?
15      A.  Yes.
16      Q.  And do you have any information that
17 Chad Westendorf was involved in that decision in
18 any way?
19      A.  I don't know one way or the other, so
20 no.
21      Q.  Okay.
22         MR. PENDARVIS:  I just got kicked
23 out of Zoom.  I don't know whether the rest did.
24         I'm back in.
25      Q.  There was reference to Forge Consulting